# COMPOSITE EXHIBIT D PART 1a



| | |
|---|---|
| **STATE OF FLORIDA, OFFICE OF FINANCIAL REGULATION,** | |
| Petitioner, | |
| v. | **Administrative Proceeding No. 2561-F-08/09** |
| **TAYLOR BEAN & WHITAKER MORTGAGE CORP.**, licensed under Part III, Chapter 494, Florida Statutes, | |
| Respondent. | |

## SECOND EMERGENCY ORDER TO CEASE AND DESIST AND NOTICE OF RIGHTS

The State of Florida, Office of Financial Regulation, ("Office") being authorized and directed to administer and enforce Chapter 494, Florida Statutes, ("the Act") governing Mortgage Brokerage and Mortgage Lending in the State of Florida, having found that an immediate and serious danger to the public welfare flows from the unlawful activities of Taylor Bean & Whitaker Mortgage Corp. ("Taylor Bean" or "Respondent") hereby issues and serves this **EMERGENCY ORDER TO CEASE & DESIST.** Pursuant to section 494.0014(1), Florida Statutes, and sections 120.60(6) & 120.569(2)(n), Florida Statutes, Respondent and all persons acting in concert or cooperation with Respondent shall **IMMEDIATELY CEASE AND DESIST** from the concerted course of action in violation of the Act described herein and shall no longer be authorized to carry out any business requiring licensure under Chapter 494, Florida

Statutes. Pursuant to sections 120.60(6) and 120.569(2)(n), Florida Statutes, this Order

is based on the findings of fact set forth below and is **EFFECTIVE IMMEDIATELY**.

## I. FINDINGS OF FACT

### A. Events to Date

1.     The Office is responsible for the administration and enforcement of the Act, and

the Office has jurisdiction over Respondent in this matter.

2.     Respondent is a Florida corporation with its corporate headquarters located in

Ocala, Florida.

3.     On August 7, 2009, the Office entered an Emergency Cease & Desist Order

against the Respondent that suspended their ability to accept any loan applications for

mortgage loans secured by Florida real property or from Florida consumers and ordered

Respondent to cease advertising itself as a mortgage lender (the "C&D Order"). A copy

of the C&D Order is attached as Petitioner's Exhibit "A" and the Findings of Fact

reflected therein and exhibits attached thereto are incorporated into this Order.[1]

4.     On August 10, 2009, the Office filed an administrative complaint against

Respondent seeking the revocation of its mortgage lender's license.

5.     On August 17, 2009, the Office received notice that Respondent's Surety Bond

was being cancelled. A copy of that Notice is attached as Petitioner's Exhibit "B."

6.     Respondent has not complied with provisions in the Office's original C&D Order.

In addition to the suspension of Respondent's authorization to take mortgage

applications, the C&D Order required Respondent to undertake twelve separate

corrective actions, including but not limited to: (1) placement of any fees previously

---

[1] Exhibits attached to this Emergency Revocation Order will be labeled as "Petitioner's Exhibits" to
distinguish them from the Exhibits that were attached to the Office's August 7, 2009 C&D Order.

collected from Florida consumers relative to any pending mortgage loan applications into a separate escrow account at a federally insured depository institution; (2) submission of a balance sheet and year-to-date income statement, prepared as of the date of submission, and attested to by a duly authorized officer of the Taylor Bean; and (3) attempting to obtain funding or move loans in Respondent's pipeline to other lenders.

7.    Respondent has not complied with the C&D Order's requirement that it attempt to obtain funding or move loans in its pipeline.

8.    To date, Respondent has not provided the requested financial information it was ordered to provide in the C&D Order. Therefore, the Office has not been able to assess the financial condition of the company and determine whether it still meets the net worth requirements under Florida law.

9.    Furthermore, through ongoing conversations and repeated requests for information from the Respondent, the Office has learned that Respondent's primary operating accounts and escrow accounts held at Colonial BankGroup and RBC bank have been frozen.

10.    After repeated requests to clarify Respondent's financial situation and banking relationships, the Office learned on August 18, 2009, that the Respondent is utilizing a single bank account.

11.    Respondent admitted on August 19, 2009, that the company has attempted to open new bank accounts at two different financial institutions but was denied.

12.    On August 19, 2009, in a meeting between representatives of the Office and the Respondent's Chief Financial Officer, Respondent admitted to depositing operating funds and custodial funds, including mortgage and escrow payments, into the single account.

Respondent also admitted that it was paying its employees with funds from this account. While the Respondent has alleged that the differences between the funds are being internally accounted for, the intermingling of funds that Respondent is using for its daily operations and funds that Respondent merely has a custodial interest in represents a serious risk to Florida consumers.

13.     Respondent serviced loans primarily for the Federal Housing Administration, the Government National Mortgage Association ("Ginnie Mae"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively the "federal loans"). Based on representations given to the Office, the servicing for all federal loans has been transferred or will be transferred to other servicers within the next week.

14.     During a telephone conference call on August 20, 2009, Respondent asserted that it continues to service 34,922 loans in its private, non-federal portfolio ("private portfolio loans"). The servicing rights of these loans remain with Respondent. Outside counsel for the Respondent also indicated Respondent's intent to wind down its business and transfer these servicing rights to other companies.

15.     In an August 21, 2009, conference call, Respondent's outside counsel indicated that Respondent's bankruptcy is imminent.

**B.  The Need for a Second Emergency Action**

16.     The C&D Order allowed Respondent to continue servicing mortgage loans. Since the entry of the C&D Order, it has become apparent the Respondent is not capable of performing these servicing functions and a second order immediately suspending Respondent's Mortgage Lending License is necessary.

17.    During the month of August, the Office has received twenty-five written complaints regarding the Respondent, including complaints about the funding of loans, servicing problems, and issues with loan modifications and foreclosures. Additionally, just during the time period between August 14-18, 2009, the Office received 116 phone call inquiries about problems with Respondent's funding and servicing of loans. Many of these phone calls have been from consumers who have had problems contacting the Respondent and determining where their mortgage payments need to be sent. Others have indicated that Respondent failed to make escrow payments.

18.    Florida consumers are currently being harmed by the confusion associated with Respondent's servicing of loans and this confusion has shown no sign of abating.

19.    Since the beginning of August, Respondent's workforce has been substantially reduced to only essential employees. Respondent has also advised that the workforce is decreasing due to resignations and that Respondent does not intend to hire replacements.

20.    The situation involving the Respondent's use of a single bank account to deposit funds held on behalf of consumers with operational funds constitutes a serious violation of Chapter 494, Florida Statutes, and supports the immediate suspension of Respondent's license standing alone.

21.    On August 4, 2009, the U.S. Department of Housing and Urban Development ("HUD") issued notices of proposed Debarment to Ray Bowman and Paul Allen. A copy of the Notices of Proposed Debarment are attached as Petitioner's Exhibit "C". The proposed debarment for Mr. Bowman was "based upon false certifications that [Mr. Bowman] submitted to HUD in [his] capacity as President of an FHA-approved lender." The proposed debarment for Mr. Allen was "based upon [Mr. Allen's] submission of a

false certification and/or misleading information to Ginnie Mae regarding the delay of Taylor, Bean and & [sic] Whitaker's ("TBW") submission of audited financial reports." On August 18, 2009, officials with the Office met with representatives of the Respondent and asked about the Respondent's current day-to-day management. During that meeting Respondent indicated that Mr. Bowman is still employed as the Chief Executive Officer and Mr. Allen is still employed as President. Both were identified as managers in control of Respondent's day-to-day activities.

22.     In its August 7, 2009 C&D Order, the Office noted that several states, including Massachusetts, New Jersey, and Pennsylvania have entered adverse administrative orders against Respondent.     Since the Office entered its C&D Order, a number of other states have taken action against the Respondent, including North Carolina, Maryland, Washington, Mississippi, Tennessee, Kentucky, Illinois, and Michigan.

## C. Fairness of the Procedures

23.     The Office finds that the procedures outlined below constitute are limited to those necessary to protect the public interest in this emergency.   Respondent has indicated that it has transferred or will be transferring the servicing of all federal loans to other servicers in the near future.  To the extent that Respondent is still servicing the private label loans, Respondent has indicated its intent to transfer those loans to other servicers.   The procedures listed below are designed to make sure that the transfer will (1) be as orderly as possible under the circumstances; (2) will protect consumers from being penalized by Respondent's actions and provide the Office with appropriate oversight of the transfer; and (3) will allow Respondent to continue operating to the extent needed to effectuate this transfer.

## II.  CONCLUSIONS OF LAW

24.     The Office is responsible for the administration and enforcement of Chapter 494,

Florida Statutes, and has jurisdiction over Respondent pursuant to Sections 494.001-

494.0077, Florida Statutes.  § 494.0011(1), Fla. Stat.

25.     The Office adopts the Conclusions of Law in its August 7, 2009, C&D Order as

Conclusions of Law for the purposes of this Order.

26.     Pursuant to section 494.0014, Florida Statutes, the Office "has the power to issue

and serve upon any person an order to cease and desist and to take corrective action

whenever it has reason to believe the person is violating, has violated, or is about to

violate any provision of ss. 494.001-494.0077."

