COMPOSITE EXHIBIT D PART 1b



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING ®

## Welcome to Taylor, Bean & Whitaker!

As a valued mortgage customer, you can securely manage your account, learn about new servicing options, or register for email notifications on this site.



*Perfectin
The Art
of Mortga
Lending®*

### LOGIN

Login to view your mortgage information or Register

E-mail Address:

_____

Password:

_____

Forgot your password?

Please enter the characters below:

_____

Try a new code

[ Submit ]

If you are having trouble accessing our new web site using the login screen above, you need to register a new account by clicking on the Register tab. If you continue to have difficulty, click HERE to use your original account to access your mortgage.

### REGISTER

## Resource Center

Payment Assistance

Mortgage Calculator

Insurance

FAQs

If you are interested in a refinance, please log in to the left.

***For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow***



Taylor, Bean & Whitaker

| Welcome | Payment Information | Loan Balances | Payment History | Payment Options | Account Informa |

☑ **Payoff Request**

**Please give us
your feedback**

**Apply for a Refinance**

**Update My Insurance
Information**

**Delinquent and
need help?**

**REO Properties
FOR SALE**

**Make a payment at
any *Western Union*
Location**

**eStatements**

**Frequently
Asked
Questions**

## Login to view your mortgage information

Username: [                    ]
(min 6 characters / max 12 characters)

Password: [                    ]
(min 4 characters / max 12 characters)

[×]

Enter the characters from the image above: [                    ]

[ Log in ]

Forgot Password
Forgot Username
Register - first time users must register
Change Password

**Amortization
Table**


**Refinance?
New Loan?
Call 1-877-754-6847**


**Need Counseling or Other
Resources?**



Customer Contact Center
Loaninfo@taylorbean.com
1-888-225-2164
M-F 9AM - 8 PM and Sat 8 AM - 5
PM (EST)



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING

Taylor, Bean & Whitaker > Community Banks

# Community Banks

Taylor, Bean & Whitaker Mortgage Corp (TB&W), headquartered in Ocala, FL is a Top 10 national wholesale mortgage lender.

- Annual production volume exceeding $30 billion and total assets exceeding $3 billion
- Commitment to building strong relationships and supporting community banks for over 25 years
- Provides a wide array of loan products and services at competitive rates
- Complete Mortgage Solutions Program enables community banks to build their mortgage operations and generate untapped fee income potential
- Selected as the Independent Community Bankers of America's preferred mortgage services provider

Already a CBO Customer? Visit Community Banks Online

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*

# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING [2]

# Mortgage Brokers

Taylor, Bean & Whitaker Mortgage Corp (TB&W), headquartered in Ocala, FL is a Top 10 national wholesale mortgage lender. The company was incorporated in 1982 and began operations as a small town retail mortgage firm. Since then, TB&W has ascended to a national mortgage lending institution with offices across the country.

The company's rise within the mortgage industry is the result of multi-faceted strategic objectives: scalable operational infrastructure, strong management and marketing teams, strategic partnership building and diversification of business opportunities. Technological innovations, automated processes, streamlining efficiencies, an evolving product line and continual commitment to customer service are key contributing growth factors.

- Annual production volume exceeding $30 billion and total assets exceeding $3 billion
- Commitment to building strong relationships and support for independent mortgage brokers
- Offers a wide array of loan products and services
- Provides customer retention tools to help you retain and grow your business

Already a TBDirect Customer?: Visit TaylorBeanDirect

***For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow***





- Demo
- Register Now
- About TBDirect
- Training
- FastFAX
- Contact Us
- FAQs

**User ID:**

**Password:**

[ Login ]   [ Cancel ]

> What is TBDirect?

> How Does TBDirect
  Benefit You?

> How Do I Join TBI

> Want To Know Mo
  Taylor, Bean & Whi

---

## TBDocs
Pull closing docs and
order funds online at
your convenience.

## PRODUCTS
We offer products to
help you remain
competitive.

## SUPPORT
Learn about our
helpful support
staff.

## SERVICES
We offer services to
help your business
grow.





# Taylor, Bean & Whitaker
## PERFECTING THE ART OF MORTGAGE LENDING [2]

Taylor Bean & Whitaker > Correspondents

# Correspondents

Taylor. Bean & Whitaker Mortgage Corp. (TB&W), headquartered in Ocala, FL, is a top 10 national wholesale mortgage lender. The company incorporated in 1982 and began operations as a small town retail mortgage firm. Since then, TB&W ascended to a national mortgage lending institution with offices across the country.

- Annual production volume exceeding $30 billion and total assets exceeding $3 billion
- Provides a wide array of loan products at competitive rates
- Servicing retained production strategy
- Fifth largest Freddie Mac Securities issuer, Fourth largest Ginnie Mae issuer
- Freddie Mac Platinum Servicer
- Service and flexibility that only a privately owned company can provide

Already a Correspondent Customer? Visit TB&W Correspondent Lending Online

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



Guides & Docs | Information

# **Welcome** to Correspondent Lending



TBWCorr.com provides Taylor, Bean & Whitaker's valued Correspondent customers access to a number of tools and information to help you do more business more efficiently. Without a required login, you have access to our Sales Contact Information, Lender Application Documents, Product Profiles and Manuals. Once you are an approved TBW Correspondent, our secure site provides access to our Rate Sheets, Price Shopper, On-Line Locks, Pipeline information, Product Profiles, Marketing Materials and Forms. Thank you for your business!

Len

Pas

Forg
Plea:
sens

If yo
prob
Lend

Log

Copyright © 2005-2007 Taylor, Bean & Whitaker Mortgage Corporation



## Taylor Bean REO

- Search Listings
- Buyer Instructions
- Vendor/Contractor
- Service Area
- About Us

**Contact Us:**
315 NE 14th Street
Ocala, FL 34470

REOinfo@taylorbean.com
Phone: 352.438.3427





### Why buy REO?

REO homes are bank-owned generally priced below their a

In many cases special financin are available. Take advantage rates and market conditions.

Search Listings    Buyer

### Featured REO Properties



$335,000
Lawrenceville, GA

$415,000
Ocala, FL

$210,000
North Las Vegas, NV

$575,00
Las Veg

$119,900
Farmington Hills, MI

$760,000
Waxhaw, NC

$699,900
Las Vegas, NV

$375,000
Atlanta, (

REO Home   Search REO Listings   REO Properties by State   REO Resources   Foreclosure Information   Privacy Notice   T
TBW Bank Owned Foreclosures - REO Properties and REO Homes For Sale Listing by State

Alabama  Alaska  Arizona  Arkansas  California  Colorado  Connecticut  Florida  Georgia  Hawaii
Idaho  Illinois  Indiana  Iowa  Kansas  Kentucky  Louisiana  Maine  Maryland  Massachusetts
Michigan  Minnesota  Mississippi  Missouri  Montana  Nebraska  Nevada  New Hampshire  New Jersey  New M
North Carolina  Ohio  Oklahoma  Oregon  Pennsylvania  Rhode Island  South Carolina  South Dakota  Tennessee
Utah  Virginia  Washington  West Virginia  Wisconsin

We believe that the **REO Bank Owned Real Estate property** specific information provided on this site is accurate, but we have undert to verify its accuracy or authenticity. Therefore, neither **Taylor, Bean & Whitaker Mortgage Corp.** nor its affiliates make any guara warranty of any kind as to the condition of any **Taylor, Bean & Whitaker REO Bank Owned Real Estate** property or the accura **properties** or information posted on this site, including any photographs or property descriptions. **Taylor, Bean & Whitaker Mortgag** for the products or services offered by the real estate professional(s) identified in any particular **REO Bank Owned Real Estate**

© 2008 Taylor, Bean & Whitaker Mortgage Corp. All rights reserved. No part of this website or any of its products may be reproduced in permission from Taylor, Bean & Whitaker Mortgage Corp.



**Taylor, Bean & Whitaker**
PERFECTING THE ART OF MORTGAGE LENDING ®

Taylor, Bean & Whitaker > Community Banks > Products & Services

# Products & Services

Imagine using a single loan origination system to complete a loan from start to finish! CommunityBanksOnline offers you this opportunity. And it's FREE! Utilizing Internet and mortgage technologies, CBO streamlines the loan origination process, resulting in a more convenient and efficient process for you and your customers. Loans are registered, locked and underwritten in a matter of minutes through CBO. Underwriting assistance can be requested via the site for questions, problem loans or matching programs that best suit your borrower. Free and unlimited virtual training on our platform is also available, should you need it.

**CBO Benefits:**

- CBO is compatible with most loan origination systems. You simply import and submit your loan application for an automated underwriting decision.
- TBDocs: Close loans and order funds online, using our closing documentation feature. Close loans and order funds at your convenience. TBDocs streamlines and automates the closing process. Live loan status is also accessible within the system.
- FastFAX: Our loan imaging system combines the power of the Internet and your fax machine. The loan file and conditions are sent through your fax machine or internet. Underwriters work from the imaged copy, thus expediting underwriting and clearing of the conditions.
- Underwriting Assistance: You can request assistance from an underwriter at your convenience via the website.
- Helpful Support Staff: Our helpful and experienced support staff will troubleshoot any issue that you may experience. Assistance can be requested directly from the website.
- As CBO evolves, and new technologies are integrated into the site, our staff will provide training on an on-going basis.

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# Taylor, Bean & Whitaker
### PERFECTING THE ART OF MORTGAGE LENDING ®

Taylor, Bean & Whitaker > Homeowners > Payment Assistance

# Payment Assistance

The purchase of a home is likely the largest investment you will make in your lifetime. Although recent market trends show the average rate of appreciation in home values declining and in some areas even deprecating, it is important to note that over a 10 year period beginning from June of 1998 through June of 2008, the purchase only OFHEO (Office of Federal Housing Enterprise Oversight) house price index increased by a total of 66.9% That is a compound growth rate of 5.3% per year.

Benefits of Homeownership

Qualifying for Mortgage Assistance Options

Assistance Options

Helpful Documents

Additional Resourses

According to the U.S Department of Housing and Urban Development, "Homeowners accumulate wealth as the investment in the home grows, enjoy better living conditions, are often more involved in their communities, and have children who tend on average to do better in school and are less like to become involved in crime."

## Wealth Effect - The Tangible Benefits

- **Tax Advantages** - When you make your mortgage payment, not only are you investing in your future, but you are also able to reduce your tax burden. All interest payments on your home are tax deductible.
- **Appreciation** - As you continue to make payments on your home, the amount you owe on your loan becomes less, while the value of your home will likely appreciate. The difference in what you owe on your home and your home's actual value is called equity. The equity you build in your home could be as valuable or more valuable then any other investment you make throughout your lifetime.

## Providing for you and your family - The Intangible Benefits

- **Security and stability for family** - Homeownership provides a feeling of security and stability for you and your family.
- **Community** - Homeownership develops a sense of community and belonging.

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING ®

Taylor, Bean, & Whitaker > Homeowners > Calculators > How Much Can I Borrow?

# Calculators

- How Much Can I Borrow?
- How Much is Your Monthly Payment?
- Amortization Schedule

## How Much Can I Borrow?

Use this calculator to find out how much
you can borrow based on a specific
payment amount.

Monthly Payment ($):

Interest Rate (%):

Number of Payments:

 CALCULATE          RESET

**Loan Amount ($):**

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi*
*or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# **Taylor, Bean & Whitaker**
PERFECTING THE ART OF MORTGAGE LENDING

Taylor, Bean, & Whitaker > Homeowners > FAQs

# Frequently Asked Questions

Language: English | Español

When payment difficulties arise
**Details Concerning the Homeowner Affordability and Stability Plan**
Our Goal
Who to contact
How to avoid foreclosure
What are the options
Hardship assistance
Financial Worksheet

Frequently Asked Questions About My Current Loan

Making your monthly payments

Refinancing your mortgage or buying your next home.

