

COMPOSITE EXHIBIT D PART 2

OFR 2009-368 ECC+D F


8/7/09
MR

**STATE OF FLORIDA**
**OFFICE OF FINANCIAL REGULATION**

STATE OF FLORIDA, OFFICE OF
FINANCIAL REGULATION,

      Petitioner,

v.

TAYLOR BEAN & WHITAKER
MORTGAGE CORP., licensed under
Part III, Chapter 494, Florida Statutes,

      Respondent.

Administrative Proceeding
No. 2561-F-08/09

## EMERGENCY ORDER TO CEASE AND DESIST AND NOTICE OF RIGHTS

The State of Florida, Office of Financial Regulation, ("Office"), being authorized and directed to administer and enforce Chapter 494, Florida Statutes, ("the Act") governing Mortgage Brokerage and Mortgage Lending in the State of Florida, having found that an immediate and serious danger to the public welfare flows from the unlawful activities of Taylor Bean & Whitaker Mortgage Corp. ("Taylor Bean" or "Respondent") hereby issues and serves this **EMERGENCY ORDER TO CEASE AND DESIST.** Pursuant to section 494.0014(1), Florida Statutes, and sections 120.60(6) & 120.569(2)(n), Florida Statutes, Respondent and all persons acting in concert or cooperation with Respondent shall **IMMEDIATELY CEASE AND DESIST** from the concerted course of action in violation of the Act described herein. Pursuant to sections 120.60(6) and 120.569(2)(n), Florida Statutes, this Order is based on the findings of fact set forth below and is **EFFECTIVE IMMEDIATELY**.

# I.  FINDINGS OF FACT

1.     The Office is responsible for the administration and enforcement of the Act, and the Office has jurisdiction over Respondent in this matter.

2.     Respondent is a Florida corporation with its corporate headquarters located in Ocala, Florida.

3.     Respondent is licensed with the Office as a mortgage lender pursuant to Part III, Chapter 494, Florida Statutes.

4.     Respondent has thirty active mortgage lender branch licenses with the Office.

5.     Respondent is in the business of originating, servicing, and making mortgage loans.

6.     On August 4, 2009, the Department of Housing and Urban Development issued a press release ("Press Release") that the Federal Housing Administration ("FHA") had suspended Respondent from originating loans insured by FHA. (*See Exhibit "A" attached*).

7.     The Press Release further noted that the Government National Mortgage Association ("Ginnie Mae") was defaulting and terminating Respondent as an issuer in Ginnie Mae's mortgage backed security program and would be terminating Respondent's ability to continue servicing Ginnie Mae securities. (*See Exhibit "A" attached*).

8.     In a letter dated August 4, 2009, the Mortgage Review Board of the U.S. Department of Housing and Urban Development notified Respondent of the immediate suspension of its originating and underwriting approval. (*See Exhibit "B" attached*).

9.    In a letter dated August 4, 2009, Ginnie Mae informed Respondent of the default and termination of its authority to act as a Ginnie Mae issuer or servicer under any of its guaranty agreements. (*See Exhibit "C" attached*).

10.    In a letter dated August 4, 2009, the Federal Home Loan Mortgage Corporation ("Freddie Mac") similarly informed Respondent that it was immediately terminating Respondent's eligibility to sell mortgage loans to and service loans for Freddie Mac. (*See Exhibit "D" attached*).

11.    On August 5, 2009, Respondent issued a press release indicating that it was ceasing all mortgage loan origination operations effective immediately and that it would not close or fund mortgage loans in the pipeline. (*See Exhibit "E" attached*).

12.    Based on representations made by Respondent's general counsel during an August 6, 2009 phone call, Respondent's lines of credit have been suspended and Respondent is unable to fund loans in accordance with agreements they have entered into with Florida consumers.

13.    During the August 6, 2009, phone call Respondent indicated that it would modify its website to indicate that Taylor Bean is no longer originating mortgage loans. However, as of the morning of August 7, 2009, Respondent's website had not been updated. (*See Exhbit "F" attached*).

14.    On August 6, 2009, Respondent provided the Office with a list of loans that included approximately sixty loans to Florida consumers that have already closed but remain unfunded. (*See Exhibit "G" attached*). As of the date of this order, the Office is unaware of how many additional loans Respondent is involved in or that remain in the pipeline.

15.     Several state agencies that regulate banking and mortgage lenders including Massachusetts, New Jersey, and Pennsylvania have entered adverse administrative orders acting against licenses held by Respondent. (*See Exhibits "H," "I", and "J" attached*).

16.     The Office finds that it is necessary to take emergency and immediate action against Respondents to avoid irreparable harm to Florida consumers resulting from Respondent's ongoing inability to fund agreements that it has entered into with Florida consumers, including loans that have already closed.

17.     In addition to this Emergency Cease and Desist Order, the Office is also promptly bringing an administrative complaint to make this Emergency Cease and Desist Order permanent.   The Office intends to issue this administrative complaint no later than Monday August 10, 2009.

18.     The Office finds that Respondent's failure to fund agreements has already caused considerable harm to Florida consumers.   The Office also finds that this conduct is ongoing and is likely to continue.   In the absence of this Order's immediate effect, the Respondent would be able to continue to engage in lending activities which will further harm Florida citizens.

19.     The Office recognizes the need to narrowly tailor emergency actions and further finds that it may be necessary for the protection of Florida consumers for the Respondent to continue to conduct certain activities, such as attempting to place closed loans with other lenders or servicing of loans where those servicing rights have not been suspended. Moreover, the Office finds that the need for cooperation from Respondent is necessary in order to best protect Florida consumers.  This finding does not preclude the Office from

reassessing this developing matter or taking additional administrative action against Respondent.

## II. CONCLUSIONS OF LAW

20.     The Office is responsible for the administration and enforcement of Chapter 494, Florida Statutes, and has jurisdiction over Respondent pursuant to Sections 494.001-494.0077, Florida Statutes. § 494.0011(1), Fla. Stat.

21.     Pursuant to section 494.0014, Florida Statutes, the Office "has the power to issue and serve upon any person an order to cease and desist and to take corrective action whenever it has reason to believe the person is violating, has violated, or is about to violate any provision of ss. 494.001-494.0077."

22.     Section 494.0072, Florida Statutes, provides in relevant part:

> (1) Whenever the office finds a person in violation of an act specified in subsection (2), it may enter an order imposing one or more of the following penalties against that person:
> . . .
> (b) Suspension of a license or registration, subject to reinstatement upon satisfying all reasonable conditions that the office specifies.
> . . .
> (2) Each of the following acts constitutes a ground for which the disciplinary actions specified in subsection (1) may be taken:
> . . .
> (g) Failure to disburse funds in accordance with agreements.
> . . .
> (u)2. Having been the subject of any injunction or adverse administrative order by a state or federal agency regulating banking, insurance, finance or small loan companies, real estate, mortgage brokers or lenders, money transmitters, or other related or similar industries.

23.     Respondent's inability to fund loans in accordance with agreements with Florida consumers constitutes a violation of section 494.0072(2)(g), Florida Statutes.

24.    The Mortgage Review Board of the U.S. Department of Housing and Urban development issued an immediately suspension of Respondent's originating and underwriting approval. This immediate suspension constitutes a violation of section 494.0072(2)(u)2., Florida Statutes.

25.    The letters from Ginnie Mae and Freddie Mac attached as Exhibits "C" and "D" also constitute adverse actions in violation of section 494.0072(2)(u)2., Florida Statutes.

26.    As noted in the findings of fact, Massachusetts, New Jersey, and Pennsylvania have entered adverse administrative orders acting against licenses held by Respondent. These orders also constitute a violation of section 494.0072(2)(u)2, Florida Statutes.

27.    Section 120.60(6), Florida Statutes, provides:

> If the agency finds that immediate serious danger to the public health, safety, or welfare requires emergency suspension, restriction, or limitation of a license, the agency may take such action by any procedure that is fair under the circumstances if:
>
> (a) The procedure provides at least the same procedural protection as is given by other statutes, the State Constitution, or the United States Constitution;
>
> (b) The agency takes only that action necessary to protect the public interest under the emergency procedure; and
>
> (c) The agency states in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances. The agency's findings of immediate danger, necessity, and procedural fairness are judicially reviewable. Summary suspension, restriction, or limitation may be ordered, but a suspension or revocation proceeding pursuant to ss. 120.569 and 120.57 shall also be promptly instituted and acted upon.

28.    Section 120.569(2)(n), Florida Statutes, provides:

> If an agency head finds that an immediate danger to the public health, safety, or welfare requires an immediate final order, it shall recite with

particularity the facts underlying such finding in the final order, which shall be appealable or enjoinable from the date rendered.

29. In order to satisfy due process requirements, this First District Court of Appeal held in <u>Premier Travel International, Inc. v. State of Florida Department of Agriculture & Consumer Services</u>, 849 So.2d 1132 (Fla. 1st DCA 2003), that an emergency final order must contain factual allegations demonstrating the following: (1) the complained of conduct was likely to continue; (2) The order was necessary to stop the emergency; (3) the order was sufficiently narrowly tailored to be fair. <u>See id.</u> at 1132-1135; <u>see also Bertany Ass'n for Travel and Leisure, Inc. v. Florida Dept. of Financial Services</u>, 877 So. 2d 854, 855 (Fla. 1st DCA 2004) (stating the three requirements that an emergency order must contain).

30. Under both section 120.60(6) and 120.569(2)(n), Florida Statutes, Respondent's ongoing activity is resulting in economic harm and loss of money by Florida consumers as referenced in the findings of fact. This activity requires an immediate final order because it poses an immediate danger to public welfare. <u>See Robin Hood Group, Inc. v. Florida Office of Ins. Regulation</u>, 885 So. 2d 393, 395-96 (Fla. 4th DCA 2004); <u>Bertany</u>, 877 So. 2d at 855; <u>cf. Premier Travel International v. State, Dept. of Ag and Consumer Services</u>, 849 So. 2d 1132, 1135 (Fla. 1st DCA 2003) (stating that personal monetary losses can be the sort of danger addressed by section 120.60, Fla. Stat., which contains the similar language to section 120.569(2)(n) regarding an "immediate serious danger to the public health, safety, or welfare . . . .").

31. In the instant case, the facts, as recited with particularity above, demonstrate that Respondent's activities are likely to continue and that this order is necessary to stop any additional violations. While Respondent has stated that it will not originate new loans or

accept new applications, it has not updated its website to reflect that is has stopped accepting new loans. Moreover, Respondent has identified that there are at least sixty instances where Florida consumers have loans which were scheduled to close, but Respondent failed to fund. The Office is currently unaware of how many more loans that are in some stage of completion.

32. Moreover, the issuance of this Emergency Cease & Desist Order and the procedural safeguards set forth herein are concluded to be fair under the circumstances due to the harm that is being suffered by Florida consumers. See §120.60(6), Fla. Stat. To the extent Respondent disagrees with the Findings of Fact or Conclusions of Law, this order is immediately appealable and enjoinable from the date of its issuance. See § 120.569(2)(n), Fla. Stat. Pursuant to the provisions of section 120.68, Florida Statutes, the Respondent is free to seek a stay of this Order from the Office or in court. Moreover, this order is being promptly followed by an administrative complaint that will entitle the Respondent to request a hearing pursuant to the Notice of Rights attached.

## III. FINAL ORDER TO IMMEDIATELY CEASE AND DESIST

33. ACCORDINGLY, based on the facts and law set forth in the foregoing Emergency Order to Cease and Desist, Respondent, and any and all persons acting in concert or cooperation with Respondent, are ORDERED TO CEASE AND DESIST and take the following corrective actions:

A. Respondent shall IMMEDIATELY CEASE AND DESIST accepting any applications, either directly from consumers or from

mortgage brokers, for mortgage loans secured by Florida real property or from Florida consumers.

B. Respondent shall IMMEDIATELY CEASE AND DESIST advertising any mortgage loans in Florida or to Florida consumers, including but not limited to modifying its website to indicate that Taylor Bean is longer originating mortgage loans.

C. Within five days of the Effective Date of this Order, Respondent shall place any fees previously collected from Florida consumers relative to any pending mortgage loan applications in a separate escrow account maintained at a federally insured depository institution.

D. Respondent shall attempt to obtain funding for, or place with another lender, all loans to Florida consumers that have closed but not yet been funded at no cost to the consumer.

E. Respondent shall attempt to either (i) obtain funding for and close, or (ii) place with other lenders, all loan applications from Florida consumers for which loan commitments have been issued.

F. For loan applications from Florida consumers for which no commitment has been issued Respondent shall either (i) obtain funding for and close the loans, or (ii) place with other lenders, or (iii) deny for cause, the loan applications. This paragraph shall not apply if the Florida consumer or the representative mortgage broker has voluntarily withdrawn the loan application.

G.     Within five calendar[1] days of the effective date of this

order, Respondent shall notify all Florida mortgage applicants, or the

mortgage applicant's broker, of the status of any applications or loans with

Respondent and the likelihood of obtaining funding.

H.     **No later than Monday August 10, 2009 at 5:00 PM EST**,

Respondent shall provide a point (or points) of contact at Taylor Bean and

a name, physical address, and phone number that can be used by mortgage

brokers and consumers for complaints.

I.     Within five days of the effective date of this order,

Respondent shall provide to the Office a report of all loans to Florida

consumers that have closed but not been funded detailing the status of the

loan.  The report shall include the Florida consumer's name, address and

telephone number; the loan number; the amount of all prepaid loan fees

submitted; the amount of each loan; the rate lock status; the actual closing

date; whether the loan was a purchase or refinance; the identification of

the applicable lender with whom each loan will be placed and contact

information for that lender.  The report shall be forwarded in electronic

format to Jay Newton, Financial Administrator, Bureau of Finance

Regulation at jay.newton@flofr.com, by 5:00 PM EST on the fifth day

following the effective date of this order.

J.     Within five days of the effective date of this order,

Respondent shall provide to the Office a report of all applications accepted

from Florida consumers that have not yet closed detailing the status of the

---

[1] References herein to days in which to undertake actions are calendar days unless otherwise specified.

application. The report shall include the Florida consumer's name, address and telephone number; the loan number (if applicable); the amount of all prepaid loan fees submitted; the amount of each loan; the current application status; the rate lock status; the actual closing dates; whether the loan was a purchase or refinance; the identification of the applicable lender with whom each loan will be placed and contact information for that lender. The report shall be forwarded in electronic format to Jay Newton, Financial Administrator, Bureau of Finance Regulation, at jay.newton@flofr.com, by 5:00 PM EST on the fifth day following the effective date of this order.

K. As of the effective date of this order, Respondent shall release any liens filed on any Florida real property or filed on property owned by Florida consumers as a result of a mortgage loan closing with Respondent but not being funded. In the event that the loan subsequently funds Respondent may file a lien against the property at that time.

L. Within five days of the effective date of this order, Respondent shall submit a balance sheet and year-to-date income statement, prepared as of the date of submission, and attested by a duly authorized officer of the Corporation. The financial information shall be forwarded in electronic format to Jay Newton, Financial Administrator, Bureau of Finance Regulation, at jay.newton@flofr.com, by 5:00 PM EST on the fifth day following the effective date of this order.

M. Within five days of the effective date of this order, respondent shall provide a complete listing of all warehouse loans and other lines of credit open or otherwise available to the respondent, as well as the unused balance of each line. This information shall be forwarded in electronic format to Jay Newton, Financial Administrator, Bureau of Finance Regulation, at jay.newton@flofr.com, by 5:00 PM EST on the fifth day following the effective date of this order.

N. Respondent shall use every best effort to resolve their current inability to fund loans.

34. Nothing in this order or in the above-listed corrective actions shall prevent Respondent from selling or assigning residential mortgage loans to another entity, servicing closed mortgage loans or engaging in other activity not prohibited herein or by Chapter 494, Florida Statutes.

35. Nothing in this order shall prevent the Office from taking further administrative action and the Office reserves all of its rights, duties, and authority to enforce all statutes, rules and regulations under its jurisdiction against Respondent and its directors, officers, and employees in the future regarding all matters.

This Order is effective immediately and is final as to the above named Respondent. However, this Order shall expire upon the entry of a Final Order in an administrative proceeding should a hearing be requested on the matters set forth herein.

