
COMPOSITE EXHIBIT D PART 9

STATE OF NORTH CAROLINA

WAKE COUNTY

IN A MATTER
BEFORE THE COMMISSIONER OF BANKS

IN RE:                                      )
                                            )
TAYLOR, BEAN, & WHITAKER MORTGAGE           )
CORP.                                       )
OCOB License No. L-109871                   )
NMLS ID No. 1087                            )
Docket No. 09:114:MBB                        )
                                            )     **CEASE AND DESIST**
                                            )        **ORDER**
RAYMOND E. BOWMAN                           )
Docket No. 09:115:MBB                        )
                                            )
PAUL R. ALLEN                               )
Docket No. 09:116:MBB                        )
                                            )
and                                         )
                                            )
LEE B. FARKAS                               )
Docket No. 09:117:MBB                        )
_____          )

THIS CAUSE coming on to be heard before the Commissioner of

Banks (hereinafter "Commissioner") on the Non Depository

Entities Division of the Office of Commissioner of Bank's *ex*

*parte* motion for a Cease and Desist Order, with the verified

Notice of Hearing in support; and

The Commissioner has reason to believe that Taylor, Bean,

and Whitaker Mortgage Corp. ("TBW") is the subject of one or

more injunctions prohibiting TBW from engaging in origination

activities; that TBW has repeatedly failed to respond to and

-1-

cooperate with examination efforts taken by the OCOB; that TBW has repeatedly failed to make, compile, and provide written reports as requested by the OCOB; that TBW has breached its agreement with the OCOB to stay its North Carolina foreclosures until such time as a third-party review firm can be conducted to verify that said loans were made in compliance with relevant federal and state laws; and that TBW lacks the character and fitness such as to command the confidence of the community; and

The Commissioner has reason to believe that the public interest requires the Commissioner to summarily order TBW to cease and desist from the solicitation or acceptance of new loan applications or new origination activities, except those activities related to the processing, placement, or funding of loans based on applications received prior to the date of this Order; and

The Commissioner further has reason to believe that the public interest requires the Commissioner to summarily order TBW to cease and desist from commencing or proceeding with foreclosures against any loans originated by TBW until such time as OCOB has audited and reviewed the loans and certified that the loans comply with applicable state and federal laws.

IT IS THEREFORE ORDERED that:

1.    TBW shall cease all new origination activity within the State of North Carolina.  TBW shall cease and desist from advertising on its website or through any public communications any indication that it will accept new applications for loans in North Carolina.

2.    TBW shall cease and desist from commencing or proceeding with foreclosures against any loans originated by TBW, as lender or broker, until such time as OCOB has audited and reviewed the loans and certified that the loans comply with applicable state and federal laws.

3.    IT IS FURTHER ORDERED that within forty-eight (48) hours after receipt of this written Order, TBW shall fax to the attention of Christopher Douglas at the Office of the Commissioner of Banks (Fax number 919-733-6918) a list of all North Carolina residential mortgage loans currently serviced by TBW as master-servicer or sub-servicer.  Such list shall included, at a minimum, the following information:

> a.    The name and address of the borrower(s);
>
> b.    The loan number;
>
> c.    The county in which the property resides;
>
> d.    The current status of the loan, indicated as: current, delinquent, foreclosure pending, or post-foreclosure; and

     e.    The name and address of any sub-servicer currently servicing the loan.

4.    Within 48 hours of the transfer of servicing rights of any loan included in the list provided to OCOB, TBW shall provide the Commissioner of Banks by fax to Chris Douglas a written notice containing the borrower name, address and loan number and the entity to whom the servicing rights have been transferred.

5.    TBW shall cease and desist from undertaking new servicing obligations related to the servicing of any loan secured by North Carolina real property without prior written approval by the OCOB.

6.    TBW shall provide list of loans approved but not funded, and TBW shall undertake best efforts to work with existing applicants to prevent harm due to TBW's failure to provide funding for approved loan applications.

TBW may request a hearing regarding the issuance of this Cease and Desist Order pursuant to the provisions of G.S. § 53-244.113(c). Such a request shall be made in writing, and a hearing on the matter shall be calendared within fifteen (15) days after receiving such a written request.

This the ____ day of August, 2009.

                                          _____
                                          Joseph A. Smith, Jr.
                                          Commissioner of Banks

## CERTIFICATE OF SERVICE

THE UNDERSIGNED hereby certifies that he has this day served a copy of the foregoing CEASE AND DESIST ORDER by placing a copy of the same in the United States Post Office at Raleigh, North Carolina, first class and certified mail, return receipt requested, postage prepaid and addressed to:

Raymond E. Bowman, President
Taylor, Bean, & Whitaker Mortgage Corp.

