# EXHIBIT B

# FLORIDA SECURED TRANSACTION REGISTRY

CSC
POLLYE
PICK-UP

UCC number 200900729749 has been filed with the Florida Secured Transaction Registry. The expiration date for the filing is 02/26/2012.
Complete information related to the UCC filing is available on the internet at www.FloridaUCC.com. It is your responsibility to review all information associated with this filing to ensure information has been recorded correctly.

**NOTICE OF FEE INCREASE: Pursuant to Section 24, Chapter 2009-72, Laws of Florida, beginning on July 1, 2009, the fee for the first page of an initial financing statement (UCC1) will be increased from $25.00 to $35.00. The text of Section 24, Chapter 2009-72, Laws of Florida can be viewed online at: http://laws.flrules.org/files/Ch_2009-072.pdf. The text related to the fee increase is on page 18.**

Please Note: The latest versions of the UCC forms approved by the State of Florida are available for download from : www.FloridaUCC.com

FLORIDA SECURED TRANSACTION REGISTRY

# FILED
2009 Jun 19 01:44 PM
**** 200900729749 ****
***D * 2001000259-24.00***24.00***

Filed with: Florida Secured Transaction Registry

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| B. SEND ACKNOWLEDGMENT TO: (Name and Address) |

Return to: CSC
1201 Hays Street
Tallahassee, FL 32301

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
File No. 20020046212X filed on February 26, 2002

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☒ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☒ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION
6a. ORGANIZATION'S NAME: **Colonial Bank, individually and as Agent**

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME: **Sovereign Bank, as Agent (and any successor Agent thereto)**

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

7c. MAILING ADDRESS: 75 State Street | CITY: Boston | STATE: MA | POSTAL CODE: 02109 | COUNTRY: USA

7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION: federal savings bank | 7f. JURISDICTION OF ORGANIZATION: USA | 7g. ORGANIZATIONAL ID #, if any: ☒ NONE

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

The "Collateral" as defined in that certain Sixth Amended and Restated Servicing Facility Loan and Security Agreement dated as of May 15, 2009 (as amended, modified, supplemented or restated from time to time), by and among Debtor, Sovereign Bank, as agent for the Lenders party thereto ("Agent") and the Lenders party thereto, as more fully set forth in the amended and restated collateral description attached hereto as Exhibit "A".

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME: **Sovereign Bank, as Agent, and successor Agent to Colonial Bank**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA
Debtor: Taylor Bean & Whitaker Mortgage Corp.      042084-2      180068-0073

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

# EXHIBIT A
## to UCC-3 Financing Statement Amendment

Debtor: Taylor, Bean & Whitaker Mortgage Corp.
315 N.E. 14th Street
Ocala, FL 34470

Secured Party
Agent: Sovereign Bank, as Agent
75 State Street
Boston, MA 02109

---

### Collateral Description

(a) The Collateral shall consist of all right, title and interest of Debtor in, under and to each of the following, wherever located, whether now existing or hereafter arising, and whether now or hereafter owned or acquired by, or accruing or owing to, Debtor:

(i) All Servicing Contracts, all Servicing Rights, all other contracts, and all guaranties, instruments, documentation and chattel paper relating to or arising from such Servicing Rights and Servicing Contracts, and any other right, title and interest of Debtor in, to and under the Mortgage Notes, Mortgages and other security documents evidencing and securing the Mortgage Loans that are the subject of the Servicing Rights;

(ii) All Servicing Receivables and each of the following rights and interests, to the extent same relate to rights to payment under, or claims for monies payable or to become payable under, the Servicing Contracts: all contract rights, accounts, general intangibles, and other rights to payment and claims for monies payable or to become payable under the Servicing Contracts;

(iii) All other rights and remedies under the Servicing Contracts;

(iv) All rights of Debtor to sell or assign its interest therein and all amounts payable to the Debtor thereunder arising out of any termination thereof, and all files, surveys, certificates, correspondence, appraisals, computer programs, tapes, disks, cards, accounting records and other records and data of Debtor related to the Mortgage Loans covered by the Servicing Rights;