27.     Section 494.0072, Florida Statutes, provides in relevant part:

> (1) Whenever the office finds a person in violation of an act specified in
> subsection (2), it may enter an order imposing one or more of the
> following penalties against that person:
> . . .
> (a) Revocation of a license or registration.
> (b) Suspension of a license or registration, subject to reinstatement upon
> satisfying all reasonable conditions that the office specifies.
> (c) Placement of the licensee or applicant on probation for a period of
> time and subject to all reasonable conditions that the office specifies.
> (d) Issuance of a reprimand.
> (e) Imposition of a fine in an amount not exceeding $5,000 for each count
> or separate offense.
> (f) Denial of a license or registration.
> . . .
> (2) Each of the following acts constitutes a ground for which the
> disciplinary actions specified in subsection (1) may be taken:
> . . .
> (e) Failure to place immediately upon receipt, and maintain until
> authorized to disburse, any money entrusted to him or her by a person
> dealing with him or her as a lender in a segregated account in a federally
> insured financial institution;
> . . .

(j) Failure to comply with any order or rule made or issued under the provisions of ss. 494.001-494.0077.

. . .

(p) Failure to comply with, or violations of, any other provision of ss. 494.001-494.0077.

. . .

(u)2. Having been the subject of any injunction or adverse administrative order by a state or federal agency regulating banking, insurance, finance or small loan companies, real estate, mortgage brokers or lenders, money transmitters, or other related or similar industries.

28.     Section 494.0076(1)(a)2, Florida Statutes, requires each mortgage lender who services mortgage loans to "[h]ave a separate, segregated depository account for all receipts relating to servicing."

29.     Section 494.0062(2)(d), Florida Statutes, requires, in relevant part: "A surety bond in the amount of $10,000, payable to the State of Florida and conditioned upon compliance with ss. 494.001-494.0077, which inures to the office and which must be continuously maintained . . . ."

30.     In addition to requiring the continuous maintenance of a surety bond, Rule 69V-40.250, Florida Administrative Code, requires licensees to provide notice in writing to the Office about changes in the surety bond. Rule 69V-40.250 states, in relevant part:

> (4) Surety Bond. Surety bonds required as a condition of licensure under Sections 494.0061 and 494.0062, F.S., shall be continuously maintained. A copy of the surety bond shall be maintained in the principal place of business in this state and made available to Office of Financial Regulation examiners upon request.
>
> (a) In the event a licensee changes the issuer of the surety bond, or the issuer of the surety bond cancels the bond, a licensee shall inform the Office of Financial Regulation of such change in writing by U.S. certified mail and provide a new surety bond to the Office of Financial Regulation.

31.     Respondent's failure to maintain a separate bank account for all its receipts related to its servicing business constitutes a violation of sections 494.0072(2)(e)&(p) and 494.0076(1)(a)2., Florida Statutes.

32.     Respondent's failure to provide the financial information the Office ordered Respondent to provide in the August 7, 2009 C&D Order constitutes a violation of section 494.0072(2)(j), Florida Statutes.

33.     As noted, above at least eight more states, in addition to those identified in the Office's original C&D Order have entered emergency adverse administrative actions against the Respondent. Each of these actions constitutes a separate violation of section 494.0072(2)(u)2, Florida Statutes.

34.     The cancellation of Respondent's surety bond constitutes a violation of sections 494.0062(2)(d), 494.0072(2)(j), 494.0072(2)(p), Florida Statutes and Rule 69V-40.250, Florida Administrative Code.

35.     Section 120.60(6), Florida Statutes, provides:

> If the agency finds that immediate serious danger to the public health, safety, or welfare requires emergency suspension, restriction, or limitation of a license, the agency may take such action by any procedure that is fair under the circumstances if:

> (a) The procedure provides at least the same procedural protection as is given by other statutes, the State Constitution, or the United States Constitution;

> (b) The agency takes only that action necessary to protect the public interest under the emergency procedure; and

> (c) The agency states in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances. The agency's findings of immediate danger, necessity, and procedural fairness are judicially reviewable. Summary suspension, restriction, or limitation may be ordered, but a

suspension or revocation proceeding pursuant to ss. 120.569 and 120.57 shall also be promptly instituted and acted upon.

36.     Section 120.569(2)(n), Florida Statutes, provides:

If an agency head finds that an immediate danger to the public health, safety, or welfare requires an immediate final order, it shall recite with particularity the facts underlying such finding in the final order, which shall be appealable or enjoinable from the date rendered.

37.     In order to satisfy due process requirements, this First District Court of Appeal held in Premier Travel International, Inc. v. State of Florida Department of Agriculture & Consumer Services, 849 So.2d 1132 (Fla. 1st DCA 2003), that an emergency final order must contain factual allegations demonstrating the following: (1) the complained of conduct was likely to continue; (2) The order was necessary to stop the emergency; (3) the order was sufficiently narrowly tailored to be fair. See id. at 1132-1135; see also Bertany Ass'n for Travel and Leisure, Inc. v. Florida Dept. of Financial Services, 877 So. 2d 854, 855 (Fla. 1st DCA 2004) (stating the three requirements that an emergency order must contain).

38.     Under both section 120.60(6) and 120.569(2)(n), Florida Statutes, Respondent's ongoing activity is seriously jeopardizing Florida consumers. This activity requires the immediate suspension of Respondent's license because the activity poses an immediate danger to public welfare. See Robin Hood Group, Inc. v. Florida Office of Ins. Regulation, 885 So. 2d 393, 395-96 (Fla. 4th DCA 2004); Bertany, 877 So. 2d at 855; cf. Premier Travel International v. State, Dept. of Ag and Consumer Services, 849 So. 2d 1132, 1135 (Fla. 1st DCA 2003) (stating that personal monetary losses can be the sort of danger addressed by section 120.60, Fla. Stat., which contains the similar language to

section 120.569(2)(n) regarding an "immediate serious danger to the public health, safety, or welfare . . . .").

39.    The issuance of this Emergency Order and the procedural safeguards set forth herein are concluded to be fair under the circumstances due to the harm that is being suffered by Florida consumers.    See §120.60(6), Fla. Stat.    The Office intends to promptly amend its pending administrative complaint to incorporate these new grounds or issue a new administrative complaint.    To the extent Respondent disagrees with the Findings of Fact or Conclusions of Law, this order is immediately appealable and enjoinable from the date of its issuance.    See § 120.569(2)(n), Fla. Stat.    Pursuant to the provisions of section 120.68, Florida Statutes, the Respondent is free to seek a stay of this Order from the Office or in court.    Moreover, the Office will promptly file an administrative complaint or amend its pending complaint to include these new violations. The Respondent may request a hearing pursuant to the Notice of Rights attached.

## III.  FINAL ORDER TO IMMEDIATELY CEASE AND DESIST

40.    ACCORDINGLY, based on the facts and law set forth in the foregoing Emergency Order to Cease and Desist, Respondent, and any and all persons acting in concert or cooperation with Respondent, are ORDERED TO CEASE AND DESIST and take the following corrective actions:

A. Respondent shall IMMEDIATELY CEASE AND DESIST depositing funds from Florida consumers into a non-custodial account.

B. Respondent shall IMMEDIATELY CEASE AND DESIST all foreclosure proceedings that it is currently conducting or contemplating.

C. Respondent shall not charge any late fees to Florida consumers on payments received after July 15, 2009 and shall waive any late fees on payments for a period of sixty days from the effective date of this order.

D. Respondent shall not report any Florida consumers to a credit bureau for any payment due during the period starting August 1, 2009 through sixty days from the effective date of this order.

E. Respondent shall immediately place any funds received from Florida consumers for servicing into a segregated account in a federally insured financial institution.

F. As of the effective date of this Order, Respondent shall begin provide a daily summary report in a format acceptable to the Office of all loans that it continues to service and shall continue to provide that report until all loans still left in its servicing portfolio have been transferred to other servicers. The report shall be forwarded in electronic format to J. Paul Newton, Financial Administrator, Bureau of Finance Regulation at jay.newton@flofr.com, by 5:00 PM EST each day.

G. Respondent shall immediately begin making arrangements to transfer the 34,922 remaining private portfolio loans left to other licensed or exempt servicers pursuant to Chapter 494, Florida Statutes.

H. Within fourteen calendar days of the effective date of this order, Respondent shall have transferred the servicing on all federal loans.

I. Within fifteen (15) calendar days of the effective date of this order Respondent shall have signed and executed agreements in place to

transfer the servicing of no less than fifty percent of the remaining 34,922 private portfolio loans. The Office shall be provided with the opportunity to audit the agreements to ensure compliance with this provision.

J. Within thirty (30) calendar days of the effective date of this order, Respondent shall have signed and executed agreements in place to transfer no less than seventy-five percent of the remaining 34,922 private portfolio loans. The Office shall be provided with the opportunity to audit the agreements to ensure compliance with this provision.

K. Within forty-five (45) calendar days of the effective date of this order, Respondent shall have signed and executed agreements in place to transfer all of the remaining 34,922 private portfolio loans. The Office shall be provided with the opportunity to audit the agreements to ensure compliance with this provision.