Contact Information

**Q: Details Concerning the Homeowner Affordability and Stability Plan**
**A:** www.financialstability.gov

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING ®

Taylor, Bean, & Whitaker > Community Banks > FAQ's

## Frequently Asked Questions

Want to learn more about Taylor, Bean & Whitaker?

What is CommunityBanksOnline?

What does CBO do for Community Banks?

How does CommunityBanksOnline benefit you?

What are the fees associated with CommunityBanksOnline?

How do I join CommunityBanksOnline?

What safeguards are taken to protect a client's privacy?

**Q: Want to learn more about Taylor, Bean & Whitaker?**
**A:** Taylor, Bean & Whitaker (TB&W), is a top 10 national wholesale mortgage lender. The company incorporated in 1982 and began operations as a small town retail mortgage firm. Since then, TB&W ascended to a national mortgage lending institution with offices across the country. We offer advanced automated underwriting technologies, an extensive product offering, commonsense underwriting, flexible funding options and hands-on client service.

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi*
*or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING ℠

Taylor, Bean & Whitaker > Home Page > Contact Us

# Contact Us

**Customer Service**
Phone: 1-888-225-2164
Questions about your loan via email click here
General questions via email click here

**Business Services**
General Business Partner inquiries click here

**Human Resources**
TB&W Job Opportunities via email click here

**Refinance Center**
Questions about your HASP Relief Refinance application click here
Questions about any other type of refinance click here

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi*
*or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING ®

Taylor, Bean, & Whitaker > Community Banks > Support

# Support

CommunityBanksOnline members benefit by utilizing an ongoing friendly and experienced support staff. Our support staff is available to assist you from 8:00 am to 8:00 pm ET, Monday through Friday. Simply call 1-866-699-BANK (2265), email , or request support via the website. Within minutes, you will receive via e-mail, an automated work order number assigned to your issue. A technical service representative will contact you to resolve the problem you are experiencing.

Support for your consumers is available via the consumer site we create for your bank. Immediate support from our network of LIVE operators is a particularly impressive feature of our network. Underwriters are on stand-by to assist your consumers with mortgage questions or other inquiries.

CBO clients also benefit from online training tools, including training materials and virtual training courses that can be scheduled.

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# Taylor, Bean & Whitaker
### PERFECTING THE ART OF MORTGAGE LENDING ©

Taylor, Bean, & Whitaker > Community Banks > Training

# TB&W Training Academy

Courses

Trainers

Calendar

Contact Us



## TB&W
### TRAINING ACADEMY

*Training Mortgage Professionals*

TB&W Training Academy is the industry leading provider of superior learning experiences directed solely to mortgage professionals. Relevant and up to the minute information is imparted by experts who focus on real life application and implementation of the course materials they provide. Our Services Include:

**Our Services Include:**

- Custom corporate training
- Certified Mortgage Planner course for new Loan Officers
- Three Day Train the Trainer workshops
- DE Underwriting training facilitated by senior DE trainers
- Advanced web-based learning center

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozilla Firefox 3.0 or later;*
*or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your browser to start the process.*



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING [®]

Taylor, Bean & Whitaker > Community Banks > Press Releases

# Press Releases

**April 2009**

- Taylor Bean Leads Investor Group in Signing Definitive Agreement For A $300 Million Investment in Colonial Bangroup

**January 2009**

- Mortgage Lending Industry Prevented Almost 240,000 Foreclosures in December

**July 2008**

- Weight Loss Challenge helps Marion County residents change lifestyle
- State of Freddie Mac and Fannie May does not affect your TB&W mortgage
- Platinum Bank acquisition by TB&W
- TB&W gains additional $1.75 billion funding capacity

**June 2008**

- TB&W Chairman answers questions posed by brokers nationwide

**May 2008**

- Response to Action Now press conference

**December 2007**

- TB&W to acquire Platinum Bankshares, Inc

**November 2007**

- Stuart Scott appointed Chief Operations Officer

**August 2007**

- TB&W's proactive stance against fraud

**July 2007**

- TB&W opens Florence, NC operations center

**December 2006**

- TB&W sets up charitable foundation at the request of employees

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# Maslow INSURANCE AGENCY

Home    About Us    Contact Us    FAQ & Glossary    Carrier Relationships

Income & Asset

Homeowners
Home Warranty
Disaster Recovery

Life
TB&W AD&D
Group Policy

Term Life

Dream big.



LONG
TERM
CARE
find out
more

# Maslow gives you Simple, Secure and Convenient service.

Maslow Insurance Agency, LLC offers an array of insurance co
protect and preserve your income and assets; coverage that affor
dream big and focus on living - knowing we've got you covered.

Our mission is to keep our insurance services Simple, Secure and
here to listen to your needs, understand your goals and tailor a
you with maximum protection at a competitive premium.

Home          Terms of Use          Licensing          W

© 2007 Maslow Insurance Agency, LLC All rights reserved. No part of this website or
reproduced in any form without written permission from Maslow Insuran



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING ®

Taylor, Bean & Whitaker > Community Banks > Contact Us

# Contact Us

Are You A:  Select One

Name:

Company Name:

Email Address:

Comments:

☑ Please have a representative contact me to schedule a live demonstration

SUBMIT        RESET

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*

| Collateral | Borr1 City | Borr1 County | Orig UPB | Orig Rate | Payee Name | Payee City | Payee ST | Payee Zip | Funding Amount | Advance Amount | Original Term | Purpose Code | Lien Position | Originator Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3392500 | TAVARES | LAKE | $110,600.00 | 4.875% | LAWYERS TITLE INSURANCE CORP | IRVINE | CA | 92614 | $107,269.92 | $107,421.28 | 360 R | | 1 R | COMERICA BANK |
| 3448098 | TALLAHASSEE | LEON | $234,549.00 | 4.750% | LANDSAFE TITLE COMPANY | IRVINE | CA | 92618 | $294,734.91 | $296,424.99 | 360 R | | 1 R | WACHOVIA BANK |
| 3416945 | ORLANDO | ORANGE | $127,187.00 | 5.000% | LAWYERS TITLE COMPANY | TUSTIN | CA | 92780 | $126,476.33 | $126,720.99 | 180 R | | 1 R | COMERICA |
| 3461050 | KISSIMMEE | OSCEOLA | $192,906.00 | 5.750% | TANGIS LC TITLE | WESTLAKE VILLA | CA | 91361 | $192,745.64 | $193,720.59 | 180 R | | 1 R | COMERICA |
| 3364981 | BOCA RATON | PALM BEACH | $184,000.00 | 5.125% | NATIONAL 1 SOURCE | CENTENNIAL | CO | 80112 | $189,061.69 | $190,200.99 | 360 R | | 1 R | COMERICA |
| 3376642 | TITUSVILLE | BREVARD | $54,050.00 | 5.000% | CITRUS LAND TITLE | CRYSTAL RIVER | FL | 34429 | $1,076.52 | $1,083.27 | 360 R | | 1 R | MERCANTILE BANK |
| 3360962 | SAINT CLOUD | OSCEOLA | $84,950.00 | 5.000% | CITRUS LAND TITLE | CRYSTAL RIVER | FL | 34429 | $1,346.71 | $1,352.27 | 360 A | | 1 R | MERCANTILE BANK |
| 5000664 | SAINT CLOUD | OSCEOLA | $322,850.00 | 5.125% | CITRUS LAND TITLE | BEVERLY HILLS | FL | 34465 | $1,775.14 | $0.00 | 360 A | | 1 R | MERCANTILE BANK |
| 5000075 | MIAMI | DADE | $284,100.00 | 5.000% | CITRUS LAND TITLE | BEVERLY HILLS | FL | 34465 | $2,945.22 | $0.00 | 360 A | | 1 R | MERCANTILE BANK |
| 5000333 | OCALA | MARION | $397,100.00 | 5.250% | CITRUS LAND TITLE | BEVERLY HILLS | FL | 34465 | $1,346.71 | $0.00 | 360 A | | 1 R | MERCANTILE BANK |
| 5001056 | DAYTONA BEACH | VOLUSIA | $119,000.00 | 5.000% | CITRUS LAND TITLE | BEVERLY HILLS | FL | 34465 | $2,204.60 | $0.00 | 360 A | | 1 R | MERCANTILE BANK |
| 5001082 | FORT MYERS | LEE | $124,425.00 | 2.250% | CITRUS LAND TITLE | BEVERLY HILLS | FL | 34465 | $2,193.33 | $0.00 | 360 A | | 1 R | MERCANTILE BANK |
| 3442765 | SAINT AUGUSTINE | SAINT JOHNS | $236,650.00 | 3.750% | CITRUS LAND TITLE | CRYSTAL RIVER | FL | 34429 | $0.00 | $0.00 | 360 R | | 1 R | MERCANTILE BANK |
| 5002372 | SAINT PETERSBURG | PINELLAS | $124,425.00 | 3.750% | CITRUS LAND TITLE | CRYSTAL RIVER | FL | 34429 | $2,399.67 | $0.00 | 360 R | | 1 R | MERCANTILE BANK |
| 3443765 | BROOKSVILLE | HERNANDO | $55,000.00 | 5.000% | SAWYERS ADVANTAGE TITLE GROU | ALTAMONTE SPRIN | FL | 32714 | $93,760.00 | $0.00 | 360 R | | 1 R | SUNTRUST BANK |
| 3428462 | RIVERVIEW | HILLSBOROUGH | $83,822.00 | 5.500% | GULLETT TITLE | TAMPA | FL | 33611 | $53,945.91 | $54,097.17 | 360 P | | 1 R | MERCANTILE BANK |
| 3464372 | POMONA PARK | PUTNAM | $63,822.00 | 5.500% | CLEAR TO CLOSE TITLE | CRYSTAL RIVER | FL | 34429 | $2,399.67 | $0.00 | 360 P | | 1 R | MERCANTILE BANK |
| 3427580 | SARASOTA | MANATEE | $84,843.00 | 5.750% | FAIRVIEW TITLE COMPANY | BROOKSVILLE | FL | 34601 | $53,945.91 | $54,097.17 | 360 P | | 1 R | PROSPERITY BANK |
| 3442588 | RIVERVIEW | HILLSBOROUGH | $94,322.00 | 5.750% | BERLIN LAW FIRM, PA | TAMPA | FL | 34236 | $82,588.28 | $84,843.00 | 360 P | | 1 R | BANK OF AMERICA |
| 3433386 | APOLLO BEACH | HILLSBOROUGH | $84,176.00 | 5.750% | ADVANTAGE TITLE SERVICES | SARASOTA | FL | 34236 | $82,588.28 | $84,843.00 | 360 P | | 1 R | BANK OF AMERICA |
| 3738118 | KISSIMMEE | OSCEOLA | $92,000.00 | 5.900% | EXPRESS TITLE SERVICES OF TA | LAKELAND | FL | 33801 | $82,588.28 | $92,568.25 | 360 R | | 1 R | CENTERSTATE BANK |
| 3740725 | MIAMI | DADE | $110,000.00 | 5.375% | RELIANCE TITLE SERVICES OF TA | TAMPA | FL | 33615 | $124,245.17 | $130,299.75 | 360 R | | 1 R | BANK ATLANTIC |
| 3418301 | AUBURNDALE | POLK | $104,800.00 | 8.875% | RELIANCE TITLE SECURITY TITLE | FORT MYERS | FL | 33919 | $109,251.50 | $107,994.55 | 360 R | | 1 R | INDEPENDENT BANK |
| 3418705 | FORT LAUDERDALE | BROWARD | $200,000.00 | 5.375% | RIDGE SECURITY TITLE | LAKE WALES | FL | 33859 | $109,251.50 | $107,994.55 | 360 R | | 1 R | BANCO POPULAR |
| 3403644 | MIAMI | DADE | $169,866.00 | 5.750% | WINDMILL TITLE COMPANY | TAMPA | FL | 33615 | $124,245.17 | $130,299.75 | 360 R | | 1 R | CITIZENS FIRST B |
| 3407024 | FORT MYERS | LEE | $185,576.00 | 5.500% | FIRST PRIORITY TITLE | FORT MYERS | FL | 33919 | $162,305.62 | $164,139.99 | 360 R | | 1 R | BANK ATLANTIC |
| 3626744 | WEST PALM BEACH | PALM BEACH | $201,286.00 | 5.500% | SUNRISE | POMPANO BEACH | FL | 33064 | $192,905.62 | $199,609.95 | 360 R | | 1 R | BNY MELLON BANK |
| 3744585 | PEMBROKE PINES | BROWARD | $201,286.00 | 5.000% | MAGIC TITLE & ESCROW | WINTER GARDEN | FL | 33787 | $196,361.70 | $199,609.95 | 360 R | | 1 R | FIRST AMERICAN T |
| 3460532 | SEBRING | OSCEOLA | $131,300.00 | 7.250% | CLEAR TO CLOSE TITLE | SUNRISE | FL | 33073 | $200,506.97 | $201,146.31 | 360 P | | 1 R | WASHINGTON MUTUAL |
| 3415305 | CHULUOTA | SEMINOLE | $92,000.00 | 5.900% | TITLE PROFESSIONALS OF FLORI | COCONUT CREEK | FL | 34677 | $64,263.91 | $63,202.00 | 360 P | | 1 R | WACHOVIA BANK |
| 3333386 | SEBRING | SEMINOLE | $172,975.00 | 5.000% | 2 PADU LC & ESCROW COMPANY | SEBRING | FL | 33787 | $71,980.93 | $72,975.00 | 360 R | | 1 R | REGENT BANK |
| 3389377 | BELL | GILCHRIST | $225,000.00 | 6.000% | RELIABLE LAND TITLE | PENSACOLA | FL | 33183 | $71,580.99 | $172,975.00 | 360 R | | 1 R | EASTERN NATIONAL |
| 3444627 | CHULUOTA | SEMINOLE | $151,998.00 | 6.000% | SECURITY TITLE SERVICES INC | TRENTON | FL | 33799 | $147,479.51 | $148,146.90 | 360 R | | 1 R | FIRST NATIONAL B |
| 3415566 | SEBRING | LAKE | $138,000.00 | 5.000% | MCLIN & BURNSED | LEESBURG | FL | 34748 | $135,807.91 | $136,572.18 | 360 R | | 1 R | AMERICAN BANKING |
| 3401631 | FORT SAINT LUCI | SAINT LUCIE | $417,000.00 | 5.375% | MCLIN & BURNSED | LEESBURG | FL | 34748 | $417,479.51 | $412,359.37 | 360 R | | 1 R | CITIZENS FIRST B |
| 3411504 | PENSACOLA | ESCAMBIA | $50,000.00 | 5.000% | MCLIN & BURNSED | PORT ST LUCIE | FL | 34983 | $177,351.30 | $177,897.60 | 360 R | | 1 R | CITIZENS FIRST B |
| 3333125 | SEBRING | HIGHLANDS | $73,600.00 | 5.500% | CITIZENS TITLE SERVICES | SEBRING | FL | 33870 | $48,982.32 | $49,552.97 | 360 R | | 1 R | COLONIAL BANK |
| 3406066 | LEESBURG | LAKE | $145,000.00 | 6.000% | HEARTLAND TITLE INSURANCE | LEESBURG | FL | 34748 | $142,462.50 | $144,485.96 | 360 R | | 1 R | HANCOCK BANK OF |
| 3467192 | SAINT AUGUSTINE | ST JOHNS | $200,000.00 | 3.750% | JACKSONVILLE TITLE & TRUST | JACKSONVILLE | FL | 32216 | $196,941.42 | $199,877.08 | 360 R | | 1 R | HIGHLANDS INDEPE |
| 3419161 | SAINT AUGUSTINE | ST JOHNS | $276,000.00 | 5.375% | PARADISE TITLE OF ST AUGUST | ST AUGUSTINE | FL | 32084 | $276,763.50 | $276,000.00 | 360 R | | 1 R | BANK OF AMERICA |
| 3422578 | JACKSONVILLE | DUVAL | $203,245.00 | 4.250% | LAWYERS TITLE | ST AUGUSTINE | FL | 32084 | $200,740.33 | $90,819.76 | 360 R | | 1 R | IB9 OF ORLANDO |
| 3433033 | ARCHER | ALACHUA | $185,693.00 | 5.000% | SEARCH 2 CLOSE | TAMPA | FL | 33624 | $177,351.30 | $177,224.80 | 360 R | | 1 R | IB9 OF ORLANDO |
| 3361509 | CANTONMENT | ESCAMBIA | $117,049.00 | 5.000% | NETCO | FT LAUDERDALE | FL | 33309 | $116,591.35 | $115,985.12 | 360 R | | 1 R | JP MORGAN CHASE |
| 3332259 | DANNELLON | LEVY | $240,000.00 | 4.750% | MARLIN TITLE, LLC | SAFETY HARBOR | FL | 34695 | $236,989.21 | $237,276.86 | 360 R | | 1 R | JP MORGAN CHASE |
| 3328555 | KISSIMMEE | POLK | $74,531.00 | 6.000% | HOMETOWN TITLE AGENCY INC | CLEARWATER | FL | 33764 | $73,311.16 | $74,531.00 | 360 R | | 1 R | BANK OF AMERICA |
| 3399094 | KISSIMMEE | POLK | $73,542.00 | 4.875% | JAMES R EVANS PA | ST CLOUD FL | FL | 34769 | $71,981.77 | $73,388.48 | 360 R | | 1 R | REGIONS BANK |
| 3352753 | PORT ORANGE | VOLUSIA | $417,000.00 | 4.875% | NATIONS LENDING SERVICES | DAYTONA BEACH | FL | 32118 | $302,310.03 | $405,077.05 | 360 R | | 1 R | SOUTHERN COMMERC |
| 3395923 | JACKSONVILLE | DUVAL | $203,245.00 | 5.500% | NATIONS LENDING SERVICES | | FL | 32607 | $201,579.13 | $239,617.59 | 360 R | | 1 R | REGIONS BANK |
| 3418341 | PENSACOLA | ESCAMBIA | $241,702.00 | 4.250% | LAWYERS TITLE CORPORATION | PRAIRIE VILLAGE | KS | 66207 | $240,359.58 | $239,430.89 | 360 R | | 1 R | SUNTRUST BANK |
| 3454942 | GULF BREEZE | SANTA ROSA | $241,702.00 | 4.250% | OWINGS MILLS | OWINGS MILLS | MD | 21117 | $239,816.62 | $239,430.89 | 360 R | | 1 R | COMERICA BANK |
| 3362156 | CRESTVIEW | OKALOOSA | $186,765.00 | 4.350% | ALL STAR TITLE INC | BALTIMORE | MD | 21208 | $183,960.54 | $186,662.44 | 360 R | | 1 R | COMERICA BANK |
| 3362155 | PENSACOLA | ESCAMBIA | $221,806.00 | 4.750% | ALL STAR TITLE INC | BALTIMORE | MD | 21208 | $219,806.00 | $221,806.00 | 360 R | | 1 R | ALLIANCE BANK |
| 3418243 | PORT ST LUCIE | ST LUCIE | $279,199.00 | 4.000% | SUPERLENDING SERVICES | PITTSBURGH | PA | 15205 | $273,476.81 | $117,145.91 | 360 P | | 1 R | ALLIANCE BANK |
| 3422554 | MIAMI | DADE | $279,199.00 | 4.000% | RICHMOND TITLE SERVICES | PLANO | TX | 75093 | $14,626.00 | $117,145.91 | 360 R | | 1 R | HSBC BANK |
| | | | | | | | | | | | | | | BANK OF AMERICA |


tabbies
EXHIBIT

The Official Website of the Office of Consumer Affairs & Business Regulation (OCABR)

Mass.Gov

# Consumer Affairs and Business Regulation

Home > Business > Banking Industry Services > Banking Legal Resources > Enforcement Actions > 2009 Enforcement Actions >

## Taylor, Bean, and Whitaker Corp., Ocala, FL - Temporary Order to Cease and Desist

By the Division of Banks

**RELATED LINKS**

Division of Banks

Federal Deposit
Insurance Corporation
(FDIC)



### COMMONWEALTH OF MASSACHUSETTS

Suffolk, SS.

**COMMISSIONER OF BANKS
MORTGAGE LENDER
LICENSING
Docket No. 2009-115**

**FINDINGS OF FACT AND TEMPORARY
ORDER TO CEASE AND DESIST**

In the Matter of
**TAYLOR, BEAN, AND WHITAKER
MORTGAGE CORP.**
Ocala, Florida

Mortgage Lender License No(s). ML1897 *et al.*

The Commissioner of Banks ("Commissioner") having determined that TAYLOR, BEAN &
WHITAKER MORTGAGE CORP., ("Taylor, Bean & Whitaker" or the "Corporation"), located at 315
NE 14th Street, Ocala, Florida has engaged in, or is engaging in, or is about to engage in, acts or
practices constituting violations of Massachusetts General Laws chapter 255E and applicable regulations
found at 209 CMR 42.00 *et seq* . hereby issues the following FINDINGS OF FACT AND
TEMPORARY ORDER TO CEASE AND DESIST ("Temporary Order") pursuant to General Laws
chapter 255E, section 7(b) and chapter 255F, section 8(b).

### FINDINGS OF FACT

1. The Division of Banks ("Division"), through the Commissioner, has jurisdiction over the licensing
   and regulation of persons and entities engaged in the business of a mortgage lender in
   Massachusetts pursuant to Massachusetts General Laws chapter 255E, section 2.
2. The Division, through the Commissioner, also has jurisdiction over the licensing and regulation of
   persons engaged in the business of a mortgage loan originator in Massachusetts pursuant to
   Massachusetts General Laws chapter 255F, section 2.
3. Taylor, Bean & Whitaker is, and at all relevant times, has been a foreign corporation conducting
   business in the Commonwealth of Massachusetts. Taylor, Bean & Whitaker's main office is
   located at 315 NE 14th Street, Ocala, Florida.
4. Taylor, Bean & Whitaker is licensed by the Commissioner as a mortgage lender under
   Massachusetts General Laws chapter 255E, section 2. According to records maintained on file with
   the Division, the Commissioner initially issued mortgage lender license number ML1897 to
   Taylor, Bean & Whitaker to engage in the business of a mortgage lender at 315 NE 14th Street,
   Ocala, Florida on or about September 7, 2001.
5. Taylor, Bean & Whitaker maintains additional office locations from which the Corporation
   conducts its mortgage lender business. According to records maintained on file with the Division,
   Taylor, Bean & Whitaker currently possesses eight (8) additional mortgage lender licenses from
   the Commissioner for one location operating in Massachusetts, as well as locations operating
   outside the Commonwealth.

**A. Failure to Fund Certain Residential Loan Obligations in the Commonwealth and
Uncertainty of Taylor, Bean & Whitaker's Maintenance of the Minimum Financial**



**Requirements for Holding a Mortgage Lender License in Massachusetts**

*i. Failure to Fund Certain Residential Loan Obligations in the Commonwealth*

6. On August 5, 2009, a licensed Massachusetts mortgage broker ("Mortgage Broker A") notified the Division that Taylor, Bean & Whitaker, had failed to timely disburse loan proceeds in a refinance mortgage loan transaction involving a residential property in Massachusetts which Mortgage Broker A had placed with Taylor, Bean & Whitaker. Mortgage Broker A informed the Division that the mortgage loan had closed on July 30, 2009 and was scheduled to fund on August 4, 2009. As of August 6, 2009, the mortgage loan remains unfunded.