**DONE AND ORDERED** at Tallahassee, Leon County, Florida this 7th day of August, 2009.

LINDA B. CHARITY, Acting Commissioner
Office of Financial Regulation

## NOTICE OF RIGHTS

NOTICE IS HEREBY given that the foregoing Emergency Order to Cease and Desist is entered pursuant to sections 120.60(6), 120.569(2)(n) and 494.0041(1), Florida Statutes, and is accordingly effective immediately. Judicial review may be obtained in accordance with section 120.68, Florida Statutes as set forth below. Respondent may apply to the Office for a stay of this Order or, in proceeding for judicial review under section 120.68, Florida Statutes, request supersedeas from the Court. Notice is provided, however, that the Office will oppose supersedeas in this matter under the provisions of section 120.68(3), Florida Statutes.

Judicial review of this Order under section 120.68, Florida Statutes, may be sought within thirty (30) days of its rendition in accordance with Rule 9.110, Florida Rules of Appellate Procedure, by filing a Notice of Appeal with the Clerk, Office of Financial Regulation, Legal Services Office, Suite 526, Fletcher Building, 200 E. Gaines Street, Tallahassee, FL 32399-0379, and a second copy, accompanied by filing fees prescribed by section 35.22, Florida Statutes, with the District Court of Appeal, First District, 301 Martin Luther King, Jr., Boulevard, Tallahassee, FL 32399-1850, or with the district court of appeal in the appellate district where the party resides. The Notice of Appeal must be filed within 30 days of rendition of the order to be reviewed.

Respondent is further advised that they may request a hearing to be conducted in accordance with the provisions of section 120.569 and 120.57, Florida Statutes. Requests for such hearing must comply with the provisions of Rule 28-106.2015, Florida Administrative Code, and must be filed with:

Agency Clerk
Office of Financial Regulation
Legal Services Office
P.O. Box 8050
Tallahassee, Florida 32314-8050

The request must be filed within twenty-one (21) days after the Respondent receives a copy of this Order. BY FAILING TO REQUEST A HEARING WITHIN TWENTY-ONE (21) DAYS, THE RESPONDENT SHALL BE DEEMED TO HAVE WAIVED ALL RIGHTS TO SUCH HEARING AND THE OFFICE SHALL ISSUE A FINAL ORDER AND IMPOSE ADMINISTRATIVE SANCTIONS WITHOUT A HEARING. Should the Respondent request such a hearing, Respondent shall have the

right to be represented by counsel or other qualified representative; to offer testimony, either written or oral; to call and cross-examine witnesses; and to have subpoenas and subpoenas duces tecum issued on Respondent's behalf.

Pursuant to section 120.573, Florida Statutes, you are advised that mediation is not available.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this EMERGENCY ORDER TO CEASE

AND DESIST AND NOTICE OF RIGHTS was served by FED EX Overnight Service,

Facsimile, and E-mail on:

Mr. Jeffrey W. Cavender, General Counsel
Taylor, Bean & Whitaker Mortgage Corp.



Dated this the 7th Day of August, 2009.

Gregg Riley Morton
Chief Counsel
Office of Financial Regulation
P.O. Box 8050
Tallahassee, FL 32314-8050
(850) 410-9896
(850) 410-9645 – Facsimile

Counsel for the Office

This page is located on the U.S. Department of Housing and Urban Development's Homes and Communities Web site at **http://www.hud.gov/news/release.cfm?CFID=18459075&CONTENT=pr09-145.cfm&CFTOKEN=23800760**.



# News Release

Information by State

Esta página en español

Print version

**HUD No. 09-145**
**Brian Sullivan**
**(202) 708-0685**
www.hud.gov/news/

**For Release**
**Tuesday**
**August 4, 2009**

## FHA SUSPENDS TAYLOR, BEAN & WHITAKER MORTGAGE CORP. AND PROPOSES TO SANCTION TWO TOP OFFICIALS
### Ginnie Mae Issues Default Notice and Transfers Portfolio

WASHINGTON - The Federal Housing Administration (FHA) today suspended Taylor, Bean and Whitaker Mortgage Corporation (TBW) of Ocala, Florida, thereby preventing the Company from originating and underwriting new FHA-insured mortgages. The Government National Mortgage Association (Ginnie Mae) is also defaulting and terminating TBW as an issuer in its Mortgage-Backed Securities (MBS) program and is ending TBW's ability to continue to service Ginnie Mae securities. This means that, effective immediately, TBW will not be able to issue Ginnie Mae securities, and Ginnie Mae will take control of TBW's nearly $25 billion Ginnie Mae portfolio.

FHA and Ginnie Mae are imposing these actions because TBW failed to submit a required annual financial report and misrepresented that there were no unresolved issues with its independent auditor even though the auditor ceased its financial examination after discovering certain irregular transactions that raised concerns of fraud. FHA's suspension is also based on TBW's failure to disclose, and its false certifications concealing, that it was the subject of two examinations into its business practices in the past year.

"Today, we suspend one company but there is a very clear message that should be heard throughout the FHA lending world - operate within our standards or we won't do business with you," said HUD Secretary Shaun Donovan.

FHA Commissioner David Stevens said, "TBW failed to provide FHA with financial records that help us to protect the integrity of our insurance fund and our ability to continue a 75-year track record of promoting, preserving and protecting the American Dream. We were also troubled that the Company not only failed to disclose it was a target of a multi-state examination and a separate action by the Commonwealth of Kentucky, but then falsely certified that it had not been sanctioned by any state. FHA won't tolerate irresponsible lending practices."

Ginnie Mae President Joseph Murin said, "I would like to reassure TBW's customers whose loans serve as collateral for Ginnie Mae securities that, although this action



will result in a new servicer, the transition will be seamless for them."

TBW's immediate suspension is for a temporary period pending the completion of an investigation by HUD's Office of Inspector General, an ongoing review by the Department's Office of Housing, and any legal proceedings that may ensue. TBW is the third largest direct endorsement lender of FHA-insured loans and the eighth largest issuer of Ginnie Mae mortgage-backed securities. FHA decided that TBW's immediate suspension is in the best interest of the public and is necessary to protect the financial interests of the Department.

TBW may appeal its immediate suspension by submitting a written request for a hearing before an Administrative Law Judge within 30 days. Such a request will not delay the action FHA is announcing today.

In conjunction with TBW's suspension, HUD sent notices of proposed debarment to TBW's Chief Executive Officer, Paul R. Allen, and TBW's President, Ray Bowman. Mr. Allen's proposed debarment alleges that he submitted false and/or misleading information to Ginnie Mae regarding TBW's delay in submitting its audited financial reports for fiscal year ending on March 31, 2009. Mr. Bowman's proposed debarment alleges that he submitted two false certifications to HUD on TBW's Yearly Verification Report. Mr. Allen and Mr. Bowman have thirty days to contest the proposed debarments.

### ###

*HUD is the nation's housing agency committed to sustaining homeownership; creating affordable housing opportunities for low-income Americans; and supporting the homeless, elderly, people with disabilities and people living with AIDS. The Department also promotes economic and community development and enforces the nation's fair housing laws.*

*Ginnie Mae is a wholly-owned government corporation within the U.S. Department of Housing and Urban Development. Ginnie Mae pioneered the mortgage-backed security (MBS), guaranteeing the very first security in 1971. An MBS enables a mortgage lender to aggregate and sell mortgage loans as a security to investors. Ginnie Mae securities carry the full faith and credit of the United States Government, which means that, even in difficult times, an investment in Ginnie Mae is one of the safest an investor can make.*

*More information about HUD and Ginnie Mae is available on the Internet at www.hud.gov, espanol.hud.gov and www.ginniemae.gov*

**U.S. Department of Housing and Urban Development**
451 7th Street, S.W., Washington, DC 20410
Telephone: (202) 708-1112  Find the address of a HUD office near you



**VIA FACSIMILE AND UPS OVERNIGHT**

Mr. Ray Bowman
President
Taylor, Bean & Whitaker Mortgage Corporation
315 NE 14th Street
Ocala, FL 34470

        Re:    Notice of Administrative Action
                Immediate Suspension
                Taylor, Bean & Whitaker Mortgage Corporation
                Mortgagee No. 74991-0000-8
                Docket No. 09-9866-MR(S)

Dear Mr. Bowman:

       This is to advise you that the Mortgagee Review Board ("Board") of the U.S. Department of Housing and Urban Development ("HUD") has suspended the HUD/FHA origination and underwriting approval of Taylor, Bean & Whitaker Mortgage Corporation ("TBW"), pursuant to 12 U.S.C. § 1708(c) and Title 24, Code of Federal Regulations ("C.F.R."), Part 25, copies of which are enclosed. This suspension is effective immediately.

       You are hereby notified pursuant to 24 C.F.R. § 25.9 that this immediate suspension is based upon adequate evidence of violations under 24 C.F.R. § 25.6. TBW violated multiple HUD requirements by: (1) failing to timely submit the required annual audit report of its financial condition; (2) submitting a false certification and/or misleading information to Ginnie Mae; (3) failing to report irregularities in connection with its FY 2008 Audit; (4) failing to report irregularities in connection with its loan origination practices; (5) failing to comply with HUD's approval requirements; and (6) submitting false certifications to HUD on TBW's Yearly Verification Report ("YVR"). *See* 24 C.F.R. §§ 25.6(e), (g), (j), (p) and (ff); 24 C.F.R. § 5.801; 24 C.F.R. §§ 202.5(g), (j), (m); 24 C.F.R. § 202.7(b)(4); HUD Handbook 4060.1, REV-2, Chapter 1-14; and GNMA Mortgage-Backed Securities Guide, Chapter 23-6.

       Specifically, TBW failed to comply with HUD's regulations requiring the submission of audited financial reports when it failed to submit its audited financial report to FHA for its fiscal year ending on March 31, 2009. Pursuant to 24 C.F.R. § 5.801, TBW was required to file its audited financial report within 90 days following the close of its fiscal year, but TBW has failed to submit this report to FHA. *See* 24 C.F.R. §§ 25.6(e), (g), (j), (p), and (ff); 24 C.F.R. §§ 5.801, 202.5(g), and 202.7(b)(4).

       TBW also submitted a false certification and/or misleading information to Ginnie Mae. On July 6, 2009, TBW responded in writing to Ginnie Mae's July 2, 2009 inquiry, by stating that the delay in submitting its audit report to Ginnie Mae was due to a shortened fiscal year and



EXHIBIT
**B**

two significant events: (1) TBW's acquisition of Platinum Bancshares in 2008; and (2) TBW's planned equity investment in Colonial Bank. TBW stated that with regard to unresolved issues with the auditor that there "are no unresolved issues." Additionally, TBW stated that it "fully expect[s] the auditor's opinion to be unqualified." TBW's written response to Ginnie Mae's July 2, 2009 letter was false and misleading because the reason for TBW's delay in submitting the audit was that its auditors, Deloitte & Touche, stopped their audit of TBW on June 16, 2009, due to their discovery of transactions that raised concerns of fraud including debt transactions with a third party amounting to approximately $230 million and $250 million. In TBW's July 27, 2009 written response to Ginnie Mae's July 22, 2009 request for further explanation of Deloitte & Touche's findings, TBW admitted that its previous representation that there were no unresolved issues was incorrect, and there are currently still unresolved issues with the auditor. Pursuant to Chapter 23-6 of the Mortgage-Backed Securities Guide, any statement to Ginnie Mae constitutes a certification by TBW of the accuracy of the information. Accordingly, TBW made a false certification to GNMA in its July 6, 2009 submission. *See* 24 C.F.R. § 25.6(p) and GNMA Mortgage-Backed Securities Guide, Chapter 23-6.

TBW failed to report irregularities discovered by its auditors, Deloitte & Touche, in connection with its FY 2008 audit as required by HUD. As stated above, Deloitte & Touche stopped their audit of TBW on June 16, 2009 due to their discovery of transactions that raised concerns of fraud including debt transactions with a third party amounting to approximately $230 million and $250 million, which TBW failed to report to HUD. *See* 24 C.F.R. §§ 25.6(g), (j), (p), and (ff) and HUD Handbook 4060.1, REV-2, Chapter 1-14.

TBW also failed to report irregularities that were the subject of a multi-state examination concerning TBW's compliance with applicable laws, regulations and rules governing the mortgage business. This examination resulted in TBW's execution of a settlement agreement on June 19, 2009, with thirteen states and the District of Columbia, in which TBW agreed to pay $9 million in settlement. TBW also failed to report irregularities that were the subject of an examination by the Commonwealth of Kentucky in 2008. During the course of the Kentucky examination, it was discovered that TBW funded numerous loans brokered by unlicensed loan brokers and originated by unregistered loan officers. The Kentucky examination resulted in TBW agreeing to pay a fine of $75,000 and voluntary contribution of $75,000 in August 2008. *See* 24 C.F.R. §§ 25.6(g), (j), (p), and (ff) and HUD Handbook 4060.1, REV-2, Chapter 1-14.

TBW failed to continue to meet HUD's general approval standards and is ineligible for continued approval because it is engaged in business practices that do not conform to generally accepted practices of prudent mortgagees or demonstrate irresponsibility. The multi-state examination by thirteen states and the District of Columbia and the ensuing settlement agreement as well as the Kentucky examination and fine demonstrate that TBW did not comply with prudent lending practices and otherwise demonstrated irresponsibility. The failure to report the audit irregularities and TBW's false certification and/or misleading statements to Ginnie Mae, as stated above, also make it ineligible to participate as an approved mortgagee because it demonstrates imprudent lending practices and irresponsibility. *See* 24 C.F.R. §§ 25.6(g), (j), (p), and (ff) and 24 C.F.R. § 202.5(j).

In addition, TBW submitted false certifications to HUD on its YVR. TBW's President, Ray Bowman, certified that to the best of his knowledge that TBW conformed to all HUD-FHA regulations. This was a false certification because at the time TBW submitted its YVR, TBW was not complying with HUD's regulations regarding mortgagee eligibility as noted above. Thus, TBW falsely certified that it conformed to all HUD-FHA regulations necessary to maintain approval when it submitted the YVR. TBW also falsely certified on its YVR that TBW had not been sanctioned by any state in which it originates and/or services HUD-FHA mortgages. This certification was false because TBW was involved in an examination by the Commonwealth of Kentucky, where it originates and/or services mortgages, that ultimately resulted in a fine of $75,000 and a monetary contribution of $75,000. *See* 24 C.F.R. §§ 25.6(g), (j), (p), and (ff) and 24 C.F.R. § 202.5(m).

HUD's Office of the Inspector General (OIG) has commenced an investigation of TBW and HUD's Office of Housing has commenced a review of TBW, both of which are currently ongoing. Due to the seriousness of these violations, as well as the inherent risk to the Department and the public, the Board immediately suspended TBW's origination and underwriting approval without prior notice of violation pursuant to 24 C.F.R. § 25.7(d). TBW's immediate suspension is for a temporary period pending the completion of the OIG investigation and the review by the Office of Housing into TBW's business practices and any legal proceedings that may ensue. Because TBW is FHA's third largest direct endorsement lender of FHA-insured loans, the fifth largest Ginnie Mae issuer, a participant in FHA's Lender Insurance program, unsupervised by other Federal authorities, and has a high default rate, TBW's immediate suspension is in the best interest of the Department and the public and is necessary to protect the financial interests of the Department.

TBW may appeal its immediate suspension by submitting a request for a hearing within 30 days of its receipt of this letter pursuant to 24 C.F.R. § 25.10. Please note that contesting a suspension does not stay the action. A request for a hearing must be made in writing and specifically respond to the violations set forth in this Notice of Administrative Action.

A copy of the request must be filed with the Office of Administrative Law Judges as follows:

If filing by United States Postal Service (USPS):
Office of Administrative Law Judges
451 7th Street S.W. Room, B-133
Washington, D.C. 20410

If sending by non-USPS couriers send to:          If sending by email scanned attachment:
Office of Administrative Law Judges                  alj.alj@hud.gov
409 3rd Street S.W., Suite 201
Washington, D.C. 20024

A copy of the request must also be sent simultaneously to the Mortgagee Review Board Docket Clerk at the following address:

Mortgagee Review Board Docket Clerk
U.S. Department of Housing and Urban Development
1250 Maryland Avenue, SW, Suite 200
Washington, DC 20024

If TBW appeals this suspension, the appeal will be heard by an Administrative Law Judge in accordance with the Department's procedures at 24 C.F.R. Part 26, Subpart B, and this Notice shall serve as the Government's Complaint. A copy of 24 C.F.R. Part 26 is also enclosed. If TBW does not request a hearing within the thirty (30) day period, the Board's action shall become final.