Paul R. Allen
Individually and as CEO of
Taylor, Bean, & Whitaker Mortgage Corp.

Lee Farkas
Individually and as Chairman of
Taylor, Bean, & Whitaker Mortgage Corp.

This the 10th day of August, 2009.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN A MATTER
BEFORE THE COMMISSIONER OF BANKS

IN RE:        )
          )
TAYLOR, BEAN, & WHITAKER MORTGAGE )
CORP.         )
OCOB License No. L-109871  )  **VERIFIED NOTICE OF**
NMLS ID No. 1087    )  **HEARING AND MANDATORY**
Docket No. 09:114:MBB   )  **PRE-HEARING CONFERENCE**
          )
          )    **AND**
RAYMOND E. BOWMAN    )
Docket No. 09:115:MBB   )  **MOTION FOR SUMMARY**
          )  **CEASE AND DESIST ORDER**
PAUL R. ALLEN     )
Docket No. 09:116:MBB   )
          )
and         )
          )
LEE B. FARKAS     )
Docket No. 09:117:MBB   )
_____)

TO: Raymond E. Bowman
   Individually and as President of
   Taylor, Bean, & Whitaker Mortgage Corp.
   ███████████████████

   Paul R. Allen
   Individually and as CEO of
   Taylor, Bean, & Whitaker Mortgage Corp.
   ███████████████████

   Lee Farkas
   Individually and as Chairman of
   Taylor, Bean, & Whitaker Mortgage Corp.
   ███████████████████

## I. NOTICE OF HEARING

You are hereby notified that the Commissioner of Banks ("Commissioner") or his designated hearing officer will hold a hearing on 15 October 2009 at 9:00 AM, or as soon after that hour as the same may be heard, to determine whether or not the mortgage lender license of Taylor, Bean, & Whitaker Mortgage Corp. ("TBW") should be suspended or revoked and whether civil money penalties should be assessed against TBW; TBW's president and qualifying individual, Raymond E. Bowman ("Bowman"); TBW's chief executive officer, Paul R. Allen ("Allen"); and/or TBW's Chairman and majority owner, Lee B. Farkas ("Farkas"). For the purposes of this Notice of Hearing, TBW, Bowman, Allen, and Farkas shall be referred to collectively as the Respondents.

## II. LOCATION OF THE HEARING

The hearing will take place at the Office of the Commissioner of Banks ("OCOB"), 316 West Edenton Street, Raleigh, North Carolina, 2nd floor hearing room, on the date specified above and will continue from time to time thereafter until fully concluded. If Respondents are not present, a decision will be reached in Respondents' absence and Respondents will be deemed to have waived their right to a hearing.

## III. THE HEARING PROCESS

### A. The Hearing Procedure.

This is a contested case hearing before the Commissioner. Respondents are entitled to be represented by counsel and to present evidence. Respondents are referred to Article 3A of Chapter 150B, Articles 19A and 19B of Chapter 53 of the North Carolina General Statutes, and Title 4, Subchapters 3B and 3M, of the North Carolina Administrative Code for a more complete statement of rights.

This Verified Notice of Hearing also includes a Motion for Summary Cease and Desist Order pursuant to G.S. §§ 53-244.113(c) and 244.114(b). If the Commissioner issues such a summary order pending a final determination of this matter, Respondents may request a hearing regarding the issuance of this order. Such a request shall be made in writing and a hearing will be calendared within fifteen (15) days after receipt of such a request. If a hearing is not requested, any summary cease and desist order issued by the Commissioner shall remain in effect until it is modified or vacated by the Commissioner.

### B. Mandatory Pre-Hearing Conference.

Pursuant to 4 NCAC 3B .0226, the parties shall appear at a Pre-Hearing Conference to occur at such a time as may be agreed upon by the parties. Respondents and Counsel to the OCOB are

required to participate in this conference to explore a stipulation of facts, resolve issues of evidence, and any other matters which will reduce costs or save time or otherwise expedite the disposition of this action. The Pre-Hearing Conference may be conducted by telephone and you are directed to contact Angela B. Maynard at 919.716.6800 to make the necessary arrangements.