(v) All Servicing Sale Agreements, all other contracts, and all guaranties, instruments, documentation and chattel paper, relating to or arising from such Servicing Sale Agreements;

(vi) All Servicing Sale Receivables and each of the following rights and interests, to the extent same relate to rights to payment under, or claims for monies payable or to become payable under, the Servicing Sale Agreements: all contract rights, accounts, general intangibles, and other rights to payment and claims for monies payable or to become payable under the Servicing Contracts;

(vii) All other rights and remedies under the Servicing Sale Agreements;

(viii) The Collateral Payment Account, the Operating Account and all other accounts at any time maintained by Debtor and/or Secured Party in connection with the Servicing Facility and any and all money, cash, deposits and investments at any time held in such accounts, and any and all rights of Debtor to insurance payments made in respect of such accounts;

(ix) All rights of Debtor in, to and under any Hedging Arrangements entered into to protect Debtor against changes in the value of any of the Collateral, including without limitation, all rights to payment arising under such Hedging Arrangements;

(x) All P&I Receivables and each of the following rights and interests, to the extent same relate to rights to payment under, or claims for monies payable or to become payable under, the Mortgage Loans relating to such P&I Receivables: all contract rights, accounts, general intangibles, and other rights to payment and claims for monies payable or to become payable under such Mortgage Loans;

(xi) All T&I Receivables and each of the following rights and interests, to the extent same relate to rights to payment under, or claims for monies payable or to become payable under, the Mortgage Loans relating to such T&I Receivables: all contract rights, accounts, general intangibles, and other rights to payment and claims for monies payable or to become payable under such Mortgage Loans;

(xii) All now existing or hereafter arising accounts, chattel paper, general intangibles (including payment intangibles), instruments and software (as each such term is defined in Article 9) constituting or relating to any of the foregoing Collateral;

(xiii) All claims and causes of actions in which Debtor has or may have against any Person, including but not limited to, tort claims and commercial tort claims, arising out of or relating to any of the foregoing, and the products and proceeds thereof; and

(xiv) All Products and Proceeds of the foregoing Servicing Collateral.

Capitalized terms used herein shall have the meanings given to them in that certain that certain Sixth Amended and Restated Servicing Facility Loan and Security Agreement dated as of May 15, 2009 (together with any further modifications, amendments, supplements or restatements thereof, the "Servicing Facility Agreement"), by and among Debtor, Secured Party and the Lenders party thereto, including without limitation, the following:

"Approved Investor" shall mean FHLMC, GNMA or any other Person approved by Secured Party and, for whom Debtor is servicing Mortgage Loans under a Servicing Contract.

"Approved Purchaser" shall mean any Person approved by Secured Party to whom Debtor is selling (or has agreed to sell) Servicing Rights under a Servicing Sale Agreement.

"Article 9" shall mean Article 9 - Secured Transactions of the Uniform Commercial Code as adopted and applicable in the State of Florida from time to time.

"Hedging Arrangement" shall mean any agreement or other arrangement (including without limitation, an interest rate swap agreement, an interest cap agreement, and a forward sale agreement) entered into by Debtor to protect itself against changes in interest rates or the market value of assets.

"Lenders" shall mean each of the lenders from time to time party to the Servicing Facility Agreement.

"Lien" shall mean any security interest, mortgage, pledge, lien, claim on property, charge or encumbrance (including any conditional sale or other title retention agreement), any lease in the nature thereof, and the filing of or agreement to give any financing statement under the Uniform Commercial Code of any jurisdiction.

"Mortgage" shall mean a mortgage, deed of trust, deed to secure debt or other security device which is customary and serves the same function as a mortgage under law and practice in the jurisdiction in which the real property subject to the mortgage is located to create a valid and enforceable lien on the fee simple estate of a Residential Dwelling. For all Mortgage Loans secured by real property located in states in which it is customary to use deeds of trust or security deeds as the security device, a deed of trust or security deed, as the case may be, shall be used as the security device.