L. Within sixty (60) calendar days, Respondent shall have transferred the servicing rights for all of the private portfolio loans to other servicers.

M. Within one-hundred twenty (120) calendar days, Respondent shall have transferred all applicable documentation for all of the private portfolio loans to the other servicers.

N. Respondent shall implement appropriate internal controls in order to effectuate the corrective actions contemplated in this Order.

O. Respondent shall endorse and forward all checks received from Florida consumers that are not due the Respondent to the appropriate

and designated servicer within 3 business days.  These checks should be handled with standard industry internal controls by the Respondent.

      P.      Respondent shall promptly resolve any complaints received from Florida consumers.

41.      Nothing in this order or in the above-listed corrective actions shall prevent Respondent from selling or assigning the mortgage servicing rights to another entity.  To the extent that Respondent needs to continue to undertake servicing actions incidental to complying with the terms of this Order, the Office will not consider those actions to be violations of the terms of this Emergency Cease & Desist Order or of Chapter 494, Florida Statutes.

42.      Nothing in this order shall prevent the Office from taking further administrative action and the Office reserves all of its rights, duties, and authority to enforce all statutes, rules and regulations under its jurisdiction against Respondent and its directors, officers, and employees in the future regarding all matters.

      This Order is effective immediately and is final as to the above named Respondent.  However, this Order shall expire upon the entry of a Final Order in an administrative proceeding should a hearing be requested on the matters set forth herein.

      **DONE AND ORDERED** at Tallahassee, Leon County, Florida this 21st day of August, 2009.

LINDA B. CHARITY, Acting Commissioner
Office of Financial Regulation

## **NOTICE OF RIGHTS**

NOTICE IS HEREBY given that the foregoing Emergency Order to Cease and Desist is entered pursuant to sections 120.60(6), 120.569(2)(n) and 494.0041(1), Florida Statutes, and is accordingly effective immediately. Judicial review may be obtained in accordance with section 120.68, Florida Statutes as set forth below. Respondent may apply to the Office for a stay of this Order or, in proceeding for judicial review under section 120.68, Florida Statutes, request supersedeas from the Court. Notice is provided, however, that the Office will oppose supersedeas in this matter under the provisions of section 120.68(3), Florida Statutes.

Judicial review of this Order under section 120.68, Florida Statutes, may be sought within thirty (30) days of its rendition in accordance with Rule 9.110, Florida Rules of Appellate Procedure, by filing a Notice of Appeal with the Clerk, Office of Financial Regulation, Legal Services Office, Suite 526, Fletcher Building, 200 E. Gaines Street, Tallahassee, FL 32399-0379, and a second copy, accompanied by filing fees prescribed by section 35.22, Florida Statutes, with the District Court of Appeal, First District, 301 Martin Luther King, Jr., Boulevard, Tallahassee, FL 32399-1850, or with the district court of appeal in the appellate district where the party resides. The Notice of Appeal must be filed within 30 days of rendition of the order to be reviewed.

Respondent is further advised that they may request a hearing to be conducted in accordance with the provisions of section 120.569 and 120.57, Florida Statutes. Requests for such hearing must comply with the provisions of Rule 28-106.2015, Florida Administrative Code, and must be filed with:

Agency Clerk
Office of Financial Regulation
Legal Services Office
P.O. Box 8050
Tallahassee, Florida 32314-8050

The request must be filed within twenty-one (21) days after the Respondent receives a copy of this Order. BY FAILING TO REQUEST A HEARING WITHIN TWENTY-ONE (21) DAYS, THE RESPONDENT SHALL BE DEEMED TO HAVE WAIVED ALL RIGHTS TO SUCH HEARING AND THE OFFICE SHALL ISSUE A FINAL ORDER AND IMPOSE ADMINISTRATIVE SANCTIONS WITHOUT A HEARING. Should the Respondent request such a hearing, Respondent shall have the right to be represented by counsel or other qualified representative; to offer testimony, either written or oral; to call and cross-examine witnesses; and to have subpoenas and subpoenas duces tecum issued on Respondent's behalf.

Pursuant to section 120.573, Florida Statutes, you are advised that mediation is not available.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this EMERGENCY ORDER TO CEASE

AND DESIST AND NOTICE OF RIGHTS was served by FED EX Overnight Service

and E-mail on:

Mr. Jeffrey W. Cavender, General Counsel
Taylor, Bean & Whitaker Mortgage Corp.
5150 Stilesboro Road
Building 500, Suite 500
Kennesaw, GA 30152

Dated this the 21st Day of August, 2009.

Gregg Riley Morton
Chief Counsel
Office of Financial Regulation
P.O. Box 8050
Tallahassee, FL 32314-8050
(850) 410-9896
(850) 410-9645 – Facsimile

Counsel for the Office



8/7/09

STATE OF FLORIDA, OFFICE OF
FINANCIAL REGULATION,

    Petitioner,

v.

TAYLOR BEAN & WHITAKER
MORTGAGE CORP., licensed under
Part III, Chapter 494, Florida Statutes,

    Respondent.

**Administrative Proceeding
No. 2561-F-08/09**

## EMERGENCY ORDER TO CEASE AND DESIST AND NOTICE OF RIGHTS

The State of Florida, Office of Financial Regulation, ("Office"), being authorized and directed to administer and enforce Chapter 494, Florida Statutes, ("the Act") governing Mortgage Brokerage and Mortgage Lending in the State of Florida, having found that an immediate and serious danger to the public welfare flows from the unlawful activities of Taylor Bean & Whitaker Mortgage Corp. ("Taylor Bean" or "Respondent") hereby issues and serves this **EMERGENCY ORDER TO CEASE AND DESIST.** Pursuant to section 494.0014(1), Florida Statutes, and sections 120.60(6) & 120.569(2)(n), Florida Statutes, Respondent and all persons acting in concert or cooperation with Respondent shall **IMMEDIATELY CEASE AND DESIST** from the concerted course of action in violation of the Act described herein. Pursuant to sections 120.60(6) and 120.569(2)(n), Florida Statutes, this Order is based on the findings of fact set forth below and is **EFFECTIVE IMMEDIATELY**.

# I. FINDINGS OF FACT

1.   The Office is responsible for the administration and enforcement of the Act, and the Office has jurisdiction over Respondent in this matter.

2.   Respondent is a Florida corporation with its corporate headquarters located in Ocala, Florida.

3.   Respondent is licensed with the Office as a mortgage lender pursuant to Part III, Chapter 494, Florida Statutes.

4.   Respondent has thirty active mortgage lender branch licenses with the Office.

5.   Respondent is in the business of originating, servicing, and making mortgage loans.

6.   On August 4, 2009, the Department of Housing and Urban Development issued a press release ("Press Release") that the Federal Housing Administration ("FHA") had suspended Respondent from originating loans insured by FHA. (*See Exhibit "A" attached*).

7.   The Press Release further noted that the Government National Mortgage Association ("Ginnie Mae") was defaulting and terminating Respondent as an issuer in Ginnie Mae's mortgage backed security program and would be terminating Respondent's ability to continue servicing Ginnie Mae securities. (*See Exhibit "A" attached*).

8.   In a letter dated August 4, 2009, the Mortgage Review Board of the U.S. Department of Housing and Urban Development notified Respondent of the immediate suspension of its originating and underwriting approval. (*See Exhibit "B" attached*).

9.     In a letter dated August 4, 2009, Ginnie Mae informed Respondent of the default and termination of its authority to act as a Ginnie Mae issuer or servicer under any of its guaranty agreements. (*See Exhibit "C" attached*).

10.     In a letter dated August 4, 2009, the Federal Home Loan Mortgage Corporation ("Freddie Mac") similarly informed Respondent that it was immediately terminating Respondent's eligibility to sell mortgage loans to and service loans for Freddie Mac. (*See Exhibit "D" attached*).

11.     On August 5, 2009, Respondent issued a press release indicating that it was ceasing all mortgage loan origination operations effective immediately and that it would not close or fund mortgage loans in the pipeline. (*See Exhibit "E" attached*).

12.     Based on representations made by Respondent's general counsel during an August 6, 2009 phone call, Respondent's lines of credit have been suspended and Respondent is unable to fund loans in accordance with agreements they have entered into with Florida consumers.

13.     During the August 6, 2009, phone call Respondent indicated that it would modify its website to indicate that Taylor Bean is no longer originating mortgage loans. However, as of the morning of August 7, 2009, Respondent's website had not been updated. (*See Exhbit "F" attached*).

14.     On August 6, 2009, Respondent provided the Office with a list of loans that included approximately sixty loans to Florida consumers that have already closed but remain unfunded. (*See Exhibit "G" attached*).  As of the date of this order, the Office is unaware of how many additional loans Respondent is involved in or that remain in the pipeline.

15.     Several state agencies that regulate banking and mortgage lenders including Massachusetts, New Jersey, and Pennsylvania have entered adverse administrative orders acting against licenses held by Respondent. (*See Exhibits "H," "I", and "J" attached*).