7. On August 5, 2009, the Division was notified via an e-mail forwarded by a licensed mortgage broker ("Mortgage Broker B") that Corporation had ceased all origination operations effective immediately. Mortgage Broker B notified the Division that Taylor, Bean & Whitaker had e-mailed the mortgage broker a press release that stated in part:

   Taylor, Bean & Whitaker Mortgage Corp., ("TBW") received notification on August 4, 2009 from the U.S. Department of Housing and Urban Development, Freddie Mac, and Ginnie Mae (the "Agencies") that it was being terminated and/or suspended as an approved seller and/or servicer for each of those respective agencies...As a result of these actions, TBW must cease all origination operations effectively immediately...TBW will not be able to close or fund any mortgage loans currently pending in its pipeline.

8. Massachusetts General Laws chapter 93A, section 2(a) states:

   Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

9. The Division's regulation 209 CMR 42.12(1)(e) states in part:

   A Licensee shall notify the Commissioner immediately, and in writing within one business day, of the occurrence of any of the following significant developments...expiration, termination or default, technical or otherwise, of any existing line of credit or warehouse credit agreement.

10. The Division's regulation at 209 CMR 42.13(2) states:

    Licensees shall provide thirty days prior written notice of any change or closing of a Massachusetts location to the Commissioner and shall contain such other information as the Commissioner may require.

11. Based upon information and belief, the loan referenced in Paragraph 6 has not yet funded as of the effective date of this Temporary Order.

12. As of the issuance of this Temporary Order, Taylor, Bean & Whitaker has not notified the Division of the facts and circumstances set forth above.

*ii. Uncertainty of Taylor, Bean & Whitaker's Maintenance of the Minimum Financial Requirements for Holding a Mortgage Lender License in Massachusetts*

13. The Division's regulation at 209 CMR 42.04(2)(b)3 pertaining to the licensing of mortgage lenders states in part:

    The Commissioner may also deny such an application if the Applicant has: conducted, or will conduct, its business in an unsafe and unsound manner...

14. The Division's regulation at 209 CMR 42.03(2)(c) states in part:

    An Applicant shall be required to submit detailed information supporting the following general requirements:

    Character and Fitness. An Applicant shall submit information demonstrating that the Applicant possesses the character, reputation, integrity and fitness to engage in the business of a mortgage lender in an honest, fair, sound and efficient manner.

15. On or around August 5, 2009 the Division became aware that Taylor, Bean & Whitaker had ceased all origination operations and would be unable to close or fund any mortgage loans pending in the Corporation's pipeline by an e-mail forwarded by the Corporation to a Massachusetts licensed mortgage broker, Mortgage Broker B. The e-mail stated in part:

    TBW must cease all origination operations effectively immediately...TBW will not be able to close or fund any mortgage loans currently pending in its pipeline.

**B. Failure to Provide Notice of Suspension of Relationship with the Government National Mortgage Association**

16. The Division's regulation at 209 CMR 42.12(1)(f) states in part:

    (1) A Licensee shall notify the Commissioner immediately, and in writing within one business day, of the occurrence of any of the following significant developments: . . . (f) Suspension or termination of the Licensee's status as an approved seller or seller/servicer by the Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association or an investor approved under *209 CMR 42.11A(1)(a)*.

17. On August 4, 2009, the Division became aware through a press release issued by the Department of Housing and Urban Development ("HUD") that the Federal Housing Administration ("FHA") had suspended Taylor, Bean & Whitaker from making loans insured by FHA. The press release further stated that the Government National Mortgage Association ("Ginnie Mae") was defaulting and terminating Taylor, Bean & Whitaker as an issuer in Ginnie Mae's mortgage backed security program and would be terminating Taylor, Bean & Whitaker's ability to continue servicing Ginnie Mae securities.

18. As of the issuance of this Temporary Order, Taylor, Bean & Whitaker has not notified the Division of the aforementioned events.

## CONCLUSIONS OF LAW

19. Based upon the information contained in Paragraphs 1 through 18, Taylor, Bean & Whitaker's acts or practices of contracting with consumer(s), through the underwriting and subsequent execution of mortgage loan closing documents relating to Massachusetts residential property, and thereafter failing to fund the mortgage loan(s) may constitute unfair and/or deceptive acts or practices in violation of Massachusetts General Laws chapter 93A, section 2.

20. Based upon the information contained in Paragraphs 1 through 18, due to the delay in funding contractual mortgage loan obligations Taylor, Bean & Whitaker has harmed a consumer, mortgage broker, and other parties in at least one residential mortgage loan transaction in the Commonwealth by engaging in acts or practices which may be unfair and/or deceptive in violation of Massachusetts General Laws chapter 93A, section 2.

21. Based upon the information contained in Paragraphs 1 through 18, by contracting to originate mortgage loan(s) that Taylor, Bean & Whitaker did not have sufficient warehouse funds available to fund, or any other available alternative source of funds, Taylor, Bean & Whitaker has engaged in unsafe or unsound practices in violation of the Division's regulation 209 CMR 42.04(2)(b)3.

22. Based upon the information contained in Paragraphs 1 through 18, Taylor, Bean & Whitaker failed to notify the Commissioner within one business day of the termination of the Corporation's relationship with the Federal National Mortgage Association and the Government National Mortgage Association in violation of 209 CMR 42.12(1)(f).

23. Based upon the information contained in Paragraphs 1 through 18, Taylor, Bean & Whitaker failed to provide the Commissioner with thirty days prior written notice of the Corporation's intention to cease business operations in violation of 209 CMR 42.13(2).

24. Based upon the information contained in Paragraphs 1 through 18, Taylor, Bean & Whitaker has failed to demonstrate the financial responsibility, character, reputation, integrity, and general fitness that would warrant the belief that the business will be operated honestly, fairly, and soundly in the public interest in violation of Massachusetts General Laws chapter 255E, section 4 and the Division's regulation 209 CMR 42.03(2)(c).

25. Based upon the information contained in Paragraphs 1 through 18, the public interest will be harmed by delay in issuing an Order to Cease and Desist under General Laws chapter 255E, section 7(a) because, upon information and belief, Taylor, Bean & Whitaker has a portfolio of Massachusetts mortgage loan applications in various stages of processing, underwriting, and funding which require immediate action to protect the interests of the affected Massachusetts consumers. Contrary to these interests, Taylor, Bean & Whitaker has announced its intention to cease all origination operations immediately and has already begun failing to fund residential mortgage loan transaction(s) which were scheduled to fund prior to the effective date of this Temporary Order.

26. Based upon the information contained in Paragraphs 1 through 18, the Commissioner has determined that:

    a. Taylor, Bean & Whitaker has engaged in, or is about to engage in, acts or practices which

warrant the belief that it is not operating honestly, fairly, soundly and efficiently in the public interest in violation of standards governing the licensing and conduct of a mortgage lender including, but not limited to, the provisions of the Division's regulations at 209 CMR 42.00 *et seq.*; and

   b.   The public interest will be irreparably harmed by delay in issuing an ORDER TO CEASE AND DESIST to Taylor, Bean & Whitaker.

27.   Based upon the information contained in Paragraphs 1 through 18, had the facts and conditions found therein existed at the time of Taylor, Bean & Whitaker's original mortgage lender license application, the Commissioner would have been warranted in refusing to issue such license. Further, the facts and conditions set forth in Paragraphs 1 through 18 present sufficient grounds for the revocation of Taylor, Bean & Whitaker's mortgage lender license pursuant to Massachusetts General Laws chapter 255E, section 6 and the Division's regulation at 209 CMR 42.04(2)(b).

## ORDER TO CEASE AND DESIST

After taking into consideration the FINDINGS OF FACT and CONCLUSIONS OF LAW stated herein, it is hereby:

28.   ORDERED that Taylor, Bean & Whitaker and any and all officers, directors, managers, employees, independent contractors or agents operating on behalf of Taylor, Bean & Whitaker, and their successors or assigns, shall immediately cease engaging in the activities of: (a) a mortgage lender, as those activities are defined under Massachusetts General Laws chapter 255E, section 1, and (b) a mortgage loan originator, as those activities are defined under Massachusetts General Laws chapter 255F, section 1, relative to any residential property in Massachusetts, not otherwise expressly permitted by the terms of this Temporary Order. Therefore, Taylor, Bean & Whitaker is ordered to immediately cease soliciting or accepting, either directly or indirectly, any residential mortgage loan applications from consumers for residential property located in Massachusetts.

29.   IT IS FURTHER ORDERED that Taylor, Bean & Whitaker, shall immediately place any fees previously collected from Massachusetts consumers relative to any pending mortgage loan applications in a separate escrow account maintained at a federally insured bank.

30.   IT IS FURTHER ORDERED that Taylor, Bean & Whitaker shall immediately place with one or more qualified broker(s) or lender(s), with no loss to applicants, the following: (a) Taylor, Bean & Whitaker's entire portfolio of Massachusetts residential mortgage loans which were closed by Taylor, Bean & Whitaker, and remain unfunded as of the issuance of this Temporary Order; and (b) Taylor, Bean & Whitaker's entire pending application list of Massachusetts residential mortgage loans. It being understood that "no loss to the applicant" shall mean that any loan which was closed by Taylor, Bean & Whitaker, as well as any application which was approved by Taylor, Bean & Whitaker, shall be placed to a lender willing to fund, or close, the mortgage loan under the same terms and conditions extended by Taylor, Bean & Whitaker. In the event that no such placement can be made, Taylor, Bean & Whitaker shall either independently fund the mortgage loan under such terms and conditions or buy down the mortgage loan offered by the lender so that the applicant does not incur a loss as a result of such placement. Taylor, Bean & Whitaker shall obtain the prior approval of the Commissioner before placing such applications to the qualified lender(s) or broker(s) as appropriate.

31.   IT IS FURTHER ORDERED that in any instance in which Taylor, Bean & Whitaker failed to fund a closed loan and in which the consumer, prior to the effective date of this Temporary Order, obtained funding through an alternate lender, Taylor, Bean & Whitaker shall reimburse each consumer the amount necessary to put the consumer in the same position as if Taylor, Bean & Whitaker had funded the mortgage loan under the terms and conditions agreed upon at the closing of the loan.

32.   IT IS FURTHER ORDERED that Taylor, Bean & Whitaker shall submit to the Commissioner a detailed record, prepared as of the date of submission, of all of the Corporation's pending residential mortgage loan applications on property located in Massachusetts. The records to be produced shall include all information on file regarding the Corporation's Massachusetts mortgage loan portfolio, including but not necessarily limited to, the following:

   a.   Within one (1) day of the effective date of this TEMPORARY ORDER, Taylor, Bean & Whitaker shall submit to the Commissioner all information on file as of the date of submission regarding the Corporation's portfolio of mortgage loans that were closed by Taylor, Bean & Whitaker prior to the effective date of this TEMPORARY ORDER, but

remain as yet unfunded. Such information shall include, but is not limited to, the following: The names of all individuals from whom Taylor, Bean & Whitaker processed an application and closed the residential mortgage loan, but failed to fund; the applicants' addresses and telephone numbers; the loan number; the amount of all prepaid loan fees submitted by the customer; the amount of each loan; the loan terms; the current funding status; the actual closing dates; the loan purpose (i.e. purchase or refinance); and identification of the applicable lender with whom each application will be placed. The record should include telephone numbers of contact persons at each lender who is familiar with the Corporation's submitted loans;

b. As soon as possible, but not later than five (5) days after the effective date of this TEMPORARY ORDER, Taylor, Bean & Whitaker shall submit to the Commissioner all information on file as of the date of submission regarding the Corporation's pipeline of pending mortgage loan applications including but not limited to, the following: The names of all individuals from whom Taylor, Bean & Whitaker has accepted an application for a residential mortgage loan; the applicants' addresses and telephone numbers; the loan number; the amount of all prepaid loan fees submitted by the customer; rate lock status; the amount of each loan; application status (i.e. filed, submitted to lenders, cleared to close, etc.); loan terms, if approved; scheduled closing dates; the loan purpose (i.e. purchase or refinance); and identification of the applicable lender or broker with whom each application will be placed. The record should include telephone numbers of contact persons at each lender or broker who is familiar with the Corporation's submitted loans;

c. On the last business day of each subsequent week after the effective date of this TEMPORARY ORDER, Taylor, Bean & Whitaker shall provide the Commissioner with an updated, written status report of the mortgage loan applications identified above under subparagraphs 32(a) and 32(b). The form of the status report shall follow the format of the initial submission under subparagraphs 32(a) and 32(b) and shall indicate the final disposition of the loan application and include the final terms under which each approved loan is closed. The reporting requirement shall continue until each of the approved applications is placed with a lender and funded, funded by Taylor, Bean & Whitaker, or withdrawn by the applicant(s); and

d. Within one (1) day of the effective date of this TEMPORARY ORDER, Taylor, Bean & Whitaker shall submit to the Commissioner Taylor, Bean & Whitaker's balance sheet and year-to-date income statement, prepared as of the date of submission, and attested by a duly authorized officer of the Corporation. The balance sheet shall indicate Taylor, Bean & Whitaker's cash position at each of its depository banks as well as Taylor, Bean & Whitaker's bank account numbers.