The Board's action does not in any way affect TBW's continuing responsibility in connection with outstanding HUD/FHA-insured mortgage loans and TBW's obligation to pay all fees or premiums now or hereafter due the Department. The Department will not endorse any mortgage originated by a suspended mortgagee unless, prior to the date of the suspension, a firm commitment has been issued relating to any such mortgage, or a direct endorsement underwriter has approved the mortgagor, evidenced by the signing of the FHA Loan Transmittal Summary and/or receipt of an accept or approve from an Automated Underwriting System using the Total Scorecard, for any such mortgage. All other mortgages in process must be properly assigned to another approved HUD/FHA mortgagee.

Effective upon issuance of this letter, the Department will not issue new case numbers or accept new applications for commitments (except as noted above) and will return pending applications. All relevant Department field offices have been advised of this action.

Sincerely,

David H. Stevens
Assistant Secretary for Housing –
 Federal Housing Commissioner
Chairman, Mortgagee Review Board

Enclosures

### Your Comments Are Important

The Small Business and Agriculture Regulatory Enforcement Ombudsman and 10 Regional Fairness Boards were established to receive comments from small businesses about federal agency enforcement actions. The Ombudsman will annually evaluate the enforcement activities and rate each agency's responsiveness to small business. If you wish to comment on the enforcement actions of the Department of Housing and Urban Development, you will find the necessary comment forms at http://www.sba.gov/ombudsman or call 1-888-REG-FAIR (1-888-734-3247).



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-9000

PRESIDENT, GOVERNMENT
NATIONAL MORTGAGE ASSOCIATION                    August 4, 2009

## VIA FACSIMILE AND HAND DELIVERY

Mr. Lee Farkas
Chairman of the Board
Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Avenue
Ocala, FL 34475-9078

Re: Taylor, Bean & Whitaker, Issuer ID 3869

Dear Mr. Farkas:

This letter concerns mortgage-backed securities (MBS) pools established under Guaranty Agreements executed between Taylor, Bean & Whitaker, a Florida corporation (TBW) as issuer, and the Government National Mortgage Association (Ginnie Mae) as guarantor of the securities.

### Notice of Default

Ginnie Mae has learned of certain actions by TBW that constitute events of default under the terms of the Guaranty Agreements. These actions include:

1.    Suspension of FHA Approval

In a letter dated August 4, 2009, the Federal Housing Administration (FHA) notified TBW of the immediate suspension of its HUD-FHA Title II approval for failure to submit required audited financial statements, misrepresentation and false certification. The suspension of TBW's FHA-approved status constitutes an event of immediate default under Section 10.01(a)(8) of the Guaranty Agreements. Accordingly, Ginnie Mae declares an event of default under Section 10.01(a)(8) of each Guaranty Agreement.

2.    Failure to File Annual Audited Financial Statements

TBW did not file its audited financial statements by June 30, 2009, as required by Article 7.02(b) of the Guaranty Agreements between Ginnie Mae and TBW and Chapter 3-7(A) of the Mortgage-Backed Securities Guide. By letter dated July 2, 2009, Ginnie Mae notified TBW that its failure to timely file audited financial statements would constitute an event of default if it were not remedied or corrected to Ginnie Mae's satisfaction within thirty (30) days. TBW was directed to provide a written statement that satisfactorily addressed the failure to submit the audited financial statements within thirty days of the date of this letter. Specifically, TBW was directed to confirm that it had cured the violation or provide an acceptable plan for curing this violation. To date, Ginnie Mae has neither received the audited financial statements nor has Ginnie Mae been provided

EXHIBIT
tabbies
C

with an acceptable plan in response to the July 2nd letter. Accordingly, the failure to provide audited financial statements constitutes an event of default under Section 10.01(b) of the Guaranty Agreements.

3.   False Statements

TBW falsely represented to Ginnie Mae the reasons for the delay in submitting its audited financial statements. Specifically, in a letter dated July 6, 2009, TBW stated that the delay was caused by TBW's shortened fiscal year, its acquisition of Platinum Bancshares and its planned equity investment in another entity. TBW also stated that there were no unresolved issues with the auditor, that TBW expected the audit to be filed in mid-July, and that it expected the opinion to be unqualified.

On July 20, 2009, Ginnie Mae learned from TBW's auditor Deloitte & Touche, LLP (Deloitte) that it had stopped its audit of TBW on June 16, 2009, due to Deloitte's discovery of transactions that raised concerns of fraud, including debt transactions with a third party amounting to approximately $230 million and $250 million respectively. Deloitte also noted TBW's failure to provide requested documentation on these and other issues. Deloitte advised Ginnie Mae that it had informed TBW of concerns regarding the debt transactions and TBW's failure to provide documents, and had recommended that TBW hire outside counsel to conduct an investigation. Deloitte indicated that it had performed no further work on the audit since its notification of the above issues to TBW. By letter dated July 22, 2009, Ginnie Mae requested an explanation of the discrepancy between this information and the information in the July 6, 2009 letter. By letter dated July 27, 2009, TBW acknowledged that, on June 16th, Deloitte had raised concerns to TBW and recommended hiring outside counsel. TBW further acknowledged that it hired Troutman Sanders on June 19th and was advised that Deloitte's concern included possible fraud.

The statements of TBW in its July 6, 2009 letter are materially inconsistent with the information provided by Deloitte and subsequently acknowledged by TBW. Accordingly, the July 6th letter constitutes a false statement to Ginnie Mae. Pursuant to Chapter 23-6 of the Mortgage-Backed Securities Guide (Guide) any statement to Ginnie Mae constitutes a certification by TBW of the accuracy of the information. Providing false information is an event of default under Section 10.01(a)(9) of the Guaranty Agreements.

Accordingly, Ginnie Mae declares an event of default under Sections 10.01(a)(8), 10.01(a)(9) and 10.01(b) of each Guaranty Agreement.

Pursuant to Sections 10.04 and 10.05 of the Guaranty Agreements, upon such default by TBW, Ginnie Mae is entitled to terminate TBW's authority to act as a Ginnie Mae issuer and to complete the extinguishment of any redemption, equitable, legal or other right, title and interest of TBW in the mortgage pools (termination and extinguishment). Pursuant to such authority, by this letter Ginnie Mae is terminating TBW's authority to act as a Ginnie Mae issuer. As a consequence of its default, TBW may no longer act as an issuer or servicer under any of its Guaranty Agreements. Furthermore, Ginnie Mae, by its declaration of default, extinguishes any redemption, equitable, legal or other right, title and interest of TBW in the mortgages pooled under each and every Guaranty Agreement and makes the mortgages the absolute property of Ginnie Mae, subject

only to any unsatisfied rights of the securities holders. In so doing, Ginnie Mae is acting pursuant to the authority conferred upon it under Section 306(g) of the National Housing Act and Sections 10.04 and 10.05 of each Guaranty Agreement.

Pursuant to its authority under Section 10.06 of each Guaranty Agreement, Ginnie Mae instructs TBW to turn over immediately to Ginnie Mae, or to its designee, all of the following records in your possession belonging to Ginnie Mae whether or not generated by TBW when servicing the securities and mortgages:

1.    Loan files, ledger cards, and other records pertaining to the foregoing pooled mortgages. This includes manual and computer generated records maintained by TBW or any of its agents;

2.    The registration records showing the past and current holders, the successive transfers, and other information with respect to the mortgage-backed securities guaranteed under each Guaranty Agreement;

3.    All records showing or relating to monthly payments made to the holders of such mortgage-backed securities, including, without limitation, all canceled checks;

4.    All tax and insurance escrow custodial accounts and all principal and interest custodial accounts; and

5.    Any other funds or assets and all other records or other information pertaining to the origination and servicing of the mortgages and each of the Guaranty Agreements and the mortgage-backed securities pools.

Your attention is directed to Article 10.07 of the Guaranty Agreements, under which TBW is required to render Ginnie Mae the fullest assistance practicable. In connection with this obligation to cooperate, we have attached a letter from TBW to Sparta Special Servicing, TBW's affiliate handling late stage servicing of delinquent loans including loans in Ginnie Mae pools. The letter directs Sparta to provide Ginnie Mae with access to information and documents on mortgages backing Ginnie Mae securities as needed. This letter must be immediately executed by TBW. In addition, we understand that TBW has contracted with an outside party regarding administration of taxes and insurance payments relating to loans TBW services. TBW must immediately provide Ginnie Mae with access to documents and information held by this entity pertaining to any loans in Ginnie Mae pools.

The action taken by Ginnie Mae by this letter shall not be deemed to preclude Ginnie Mae from taking any further remedial action against TBW (and its directors, officers or employees) deemed appropriate by Ginnie Mae as a result of its investigation into the matters addressed herein, including, but not limited to, debarment, civil suit for money damages, and imposition of civil money penalties.

Ginnie Mae appreciates your cooperation on this matter. If you have any questions, please contact Paul St. Laurent, III, Director of Monitoring Division, Mortgage-Backed Securities, at (202) 475-4937.

Sincerely,

Joseph Murin

Enclosure



**Freddie Mac**

We make home possible℠

**VIA ELECTRONIC DELIVERY and OVERNIGHT MAIL**

August 4, 2009

Mr. Paul Allen
Chief Executive Officer
Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd St
Ocala, FL 34470

RE:   **Termination of Freddie Mac Seller and Servicer Eligibility**
      **Seller/Servicer Numbers 142080, 120177**

Dear Mr. Allen:

Pursuant to sections 5.1-5.3 and 73.1 of the Freddie Mac *Single-Family Seller/Servicer Guide* (hereafter the "Guide"), this letter serves as notice that the eligibility of Taylor, Bean & Whitaker Mortgage Corp. ("TBW") to sell mortgage loans to and service mortgage loans for the Federal Home Loan Mortgage Corporation ("Freddie Mac") has been terminated, with cause, effective today, August 4, 2009, without further notice from Freddie Mac.

Freddie Mac has determined that:

1.  **Guide Section 5.2 (9):** TBW has had a significant weakness or notable change in its financial status or organizational status of the Seller or the Servicer that in the opinion of Freddie Mac, could adversely affect Freddie Mac.

2.  **Guide Section 5.2(10):** TBW has failed to meet requirements as may be prescribed by Freddie Mac for eligibility as a Seller or Servicer.

3.  **Guide Section 5.2 (11):** TBW has been placed on probation or its activities have been restricted by a federal or state government agency.

4.  **Guide Section 5.2 (12):** TBW has had a judgment, order, finding or regulatory action to which TBW is subject that would adversely affect TBW's ability to comply with the terms of the conditions of the Purchase Documents.[1]

5.  **Guide Section 5.2 (13):** TBW's warranty obligations are disproportionate to its capital and/or assets.

---

[1] All terms not specifically defined herein shall have the meaning ascribed to them in the Guide.



**EXHIBIT**
**D**

6. **Guide Section 5.2 (15):** TBW has failed to observe or comply with a term(s) or provision(s) of the Purchase Documents.

The fact that certain grounds for the decision are stated in this letter does not imply that additional grounds do not exist.

Pursuant to Section 73.3 of the Guide, TBW must immediately surrender to Freddie Mac or its designee all mortgage files serviced for Freddie Mac ("Portfolio") and all associated custodial funds. Kindly contact me at the number below to obtain instructions for the remittance of the custodial funds. TBW also must execute and provide Freddie Mac with a limited power of attorney for the purpose of completing the necessary assignments of the loans within the portfolio. In the event that TBW does not immediately comply with Freddie Mac's directions, Freddie Mac will take all action necessary to protect its rights, including seeking a court order requiring TBW to transfer the Portfolio.

The mortgage files delivered to Freddie Mac or its designee must contain, at minimum, the information and documentation set forth in Chapter 47 and Section 52.1 of the Guide, including without limitation:

a) Loan origination documentation, including, but not limited to, the original recorded deed of trust or mortgages and original recorded assignments, to Freddie Mac, original participation certificates, policies, and all loan underwriting documents;

b) All loan servicing documents, including, but not limited to, tax receipts and bills, insurance policies, insurance premium receipts, ledger sheets, payment records, insurance claim files and correspondence, foreclosure files and correspondence, current historical data files, and current loan level trial balances, (including documents and records in whatever form existing, whether printed, handwritten, or on computer software); and

c) Any documents of the type described above which come into TBW's possession after the time in which TBW has delivered the loan files.

This termination does not affect TBW's warranties and obligations under the Purchase Documents, and is without prejudice to any claim that Freddie Mac may have for other breaches by TBW of the Purchase Documents, including, but not limited to, claims for repurchase of any additional ineligible mortgages and outstanding fees. Freddie Mac retains all of its rights under the Purchase Documents and the *Guide* to take any further action and pursue any additional remedies to protect Freddie Mac's interests in this matter.

Pursuant to Guide Section 5.4, TBW may appeal Freddie Mac's termination decision according to the procedures specified in Section 5.4.[2] Any appeal must be addressed to:

> Ronald L. Ratcliffe
> VP, Counterparty Credit Risk Management
> 1551 Park Run Drive, MS D3A
> McLean, VA 22102-3107
>     Attn: Amy Odiorne

If a written appeal, in compliance with the requirements of Section 5.4, is not postmarked or hand delivered to Freddie Mac within 15 calendar days from the date of receipt of this letter, TBW will be deemed to have waived its right to appeal Freddie Mac's decision. Likewise if TBW is unsuccessful in its appeal TBW's seller/servicer eligibility and its non-exclusive right to Freddie Mac's Loan Prospector® system will be likewise terminated.

If you have any questions regarding the above, please contact me at (571) 382-3455 or Karen McKoy at (571) 382-3447.

Sincerely,

Pam Williams
Director
Credit & Counterparty Risk Management

---

[2] An appeal would not alter Freddie Mac's decision to immediately remove the Freddie Mac portfolio currently being serviced by TBW. The appeal would only address the termination of its eligibility status.



 **PRESS RELEASE**

August 5, 2009

# TAYLOR BEAN MUST CEASE ALL ORIGINATION OPERATIONS EFFECTIVE IMMEDIATETLY

OCALA, FLORIDA – TAYLOR, BEAN & WHITAKER MORTGAGE CORP. ("TBW") RECEIVED NOTIFICATION ON AUGUST 4, 2009 FROM THE U.S DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, FREDDIE MAC AND GINNIE MAE (THE "AGENCIES") THAT IT WAS BEING TERMINATED AND/OR SUSPENDED AS AN APPROVED SELLER AND/OR SERVICER FOR EACH OF THOSE RESPECTIVE FEDERAL AGENCIES. TBW HAS UNSUCCESSFULLY SOUGHT TO HAVE THE TERMINATION/SUSPENSION DECISIONS OF EACH OF THOSE AGENCIES REVERSED. AS A RESULT OF THESE ACTIONS, TBW MUST CEASE ALL ORIGINATION OPERATIONS EFFECTIVE IMMEDIATELY. REGRETTABLY, TBW WILL NOT BE ABLE TO CLOSE OR FUND ANY MORTGAGE LOANS CURRENTLY PENDING IN ITS PIPELINE. TBW IS COOPERATING WITH EACH OF THE AGENCIES WITH RESPECT TO ITS SERVICING OPERATIONS AND EXPECTS TO CONTINUE TO SERVICE MORTGAGE LOANS AS IT RESTRUCTURES ITS BUSINESS IN THE WAKE OF THESE EVENTS. WE UNDERSTAND THAT THIS COULD HAVE A SIGNIFICANT IMPACT ON OUR VALUED EMPLOYEES, CUSTOMERS AND COUNTERPARTIES, AND ARE VERY DISAPPOINTED THAT A LESS DRASTIC OPTION IS UNAVAILABLE.



**EXHIBIT**
**E**



# Taylor, Bean & Whitaker

Welcome

As a valued mortgage customer, you can securely manage your account, learn about new servicing options, or register for email notifications on this site

## LOGIN

Login to view your mortgage information or Register

E-mail Address:

Password:

Forgot your password?

Please enter the characters below:

Try a new code

If you are having trouble accessing our new web site using the login screen above, you need to register a new account by clicking on the Register tab. If you continue to have difficulty, click HERE to use your original account to access your mortgage.

## REGISTER

Payment Assistance

Mortgage Calculator

Insurance

FAQs

If you are interested in a refinance, please log in to the left.



GOVERNMENT STIMULUS PLAN

CLICK HERE

***For the best experience, please use one of the following Internet browsers:*** *Safari 3.0 or later; Mozilla Firefox 3.0 or later; or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your browser to start the process.*

8/7/2009



tabbies®

EXHIBIT

F



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING®

## Welcome to Taylor, Bean & Whitaker!

As a valued mortgage customer, you can securely manage your account, learn about new servicing options, or register for email notifications on this site.



*Perfectin The Art of Mortga Lending®*

**LOGIN**

Login to view your mortgage information or Register

E-mail Address:

Password:

Forgot your password?