## C. Purpose of the Hearing

The purpose of this hearing is to determine whether, upon the facts alleged in Section IV below, there is a basis to conclude that TBW:

    1.    Is the subject of one or more injunctions prohibiting TBW from engaging in origination activities;

    2.    Has repeatedly failed to respond to and cooperate with examination efforts taken by the OCOB;

    3.    Has repeatedly failed to make, compile, and provide written reports or as requested by the OCOB;

    4.    Has breached its agreement with the OCOB to stay its North Carolina foreclosures until such time as a third-party review firm can perform an audit and verify that said loans were made in compliance with relevant federal and state law;

    5.    Has failed to disburse funds in accordance with one or more written mortgage commitments or agreements; and

    6.    Lacks the character and fitness such as to command the confidence of the community.

Furthermore, if it is found that the TBW violated provisions

-4-

of the North Carolina Mortgage Lending Act ("MLA") or the Secure

and Fair Enforcement Mortgage Licensing Act ("NCSAFE"), this

hearing shall determine whether the Commissioner should:

1. Issue an order revoking or suspending TBW's North Carolina mortgage lender license pursuant to G.S. § 53-244.114;

2. Deny or refuse to issue any license hereafter submitted to the OCOB by Bowman, Allen, and Farkas;

3. Impose civil money penalties upon TBW for each violation of the MLA pursuant to G.S. § 53-243.12(c);

4. Impose civil money penalties upon Bowman, Allen, and Farkas, individually and as owners, officers and/or directors of TBW, for each violation of the MLA committed by themselves, TBW, or the agents and employees of TBW, pursuant to G.S. § 53-243.12(c);

5. Impose civil money penalties upon TBW for each violation of NCSAFE pursuant to G.S. § 53-244.116;

6. Impose civil money penalties upon Bowman, Allen, and Farkas, individually and as owners, officers and/or directors of TBW, for each violation of NCSAFE committed by themselves, TBW, or the agents and employees of TBW, pursuant to G.S. § 53-244.116(a);

7. Impose civil money penalties upon TBW for each failure to comply with a directive of the Commissioner pursuant to G.S. § 53-244.116(a);

8. Impose civil money penalties upon Bowman, Allen, and Farkas, individually and as owners, officers and/or directors of TBW, for TBW's failure to comply with a directive of the Commissioner pursuant to G.S. § 53-244.116(a);

## IV. FACTUAL ALLEGATIONS

### A. Licensing History

1.     On or about 16 September 2002, TBW applied to the OCOB for a license to transact business as a mortgage banker pursuant to Article 19A, Chapter 53, of the North Carolina General Statutes and Section 5 of Senate Bill 904, Session Law 2001-393 ("application").

2.     Thereafter on 15 January 2003, the OCOB granted TBW a license as a mortgage banker (OCOB License No. L-109871) under the North Carolina Mortgage Lending Act ("MLA").

3.     On 31 July 2009, TBW's mortgage banker license under the MLA was transitioned to a mortgage lender under NCSAFE pursuant to Section 5(1)b. of House Bill 1523, Session Law 2009-374.

4.     Between 2006 and 2008, TBW made or brokered approximately fifteen thousand, four hundred and twenty-seven (15,427) mortgage loans secured by North Carolina real property, with an aggregate loan value in excess of two billion dollars ($2,000,000,000.00).

5.     Upon information and belief, at all times relevant to the present action:

> a.     Bowman has been the president and qualifying individual for TBW;
>
> b.     Allen has been the chief executive officer and director of TBW; and
>
> c.     Farkas has been the chairman and a director of

TBW.

## B. Multi-State Examination of TBW

6. In or around April of 2008, TBW was the subject of a multi-state examination that was jointly performed by mortgage regulators from Arizona, the District of Columbia, Florida, Georgia, Idaho, Illinois, Louisiana, Maryland, Massachusetts, Mississippi, New Jersey, North Carolina, Pennsylvania, and Vermont (the "State Mortgage Regulators"). As part of this exam, OCOB examiners reviewed a sample of non-traditional loans originated by TBW in 2006 to North Carolina borrowers.

7. Thereafter, a multi-state report of examination was issued, alleging that TBW had failed to comply with applicable laws, regulations, and rules governing the mortgage business.

8. On 19 June 2009, TBW entered into a settlement agreement with the State Mortgage Regulators. A copy of this "Multi-State Settlement Agreement" is attached hereto as Exhibit 1 and is incorporated herein by reference.

9. Pursuant to the terms of the Multi-State Settlement Agreement, TBW agreed to retain an independent loan review firm to conduct a review of certain loans originated by TBW for compliance with state and federal lending laws.

10. Thereafter, on 23 June 2009, the Commissioner entered a Consent Order [OCOB Docket No. 09:074:MBB] accepting the terms of the Multi-State Settlement Agreement and ordering TBW to comply

with the express undertakings contained therein.

### C. Failure to Cooperate with State-Specific Examination Efforts and Requests

11. On 27 August 2008, the OCOB contacted TBW in writing via certified mail and indicated the OCOB's intent to conduct an examination of the company, pursuant to its authority under G.S. § 53-243.12(i). This "Exam Notification Letter" is attached hereto as Exhibit 2 and is incorporated herein by reference.