"Mortgage-Backed Security" shall mean any security (including a participation certificate) issued by FHLMC, GNMA or any other Person that represents an interest in a pool of Mortgage Loans.

"Mortgage Loan" shall mean a loan evidenced by a Mortgage Note and secured by a Mortgage constituting a first or second lien on a completed Residential Dwelling.

"Mortgage Note" shall mean, at any time, a negotiable promissory note or other evidence of indebtedness executed by a competent party which is secured by a Mortgage and conforms to such additional underwriting standards as may be in existence in the secondary market at such time as determined by FNMA, FHLMC, GNMA, FHA or VA, as applicable (or, but for the original unpaid principal amount thereof, would so conform).

"P&I Receivables" shall mean accounts arising from Debtor's right to be reimbursed for the amount that Debtor has advanced on behalf of Obligors as servicer of Mortgage Loans included in the Pledged Servicing Portfolio in respect of due but uncollected principal and interest payments in connection with the servicing of such Mortgage Loans, which advanced amount is fully reimbursable by the Obligors under such Mortgage Loans or any other Person (including any Agency).

"Person" shall mean any corporation, natural person, firm, joint venture, partnership, limited liability company, trust, unincorporated organization, government or any political subdivision, department, agency or instrumentality of any government.

"Pledged Servicing Portfolio" shall mean the Servicing Portfolio of outstanding Mortgage Loans that are owned by an Approved Investor or are included in pools of Mortgage Loans with respect to which FHLMC or GNMA has issued a Mortgage-Backed Security.

"Proceeds" shall have the meaning given to such term in Article 9.

"Products" shall have the meaning given such term in Article 9.

"Residential Dwelling" shall mean any one of the following that is completed and owner occupied: (a) a detached, one-family dwelling, (b) a detached two-to-four family dwelling, (c) a one-family dwelling in a condominium project, or (d) a detached one-family dwelling in a planned unit development, none of which (x) is a co-operative or a mobile or manufactured home unless, in the case of a mobile or manufactured home, it is affixed to the real property and is encumbered by a first priority mortgage (or deed of trust) both on such real property and on such mobile or manufactured home that has priority over any other Lien on such mobile or manufactured home, whether or not arising under applicable real property law; (y) does not constitute real property under applicable state law, or (z) contains any commercial operations (other than in the nature of an in-home office).

"Servicing Contract" shall mean all contracts and agreements between Debtor and an Approved Investor, whether now existing or hereafter entered into, for the servicing by Debtor of Mortgage Loans owned by such Approved Investor, as modified, amended, supplemented or restated from time to time, but excluding any Servicing Contract with respect to Mortgage Loans or pools containing Mortgage Loans covered by or associated with Debtor's FHLMC Seller/Servicer number 142080.

"Servicing Facility" shall have the meaning assigned to such term in the Servicing Facility Agreement.

"Servicing Portfolio" shall mean, at any time, the portfolio of outstanding Mortgage Loans with respect to which the Debtor has direct Servicing Rights.

"Servicing Receivables" shall mean all amounts at any time payable to Debtor under any Servicing Contract (other than (i) Servicing Receivables which are included in the collateral under the Repurchase Facility Security Agreement, and which do not constitute Servicing Receivables under Servicing Contracts for which Servicing Rights Advances have been made in respect of such Servicing Contract's related Servicing Rights and (ii) Servicing Receivables with respect to Mortgage Loans or pools containing Mortgage Loans covered by or associated with Debtor's FHLMC Seller/Servicer number 142080), including without limitation, any proceeds arising from the sale of all or any part of Debtor's right, title and interest in such Servicing Contract.