16.     The Office finds that it is necessary to take emergency and immediate action against Respondents to avoid irreparable harm to Florida consumers resulting from Respondent's ongoing inability to fund agreements that it has entered into with Florida consumers, including loans that have already closed.

17.     In addition to this Emergency Cease and Desist Order, the Office is also promptly bringing an administrative complaint to make this Emergency Cease and Desist Order permanent.    The Office intends to issue this administrative complaint no later than Monday August 10, 2009.

18.     The Office finds that Respondent's failure to fund agreements has already caused considerable harm to Florida consumers.    The Office also finds that this conduct is ongoing and is likely to continue.    In the absence of this Order's immediate effect, the Respondent would be able to continue to engage in lending activities which will further harm Florida citizens.

19.     The Office recognizes the need to narrowly tailor emergency actions and further finds that it may be necessary for the protection of Florida consumers for the Respondent to continue to conduct certain activities, such as attempting to place closed loans with other lenders or servicing of loans where those servicing rights have not been suspended. Moreover, the Office finds that the need for cooperation from Respondent is necessary in order to best protect Florida consumers.    This finding does not preclude the Office from

reassessing this developing matter or taking additional administrative action against Respondent.

## II. CONCLUSIONS OF LAW

20.     The Office is responsible for the administration and enforcement of Chapter 494, Florida Statutes, and has jurisdiction over Respondent pursuant to Sections 494.001-494.0077, Florida Statutes. § 494.0011(1), Fla. Stat.

21.     Pursuant to section 494.0014, Florida Statutes, the Office "has the power to issue and serve upon any person an order to cease and desist and to take corrective action whenever it has reason to believe the person is violating, has violated, or is about to violate any provision of ss. 494.001-494.0077."

22.     Section 494.0072, Florida Statutes, provides in relevant part:

>      (1) Whenever the office finds a person in violation of an act specified in subsection (2), it may enter an order imposing one or more of the following penalties against that person:
>      . . .
>      (b) Suspension of a license or registration, subject to reinstatement upon satisfying all reasonable conditions that the office specifies.
>      . . .
>      (2) Each of the following acts constitutes a ground for which the disciplinary actions specified in subsection (1) may be taken:
>      . . .
>      (g) Failure to disburse funds in accordance with agreements.
>      . . .
>      (u)2. Having been the subject of any injunction or adverse administrative order by a state or federal agency regulating banking, insurance, finance or small loan companies, real estate, mortgage brokers or lenders, money transmitters, or other related or similar industries.

23.     Respondent's inability to fund loans in accordance with agreements with Florida consumers constitutes a violation of section 494.0072(2)(g), Florida Statutes.

24.     The Mortgage Review Board of the U.S. Department of Housing and Urban development issued an immediately suspension of Respondent's originating and underwriting approval.  This immediate suspension constitutes a violation of section 494.0072(2)(u)2., Florida Statutes.

25.     The letters from Ginnie Mae and Freddie Mac attached as Exhibits "C" and "D" also constitute adverse actions in violation of section 494.0072(2)(u)2., Florida Statutes.

26.     As noted in the findings of fact, Massachusetts, New Jersey, and Pennsylvania have entered adverse administrative orders acting against licenses held by Respondent. These orders also constitute a violation of section 494.0072(2)(u)2, Florida Statutes.

27.     Section 120.60(6), Florida Statutes, provides:

> If the agency finds that immediate serious danger to the public health, safety, or welfare requires emergency suspension, restriction, or limitation of a license, the agency may take such action by any procedure that is fair under the circumstances if:

> (a) The procedure provides at least the same procedural protection as is given by other statutes, the State Constitution, or the United States Constitution;

> (b) The agency takes only that action necessary to protect the public interest under the emergency procedure; and

> (c) The agency states in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances. The agency's findings of immediate danger, necessity, and procedural fairness are judicially reviewable. Summary suspension, restriction, or limitation may be ordered, but a suspension or revocation proceeding pursuant to ss. 120.569 and 120.57 shall also be promptly instituted and acted upon.

28.     Section 120.569(2)(n), Florida Statutes, provides:

> If an agency head finds that an immediate danger to the public health, safety, or welfare requires an immediate final order, it shall recite with

particularity the facts underlying such finding in the final order, which shall be appealable or enjoinable from the date rendered.

29.    In order to satisfy due process requirements, this First District Court of Appeal held in <u>Premier Travel International, Inc. v. State of Florida Department of Agriculture &</u> <u>Consumer Services</u>, 849 So.2d 1132 (Fla. 1st DCA 2003), that an emergency final order must contain factual allegations demonstrating the following: (1) the complained of conduct was likely to continue; (2) The order was necessary to stop the emergency; (3) the order was sufficiently narrowly tailored to be fair.  <u>See id.</u> at 1132-1135; <u>see also</u> <u>Bertany Ass'n for Travel and Leisure, Inc. v. Florida Dept. of Financial Services</u>, 877 So. 2d 854, 855 (Fla. 1st DCA 2004) (stating the three requirements that an emergency order must contain).

30.    Under both section 120.60(6) and 120.569(2)(n), Florida Statutes, Respondent's ongoing activity is resulting in economic harm and loss of money by Florida consumers as referenced in the findings of fact.  This activity requires an immediate final order because it poses an immediate danger to public welfare.  <u>See Robin Hood Group, Inc. v.</u> <u>Florida Office of Ins. Regulation</u>, 885 So. 2d 393, 395-96 (Fla. 4th DCA 2004); <u>Bertany</u>, 877 So. 2d at 855; <u>cf. Premier Travel International v. State, Dept. of Ag and Consumer</u> <u>Services</u>, 849 So. 2d 1132, 1135 (Fla. 1st DCA 2003) (stating that personal monetary losses can be the sort of danger addressed by section 120.60, Fla. Stat., which contains the similar language to section 120.569(2)(n) regarding an "immediate serious danger to the public health, safety, or welfare . . . .").

31.    In the instant case, the facts, as recited with particularity above, demonstrate that Respondent's activities are likely to continue and that this order is necessary to stop any additional violations.  While Respondent has stated that it will not originate new loans or

accept new applications, it has not updated its website to reflect that is has stopped accepting new loans. Moreover, Respondent has identified that there are at least sixty instances where Florida consumers have loans which were scheduled to close, but Respondent failed to fund. The Office is currently unaware of how many more loans that are in some stage of completion.

32.    Moreover, the issuance of this Emergency Cease & Desist Order and the procedural safeguards set forth herein are concluded to be fair under the circumstances due to the harm that is being suffered by Florida consumers. See §120.60(6), Fla. Stat. To the extent Respondent disagrees with the Findings of Fact or Conclusions of Law, this order is immediately appealable and enjoinable from the date of its issuance. See § 120.569(2)(n), Fla. Stat. Pursuant to the provisions of section 120.68, Florida Statutes, the Respondent is free to seek a stay of this Order from the Office or in court. Moreover, this order is being promptly followed by an administrative complaint that will entitle the Respondent to request a hearing pursuant to the Notice of Rights attached.

## III.  FINAL ORDER TO IMMEDIATELY CEASE AND DESIST

33.    ACCORDINGLY, based on the facts and law set forth in the foregoing Emergency Order to Cease and Desist, Respondent, and any and all persons acting in concert or cooperation with Respondent, are ORDERED TO CEASE AND DESIST and take the following corrective actions:

A. Respondent shall IMMEDIATELY CEASE AND DESIST accepting any applications, either directly from consumers or from

mortgage brokers, for mortgage loans secured by Florida real property or from Florida consumers.

B.     Respondent shall IMMEDIATELY CEASE AND DESIST advertising any mortgage loans in Florida or to Florida consumers, including but not limited to modifying its website to indicate that Taylor Bean is longer originating mortgage loans.

C.     Within five days of the Effective Date of this Order, Respondent shall place any fees previously collected from Florida consumers relative to any pending mortgage loan applications in a separate escrow account maintained at a federally insured depository institution.

D.     Respondent shall attempt to obtain funding for, or place with another lender, all loans to Florida consumers that have closed but not yet been funded at no cost to the consumer.

E.     Respondent shall attempt to either (i) obtain funding for and close, or (ii) place with other lenders, all loan applications from Florida consumers for which loan commitments have been issued.

F.     For loan applications from Florida consumers for which no commitment has been issued Respondent shall either (i) obtain funding for and close the loans, or (ii) place with other lenders, or (iii) deny for cause, the loan applications.   This paragraph shall not apply if the Florida consumer or the representative mortgage broker has voluntarily withdrawn the loan application.

G.    Within five calendar[1] days of the effective date of this order, Respondent shall notify all Florida mortgage applicants, or the mortgage applicant's broker, of the status of any applications or loans with Respondent and the likelihood of obtaining funding.

H.    **No later than Monday August 10, 2009 at 5:00 PM EST,** Respondent shall provide a point (or points) of contact at Taylor Bean and a name, physical address, and phone number that can be used by mortgage brokers and consumers for complaints.