33. IT IS FURTHER ORDERED that Taylor, Bean & Whitaker shall not pay or declare a dividend, nor otherwise authorize or execute any financial transaction, either singular or structured, in excess of two hundred and fifty thousand dollars ($250,000.00), except for wages and salaries paid to employees, contractors, officers, or other members of Taylor, Bean & Whitaker's management in the normal course of their business, without the prior written approval of the Commissioner. Upon the effective date of this Temporary Order, Taylor, Bean & Whitaker shall implement or revise its practices and procedures, as necessary, to ensure that their financial books and records are accurately maintained, in a manner illustrating compliance with the provisions of this Paragraph, and available for review by the Division's examiners upon request.

34. IT IS FURTHER ORDERED that Taylor, Bean & Whitaker shall immediately secure all pending mortgage loan application files and, to the extent that any original documents must be forwarded to the relevant mortgage lender(s) or mortgage broker(s) pursuant to Paragraph 30 of this TEMPORARY ORDER, a copy of such document, correspondence, or paper relating to the mortgage loan shall be retained in Taylor, Bean & Whitaker's books and records and shall be available to the Commissioner, in their entirety, upon request.

35. IT IS FURTHER ORDERED that this Temporary Order shall become effective immediately and shall remain in effect unless set aside, limited, or suspended by the Commissioner or upon court order after review under Massachusetts General Laws chapter 30A.

36. IT IS FURTHER ORDERED that a hearing will be scheduled on this matter to determine whether or not such Temporary Order shall become permanent and final only upon receipt of a written request for such a hearing from Taylor, Bean & Whitaker within twenty (20) days of the effective date of this Temporary Order. If no hearing is requested within this twenty (20) day period, this Temporary Order shall become permanent and final until it is modified or vacated by the

Commissioner.

BY ORDER AND DIRECTION OF THE COMMISSIONER OF BANKS.

Dated at Boston, Massachusetts, this 6th day of August, 2009

By: Steven L. Antonakes
Commissioner of Banks
Commonwealth of Massachusetts

---

© 2009 Commonwealth of Massachusetts



# STATE OF NEW JERSEY

## DEPARTMENT OF BANKING AND INSURANCE
### DIVISION OF BANKING

ORDER No. E09-7929

| | |
|---|---|
| IN THE MATTER OF:<br><br>TAYLOR, BEAN, & WHITAKER<br>MORTGAGE CORPORATION,<br>Ref. No. 0626328<br>MICHAEL PAUL STEC,<br>Ref. No. 8601716<br>RAYMOND E. BOWMAN, President<br>SHERRY D. DICKINSON, Director<br>PAUL R. ALLEN, Chief Executive Officer<br>LEE B. FARKAS, Chairman of the Board | **ORDER**<br>**TO CEASE AND DESIST**<br>**AND**<br>**TO TAKE CERTAIN ACTIONS**<br>**&**<br>**ORDER**<br>**TO SHOW CAUSE**<br>**WHY LICENSES SHOULD**<br>**NOT BE REVOKED,**<br>**CERTAIN PERSONS BARRED**<br>**AND**<br>**PENALTIES IMPOSED** |

TO:    TAYLOR BEAN & WHITAKER CORPORATION
Park 80 West
Plaza II – Suite 200
Saddle Brook, New Jersey 07663-5836

TAYLOR BEAN & WHITAKER CORPORATION
315 NE 14th Street
Ocala, Florida 34470

MICHAEL PAUL STEC
Taylor Bean & Whitaker Corporation
Park 80 West
Plaza II – Suite 200
Saddle Brook, New Jersey 07663-5836

RAYMOND E. BOWMAN, President
4999 SW 2nd Street
Ocala, Florida 34474

SHERRY D. DICKINSON, Director
10699 SW 110th Avenue
Dunellen, Florida 34476

PAUL R. ALLEN, Chief Executive Officer
Taylor Bean & Whitaker Corporation
315 NE 14th Street
Ocala, Florida 34470



EXHIBIT
I

LEE B. FARKAS, Chairman of the Board
480 SW 87th Place
Ocala, Florida 34476

JEFFREY W. CAVENDER, Esq.
Attorney for Taylor Bean & Whitaker Corporation
5150 Stilesborough Road
Suite 500, Building 500
Kennesaw, Georgia 30152

**THIS MATTER** having been opened by the Commissioner ("Commissioner") of the New Jersey Department of Banking and Insurance ("Department"), upon information that Taylor Bean and Whitaker Corporation ("TBW"), licensed with mortgage banker authority pursuant to the New Jersey Licensed Lenders Act ("LLA"), N.J.S.A. 17:11C-1 et seq., and Michael Paul Stec ("Stec"), at all times relevant hereto the individual officer and/or principal licensee of TBW, have engaged in conduct in violation of the LLA; and

**WHEREAS** Raymond E. Bowman, Sherry D. Dickinson, and Lee B. Farkas are on record with the Department as TBW's president, director, and Chairman of the Board, respectively, and Paul R. Allen is also known to the Department as TBW's chief executive officer (collectively, "TBW Officers"); and

**WHEREAS**, under the LLA and its implementing rules, the Commissioner has the authority to issue this Order to Cease and Desist and to Take Certain Actions and Order to Show Cause Why Licenses should not be Revoked, Certain Persons Barred, and Penalties Imposed ("Order"); and

**WHEREAS** TBW and Mr. Paul R. Allen on behalf of the TBW Officers entered into a binding Settlement Agreement with the state regulatory agencies in New Jersey and thirteen other states, effective June 22, 2009 (the "Settlement Agreement"); and

**WHEREAS** under paragraph 21 of the Settlement Agreement its provisions shall be enforceable by any of the participating states and, thus, the Settlement Agreement has the same force and effect in this state as an order issued by the Commissioner pursuant to the LLA; and

**WHEREAS** the Settlement Agreement resolved certain compliance violations (labeled "compliance exceptions" in the Settlement Agreement) discovered during a joint regulatory examination performed by the participating states jointly and, in New Jersey's case, also performed separately; and

**WHEREAS** under the terms of the Settlement Agreement, TBW was required to make payments to the participating states, totaling $4.5 million in the aggregate; and

**WHEREAS** TBW forwarded a payment to the Department in the amount of $321,428.00, which was duly deposited into the State's general fund on or about July 8, 2009; and

**WHEREAS** under the terms of the Settlement Agreement, TBW was required to make a payment to the Nationwide Mortgage Licensing System and Registry ("NMLS&R") in the amount of $4.5 million, equal shares of which amount were credited by the NMLS&R to each of the fourteen states participating in the Settlement Agreement; and

**WHEREAS** TBW made a payment to the NMLS&R on or about July 1, 2009 in accordance with the Settlement Agreement, and New Jersey was credited by the NMLS&R in the amount of $321,428.00; and

2

**WHEREAS** the Settlement Agreement imposed continuing, post-settlement responsibilities upon TBW with respect to development and implementation of policies and procedures to effectuate internal controls, a comprehensive loan review process and report, and implementation of a loan modification program with respect to TBW's loan servicing portfolio (collectively, the "Remedial Actions"); and

**WHEREAS**, on August 4, 2009, the Department became aware through a press release issued by the Department of Housing and Urban Development ("HUD") (the "HUD Press Release") that the Federal Housing Administration ("FHA") had suspended TBW from making loans insured by FHA; and

**WHEREAS**, the HUD Press Release further stated that the Government National Mortgage Association ("Ginnie Mae") was terminating TBW as an issuer in Ginnie Mae's mortgage back security program and would be terminating TBW's ability to continue servicing Ginnie Mae securities; and

**WHEREAS**, the HUD Press Release states that the suspension was issued as a result of TBW's failure to submit required annual financial reports along with failure to report certain irregular transactions; and

**WHEREAS** a press release by TBW issued on August 5, 2009 advised that TBW ceasing all mortgage loan origination operations effective immediately and that it would not close or fund mortgage loans in the "pipeline;" and

## COUNT ONE

**IT APPEARING** that, effective on or about August 3, 2009, TBW and Stec shut down operations in New Jersey without appropriate notice to the Commissioner or other interested parties, in a manner and as a result of actions by other parties that have demonstrated unworthiness, incompetence and bad faith in the transaction of business as a licensee in violation of N.J.S.A. 17:11C-18a(5); and

## COUNT TWO

**IT APPEARING** that, beginning on or about August 3, 2009, TBW and Stec ceased to disburse funds on an unknown number of mortgage loans closed and/or approved for closing as required by an unknown number of agreements they had entered into with New Jersey resident mortgage loan borrowers, in violation of N.J.S.A. 17:11C-22h, with each such failure to disburse representing a separate violation of N.J.S.A. 17:11C-22h; and

## COUNT THREE

**IT FURTHER APPEARING** that, beginning on or about August 3, 2009, TBW and Stec failed to deliver mortgage loan proceeds funds within the required time after a mortgage loan closing with respect to an unknown number of agreements TBW had entered into with New Jersey resident mortgage loan borrowers, in violation of N.J.S.A. 17:11C-22i, with each such failure to disburse representing a separate violation of N.J.S.A. 17:11C-22i; and

## COUNT FOUR

**IT FURTHER APPEARING** that, prior to August 3, 2009, TBW and Stec took an unknown number of pending mortgage loan applications from New Jersey borrowers that have not closed (hereinafter referred to as the "Loans in the Pipeline") and that TBW and Stec knew or should have known they would be unable to process through to closing and funding in accordance with the mortgage agreements, thereby misrepresenting or concealing a material particular of the transaction in

violation of N.J.S.A. 17:11C-22g, with each such misrepresentation or concealment representing a separate violation of N.J.S.A. 17:11C-22g; and

## COUNT FIVE

**IT FURTHER APPEARING** that TBW's termination of business, which appears to include termination of the Remedial Actions required under the Settlement Agreement, constitutes a material breach of the provisions of the Settlement Agreement, and thus a violation of an Order of the Commissioner, in violation of N.J.S.A. 17:11C-18(a)1; and

## COUNT SIX

**IT FURTHER APPEARING** that TBW has failed to maintain the required net worth or become insolvent, in violation of N.J.S.A. 17:11C-14 and N.J.S.A. 17:11C-18a(4);

## ORDER

**NOW, THEREFORE**, in accordance with regulatory and police powers of this State, and under the authority provided in the LLA and at N.J.S.A. 17:1-15g, it is on this 6th day of August 2009, **ORDERED** as follows:

A.     **ORDER TO CEASE AND DESIST**

1.     TBW, Stec, TBW Officers, and all other TBW principals, officers, directors, employees, agents, solicitors, and representatives of any kind shall immediately **CEASE AND DESIST** from closing residential mortgage loans without available funding, for New Jersey mortgage loan borrowers.

2.     TBW, Stec, TBW Officers, and all other TBW principals, officers, directors, employees, agents, solicitors, and representatives of any kind shall immediately **CEASE AND DESIST** from taking any new mortgage loan applications from New Jersey borrowers to be secured by New Jersey residential real estate until further notice from the Commissioner.