Please enter the characters below:



PCPDP          Try a new code

Submit

If you are having trouble accessing our new web site using the login screen above, you need to register a new account by clicking on the Register tab. If you continue to have difficulty, click HERE to use your original account to access your mortgage.

**REGISTER**

## Resource Center

**Payment Assistance**

**Mortgage Calculator**

**Insurance**

**FAQs**

If you are interested in a refinance, please log in to the left.

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*


Taylor, Bean & Whitaker

| Welcome | Payment Information | Loan Balances | Payment History | Payment Options | Accou Inform |

☑ **Payoff Request**

**Please give us your feedback**

**Apply for a Refinance**

**Update My Insurance Information**

**Delinquent and need help?**

**REO Properties FOR SALE**

**Make a payment at any *Western Union* Location**

**eStatements**

**Frequently Asked Questions**

## Login to view your mortgage information

Username: [                    ]
(min 6 characters / max 12 characters)

Password: [                    ]
(min 4 characters / max 12 characters)

[ ✕ ]

Enter the characters from the image above: [          ]

[ Log In ]

Forgot Password
Forgot Username
Register - first time users must register
Change Password

**Amortization
Table**


**Refinance?
New Loan?
Call 1-877-754-6847**


**Need Counseling or Other
Resources?**


Customer Contact Center
Loaninfo@taylorbean.com
1-888-225-2164
M-F 9AM - 8 PM and Sat 8 AM - 5
PM (EST)



**Taylor, Bean & Whitaker**
PERFECTING THE ART OF MORTGAGE LENDING[®]

Taylor, Bean, & Whitaker > Community Banks

# Community Banks

Taylor, Bean & Whitaker Mortgage Corp (TB&W), headquartered in Ocala, FL is a Top 10 national wholesale mortgage lender.

- Annual production volume exceeding $30 billion and total assets exceeding $3 billion
- Commitment to building strong relationships and supporting community banks for over 25 years
- Provides a wide array of loan products and services at competitive rates
- Complete Mortgage Solutions Program enables community banks to build their mortgage operations and generate untapped fee income potential
- Selected as the Independent Community Bankers of America's preferred mortgage services provider

**Already a CBO Customer? Visit** Community Banks Online

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



**Taylor, Bean & Whitaker**
PERFECTING THE ART OF MORTGAGE LENDING

Taylor, Bean, & Whitaker > Mortgage Brokers

# Mortgage Brokers

Taylor, Bean & Whitaker Mortgage Corp (TB&W), headquartered in Ocala, FL
is a Top 10 national wholesale mortgage lender. The company was
incorporated in 1982 and began operations as a small town retail mortgage
firm. Since then, TB&W has ascended to a national mortgage lending institution
with offices across the country.

The company's rise within the mortgage industry is the result of multi-faceted strategic objectives: scalable
operational infrastructure, strong management and marketing teams, strategic partnership building and
diversification of business opportunities. Technological innovations, automated processes, streamlining
efficiencies, an evolving product line and continual commitment to customer service are key contributing
growth factors.

- Annual production volume exceeding $30 billion and total assets exceeding $3 billion
- Commitment to building strong relationships and support for independent mortgage brokers
- Offers a wide array of loan products and services
- Provides customer retention tools to help you retain and grow your business

Already a TBDirect Customer?: Visit TaylorBeanDirect

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi
or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*





Demo

Register Now

About TBDirect

Training

FundFAX

Contact Us

FAQs

**User ID:**

**Password:**

[ Login ] [ Cancel ]

❯ What is TBDirect?

❯ How Does TBDirec Benefit You?

❯ How Do I Join TBI

❯ Want To Know Mo Taylor, Bean & Whi

## TBDocs
Pull closing docs and order funds online at your convenience.

## PRODUCTS
We offer products to help you remain competitive.

## SUPPORT
Learn about our helpful support staff.

## SERVICES
We offer services to help your business grow.





# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING ©

Taylor, Bean, & Whitaker > Correspondents

# Correspondents

Taylor, Bean & Whitaker Mortgage Corp. (TB&W), headquartered in Ocala, FL, is a top 10 national wholesale mortgage lender. The company incorporated in 1982 and began operations as a small town retail mortgage firm. Since then, TB&W ascended to a national mortgage lending institution with offices across the country.

- Annual production volume exceeding $30 billion and total assets exceeding $3 billion
- Provides a wide array of loan products at competitive rates
- Servicing retained production strategy
- Fifth largest Freddie Mac Securities issuer, Fourth largest Ginnie Mae issuer
- Freddie Mac Platinum Servicer
- Service and flexibility that only a privately owned company can provide

Already a Correspondent Customer? Visit TB&W Correspondent Lending Online

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



Taylor, Bean & Whitaker

Guides & Docs | Information

# **Welcome** to Correspondent Lending



TBWCorr.com provides Taylor, Bean & Whitaker's valued Correspondent customers access to a number of tools and information to help you do more business more efficiently. Without a required login, you have access to our Sales Contact Information, Lender Application Documents, Product Profiles and Manuals. Once you are an approved TBW Correspondent, our secure site provides access to our Rate Sheets, Price Shopper, On-Line Locks, Pipeline information, Product Profiles, Marketing Materials and Forms. Thank you for your business!

Len

Pas

Forg
Plea:
sens

If yo
prob
Lend

Log

Copyright © 2005-2007 Taylor, Bean & Whitaker Mortgage Corporation





Search Listings

Buyer Instructions

Vendor/Contractor

Service Area

About Us

**Contact Us:**
315 NE 14th Street
Ocala, FL 34470

REOinfo@taylorbean.com

Phone: 352.438.3427



## Why buy REO?

REO homes are bank-owned
generally priced below their

In many cases special financin
are available. Take advantage
rates and market conditions.

Search Listings    Buyer

www.platinumbank.net
Customercare@platinumbank.net

  

## Featured REO Properties

$335,000
Lawrenceville, GA

$415,000
Ocala, FL

$210,000
North Las Vegas, NV

$575,00
Las Veg

   

$119,900
Farmington Hills, MI

$760,000
Waxhaw, NC

$699,900
Las Vegas, NV

$375,000
Atlanta, (

REO Home   Search REO Listings   REO Properties by State   REO Resources   Foreclosure Information   Privacy Notice   T
TBW Bank Owned Foreclosures - REO Properties and REO Homes For Sale Listing by State

Alabama   Alaska   Arizona   Arkansas   California   Colorado   Connecticut   Florida   Georgia   Hawaii
Idaho   Illinois   Indiana   Iowa   Kansas   Kentucky   Louisiana   Maine   Maryland   Massachusetts
Michigan   Minnesota   Mississippi   Missouri   Montana   Nebraska   Nevada   New Hampshire   New Jersey   New M
North Carolina   Ohio   Oklahoma   Oregon   Pennsylvania   Rhode Island   South Carolina   South Dakota   Tennessee
Utah   Virginia   Washington   West Virginia   Wisconsin

We believe that the **REO Bank Owned Real Estate property** specific information provided on this site is accurate, but we have undert to verify its accuracy or authenticity. Therefore, neither **Taylor, Bean & Whitaker Mortgage Corp.** nor its affiliates make any guara warranty of any kind as to the condition of any **Taylor, Bean & Whitaker REO Bank Owned Real Estate** property or the accura **properties** or information posted on this site, including any photographs or property descriptions. **Taylor, Bean & Whitaker Mortgag** for the products or services offered by the real estate professional(s) identified in any particular **REO Bank Owned Real Estate**

© 2008 Taylor, Bean & Whitaker Mortgage Corp. All rights reserved. No part of this website or any of its products may be reproduced in permission from Taylor, Bean & Whitaker Mortgage Corp.



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING

Taylor, Bean, & Whitaker > Community Banks > Products & Services

# Products & Services

Imagine using a single loan origination system to complete a loan from start to finish! CommunityBanksOnline offers you this opportunity. And it's FREE! Utilizing Internet and mortgage technologies, CBO streamlines the loan origination process, resulting in a more convenient and efficient process for you and your customers. Loans are registered, locked and underwritten in a matter of minutes through CBO. Underwriting assistance can be requested via the site for questions, problem loans or matching programs that best suit your borrower. Free and unlimited virtual training on our platform is also available, should you need it.

**CBO Benefits:**

- CBO is compatible with most loan origination systems. You simply import and submit your loan application for an automated underwriting decision.
- TBDocs: Close loans and order funds online, using our closing documentation feature. Close loans and order funds at your convenience. TBDocs streamlines and automates the closing process. Live loan status is also accessible within the system.
- FastFAX: Our loan imaging system combines the power of the Internet and your fax machine. The loan file and conditions are sent through your fax machine or internet. Underwriters work from the imaged copy, thus expediting underwriting and clearing of the conditions.
- Underwriting Assistance: You can request assistance from an underwriter at your convenience via the website.
- Helpful Support Staff: Our helpful and experienced support staff will troubleshoot any issue that you may experience. Assistance can be requested directly from the website.
- As CBO evolves, and new technologies are integrated into the site, our staff will provide training on an on-going basis.

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



**Taylor, Bean & Whitaker**
PERFECTING THE ART OF MORTGAGE LENDING

Taylor, Bean, & Whitaker > Homeowners > Payment Assistance

# Payment Assistance

The purchase of a home is likely the largest investment you will make in your lifetime. Although recent market trends show the average rate of appreciation in home values declining and in some areas even deprecating, it is important to note that over a 10 year period beginning from June of 1998 through June of 2008, the purchase only OFHEO (Office of Federal Housing Enterprise Oversight) house price index increased by a total of 66.9% That is a compound growth rate of 5.3% per year.

Benefits of Homeownership

Qualifying for Mortgage Assistance Options

Assistance Options

Helpful Documents

Additional Resourses

According to the U.S Department of Housing and Urban Development, "Homeowners accumulate wealth as the investment in the home grows, enjoy better living conditions, are often more involved in their communities, and have children who tend on average to do better in school and are less like to become involved in crime."

## Wealth Effect - The Tangible Benefits

- **Tax Advantages** - When you make your mortgage payment, not only are you investing in your future, but you are also able to reduce your tax burden. All interest payments on your home are tax deductible.
- **Appreciation** - As you continue to make payments on your home, the amount you owe on your loan becomes less, while the value of your home will likely appreciate. The difference in what you owe on your home and your home's actual value is called equity. The equity you build in your home could be as valuable or more valuable then any other investment you make throughout your lifetime.

## Providing for you and your family - The Intangible Benefits

- **Security and stability for family** - Homeownership provides a feeling of security and stability for you and your family.
- **Community** - Homeownership develops a sense of community and belonging.

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



**Taylor, Bean & Whitaker**
PERFECTING THE ART OF MORTGAGE LENDING[®]

Taylor, Bean, & Whitaker > Homeowners > Calculators > How Much Can I Borrow?

# Calculators

- How Much Can I Borrow?
- How Much is Your Monthly Payment?
- Amortization Schedule

## How Much Can I Borrow?

Use this calculator to find out how much you can borrow based on a specific payment amount.

Monthly Payment ($):

Interest Rate (%):

Number of Payments:

  

**Loan Amount ($):**

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# Taylor, Bean & Whitaker
### PERFECTING THE ART OF MORTGAGE LENDING ®

Taylor, Bean, & Whitaker > Homeowners > FAQs

# Frequently Asked Questions

Language: English  |  Español

When payment difficulties arise
**Details Concerning the Homeowner Affordability and Stability Plan**
Our Goal
Who to contact
How to avoid foreclosure
What are the options
Hardship assistance
Financial Worksheet

Frequently Asked Questions About My Current Loan

Making your monthly payments

Refinancing your mortgage or buying your next home.

Contact Information

**Q:Details Concerning the Homeowner Affordability and Stability Plan**
**A:** www.financialstability.gov

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi*
*or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING ®

Taylor, Bean, & Whitaker > Community Banks > FAQ's

# Frequently Asked Questions

Want to learn more about Taylor, Bean & Whitaker?

What is CommunityBanksOnline?

What does CBO do for Community Banks?

How does CommunityBanksOnline benefit you?

What are the fees associated with CommunityBanksOnline?

How do I join CommunityBanksOnline?

What safeguards are taken to protect a client's privacy?

**Q: Want to learn more about Taylor, Bean & Whitaker?**
**A:** Taylor, Bean & Whitaker (TB&W), is a top 10 national wholesale mortgage lender. The company incorporated in 1982 and began operations as a small town retail mortgage firm. Since then, TB&W ascended to a national mortgage lending institution with offices across the country. We offer advanced automated underwriting technologies, an extensive product offering, commonsense underwriting, flexible funding options and hands-on client service.

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi*
*or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



**Taylor, Bean & Whitaker**
PERFECTING THE ART OF MORTGAGE LENDING ®

Taylor, Bean, & Whitaker > Home Page > Contact Us

# Contact Us

**Customer Service**
Phone: 1-888-225-2164
Questions about your loan via email click here
General questions via email click here

**Business Services**
General Business Partner inquiries click here

**Human Resources**
TB&W Job Opportunities via email click here

**Refinance Center**
Questions about your HASP Relief Refinance application click here
Questions about any other type of refinance click here

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi*
*or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# Taylor, Bean & Whitaker
PERFECTING THE ART OF MORTGAGE LENDING

Taylor, Bean, & Whitaker > Community Banks > Support

# Support

CommunityBanksOnline members benefit by utilizing an ongoing friendly and experienced support staff. Our support staff is available to assist you from 8:00 am to 8:00 pm ET, Monday through Friday. Simply call 1-866-699-BANK (2265), email , or request support via the website. Within minutes, you will receive via e-mail, an automated work order number assigned to your issue. A technical service representative will contact you to resolve the problem you are experiencing.

Support for your consumers is available via the consumer site we create for your bank. Immediate support from our network of LIVE operators is a particularly impressive feature of our network. Underwriters are on stand-by to assist your consumers with mortgage questions or other inquiries.

CBO clients also benefit from online training tools, including training materials and virtual training courses that can be scheduled.

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



**Taylor, Bean & Whitaker**
PERFECTING THE ART OF MORTGAGE LENDING

Taylor, Bean, & Whitaker > Community Banks > Training

# TB&W Training Academy

Courses

Trainers

Calendar

Contact Us



**TB&W**
**TRAINING ACADEMY**

*Training Mortgage Professionals*

TB&W Training Academy is the industry leading provider of superior learning experiences directed solely to mortgage professionals. Relevant and up to the minute information is imparted by experts who focus on real life application and implementation of the course materials they provide. Our Services Include:

**Our Services Include:**

- Custom corporate training
- Certified Mortgage Planner course for new Loan Officers
- Three Day Train the Trainer workshops
- DE Underwriting training facilitated by senior DE trainers
- Advanced web-based learning center

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozilla Firefox 3.0 or later;*
*or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your browser to start the process.*


**Taylor, Bean & Whitaker**
PERFECTING THE ART OF MORTGAGE LENDING ®

Taylor, Bean, & Whitaker > Community Banks > Press Releases

# Press Releases

### April 2009

- Taylor Bean Leads Investor Group in Signing Definitive Agreement For A $300 Million Investment in Colonial Bangroup

### January 2009

- Mortgage Lending Industry Prevented Almost 240,000 Foreclosures in December

### July 2008

- Weight Loss Challenge helps Marion County residents change lifestyle
- State of Freddie Mac and Fannie May does not affect your TB&W mortgage
- Platinum Bank acquisition by TB&W
- TB&W gains additional $1.75 billion funding capacity

### June 2008

- TB&W Chairman answers questions posed by brokers nationwide

### May 2008

- Response to Action Now press conference

### December 2007

- TB&W to acquire Platinum Bankshares, Inc

### November 2007

- Stuart Scott appointed Chief Operations Officer

### August 2007

- TB&W's proactive stance against fraud

### July 2007

- TB&W opens Florence, NC operations center

**December 2006**

- TB&W sets up charitable foundation at the request of employees

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi*
*or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*



# Maslow INSURANCE AGENCY

Home    About Us    Contact Us    FAQ & Glossary    Carrier Relationships

Income & Asset

Homeowners
Home Warranty
Disaster Recovery

Life
TB&W AD&D
 Group Policy

Term Life

You're covered... *Dream big.*



LONG
TERM
CARE
find out
more

# Maslow gives you Simple, Secure and Convenient service.

Maslow Insurance Agency, LLC offers an array of insurance co
protect and preserve your income and assets; coverage that affor
dream big and focus on living - knowing we've got you covered.

Our mission is to keep our insurance services Simple, Secure and
here to listen to your needs, understand your goals and tailor a
you with maximum protection at a competitive premium.