12. The Exam Notification Letter requested that TBW provide the OCOB with certain reports and data regarding loans made, brokered, and/or serviced by TBW. The data was requested to be provided by 30 September 2008.

13. TBW either failed to provide or provided in a non-compatible format the reports and data requested by the OCOB on or before 30 September 2008.

14. The OCOB granted TBW an extension until 10 October 2008 to provide the requested data and reports.

15. On 3 October 2008, TBW confirmed the 10 October 2008 deadline.

16. On 9 October 2008, TBW submitted electronic data to the OCOB; however, such data was corrupted and not accessible by the OCOB.

17. On 15 October 2008, the OCOB requested that TBW resubmit the requested loan data.

18. On 30 October 2008, TBW informed the OCOB in writing

that uncorrupted, compatible data would be provided on or before 7 November 2008.

19. On 16 January 2009 and 5 February 2009, TBW submitted data that was in a non-compatible format.

20. On 12 March 2009, the OCOB again contacted TBW in writing requesting the examination data in an uncorrupted, compatible format. A copy of the "March 2009 Demand Letter" is attached hereto as Exhibit 3 and is incorporated herein by reference.

21. The March 2009 Demand Letter requested that TBW provide the examination related data on or before 20 March 2009.

22. TBW failed to provide the requested data on or before 20 March 2009.

23. On or about 2 April 2009, TBW provided a set of loan data to the OCOB.

24. A review of the data provided by TBW indicated that TBW had violated various state and federal lending laws in the making and/or brokering of a significant number of loans which were presently in default. These violations included the imposition and collection of usurious fees and charges, the making of prohibited N.C. High Cost Home Loans, and the failure to provide complete and accurate federal Truth-in-Lending disclosures.

25. On 9 April 2009, the North Carolina Department of Justice ("NCDOJ") on behalf of the OCOB sent TBW a demand letter,

requesting that TBW voluntarily stay foreclosure proceedings. A copy of the "April 2009 Demand Letter" is attached hereto as Exhibit 4 and is incorporated herein by reference.

26.   On 17 April 2009, TBW agreed to voluntarily stay the referenced foreclosures pending the resolution of the OCOB examination. A copy of TBW's 17 April 2009 letter is attached hereto as Exhibit 5 and is incorporated herein by reference.

27.   Thereafter, TBW suggested that the number of violations identified from their 2 April 2009 data submission might have been the result of TBW having submitting inaccurate information to the OCOB.

28.   The OCOB conducted a review of sixty (60) of the loan data files submitted by TBW and found that only two (2), approximately three percent (3%), accurately reflected the terms of the referenced loan documents.

29.   On 24 April 2009, NCDOJ contacted TBW and offered to provide the company with an additional ninety (90) days to provide accurate, uncorrupted, and compliant loan data. In the interim, TBW was requested to stay all foreclosure proceedings on North Carolina real property. A copy of the "24 April 2009 Demand Letter" is attached hereto as Exhibit 6 and is incorporated herein by reference.

30.   The OCOB agreed to allow TBW to proceed with foreclosure proceedings on a case-by-case basis. Pursuant to the

terms of the 24 April 2009 Demand Letter, TBW was to retain an OCOB approved, independent third-party firm to audit and review TBW's loans for compliance with applicable state and federal laws. In the event that the third-party firm first certified to the OCOB in writing that a particular loan was free of legal defects, TBW would be allowed to proceed with foreclosure against such a loan pursuant to North Carolina law.

31. On 8 May 2009, TBW agreed to the terms of the 24 April 2009 Demand Letter. A copy of the "8 May 2009 Agreement" is attached hereto as Exhibit 7 and is incorporated herein by reference.

32. Thereafter, on 10 June 2009, 10 July 2009, and 21 July 2009, the OCOB contacted TBW to ensure that it would provide the requested loan data on or before 6 August 2009. A copy of the OCOB's letter dated 21 July 2009 is attached hereto as Exhibit 8 and is incorporated herein by reference.

33. TBW confirmed that it would provide complete, accurate, and uncorrupted loan data on or before 6 August 2009.

34. On 6 August 2009, TBW informed that OCOB that it would not provide the loan data originally requested on 27 August 2008.

35. Without such data, the OCOB has been unable to exercise its supervisory and regulatory functions with regard to TBW.

### D. Breach of Settlement Agreements

36. In addition to refusing to provide the loan data as previously agreed, TBW failed to honor its agreement to stay foreclosure proceedings.