"Servicing Rights" shall mean all Mortgage Loan servicing rights of Debtor (other than (i) the servicing rights in which Colonial Bank has a first priority ownership interest pursuant to the Restated Repurchase Agreement or the Repurchase Facility Security Agreement, in each case, so long as, and to the extent that, such Servicing Rights are not related to Servicing Rights Advances and, and (ii) the servicing rights with respect to Mortgage Loans or pools containing Mortgage Loans covered by or associated with Debtor's FHLMC

Seller/Servicer number 142080) and all interests of Debtor in Servicing Contracts, including without limitation, the right to (a) collect all payments due under Mortgage Loans which are the subject of any such Servicing Contract, (b) retain servicing compensation, termination fees and other payments in connection with its servicing of such Mortgage Loans, (c) exercise the rights and remedies of "mortgagee" generally under such Mortgage Loans and (d) assign or terminate any such Servicing Contracts or servicing rights.

"Servicing Sale Agreement" shall mean all contracts and agreements between Debtor and an Approved Purchaser, whether now existing or hereafter entered into, for the sale by Debtor, and the purchase by such Approved Purchaser, of any of the Servicing Rights, as modified, amended, supplemented or restated from time to time.

"Servicing Sale Receivables" shall mean all amounts at any time payable to Debtor under any Servicing Sale Agreement including any proceeds arising from the sale of all or any part of Debtor's right, title and interest in the Servicing Rights.

"T&I Receivables" shall mean accounts arising from Debtor's right to be reimbursed for the amount that Debtor has advanced on behalf of Obligors as servicer of Mortgage Loans included in the Pledged Servicing Portfolio in respect of tax and insurance payments in connection with the servicing of such Mortgage Loans, which advanced amount is fully reimbursable by the Obligors under such Mortgage Loans or any other Person (including any Agency).

The security interest referred to in this financing statement is subject and subordinate in each and every respect (a) to all rights, powers and prerogatives of FHLMC under and in connection with Purchase Documents, as that term is defined in the FHLMC Sellers' & Servicers' Guide, which rights included, without limitation, the right of FHLMC to disqualify the Debtor named herein as an approved FHLMC seller/servicer, with or without cause, and the right to terminate the unitary, indivisible master servicing contract and to transfer and sell all or any portion of said servicing contract, as provided in the Purchase Documents; and (b) to all claims of FHLMC arising out of any and all defaults and outstanding obligations of the Debtor to FHLMC.

Notwithstanding anything to the contrary contained herein:

(1) The property subject to the security interest reflected in this instrument includes all of the right, title and interest of the Debtor in certain mortgages ("Pooled Mortgages") pooled under the mortgage-backed securities program of the GNMA, pursuant to section 306(g) of the National Housing Act, 12 U.S.C.§1721(g);

(2) To the extent that the security interest reflected in this instrument relates in any way to the Pooled Mortgages, such security interest is subject and subordinate to all rights, powers and prerogatives of GNMA, whether now existing or hereafter arising, under and in connection with: (i) 12 U.S.C.§1721(g) and any implementing regulations; (ii) the terms and conditions of that certain Acknowledgment Agreement, with respect to the Security Interest, by and between the Debtor and the Secured Party; (iii) applicable Guaranty Agreements and contractual agreements between GNMA and the Debtor; and (iv) applicable versions of the GNMA Mortgage-Backed Securities Guide, Handbook 5500.1, the GNMA Mortgage-Backed Securities Guide, Handbook 5500.2, the GNMA Mortgage-Backed Securities Guide, Handbook 5500.3, and other applicable guides, as each of such versions is amended from time to time; and

(3) Such rights, powers and prerogatives of GNMA include, but are not limited to, GNMA's right, by issuing a letter of extinguishment to Debtor, to effect and complete the extinguishment of all redemption, equitable, legal or other right, title or interest of the Debtor in the Pooled Mortgages, in which event the security interest as it relates in any way to the Pooled Mortgages shall instantly and automatically be extinguished as well.