I.    Within five days of the effective date of this order, Respondent shall provide to the Office a report of all loans to Florida consumers that have closed but not been funded detailing the status of the loan. The report shall include the Florida consumer's name, address and telephone number; the loan number; the amount of all prepaid loan fees submitted; the amount of each loan; the rate lock status; the actual closing date; whether the loan was a purchase or refinance; the identification of the applicable lender with whom each loan will be placed and contact information for that lender. The report shall be forwarded in electronic format to Jay Newton, Financial Administrator, Bureau of Finance Regulation at jay.newton@flofr.com, by 5:00 PM EST on the fifth day following the effective date of this order.

J.    Within five days of the effective date of this order, Respondent shall provide to the Office a report of all applications accepted from Florida consumers that have not yet closed detailing the status of the

---

[1] References herein to days in which to undertake actions are calendar days unless otherwise specified.

application. The report shall include the Florida consumer's name, address and telephone number; the loan number (if applicable); the amount of all prepaid loan fees submitted; the amount of each loan; the current application status; the rate lock status; the actual closing dates; whether the loan was a purchase or refinance; the identification of the applicable lender with whom each loan will be placed and contact information for that lender. The report shall be forwarded in electronic format to Jay Newton, Financial Administrator, Bureau of Finance Regulation, at jay.newton@flofr.com, by 5:00 PM EST on the fifth day following the effective date of this order.

K. As of the effective date of this order, Respondent shall release any liens filed on any Florida real property or filed on property owned by Florida consumers as a result of a mortgage loan closing with Respondent but not being funded. In the event that the loan subsequently funds Respondent may file a lien against the property at that time.

L. Within five days of the effective date of this order, Respondent shall submit a balance sheet and year-to-date income statement, prepared as of the date of submission, and attested by a duly authorized officer of the Corporation. The financial information shall be forwarded in electronic format to Jay Newton, Financial Administrator, Bureau of Finance Regulation, at jay.newton@flofr.com, by 5:00 PM EST on the fifth day following the effective date of this order.

M.     Within five days of the effective date of this order, respondent shall provide a complete listing of all warehouse loans and other lines of credit open or otherwise available to the respondent, as well as the unused balance of each line.  This information shall be forwarded in electronic format to Jay Newton, Financial Administrator, Bureau of Finance Regulation, at jay.newton@flofr.com, by 5:00 PM EST on the fifth day following the effective date of this order.

N.     Respondent shall use every best effort to resolve their current inability to fund loans.

34.     Nothing in this order or in the above-listed corrective actions shall prevent Respondent from selling or assigning residential mortgage loans to another entity, servicing closed mortgage loans or engaging in other activity not prohibited herein or by Chapter 494, Florida Statutes.

35.     Nothing in this order shall prevent the Office from taking further administrative action and the Office reserves all of its rights, duties, and authority to enforce all statutes, rules and regulations under its jurisdiction against Respondent and its directors, officers, and employees in the future regarding all matters.

This Order is effective immediately and is final as to the above named Respondent. However, this Order shall expire upon the entry of a Final Order in an administrative proceeding should a hearing be requested on the matters set forth herein.

**DONE AND ORDERED** at Tallahassee, Leon County, Florida this 7th day of August, 2009.

LINDA B. CHARITY, Acting Commissioner
Office of Financial Regulation

## NOTICE OF RIGHTS

NOTICE IS HEREBY given that the foregoing Emergency Order to Cease and Desist is entered pursuant to sections 120.60(6), 120.569(2)(n) and 494.0041(1), Florida Statutes, and is accordingly effective immediately. Judicial review may be obtained in accordance with section 120.68, Florida Statutes as set forth below. Respondent may apply to the Office for a stay of this Order or, in proceeding for judicial review under section 120.68, Florida Statutes, request supersedeas from the Court. Notice is provided, however, that the Office will oppose supersedeas in this matter under the provisions of section 120.68(3), Florida Statutes.

Judicial review of this Order under section 120.68, Florida Statutes, may be sought within thirty (30) days of its rendition in accordance with Rule 9.110, Florida Rules of Appellate Procedure, by filing a Notice of Appeal with the Clerk, Office of Financial Regulation, Legal Services Office, Suite 526, Fletcher Building, 200 E. Gaines Street, Tallahassee, FL 32399-0379, and a second copy, accompanied by filing fees prescribed by section 35.22, Florida Statutes, with the District Court of Appeal, First District, 301 Martin Luther King, Jr., Boulevard, Tallahassee, FL 32399-1850, or with the district court of appeal in the appellate district where the party resides. The Notice of Appeal must be filed within 30 days of rendition of the order to be reviewed.

Respondent is further advised that they may request a hearing to be conducted in accordance with the provisions of section 120.569 and 120.57, Florida Statutes. Requests for such hearing must comply with the provisions of Rule 28-106.2015, Florida Administrative Code, and must be filed with:

Agency Clerk
Office of Financial Regulation
Legal Services Office
P.O. Box 8050
Tallahassee, Florida 32314-8050

The request must be filed within twenty-one (21) days after the Respondent receives a copy of this Order. BY FAILING TO REQUEST A HEARING WITHIN TWENTY-ONE (21) DAYS, THE RESPONDENT SHALL BE DEEMED TO HAVE WAIVED ALL RIGHTS TO SUCH HEARING AND THE OFFICE SHALL ISSUE A FINAL ORDER AND IMPOSE ADMINISTRATIVE SANCTIONS WITHOUT A HEARING. Should the Respondent request such a hearing, Respondent shall have the

right to be represented by counsel or other qualified representative; to offer testimony, either written or oral; to call and cross-examine witnesses; and to have subpoenas and subpoenas duces tecum issued on Respondent's behalf.

Pursuant to section 120.573, Florida Statutes, you are advised that mediation is not available.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this EMERGENCY ORDER TO CEASE

AND DESIST AND NOTICE OF RIGHTS was served by FED EX Overnight Service,

Facsimile, and E-mail on:

Mr. Jeffrey W. Cavender, General Counsel
Taylor, Bean & Whitaker Mortgage Corp.



Dated this the 7th Day of August, 2009.

Gregg Riley Morton
Chief Counsel
Office of Financial Regulation
P.O. Box 8050
Tallahassee, FL 32314-8050
(850) 410-9896
(850) 410-9645 – Facsimile

Counsel for the Office

This page is located on the U.S. Department of Housing and Urban Development's Homes and Communities Web site at **http://www.hud.gov/news/release.cfm?CFID=18459075&CONTENT=pr09-145.cfm&CFTOKEN=23800760**.



# News Release

☑ Information by State

🔲 Esta página en español

🖨 Print version

**HUD No. 09-145**
**Brian Sullivan**
**(202) 708-0685**
www.hud.gov/news/

**For Release**
**Tuesday**
**August 4, 2009**

---

## FHA SUSPENDS TAYLOR, BEAN & WHITAKER MORTGAGE CORP. AND PROPOSES TO SANCTION TWO TOP OFFICIALS
### *Ginnie Mae Issues Default Notice and Transfers Portfolio*

WASHINGTON - The Federal Housing Administration (FHA) today suspended Taylor, Bean and Whitaker Mortgage Corporation (TBW) of Ocala, Florida, thereby preventing the Company from originating and underwriting new FHA-insured mortgages. The Government National Mortgage Association (Ginnie Mae) is also defaulting and terminating TBW as an issuer in its Mortgage-Backed Securities (MBS) program and is ending TBW's ability to continue to service Ginnie Mae securities. This means that, effective immediately, TBW will not be able to issue Ginnie Mae securities, and Ginnie Mae will take control of TBW's nearly $25 billion Ginnie Mae portfolio.

FHA and Ginnie Mae are imposing these actions because TBW failed to submit a required annual financial report and misrepresented that there were no unresolved issues with its independent auditor even though the auditor ceased its financial examination after discovering certain irregular transactions that raised concerns of fraud. FHA's suspension is also based on TBW's failure to disclose, and its false certifications concealing, that it was the subject of two examinations into its business practices in the past year.

"Today, we suspend one company but there is a very clear message that should be heard throughout the FHA lending world - operate within our standards or we won't do business with you," said HUD Secretary Shaun Donovan.

FHA Commissioner David Stevens said, "TBW failed to provide FHA with financial records that help us to protect the integrity of our insurance fund and our ability to continue a 75-year track record of promoting, preserving and protecting the American Dream. We were also troubled that the Company not only failed to disclose it was a target of a multi-state examination and a separate action by the Commonwealth of Kentucky, but then falsely certified that it had not been sanctioned by any state. FHA won't tolerate irresponsible lending practices."

Ginnie Mae President Joseph Murin said, "I would like to reassure TBW's customers whose loans serve as collateral for Ginnie Mae securities that, although this action



will result in a new servicer, the transition will be seamless for them."

TBW's immediate suspension is for a temporary period pending the completion of an investigation by HUD's Office of Inspector General, an ongoing review by the Department's Office of Housing, and any legal proceedings that may ensue. TBW is the third largest direct endorsement lender of FHA-insured loans and the eighth largest issuer of Ginnie Mae mortgage-backed securities. FHA decided that TBW's immediate suspension is in the best interest of the public and is necessary to protect the financial interests of the Department.