B.     **ORDER TO TAKE CERTAIN ACTIONS**

3.     TBW, TBW Officers, and Stec shall immediately **TAKE ACTION** to fund those loans of New Jersey borrower that have closed without funding or to redirect such loans to a viable alternative funding source.

4.     TBW, TBW Officers, and Stec shall immediately **TAKE ACTION** to secure a viable funding source for the Loans in the Pipeline before proceeding any further with such loans or to redirect the Loans in the Pipeline to a viable alternative lender;

5.     TBW, TBW Officers, and Stec shall immediately **TAKE ACTION** to provide to the Commissioner a report on a daily basis or on such other periodic basis as the Commissioner may direct, in electronic format, with all such information as the Commissioner may require detailing the status of all loans closed but not funded, including, where appropriate, proof of funding (by Federal ID Wire Number).

6.     TBW, TBW Officers, and Stec shall immediately **TAKE ACTION**, on a daily basis, to provide to the Commissioner a daily report, in electronic format, with all such information as the Commissioner may require, detailing the status of the Loans in the Pipeline.

7.    TBW, TBW Officers, and Stec shall immediately **TAKE ACTION** to make available for examination any and all other books, accounts, records and documents pertaining to its New Jersey business as the Commissioner may request.

8.    TBW, TBW Officers, and Stec shall immediately **TAKE ACTION** to place into escrow until further order of the Commissioner all monies representing fees of any kind paid by New Jersey borrowers for a loan that has not been funded.

C.    **ORDER TO SHOW CAUSE - LICENSE REVOCATION**

9.    TBW and Stec shall appear and show cause why their licensed lenders licenses should not be **REVOKED** pursuant to and N.J.S.A. 17:11C-18a(1) for such violations.

D.    **ORDER TO SHOW CAUSE - BAR**

10.    The TBW Officers shall appear and show cause why they should not be **BARRED** for a period of ten years from acting as a licensee, a stockholder, a partner or other owner, or an employee of a licensee, an officer of a licensee, a director of a licensee or in any other capacity under the LLA, pursuant to N.J.S.A. 17:11C-48b for such violations.

E.    **ORDER TO SHOW CAUSE - PENALTIES**

11.    TBW and the TBW Officers shall appear and show cause why they should not be jointly and severally liable for administrative **PENALTIES** for such violations of the Act pursuant to N.J.S.A. 17:11C-48a, including, but not limited to joint and several liability for payment of any portion of the amount paid to New Jersey under the Settlement Agreement ordered returned to TBW's estate in the event of bankruptcy proceedings and for payment of any portion of the amount paid to the NMLS&R under the Settlement Agreement and credited to New Jersey ordered returned to TBW's estate in the event of bankruptcy proceedings.

## HEARING

**IT IS PROVIDED** that TBW, Stec, and the TBW Officers shall have the right to request an administrative hearing pursuant to the Administrative Procedures Act, N.J.S.A. 52:14B-1 et seq., as to the terms of this Order; and

**IT IS FURTHER PROVIDED** that unless a request for a hearing on this Order is received within twenty (20) days of receipt of this Order with respect to any person named in this Order, the right to a hearing in this matter shall be deemed to have been waived by such person(s), and the Commissioner may dispose of this matter as to such person(s) by issuing a final order pursuant to law.

A hearing may be requested by mailing the request to:

Thomas M. Hunt, Assistant Division Director
Office of Consumer Finance
Department of Banking and Insurance
P.O. Box 040
Trenton, New Jersey 08625-0040

The request shall contain:

(1)    The person's name, address and daytime telephone number;

(2)    A copy of this Order;

(3)     A statement requesting a hearing;

(4)     A specific admission or denial of each fact alleged in this Order.  Where the licensee has no specific knowledge regarding a fact alleged in the Order, a statement to that effect must be contained in the hearing request.  Allegations of this Order not answered in the manner set forth above shall be deemed to have been admitted; and

(5)     A concise statement identifying any factual or legal defense intended to be asserted in response to each charge in this Order.  Where the defense relies on facts not contained in the Order, those specific facts must be stated.


NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE

_____

NEIL N. JASEY, COMMISSIONER

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF BANKING

COMMONWEALTH OF PENNSYLVANIA    :   Docket No. : 09 0148 (ENF-ORD)
DEPARTMENT OF BANKING, BUREAU  :
OF COMPLIANCE, INVESTIGATION   :
AND LICENSING               :
                           :
         v.               :
                           :
TAYLOR, BEAN & WHITAKER       :
MORTGAGE CORP.            :

## NOTICE OF RIGHT TO APPEAL AND HEARING

You, Taylor, Bean & Whitaker Mortgage Corp., have the right to appeal the attached Order within 10 days of the date of service. *See* 1 Pa. Code § 35.20. The date of service is the date the Order is deposited in the mail or delivered to you in person, as the case may be, as set forth in 1 Pa. Code § 33.34. If you appeal the Order, you also have a right to a hearing.

To file an appeal and request a hearing on the Order, you must file a petition with the Secretary of Banking within 10 days of the date of service. 1 Pa. Code § 35.20. The petition must be in writing, state clearly and concisely your grounds of interest in the subject matter, the facts you rely upon, the law you rely upon, and the relief you seek. *See* 1 Pa. Code § 35.17. Please deliver your petition to:

> Linnea Freeberg, Docket Clerk
> Office of Executive Deputy Secretary
> Pennsylvania Department of Banking
> 17 North Second Street, Suite 1300
> Harrisburg, PA 17101

The petition must be received by the Docket Clerk within the aforementioned 10 day deadline. If the Docket Clerk does not receive your petition on time, your right to a hearing will be waived and the Order will be deemed final.

If you choose to file a petition challenging the Order, please send an additional copy to:

> Lauren Sassani, Assistant Counsel
> Pennsylvania Department of Banking
> 17 N. Second Street, Suite 1300
> Harrisburg, PA 17101



EXHIBIT
J

Once you file your petition appealing the Order and requesting a hearing, you will be notified of the hearing date, time, place, the person who will preside at your hearing, and any other pertinent information.

You have the right to be represented by an attorney. Corporations may be required to be represented by an attorney.

The hearing and all other procedural matters will be governed by the Pennsylvania Administrative Agency Law, 2 Pa. C.S. §§ 501-508, 701-704, and the General Rules of Administrative Practice and Procedure, 1 Pa. Code §§ 31.1.-35.251.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF BANKING

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF BANKING, BUREAU OF COMPLIANCE, INVESTIGATION AND LICENSING | : : : : | Docket No. : 09 0148 (ENF-ORD) |
| | : | |
| v. | : : | |
| TAYLOR, BEAN & WHITAKER MORTGAGE CORP. | : : : | |

## ORDER

WHEREAS, the Department of Banking ("Department") is the Commonwealth of Pennsylvania's administrative agency authorized and empowered to administer and enforce 7 Pa. C.S. § 6101 et seq. (the "Mortgage Act") and the Proper Conduct of Lending and Brokering in the Mortgage Loan Business Regulation (the "Proper Conduct Reg"), 10 Pa. Code § 46.1 et seq.; and

WHEREAS, the Bureau of Compliance, Investigation and Licensing (the "Bureau") is primarily responsible for administering and enforcing the Mortgage Act for the Department; and

WHEREAS, Taylor Bean is currently licensed as a Mortgage Lender, license no. 23392 under the Mortgage Act; and

WHEREAS, Taylor Bean maintains a corporate location of 315 NE 14th Street, Ocala, FL 34470 (the "Corporate Office") and various branch locations throughout the United States, including 755 Business Center Drive, Suite 150 Horsham, PA 19044; and

WHEREAS, on August 4, 2009, the Bureau became aware through a press release issued by the Department of Housing and Urban Development ("HUD") (the "Press Release") that the

3

Federal Housing Administration ("FHA") had suspended Taylor, Bean & Whitaker from making loans insured by FHA (see attachment A); and

WHEREAS, the Press Release further stated that Government National Mortgage Association ("Ginnie Mae") was defaulting and terminating Taylor, Bean & Whitaker as an issuer in Ginnie Mae's mortgage back security program and would be terminating Taylor, Bean & Whitaker's ability to continue servicing Ginnie Mae securities; and

WHEREAS, the Press Release states that the suspension was issued as a result of Taylor Bean's failure to submit required annual financial reports along with failure to report certain irregular transactions; and

WHEREAS, as of the date of this Order, Taylor Bean has not provided the Department with written notice that it is closing its business; and

WHEREAS, according to a press release by Taylor Bean on August 5, 2009, it was disclosed that the corporation was ceasing all mortgage loan origination operations effective immediately and that it would not close or fund mortgage loans in the pipeline (see attachment B); and

WHEREAS, by not funding mortgage loans in the current pipeline that Taylor Bean had committed to closing, there is a substantial likelihood that Pennsylvania consumers will be harmed; and

WHEREAS, Section 46.2(k)(1) of the Proper Conduct Reg provides that "[a] licensee lender may not refuse or fail to fund a consummated loan. . . ." 10 Pa. Code § 46.2(k)(1); and

WHEREAS, Section 46.3(a) of the Proper Conduct Reg provides that a violation of the Proper Conduct Reg is a violation of the Mortgage Act. 10 Pa. Code § 46.3(a); and

4

WHEREAS, Section 6138(a)(4) of the Mortgage Act provides the Department with authority to issue orders as may be necessary for the proper conduct of the mortgage loan business and for the enforcement of the Mortgage Act. 7 Pa. C.S. § 6138(a)(4); and

WHEREAS, Section 6131(b) of the Mortgage Act provides that a licensee must provide the Department written notice of any change in information that would be contained in a licensing application within 10 days of becoming aware of the change; and

WHEREAS, Section 6139(a)(3) of the Mortgage Act authorizes the Department to suspend, revoke or refuse to renew a license issued under the Mortgage Act if the licensee has "[e]ngaged in dishonest, fraudulent or illegal practices or conduct in a business or unfair or unethical practices or conduct in connection with the mortgage loan business." 7 Pa. C.S. § 6139(a)(3); and

WHEREAS, Section 6140(b) of the Mortgage Act provides, in relevant part, that "[a] person licensed under this chapter or director, officer, owner, partner, employee or agent of a licensee who violates a provision of this chapter or who commits any action which would subject the licensee to suspension, revocation or nonrenewal under section 6139 may be fined by the department up to $10,000 for each offense." 7 Pa. C.S. § 6140(b); and

WHEREAS, Taylor Bean engaged in dishonest, fraudulent, illegal, unfair and/or unethical business practices by failing to complete and/or fund loans in its pipeline that it has committed to close; and

WHEREAS, Taylor Bean engaged in improper conduct by failing to complete and/or fund loans in its pipeline that it has committed to close; and

AND NOW THEREFORE, since Taylor Bean was not engaged in the proper conduct of a mortgage lender when it refused to complete the pipeline and/or fund loans it has committed to

close, the Bureau, pursuant to its authority referenced above hereby imposes the following Order:

1.    <u>Loan Origination</u>.  Upon the Effective Date of this Order, Taylor Bean and any and all officers, members, managers, employees, independent contractors, or agents, operating on behalf of Taylor Bean and their successors or assigns, shall immediately cease and desist from accepting applications, soliciting and/or advertising for its wholesale and/or retail businesses in Pennsylvania or to Pennsylvania consumers.

2.    <u>Escrow Fees</u>.  Upon the Effective Date of this Order, Taylor Bean shall immediately place any fees previously collected from Pennsylvania consumers relative to any pending mortgage loan applications in a separate escrow account maintained at a federally insured bank. Within five days of the Effective date of this Order, Taylor Bean shall provide proof that the fees have been placed in an escrow account maintained at a federally insured bank to Linda Zang, Chief Consumers Services Division at lzang@state.pa.us.