Home          Terms of Use          Licensing          W

© 2007 Maslow Insurance Agency, LLC All rights reserved. No part of this website or
reproduced in any form without written permission from Maslow Insuranc



# Taylor, Bean & Whitaker
### PERFECTING THE ART OF MORTGAGE LENDING ®

Taylor, Bean, & Whitaker > Community Banks > Contact Us

# Contact Us

Are You A: **Select One**

Name:

Company Name:

Email Address:

Comments:

☑ Please have a representative contact me to schedule a live demonstration

SUBMIT          RESET

*For the best experience, please use one of the following internet browsers: Safari 3.0 or later; Mozi or Internet Explorer 7.0 or later. If you need to upgrade your browser, click on the name of your brow*

Rotated landscape table (page data). Columns: Collateral Key, Bor 1 City, Bor 1 County, Orig UPB, Orig Rate, Payee Name, Payee City, Payee ST, Payee Zip, Funding, Advance, Original Term, Purpose Code, Lien Position, Originator Code, Payee2.

| Collateral Key | Bor 1 City | Bor 1 County | Orig UPB | Orig Rate | Payee Name | Payee City | Payee ST | Payee Zip | Funding | Advance | Original Term | Purpose Code | Lien Position | Originator Code | Payee2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3392502 | TAVARES | LAKE | $110,800.00 | 4.875% | LAWYERS TITLE INSURANCE CORP | IRVINE | CA | 92614 | $107,269.92 | $107,421.28 | 360 | P | 1 | R | COMERICA BANK |
| 3446008 | TALLAHASSEE | LEON | $299,539.00 | 4.250% | UNISOURCE TITLE COMPANY | IRVINE | CA | 92614 | $294,734.91 | $295,424.99 | 360 | R | 1 | R | COMERICA BANK |
| 3418950 | ST LUCIE | ST LUCIE | $325,130.00 | 4.750% | LAWYERS TITLE COMPANY | ORCHARD | CA | 95762 | $320,871.30 | $320,823.35 | 360 | R | 1 | R | COMERICA BANK |
| 3419647 | KISSIMMEE | OSCEOLA | $192,000.00 | 5.500% | TIMIOS LLC | TUSTIN | CA | 92780 | $195,001.67 | $190,226.59 | 360 | R | 1 | R | COMERICA BANK |
| 3364081 | BOCA RATON | PALM BEACH | $184,000.00 | 5.125% | NATIONAL 1 SOURCE | WEST LAKE VILLA | CA | 91361 | $181,041.99 | $182,790.27 | 360 | R | 1 | R | US BANK |
| 3352992 | DOVER | HILLSBOROUGH | $54,050.00 | 5.000% | HEARTLAND TITLE | CENTENNIAL | CO | 80112 | $1,076.92 | $0.00 | 360 | P | 1 | R | FIFTH THIRD BANK |
| 3376647 | TITUSVILLE | BREVARD | $94,950.00 | 5.125% | BERLIN LAW FIRM, PA | CRYSTAL RIVER | FL | 34429 | $1,346.71 | $0.00 | 360 | P | 1 | R | CENTERSTATE BANK |
| 5000064 | SANT CLOUD | OSCEOLA | $122,100.00 | 5.000% | CITRUS LAND TITLE | CRYSTAL RIVER | FL | 34465 | $1,775.14 | $0.00 | 360 | A | 1 | R | MERCANTILE BANK |
| 5000075 | MIAMI | MIAMI-DADE | $320,850.00 | 5.000% | CITRUS LAND TITLE | CRYSTAL RIVER | FL | 34465 | $2,946.27 | $0.00 | 360 | A | 1 | R | MERCANTILE BANK |
| 5000050 | OCALA | MARION | $84,100.00 | 5.000% | CITRUS LAND TITLE | CRYSTAL RIVER | FL | 34465 | $1,340.77 | $0.00 | 360 | A | 1 | R | MERCANTILE BANK |
| 5001056 | FORT MYERS | LEE | $119,000.00 | 5.250% | CITRUS LAND TITLE | CRYSTAL RIVER | FL | 34465 | $958.41 | $0.00 | 360 | A | 1 | R | MERCANTILE BANK |
| 5001096 | DAYTONA BEACH | VOLUSIA | $119,000.00 | 5.000% | CITRUS LAND TITLE | CRYSTAL RIVER | FL | 34465 | $2,294.60 | $0.00 | 360 | A | 1 | R | MERCANTILE BANK |
| 5002372 | SAINT AUGUSTINE | ST JOHNS | $124,425.00 | 5.000% | ADVANTAGE TITLE SERVICES | LAKELAND | FL | 33801 | $2,193.33 | $0.00 | 360 | A | 1 | R | BANK ATLANTIC |
| 5004442 | LAKELAND | POLK | $238,650.00 | 3.750% | CITRUS LAND TITLE | CRYSTAL RIVER | FL | 34429 | $4,843.00 | $0.00 | 360 | A | 1 | R | MERCANTILE BANK |
| 3443763 | ST PETERSBURG | PINELLAS | $93,768.00 | 5.750% | FIRST AMERICAN TITLE CO | TAMPA | FL | 33615 | $93,945.91 | $93,766.00 | 360 | R | 1 | R | SUNTRUST BANK |
| 3428462 | BROOKSVILLE | HERNANDO | $55,000.00 | 3.375% | EXPRESS TITLE SERVICES OF TA | TAMPA | FL | 33615 | $124,245.17 | $54,091.72 | 360 | R | 1 | R | SUNTRUST BANK |
| 3428422 | RIVERVIEW PARK | HILLSBOROUGH | $84,178.00 | 5.750% | WINDMILL TITLE COMPANY | KISSIMMEE | FL | 34741 | $129,674.03 | $84,178.00 | 360 | R | 1 | R | FIRST AMERICAN T |
| 3427620 | RIVERVIEW | HILLSBOROUGH | $84,845.00 | 5.500% | WINDMILL MAJORITY TITLE | TAMPA | FL | 33624 | $79,568.12 | $84,843.00 | 360 | P | 1 | R | EASTERN NATIONAL |
| 3428242 | SARASOTA | MANATEE | $94,322.00 | 5.500% | MAGE TITLE & ESCROW | SARASOTA | FL | 34236 | $92,358.56 | $92,568.25 | 360 | P | 1 | R | FIRST NATIONAL B |
| 3429888 | SARASOTA | MANATEE | $129,950.00 | 5.000% | CLEAR TO CLOSE TITLE | SARASOTA | FL | 34236 | $124,245.17 | $128,180.90 | 360 | P | 1 | R | PROSPERITY BANK |
| 3310540 | FORT MYERS | LEE | $131,200.00 | 5.750% | WCI TITLE | LAKELAND | FL | 33801 | $92,358.56 | $82,202.77 | 360 | P | 1 | R | BANK OF AMERICA |
| 3419805 | APOLLO BEACH | HILLSBOROUGH | $168,898.00 | 6.500% | STATEWIDE TITLE SOLUTIONS | TAMPA | FL | 33615 | $64,203.91 | $130,299.75 | 360 | P | 1 | R | BANCO POPULAR |
| 3433812 | KISSIMMEE | OSCEOLA | $131,200.00 | 4.875% | TITLE PROFESSIONALS OF FLORI | CLEARWATER | FL | 33756 | $92,260.75 | $82,202.60 | 360 | P | 1 | R | REGIONS BANK |
| 3407024 | MIAMI | MIAMI-DADE | $92,000.00 | 5.750% | TITLE PROFESSIONALS | OLDSMAR | FL | 34677 | $92,568.15 | $84,176.00 | 360 | R | 1 | R | WACHOVIA BANK |
| 3424447 | FORT MYERS | LEE | $88,600.00 | 5.500% | RIDGE SECURITY TITLE | PEMBROKE PINES | FL | 33024 | $102,663.01 | $104,802.00 | 360 | P | 1 | R | REGIONS BANK |
| 3410585 | WEST PALM BEACH | PALM BEACH | $63,822.00 | 6.500% | A-Z TEAM TITLE LLC | LAKE WALES | FL | 33859 | $102,563.50 | $94,964.55 | 360 | P | 1 | R | BANCO POPULAR |
| 3456160 | PEMBROKE PINES | BROWARD | $100,000.00 | 5.875% | CHAMPAGNE TITLE SERVICE | KISSIMMEE | FL | 34741 | $128,168.00 | $129,541.17 | 360 | P | 1 | R | CITIZENS BANK AN |
| 3415305 | SEBRING | HIGHLANDS | $130,099.00 | 5.875% | OUR TITLE & ESCROW COMPANY | POMPANO BEACH | FL | 33064 | $131,982.96 | $130,678.24 | 360 | P | 1 | R | WASHINGTON MUTUA |
| 3433388 | TAVARES | LAKE | $131,000.00 | 5.000% | Z. PAOLA GUERRERO | WINTER GARDEN | FL | 34787 | $147,455.47 | $148,425.75 | 360 | P | 1 | R | WACHOVIA BANK |
| 7138118 | CAPE CORAL | LEE | $155,252.00 | 5.875% | RELIABLE LAND TITLE | MIAMI | FL | 33183 | $147,480.99 | $130,299.80 | 360 | P | 1 | R | WACHOVIA BANK |
| 7140725 | FORT LAUDERDALE | BROWARD | $172,975.00 | 4.500% | SECURITY TITLE SERVICES INC. | TRENTON | FL | 32693 | $221,480.61 | $271,373.90 | 360 | R | 1 | R | CITIZENS FIRST B |
| 3411830 | AUBURNDALE | POLK | $151,098.00 | 4.500% | MCLIN & BURNSED | PENSACOLA | FL | 32503 | $147,479.51 | $150,140.49 | 360 | R | 1 | R | MERCANTILE BANK |
| 3418756 | POLK CITY | POLK | $138,000.00 | 5.375% | MCLIN & BURNSED | LEESBURG | FL | 34748 | $135,807.91 | $136,572.18 | 360 | R | 1 | R | AMERICAN BANKING |
| 3403844 | FORT LAUDERDALE | BROWARD | $417,000.00 | 5.000% | INFINITI TITLE INSURANCE AGE | LEESBURG | FL | 34748 | $417,897.06 | $412,359.37 | 360 | R | 1 | R | CITIZENS FIRST B |
| 3393041 | SAINT CLOUD | OSCEOLA | $184,542.00 | 5.500% | CITIZENS TITLE GROUP | PORT ST LUCIE | FL | 34953 | $183,299.51 | $177,880.62 | 360 | P | 1 | R | CITIZENS FIRST B |
| 7137023 | MIAMI | MIAMI-DADE | $50,000.00 | 5.500% | MCLIN & BURNSED | PENSACOLA | FL | 32503 | $184,082.32 | $49,500.00 | 360 | R | 1 | R | COLONIAL BANK |
| 3386077 | BELLIOTA | SEMINOLE | $75,600.00 | 5.000% | CITIZENS TITLE INSURANCE | PENSACOLA | FL | 32503 | $202,065.69 | $202,065.69 | 360 | R | 1 | R | HIGHLANDS INDEPE |
| 3402662 | LEESBURG | GILCHRIST | $146,000.00 | 3.750% | JACKSONVILLE TITLE & TRUST | JACKSONVILLE | FL | 32216 | $196,941.42 | $199,873.08 | 360 | R | 1 | R | CITIZENS FIRST B |
| 3415586 | THE VILLAGES | LAKE | $200,000.00 | 5.375% | PARADISE TITLE OF ST AUGUST | ST AUGUSTINE | FL | 32084 | $276,763.50 | $276,000.00 | 360 | R | 1 | R | BANK OF AMERICA |
| 3401631 | PORT SANTA LUCI | SUMTER | $92,162.00 | 5.250% | ACTION TITLE SERVICES OF ST | ST AUGUSTINE | FL | 32084 | $90,740.33 | $90,819.76 | 360 | R | 1 | R | IBB OR ORLANDO |
| 3411504 | PENSACOLA | ST LUCIE | $160,335.00 | 5.250% | SEARCH 2 CLOSE | TAMPA | FL | 33624 | $159,561.30 | $177,220.60 | 360 | R | 1 | R | IBB OR ORLANDO |
| 3433126 | HIGHLANDS | ESCAMBIA | $276,500.00 | 5.375% | SEARCH 2 CLOSE | TAMPA | FL | 33624 | $177,301.77 | $184,129.68 | 360 | R | 1 | R | BANK OF AMERICA |
| 3409404 | LEESBURG | HIGHLANDS | $92,162.00 | 6.000% | MARLIN TITLE, LLC | FT LAUDERDALE | FL | 33309 | $116,591.35 | $115,985.12 | 360 | R | 1 | R | BANK OF ORLANDO |
| 3373838 | SANT AUGUSTINE | LAKE | $110,069.00 | 4.250% | NETCO | SAFETY HARBOR | FL | 34695 | $236,999.21 | $237,816.86 | 360 | R | 1 | R | JP MORGAN CHASE |
| 3466192 | SANT AUGUSTINE | ST JOHNS | $240,000.00 | 4.250% | HOMETOWN TITLE AGENCY, INC | CLEARWATER | FL | 33764 | $73,311.16 | $74,531.00 | 360 | R | 1 | R | BANK OF AMERICA |
| 3419161 | SANT AUGUSTINE | ST JOHNS | $74,531.00 | 4.875% | A CLEAR CHOICE TITLE & ESCRO | ST CLOUD | FL | 34769 | $71,087.37 | $73,388.48 | 360 | R | 1 | R | REGIONS BANK |
| 3342573 | JACKSONVILLE | DUVAL | $74,542.00 | 5.500% | JAMES R EVANS PA | DAYTONA BEACH | FL | 32118 | $402,310.03 | $405,077.05 | 360 | R | 1 | R | SOUTHERN COMMERC |
| 3430333 | ARCHER | ALACHUA | $417,000.00 | 5.500% | LAWYERS TITLE | POLK | FL | 33607 | $241,879.13 | $238,617.94 | 360 | R | 1 | R | REGIONS BANK |
| 3437018 | CLERMONT | LAKE | $203,245.00 | 5.250% | NATIONS LENDING SERVICES | JACKSONVILLE | FL | 32207 | $240,359.58 | $238,430.89 | 360 | R | 1 | R | REGIONS BANK |
| 3322669 | DUNNELLON | MARION | $241,702.00 | 4.250% | CERTIFIED TITLE CORPORATION | PRAIRIE VILLAGE | KS | 66207 | $239,816.67 | $238,430.89 | 360 | R | 1 | R | SUNTRUST BANK |
| 3388295 | HASTINGS | ST JOHNS | $241,385.00 | 4.750% | ALL STAR TITLE, INC | OWINGS MILLS | MD | 21117 | $183,960.54 | $186,866.44 | 360 | R | 1 | R | COMERICA BANK |
| 3399094 | KISSIMMEE | POLK | $198,785.00 | 4.750% | ALL STAR TITLE, INC | OWINGS MILLS | MD | 21117 | $220,023.41 | $221,806.00 | 360 | R | 1 | R | BANK OF AMERICA |
| 3352753 | PORT ORANGE | VOLUSIA | $221,806.00 | 5.000% | SECURED LENDING SERVICES | BALTIMORE | MD | 21208 | $114,636.00 | $221,806.00 | 360 | R | 1 | R | WACHOVIA |
| 3393921 | JACKSONVILLE | ST JOHNS | $118,808.00 | 5.500% | RICHMOND TITLE SERVICES | PITTSBURGH | PA | 15205 | $114,636.00 | $117,145.00 | 360 | R | 1 | R | HSBC BANK |
| 3425554 | MIAMI | DADE | $279,199.00 | 4.000% | | PLANO | TX | 75093 | $273,476.81 | $277,543.04 | 360 | R | 1 | R | BANK OF AMERICA |



tabbies®

EXHIBIT G

The Official Website of the Office of Consumer Affairs & Business Regulation (OCABR)

Mass.Gov

# Consumer Affairs and Business Regulation

Home > Business > Banking Industry Services > Banking Legal Resources > Enforcement Actions > 2009
Enforcement Actions >

## Taylor, Bean, and Whitaker Corp., Ocala, FL - Temporary Order to Cease and Desist
By the Division of Banks

### RELATED LINKS

Division of Banks

Federal Deposit
Insurance Corporation
(FDIC)

### COMMONWEALTH OF MASSACHUSETTS

Suffolk, SS.