37. On or about 5 June 2009, TBW conducted a foreclosure proceeding against a borrower. Upon information and belief, prior to this hearing, no third-party review of the underlying loan file had been conducted and no certification had been provided to the OCOB pursuant to the parties' 8 May 2009 agreement.

38. On 8 June 2009, the OCOB contacted TBW to discuss TBW's breach of the 8 May 2009 agreement. During this discussion the terms of the 8 May 2009 agreement were reaffirmed by the parties.

39. Thereafter, the OCOB learned of at least thirty-six (36) foreclosures being instituted by TBW on North Carolina loans. In an additional seven (7) cases, TBW had obtained foreclosure orders against certain North Carolina homeowners. Upon information and belief, no third-party review of the underlying loan files had been conducted and no certifications had been provided to the OCOB.

40. On 06 July 2009, this matter was brought to TBW's attention. A copy of the OCOB's 06 July 2009 Letter is attached hereto as Exhibit 9 and is incorporated herein by reference.

41. TBW agreed to have the third-party firm conduct a legal

review of the seven (7) loans against which a foreclosure order had been obtained in violation of the 8 May 2009 Agreement, and agreed to provide a copy of the firm's findings to the OCOB.

42.   To date, the OCOB has not received reports on at least (4) four of these foreclosed loans.

43.   Based upon a telephone call on 6 August 2009 between the State Mortgage Regulators and TBW, and based upon TBW's past pattern of non-compliance with OCOB examination efforts, the OCOB believe that TBW may not comply with the terms of the Multi-State Settlement Agreement, including the retention of an independent loan review firm to audit TBW's loans for compliance with applicable state and federal lending laws.

E.   **Termination of Origination Activity**

44.   On 4 August 2009, the Department of Housing and Urban Development ("HUD") issued a Notice of Administrative Action ("HUD Notice"), suspending TBW's authorization to make HUD and Federal Housing Administration ("FHA") loans.  A copy of the HUD Notice is attached hereto as Exhibit 10 and is incorporated herein by reference.

45.   Furthermore, HUD issued a press release ("HUD Press Release"), stating that the Government National Mortgage Association ("Ginnie Mae") was defaulting and terminating TBW as an issuer in Ginnie Mae's mortgage back security program and would be terminating TBW's ability to continue servicing Ginnie

-13-

Mae securities. A copy of the HUD Press Release is attached hereto as Exhibit 11 and is incorporated herein by reference.

46. The HUD Notice and Press Release indicated that these actions had been taken, in part, as a result of TBW's failure to submit required reports.

47. HUD also issued Notices of Proposed Debarment against Bowman and Allen. Copies of these Notices of Debarment are attached hereto as Exhibit 12 and are incorporated herein by reference.

48. On 04 August 2009, the Federal Home Loan Mortgage Corporation ("Freddie Mac") terminated TBW's ability to sell and/or service Freddie Mac loans. A copy of the Freddie Mac Termination Letter is attached hereto as Exhibit 13 and is incorporated herein by reference.

49. On 05 August 2009, TBW issued a press release (the "TBW Press Release"). In it, TBW indicated that it was ceasing all mortgage loan origination operations effective immediately and that it would not close or fund mortgage loans in its pipeline. A copy of the TBW Press Release is attached hereto as Exhibit 14 and is incorporated herein by reference. TBW failed to provide the OCOB with any notice of the cessation of its operations prior to issuance of this press release.

50. Upon information and belief, TBW has indicated that it will not honor certain loan commitments made to one or more North

Carolina borrowers.

51. As of this date, TBW's website [www.taylorbean.com]
remains operational and does not alert borrowers to the fact that
TBW has ceased its loan origination activity.

52. Upon information and belief, certain state regulatory
authorities have issued orders enjoining TBW from engaging in
certain aspects of the mortgage business, including but not
limited to:

> a.  The New Jersey Department of Banking and
>     Insurance;
>
> b.  The Massachusetts Commissioner of Banks; and
>
> c.  The Commonwealth of Pennsylvania, Department of
>     Banking.

A copy of these state orders are attached hereto as Exhibit
15 and are incorporated herein by reference.

## V. CLAIMS FOR RELIEF

### COUNT ONE
### Failure to Cooperate with Examination Efforts
### Prior to 31 July 2009

53. Paragraphs 1 through 52 are realleged and incorporated
herein by reference.

54. Pursuant to G.S. § 53-243.12(i):

> The Commissioner may from time to time,
> at the expense of the Commissioner's office,
> conduct routine examinations of the books and
> records of any licensee in order to determine
> the compliance with this Article and rules
> adopted pursuant to the authority of G.S. §53-
> 243.04.