# FLORIDA SECURED TRANSACTION REGISTRY

CSC
POLLYE
PICK-UP

UCC number 200900729757 has been filed with the Florida Secured Transaction Registry. The expiration date for the filing is 01/05/2012.
Complete information related to the UCC filing is available on the internet at www.FloridaUCC.com. It is your responsibility to review all information associated with this filing to ensure information has been recorded correctly.

**NOTICE OF FEE INCREASE: Pursuant to Section 24, Chapter 2009-72, Laws of Florida, beginning on July 1, 2009, the fee for the first page of an initial financing statement (UCC1) will be increased from $25.00 to $35.00. The text of Section 24, Chapter 2009-72, Laws of Florida can be viewed online at: http://laws.flrules.org/files/Ch_2009-072.pdf. The text related to the fee increase is on page 18.**

Please Note: The latest versions of the UCC forms approved by the State of Florida are available for download from : www.FloridaUCC.com

If you have questions or concerns about this filing, please call FLORIDAUCC, Inc. at
(850) 222-8526.

Filed with: Florida Secured Transaction Registry

FLORIDA SECURED TRANSACTION REGISTRY
FILED
2009 Jun 19 01:44 PM
**** 200900729757 ****
***D * 2001000259-24.00***24.00***

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Return to: CSC
1201 Hays Street
Tallahassee, FL 32301

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
File No. 200704514239 filed on January 5, 2007

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☒ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☒ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION
6a. ORGANIZATION'S NAME
Colonial Bank, individually and as Agent

6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME
Sovereign Bank as Agent (and any successor Agent thereto)

7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7c. MAILING ADDRESS 75 State Street | CITY Boston | STATE MA | POSTAL CODE 02109 | COUNTRY USA

7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION federal savings bank | 7f. JURISDICTION OF ORGANIZATION USA | 7g. ORGANIZATIONAL ID #, if any ☒ NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

. The "Collateral" as defined in that certain Sixth Amended and Restated Servicing Facility Loan and Security Agreement dated as of May 15, 2009 (as amended, modified, supplemented or restated from time to time), by and among Debtor, Sovereign Bank, as agent for the Lenders party thereto ("Agent") and the Lenders party thereto, as more fully set forth in the amended and restated collateral description attached hereto as Exhibit "A".

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME
Sovereign Bank, as Agent, successor Agent to Colonial Bank

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

10. OPTIONAL FILER REFERENCE DATA
Debtor: Taylor Bean & Whitaker Mortgage Corp.     042084-1     180068-0073

FILING OFFICE COPY – UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

# EXHIBIT A
## to UCC-3 Financing Statement Amendment

Debtor:                Taylor, Bean & Whitaker Mortgage Corp.
315 N.E. 14th Street
Ocala, FL 34470

Secured Party
Agent:                  Sovereign Bank, as Agent
75 State Street
Boston, MA 02109

### Collateral Description

(a) The Collateral shall consist of all right, title and interest of Debtor in, under and to each of the following, wherever located, whether now existing or hereafter arising, and whether now or hereafter owned or acquired by, or accruing or owing to, Debtor:

    (i) All Servicing Contracts, all Servicing Rights, all other contracts, and all guaranties, instruments, documentation and chattel paper relating to or arising from such Servicing Rights and Servicing Contracts, and any other right, title and interest of Debtor in, to and under the Mortgage Notes, Mortgages and other security documents evidencing and securing the Mortgage Loans that are the subject of the Servicing Rights;

    (ii) All Servicing Receivables and each of the following rights and interests, to the extent same relate to rights to payment under, or claims for monies payable or to become payable under, the Servicing Contracts: all contract rights, accounts, general intangibles, and other rights to payment and claims for monies payable or to become payable under the Servicing Contracts;

    (iii) All other rights and remedies under the Servicing Contracts;

    (iv) All rights of Debtor to sell or assign its interest therein and all amounts payable to the Debtor thereunder arising out of any termination thereof, and all files, surveys, certificates, correspondence, appraisals, computer programs, tapes, disks, cards, accounting records and other records and data of Debtor related to the Mortgage Loans covered by the Servicing Rights;