TBW may appeal its immediate suspension by submitting a written request for a hearing before an Administrative Law Judge within 30 days. Such a request will not delay the action FHA is announcing today.

In conjunction with TBW's suspension, HUD sent notices of proposed debarment to TBW's Chief Executive Officer, Paul R. Allen, and TBW's President, Ray Bowman. Mr. Allen's proposed debarment alleges that he submitted false and/or misleading information to Ginnie Mae regarding TBW's delay in submitting its audited financial reports for fiscal year ending on March 31, 2009. Mr. Bowman's proposed debarment alleges that he submitted two false certifications to HUD on TBW's Yearly Verification Report. Mr. Allen and Mr. Bowman have thirty days to contest the proposed debarments.

### # # #

*HUD is the nation's housing agency committed to sustaining homeownership; creating affordable housing opportunities for low-income Americans; and supporting the homeless, elderly, people with disabilities and people living with AIDS. The Department also promotes economic and community development and enforces the nation's fair housing laws.*

*Ginnie Mae is a wholly-owned government corporation within the U.S. Department of Housing and Urban Development. Ginnie Mae pioneered the mortgage-backed security (MBS), guaranteeing the very first security in 1971. An MBS enables a mortgage lender to aggregate and sell mortgage loans as a security to investors. Ginnie Mae securities carry the full faith and credit of the United States Government, which means that, even in difficult times, an investment in Ginnie Mae is one of the safest an investor can make.*

*More information about HUD and Ginnie Mae is available on the Internet at www.hud.gov, espanol.hud.gov and www.ginniemae.gov*

**U.S. Department of Housing and Urban Development**
451 7th Street, S.W., Washington, DC 20410
Telephone: (202) 708-1112  Find the address of a HUD office near you

**VIA FACSIMILE AND UPS OVERNIGHT**

Mr. Ray Bowman
President
Taylor, Bean & Whitaker Mortgage Corporation
315 NE 14th Street
Ocala, FL 34470

     Re:    Notice of Administrative Action
              Immediate Suspension
              Taylor, Bean & Whitaker Mortgage Corporation
              Mortgagee No. 74991-0000-8
              Docket No. 09-9866-MR(S)

Dear Mr. Bowman:

      This is to advise you that the Mortgagee Review Board ("Board") of the U.S. Department of Housing and Urban Development ("HUD") has suspended the HUD/FHA origination and underwriting approval of Taylor, Bean & Whitaker Mortgage Corporation ("TBW"), pursuant to 12 U.S.C. § 1708(c) and Title 24, Code of Federal Regulations ("C.F.R."), Part 25, copies of which are enclosed. This suspension is effective immediately.

      You are hereby notified pursuant to 24 C.F.R. § 25.9 that this immediate suspension is based upon adequate evidence of violations under 24 C.F.R. § 25.6. TBW violated multiple HUD requirements by: (1) failing to timely submit the required annual audit report of its financial condition; (2) submitting a false certification and/or misleading information to Ginnie Mae; (3) failing to report irregularities in connection with its FY 2008 Audit; (4) failing to report irregularities in connection with its loan origination practices; (5) failing to comply with HUD's approval requirements; and (6) submitting false certifications to HUD on TBW's Yearly Verification Report ("YVR"). *See* 24 C.F.R. §§ 25.6(e), (g), (j), (p) and (ff); 24 C.F.R. § 5.801; 24 C.F.R. §§ 202.5(g), (j), (m); 24 C.F.R. § 202.7(b)(4); HUD Handbook 4060.1, REV-2, Chapter 1-14; and GNMA Mortgage-Backed Securities Guide, Chapter 23-6.

      Specifically, TBW failed to comply with HUD's regulations requiring the submission of audited financial reports when it failed to submit its audited financial report to FHA for its fiscal year ending on March 31, 2009. Pursuant to 24 C.F.R. § 5.801, TBW was required to file its audited financial report within 90 days following the close of its fiscal year, but TBW has failed to submit this report to FHA. *See* 24 C.F.R. §§ 25.6(e), (g), (j), (p), and (ff); 24 C.F.R. §§ 5.801, 202.5(g), and 202.7(b)(4).

      TBW also submitted a false certification and/or misleading information to Ginnie Mae. On July 6, 2009, TBW responded in writing to Ginnie Mae's July 2, 2009 inquiry, by stating that the delay in submitting its audit report to Ginnie Mae was due to a shortened fiscal year and



EXHIBIT
B

2

two significant events: (1) TBW's acquisition of Platinum Bancshares in 2008; and (2) TBW's planned equity investment in Colonial Bank. TBW stated that with regard to unresolved issues with the auditor that there "are no unresolved issues." Additionally, TBW stated that it "fully expect[s] the auditor's opinion to be unqualified." TBW's written response to Ginnie Mae's July 2, 2009 letter was false and misleading because the reason for TBW's delay in submitting the audit was that its auditors, Deloitte & Touche, stopped their audit of TBW on June 16, 2009, due to their discovery of transactions that raised concerns of fraud including debt transactions with a third party amounting to approximately $230 million and $250 million. In TBW's July 27, 2009 written response to Ginnie Mae's July 22, 2009 request for further explanation of Deloitte & Touche's findings, TBW admitted that its previous representation that there were no unresolved issues was incorrect, and there are currently still unresolved issues with the auditor. Pursuant to Chapter 23-6 of the Mortgage-Backed Securities Guide, any statement to Ginnie Mae constitutes a certification by TBW of the accuracy of the information. Accordingly, TBW made a false certification to GNMA in its July 6, 2009 submission. *See* 24 C.F.R. § 25.6(p) and GNMA Mortgage-Backed Securities Guide, Chapter 23-6.

TBW failed to report irregularities discovered by its auditors, Deloitte & Touche, in connection with its FY 2008 audit as required by HUD. As stated above, Deloitte & Touche stopped their audit of TBW on June 16, 2009 due to their discovery of transactions that raised concerns of fraud including debt transactions with a third party amounting to approximately $230 million and $250 million, which TBW failed to report to HUD. *See* 24 C.F.R. §§ 25.6(g), (j), (p), and (ff) and HUD Handbook 4060.1, REV-2, Chapter 1-14.

TBW also failed to report irregularities that were the subject of a multi-state examination concerning TBW's compliance with applicable laws, regulations and rules governing the mortgage business. This examination resulted in TBW's execution of a settlement agreement on June 19, 2009, with thirteen states and the District of Columbia, in which TBW agreed to pay $9 million in settlement. TBW also failed to report irregularities that were the subject of an examination by the Commonwealth of Kentucky in 2008. During the course of the Kentucky examination, it was discovered that TBW funded numerous loans brokered by unlicensed loan brokers and originated by unregistered loan officers. The Kentucky examination resulted in TBW agreeing to pay a fine of $75,000 and voluntary contribution of $75,000 in August 2008. *See* 24 C.F.R. §§ 25.6(g), (j), (p), and (ff) and HUD Handbook 4060.1, REV-2, Chapter 1-14.

TBW failed to continue to meet HUD's general approval standards and is ineligible for continued approval because it is engaged in business practices that do not conform to generally accepted practices of prudent mortgagees or demonstrate irresponsibility. The multi-state examination by thirteen states and the District of Columbia and the ensuing settlement agreement as well as the Kentucky examination and fine demonstrate that TBW did not comply with prudent lending practices and otherwise demonstrated irresponsibility. The failure to report the audit irregularities and TBW's false certification and/or misleading statements to Ginnie Mae, as stated above, also make it ineligible to participate as an approved mortgagee because it demonstrates imprudent lending practices and irresponsibility. *See* 24 C.F.R. §§ 25.6(g), (j), (p), and (ff) and 24 C.F.R. § 202.5(j).

<br>

In addition, TBW submitted false certifications to HUD on its YVR. TBW's President, Ray Bowman, certified that to the best of his knowledge that TBW conformed to all HUD-FHA regulations. This was a false certification because at the time TBW submitted its YVR, TBW was not complying with HUD's regulations regarding mortgagee eligibility as noted above. Thus, TBW falsely certified that it conformed to all HUD-FHA regulations necessary to maintain approval when it submitted the YVR. TBW also falsely certified on its YVR that TBW had not been sanctioned by any state in which it originates and/or services HUD-FHA mortgages. This certification was false because TBW was involved in an examination by the Commonwealth of Kentucky, where it originates and/or services mortgages, that ultimately resulted in a fine of $75,000 and a monetary contribution of $75,000. *See* 24 C.F.R. §§ 25.6(g), (j), (p), and (ff) and 24 C.F.R. § 202.5(m).

HUD's Office of the Inspector General (OIG) has commenced an investigation of TBW and HUD's Office of Housing has commenced a review of TBW, both of which are currently ongoing. Due to the seriousness of these violations, as well as the inherent risk to the Department and the public, the Board immediately suspended TBW's origination and underwriting approval without prior notice of violation pursuant to 24 C.F.R. § 25.7(d). TBW's immediate suspension is for a temporary period pending the completion of the OIG investigation and the review by the Office of Housing into TBW's business practices and any legal proceedings that may ensue. Because TBW is FHA's third largest direct endorsement lender of FHA-insured loans, the fifth largest Ginnie Mae issuer, a participant in FHA's Lender Insurance program, unsupervised by other Federal authorities, and has a high default rate, TBW's immediate suspension is in the best interest of the Department and the public and is necessary to protect the financial interests of the Department.