3.    <u>Pipeline Reports</u>.  Upon the Effective Date of this Order, Taylor Bean shall provide a pipeline report for the following categories of loans:

    a.    loans that have closed, but have not yet funded;

    b.    loans that have been approved but that have not closed;

    c.    applications that have been received, but no decision has been made on approving the applications; and

    d.    applications that are in the initial stages of review and document gathering.

The pipeline report shall include the following information:

    i.    the name, address and telephone number of the applicant consumer;

ii.    the loan number;

iii.    the amount of all prepaid loan fees submitted by the applicant consumer;

iv.    the amount of each loan;

v.    the status of the loan;

vi.    the purpose of the loan (i.e. purchase or refinance);

vii.    contact information for the broker who referred the loan to Taylor Bean (if applicable); a

viii.    status of what is being done with the loan (funded by Taylor Bean, referred to another broker/lender, returned to broker, withdrawn by the applicant); and

ix.    contact information for the broker/lender where the loan is placed, should Taylor Bean not fund the loan itself.

This Pipeline Report shall be updated every Monday at 9:00 A.M. Eastern Time and shall be sent to Linda Zang, Chief Consumer Services Division at lzang@state.pa.us. Taylor Bean shall continue to update the Pipeline Report until all of the loans have been funded, placed with another broker or lender, or withdrawn by the applicant. Taylor Bean shall ensure that the consumer is in the same position with the new lender or broker as the consumer would have been if the loan had been funded with Taylor Bean.

4.    Liens. Upon the Effective Date of this Order, Taylor Bean shall release any liens filed on any Pennsylvania real property or filed on property owned by Pennsylvania consumers as a result of a residential mortgage loan closing with Taylor Bean but not being funded. In the event that the loan is subsequently funded, Taylor Bean may file a lien against the property at that time.

7

5. _Recordkeeping_. Upon the Effective Date of this Order, Taylor Bean shall maintain all required records at its Corporate Office, and allow the Department free access to examine the records as required under Section 6135(a)(2) of the Mortgage Act.

6. _Contact Information_. Upon the Effective Date of this Order, Taylor Bean shall provide contact information for an employee of Taylor Bean that Department employees may contact with questions as well as contact information for an employee of Taylor Bean that consumers and mortgage brokers may contact with questions. This information shall be provided to Linda Zang, Chief Consumer Services Division at lzang@state.pa.us.

7. _Non-Prohibited Conduct_. Nothing in this Order shall prevent Taylor Bean from selling or assigning residential mortgage loans to another entity, servicing closed mortgage loans or engaging in other activity not prohibited by the Mortgage Act or this Order.

8. _Financials_. Within five (5) days of the Effective Date of this Order, Taylor Bean shall submit to the Department Taylor Bean's balance sheet and year-to-date income statement, prepared as of the date of submission, and attested by a duly authorized officer of the Corporation. The balance sheet shall indicate Taylor Bean cash position at each of its depository banks as well as Taylor Bean's bank account information. The balance sheet and year-to-date statement shall be sent to Linda Zang, Chief Consumer Services Division at lzang@state.pa.us.

9. _Reservation of Rights_. Nothing in this Order shall prevent the Bureau from taking any further administrative action under the authority of the Mortgage Act.


IT IS SO ORDERED.

Ryan Walsh, Administrator
Department of Banking,
Bureau of Compliance, Investigation and Licensing

August 6, 2009
(Date)

ATTACHMENT A

This page is located on the U.S. Department of Housing and Urban Development's Homes and Communities Web site at http://www.hud.gov/news/release.cfm?CFID=19444655&CONTENT=pr09-145.cfm&CFTOKEN=90205823.



# News Release

 Information by State

Esta página en español

Print version

**HUD No. 09-145**
**Brian Sullivan**
**(202) 708-0685**
**www.hud.gov/news/**

**For Release**
**Tuesday**
**August 4, 2009**

---

## FHA SUSPENDS TAYLOR, BEAN & WHITAKER MORTGAGE CORP. AND PROPOSES TO SANCTION TWO TOP OFFICIALS
### *Ginnie Mae Issues Default Notice and Transfers Portfolio*

WASHINGTON - The Federal Housing Administration (FHA) today suspended Taylor, Bean and Whitaker Mortgage Corporation (TBW) of Ocala, Florida, thereby preventing the Company from originating and underwriting new FHA-insured mortgages. The Government National Mortgage Association (Ginnie Mae) is also defaulting and terminating TBW as an issuer in its Mortgage-Backed Securities (MBS) program and is ending TBW's ability to continue to service Ginnie Mae securities. This means that, effective immediately, TBW will not be able to issue Ginnie Mae securities, and Ginnie Mae will take control of TBW's nearly $25 billion Ginnie Mae portfolio.

FHA and Ginnie Mae are imposing these actions because TBW failed to submit a required annual financial report and misrepresented that there were no unresolved issues with its independent auditor even though the auditor ceased its financial examination after discovering certain irregular transactions that raised concerns of fraud. FHA's suspension is also based on TBW's failure to disclose, and its false certifications concealing, that it was the subject of two examinations into its business practices in the past year.

"Today, we suspend one company but there is a very clear message that should be heard throughout the FHA lending world - operate within our standards or we won't do business with you," said HUD Secretary Shaun Donovan.

FHA Commissioner David Stevens said, "TBW failed to provide FHA with financial records that help us to protect the integrity of our insurance fund and our ability to continue a 75-year track record of promoting, preserving and protecting the American Dream. We were also troubled that the Company not only failed to disclose it was a target of a multi-state examination and a separate action by the Commonwealth of Kentucky, but then falsely certified that it had not been sanctioned by any state. FHA won't tolerate irresponsible lending practices."

Ginnie Mae President Joseph Murin said, "I would like to reassure TBW's customers whose loans serve as collateral for Ginnie Mae securities that, although this action will result in a new servicer, the transition will be seamless for them."

TBW's immediate suspension is for a temporary period pending the completion of an investigation by HUD's Office of Inspector General, an ongoing review by the Department's Office of Housing, and any legal proceedings that may ensue. TBW is the third largest direct endorsement lender of FHA-insured loans and the eighth largest issuer of Ginnie Mae mortgage-backed securities. FHA decided that TBW's immediate suspension is in the best interest of the public and is necessary to protect the financial interests of the Department.

TBW may appeal its immediate suspension by submitting a written request for a hearing before an Administrative Law Judge within 30 days. Such a request will not delay the action FHA is announcing today.

In conjunction with TBW's suspension, HUD sent notices of proposed debarment to TBW's Chief Executive Officer, Paul R. Allen, and TBW's President, Ray Bowman. Mr. Allen's proposed debarment alleges that he submitted false and/or misleading information to Ginnie Mae regarding TBW's delay in submitting its audited financial reports for fiscal year ending on March 31, 2009. Mr. Bowman's proposed debarment alleges that he submitted two false certifications to HUD on TBW's Yearly Verification Report. Mr. Allen and Mr. Bowman have thirty days to contest the proposed debarments.

### # #

*HUD is the nation's housing agency committed to sustaining homeownership; creating affordable housing opportunities for low-income Americans; and supporting the homeless, elderly, people with disabilities and people living with AIDS. The Department also promotes economic and community development and enforces the nation's fair housing laws.*

*Ginnie Mae is a wholly-owned government corporation within the U.S. Department of Housing and Urban Development. Ginnie Mae pioneered the mortgage-backed security (MBS), guaranteeing the very first security in 1971. An MBS enables a mortgage lender to aggregate and sell mortgage loans as a security to investors. Ginnie Mae securities carry the full faith and credit of the United States Government, which means that, even in difficult times, an investment in Ginnie Mae is one of the safest an investor can make.*

*More information about HUD and Ginnie Mae is available on the Internet at www.hud.gov, espanol.hud.gov and www.ginniemae.gov*

**U.S. Department of Housing and Urban Development**
451 7th Street, S.W., Washington, DC 20410
Telephone: (202) 708-1112  Find the address of a HUD office near you

ATTACHMENT B



<u>PRESS RELEASE</u>

August 5, 2009

# TAYLOR BEAN MUST CEASE ALL ORIGINATION OPERATIONS EFFECTIVE IMMEDIATETLY

OCALA, FLORIDA – TAYLOR, BEAN & WHITAKER MORTGAGE CORP. ("TBW") RECEIVED NOTIFICATION ON AUGUST 4, 2009 FROM THE U.S DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, FREDDIE MAC AND GINNIE MAE (THE "AGENCIES") THAT IT WAS BEING TERMINATED AND/OR SUSPENDED AS AN APPROVED SELLER AND/OR SERVICER FOR EACH OF THOSE RESPECTIVE FEDERAL AGENCIES. TBW HAS UNSUCCESSFULLY SOUGHT TO HAVE THE TERMINATION/SUSPENSION DECISIONS OF EACH OF THOSE AGENCIES REVERSED. AS A RESULT OF THESE ACTIONS, TBW MUST CEASE ALL ORIGINATION OPERATIONS EFFECTIVE IMMEDIATELY. REGRETTABLY, TBW WILL NOT BE ABLE TO CLOSE OR FUND ANY MORTGAGE LOANS CURRENTLY PENDING IN ITS PIPELINE. TBW IS COOPERATING WITH EACH OF THE AGENCIES WITH RESPECT TO ITS SERVICING OPERATIONS AND EXPECTS TO CONTINUE TO SERVICE MORTGAGE LOANS AS IT RESTRUCTURES ITS BUSINESS IN THE WAKE OF THESE EVENTS. WE UNDERSTAND THAT THIS COULD HAVE A SIGNIFICANT IMPACT ON OUR VALUED EMPLOYEES, CUSTOMERS AND COUNTERPARTIES, AND ARE VERY DISAPPOINTED THAT A LESS DRASTIC OPTION IS UNAVAILABLE.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF BANKING

FILED
2009 AUG -6 PM 3: 45
PA DEPT OF BANKING

| COMMONWEALTH OF PENNSYLVANIA | : | Docket No. : 09 CV 48 (ENF-ORD) |
| DEPARTMENT OF BANKING, BUREAU | : | |
| OF COMPLIANCE, INVESTIGATION | : | |
| AND LICENSING | : | |
| | : | |
| v. | : | |
| | : | |
| TAYLOR, BEAN & WHITAKER | : | |
| MORTGAGE CORP. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing Order upon the parties below, who constitute the only parties of record in this proceeding, in accordance with the requirements of 1 Pa. Code § 33.37:

## BY CERTIFIED AND FIRST CLASS MAIL AND FASCIMILE

Jeffery W. Cavender, General Counsel
Taylor, Bean & Whitaker Mortgage Corp.
5150 Stilesboro Road
Building 500, Suite 500
Kennesaw, GA 30152
Facsimile (678)742-4933

Dated this 6 th day of August, 2009.

Lauren A. Sassani
Assistant Counsel
Attorney I.D. # 203016
FOR: Commonwealth of Pennsylvania
Department of Banking
17 North Second Street, Suite 1300
Harrisburg, PA 17101
(717) 787-1471



OFFICE OF GENERAL COUNSEL
DEPARTMENTAL ENFORCEMENT CENTER

**AUG 0 4 2009**

## VIA FACSIMILE and UNITED PARCEL SERVICE

Mr. Ray Bowman
4999 SW 2nd Court
Ocala, FL 34471

Re: Notice of Proposed Debarment

Dear Mr. Bowman:

You are hereby notified that the U.S. Department of Housing and Urban Development ("HUD" or "the Department") is proposing your debarment from future participation in procurement and nonprocurement transactions as a participant or principal with HUD and throughout the Executive Branch of the Federal Government for a period of eighteen (18) months from the date of the final determination of this proposed action. This action is in accordance with the procedures set forth at Title 2, Code of Federal Regulations ("C.F.R."), Parts 2424 and 180, copies of which are enclosed.