COMMISSIONER OF BANKS
MORTGAGE LENDER
LICENSING
Docket No. 2009-115

FINDINGS OF FACT AND TEMPORARY
ORDER TO CEASE AND DESIST

In the Matter of
TAYLOR, BEAN, AND WHITAKER
MORTGAGE CORP.
Ocala, Florida

Mortgage Lender License No(s). ML1897 *et al.*

The Commissioner of Banks ("Commissioner") having determined that TAYLOR, BEAN &
WHITAKER MORTGAGE CORP., ("Taylor, Bean & Whitaker" or the "Corporation"), located at 315
NE 14th Street, Ocala, Florida has engaged in, or is engaging in, or is about to engage in, acts or
practices constituting violations of Massachusetts General Laws chapter 255E and applicable regulations
found at 209 CMR 42.00 *et seq.*, hereby issues the following FINDINGS OF FACT AND
TEMPORARY ORDER TO CEASE AND DESIST ("Temporary Order") pursuant to General Laws
chapter 255E, section 7(b) and chapter 255F, section 8(b).

#### FINDINGS OF FACT

1. The Division of Banks ("Division"), through the Commissioner, has jurisdiction over the licensing
   and regulation of persons and entities engaged in the business of a mortgage lender in
   Massachusetts pursuant to Massachusetts General Laws chapter 255E, section 2.
2. The Division, through the Commissioner, also has jurisdiction over the licensing and regulation of
   persons engaged in the business of a mortgage loan originator in Massachusetts pursuant to
   Massachusetts General Laws chapter 255F, section 2.
3. Taylor, Bean & Whitaker is, and at all relevant times, has been a foreign corporation conducting
   business in the Commonwealth of Massachusetts. Taylor, Bean & Whitaker's main office is
   located at 315 NE 14th Street, Ocala, Florida.
4. Taylor, Bean & Whitaker is licensed by the Commissioner as a mortgage lender under
   Massachusetts General Laws chapter 255E. According to records maintained on file with
   the Division, the Commissioner initially issued mortgage lender license number ML1897 to
   Taylor, Bean & Whitaker to engage in the business of a mortgage lender at 315 NE 14th Street,
   Ocala, Florida on or about September 7, 2001.
5. Taylor, Bean & Whitaker maintains additional office locations from which the Corporation
   conducts its mortgage lender business. According to records maintained on file with the Division,
   Taylor, Bean & Whitaker currently possesses eight (8) additional mortgage lender licenses from
   the Commissioner for one location operating in Massachusetts, as well as locations operating
   outside the Commonwealth.

   **A. Failure to Fund Certain Residential Loan Obligations in the Commonwealth and
   Uncertainty of Taylor, Bean & Whitaker's Maintenance of the Minimum Financial**



EXHIBIT
**H**

**Requirements for Holding a Mortgage Lender License in Massachusetts**

*i. Failure to Fund Certain Residential Loan Obligations in the Commonwealth*

6. On August 5, 2009, a licensed Massachusetts mortgage broker ("Mortgage Broker A") notified the Division that Taylor, Bean & Whitaker, had failed to timely disburse loan proceeds in a refinance mortgage loan transaction involving a residential property in Massachusetts which Mortgage Broker A had placed with Taylor, Bean & Whitaker. Mortgage Broker A informed the Division that the mortgage loan had closed on July 30, 2009 and was scheduled to fund on August 4, 2009. As of August 6, 2009, the mortgage loan remains unfunded.

7. On August 5, 2009, the Division was notified via an e-mail forwarded by a licensed mortgage broker ("Mortgage Broker B") that Corporation had ceased all origination operations effective immediately. Mortgage Broker B notified the Division that Taylor, Bean & Whitaker had e-mailed the mortgage broker a press release that stated in part:

Taylor, Bean & Whitaker Mortgage Corp., ("TBW") received notification on August 4, 2009 from the U.S. Department of Housing and Urban Development, Freddie Mac, and Ginnie Mae (the "Agencies") that it was being terminated and/or suspended as an approved seller and/or servicer for each of those respective agencies...As a result of these actions, TBW must cease all origination operations effectively immediately...TBW will not be able to close or fund any mortgage loans currently pending in its pipeline.

8. Massachusetts General Laws chapter 93A, section 2(a) states:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

9. The Division's regulation 209 CMR 42.12(1)(e) states in part:

A Licensee shall notify the Commissioner immediately, and in writing within one business day, of the occurrence of any of the following significant developments...expiration, termination or default, technical or otherwise, of any existing line of credit or warehouse credit agreement.

10. The Division's regulation at 209 CMR 42.13(2) states:

Licensees shall provide thirty days prior written notice of any change or closing of a Massachusetts location to the Commissioner and shall contain such other information as the Commissioner may require.

11. Based upon information and belief, the loan referenced in Paragraph 6 has not yet funded as of the effective date of this Temporary Order.

12. As of the issuance of this Temporary Order, Taylor, Bean & Whitaker has not notified the Division of the facts and circumstances set forth above.

*ii. Uncertainty of Taylor, Bean & Whitaker's Maintenance of the Minimum Financial Requirements for Holding a Mortgage Lender License in Massachusetts*

13. The Division's regulation at 209 CMR 42.04(2)(b)3 pertaining to the licensing of mortgage lenders states in part:

The Commissioner may also deny such an application if the Applicant has: conducted, or will conduct, its business in an unsafe and unsound manner...

14. The Division's regulation at 209 CMR 42.03(2)(c) states in part:

An Applicant shall be required to submit detailed information supporting the following general requirements:

Character and Fitness. An Applicant shall submit information demonstrating that the Applicant possesses the character, reputation, integrity and fitness to engage in the business of a mortgage lender in an honest, fair, sound and efficient manner.

15. On or around August 5, 2009 the Division became aware that Taylor, Bean & Whitaker had ceased all origination operations and would be unable to close or fund any mortgage loans pending in the Corporation's pipeline by an e-mail forwarded by the Corporation to a Massachusetts licensed mortgage broker, Mortgage Broker B. The e-mail stated in part:

TBW must cease all origination operations effectively immediately...TBW will not be able to close or fund any mortgage loans currently pending in its pipeline.

**B. Failure to Provide Notice of Suspension of Relationship with the Government National Mortgage Association**

16. The Division's regulation at 209 CMR 42.12(1)(f) states in part:

    (1) A Licensee shall notify the Commissioner immediately, and in writing within one business day, of the occurrence of any of the following significant developments: . . . (f) Suspension or termination of the Licensee's status as an approved seller or seller/servicer by the Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association or an investor approved under *209 CMR 42.11A(1)(a)*.

17. On August 4, 2009, the Division became aware through a press release issued by the Department of Housing and Urban Development ("HUD") that the Federal Housing Administration ("FHA") had suspended Taylor, Bean & Whitaker from making loans insured by FHA. The press release further stated that the Government National Mortgage Association ("Ginnie Mae") was defaulting and terminating Taylor, Bean & Whitaker as an issuer in Ginnie Mae's mortgage backed security program and would be terminating Taylor, Bean & Whitaker's ability to continue servicing Ginnie Mae securities.

18. As of the issuance of this Temporary Order, Taylor, Bean & Whitaker has not notified the Division of the aforementioned events.

## CONCLUSIONS OF LAW

19. Based upon the information contained in Paragraphs 1 through 18, Taylor, Bean & Whitaker's acts or practices of contracting with consumer(s), through the underwriting and subsequent execution of mortgage loan closing documents relating to Massachusetts residential property, and thereafter failing to fund the mortgage loan(s) may constitute unfair and/or deceptive acts or practices in violation of Massachusetts General Laws chapter 93A, section 2.

20. Based upon the information contained in Paragraphs 1 through 18, due to the delay in funding contractual mortgage loan obligations Taylor, Bean & Whitaker has harmed a consumer, mortgage broker, and other parties in at least one residential mortgage loan transaction in the Commonwealth by engaging in acts or practices which may be unfair and/or deceptive in violation of Massachusetts General Laws chapter 93A, section 2.

21. Based upon the information contained in Paragraphs 1 through 18, by contracting to originate mortgage loan(s) that Taylor, Bean & Whitaker did not have sufficient warehouse funds available to fund, or any other available alternative source of funds, Taylor, Bean & Whitaker has engaged in unsafe or unsound practices in violation of the Division's regulation 209 CMR 42.04(2)(b)3.

22. Based upon the information contained in Paragraphs 1 through 18, Taylor, Bean & Whitaker failed to notify the Commissioner within one business day of the termination of the Corporation's relationship with the Federal National Mortgage Association and the Government National Mortgage Association in violation of 209 CMR 42.12(1)(f).

23. Based upon the information contained in Paragraphs 1 through 18, Taylor, Bean & Whitaker failed to provide the Commissioner with thirty days prior written notice of the Corporation's intention to cease business operations in violation of 209 CMR 42.13(2).

24. Based upon the information contained in Paragraphs 1 through 18, Taylor, Bean & Whitaker has failed to demonstrate the financial responsibility, character, reputation, integrity, and general fitness that would warrant the belief that the business will be operated honestly, fairly, and soundly in the public interest in violation of Massachusetts General Laws chapter 255E, section 4 and the Division's regulation 209 CMR 42.03(2)(c).

25. Based upon the information contained in Paragraphs 1 through 18, the public interest will be harmed by delay in issuing an Order to Cease and Desist under General Laws chapter 255E, section 7(a) because, upon information and belief, Taylor, Bean & Whitaker has a portfolio of Massachusetts mortgage loan applications in various stages of processing, underwriting, and funding which require immediate action to protect the interests of the affected Massachusetts consumers. Contrary to these interests, Taylor, Bean & Whitaker has announced its intention to cease all origination operations immediately and has already begun failing to fund residential mortgage loan transaction(s) which were scheduled to fund prior to the effective date of this Temporary Order.

26. Based upon the information contained in Paragraphs 1 through 18, the Commissioner has determined that:

    a. Taylor, Bean & Whitaker has engaged in, or is about to engage in, acts or practices which

warrant the belief that it is not operating honestly, fairly, soundly and efficiently in the public interest in violation of standards governing the licensing and conduct of a mortgage lender including, but not limited to, the provisions of the Division's regulations at 209 CMR 42.00 *et seq.*; and

    b.  The public interest will be irreparably harmed by delay in issuing an ORDER TO CEASE AND DESIST to Taylor, Bean & Whitaker.

27. Based upon the information contained in Paragraphs 1 through 18, had the facts and conditions found therein existed at the time of Taylor, Bean & Whitaker's original mortgage lender license application, the Commissioner would have been warranted in refusing to issue such license. Further, the facts and conditions set forth in Paragraphs 1 through 18 present sufficient grounds for the revocation of Taylor, Bean & Whitaker's mortgage lender license pursuant to Massachusetts General Laws chapter 255E, section 6 and the Division's regulation at 209 CMR 42.04(2)(b).

## ORDER TO CEASE AND DESIST

After taking into consideration the FINDINGS OF FACT and CONCLUSIONS OF LAW stated herein, it is hereby:

28. ORDERED that Taylor, Bean & Whitaker and any and all officers, directors, managers, employees, independent contractors or agents operating on behalf of Taylor, Bean & Whitaker, and their successors or assigns, shall immediately cease engaging in the activities of: (a) a mortgage lender, as those activities are defined under Massachusetts General Laws chapter 255E, section 1, and (b) a mortgage loan originator, as those activities are defined under Massachusetts General Laws chapter 255F, section 1, relative to any residential property in Massachusetts, not otherwise expressly permitted by the terms of this Temporary Order. Therefore, Taylor, Bean & Whitaker is ordered to immediately cease soliciting or accepting, either directly or indirectly, any residential mortgage loan applications from consumers for residential property located in Massachusetts.

29. IT IS FURTHER ORDERED that Taylor, Bean & Whitaker, shall immediately place any fees previously collected from Massachusetts consumers relative to any pending mortgage loan applications in a separate escrow account maintained at a federally insured bank.

30. IT IS FURTHER ORDERED that Taylor, Bean & Whitaker shall immediately place with one or more qualified broker(s) or lender(s), with no loss to applicants, the following: (a) Taylor, Bean & Whitaker's entire portfolio of Massachusetts residential mortgage loans which were closed by Taylor, Bean & Whitaker, and remain unfunded as of the issuance of this Temporary Order; and (b) Taylor, Bean & Whitaker's entire pending application list of Massachusetts residential mortgage loans. It being understood that "no loss to the applicant" shall mean that any loan which was closed by Taylor, Bean & Whitaker, as well as any application which was approved by Taylor, Bean & Whitaker, shall be placed to a lender willing to fund, or close, the mortgage loan under the same terms and conditions extended by Taylor, Bean & Whitaker. In the event that no such placement can be made, Taylor, Bean & Whitaker shall either independently fund the mortgage loan under such terms and conditions or buy down the mortgage loan offered by the lender so that the applicant does not incur a loss as a result of such placement. Taylor, Bean & Whitaker shall obtain the prior approval of the Commissioner before placing such applications to the qualified lender(s) or broker(s) as appropriate.

31. IT IS FURTHER ORDERED that in any instance in which Taylor, Bean & Whitaker failed to fund a closed loan and in which the consumer, prior to the effective date of this Temporary Order, obtained funding through an alternate lender, Taylor, Bean & Whitaker shall reimburse each consumer the amount necessary to put the consumer in the same position as if Taylor, Bean & Whitaker had funded the mortgage loan under the terms and conditions agreed upon at the closing of the loan.

32. IT IS FURTHER ORDERED that Taylor, Bean & Whitaker shall submit to the Commissioner a detailed record, prepared as of the date of submission, of all of the Corporation's pending residential mortgage loan applications on property located in Massachusetts. The records to be produced shall include all information on file regarding the Corporation's Massachusetts mortgage loan portfolio, including but not necessarily limited to, the following:

    a.  Within one (1) day of the effective date of this TEMPORARY ORDER, Taylor, Bean & Whitaker shall submit to the Commissioner all information on file as of the date of submission regarding the Corporation's portfolio of mortgage loans that were closed by Taylor, Bean & Whitaker prior to the effective date of this TEMPORARY ORDER, but

remain as yet unfunded. Such information shall include, but is not limited to, the following: The names of all individuals from whom Taylor, Bean & Whitaker processed an application and closed the residential mortgage loan, but failed to fund; the applicants' addresses and telephone numbers; the loan number; the amount of all prepaid loan fees submitted by the customer; the amount of each loan; the loan terms; the current funding status; the actual closing dates; the loan purpose (i.e. purchase or refinance); and identification of the applicable lender with whom each application will be placed. The record should include telephone numbers of contact persons at each lender who is familiar with the Corporation's submitted loans;

b.   As soon as possible, but not later than five (5) days after the effective date of this TEMPORARY ORDER, Taylor, Bean & Whitaker shall submit to the Commissioner all information on file as of the date of submission regarding the Corporation's pipeline of pending mortgage loan applications including but not limited to, the following: The names of all individuals from whom Taylor, Bean & Whitaker has accepted an application for a residential mortgage loan; the applicants' addresses and telephone numbers; the loan number; the amount of all prepaid loan fees submitted by the customer; rate lock status; the amount of each loan; application status (i.e. filed, submitted to lenders, cleared to close, etc.); loan terms, if approved; scheduled closing dates; the loan purpose (i.e. purchase or refinance); and identification of the applicable lender or broker with whom each application will be placed. The record should include telephone numbers of contact persons at each lender or broker who is familiar with the Corporation's submitted loans;

c.   On the last business day of each subsequent week after the effective date of this TEMPORARY ORDER, Taylor, Bean & Whitaker shall provide the Commissioner with an updated, written status report of the mortgage loan applications identified above under subparagraphs 32(a) and 32(b). The form of the status report shall follow the format of the initial submission under subparagraphs 32(a) and 32(b) and shall indicate the final disposition of the loan application and include the final terms under which each approved loan is closed. The reporting requirement shall continue until each of the approved applications is placed with a lender and funded, funded by Taylor, Bean & Whitaker, or withdrawn by the applicant(s); and

d.   Within one (1) day of the effective date of this TEMPORARY ORDER, Taylor, Bean & Whitaker shall submit to the Commissioner Taylor, Bean & Whitaker's balance sheet and year-to-date income statement, prepared as of the date of submission, and attested by a duly authorized officer of the Corporation. The balance sheet shall indicate Taylor, Bean & Whitaker's cash position at each of its depository banks as well as Taylor, Bean & Whitaker's bank account numbers.