55. TBW's repeated failure to respond to the OCOB's requests for loan data constitutes a violation of the MLA and has prevented the OCOB from effectively exercising its supervisory and regulatory functions with regard to TBW's mortgage lending activities.

56. Pursuant to G.S. § 53-243.12(c), the Commissioner may impose civil penalties of up to ten thousand dollars ($10,000) for each violation of the MLA.

## COUNT TWO
### Failure to Cooperate with Examination Efforts After 31 July 2009

57. Paragraphs 1 through 56 are realleged and incorporated herein by reference.

58. Pursuant to G.S. § 53-244.115(b) – 244.115(c):

> For purposes of... examination, the Commissioner may review, investigate, or examine any licensee, individual, or person subject to this Article as often as necessary in order to carry out the purposes of this Article. The Commissioner may... order the attendance of and examine under oath all persons whose testimony may be required about the loans or the business or subject matter of any examination or investigation and may direct, subpoena, or order the person to produce books, accounts, records, files, and any other documents the Commissioner deems relevant to the inquiry. The reasonable cost of the investigation or examination shall be charged against the licensee, individual, or person subject to this Article... Each licensee, individual, or person subject to this Article shall make available to the Commissioner upon request the books and records relating to the operations of the licensee, individual, or person.

59. Furthermore, pursuant to G.S. § 53-244.115(d):

> Each licensee, individual, or person subject to
> this Article shall make or compile such reports or
> prepare other information as may be directed or
> requested by the Commissioner.

60. The directive to produce the requested loan data has been ongoing in nature, and TBW's continued failure to provide the requested loan data constitutes a violation of NCSAFE and a refusal to comply with a directive of the Commissioner. Furthermore, this ongoing refusal to submit to the OCOB's examination authority continues to prevent the OCOB from effectively exercising its supervisory and regulatory functions with regard to TBW's mortgage lending activities.

61. Pursuant to G.S. § 53-244.116(a)(2), the Commissioner may impose civil penalties of up to twenty-five thousand dollars ($25,000) for each violation of NCSAFE.

62. Pursuant to G.S. § 53-244.116(a)(3), the Commissioner may impose civil penalties of up to twenty-five thousand dollars ($25,000) for any failure to comply with a directive of the Commissioner.

### COUNT THREE
### Failure to Honor Loan Commitments
### After 31 July 2009

63. Paragraphs 1 through 62 are realleged and incorporated herein by reference.

64. Pursuant to G.S. § 53-244.111(7), it shall be a prohibited act to "fail to disburse funds in accordance with a written commitment or agreement to make a mortgage loan."

-17-

65. TBW has issued a press release, indicating that it will not honor its loan commitments and will not fund loans currently in its pipeline in violation of NCSAFE.

66. In the event that TBW fails to honor its loan commitments and/or fails to fund North Carolina loans currently in its pipeline, the Commissioner may impose civil penalties of up to twenty-five thousand dollars ($25,000) for each commitment which TBW fails to honor, pursuant to G.S. § 53-244.116(a)(2).

## COUNT FOUR
### Failure to Comply with an Order of the Commissioner After 31 July 2009

67. Paragraphs 1 through 66 are realleged and incorporated herein by reference

68. Upon information and belief, OCOB does not believe that TBW will comply with the Commissioner's 23 June 2009 Consent Order.

69. In the event that TBW fails to comply with the Commissioner's 23 June 2009 Consent Order, the Commissioner may impose civil penalties of up to twenty-five thousand dollars ($25,000) for any such failure to comply pursuant to G.S. § 53-244.116(a)(3).

## COUNT FIVE
### Derivative and Vicarious Liability Prior to 31 July 2009

70. Paragraphs 1 through 69 are re-alleged and incorporated herein by reference.

-18-

71. Pursuant to G.S. § 53-243.12(c), partners, officers, directors, or persons occupying a similar status or performing similar functions for a licensee may be found to be individually liable for the licensee's violations of the MLA.

72. Bowman, Allen, and Farkas, in their respective capacities as TBW's president and qualifying individual, TBW's chief executive officer, and/or TBW's Chairman and majority owner, are jointly and severally liable for violations committed by TBW and the employees and agents of TBW.

## COUNT SIX
### Derivative and Vicarious Liability
### After 31 July 2009

73. Paragraphs 1 through 72 are re-alleged and incorporated herein by reference.

74. Pursuant to G.S. § 53-244.116(a), partners, officers, directors, or persons occupying a similar status or performing similar functions for a licensee may be found to be individually liable for the licensee's violations of NCSAFE.