    (v) All Servicing Sale Agreements, all other contracts, and all guaranties, instruments, documentation and chattel paper, relating to or arising from such Servicing Sale Agreements;

    (vi) All Servicing Sale Receivables and each of the following rights and interests, to the extent same relate to rights to payment under, or claims for monies payable or to become payable under, the Servicing Sale Agreements: all contract rights, accounts, general intangibles, and other rights to payment and claims for monies payable or to become payable under the Servicing Contracts;

    (vii) All other rights and remedies under the Servicing Sale Agreements;

    (viii) The Collateral Payment Account, the Operating Account and all other accounts at any time maintained by Debtor and/or Secured Party in connection with the Servicing Facility and any and all money, cash, deposits and investments at any time held in such accounts, and any and all rights of Debtor to insurance payments made in respect of such accounts;

    (ix) All rights of Debtor in, to and under any Hedging Arrangements entered into to protect Debtor against changes in the value of any of the Collateral, including without limitation, all rights to payment arising under such Hedging Arrangements;

(x) All P&I Receivables and each of the following rights and interests, to the extent same relate to rights to payment under, or claims for monies payable or to become payable under, the Mortgage Loans relating to such P&I Receivables: all contract rights, accounts, general intangibles, and other rights to payment and claims for monies payable or to become payable under such Mortgage Loans;

(xi) All T&I Receivables and each of the following rights and interests, to the extent same relate to rights to payment under, or claims for monies payable or to become payable under, the Mortgage Loans relating to such T&I Receivables: all contract rights, accounts, general intangibles, and other rights to payment and claims for monies payable or to become payable under such Mortgage Loans;

(xii) All now existing or hereafter arising accounts, chattel paper, general intangibles (including payment intangibles), instruments and software (as each such term is defined in Article 9) constituting or relating to any of the foregoing Collateral;

(xiii) All claims and causes of actions in which Debtor has or may have against any Person, including but not limited to, tort claims and commercial tort claims, arising out of or relating to any of the foregoing, and the products and proceeds thereof; and

(xiv) All Products and Proceeds of the foregoing Servicing Collateral.

Capitalized terms used herein shall have the meanings given to them in that certain that certain Sixth Amended and Restated Servicing Facility Loan and Security Agreement dated as of May 15, 2009 (together with any further modifications, amendments, supplements or restatements thereof, the "Servicing Facility Agreement"), by and among Debtor, Secured Party and the Lenders party thereto, including without limitation, the following:

"Approved Investor" shall mean FHLMC, GNMA or any other Person approved by Secured Party and, for whom Debtor is servicing Mortgage Loans under a Servicing Contract.

"Approved Purchaser" shall mean any Person approved by Secured Party to whom Debtor is selling (or has agreed to sell) Servicing Rights under a Servicing Sale Agreement.

"Article 9" shall mean Article 9 - Secured Transactions of the Uniform Commercial Code as adopted and applicable in the State of Florida from time to time.

"Hedging Arrangement" shall mean any agreement or other arrangement (including without limitation, an interest rate swap agreement, an interest cap agreement, and a forward sale agreement) entered into by Debtor to protect itself against changes in interest rates or the market value of assets.

"Lenders" shall mean each of the lenders from time to time party to the Servicing Facility Agreement.

"Lien" shall mean any security interest, mortgage, pledge, lien, claim on property, charge or encumbrance (including any conditional sale or other title retention agreement), any lease in the nature thereof, and the filing of or agreement to give any financing statement under the Uniform Commercial Code of any jurisdiction.

"Mortgage" shall mean a mortgage, deed of trust, deed to secure debt or other security device which is customary and serves the same function as a mortgage under law and practice in the jurisdiction in which the real property subject to the mortgage is located to create a valid and enforceable lien on the fee simple estate of a Residential Dwelling. For all Mortgage Loans secured by real property located in states in which it is customary to use deeds of trust or security deeds as the security device, a deed of trust or security deed, as the case may be, shall be used as the security device.