TBW may appeal its immediate suspension by submitting a request for a hearing within 30 days of its receipt of this letter pursuant to 24 C.F.R. § 25.10. Please note that contesting a suspension does not stay the action. A request for a hearing must be made in writing and specifically respond to the violations set forth in this Notice of Administrative Action.

A copy of the request must be filed with the Office of Administrative Law Judges as follows:

If filing by United States Postal Service (USPS):
Office of Administrative Law Judges
451 7th Street S.W. Room, B-133
Washington, D.C. 20410

If sending by non-USPS couriers send to:
Office of Administrative Law Judges
409 3rd Street S.W., Suite 201
Washington, D.C. 20024

If sending by email scanned attachment:
alj.alj@hud.gov

A copy of the request must also be sent simultaneously to the Mortgagee Review Board Docket Clerk at the following address:

Mortgagee Review Board Docket Clerk
U.S. Department of Housing and Urban Development
1250 Maryland Avenue, SW, Suite 200
Washington, DC 20024

If TBW appeals this suspension, the appeal will be heard by an Administrative Law Judge in accordance with the Department's procedures at 24 C.F.R. Part 26, Subpart B, and this Notice shall serve as the Government's Complaint. A copy of 24 C.F.R. Part 26 is also enclosed. If TBW does not request a hearing within the thirty (30) day period, the Board's action shall become final.

The Board's action does not in any way affect TBW's continuing responsibility in connection with outstanding HUD/FHA-insured mortgage loans and TBW's obligation to pay all fees or premiums now or hereafter due the Department. The Department will not endorse any mortgage originated by a suspended mortgagee unless, prior to the date of the suspension, a firm commitment has been issued relating to any such mortgage, or a direct endorsement underwriter has approved the mortgagor, evidenced by the signing of the FHA Loan Transmittal Summary and/or receipt of an accept or approve from an Automated Underwriting System using the Total Scorecard, for any such mortgage. All other mortgages in process must be properly assigned to another approved HUD/FHA mortgagee.

Effective upon issuance of this letter, the Department will not issue new case numbers or accept new applications for commitments (except as noted above) and will return pending applications. All relevant Department field offices have been advised of this action.

Sincerely,

David H. Stevens
Assistant Secretary for Housing –
Federal Housing Commissioner
Chairman, Mortgagee Review Board

Enclosures

**Your Comments Are Important**

The Small Business and Agriculture Regulatory Enforcement Ombudsman and 10 Regional Fairness Boards were established to receive comments from small businesses about federal agency enforcement actions. The Ombudsman will annually evaluate the enforcement activities and rate each agency's responsiveness to small business. If you wish to comment on the enforcement actions of the Department of Housing and Urban Development, you will find the necessary comment forms at http://www.sba.gov/ombudsman or call 1-888-REG-FAIR (1-888-734-3247).



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-9000

PRESIDENT, GOVERNMENT
NATIONAL MORTGAGE ASSOCIATION

August 4, 2009

## VIA FACSIMILE AND HAND DELIVERY

Mr. Lee Farkas
Chairman of the Board
Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Avenue
Ocala, FL 34475-9078

Re: Taylor, Bean & Whitaker, Issuer ID 3869

Dear Mr. Farkas:

This letter concerns mortgage-backed securities (MBS) pools established under Guaranty Agreements executed between Taylor, Bean & Whitaker, a Florida corporation (TBW) as issuer, and the Government National Mortgage Association (Ginnie Mae) as guarantor of the securities.

Notice of Default

Ginnie Mae has learned of certain actions by TBW that constitute events of default under the terms of the Guaranty Agreements. Those actions include:

1.   Suspension of FHA Approval

In a letter dated August 4, 2009, the Federal Housing Administration (FHA) notified TBW of the immediate suspension of its HUD-FHA Title II approval for failure to submit required audited financial statements, misrepresentation and false certification. The suspension of TBW's FHA-approved status constitutes an event of immediate default under Section 10.01(a)(8) of the Guaranty Agreements. Accordingly, Ginnie Mae declares an event of default under Section 10.01(a)(8) of each Guaranty Agreement.

2.   Failure to File Annual Audited Financial Statements

TBW did not file its audited financial statements by June 30, 2009, as required by Article 7.02(b) of the Guaranty Agreements between Ginnie Mae and TBW and Chapter 3-7(A) of the Mortgage-Backed Securities Guide. By letter dated July 2, 2009, Ginnie Mae notified TBW that its failure to timely file audited financial statements would constitute an event of default if it were not remedied or corrected to Ginnie Mae's satisfaction within thirty (30) days. TBW was directed to provide a written statement that satisfactorily addressed the failure to submit the audited financial statements within thirty days of the date of this letter. Specifically, TBW was directed to confirm that it had cured the violation or provide an acceptable plan for curing this violation. To date, Ginnie Mae has neither received the audited financial statements nor has Ginnie Mae been provided

EXHIBIT C  tabbies

with an acceptable plan in response to the July 2nd letter. Accordingly, the failure to provide audited financial statements constitutes an event of default under Section 10.01(b) of the Guaranty Agreements.

3.    False Statements

TBW falsely represented to Ginnie Mae the reasons for the delay in submitting its audited financial statements. Specifically, in a letter dated July 6, 2009, TBW stated that the delay was caused by TBW's shortened fiscal year, its acquisition of Platinum Bancshares and its planned equity investment in another entity. TBW also stated that there were no unresolved issues with the auditor, that TBW expected the audit to be filed in mid-July, and that it expected the opinion to be unqualified.

On July 20, 2009, Ginnie Mae learned from TBW's auditor Deloitte & Touche, LLP (Deloitte) that it had stopped its audit of TBW on June 16, 2009, due to Deloitte's discovery of transactions that raised concerns of fraud, including debt transactions with a third party amounting to approximately $230 million and $250 million respectively. Deloitte also noted TBW's failure to provide requested documentation on these and other issues. Deloitte advised Ginnie Mae that it had informed TBW of concerns regarding the debt transactions and TBW's failure to provide documents, and had recommended that TBW hire outside counsel to conduct an investigation. Deloitte indicated that it had performed no further work on the audit since its notification of the above issues to TBW. By letter dated July 22, 2009, Ginnie Mae requested an explanation of the discrepancy between this information and the information in the July 6, 2009 letter. By letter dated July 27, 2009, TBW acknowledged that, on June 16th, Deloitte had raised concerns to TBW and recommended hiring outside counsel. TBW further acknowledged that it hired Troutman Sanders on June 19th and was advised that Deloitte's concern included possible fraud.

The statements of TBW in its July 6, 2009 letter are materially inconsistent with the information provided by Deloitte and subsequently acknowledged by TBW. Accordingly, the July 6th letter constitutes a false statement to Ginnie Mae. Pursuant to Chapter 23-6 of the Mortgage-Backed Securities Guide (Guide) any statement to Ginnie Mae constitutes a certification by TBW of the accuracy of the information. Providing false information is an event of default under Section 10.01(a)(9) of the Guaranty Agreements.

Accordingly, Ginnie Mae declares an event of default under Sections 10.01(a)(8), 10.01(a)(9) and 10.01(b) of each Guaranty Agreement.

Pursuant to Sections 10.04 and 10.05 of the Guaranty Agreements, upon such default by TBW, Ginnie Mae is entitled to terminate TBW's authority to act as a Ginnie Mae issuer and to complete the extinguishment of any redemption, equitable, legal or other right, title and interest of TBW in the mortgage pools (termination and extinguishment). Pursuant to such authority, by this letter Ginnie Mae is terminating TBW's authority to act as a Ginnie Mae issuer. As a consequence of its default, TBW may no longer act as an issuer or servicer under any of its Guaranty Agreements. Furthermore, Ginnie Mae, by its declaration of default, extinguishes any redemption, equitable, legal or other right, title and interest of TBW in the mortgages pooled under each and every Guaranty Agreement and makes the mortgages the absolute property of Ginnie Mae, subject

only to any unsatisfied rights of the securities holders. In so doing, Ginnie Mae is acting pursuant to the authority conferred upon it under Section 306(g) of the National Housing Act and Sections 10.04 and 10.05 of each Guaranty Agreement.

Pursuant to its authority under Section 10.06 of each Guaranty Agreement, Ginnie Mae instructs TBW to turn over immediately to Ginnie Mae, or to its designee, all of the following records in your possession belonging to Ginnie Mae whether or not generated by TBW when servicing the securities and mortgages:

1.   Loan files, ledger cards, and other records pertaining to the foregoing pooled mortgages. This includes manual and computer generated records maintained by TBW or any of its agents;

2.   The registration records showing the past and current holders, the successive transfers, and other information with respect to the mortgage-backed securities guaranteed under each Guaranty Agreement;

3.   All records showing or relating to monthly payments made to the holders of such mortgage-backed securities, including, without limitation, all canceled checks;

4.   All tax and insurance escrow custodial accounts and all principal and interest custodial accounts; and

5.   Any other funds or assets and all other records or other information pertaining to the origination and servicing of the mortgages and each of the Guaranty Agreements and the mortgage-backed securities pools.