The proposed debarment is based upon false certifications that you submitted to HUD in your capacity as the President of an FHA-approved lender. On April 6, 2009, HUD received a Title II Yearly Verification Report ("YVR") with a report date of March 31, 2009, wherein as president of Taylor, Bean & Whitaker ("TBW"), an FHA-approved lender, you certified to the Department that TBW had not been sanctioned by any state in which it originates and/or services HUD-FHA insured mortgages. You also certified that TBW conforms to all HUD-FHA regulations necessary to maintain its HUD-FHA approval.

Specifically, you falsely certified on the YVR that TBW had not been sanctioned by any state in which it originates and/or services mortgages. This certification was false because you knew or should have known that TBW was involved in an examination by the Commonwealth of Kentucky, where it originates and/or services mortgages. This examination discovered that TBW funded numerous loans brokered by unlicensed loan brokers and originated by unregistered loan officers and ultimately resulted in a fine of $75,000 and a monetary contribution of $75,000.

You also falsely certified on the YVR that TBW conformed to all HUD-FHA regulations necessary to maintain approval. This was a false certification because at the time TBW submitted its YVR, you knew or should have known that TBW did not comply with HUD's regulations regarding mortgagee eligibility. When TBW submitted its YVR, it was engaged in



business practices that did not conform to generally accepted practices of prudent mortgagees and demonstrated irresponsibility. TBW was involved in a multi-state examination by thirteen states and the District of Columbia regarding TBW's compliance with applicable laws, regulations and rules governing the mortgage business. This multi-state examination resulted in a settlement agreement in which TBW agreed to pay $9 million, which demonstrated that TBW did not comply with prudent lending practices and demonstrated irresponsibility. In addition, the Kentucky examination and fine, mentioned above, demonstrated that TBW did not comply with prudent lending practices and otherwise demonstrated irresponsibility. Finally, TBW's failure to report audit irregularities for fiscal year 2008 and TBW's false certification and/or misleading statements to Ginnie Mae regarding its delay for submitting its FY08 audited financial statements also make it ineligible to participate as an approved mortgagee because it demonstrates imprudent lending practices and irresponsibility.

Since you are the president of TBW, an entity that originates FHA-insured mortgages, you have been involved in covered transactions. Your action as set forth herein is evidence of serious irresponsibility and cause for debarment under the provision of 2 C.F.R. § 180.800(d).

If you decide to contest this proposed debarment, you may submit a written argument and/or request an informal hearing, which you may attend in person or by telephone or through a representative. Pursuant to 2 C.F.R. § 180.825, your written submission must identify: 1) specific facts that contradict the statements contained in this Notice of Proposed Debarment (a general denial is insufficient to raise a genuine dispute over facts material to the debarment); 2) all existing, proposed, or prior exclusions against you under regulations implementing Executive Order 12549 and all similar actions taken by Federal, State, or local agencies, including administrative agreements that affect only those agencies; 3) all criminal and civil proceedings against you not included in this Notice of Proposed Debarment that grew out of the facts relevant to the cause(s) stated in this Notice; and 4) all of your affiliates as defined in the enclosed regulations at 2 C.F.R. § 180.905. If you provide false information, the Department may seek further criminal, civil or administrative action against you as appropriate.

Your written opposition and/or hearing request must be submitted within 30 days of your receipt of this Notice of Proposed Debarment. The response may be mailed to the Debarment Docket Clerk, U.S. Department of Housing and Urban Development, Departmental Enforcement Center, 451 7th Street, S.W., B-133 – Portals 200, Washington, DC 20410. If you wish to use a courier or overnight mail, send your response to the Docket Clerk, Departmental Enforcement Center, 1250 Maryland Avenue, S.W., Suite 200, Washington, DC 20024.

Mr. Mortimer Coward is my designee in this matter. If you request a hearing in this matter, Mr. Coward will set a briefing and hearing schedule as necessary. He has the authority to review any written submissions, conduct an informal hearing, make a recommendation as to whether there is a genuine dispute over material facts and to propose to me a recommended

decision regarding this matter. If I determine that a genuine dispute over material facts exists, I will refer this matter to a Hearing Officer, who is an administrative judge, for a formal hearing to make findings of fact pursuant to 2 C.F.R. § 180.845. After receiving those findings of fact, and any related submissions from the parties, I will make a final decision regarding this matter. If you have any questions, please call James M. Beaudette, Director, Compliance Division. Mr. Beaudette may be reached at (202) 708-3041.

The final decision regarding whether to debar you will be based upon evidence and/or information including any written information and/or argument that both you and the Government may submit in this matter. If you fail to respond to this Notice within the 30-day period, then this proposed debarment will be affirmed.

If this matter is referred to a Hearing Officer for a formal hearing, this Notice of administrative action shall also serve as a Complaint, in compliance with 24 C.F.R. § 26.13(a), (b) and (c).

Sincerely,

Henry S. Czauski
Acting Director

Enclosures

cc: Mr. Ray Bowman
    President
    Taylor, Bean & Whitaker
    315 N. 14th Street
    Ocala, FL 34470



OFFICE OF GENERAL COUNSEL
DEPARTMENTAL ENFORCEMENT CENTER

## VIA FACSIMILE and UNITED PARCEL SERVICE    AUG 0 4 2009

Mr. Paul R. Allen
Chief Executive Officer
Taylor, Bean & Whitaker
315 N. 14th Street
Ocala, FL 34470

Re: Notice of Proposed Debarment

Dear Mr. Allen:

You are hereby notified that the U.S. Department of Housing and Urban Development ("HUD" or "the Department") is proposing your debarment from future participation in procurement and nonprocurement transactions as a participant or principal with HUD and throughout the Executive Branch of the Federal Government for a period of eighteen (18) months from the date of the final determination of this proposed action. This action is in accordance with the procedures set forth at Title 2, Code of Federal Regulations ("C.F.R."), Parts 2424 and 180, copies of which are enclosed.

The proposed debarment is based upon your submission of a false certification and/or misleading information to Ginnie Mae regarding the delay of Taylor, Bean and & Whitaker's ("TBW") submission of audited financial reports. In your July 6, 2009 written response on behalf of TBW, you advised Ginnie Mae that the reasons for the delay in submitting its audit report to Ginnie Mae was that in addition to having a shortened fiscal year, TBW engaged in two significant events: (1) the acquisition of Platinum Bancshares in 2008; and (2) TBW's planned equity investment in Colonial Bank. You further stated that with regard to unresolved issues with the auditor that there "are no unresolved issues." You stated that the two major events previously described were causing the audit to take longer than initially thought, but that the company was certain that without these two events the audited financial statements would have been submitted on time. You also stated that TBW "fully expect[s] the auditor's opinion to be unqualified."

The above mentioned statements you made in your July 6, 2009 letter were false and/or misleading because the reason for TBW's delay in submitting the audit was that its auditors, Deloitte & Touche, stopped their audit of TBW on June 16, 2009 due to their discovery of transactions that raised concerns of fraud including debt transactions with a third party amounting to approximately $230 million and $250 million. Pursuant to Chapter 23-6 of the Mortgage-Backed Securities Guide, any statement to Ginnie Mae constitutes a certification of the accuracy of the information. Accordingly, your statements in your July 6, 2009 letter constituted a false certification to Ginnie Mae.

In a letter to TBW dated July 22, 2009, Ginnie Mae requested further explanation of the discrepancy between the July 6th letter and the information regarding Deloitte & Touche's concerns. TBW responded in its written response on July 27, 2009, that a meeting between TBW and Deloitte & Touche had occurred on June 16, 2009, in which Deloitte & Touche communicated concerns raised by its review. In this response, TBW admitted that its previous representation that there were no unresolved issues was incorrect, and there are currently still unresolved issues with the auditor. As Chief Executive Officer of TBW, you knew or should have known of the occurrence and substance of the meeting with Deloitte & Touche when you submitted your July 6, 2009 response on behalf of TBW to Ginnie Mae.

Since you are the chief executive officer of TBW, an entity that originates FHA-insured mortgages, you have been involved in covered transactions. Your action as set forth herein is evidence of serious irresponsibility and cause for debarment under the provision of 2 C.F.R. § 180.800(d).

If you decide to contest this proposed debarment, you may submit a written argument and/or request an informal hearing, which you may attend in person or by telephone or through a representative. Pursuant to 2 C.F.R. § 180.825, your written submission must identify: 1) specific facts that contradict the statements contained in this Notice of Proposed Debarment (a general denial is insufficient to raise a genuine dispute over facts material to the debarment); 2) all existing, proposed, or prior exclusions against you under regulations implementing Executive Order 12549 and all similar actions taken by Federal, State, or local agencies, including administrative agreements that affect only those agencies; 3) all criminal and civil proceedings against you not included in this Notice of Proposed Debarment that grew out of the facts relevant to the cause(s) stated in this Notice; and 4) all of your affiliates as defined in the enclosed regulations at 2 C.F.R. § 180.905. If you provide false information, the Department may seek further criminal, civil or administrative action against you as appropriate.

Your written opposition and/or hearing request must be submitted within 30 days of your receipt of this Notice of Proposed Debarment. The response may be mailed to the Debarment Docket Clerk, U.S. Department of Housing and Urban Development, Departmental Enforcement Center, 451 7th Street, S.W., B-133 – Portals 200, Washington, DC 20410. If you wish to use a courier or overnight mail, send your response to the Docket Clerk, Departmental Enforcement Center, 1250 Maryland Avenue, S.W., Suite 200, Washington, DC 20024.

Mr. Mortimer Coward is my designee in this matter. If you request a hearing in this matter, Mr. Coward will set a briefing and hearing schedule as necessary. He has the authority to review any written submissions, conduct an informal hearing, make a recommendation as to whether there is a genuine dispute over material facts and to propose to me a recommended decision regarding this matter. If I determine that a genuine dispute over material facts exists, I will refer this matter to a Hearing Officer, who is an administrative judge, for a formal hearing to make findings of fact pursuant to 2 C.F.R. § 180.845. After receiving those findings of fact, and any related submissions from the parties, I will make a final decision regarding this matter. If you have any questions, please call James M. Beaudette, Director, Compliance Division. Mr. Beaudette may be reached at (202) 708-3041.

The final decision regarding whether to debar you will be based upon evidence and/or information including any written information and/or argument that both you and the Government may submit in this matter. If you fail to respond to this Notice within the 30-day period, then this proposed debarment will be affirmed.

If this matter is referred to a Hearing Officer for a formal hearing, this Notice of administrative action shall also serve as a Complaint, in compliance with 24 C.F.R. § 26.13(a), (b) and (c).

Sincerely,

for Henry S. Czauski
Acting Director

Enclosures



# Fidelity and Deposit Company of Maryland

Surety Service Center, 3910 Keswick Road, Baltimore, MD 21211

Bond No. LPM8643660

## NOTICE OF CANCELLATION

Date: AUGUST    6, 2009

STATE OF FLORIDA
DEPARTMENT OF BANKING & FINANCW
101 E GAINES STREET
TALLAHASSEE FL 32399

The undersigned Surety upon a certain Bond in your favor as follows:

Principal:    Taylor, Bean & Whitaker Mortgage Corp.

Bond No:    LPM8643660

License No:

Amount of Coverage:   $    10,000.00

Effective Date:   06/17/2009

hereby notifies you that it desires to cancel and does hereby cancel said bond as an entirety.  Such cancellation to become effective at   Thirty         ( 30)                days from receipt of this letter.  It shall be presumed that you receive this letter within five (5) days of this notice.  Please send written confirmation of this notice to the address below.

This notice is given to you in accordance with the cancellation provision contained in said bond.

By:   *Pamela D. Washington*
      Pamela D. Washington            , Attorney-in-Fact

Fidelity and Deposit Company of Maryland
trading as Zurich North America Surety
Attn:  Surety Service Center
3910 Keswick Road
Baltimore, Maryland 21211

CC:    JMB INSURANCE AGENCY, INC.
       900 N MICHIGAN AVE STE 1500
       CHICAGO IL  606116541

       Taylor, Bean & Whitaker Mortgage Corp.
       101 NE 2nd Street
       Ocala FL  34470

LPM90002 Ed.(07/03)