33.   IT IS FURTHER ORDERED that Taylor, Bean & Whitaker shall not pay or declare a dividend, nor otherwise authorize or execute any financial transaction, either singular or structured, in excess of two hundred and fifty thousand dollars ($250,000.00), except for wages and salaries paid to employees, contractors, officers, or other members of Taylor, Bean & Whitaker's management in the normal course of their business, without the prior written approval of the Commissioner. Upon the effective date of this Temporary Order, Taylor, Bean & Whitaker shall implement or revise its practices and procedures, as necessary, to ensure that their financial books and records are accurately maintained, in a manner illustrating compliance with the provisions of this Paragraph, and available for review by the Division's examiners upon request.

34.   IT IS FURTHER ORDERED that Taylor, Bean & Whitaker shall immediately secure all pending mortgage loan application files and, to the extent that any original documents must be forwarded to the relevant mortgage lender(s) and or mortgage broker(s) pursuant to Paragraph 30 of this TEMPORARY ORDER, a copy of such document, correspondence, or paper relating to the mortgage loan shall be retained in Taylor, Bean & Whitaker's books and records and shall be available to the Commissioner, in their entirety, upon request.

35.   IT IS FURTHER ORDERED that this Temporary Order shall become effective immediately and shall remain in effect unless set aside, limited, or suspended by the Commissioner or upon court order after review under Massachusetts General Laws chapter 30A.

36.   IT IS FURTHER ORDERED that a hearing will be scheduled on this matter to determine whether or not such Temporary Order shall become permanent and final only upon receipt of a written request for such a hearing from Taylor, Bean & Whitaker within twenty (20) days of the effective date of this Temporary Order. If no hearing is requested within this twenty (20) day period, this Temporary Order shall become permanent and final until it is modified or vacated by the

Commissioner.

BY ORDER AND DIRECTION OF THE COMMISSIONER OF BANKS.

Dated at Boston, Massachusetts, this 6th day of August, 2009

By: Steven L. Antonakes
Commissioner of Banks
Commonwealth of Massachusetts

© 2009 Commonwealth of Massachusetts



# STATE OF NEW JERSEY

## DEPARTMENT OF BANKING AND INSURANCE
### DIVISION OF BANKING

**ORDER No. E09-7929**

| | |
|---|---|
| IN THE MATTER OF:<br><br>TAYLOR, BEAN, & WHITAKER<br>MORTGAGE CORPORATION,<br>Ref. No. 0626328<br>MICHAEL PAUL STEC,<br>Ref. No. 8601716<br>RAYMOND E. BOWMAN, President<br>SHERRY D. DICKINSON, Director<br>PAUL R. ALLEN, Chief Executive Officer<br>LEE B. FARKAS, Chairman of the Board | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ORDER<br>TO CEASE AND DESIST<br>AND<br>TO TAKE CERTAIN ACTIONS<br>&<br>ORDER<br>TO SHOW CAUSE<br>WHY LICENSES SHOULD<br>NOT BE REVOKED,<br>CERTAIN PERSONS BARRED<br>AND<br>PENALTIES IMPOSED** |

TO:    TAYLOR BEAN & WHITAKER CORPORATION
          Park 80 West
          Plaza II – Suite 200
          Saddle Brook, New Jersey 07663-5836

          TAYLOR BEAN & WHITAKER CORPORATION
          315 NE 14th Street
          Ocala, Florida 34470

          MICHAEL PAUL STEC
          Taylor Bean & Whitaker Corporation
          Park 80 West
          Plaza II – Suite 200
          Saddle Brook, New Jersey 07663-5836

          RAYMOND E. BOWMAN, President
          4999 SW 2nd Street
          Ocala, Florida 34474

          SHERRY D. DICKINSON, Director
          10699 SW 110th Avenue
          Dunellen, Florida 34476

          PAUL R. ALLEN, Chief Executive Officer
          Taylor Bean & Whitaker Corporation
          315 NE 14th Street
          Ocala, Florida 34470



**EXHIBIT**
**I**

LEE B. FARKAS, Chairman of the Board
480 SW 87th Place
Ocala, Florida 34476

JEFFREY W. CAVENDER, Esq.
Attorney for Taylor Bean & Whitaker Corporation
5150 Stilesborough Road
Suite 500, Building 500
Kennesaw, Georgia 30152

**THIS MATTER** having been opened by the Commissioner ("Commissioner") of the New Jersey Department of Banking and Insurance ("Department"), upon information that Taylor Bean and Whitaker Corporation ("TBW"), licensed with mortgage banker authority pursuant to the New Jersey Licensed Lenders Act ("LLA"), N.J.S.A. 17:11C-1 et seq., and Michael Paul Stec ("Stec"), at all times relevant hereto the individual officer and/or principal licensee of TBW, have engaged in conduct in violation of the LLA; and

**WHEREAS** Raymond E. Bowman, Sherry D. Dickinson, and Lee B. Farkas are on record with the Department as TBW's president, director, and Chairman of the Board, respectively, and Paul R. Allen is also known to the Department as TBW's chief executive officer (collectively, "TBW Officers"); and

**WHEREAS**, under the LLA and its implementing rules, the Commissioner has the authority to issue this Order to Cease and Desist and to Take Certain Actions and Order to Show Cause Why Licenses should not be Revoked, Certain Persons Barred, and Penalties Imposed ("Order"); and

**WHEREAS** TBW and Mr. Paul R. Allen on behalf of the TBW Officers entered into a binding Settlement Agreement with the state regulatory agencies in New Jersey and thirteen other states, effective June 22, 2009 (the "Settlement Agreement"); and

**WHEREAS** under paragraph 21 of the Settlement Agreement its provisions shall be enforceable by any of the participating states and, thus, the Settlement Agreement has the same force and effect in this state as an order issued by the Commissioner pursuant to the LLA; and

**WHEREAS** the Settlement Agreement resolved certain compliance violations (labeled "compliance exceptions" in the Settlement Agreement) discovered during a joint regulatory examination performed by the participating states jointly and, in New Jersey's case, also performed separately; and

**WHEREAS** under the terms of the Settlement Agreement, TBW was required to make payments to the participating states, totaling $4.5 million in the aggregate; and

**WHEREAS** TBW forwarded a payment to the Department in the amount of $321,428.00, which was duly deposited into the State's general fund on or about July 8, 2009; and

**WHEREAS** under the terms of the Settlement Agreement, TBW was required to make a payment to the Nationwide Mortgage Licensing System and Registry ("NMLS&R") in the amount of $4.5 million, equal shares of which amount were credited by the NMLS&R to each of the fourteen states participating in the Settlement Agreement; and

**WHEREAS** TBW made a payment to the NMLS&R on or about July 1, 2009 in accordance with the Settlement Agreement, and New Jersey was credited by the NMLS&R in the amount of $321,428.00; and

**WHEREAS** the Settlement Agreement imposed continuing, post-settlement responsibilities upon TBW with respect to development and implementation of policies and procedures to effectuate internal controls, a comprehensive loan review process and report, and implementation of a loan modification program with respect to TBW's loan servicing portfolio (collectively, the "Remedial Actions"); and

**WHEREAS,** on August 4, 2009, the Department became aware through a press release issued by the Department of Housing and Urban Development ("HUD") (the "HUD Press Release") that the Federal Housing Administration ("FHA") had suspended TBW from making loans insured by FHA; and

**WHEREAS,** the HUD Press Release further stated that the Government National Mortgage Association ("Ginnie Mae") was terminating TBW as an issuer in Ginnie Mae's mortgage back security program and would be terminating TBW's ability to continue servicing Ginnie Mae securities; and

**WHEREAS,** the HUD Press Release states that the suspension was issued as a result of TBW's failure to submit required annual financial reports along with failure to report certain irregular transactions; and

**WHEREAS** a press release by TBW issued on August 5, 2009 advised that TBW ceasing all mortgage loan origination operations effective immediately and that it would not close or fund mortgage loans in the "pipeline;" and

## COUNT ONE

**IT APPEARING** that, effective on or about August 3, 2009, TBW and Stec shut down operations in New Jersey without appropriate notice to the Commissioner or other interested parties, in a manner and as a result of actions by other parties that have demonstrated unworthiness, incompetence and bad faith in the transaction of business as a licensee in violation of N.J.S.A. 17:11C-18a(5); and

## COUNT TWO

**IT APPEARING** that, beginning on or about August 3, 2009, TBW and Stec ceased to disburse funds on an unknown number of mortgage loans closed and/or approved for closing as required by an unknown number of agreements they had entered into with New Jersey resident mortgage loan borrowers, in violation of N.J.S.A. 17:11C-22h, with each such failure to disburse representing a separate violation of N.J.S.A. 17:11C-22h; and

## COUNT THREE

**IT FURTHER APPEARING** that, beginning on or about August 3, 2009, TBW and Stec failed to deliver mortgage loan proceeds funds within the required time after a mortgage loan closing with respect to an unknown number of agreements TBW had entered into with New Jersey resident mortgage loan borrowers, in violation of N.J.S.A. 17:11C-22i, with each such failure to disburse representing a separate violation of N.J.S.A. 17:11C-22i; and

## COUNT FOUR

**IT FURTHER APPEARING** that, prior to August 3, 2009, TBW and Stec took an unknown number of pending mortgage loan applications from New Jersey borrowers that have not closed (hereinafter referred to as the "Loans in the Pipeline") and that TBW and Stec knew or should have known they would be unable to process through to closing and funding in accordance with the mortgage agreements, thereby misrepresenting or concealing a material particular of the transaction in

violation of N.J.S.A. 17:11C-22g, with each such misrepresentation or concealment representing a separate violation of N.J.S.A. 17:11C-22g; and

## COUNT FIVE

**IT FURTHER APPEARING** that TBW's termination of business, which appears to include termination of the Remedial Actions required under the Settlement Agreement, constitutes a material breach of the provisions of the Settlement Agreement, and thus a violation of an Order of the Commissioner, in violation of N.J.S.A. 17:11C-18(a)1; and

## COUNT SIX

**IT FURTHER APPEARING** that TBW has failed to maintain the required net worth or become insolvent, in violation of N.J.S.A. 17:11C-14 and N.J.S.A. 17:11C-18a(4);

## ORDER

**NOW, THEREFORE,** in accordance with regulatory and police powers of this State, and under the authority provided in the LLA and at N.J.S.A. 17:1-15g, it is on this 6th day of August 2009, **ORDERED** as follows:

### A. **ORDER TO CEASE AND DESIST**

1. TBW, Stec, TBW Officers, and all other TBW principals, officers, directors, employees, agents, solicitors, and representatives of any kind shall immediately **CEASE AND DESIST** from closing residential mortgage loans without available funding, for New Jersey mortgage loan borrowers.

2. TBW, Stec, TBW Officers, and all other TBW principals, officers, directors, employees, agents, solicitors, and representatives of any kind shall immediately **CEASE AND DESIST** from taking any new mortgage loan applications from New Jersey borrowers to be secured by New Jersey residential real estate until further notice from the Commissioner.

### B. **ORDER TO TAKE CERTAIN ACTIONS**

3. TBW, TBW Officers, and Stec shall immediately **TAKE ACTION** to fund those loans of New Jersey borrower that have closed without funding or to redirect such loans to a viable alternative funding source.

4. TBW, TBW Officers, and Stec shall immediately **TAKE ACTION** to secure a viable funding source for the Loans in the Pipeline before proceeding any further with such loans or to redirect the Loans in the Pipeline to a viable alternative lender;

5. TBW, TBW Officers, and Stec shall immediately **TAKE ACTION** to provide to the Commissioner a report on a daily basis or on such other periodic basis as the Commissioner may direct, in electronic format, with all such information as the Commissioner may require detailing the status of all loans closed but not funded, including, where appropriate, proof of funding (by Federal ID Wire Number).

6. TBW, TBW Officers, and Stec shall immediately **TAKE ACTION**, on a daily basis, to provide to the Commissioner a daily report, in electronic format, with all such information as the Commissioner may require, detailing the status of the Loans in the Pipeline.

7.    TBW, TBW Officers, and Stec shall immediately **TAKE ACTION** to make available for examination any and all other books, accounts, records and documents pertaining to its New Jersey business as the Commissioner may request.

8.    TBW, TBW Officers, and Stec shall immediately **TAKE ACTION** to place into escrow until further order of the Commissioner all monies representing fees of any kind paid by New Jersey borrowers for a loan that has not been funded.

C.    **ORDER TO SHOW CAUSE - LICENSE REVOCATION**

9.    TBW and Stec shall appear and show cause why their licensed lenders licenses should not be **REVOKED** pursuant to and N.J.S.A. 17:11C-18a(1) for such violations.

D.    **ORDER TO SHOW CAUSE - BAR**

10.   The TBW Officers shall appear and show cause why they should not be **BARRED** for a period of ten years from acting as a licensee, a stockholder, a partner or other owner, or an employee of a licensee, an officer of a licensee, a director of a licensee or in any other capacity under the LLA, pursuant to N.J.S.A. 17:11C-48b for such violations.

E.    **ORDER TO SHOW CAUSE - PENALTIES**

11.   TBW and the TBW Officers shall appear and show cause why they should not be jointly and severally liable for administrative **PENALTIES** for such violations of the Act pursuant to N.J.S.A. 17:11C-48a, including, but not limited to joint and several liability for payment of any portion of the amount paid to New Jersey under the Settlement Agreement ordered returned to TBW's estate in the event of bankruptcy proceedings and for payment of any portion of the amount paid to the NMLS&R under the Settlement Agreement and credited to New Jersey ordered returned to TBW's estate in the event of bankruptcy proceedings.

<u>**HEARING**</u>

    **IT IS PROVIDED** that TBW, Stec, and the TBW Officers shall have the right to request an administrative hearing pursuant to the Administrative Procedures Act, N.J.S.A. 52:14B-1 et seq., as to the terms of this Order; and

    **IT IS FURTHER PROVIDED** that unless a request for a hearing on this Order is received within twenty (20) days of receipt of this Order with respect to any person named in this Order, the right to a hearing in this matter shall be deemed to have been waived by such person(s), and the Commissioner may dispose of this matter as to such person(s) by issuing a final order pursuant to law.

    A hearing may be requested by mailing the request to:

    Thomas M. Hunt, Assistant Division Director
    Office of Consumer Finance
    Department of Banking and Insurance
    P.O. Box 040
    Trenton, New Jersey 08625-0040

    The request shall contain:

    (1)    The person's name, address and daytime telephone number;

    (2)    A copy of this Order;

(3)    A statement requesting a hearing;

(4)    A specific admission or denial of each fact alleged in this Order. Where the licensee has no specific knowledge regarding a fact alleged in the Order, a statement to that effect must be contained in the hearing request. Allegations of this Order not answered in the manner set forth above shall be deemed to have been admitted; and

(5)    A concise statement identifying any factual or legal defense intended to be asserted in response to each charge in this Order. Where the defense relies on facts not contained in the Order, those specific facts must be stated.


NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE


NEIL N. JASEY, COMMISSIONER

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF BANKING

COMMONWEALTH OF PENNSYLVANIA :    Docket No. : 09 0148 (ENF-ORD)
DEPARTMENT OF BANKING, BUREAU :
OF COMPLIANCE, INVESTIGATION :
AND LICENSING :
           :
       v.             :
           :
TAYLOR, BEAN & WHITAKER :
MORTGAGE CORP. :

## NOTICE OF RIGHT TO APPEAL AND HEARING

You, Taylor, Bean & Whitaker Mortgage Corp., have the right to appeal the attached Order within 10 days of the date of service. *See* 1 Pa. Code § 35.20. The date of service is the date the Order is deposited in the mail or delivered to you in person, as the case may be, as set forth in 1 Pa. Code § 33.34. If you appeal the Order, you also have a right to a hearing.

To file an appeal and request a hearing on the Order, you must file a petition with the Secretary of Banking within 10 days of the date of service. 1 Pa. Code § 35.20. The petition must be in writing, state clearly and concisely your grounds of interest in the subject matter, the facts you rely upon, the law you rely upon, and the relief you seek. *See* 1 Pa. Code § 35.17. Please deliver your petition to:

Linnea Freeberg, Docket Clerk
Office of Executive Deputy Secretary
Pennsylvania Department of Banking
17 North Second Street, Suite 1300
Harrisburg, PA 17101

The petition must be received by the Docket Clerk within the aforementioned 10 day deadline. If the Docket Clerk does not receive your petition on time, your right to a hearing will be waived and the Order will be deemed final.

If you choose to file a petition challenging the Order, please send an additional copy to:

Lauren Sassani, Assistant Counsel
Pennsylvania Department of Banking
17 N. Second Street, Suite 1300
Harrisburg, PA 17101



EXHIBIT
J

Once you file your petition appealing the Order and requesting a hearing, you will be notified of the hearing date, time, place, the person who will preside at your hearing, and any other pertinent information.