75. Bowman, Allen, and Farkas, in their respective capacities as TBW's president and qualifying individual, TBW's chief executive officer, and/or TBW's Chairman and majority owner, are jointly and severally liable for violations committed by TBW and the employees and agents of TBW.

## COUNT SEVEN
### Revocation of Licensure

76. Paragraphs 1 through 75 are realleged and incorporated by reference herein.

77. G.S. § 53-244.114(a) provides, in pertinent part, that the Commissioner may revoke the license of a licensee if the Commissioner finds:

(1) That the order is in the public interest; and

(2) That any of the following circumstances apply to the applicant, licensee, or any partner, member, manager, officer, director, loan officer, limited loan officer, qualifying individual, or any person occupying a similar status or performing similar functions or any person directly or indirectly controlling the applicant or licensee. The person:

. . .

b. Has violated or failed to comply with any provision of this Article, rule adopted by the Commissioner, or order of the Commissioner;

c. Is permanently or temporarily enjoined by any court of competent jurisdiction from engaging in or continuing any conduct or practice involving any aspect of the mortgage business;

. . .

f. Fails at any time to meet the requirements of G.S. 53-244.060 . . .;

. . .

j. Has failed to respond to and cooperate fully with notices from the Commissioner or the Commissioner's designee relating to the scheduling and conducting of an examination or investigation under this Article.

78. Based on the allegations hereinabove, the following circumstances apply to TBW: TBW has failed to comply with several provisions of NCSAFE and MLA; TBW has been permanently or temporarily enjoined by courts of competent jurisdiction from engaging in or continuing any conduct or practice involving aspects of the mortgage business; TBW has failed to meet the character and fitness requirements of G.S. 53-244.060; TBW has failed to adequately respond to inquiries from the Commissioner or the Commissioner's designee regarding complaints filed against TBW which allege or appear to involve violations of NCSAFE, MLA, and other laws or rules affecting the mortgage lending business; and TBW has failed to respond to and cooperate fully with notices from the Commissioner or the Commissioner's designee relating to the scheduling and conducting of an examination or investigation under NCSAFE and MLA.

79. Based on the foregoing, it is in the public interest that the Commissioner revoke the license of TBW.

## COUNT EIGHT
### Denial or Refusal to Issue License

80. Paragraphs 1 through 79 are realleged and incorporated by reference herein.

81. G.S. § 53-244.114(a) provides, in pertinent part, that the Commissioner may deny, or refuse to issue, a license to a person if the Commissioner finds:

(1) That the order is in the public interest; and

-21-

(2) That any of the following circumstances apply to the applicant, licensee, or any partner, member, manager, officer, director, loan officer, limited loan officer, qualifying individual, or any person occupying a similar status or performing similar functions or any person directly or indirectly controlling the applicant or licensee. The person:

    f.    Fails at any time to meet the requirements of G.S. 53-244.060 . . .;

    g.    Controls or has controlled any mortgage broker, mortgage lender, or mortgage servicer who has been subject to an order or injunction described in sub-subdivision c. . . . of this subdivision;

    . . .

    h.    Has been the qualifying individual, branch manager, or mortgage loan originator of a licensee who had knowledge of or reasonably should have had knowledge of, or participated in, any activity that resulted in the entry of an order under this Article suspending or withdrawing the license of a licensee . . . ..

82. At all relevant times alleged herein, Bowman, Allen, and Farkas, in their respective capacities as TBW's president and qualifying individual, TBW's chief executive officer, and/or TBW's Chairman and majority owner, individually and collectively control and controlled TBW, a mortgage banker and mortgage lender subject to an order or injunction described in G.S. § 52-244.114(a)(2)c.

83. At all relevant times alleged herein, Bowman, Allen, and Farkas, in their respective capacities as TBW's president and qualifying individual, TBW's chief executive officer, and/or TBW's Chairman and majority owner, individually and collectively

-22-

had knowledge of or reasonably should have had knowledge of, or participated in, the activities alleged hereinabove.

84. Based on their control and direction of TBW during the activities alleged herein, and their direct knowledge of TBW's activities, Bowman, Allen, and Farkas have failed to meet the character and fitness requirements of G.S. 53-244.060.

85. Based on the foregoing, it is in the public interest that the Commissioner deny, or refuse to issue, any license hereafter requested by Bowman, Allen, and Farkas.