"Mortgage-Backed Security" shall mean any security (including a participation certificate) issued by FHLMC, GNMA or any other Person that represents an interest in a pool of Mortgage Loans.

"Mortgage Loan" shall mean a loan evidenced by a Mortgage Note and secured by a Mortgage constituting a first or second lien on a completed Residential Dwelling.

"Mortgage Note" shall mean, at any time, a negotiable promissory note or other evidence of indebtedness executed by a competent party which is secured by a Mortgage and conforms to such additional underwriting standards as may be in existence in the secondary market at such time as determined by FNMA, FHLMC, GNMA, FHA or VA, as applicable (or, but for the original unpaid principal amount thereof, would so conform).

"P&I Receivables" shall mean accounts arising from Debtor's right to be reimbursed for the amount that Debtor has advanced on behalf of Obligors as servicer of Mortgage Loans included in the Pledged Servicing Portfolio in respect of due but uncollected principal and interest payments in connection with the servicing of such Mortgage Loans, which advanced amount is fully reimbursable by the Obligors under such Mortgage Loans or any other Person (including any Agency).

"Person" shall mean any corporation, natural person, firm, joint venture, partnership, limited liability company, trust, unincorporated organization, government or any political subdivision, department, agency or instrumentality of any government.

"Pledged Servicing Portfolio" shall mean the Servicing Portfolio of outstanding Mortgage Loans that are owned by an Approved Investor or are included in pools of Mortgage Loans with respect to which FHLMC or GNMA has issued a Mortgage-Backed Security.

"Proceeds" shall have the meaning given to such term in Article 9.

"Products" shall have the meaning given such term in Article 9.

"Residential Dwelling" shall mean any one of the following that is completed and owner occupied: (a) a detached, one-family dwelling, (b) a detached two-to-four family dwelling, (c) a one-family dwelling in a condominium project, or (d) a detached one-family dwelling in a planned unit development, none of which (x) is a co-operative or a mobile or manufactured home unless, in the case of a mobile or manufactured home, it is affixed to the real property and is encumbered by a first priority mortgage (or deed of trust) both on such real property and on such mobile or manufactured home that has priority over any other Lien on such mobile or manufactured home, whether or not arising under applicable real property law; (y) does not constitute real property under applicable state law, or (z) contains any commercial operations (other than in the nature of an in-home office).

"Servicing Contract" shall mean all contracts and agreements between Debtor and an Approved Investor, whether now existing or hereafter entered into, for the servicing by Debtor of Mortgage Loans owned by such Approved Investor, as modified, amended, supplemented or restated from time to time, but excluding any Servicing Contract with respect to Mortgage Loans or pools containing Mortgage Loans covered by or associated with Debtor's FHLMC Seller/Servicer number 142080.

"Servicing Facility" shall have the meaning assigned to such term in the Servicing Facility Agreement.

"Servicing Portfolio" shall mean, at any time, the portfolio of outstanding Mortgage Loans with respect to which the Debtor has direct Servicing Rights.

"Servicing Receivables" shall mean all amounts at any time payable to Debtor under any Servicing Contract (other than (i) Servicing Receivables which are included in the collateral under the Repurchase Facility, Security Agreement, and which do not constitute Servicing Receivables under Servicing Contracts for which Servicing Rights Advances have been made in respect of such Servicing Contract's related Servicing Rights and (ii) Servicing Receivables with respect to Mortgage Loans or pools containing Mortgage Loans covered by or associated with Debtor's FHLMC Seller/Servicer number 142080), including without limitation, any proceeds arising from the sale of all or any part of Debtor's right, title and interest in such Servicing Contract.