Your attention is directed to Article 10.07 of the Guaranty Agreements, under which TBW is required to render Ginnie Mae the fullest assistance practicable. In connection with this obligation to cooperate, we have attached a letter from TBW to Sparta Special Servicing, TBW's affiliate handling late stage servicing of delinquent loans including loans in Ginnie Mae pools. The letter directs Sparta to provide Ginnie Mae with access to information and documents on mortgages backing Ginnie Mae securities as needed. This letter must be immediately executed by TBW. In addition, we understand that TBW has contracted with an outside party regarding administration of taxes and insurance payments relating to loans TBW services. TBW must immediately provide Ginnie Mae with access to documents and information held by this entity pertaining to any loans in Ginnie Mae pools.

The action taken by Ginnie Mae by this letter shall not be deemed to preclude Ginnie Mae from taking any further remedial action against TBW (and its directors, officers or employees) deemed appropriate by Ginnie Mae as a result of its investigation into the matters addressed herein, including, but not limited to, debarment, civil suit for money damages, and imposition of civil money penalties.

Ginnie Mae appreciates your cooperation on this matter. If you have any questions, please contact Paul St. Laurent, III, Director of Monitoring Division, Mortgage-Backed Securities, at (202) 475-4937.

Sincerely,

Joseph Murin

Enclosure



**Freddie Mac**

We make home possible℠

VIA ELECTRONIC DELIVERY and OVERNIGHT MAIL

August 4, 2009

Mr. Paul Allen
Chief Executive Officer
Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd St
Ocala, FL 34470

RE:  Termination of Freddie Mac Seller and Servicer Eligibility
     Seller/Servicer Numbers 142080, 120177

Dear Mr. Allen:

Pursuant to sections 5.1-5.3 and 73.1 of the Freddie Mac *Single-Family Seller/Servicer Guide* (hereafter the "Guide"), this letter serves as notice that the eligibility of Taylor, Bean & Whitaker Mortgage Corp. ("TBW") to sell mortgage loans to and service mortgage loans for the Federal Home Loan Mortgage Corporation ("Freddie Mac") has been terminated, with cause, effective today, August 4, 2009, without further notice from Freddie Mac.

Freddie Mac has determined that:

1.  **Guide Section 5.2 (9):** TBW has had a significant weakness or notable change in its financial status or organizational status of the Seller or the Servicer that in the opinion of Freddie Mac, could adversely affect Freddie Mac.

2.  **Guide Section 5.2(10):** TBW has failed to meet requirements as may be prescribed by Freddie Mac for eligibility as a Seller or Servicer.

3.  **Guide Section 5.2 (11):** TBW has been placed on probation or its activities have been restricted by a federal or state government agency.

4.  **Guide Section 5.2 (12):** TBW has had a judgment, order, finding or regulatory action to which TBW is subject that would adversely affect TBW's ability to comply with the terms of the conditions of the Purchase Documents.[1]

5.  **Guide Section 5.2 (13):** TBW's warranty obligations are disproportionate to its capital and/or assets.

---

[1] All terms not specifically defined herein shall have the meaning ascribed to them in the Guide.



**EXHIBIT**

**D**

6. **Guide Section 5.2 (15):** TBW has failed to observe or comply with a term(s) or provision(s) of the Purchase Documents.

The fact that certain grounds for the decision are stated in this letter does not imply that additional grounds do not exist.

Pursuant to Section 73.3 of the Guide, TBW must <u>immediately</u> surrender to Freddie Mac or its designee all mortgage files serviced for Freddie Mac ("Portfolio") and all associated custodial funds. Kindly contact me at the number below to obtain instructions for the remittance of the custodial funds. TBW also must execute and provide Freddie Mac with a limited power of attorney for the purpose of completing the necessary assignments of the loans within the portfolio. In the event that TBW does not immediately comply with Freddie Mac's directions, Freddie Mac will take all action necessary to protect its rights, including seeking a court order requiring TBW to transfer the Portfolio.

The mortgage files delivered to Freddie Mac or its designee must contain, at minimum, the information and documentation set forth in Chapter 47 and Section 52.1 of the Guide, including without limitation:

a) Loan origination documentation, including, but not limited to, the original recorded deed of trust or mortgages and original recorded assignments, to Freddie Mac, original participation certificates, policies, and all loan underwriting documents;

b) All loan servicing documents, including, but not limited to, tax receipts and bills, insurance policies, insurance premium receipts, ledger sheets, payment records, insurance claim files and correspondence, foreclosure files and correspondence, current historical data files, and current loan level trial balances, (including documents and records in whatever form existing, whether printed, handwritten, or on computer software); and

c) Any documents of the type described above which come into TBW's possession after the time in which TBW has delivered the loan files.

This termination does not affect TBW's warranties and obligations under the Purchase Documents, and is without prejudice to any claim that Freddie Mac may have for other breaches by TBW of the Purchase Documents, including, but not limited to, claims for repurchase of any additional ineligible mortgages and outstanding fees. Freddie Mac retains all of its rights under the Purchase Documents and the *Guide* to take any further action and pursue any additional remedies to protect Freddie Mac's interests in this matter.

Pursuant to Guide Section 5.4, TBW may appeal Freddie Mac's termination decision according to the procedures specified in Section 5.4.[2] Any appeal must be addressed to:

> Ronald L. Ratcliffe
> VP, Counterparty Credit Risk Management
> 1551 Park Run Drive, MS D3A
> McLean, VA 22102-3107
>     Attn: Amy Odiorne

If a written appeal, in compliance with the requirements of Section 5.4, is not postmarked or hand delivered to Freddie Mac within 15 calendar days from the date of receipt of this letter, TBW will be deemed to have waived its right to appeal Freddie Mac's decision. Likewise if TBW is unsuccessful in its appeal TBW's seller/servicer eligibility and its non-exclusive right to Freddie Mac's Loan Prospector® system will be likewise terminated.

If you have any questions regarding the above, please contact me at (571) 382-3455 or Karen McKoy at (571) 382-3447.

Sincerely,

Pam Williams
Director
Credit & Counterparty Risk Management

---

[2] An appeal would not alter Freddie Mac's decision to immediately remove the Freddie Mac portfolio currently being serviced by TBW. The appeal would only address the termination of its eligibility status.



PRESS RELEASE

August 5, 2009

# TAYLOR BEAN MUST CEASE ALL ORIGINATION OPERATIONS EFFECTIVE IMMEDIATETLY

OCALA, FLORIDA – TAYLOR, BEAN & WHITAKER MORTGAGE CORP. ("TBW") RECEIVED NOTIFICATION ON AUGUST 4, 2009 FROM THE U.S DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, FREDDIE MAC AND GINNIE MAE (THE "AGENCIES") THAT IT WAS BEING TERMINATED AND/OR SUSPENDED AS AN APPROVED SELLER AND/OR SERVICER FOR EACH OF THOSE RESPECTIVE FEDERAL AGENCIES. TBW HAS UNSUCCESSFULLY SOUGHT TO HAVE THE TERMINATION/SUSPENSION DECISIONS OF EACH OF THOSE AGENCIES REVERSED. AS A RESULT OF THESE ACTIONS, TBW MUST CEASE ALL ORIGINATION OPERATIONS EFFECTIVE IMMEDIATELY. REGRETTABLY, TBW WILL NOT BE ABLE TO CLOSE OR FUND ANY MORTGAGE LOANS CURRENTLY PENDING IN ITS PIPELINE. TBW IS COOPERATING WITH EACH OF THE AGENCIES WITH RESPECT TO ITS SERVICING OPERATIONS AND EXPECTS TO CONTINUE TO SERVICE MORTGAGE LOANS AS IT RESTRUCTURES ITS BUSINESS IN THE WAKE OF THESE EVENTS. WE UNDERSTAND THAT THIS COULD HAVE A SIGNIFICANT IMPACT ON OUR VALUED EMPLOYEES, CUSTOMERS AND COUNTERPARTIES, AND ARE VERY DISAPPOINTED THAT A LESS DRASTIC OPTION IS UNAVAILABLE.



EXHIBIT

*E*

1

https://www.taylorbean.com/default.aspx



# Taylor, Bean & Whitaker

As a valued mortgage customer, you can securely manage your account, learn about new servicing options, or register for email notifications on this site.

LOGIN

Login to view your mortgage information or register

E-mail Address:

Password:

Forgot your password?

Please enter the characters below:

Try a new code

If you are having trouble accessing our new web site using the login screen above, you need to register a new account by clicking on the Register tab. If you continue to have difficulty, click HERE to use your original account to access your mortgage.

REGISTER



GOVERNMENT
STIMULUS PLAN

CLICK HERE

*For the best experience, please use one of the following internet browsers:* ____ or later; ____ or later; or ____ 7.0 or later. If you need to upgrade your browser, click on the name of your browser to start the process.



EXHIBIT
F

8 7 2009