You have the right to be represented by an attorney. Corporations may be required to be represented by an attorney.

The hearing and all other procedural matters will be governed by the Pennsylvania Administrative Agency Law, 2 Pa. C.S. §§ 501-508, 701-704, and the General Rules of Administrative Practice and Procedure, 1 Pa. Code §§ 31.1.-35.251.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF BANKING

COMMONWEALTH OF PENNSYLVANIA : Docket No. : 09 0148 (ENF-ORD)
DEPARTMENT OF BANKING, BUREAU :
OF COMPLIANCE, INVESTIGATION :
AND LICENSING :
                                 :
        v.                       :
                                 :
TAYLOR, BEAN & WHITAKER          :
MORTGAGE CORP.                   :
                                 :

## ORDER

WHEREAS, the Department of Banking ("Department") is the Commonwealth of

Pennsylvania's administrative agency authorized and empowered to administer and enforce 7 Pa.

C.S. § 6101 et seq. (the "Mortgage Act") and the Proper Conduct of Lending and Brokering in

the Mortgage Loan Business Regulation (the "Proper Conduct Reg"), 10 Pa. Code § 46.1 et seq.;

and

WHEREAS, the Bureau of Compliance, Investigation and Licensing (the "Bureau") is

primarily responsible for administering and enforcing the Mortgage Act for the Department; and

WHEREAS, Taylor Bean is currently licensed as a Mortgage Lender, license no. 23392

under the Mortgage Act; and

WHEREAS, Taylor Bean maintains a corporate location of 315 NE 14th Street, Ocala,

FL 34470 (the "Corporate Office") and various branch locations throughout the United States,

including 755 Business Center Drive, Suite 150 Horsham, PA 19044; and

WHEREAS, on August 4, 2009, the Bureau became aware through a press release issued

by the Department of Housing and Urban Development ("HUD") (the "Press Release") that the

3

Federal Housing Administration ("FHA") had suspended Taylor, Bean & Whitaker from making loans insured by FHA (see attachment A); and

WHEREAS, the Press Release further stated that Government National Mortgage Association ("Ginnie Mae") was defaulting and terminating Taylor, Bean & Whitaker as an issuer in Ginnie Mae's mortgage back security program and would be terminating Taylor, Bean & Whitaker's ability to continue servicing Ginnie Mae securities; and

WHEREAS, the Press Release states that the suspension was issued as a result of Taylor Bean's failure to submit required annual financial reports along with failure to report certain irregular transactions; and

WHEREAS, as of the date of this Order, Taylor Bean has not provided the Department with written notice that it is closing its business; and

WHEREAS, according to a press release by Taylor Bean on August 5, 2009, it was disclosed that the corporation was ceasing all mortgage loan origination operations effective immediately and that it would not close or fund mortgage loans in the pipeline (see attachment B); and

WHEREAS, by not funding mortgage loans in the current pipeline that Taylor Bean had committed to closing, there is a substantial likelihood that Pennsylvania consumers will be harmed; and

WHEREAS, Section 46.2(k)(1) of the Proper Conduct Reg provides that "[a] licensee lender may not refuse or fail to fund a consummated loan. . . ." 10 Pa. Code § 46.2(k)(1); and

WHEREAS, Section 46.3(a) of the Proper Conduct Reg provides that a violation of the Proper Conduct Reg is a violation of the Mortgage Act. 10 Pa. Code § 46.3(a); and

WHEREAS, Section 6138(a)(4) of the Mortgage Act provides the Department with authority to issue orders as may be necessary for the proper conduct of the mortgage loan business and for the enforcement of the Mortgage Act. 7 Pa. C.S. § 6138(a)(4); and

WHEREAS, Section 6131(b) of the Mortgage Act provides that a licensee must provide the Department written notice of any change in information that would be contained in a licensing application within 10 days of becoming aware of the change; and

WHEREAS, Section 6139(a)(3) of the Mortgage Act authorizes the Department to suspend, revoke or refuse to renew a license issued under the Mortgage Act if the licensee has "[e]ngaged in dishonest, fraudulent or illegal practices or conduct in a business or unfair or unethical practices or conduct in connection with the mortgage loan business." 7 Pa. C.S. § 6139(a)(3); and

WHEREAS, Section 6140(b) of the Mortgage Act provides, in relevant part, that "[a] person licensed under this chapter or director, officer, owner, partner, employee or agent of a licensee who violates a provision of this chapter or who commits any action which would subject the licensee to suspension, revocation or nonrenewal under section 6139 may be fined by the department up to $10,000 for each offense." 7 Pa. C.S. § 6140(b); and

WHEREAS, Taylor Bean engaged in dishonest, fraudulent, illegal, unfair and/or unethical business practices by failing to complete and/or fund loans in its pipeline that it has committed to close; and

WHEREAS, Taylor Bean engaged in improper conduct by failing to complete and/or fund loans in its pipeline that it has committed to close; and

AND NOW THEREFORE, since Taylor Bean was not engaged in the proper conduct of a mortgage lender when it refused to complete the pipeline and/or fund loans it has committed to

5

close, the Bureau, pursuant to its authority referenced above hereby imposes the following Order:

1. <u>Loan Origination</u>. Upon the Effective Date of this Order, Taylor Bean and any and all officers, members, managers, employees, independent contractors, or agents, operating on behalf of Taylor Bean and their successors or assigns, shall immediately cease and desist from accepting applications, soliciting and/or advertising for its wholesale and/or retail businesses in Pennsylvania or to Pennsylvania consumers.

2. <u>Escrow Fees</u>. Upon the Effective Date of this Order, Taylor Bean shall immediately place any fees previously collected from Pennsylvania consumers relative to any pending mortgage loan applications in a separate escrow account maintained at a federally insured bank. Within five days of the Effective date of this Order, Taylor Bean shall provide proof that the fees have been placed in an escrow account maintained at a federally insured bank to Linda Zang, Chief Consumers Services Division at lzang@state.pa.us.

3. <u>Pipeline Reports</u>. Upon the Effective Date of this Order, Taylor Bean shall provide a pipeline report for the following categories of loans:

      a.     loans that have closed, but have not yet funded;

      b.     loans that have been approved but that have not closed;

      c.     applications that have been received, but no decision has been made on approving the applications; and

      d.     applications that are in the initial stages of review and document gathering.

The pipeline report shall include the following information:

      i.     the name, address and telephone number of the applicant consumer;

ii. the loan number;

iii. the amount of all prepaid loan fees submitted by the applicant consumer;

iv. the amount of each loan;

v. the status of the loan;

vi. the purpose of the loan (i.e. purchase or refinance);

vii. contact information for the broker who referred the loan to Taylor Bean (if applicable); a

viii. status of what is being done with the loan (funded by Taylor Bean, referred to another broker/lender, returned to broker, withdrawn by the applicant); and

ix. contact information for the broker/lender where the loan is placed, should Taylor Bean not fund the loan itself.

This Pipeline Report shall be updated every Monday at 9:00 A.M. Eastern Time and shall be sent to Linda Zang, Chief Consumer Services Division at lzang@state.pa.us. Taylor Bean shall continue to update the Pipeline Report until all of the loans have been funded, placed with another broker or lender, or withdrawn by the applicant. Taylor Bean shall ensure that the consumer is in the same position with the new lender or broker as the consumer would have been if the loan had been funded with Taylor Bean.

4. Liens. Upon the Effective Date of this Order, Taylor Bean shall release any liens filed on any Pennsylvania real property or filed on property owned by Pennsylvania consumers as a result of a residential mortgage loan closing with Taylor Bean but not being funded. In the event that the loan is subsequently funded, Taylor Bean may file a lien against the property at that time.

5.  Recordkeeping.  Upon the Effective Date of this Order, Taylor Bean shall maintain all required records at its Corporate Office, and allow the Department free access to examine the records as required under Section 6135(a)(2) of the Mortgage Act.

6.  Contact Information.  Upon the Effective Date of this Order, Taylor Bean shall provide contact information for an employee of Taylor Bean that Department employees may contact with questions as well as contact information for an employee of Taylor Bean that consumers and mortgage brokers may contact with questions.  This information shall be provided to Linda Zang, Chief Consumer Services Division at lzang@state.pa.us.

7.  Non-Prohibited Conduct.  Nothing in this Order shall prevent Taylor Bean from selling or assigning residential mortgage loans to another entity, servicing closed mortgage loans or engaging in other activity not prohibited by the Mortgage Act or this Order.

8.  Financials.  Within five (5) days of the Effective Date of this Order, Taylor Bean shall submit to the Department Taylor Bean's balance sheet and year-to-date income statement, prepared as of the date of submission, and attested by a duly authorized officer of the Corporation. The balance sheet shall indicate Taylor Bean cash position at each of its depository banks as well as Taylor Bean's bank account information. The balance sheet and year-to-date statement shall be sent to Linda Zang, Chief Consumer Services Division at lzang@state.pa.us.

9.  Reservation of Rights.  Nothing in this Order shall prevent the Bureau from taking any further administrative action under the authority of the Mortgage Act.


IT IS SO ORDERED.

Ryan Walsh, Administrator
Department of Banking,
Bureau of Compliance, Investigation and Licensing

August 6, 2009
(Date)

ATTACHMENT A

This page is located on the U.S. Department of Housing and Urban Development's Homes and Communities Web site at http://www.hud.gov/news/release.cfm?CFID=19444655&CONTENT=pr09-145.cfm&CFTOKEN=90205823.



# News Release

📺 Information by State

📧 Esta página en español

🖨 Print version

**HUD No. 09-145**
**Brian Sullivan**
**(202) 708-0685**
www.hud.gov/news/

**For Release**
**Tuesday**
**August 4, 2009**

---

### FHA SUSPENDS TAYLOR, BEAN & WHITAKER MORTGAGE CORP. AND PROPOSES TO SANCTION TWO TOP OFFICIALS
*Ginnie Mae Issues Default Notice and Transfers Portfolio*

WASHINGTON - The Federal Housing Administration (FHA) today suspended Taylor, Bean and Whitaker Mortgage Corporation (TBW) of Ocala, Florida, thereby preventing the Company from originating and underwriting new FHA-insured mortgages. The Government National Mortgage Association (Ginnie Mae) is also defaulting and terminating TBW as an issuer in its Mortgage-Backed Securities (MBS) program and is ending TBW's ability to continue to service Ginnie Mae securities. This means that, effective immediately, TBW will not be able to issue Ginnie Mae securities, and Ginnie Mae will take control of TBW's nearly $25 billion Ginnie Mae portfolio.

FHA and Ginnie Mae are imposing these actions because TBW failed to submit a required annual financial report and misrepresented that there were no unresolved issues with its independent auditor even though the auditor ceased its financial examination after discovering certain irregular transactions that raised concerns of fraud. FHA's suspension is also based on TBW's failure to disclose, and its false certifications concealing, that it was the subject of two examinations into its business practices in the past year.

"Today, we suspend one company but there is a very clear message that should be heard throughout the FHA lending world - operate within our standards or we won't do business with you," said HUD Secretary Shaun Donovan.

FHA Commissioner David Stevens said, "TBW failed to provide FHA with financial records that help us to protect the integrity of our insurance fund and our ability to continue a 75-year track record of promoting, preserving and protecting the American Dream. We were also troubled that the Company not only failed to disclose it was a target of a multi-state examination and a separate action by the Commonwealth of Kentucky, but then falsely certified that it had not been sanctioned by any state. FHA won't tolerate irresponsible lending practices."

Ginnie Mae President Joseph Murin said, "I would like to reassure TBW's customers whose loans serve as collateral for Ginnie Mae securities that, although this action will result in a new servicer, the transition will be seamless for them."

TBW's immediate suspension is for a temporary period pending the completion of an investigation by HUD's Office of Inspector General, an ongoing review by the Department's Office of Housing, and any legal proceedings that may ensue. TBW is the third largest direct endorsement lender of FHA-insured loans and the eighth largest issuer of Ginnie Mae mortgage-backed securities. FHA decided that TBW's immediate suspension is in the best interest of the public and is necessary to protect the financial interests of the Department.

TBW may appeal its immediate suspension by submitting a written request for a hearing before an Administrative Law Judge within 30 days. Such a request will not delay the action FHA is announcing today.

In conjunction with TBW's suspension, HUD sent notices of proposed debarment to TBW's Chief Executive Officer, Paul R. Allen, and TBW's President, Ray Bowman. Mr. Allen's proposed debarment alleges that he submitted false and/or misleading information to Ginnie Mae regarding TBW's delay in submitting its audited financial reports for fiscal year ending on March 31, 2009. Mr. Bowman's proposed debarment alleges that he submitted two false certifications to HUD on TBW's Yearly Verification Report. Mr. Allen and Mr. Bowman have thirty days to contest the proposed debarments.

### ###

*HUD is the nation's housing agency committed to sustaining homeownership; creating affordable housing opportunities for low-income Americans; and supporting the homeless, elderly, people with disabilities and people living with AIDS. The Department also promotes economic and community development and enforces the nation's fair housing laws.*

*Ginnie Mae is a wholly-owned government corporation within the U.S. Department of Housing and Urban Development. Ginnie Mae pioneered the mortgage-backed security (MBS), guaranteeing the very first security in 1971. An MBS enables a mortgage lender to aggregate and sell mortgage loans as a security to investors. Ginnie Mae securities carry the full faith and credit of the United States Government, which means that, even in difficult times, an investment in Ginnie Mae is one of the safest an investor can make.*

*More information about HUD and Ginnie Mae is available on the Internet at www.hud.gov, espanol.hud.gov and www.ginniemae.gov*

**U.S. Department of Housing and Urban Development**
451 7th Street, S.W., Washington, DC 20410
Telephone: (202) 708-1112  Find the address of a HUD office near you

ATTACHMENT B



August 5, 2009

# TAYLOR BEAN MUST CEASE ALL ORIGINATION OPERATIONS EFFECTIVE IMMEDIATETLY

OCALA, FLORIDA – TAYLOR, BEAN & WHITAKER MORTGAGE CORP. ("TBW") RECEIVED NOTIFICATION ON AUGUST 4, 2009 FROM THE U.S DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, FREDDIE MAC AND GINNIE MAE (THE "AGENCIES") THAT IT WAS BEING TERMINATED AND/OR SUSPENDED AS AN APPROVED SELLER AND/OR SERVICER FOR EACH OF THOSE RESPECTIVE FEDERAL AGENCIES. TBW HAS UNSUCCESSFULLY SOUGHT TO HAVE THE TERMINATION/SUSPENSION DECISIONS OF EACH OF THOSE AGENCIES REVERSED. AS A RESULT OF THESE ACTIONS, TBW MUST CEASE ALL ORIGINATION OPERATIONS EFFECTIVE IMMEDIATELY. REGRETTABLY, TBW WILL NOT BE ABLE TO CLOSE OR FUND ANY MORTGAGE LOANS CURRENTLY PENDING IN ITS PIPELINE. TBW IS COOPERATING WITH EACH OF THE AGENCIES WITH RESPECT TO ITS SERVICING OPERATIONS AND EXPECTS TO CONTINUE TO SERVICE MORTGAGE LOANS AS IT RESTRUCTURES ITS BUSINESS IN THE WAKE OF THESE EVENTS. WE UNDERSTAND THAT THIS COULD HAVE A SIGNIFICANT IMPACT ON OUR VALUED EMPLOYEES, CUSTOMERS AND COUNTERPARTIES, AND ARE VERY DISAPPOINTED THAT A LESS DRASTIC OPTION IS UNAVAILABLE.

COMMONWEALTH OF PENNSYLVANIA : Docket No. : 09 ____ (ENF-ORD)
DEPARTMENT OF BANKING, BUREAU :
OF COMPLIANCE, INVESTIGATION :
AND LICENSING :
:
v. :
:
TAYLOR, BEAN & WHITAKER :
MORTGAGE CORP. :
:

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing Order upon the parties below, who constitute the only parties of record in this proceeding, in accordance with the requirements of 1 Pa. Code § 33.37:

### BY CERTIFIED AND FIRST CLASS MAILAND FASCIMILE

Jeffery W. Cavender, General Counsel
Taylor, Bean & Whitaker Mortgage Corp.
5150 Stilesboro Road
Building 500, Suite 500
Kennesaw, GA 30152
Facsimile (678)742-4933

Dated this 6 th th day of August, 2009.

Lauren A. Sassani
Assistant Counsel
Attorney I.D. # 203016
FOR: Commonwealth of Pennsylvania
Department of Banking
17 North Second Street, Suite 1300
Harrisburg, PA 17101
(717) 787-1471