## COUNT NINE
### Motion for Cease and Desist Order

86. Paragraphs 1 through 85 are realleged and incorporated by reference herein.

87. G.S. § 53-244.114(b)(1) provides:

> (b) In the event the Commissioner has reason to believe that a licensee, individual, or person subject to this Article may have violated or failed to comply with any provision of this Article, the Commissioner may:
>
> (1) Summarily order the licensee, individual, or person to cease and desist from any harmful activities or violations of this Article;

88. Based on the matters alleged hereinabove, it is in the public interest to summarily order TBW to cease and desist from originating any new loans; from entering into contracts to service loans not currently in TBW's servicing portfolio; and/or from commencing or proceeding with foreclosures against any loans

-23-

until such time as OCOB has audited and reviewed the loans and certified that the loans comply with applicable state and federal laws.

## V. PRAYER FOR RELIEF

Based upon the foregoing allegations, the Petitioner respectfully requests that the Commissioner:

1. Accept this verified Notice of Hearing as an affidavit in support of Petitioner's claims for relief and motion for a summary cease and desist order in this proceeding;

2. Issue an order revoking or suspending TBW's North Carolina mortgage lender license pursuant to G.S. § 53-244.114;

3. Deny or refuse to issue any license hereafter submitted to the OCOB by Bowman, Allen, and Farkas;

4. Impose civil money penalties upon TBW for each violation of the MLA pursuant to G.S. § 53-243.12(c);

5. Impose civil money penalties upon Bowman, Allen, and Farkas, individually and as owners, officers and/or directors of TBW, for each violation of the MLA committed by themselves, TBW, or the agents and employees of TBW, pursuant to G.S. § 53-243.12(c);

6. Impose civil money penalties upon TBW for each violation of NCSAFE pursuant to G.S. § 53-244.116;

7. Impose civil money penalties upon Bowman, Allen, and Farkas, individually and as owners, officers and/or directors of TBW, for each violation of NCSAFE committed by themselves, TBW, or the agents and employees of TBW, pursuant to G.S. § 53-244.116(a);

8. Impose civil money penalties upon TBW for each failure to comply with a directive of the

-24-

Commissioner pursuant to G.S. § 53-244.116;

9.  Impose civil money penalties upon Bowman, Allen, and Farkas, individually and as owners, officers and/or directors of TBW, for TBW's failure to comply with a directive of the Commissioner pursuant to G.S. § 53-244.116(a);

10. Summarily order TBW to cease and desist from originating any new loans; from entering into contracts to service loans not currently in TBW's servicing portfolio; and/or from commencing or proceeding with foreclosure against any loans previously originated by TBW until such time as OCOB has audited and reviewed the loans and certified that the loans comply with applicable state and federal laws; and

11. Order and award such further relief as the Commissioner deems appropriate.

Issued this 7th day of August, 2009.

Office of the Commissioner of Banks

Mark E. Pearce
Chief Deputy Commissioner of Banks

and

Charlie J. Fields, Jr., Director
Non-Depository Entities Division

-25-

Of Counsel:

Seth P. Rosebrock
Philip K. Woods
Assistant Attorneys General

and

L. McNeil Chestnut
Special Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602-0629
Phone: (919) 716-6800
Fax: (919) 716-6755

NORTH CAROLINA        )
                                   )            **VERIFICATION**

WAKE COUNTY           )


     Mark E. Pearce, being first duly sworn, deposes and says
that he is the Chief Deputy Commissioner of Banks and has the
authority to execute this verification on the Office of the
Commissioner of Bank's behalf; that he has read the foregoing
Notice of Hearing and Mandatory Pre-Hearing Conference and Motion
for Cease and Desist Order; that the same is true of his own
knowledge, except as to those matters stated on information and
belief, and as to those matters, he believes them to be true.

     This the 7th day of August, 2009.



                                 Mark E. Pearce


Sworn to and subscribed before me by Mark E. Pearce this the
7th day of August, 2009.

_____
Notary Public

My commission expires: 12/16/09

OFFICIAL SEAL
Notary Public, North Carolina
County of Wake
HA NGUYEN

-27-

## CERTIFICATE OF SERVICE

THE UNDERSIGNED hereby certifies that he has this day served a copy of the foregoing Verified Notice of Hearing and Mandatory Pre-Hearing Conference and Motion for Cease and Desist Order by placing a copy of the same in the United States Post Office at Raleigh, North Carolina, certified mail, return receipt requested, postage prepaid and addressed to:

Raymond E. Bowman, President
Taylor, Bean, & Whitaker Mortgage Corp.

Paul R. Allen
Individually and as CEO of
Taylor, Bean, & Whitaker Mortgage Corp.

Lee Farkas
Individually and as Chairman of
Taylor, Bean, & Whitaker Mortgage Corp.

This the 8th day of August, 2009.

Seth P. Rosebrock
Assistant Attorney General
N.C. Dept. of Justice
PO Box 629
Raleigh, NC 27602-0629
Phone:    919.716.6800
Fax:      919.716.0584