"Servicing Rights" shall mean all Mortgage Loan servicing rights of Debtor (other than (i) the servicing rights in which Colonial Bank has a first priority ownership interest pursuant to the Restated Repurchase Agreement or the Repurchase Facility Security Agreement, in each case, so long as, and to the extent that, such Servicing Rights are not related to Servicing Rights Advances and, and (ii) the servicing rights with respect to Mortgage Loans or pools containing Mortgage Loans covered by or associated with Debtor's FHLMC

{M2744136;1}

B # 940228 v.2

Seller/Servicer number 142080) and all interests of Debtor in Servicing Contracts, including without limitation, the right to (a) collect all payments due under Mortgage Loans which are the subject of any such Servicing Contract, (b) retain servicing compensation, termination fees and other payments in connection with its servicing of such Mortgage Loans, (c) exercise the rights and remedies of "mortgagee" generally under such Mortgage Loans and (d) assign or terminate any such Servicing Contracts or servicing rights.

"Servicing Sale Agreement" shall mean all contracts and agreements between Debtor and an Approved Purchaser, whether now existing or hereafter entered into, for the sale by Debtor, and the purchase by such Approved Purchaser, of any of the Servicing Rights, as modified, amended, supplemented or restated from time to time.

"Servicing Sale Receivables" shall mean all amounts at any time payable to Debtor under any Servicing Sale Agreement including any proceeds arising from the sale of all or any part of Debtor's right, title and interest in the Servicing Rights.

"T&I Receivables" shall mean accounts arising from Debtor's right to be reimbursed for the amount that Debtor has advanced on behalf of Obligors as servicer of Mortgage Loans included in the Pledged Servicing Portfolio in respect of tax and insurance payments in connection with the servicing of such Mortgage Loans, which advanced amount is fully reimbursable by the Obligors under such Mortgage Loans or any other Person (including any Agency).

The security interest referred to in this financing statement is subject and subordinate in each and every respect (a) to all rights, powers and prerogatives of FHLMC under and in connection with Purchase Documents, as that term is defined in the FHLMC Sellers' & Servicers' Guide, which rights included, without limitation, the right of FHLMC to disqualify the Debtor named herein as an approved FHLMC seller/servicer, with or without cause, and the right to terminate the unitary, indivisible master servicing contract and to transfer and sell all or any portion of said servicing contract, as provided in the Purchase Documents; and (b) to all claims of FHLMC arising out of any and all defaults and outstanding obligations of the Debtor to FHLMC.

Notwithstanding anything to the contrary contained herein:

(1) The property subject to the security interest reflected in this instrument includes all of the right, title and interest of the Debtor in certain mortgages ("Pooled Mortgages") pooled under the mortgage-backed securities program of the GNMA, pursuant to section 306(g) of the National Housing Act, 12 U.S.C.§1721(g);

(2) To the extent that the security interest reflected in this instrument relates in any way to the Pooled Mortgages, such security interest is subject and subordinate to all rights, powers and prerogatives of GNMA, whether now existing or hereafter arising, under and in connection with: (i) 12 U.S.C.§1721(g) and any implementing regulations; (ii) the terms and conditions of that certain Acknowledgment Agreement, with respect to the Security Interest, by and between the Debtor and the Secured Party; (iii) applicable Guaranty Agreements and contractual agreements between GNMA and the Debtor; and (iv) applicable versions of the GNMA Mortgage-Backed Securities Guide, Handbook 5500.1, the GNMA Mortgage-Backed Securities Guide, Handbook 5500.2, the GNMA Mortgage-Backed Securities Guide, Handbook 5500.3, and other applicable guides, as each of such versions is amended from time to time; and

(3) Such rights, powers and prerogatives of GNMA include, but are not limited to, GNMA's right, by issuing a letter of extinguishment to Debtor, to effect and complete the extinguishment of all redemption, equitable, legal or other right, title or interest of the Debtor in the Pooled Mortgages, in which event the security interest as it relates in any way to the Pooled Mortgages shall instantly and automatically be extinguished as well.