# EXHIBIT A PART I

OCALA FUNDING, LLC

as Purchaser

and

TAYLOR, BEAN & WHITAKER MORTGAGE CORP.,
as Seller and Servicer

SECOND AMENDED AND RESTATED MORTGAGE LOAN PURCHASE AND
SERVICING AGREEMENT

Dated as of June 30, 2008

# TABLE OF CONTENTS

Page

## ARTICLE I

### DEFINITIONS; EFFECTIVENESS

| Section 1.1 | Definitions. | 2 |
| Section 1.2 | Effectiveness. | 2 |

## ARTICLE II

### SALE OF MORTGAGE LOANS; POSSESSION OF MORTGAGE LOAN FILES; BOOKS AND RECORDS; CUSTODIAL AGREEMENT; DELIVERY OF DOCUMENTS

| Section 2.1 | Sale of Mortgage Loans | 2 |
| Section 2.2 | Possession of Mortgage Loan Files | 4 |
| Section 2.3 | Contents of the Mortgage Loan File | 5 |
| Section 2.4 | Determination of Purchase Price; Deposit by the Seller | 7 |
| Section 2.5 | Purchase Commitment Term | 7 |
| Section 2.6 | Books and Records; Transfers of Mortgage Loans | 7 |
| Section 2.7 | Custodial Agreement | 8 |
| Section 2.8 | Seller's Right to Call Certain Specified Assets | 8 |
| Section 2.9 | Asset Reserve Account Deposit. | 8 |

## ARTICLE III

### REPRESENTATIONS AND WARRANTIES; COVENANTS; REMEDIES AND BREACH

| Section 3.1 | Representations and Warranties of the Seller and the Servicer | 9 |
| Section 3.2 | Representations and Warranties Regarding Individual Mortgage Loans; Eligibility Representations | 13 |
| Section 3.3 | Remedies for Breach of Representations and Warranties | 24 |
| Section 3.4 | Conditions to Amendment Closing Date | 26 |
| Section 3.5 | Covenants of the Seller, the Servicer and the Purchaser | 27 |
| Section 3.6 | Representations and Warranties of the Purchaser | 31 |
| Section 3.7 | Perfection Representations | 32 |

## ARTICLE IV

### ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

| Section 4.1 | The Servicer; Servicing and Administration of the Mortgage Loans | 32 |

| Section 4.2 | Sales and Securitizations | 36 |
|---|---|---|
| Section 4.3 | Liquidation of Mortgage Loans | 39 |
| Section 4.4 | Collection of Mortgage Loan Payments | 39 |
| Section 4.5 | Establishment of, and Deposits to, Collection Account | 39 |
| Section 4.6 | Permitted Withdrawals From Collection Account and Collateral Account; Deposit into the Collateral Account | 40 |
| Section 4.7 | Establishment of, and Deposits to, Escrow Account | 43 |
| Section 4.8 | Permitted Withdrawals From Escrow Account | 44 |
| Section 4.9 | Payment of Taxes, Insurance and Other Charges | 44 |
| Section 4.10 | Protection of Accounts | 45 |
| Section 4.11 | Maintenance of Hazard Insurance | 45 |
| Section 4.12 | Maintenance of Mortgage Impairment Insurance | 46 |
| Section 4.13 | Maintenance of Fidelity Bond | 46 |
| Section 4.14 | Inspections | 47 |
| Section 4.15 | Restoration of Mortgaged Property | 47 |
| Section 4.16 | Maintenance of PMI Policy; Claims | 47 |
| Section 4.17 | Title, Management and Disposition of REO Property | 48 |
| Section 4.18 | Servicer Reports | 49 |
| Section 4.19 | Real Estate Owned Reports | 49 |
| Section 4.20 | Liquidation Reports | 49 |
| Section 4.21 | Reports of Foreclosures and Abandonments of Mortgaged Property | 49 |
| Section 4.22 | Servicer Advance Report | 49 |
| Section 4.23 | Secondary Market Trading Report | 49 |
| Section 4.24 | Daily Report. | 49 |
| Section 4.25 | Qualified Counterparty Report. | 49 |
| Section 4.26 | Repurchase Report. | 50 |

ARTICLE V

SERVICER ADVANCES

| Section 5.1 | Servicer Monthly Advances | 50 |
|---|---|---|

ARTICLE VI

GENERAL SERVICING PROCEDURES

| Section 6.1 | Transfers of Mortgaged Property | 50 |
|---|---|---|
| Section 6.2 | Satisfaction of Mortgages, Assignments of Mortgage Notes in Violation of this Purchase Agreement and the Release of Mortgage Loan Files | 51 |
| Section 6.3 | Servicing Compensation | 52 |
| Section 6.4 | Annual Statement as to Compliance | 52 |
| Section 6.5 | Annual Independent Public Accountants' Servicing Report | 52 |
| Section 6.6 | Right to Examine Servicer Records | 52 |

ARTICLE VII

[RESERVED]

ARTICLE VIII

SERVICER TO COOPERATE

Section 8.1     Provision of Information ............................................................. 53

ARTICLE IX

THE SERVICER

Section 9.1     Indemnification of Third Party Claims ............................................. 53
Section 9.2     Corporate Existence of the Servicer................................................ 54
Section 9.3     Limitation on Liability of Servicer and Others ................................. 54
Section 9.4     Limitation on Resignation and Assignment by the Servicer.............. 54
Section 9.5     Limitation on Assignment of Right................................................ 54

ARTICLE X

DEFAULT

Section 10.1     Servicer Events of Default ............................................................ 55
Section 10.2     Waiver of Defaults ...................................................................... 56

ARTICLE XI

TERMINATION

Section 11.1     Termination of Agreement............................................................ 57
Section 11.2     Termination of Purchase Obligations............................................. 57
Section 11.3     Termination of Servicing With Respect to Any Mortgage Loan ...... 61

ARTICLE XII

MISCELLANEOUS PROVISIONS

Section 12.1     Successor to Servicer ................................................................... 61
Section 12.2     Amendment ................................................................................ 62
Section 12.3     Governing Law............................................................................ 62
Section 12.4     Duration of Agreement................................................................. 62
Section 12.5     Notices........................................................................................ 63
Section 12.6     Severability of Provisions ............................................................ 63
Section 12.7     Relationship of Parties ................................................................. 63

Section 12.8    Execution; Successors and Assigns ....................................................64
Section 12.9    Recordation of Assignments of Mortgage ..........................................64
Section 12.10   Assignment by Purchaser....................................................................64
Section 12.11   Non-Petition Agreement .....................................................................64
Section 12.12   Waiver of Offset .................................................................................64
Section 12.13   Limited Recourse................................................................................64
Section 12.14   Non-Petition Agreement .....................................................................65
Section 12.15   Third-Party Beneficiary ......................................................................65

ARTICLE XIII

[RESERVED]

ARTICLE XIV

ASSIGNMENT

Section 14.1    Assignment ..........................................................................................65


SCHEDULE A   PERFECTION REPRESENTATIONS ................................... Sch. A-1
SCHEDULE B   QUALIFIED COUNTERPARTIES .......................................Sch. B-1
SCHEDULE C   SWAP COUNTERPARTY REPORTS ...................................Sch. C-1

EXHIBIT A     FORM OF TRANSFER SUPPLEMENT.......................................... A-1
EXHIBIT B     FORM OF RATED BIDDER AGREEMENT ..................................B-1
EXHIBIT C     FORM OF SERVICER REPORT ....................................................C-1
EXHIBIT D     FORM OF SERVICER ADVANCE REPORT ............................... D-1
EXHIBIT E     FORM OF DAILY REPORT ..........................................................E-1
EXHIBIT F     [RESERVED]
EXHIBIT G     FORM OF REPURCHASE REPORT............................................ G-1
EXHIBIT H     FORM OF MONTHLY FACILITY CONTENT REPORT........................... H-1

SECOND AMENDED AND RESTATED MORTGAGE LOAN PURCHASE AND SERVICING AGREEMENT, dated as of June 30, 2008 (as amended, supplemented or otherwise modified and in effect from time to time, this "Purchase Agreement"), by and among Ocala Funding, LLC, a Delaware limited liability company, as purchaser (the "Purchaser") and Taylor, Bean & Whitaker Mortgage Corp., a Florida corporation (the "Company"), as seller and servicer (in its capacity as seller hereunder, the "Seller," and in its capacity as servicer hereunder, the "Servicer").

## W I T N E S S E T H:

WHEREAS, the Purchaser and the Company have heretofore entered into that Amended and Restated Mortgage Loan Purchase and Servicing Agreement, dated as of March 27, 2006, as amended by that Amendment No. 1 to Amended and Restated Mortgage Loan Purchase and Servicing Agreement, dated as of June 9, 2006, Amendment No. 2 to Amended and Restated Mortgage Loan Purchase and Servicing Agreement, dated as of June 21, 2006 and Amendment No. 3 to Amended and Restated Mortgage Loan Purchase and Servicing Agreement, dated October 27, 2006 (the "First Amended and Restated Purchase Agreement").

WHEREAS, the Purchaser and the Company desire to amend and restate the First Amended and Restated Purchase Agreement.

WHEREAS, pursuant to Section 12.2 of the First Amended and Restated Purchase Agreement, the Purchaser, the Seller, each Swap Counterparty and the Servicer consented to the amendment and restatement of the First Amended and Restated Purchase Agreement.

WHEREAS, prior written notice of the amendment and restatement has been provided to each Rating Agency and Rating Agency Confirmation with respect thereto has been received by the Indenture Trustee.

WHEREAS, pursuant to the First Amended and Restated Purchase Agreement, the Purchaser has agreed to purchase from the Seller and the Seller has agreed to sell to the Purchaser, from time to time, mortgage loans constituting Eligible Loans until the termination of this Purchase Agreement in accordance with Section 11.1 hereof. The Purchaser wishes to continue the appointment of the Servicer to service each Mortgage Loan on behalf of the Purchaser after the sale and purchase thereof pursuant to the terms of this Purchase Agreement.

WHEREAS, the Purchaser, the Seller and the Servicer wish to prescribe the manner of purchase of Eligible Loans.

WHEREAS, the Purchaser and the Servicer wish to prescribe the management, servicing and control of the Mortgage Loans.

WHEREAS, the Purchaser intends to continue to Securitize or sell the Mortgage Loans and the Servicer will arrange for the Securitization or sale of Conforming Loans on behalf of the Purchaser through FHLMC and, as expressly permitted hereunder, GNMA or other third-party purchasers.

NOW, THEREFORE, in consideration of the mutual agreements hereinafter set forth and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Purchaser, the Seller and the Servicer agree as follows:

**ARTICLE I**

**DEFINITIONS; EFFECTIVENESS**

Section 1.1    <u>Definitions</u>.   Whenever used herein, the following words and phrases, unless the context otherwise requires, shall have the meanings assigned to such terms in the Definitions List attached as Schedule I to the Base Indenture, as amended and restated as of the date hereof, between the Issuer and the Indenture Trustee (the "Base Indenture").

Section 1.2    <u>Effectiveness</u>.   The First Amended and Restated Purchase Agreement shall remain in full force and effect until the occurrence of the Amendment Closing Date under <u>Section 3.4(a)</u> hereof.  Upon the occurrence of the Amendment Closing Date, this Purchase Agreement shall become immediately effective without further action by any party and shall amend and restate the First Amended and Restated Purchase Agreement in its entirety.

**ARTICLE II**

**SALE OF MORTGAGE LOANS; POSSESSION OF MORTGAGE LOAN FILES; BOOKS AND RECORDS; CUSTODIAL AGREEMENT; DELIVERY OF DOCUMENTS**

Section 2.1    <u>Sale of Mortgage Loans</u>.  (a) From time to time, pursuant to any Transfer Supplement, the Seller may sell, transfer, assign, set over and convey to the Purchaser and the Purchaser shall purchase, without recourse, but subject to the terms hereof, all the right, title and interest of the Seller in and to each Mortgage Loan identified on the Transfer Supplement and categorized as a Series 2005-1 Mortgage Loan or a Series 2008-1 Mortgage Loan, originated or purchased by the Seller; *provided, however*, that the Purchaser shall not at any time purchase mortgage loans having an aggregate Outstanding Purchase Price greater than the sum of (i) in the case of (a) the Series 2005-1 Program, the then-current Series 2005-1 Program Size, and (b) the Series 2008-1 Program, the then-current Series 2008-1 Program Size, less (ii) in the case of (a) the Series 2005-1 Program, the aggregate Outstanding Purchase Price of all Series 2005-1 Mortgage Loans owned by the Purchaser at such time, and (b) the Series 2008-1 Program, the aggregate Outstanding Purchase Price of all Series 2008-1 Mortgage Loans owned by the Purchaser at such time; *provided, further*, that the Purchaser shall not at any time purchase a mortgage loan if the Forward Coverage Test would not be satisfied on the closing of such purchase; *provided, further*, that each Mortgage Loan transferred on each Closing Date must be an Eligible Loan.  Notwithstanding anything herein to the contrary, unless the Purchaser receives the written consent of both the Series 2005-1 Swap Counterparty and the Series 2008-1

Swap Counterparty and provides prior notice to the Rating Agencies, the Purchaser shall only purchase Mortgage Loans conforming to the FHLMC Guides. In connection with any sale of Mortgage Loans to the Purchaser, the Seller shall sell, transfer, assign, set over and convey to the Purchaser and the Purchaser shall acquire all the right, title, interest and obligations of the Seller in and to (x) in respect of a Series 2005-1 Mortgage Loan, any Series 2005-1 Qualified Forward Contract for which such Series 2005-1 Mortgage Loans are eligible and (y) in respect of a Series 2008-1 Mortgage Loan, any Series 2008-1 Qualified Forward Contract for which such Series 2008-1 Mortgage Loans are eligible. No Qualified Forward Contract provides for the sale of the related servicing rights or accrued interest. Accordingly, the delivery price of such Qualified Forward Contract does not include the related servicing rights or accrued interest. After purchase by the Purchaser, the Servicer is required to make (x) a Sale Allocation of each Series 2005-1 Mortgage Loan to a Series 2005-1 Qualified Forward Contract in accordance with its Customary Servicing Procedures and (y) a Sale Allocation of each Series 2008-1 Mortgage Loan to a Series 2008-1 Qualified Forward Contract in accordance with its Customary Servicing Procedures, it being the intent of the parties hereto, in each case, that a Pricing Allocation of a Mortgage Loan to a Qualified Forward Contract shall have been made for purposes of establishing the Original Principal Purchase Price thereof, and that no presumption exists as to whether a Sale Allocation shall be made to the same Forward Contract as to which a Pricing Allocation has been made; *provided* that the Forward Coverage Test is satisfied at all relevant times. In connection with any sale of Mortgage Loans to the Purchaser, the Seller shall sell, transfer, assign, set over and convey to the Purchaser and the Purchaser shall acquire all the right, title, interest of the Seller in and to the servicing rights, including without limitation, any Mortgage Loans with respect to which the Qualified Forward Contract does not include the related servicing rights. The Series 2005-1 Mortgage Loans, related servicing rights and rights under the Series 2005-1 Qualified Forward Contracts are referred to as the "Series 2005-1 Purchased Assets." The Series 2008-1 Mortgage Loans, related servicing rights and rights under the Series 2008-1 Qualified Forward Contracts are referred to as the "Series 2008-1 Purchased Assets." The Series 2005-1 Purchased Assets and the Series 2008-1 Purchased Assets are referred to collectively as the "Purchased Assets." The Seller shall provide notice to the Purchaser, the Indenture Trustee, the Manager, the Collateral Agent and the applicable Swap Counterparty, not later than 3:00 P.M. New York City Time on any Closing Date, of its intention to sell a Portfolio to the Purchaser pursuant to a Transfer Supplement; *provided, however*, that the Seller may deliver such notice to the Purchaser, the Indenture Trustee, the Manager, the Collateral Agent and the applicable Swap Counterparty at any time later than 3:00 P.M. New York City Time on any Closing Date if the Purchaser will not issue additional Secured Liquidity Notes or Callable Notes to fund its purchase of a Portfolio on such Closing Date. In such notice, the Seller shall inform the Purchaser of the aggregate principal balance of the Mortgage Loans that it intends to sell on such date. The subject Portfolio and related servicing rights shall be sold by the Seller to the Purchaser as described in Section 2.4 hereof. Each Transfer Supplement shall be executed by the Seller and the Purchaser at the time of the sale of the subject Portfolio and related servicing rights. Notwithstanding the foregoing, the Purchaser shall not purchase any mortgage loans during the continuation of a Short Term Note Amortization Event or a Cease Purchase Event. The Seller shall provide the applicable Swap Counterparty with (i) copies of each applicable Qualified Forward Contract sold, transferred, assigned, set over and conveyed to the Purchaser pursuant to this Section 2.1(a) and (ii) notice of the occurrence of any Short Term Note Amortization Event or a Cease Purchase Event.

(b)     Upon execution of any Transfer Supplement by the Seller and the Purchaser and receipt of the purchase price therefor, the Seller hereby sells, assigns, transfers, sets over and conveys to the Purchaser all of the Seller's right, title and interest in, to and under the Purchased Assets.  At all times following the sale, assignment transfer and conveyance of any Qualified Forward Contract to the Purchaser under this Purchase Agreement, the Seller agrees that the Purchaser (and the Servicer and Collateral Agent, acting on its behalf) shall have the exclusive right to deliver (x) Series 2005-1 Mortgage Loans or Series 2005-1 Securitization Securities, as applicable, into a Series 2005-1 Qualified Forward Contract or a Series 2005-1 Replacement Forward Contract and (y) Series 2008-1 Mortgage Loans or Series 2008-1 Securitization Securities, as applicable, into a Series 2008-1 Qualified Forward Contract or a Series 2008-1 Replacement Forward Contract.  It is intended that each transfer, assignment and conveyance herein contemplated constitute a sale of the applicable Purchased Assets, conveying good title thereto, free and clear of any liens, by the Seller to the Purchaser and that the Purchased Assets not be part of the Seller's estate in the event of insolvency of the Seller.  In the event that any Purchased Assets are held to be property of the Seller or if for any other reason any Transfer Supplement or other document is held or deemed to create a security interest in the related Purchased Assets, the parties intend that the Seller shall be deemed to have granted, and does hereby grant, to the Purchaser a first priority perfected security interest in such Purchased Assets and all collateral related thereto now existing or hereafter arising for the purpose of securing the rights of the Purchaser under this Purchase Agreement, and that this Purchase Agreement and each Transfer Supplement shall each constitute a security agreement under applicable law.

(c)     It is the intention of the parties to this Purchase Agreement that each conveyance of the Seller's right, title and interest in and to the Purchased Assets pursuant to this Purchase Agreement shall constitute a purchase and sale and not a loan.

Section 2.2     Possession of Mortgage Loan Files.  (a) The Seller shall deliver the related Loan Documents to the Custodian, as bailee, and the contents of each related Mortgage Loan File shall be held by the Custodian initially for the benefit of the Purchaser pursuant to this Purchase Agreement, and then for the benefit of the Collateral Agent pursuant to the Custodial Agreement; *provided, however,* that the failure of the Seller to deliver any Loan Document (other than any Mortgage Note, Mortgage or Assignment of Mortgage) to the Custodian, which failure does not have a material and adverse impact on the value of the related Mortgage Loan or prevent securitizing the related Mortgage Loan or delivering the Mortgage Loan into a Qualified Forward Contract, shall not constitute a breach of this Purchase Agreement.  Following the delivery of the Mortgage Notes, Mortgages and Assignments of Mortgage and the Qualifying Documents to the Custodian pursuant to this Section 2.2, and while the Purchased Assets are owned by the Purchaser, the Custodian will maintain continuous custody of the Mortgage Notes, Mortgages or Assignments of Mortgage and the Qualifying Documents, for the benefit of, and as custodian for, the Purchaser and the Collateral Agent, for the benefit of the Secured Parties, except as provided in this Section 2.2.

(b)     Pursuant to Section 2.7 hereof and subject to Section 3.2(y) hereof, as soon as practicable but in any event on or before the sale of any Mortgage Loan to the Purchaser, the Seller of such Mortgage Loan shall deliver and release each related Mortgage Note, Mortgage and Assignment of Mortgage to the Custodian, as bailee, initially for the Purchaser and

then for the Collateral Agent pursuant to the Custodial Agreement. Pursuant to Section 2.7 hereof and subject to Section 3.2(y) hereof, as soon as practicable but in any event within the Required Delivery Period, the Seller shall deliver to the Custodian, as bailee, initially for the Purchaser and then for the Collateral Agent pursuant to the Custodial Agreement, each Qualifying Document with respect to each Qualifying Forward Contract relating to Mortgage Loans sold to the Purchaser. If any Qualifying Document shall not be delivered to the Custodian within the Required Delivery Period, then the related Forward Trade shall not be a Qualified Forward Contract. Notwithstanding the foregoing, the failure to deliver a Transaction or trade ticket with respect to any particular Forward Trade within the Required Delivery Period shall not preclude the related Master Securities Forward Transaction Agreement being part of a Qualified Forward Contract with respect to another Forward Trade. On or prior to the related Closing Date (or, with respect to the Qualifying Documents, within the Required Delivery Period) and subject to Section 3.2(y) hereof, the Seller shall deliver the related Loan Documents not delivered to the Custodian (the "Servicing File") to the Servicer and the contents of each related Servicing File shall be held by the Servicer, as bailee, for the benefit of the Purchaser, as owner, and the Collateral Agent as secured party; *provided, however*, that the failure of the Seller to deliver any Loan Document (other than a Qualifying Document, Mortgage Note, Mortgage or Assignment of Mortgage), which failure does not have a material and adverse impact on the value of a Mortgage Loan, shall not constitute a breach of this Purchase Agreement; *provided, further*, that all Qualifying Documents, Mortgage Notes, Mortgages and Assignments of Mortgages shall be delivered to the Custodian, as bailee, initially for the Purchaser and then for the Collateral Agent, as provided in the first two sentences of this Section 2.2(b). The possession of each Servicing File by the Servicer is at the will of the Purchaser or the Collateral Agent, as applicable, for the sole purpose of servicing the related Mortgage Loan and such retention and possession by the Servicer is in a custodial capacity only. Upon the sale of the Purchased Assets to the Purchaser, the ownership of each related Qualifying Document, Mortgage Note, Mortgage, Assignment of Mortgage and the remainder of the Mortgage Loan File shall vest immediately in the Purchaser, and the ownership of all other records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Servicer shall vest immediately in the Purchaser and shall be retained and maintained by the Servicer at the will of the Purchaser and the Collateral Agent and only in such custodial capacity. Each Servicing File and the Servicer's books and records shall be marked appropriately to reflect clearly the sale of the related Mortgage Loan to the Purchaser and whether such Mortgage Loan is a Series 2005-1 Mortgage Loan or a Series 2008-1 Mortgage Loan. The Custodian shall only release its custody of the Qualifying Documents, Mortgage Notes, Mortgages, Assignments of Mortgages and other contents of a Mortgage Loan File in its possession in accordance with the Custodial Agreement.

Section 2.3    Contents of the Mortgage Loan File. The Mortgage Loan File shall consist of the following documents (constituting, collectively, the "Loan Documents") and such other documents as the Purchaser may require from time to time:

(i)    the original Mortgage Note, together with the original of any guarantee executed in connection with the Mortgage Note;

(ii)    the original Mortgage with evidence of recording thereon. If in connection with any particular Mortgage Loan, the Seller cannot deliver or cause to be delivered the original Mortgage with evidence of recording thereon on or prior to the

Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the Seller shall deliver or cause to be delivered to the Custodian, (a) in the case of a delay caused by the public recording office, a photocopy of such Mortgage, together with an Officer's Certificate of the Seller stating that such Mortgage has been dispatched to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Custodian upon receipt thereof by the Seller or (b) in the case of an original Mortgage where a public recording office retains the original Mortgage or in the case where an original Mortgage is lost after recordation in a public recording office, a copy of such original Mortgage certified by an Officer's Certificate of the Seller to be a true and complete copy of the original recorded Mortgage;

(iii)     the originals of all assumption, modification, consolidation or extension agreements, with evidence of recording thereon if so recorded;

(iv)     unless the original Mortgage was recorded in the name of MERS, an Assignment of Mortgage for each Mortgage Loan, in form and substance acceptable for recording. If the Mortgage Loan was acquired by the Seller in a merger, any Assignment of Mortgage (other than an original Mortgage recorded in the name of MERS) must be made by "Seller, successor by merger to [name of predecessor]." If the Mortgage Loan was acquired or originated by the Seller while doing business under another name, any Assignment of Mortgage (other than an original Mortgage recorded in the name of MERS) must be by "Seller, formerly known as [previous name]." If the Mortgage Loan was acquired by the Seller as receiver for another entity, any Assignment of Mortgage (other than an original Mortgage recorded in the name of MERS) must be by "Seller, receiver for [name of entity in receivership]." Any Assignment of Mortgage must be duly recorded only upon the occurrence of a Termination Event that would require the Servicer to sell or Securitize all non-Delinquent or non-Defaulted Loans pursuant to Section 11.2 hereof. If any Assignment of Mortgage is not to be recorded, such Assignment of Mortgage shall be delivered in blank;

(v)     if applicable, the originals of all intervening assignments of mortgage with evidence of recording thereon, or (a) if any such intervening assignment has not been returned from the applicable public recording office, the original recorded intervening assignment of mortgage will be promptly placed in the Mortgage Loan File upon receipt thereof by the Seller or (b) in the case of an intervening assignment where a public recording office retains the original recorded intervening assignment or in a case where an intervening assignment is lost after recordation in a public recording office, a copy of such intervening assignment certified to be a true and complete copy of the original recorded intervening assignment;

(vi)     if available, the original mortgagee title insurance policy or attorney's opinion of title, or if the policy or opinion of title has not yet been issued, (a) the irrevocable written commitment, interim binder or marked up binder for a title insurance

policy issued by the title insurance company dated and certified as of the date the Mortgage Loan was funded, or (b) a copy of the applicable escrow instructions indicating the name of the title company with, in either case, a statement by the title insurance company or closing attorney on such binder or commitment or escrow instructions that the priority of the lien on the related Mortgage during the period between the date of the funding of the related Mortgage Loan and the date of the related title policy is insured;

(vii) the original of any security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage;

(viii) if any Mortgage Loan is sold to any Agency, the originals of other documents, forms, releases, certifications and papers required by the applicable Agency Custodial Agreement; and

(ix) the Qualifying Documents with respect to any Qualified Forward Contract into which any Mortgage Loan may at any time be identified for delivery.

Section 2.4    Determination of Purchase Price; Deposit by the Seller. No later than 2:00 P.M. New York City time on each Closing Date, the Seller shall deliver to the Purchaser a Transfer Supplement and shall notify the Purchaser of (i) its calculation of the Original Principal Purchase Price and the Original Purchase Price for each Mortgage Loan in the Portfolio which consideration shall constitute the consideration for the sale and purchase of the Purchased Assets (and not the consideration solely for the sale and purchase of the subject Mortgage Loans) and (ii) whether each such Mortgage Loan is a Series 2005-1 Mortgage Loan or a Series 2008-1 Mortgage Loan. The Purchaser and the Seller shall use commercially reasonable efforts to close the sale of the Purchased Assets on any such Closing Date. The Purchaser shall pay to the Seller the Original Purchase Price of each Mortgage Loan purchased by it hereunder in immediately available funds not later than 6:00 P.M., New York City time, on the applicable Closing Date. Each Mortgage Loan must be an Eligible Loan.

To the extent that the market value of any Portfolio on the related Closing Date exceeds the Original Purchase Price of such Mortgage Loan, such excess shall be a capital contribution by the Seller to the Purchaser.

Section 2.5    Purchase Commitment Term. Subject to the terms and conditions of the Facility Documents, the commitment of the Purchaser under this Purchase Agreement shall expire on the termination of this Purchase Agreement, pursuant to Section 11.1 hereof.

Section 2.6    Books and Records; Transfers of Mortgage Loans. From and after each related Closing Date, all rights arising with respect to each Mortgage Loan sold pursuant to any Transfer Supplement, including but not limited to all funds received on or in connection with each Mortgage Loan, shall be received and held by the Servicer in trust for the benefit of the Purchaser. Pursuant to the Custodial Agreement, the Custodian shall hold all of the Qualifying Documents, Mortgage Notes, Mortgages and Assignments of Mortgage on behalf of the Collateral Agent for the benefit of the Secured Parties.

The Servicer, at its expense, shall be responsible for maintaining, and shall maintain, appropriate books and records for each Mortgage Loan which shall be marked clearly

to reflect the ownership of each Mortgage Loan by the Purchaser and whether each such Mortgage Loan is a Series 2005-1 Mortgage Loan or a Series 2008-1 Mortgage Loan. In particular, the Servicer shall maintain in its possession, available for inspection by the Purchaser, each Swap Counterparty, the Collateral Agent, the Indenture Trustee (acting at the written direction of the Required Senior Noteholders), or their respective designees, evidence of compliance with applicable laws, rules and regulations. To the extent that original documents are not required for purposes of realization of Liquidation Proceeds, Insurance Proceeds, VA Guaranty Proceeds, FHA Proceeds or Securitization proceeds, documents maintained by the Servicer may be in the form of microfilm or microfiche or such other reliable means of recreating original documents, including but not limited to, optical imagery techniques, so long as the Servicer complies with the requirements of the Guidelines.

The Servicer shall maintain with respect to each Mortgage Loan and shall make available for inspection by the Purchaser, each Swap Counterparty, the Collateral Agent, the Indenture Trustee (acting at the written direction of the Required Noteholders), any Short Term Note Dealer or their respective designees, upon reasonable advance notice, at the offices of the Servicer during normal business hours the related Mortgage Loan File during the time the Purchaser retains ownership of a Mortgage Loan and thereafter pursuant to applicable laws and regulations.

Section 2.7  Custodial Agreement. Pursuant to the Custodial Agreement and subject to Section 3.2(y) hereof, the Seller shall, from time to time in connection with the purchase of Mortgage Loans sold by it pursuant to the terms of this Purchase Agreement, deliver to the Custodian, (i) on or before the related Closing Date, the Mortgage Note, Mortgage and Assignment of Mortgage with respect to each Mortgage Loan transferred by the Seller and (ii) within the Required Delivery Period, each Qualifying Document. The Custodian shall hold each Qualifying Document, Mortgage Note, Mortgage and Assignment of Mortgage in trust, as bailee, initially for the Purchaser and then for the Collateral Agent pursuant to the Custodial Agreement.

Section 2.8  Seller's Right to Call Certain Specified Assets. The Seller or its Affiliates shall have the unilateral right, but not the obligation, once in any calendar year, to call for the repurchase of (i) Mortgage Loans held by the Purchaser beyond any of the Portfolio Aging Limitations specified herein, or (ii) Mortgage Loans which will be held by the Purchaser beyond the Portfolio Aging Limitations specified herein, in an aggregate amount up to (x) three (3) percent of the Outstanding Purchase Price of the Series 2005-1 Mortgage Loans and (y) three (3) percent of the Outstanding Purchase Price of the Series 2008-1 Mortgage Loans owned by the Purchaser as of the date such call is exercised. The Seller or its Affiliates shall purchase such specified Mortgage Loans for an amount equal to the Repurchase Price of such Mortgage Loans on the date such call is made; *provided, however*, that if any such specified Mortgage Loan is a Delinquent Loan or Defaulted Loan, the purchase price for such Delinquent Loan or Defaulted Loan shall be par plus accrued interest thereon. For the avoidance of doubt, such purchase amount shall include any accrued interest on such specified Mortgage Loans.

Section 2.9  Asset Reserve Account Deposit. On any day (including a Payment Date) on which a Termination Event occurs, the Purchaser shall cause to be deposited into the applicable sub-account of the Asset Reserve Account the amounts required pursuant to both

clauses (B) of priority Second of Section 2.01, Section 5.03(a)(i) and Section 5.03(b)(i) of the Security Agreement, as applicable.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES; COVENANTS; REMEDIES AND BREACH

Section 3.1    <u>Representations and Warranties of the Seller and the Servicer</u>.

(a)    The Seller represents and warrants to the Purchaser (and for the benefit of the Collateral Agent, each Swap Counterparty and the Secured Parties) that as of each applicable Closing Date:

(i)    <u>Due Organization and Authority</u>. (a) The Seller is duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in each state where a Mortgaged Property is located if required to conduct business of the type conducted by it, and in any event it is in compliance with the laws of any such state to the extent necessary to ensure the enforceability of all Purchased Assets sold hereunder in accordance with the terms of this Purchase Agreement and any Transfer Supplement, except where its failure to be licensed, qualified or in good standing in any such state, or where its failure to be in compliance with the laws of any such state, would not have a Material Adverse Effect; (b) the Seller has the full power and authority to execute and deliver this Purchase Agreement, each Qualified Forward Contract and any Transfer Supplement and to perform its obligations in accordance herewith and therewith; (c) the execution, delivery and performance of this Purchase Agreement, each Qualified Forward Contract and any applicable Transfer Supplement by the Seller and the performance of the transactions contemplated hereby and thereby have been duly and validly authorized by it; (d) all requisite corporate action has been taken by the Seller to make this Purchase Agreement, each Qualified Forward Contract and any Transfer Supplement valid and binding upon it pursuant to its terms; (e) this Purchase Agreement, each Qualified Forward Contract, and any Transfer Supplement each evidences the valid, binding and enforceable obligation of the Seller, except that (1) the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally and (2) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

(ii)    <u>Ordinary Course of Business</u>.   The performance of the transactions contemplated by this Purchase Agreement are in the Seller's ordinary course of business.

(iii)    <u>No Conflicts</u>.   Neither the execution and delivery of this Purchase Agreement, each Qualified Forward Contract, or any Transfer Supplement, the acquisition of mortgage loans by the Seller, the sale of Mortgage Loans to the Purchaser or the transactions contemplated hereby or thereby, nor the fulfillment of or compliance

with the terms and conditions of this Purchase Agreement or any Transfer Supplement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Seller's charter or by-laws or any material agreement or instrument to which it is now a party or by which it is bound, except where such conflict or breach would not have a Material Adverse Effect, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation in any material respect of any applicable law, rule, regulation, order, judgment or decree to which the Seller or its property is subject, or impair the ability of the Purchaser to realize on the mortgage loans in any material respect, or impair the value of the mortgage loans in any material respect.

(iv)    <u>Ability to Sell</u>.  Notwithstanding anything herein to the contrary, unless the Seller receives the written consent of both the Series 2005-1 Swap Counterparty and the Series 2008-1 Swap Counterparty, the Seller is an approved Seller of mortgage loans for FHLMC.  Notwithstanding anything herein to the contrary, unless the Seller receives the written consent of both the Series 2005-1 Swap Counterparty and the Series 2008-1 Swap Counterparty, the Seller is eligible to sell Mortgage Loans to FHLMC and no event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with the eligibility requirements in all material respects of FHLMC or which would require notification to FHLMC.  The Seller is an FHA Approved Mortgagee and a VA Approved Lender, and no event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with FHA or VA eligibility requirements in all material respects, or which would require notification to either the FHA or VA.

(v)    <u>No Litigation Pending</u>.  There is no action, suit, proceeding or investigation pending or to the Seller's knowledge threatened against the Seller which, either in any one instance or in the aggregate, would draw into question the validity of this Purchase Agreement, any Qualified Forward Contract or any Transfer Supplement or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of the Seller contemplated herein, or which would be likely to impair materially the ability of the Seller to perform under the terms of this Purchase Agreement or any Transfer Supplement or which, in the Seller's reasonable belief, would have a Material Adverse Effect on the Seller.

(vi)    <u>No Consent Required</u>.  No consent, approval, authorization or order of any court or governmental agency or body including, without limitation, HUD, FHA or VA, is required for the execution, delivery and performance by the Seller of or compliance with this Purchase Agreement or any Transfer Supplement or the sale of the mortgage loans, or if required, such approval has been obtained.

(vii)    <u>No Untrue Information</u>.  Neither this Purchase Agreement, any Transfer Supplement nor any written statement, written report or other document prepared by the Seller pursuant to this Purchase Agreement or in connection with the transactions contemplated hereby contains any untrue statement of a material fact relating to the Seller or the Mortgage Loans.

(viii)    Financial Statements.    The Seller has delivered to the Purchaser consolidated financial statements as of the date hereof, as to its last three complete fiscal years and any later quarter ended more than sixty (60) days prior to the execution of this Purchase Agreement.    All such financial statements fairly present the pertinent results of operations and changes in financial position at the end of each such period of the Seller and its subsidiaries and have been prepared pursuant to generally accepted accounting principles consistently applied throughout the periods involved, except as set forth in the notes thereto.    There has been no change in its business, operations, financial condition, properties or assets since the date of its most recently provided financial statements that would have a material adverse effect on its ability to perform its obligations under this Purchase Agreement.

(ix)    No Brokers' Fees.    The Seller has not dealt with any broker, investment banker, agent or other Person that may be entitled to any commission or compensation in connection with the sale of any Mortgage Loan to the Purchaser.

(x)    Solvency: Fraudulent Conveyance.    Seller is solvent and will not be rendered insolvent by the sale of the applicable Purchased Assets to the Purchaser and, after giving effect to such sale, Seller will not be left with an unreasonably small amount of capital with which to engage in its business.    Seller does not intend to incur, nor believes that it has incurred, debts beyond its ability to pay such debts as they mature. Seller is not contemplating the commencement of insolvency, bankruptcy, liquidation or consolidation proceedings or the appointment of a receiver, liquidator, conservator, trustee or similar official in respect of Seller or any of its assets.    The amount of consideration being received by Seller upon the sale of the Purchased Assets to the Purchaser constitutes reasonably equivalent value and fair consideration for such Purchased Assets.    Seller is not transferring any Purchased Assets with any intent to hinder, delay or defraud any of its creditors.

(xi)    Taxes.    Seller has filed all federal and state tax returns which are required to be filed, unless an extension has been granted, and paid all taxes, including any assessments received by it, to the extent that such taxes have become due (other than for taxes that are being contested in good faith or for which it has established adequate reserves).    Any taxes, fees and other governmental charges payable by Seller in connection with the sale of the applicable Purchased Assets to the Purchaser and the execution and delivery of the Facility Documents have been paid.

(xii)    Corporate Separateness.    Other than as provided in this Purchase Agreement and the other Facility Documents, Seller is not engaged in any business transactions with any of its Affiliates other than transactions in the ordinary course of its business, conducted in a commercially reasonable manner and on an "arm's length" basis.

(b)    The Servicer represents and warrants to the Purchaser (and for the benefit of the Collateral Agent, each Swap Counterparty and the Secured Parties) that as of each applicable Closing Date:

(i)  <u>Due Organization and Authority</u>. (a) The Servicer is duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in each state where a Mortgaged Property is located if required to conduct business of the type conducted by it, and in any event it is in compliance with the laws of any such state to the extent necessary to ensure the servicing of any such Mortgage Loan in accordance with the terms of this Purchase Agreement, except where its failure to be licensed, qualified or in good standing in any such state, or where its failure to be in compliance with the laws of any such state, would not have a Material Adverse Effect; (b) the Servicer has the full power and authority to execute and deliver this Purchase Agreement and to perform its obligations in accordance herewith; (c) the execution, delivery and performance of this Purchase Agreement by the Servicer and the performance of the transactions contemplated hereby have been duly and validly authorized by it; (d) all requisite corporate action has been taken by the Servicer to make this Purchase Agreement valid and binding upon it pursuant to its terms; (e) this Purchase Agreement evidences the valid, binding and enforceable obligation of the Servicer, except that (1) the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally and (2) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

(ii)  <u>Ordinary Course of Business</u>.  The performance of the transactions contemplated by this Purchase Agreement are in the Servicer's ordinary course of business.

(iii)  <u>No Conflicts</u>.  Neither the execution and delivery of this Purchase Agreement or the transactions contemplated hereby or thereby, nor the fulfillment of or compliance with the terms and conditions of this Purchase Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of its charter or by-laws or any material agreement or instrument to which it is now a party or by which it is bound, except where such conflict or breach would not have a Material Adverse Effect, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation in any material respect of any applicable law, rule, regulation, order, judgment or decree to which it or its property is subject, or impair the ability of the Purchaser to realize on the mortgage loans in any material respect, or impair the value of the mortgage loans in any material respect.

(iv)  <u>Ability to Service</u>.  The Servicer is an approved Servicer of mortgage loans for at least one of FHLMC and the Federal National Mortgage Association.  The Servicer is eligible to service Mortgage Loans for at least one of FHLMC and the Federal National Mortgage Association and no event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with the eligibility requirements in all material respects of at least one of FHLMC and the Federal National Mortgage Association or which would require notification to FHLMC or the Federal National Mortgage Association.  The Servicer is eligible to service mortgage

loans for the FHA and VA, and no event has occurred, including but not limited to a change in insurance coverage, which would make the Servicer unable to comply with FHA or VA eligibility requirements in all material respects, or which would require notification to either the FHA or VA.

(v)     <u>No Litigation Pending</u>.     There is no action, suit, proceeding or investigation pending or to the Servicer's knowledge threatened against it which, either in any one instance or in the aggregate, would draw into question the validity of this Purchase Agreement or of any action taken or to be taken in connection with the obligations of the Servicer contemplated herein, or which would be likely to impair materially the ability of the Servicer to perform under the terms of this Purchase Agreement or any Transfer Supplement.

(vi)     <u>No Consent Required</u>. To the Servicer's knowledge, no consent, approval, authorization or order of any court or governmental agency or body including, without limitation, HUD, FHA or VA, is required for the execution, delivery and performance by it of or compliance with this Purchase Agreement, or if required, such approval has been obtained.

(vii)     <u>No Untrue Information</u>.     Neither this Purchase Agreement, any Transfer Supplement nor any written statement, written report or other document prepared by it pursuant to this Purchase Agreement or in connection with the transactions contemplated hereby contains any untrue statement of a material fact relating to the Servicer.

(viii)     <u>Financial Statements</u>.     The Servicer has delivered to the Purchaser consolidated financial statements as of the date hereof as to its last three complete fiscal years and any later quarter ended more than sixty (60) days prior to the execution of this Purchase Agreement. All such financial statements fairly present the pertinent results of operations and changes in financial position at the end of each such period of the Servicer and its subsidiaries and have been prepared pursuant to generally accepted accounting principles consistently applied throughout the periods involved, except as set forth in the notes thereto. There has been no change in the Servicer's business, operations, financial condition, properties or assets since the date of its most recently provided financial statements that would have a material adverse effect on its ability to perform its obligations under this Purchase Agreement.

(ix)     <u>Solvency</u>. The Servicer is solvent.

Section 3.2     <u>Representations and Warranties Regarding Individual Mortgage Loans; Eligibility Representations</u>. With respect to each Mortgage Loan sold by the Seller to the Purchaser, the Seller hereby represents and warrants to the Purchaser (and for the benefit of the Collateral Agent, each Swap Counterparty and the Secured Parties) that as of the applicable Closing Date for such Mortgage Loan:

(a)     <u>Eligibility of Mortgage Loans</u>. The Mortgage Loan is an Eligible Loan.

(b) <u>Mortgage Loans as Described</u>. The information set forth in the Mortgage Loan Schedule attached to the applicable Transfer Supplement is complete, true and correct in all material respects as of the date or dates that such information is specified therein.

(c) <u>Valid First Lien</u>. The Mortgage is a valid, subsisting, enforceable and perfected first lien on the Mortgaged Property, including all buildings on the Mortgaged Property, and all additions, alterations and replacements made at any time with respect to the foregoing. The lien of the Mortgage is subject only to:

(1) the lien of the current real property taxes and assessments not yet due and payable;

(2) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording acceptable to prudent mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Mortgage Loan and (i) referred to or to otherwise considered in the appraisal made for the originator of the Mortgage Loan or (ii) which do not materially adversely affect the appraised value of the Mortgaged Property set forth in such appraisal;

(3) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property; and

(4) in the case of a Mortgaged Property that is a condominium or an individual unit in a planned unit development, Liens for common charges permitted by statute.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting and enforceable first lien and first priority security interest on the property described therein and the Seller has full right to sell and assign the same to the Purchaser. The Mortgaged Property was not, as of the date of origination of the Mortgage Loan, subject to a mortgage, deed of trust, deed to secure debt or other security instrument creating a lien senior to the lien of the Mortgage.

(d) <u>Ownership</u>. The Seller is the sole owner of record and holder of the Purchased Assets. Upon sale to the Issuer, the Purchased Assets will not be assigned or pledged (other than pursuant to such sale), and the Seller has good and marketable title thereto, and has full right to transfer and sell the Purchased Assets to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign the Purchased Assets pursuant to the related Transfer Supplement and following the sale of each Mortgage Loan, the Purchaser will own such Mortgage Loan free and

clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, except such security interest created pursuant to the terms of this Agreement.

(e) <u>No Additional Collateral</u>. The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage referred to in <u>Section 3.2(c)</u> hereof.

(f) <u>Conformance with Underwriting Standards</u>. The Mortgage Loan was underwritten in material compliance with the applicable Guidelines.

(g) <u>Payments Current</u>. No payments due with respect to the Mortgage Loan are thirty (30) days or more past their contractual due date.

(h) <u>No Mortgagor Bankruptcy; Delinquencies</u>. No Mortgagor is the subject of a bankruptcy or similar proceeding.

(i) <u>No Outstanding Charges</u>. There are no defaults in complying with the terms of the Mortgages, and all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable. The Seller has not advanced (other than Buydown Loans) funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Mortgage Loan, except for certain closing charges and points incurred in connection with the closing of a Mortgage Loan and for interest accruing from the date of the Mortgage Note or date of disbursement of the Mortgage Loan proceeds to the day which precedes by one (1) month the Due Date of the first installment of principal and interest.

(j) <u>Original Terms Unmodified</u>. The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect from the date of origination, except by a written instrument which is included in the Mortgage Loan File. The substance of any such waiver, alteration or modification has been approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the PMI Policy or title insurer, and by the FHA for the related FHA Loans, and the VA for the related VA Loans, and its terms are reflected on the related Mortgage Loan Schedule. No Mortgagor has been released, in whole or in part, except in connection with an assumption agreement approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the PMI Policy or title insurer, and by the FHA for the related FHA Loans, and the VA for the related VA Loans, and which assumption agreement is part of the Mortgage Loan File delivered to the Servicer and the terms of which are reflected in the related Mortgage Loan Schedule.

(k) <u>No Defenses</u>. The Mortgage Loan is not subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or, with respect to FHA Loans, impair the Purchaser's ability to collect full insurance benefits

under the FHA Mortgage Insurance Certificate, without indemnity to HUD, or, with respect to VA Loans, impair the Purchaser's ability to collect full value under the VA Loan Guaranty Certificate upon the Mortgagor's default, or subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto, and no Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at or subsequent to the time the Mortgage Loan was originated or as of the date hereof.

(l)    Hazard Insurance.  Pursuant to the terms of the Mortgage, all buildings or other improvements upon the Mortgaged Property are insured by (i) an FHA approved insurer with respect to each FHA Loan, (ii) a VA approved insurer with respect to each VA Loan or (iii) a generally acceptable insurer against loss by fire and extended coverage and coverage for such other hazards as are customary in the area where the Mortgaged Property is located pursuant to insurance policies conforming to the requirements of Section 4.11 hereof and of the FHA and VA, if applicable.  If upon origination of the Mortgage Loan, the Mortgaged Property was in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available) a flood insurance policy meeting the requirements of the current guidelines of the Flood Insurance Administration is in effect which policy conforms to the requirements of Section 4.11 hereof and of the FHA and VA, if applicable.  All individual insurance policies contain a standard mortgagee clause naming the Company and its successors and assigns as mortgagee, and all premiums thereon have been paid.  The Mortgage obligates the Mortgagor thereunder to maintain the hazard insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor.  The hazard insurance policy is the valid and binding obligation of the insurer and is in full force and effect.  The Seller has not engaged in, and has no knowledge of the Mortgagor's having engaged in, any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either.

(m)    Compliance with Applicable Laws.  Any applicable requirements of federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws and FHA Regulations and VA Regulations applicable to the Mortgage Loan have been complied with in all material respects.

(n)    No Satisfaction of Mortgage.  The Mortgage has not been satisfied, cancelled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission. The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor.

(o)    Location and Type of Mortgaged Property.  The Mortgaged Property is located in the state identified in the related Mortgage Loan Schedule and consists of a parcel of real property with a detached single family residence erected thereon, or a two-to-four family

dwelling, or an individual condominium unit, or an individual unit in a planned unit development; *provided, however*, no residence or dwelling is a mobile home or a manufactured dwelling unless such residence or dwelling has been converted to real property under the applicable law of the state in which it is located. The Mortgaged Property is not used primarily for commercial purposes. The Mortgage Loan was not made for the purpose of financing builder inventory.

(p)     Validity of Mortgage Documents. The Mortgage Note and the Mortgage are genuine and each is the legal, valid and binding obligation of the maker thereof enforceable pursuant to its terms and under applicable law, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles. All parties to the Mortgage Note and the Mortgage and any other related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage and any other related agreement, and the Mortgage Note and the Mortgage and any other related agreement have been duly and properly executed by such parties. The documents, instruments and agreements submitted for loan underwriting were not falsified by the related Mortgagor and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud, material misrepresentation or material omission of fact with respect to a Mortgage Loan has taken place on the part of the Seller, the Mortgagor, any appraiser, any builder, any developer or any other party involved in the origination or servicing of the Mortgage Loan or in the application of any insurance in relation to such Mortgage Loan or in connection with the sale of such Mortgage Loan to the Purchaser.

(q)     Full Disbursement of Proceeds. Each Mortgage Loan has been closed and its proceeds have been fully disbursed by the lender and there is no requirement for future advances thereunder and any and all requirements as to completion of any on site or off site improvement and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage.

(r)     Doing Business. All parties which have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (i) in compliance with any applicable licensing requirements of the laws of the state wherein the Mortgaged Property is located, and (ii) organized under the laws of such state, or (iii) qualified to do business in such state or (iv) not required to qualify to do business in such state.

(s)     LTV, PMI Policy. The original LTV of the Mortgage Loan (other than if such Mortgage Loan is an FHA Loan or a VA Loan) either was not more than 80%, or the excess over 80% is insured as to payment defaults by a PMI Policy until the LTV of such Mortgage Loan is reduced to not more than 80%. All material provisions of such PMI Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. To the Seller's knowledge, no action, inaction, or event has occurred and no state of facts exists that has, or will result in the exclusion from, denial of, or defense to

coverage.  Any Mortgage Loan subject to a PMI Policy obligates the Mortgagor thereunder to maintain the PMI Policy to the extent required under the related Mortgage Note and Mortgage and to pay all premiums and charges in connection therewith.

(t)     <u>Title Insurance</u>.  The Mortgage Loan is covered by (i) an attorney's opinion of title and abstract of title, the form and substance of which is acceptable to mortgage lending institutions making mortgage loans in the area where the Mortgaged Property is located, (ii) an ALTA lender's title insurance policy or other generally acceptable form of policy of insurance acceptable to FHLMC or GNMA, issued by a title insurer acceptable to FHLMC or GNMA and qualified to do business in the jurisdiction where the Mortgaged Property is located or if applicable, (iii) an attorney's opinion of title and abstract of title, the form and substance of which is acceptable to the FHA with respect to FHA Loans and the VA with respect to VA Loans or (iv) an ALTA lender's title insurance policy or other generally acceptable form of policy of insurance acceptable to (a) the FHA with respect to the FHA Loans, and (b) the VA with respect to the VA Loans, and each such title insurance policy is issued by a title insurer acceptable to the FHA or VA, as the case may be, and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the mortgage loan, and against any loss by reason of the invalidity or unenforceability of the lien subject only to the exceptions contained in clauses <u>(1)</u>, <u>(2)</u> and <u>(3)</u> of paragraph <u>(c)</u> of this <u>Section 3.2</u>.  Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance.  Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein.  The title policy does not contain any special exceptions (other than the standard exclusions) for zoning and uses and has been marked to delete the standard survey exception or to replace the standard survey exception with a specific survey reading.  The Seller is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect.  No claims have been made under such lender's title insurance policy, and no prior holder of the Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy.

(u)     <u>No Defaults</u>.  There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note, and neither the Seller nor its predecessors have expressly waived any default, breach, violation or event of acceleration.

(v)     <u>No Mechanics' Liens</u>.  There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage, which are not insured against by the applicable title policy.

(w)     <u>Customary Provisions</u>.  The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale or (ii) otherwise, by judicial foreclosure.  Upon default by a Mortgagor on a Mortgage Loan and foreclosure on, or trustee's sale of, the Mortgaged Property pursuant to the proper procedures,

the holder of the Mortgage Loan will be able to deliver good and marketable title to the Mortgaged Property. There is no homestead or other exemption available to the Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage subject to applicable federal and state laws and judicial precedent with respect to bankruptcy and right of redemption.

(x)    Deeds of Trust. In the event that the Mortgage constitutes a deed of trust, a trustee, authorized and duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

(y)    Delivery of Mortgage Notes. Other than with respect to the Mortgage Loans described in the following sentence, the aggregate Outstanding Purchase Price of which shall not at any time exceed 3% of the aggregate Outstanding Purchase Price of all Mortgage Loans owned by the Purchaser at such time, the related Mortgage Note endorsed in blank or to the Purchaser required to be delivered by the Seller to the Custodian pursuant to Section 2.2 hereof will be delivered on or before the applicable Closing Date. With respect to any Mortgage Loan as to which a lost note affidavit has been included in the Mortgage Loan File certifying that the original Mortgage Note is a Lost Mortgage Note, (i) such lost note affidavit contains a provision pursuant to which the Seller shall indemnify and hold harmless the Purchaser, its successors and assigns against any loss, liability or damage, including reasonable attorney's fees, resulting from the unavailability of the original Mortgage Note including but not limited to any adverse effect on the net proceeds received in connection therewith, and (ii) neither (x) the enforcement of such Mortgage Loan or of the related Mortgage by or on behalf of the Purchaser and the net proceeds received in connection therewith nor (y) the salability and sales price of such Mortgage Loan will be materially adversely affected by the absence of the original Mortgage Note. A "Lost Mortgage Note" is a Mortgage Note the original of which was permanently lost or destroyed and has not been replaced.

(z)    Transfer of Mortgage Loans. The Assignment of Mortgage (other than with respect to an original Mortgage recorded in the name of MERS) is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located.

(aa)    Due on Sale. The Mortgage contains a provision for the acceleration of the payment of the unpaid principal balance of the mortgage loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the Mortgagee thereunder.

(bb)    Mortgaged Property Undamaged. There is no proceeding pending or threatened for the total or partial condemnation of the Mortgaged Property. The Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect materially adversely the value of the Mortgaged Property as security for the mortgage loan or the use for which the premises were intended.

(cc)    Collection Practices; Escrow Deposits; Interest Rate Adjustments. The origination and collection practices used with respect to the Mortgage Loan have been pursuant

to Accepted Servicing Practices and have been in compliance with in all material respects with applicable laws and regulations. With respect to escrow deposits and Escrow Payments, all such payments are in the possession of the Seller and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made or for which repayment is not provided for in the Mortgage. Each Mortgage Loan is covered by a life of loan tax service contract. All Escrow Payments have been collected in compliance with applicable state and federal law. Where the applicable Mortgage Note or Mortgage so provides, an escrow of funds has been established in an amount sufficient to pay for each applicable item which remains unpaid and which has been assessed but is not yet due and payable. No escrow deposits or Escrow Payments or other charges or payments due the Seller have been capitalized under the Mortgage or the Mortgage Note. All interest rate adjustments in respect of Mortgage Loans have been made in strict compliance with state and federal law and the terms of the related Mortgage and Mortgage Note.

(dd) <u>Appraisal</u>. The Mortgage Loan File contains an appraisal of the related Mortgaged Property signed prior to the approval of the mortgage loan application by a qualified appraiser, duly appointed by or acceptable to the Seller, who had no interest, direct or indirect in the Mortgaged Property or in any loan made on the security thereof; and whose compensation is not affected by the approval or disapproval of the Mortgage Loan, and the appraiser and appraisal both satisfy requirements of the FHA or VA, if applicable. In the alternative, the Mortgage Loan File may contain other documentation of property value acceptable to the Agencies in lieu of an appraisal, including a Mortgagor's Statement of Value.

(ee) <u>Servicemembers Civil Relief Act</u>. The Seller has not received a written request for relief from the Mortgagor under the Servicemembers Civil Relief Act of 1940 or any similar state statute.

(ff) <u>Environmental Matters</u>. The Mortgaged Property is free from any and all toxic or hazardous substances and there exists no violation of any local, state or federal environmental law, rule or regulation. There is no pending action or proceeding directly involving any Mortgaged Property of which the Seller is aware in which compliance with any environmental law, rule or regulation is an issue; and nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation consisting of a prerequisite to use and enjoyment of said property; the underlying Mortgaged Property is not subject to any lien related to the existence of any clean-up of a hazardous substance.

(gg) <u>No Construction Loans</u>. No mortgage loan (i) was made for the construction or rehabilitation of a Mortgaged Property which has not been completed unless an adequate escrow account has been established for the completion of the construction or rehabilitation of such Mortgaged Property; (ii) provides for future advances of funds by the Seller which have not yet been advanced; or (iii) facilitates the trade-in or exchange of a Mortgaged Property.

(hh) <u>No Denial of Insurance</u>. No action, inaction, or event has occurred and no state of facts exists or has existed that has resulted or would result in the exclusion from, denial of, or defense to coverage under any applicable PMI Policy or bankruptcy bond, irrespective of the cause of such failure of coverage. In connection with the placement of any such insurance no

commission, fee, or other compensation has been or will be received by the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director or employee had a financial interest at the time of placement of such insurance, unless the receipt of such proceeds is in accordance with applicable law.

(ii)     Regarding the Mortgagor.  The Mortgagor is one or more natural persons, living trusts or Illinois land trusts and any such "living trust" is in compliance with FHLMC guidelines for such trusts.

(jj)     Condominiums/Planned Unit Developments.  If the Mortgaged Property is a condominium unit or a planned unit development for an FHA Loan or a VA Loan (other than a *de minimus* planned unit development) such condominium or planned unit development project meets FHA, VA and GNMA eligibility requirements for sale to GNMA or is located in a condominium or planned unit development project which has received FHA, VA and GNMA project approval and the representations and warranties required by the FHA, VA and GNMA with respect to such condominium or planned unit development have been made and remain true and correct in all material respects.

(kk)     FHA Mortgage Insurance; VA Loan Guaranty.  With respect to the FHA Loans, either (i) the FHA Mortgage Insurance Certificate is in full force and effect and there exist no material impairments to full recovery without indemnity to HUD or the FHA under FHA Mortgage Insurance or (ii) the Mortgage Loan meets all standards for the issuance of an FHA Mortgage Insurance Certificate.  With respect to the VA Loans, either (i) the VA Loan Guaranty Certificate is in full force and effect to the maximum extent stated therein or (ii) the Mortgage Loan meets all standards for the issuance of a VA Loan Guaranty Certificate.  To the extent such guaranty or insurance has been obtained all necessary steps have been taken to keep such guaranty or insurance valid, binding and enforceable as of the Closing Date and each of such is the binding, valid and enforceable obligation of the FHA and the VA, respectively, to the full extent thereof, without surcharge, set-off or defense as of the Closing Date.

(ll)     No Adverse Selection Procedures.  No portfolio of Mortgage Loans sold pursuant to a Transfer Supplement was selected from Mortgage Loans originated by the Seller or purchased by the Seller from third-parties in a manner so as to materially adversely affect the interests of the Purchaser.

(mm)     HOEPA.  No Mortgage Loan is (a) subject to, covered by or in violation of the provisions of the Homeownership and Equity Protection Act of 1994, as amended, (b) a "high cost", "covered", "abusive", "predatory", "threshold", "Oklahoma Section 10" or "high risk" mortgage loan (or a similarly designated loan using different terminology) under any federal, state or local law, including without limitation, the provisions of the Georgia Fair Lending Act, New York Banking Law, Section 6-l, the City of Oakland, California Anti-Predatory Lending Ordinance No. 12361, the Arkansas Home Loan Protection Act, effective as of June 14, 2003, Kentucky State Statute KRS 360.100, effective as of June 25, 2003, the New Jersey Home Ownership Security Act of 2002 (the "NJ Act") (or "covered refinancings", "home improvement loans", or loans secured by manufactured housing under the NJ Act), the New Mexico Home Loan Protection Act (N.M. Stat. Ann. §§ 58-21A-1 et seq.), the Illinois High-Risk Home Loan Act (815 Ill. Comp. Stat. 137/1 et seq.), the Oklahoma Home Ownership and Equity

Protection Act, Nevada Assembly Bill No. 284, effective as of Oct. 1, 2003, the Minnesota Residential Mortgage Originator and Servicer Licensing Act (MN Stat. §58.137), the South Carolina High-Cost and Consumer Home Loans Act, effective January 1, 2004, or any other statute or regulation providing assignee liability to holders of such mortgage loans, or (c) subject to or in violation of any such or comparable federal, state or local statutes or regulations.

(nn) <u>Property in Georgia</u>. No Mortgage Loan secured by a Mortgaged Property located in Georgia is either a "Covered Loan" or "High Cost Home Loan" within the meaning of the Georgia Fair Lending Act, as amended (the "<u>Georgia Act</u>"). In addition, no Mortgage Loan secured by a Mortgaged Property located in Georgia was originated prior to March 7, 2003 and after October 1, 2002.

(oo) <u>Qualified Forward Contracts</u>. After giving effect to the assignment of any (x) Series 2005-1 Qualified Forward Contract under this Purchase Agreement, the Purchaser (and the Servicer or the Collateral Agent acting on its behalf) shall have the full right and authority and all powers of attorney and other documentation necessary to deliver Series 2005-1 Mortgage Loans or Series 2005-1 Securitization Securities, as applicable, into such Series 2005-1 Qualified Forward Contract and to otherwise exercise the rights of the Seller thereunder without any action on the part of the Seller or obtaining any consent or waiver from the counterparty thereunder and (y) Series 2008-1 Qualified Forward Contract under this Purchase Agreement, the Purchaser (and the Servicer or the Collateral Agent acting on its behalf) shall have the full right and authority and all powers of attorney and other documentation necessary to deliver Series 2008-1 Mortgage Loans or Series 2008-1 Securitization Securities, as applicable, into such Series 2008-1 Qualified Forward Contract and to otherwise exercise the rights of the Seller thereunder without any action on the part of the Seller or obtaining any consent or waiver from the counterparty thereunder. Each Qualified Forward Contract is a genuine, legal, valid and binding obligation of the Seller and, to the knowledge of the Seller, the related Qualified Counterparty, enforceable against the Seller and, to the knowledge of the Seller, the related Qualified Counterparty, pursuant to its terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles. No Qualified Forward Contract is subject to any right of rescission, set-off, counterclaim or defense that would prevent the Purchaser (or the Servicer or the Collateral Agent, acting on its behalf) from exercising the rights of the Seller under such Qualified Forward Contract as assigned to the Purchaser hereunder.

(pp) <u>Deemed Representation</u>. If any representation and warranty required by mortgage loan buyers generally in purchases of mortgage loans having characteristics similar to the Mortgage Loan, or commercial paper conduits or other Financing parties in connection with the Financing of mortgage loans having characteristics similar to the Mortgage Loan is not covered by the representations and warranties in the foregoing subparagraphs <u>(a)</u> through <u>(oo)</u> (each, a "<u>Deemed Representation</u>"), then, upon prior written notice thereof to the Seller, the Purchaser and each Swap Counterparty from the Seller, the Servicer, the Issuer or any Swap Counterparty, such Deemed Representation shall be deemed to have been made with respect to such Mortgage Loan by the Seller as of the applicable Closing Date unless such Deemed Representation relates to the collectibility or credit risk of such Mortgage Loan and for which such Deemed Representation would constitute recourse to such Seller for the collectibility of such Mortgage Loan.

(qq)     Location of Improvements; No Encroachments.    As of the date the Appraised Value was determined, all improvements which were considered in determining the Appraised Value of the Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property and no improvements on adjoining properties encroach upon the Mortgaged Property.   No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning and building law, ordinance or regulation.

(rr)     No Buydown Provisions; No Graduated Payments or Contingent Interests. The Mortgage Loan does not contain provisions pursuant to which Monthly Payments are paid or partially paid with funds deposited in any separate account established by Seller, the Mortgagor or anyone on behalf of the Mortgagor, or paid by any source other than the Mortgagor nor does it contain any other similar provisions currently in effect which may constitute a "buydown" provision.   The Mortgage Loan is not a graduated payment mortgage loan and the Mortgage Loan does not have a shared appreciation or other contingent interest feature.

(ss)     Consolidation of Future Advances.    Any future advances made prior to the related Closing Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term.   The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first lien priority by a title insurance policy, an endorsement to the policy insuring the Mortgagee's consolidated interest or by other title evidence acceptable to FHLMC.

(tt)     Simple Interest Loans.    None of the Mortgage Loans are simple interest loans.

(uu)     [RESERVED].

(vv)     Mortgage Submitted for Recordation.    The Mortgage either has been or will promptly be submitted for recordation in the appropriate governmental recording office of the jurisdiction where the Mortgaged Property is located.

(ww)     Endorsements.    Each Note has been endorsed by a duly authorized officer of Seller for its own account and not as a fiduciary, trustee, trustor or beneficiary under a trust agreement.

(xx)     Single Premium Credit Insurance.    No Mortgagor was required to purchase any single premium credit insurance policy (e.g., life, mortgage, disability, accident, unemployment, property or health insurance product) or debt cancellation agreement as a condition of obtaining the extension of credit.

(yy)     Balloon Loans. No Mortgage Loan is a Balloon Loan.

(zz)     USA Patriot Act of 2001.    The Seller has complied with all applicable anti money laundering laws and regulations, including without limitation the USA Patriot Act of 2001 (collectively, the "Anti-Money Laundering Laws").   The Seller has established an anti-money laundering compliance program as required by the Anti-Money Laundering Laws, has

conducted the requisite due diligence in connection with the origination of each Mortgage Loan for purposes of the Anti-Money Laundering Laws, including with respect to the legitimacy of the applicable mortgagor and the origin of the assets used by the said mortgagor to purchase the property in question, and maintains, and will maintain, sufficient information to identify the applicable mortgagor for purposes of the Anti-Money Laundering Laws. No Mortgage Loan is subject to nullification pursuant to Executive Order 13224 (the "Executive Order") or the regulations promulgated by the Office of Foreign Assets Control of the United States Department of the Treasury (the "OFAC Regulations") or in violation of the Executive Order or the OFAC Regulations, and no Mortgagor is subject to the provisions of such Executive Order or the OFAC Regulations nor listed as a "blocked person" for purposes of the OFAC Regulations.

(aaa) <u>No Arbitration</u>. With respect to each Mortgage Loan, neither the related Mortgage nor the related Mortgage Note requires the Mortgagor to submit to arbitration to resolve any dispute arising out of or relating in any way to the Mortgage Loan transaction.

(bbb) [RESERVED].

(ccc) [RESERVED].

(ddd) <u>MERS Designated Loans</u>. With respect to each MERS designated Mortgage Loan, the related Assignment of Mortgage to MERS has been duly and properly recorded. With respect to each MERS Mortgage Loan, no Mortgagor has received any notice of liens or legal actions with respect to such Mortgage Loan and no such notices have been electronically posted by MERS.

Section 3.3 <u>Remedies for Breach of Representations and Warranties</u>. It is understood and agreed that the representations and warranties set forth in <u>Sections 3.1</u> and <u>3.2</u> hereof shall survive the sale of each Mortgage Loan to the Purchaser and the delivery of the Loan Documents to the Servicer and shall inure to the benefit of the Purchaser and the Collateral Agent and the Secured Parties notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or failure to examine any Mortgage Loan File. Upon discovery by any of the Seller, the Servicer or the Purchaser of a breach of any of the foregoing representations and warranties which adversely affects the value of any Mortgage Loan or the interest of the Purchaser (or which adversely affects the interest of the Purchaser in the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), the party discovering such breach shall give prompt written notice to the other, the Indenture Trustee, the Collateral Agent and the applicable Swap Counterparty.

Within five (5) Business Days of the earlier of either discovery by or notice to the Seller by any Person (including the applicable Swap Counterparty) of any breach of a representation or warranty set forth in <u>Section 3.2</u> (other than <u>Section 3.2(oo)</u>) hereof with respect to any Mortgage Loan, or a representation or warranty set forth in <u>Section 3.1</u> hereof, in either case, which adversely affects the value of such Mortgage Loan or the interests of the Purchaser, the Seller shall use commercially reasonable efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, or is not cured, within such five (5) Business Days time period, the Seller shall repurchase such Mortgage Loan at the Repurchase

Price. Within two (2) Business Days of the earlier of either discovery by or notice to the Seller by any Person (including the applicable Swap Counterparty) of any breach of a representation or warranty set forth in Section 3.2(oo) hereof, the Seller shall use commercially reasonable efforts promptly to cure such breach and, if such breach cannot be cured or is not cured within such two (2) Business Day period, the Seller shall either (x) replace each Qualified Forward Contract that is the subject of such breach with a Replacement Forward Contract with respect to which the representation or warranty in Section 3.2(oo) hereof would not be breached or (y) repurchase the Mortgage Loans allocated to the Qualified Forward Contract that is the subject of such breach at the Repurchase Price. Within five (5) Business Days of a Mortgage Loan becoming a First Pay Default Loan, the Seller shall use commercially reasonable efforts promptly to procure the related Mortgagor to cure such payment default and, if such default cannot be cured, or is not cured, within such five (5) Business Day time period, the Seller shall repurchase such Mortgage Loan at the Repurchase Price. Upon receipt of the Repurchase Price by the Collateral Agent, the Purchaser and the Seller shall arrange for the reassignment of the Mortgage Loan or Mortgage Loans to the Seller. The repurchase obligations described in this paragraph are separate from, and not to be accomplished pursuant to, Section 2.8 hereof.

With respect to the Qualified Forward Contract related to each Mortgage Loan that is either repurchased by the Seller or repaid in full, such Qualified Forward Contract shall be paired with a replacement Mortgage Loan for such repurchased or repaid Mortgage Loan within one (1) Business Day or such Qualified Forward Contract shall be sold by the Purchaser on the next Business Day thereafter. Any Series 2005-1 Mortgage Loan not bought back by the Seller pursuant to this Section 3.3 which is sold by the Servicer or the Collateral Agent on behalf of the Purchaser, will result in the assignment to the Series 2005-1 Swap Counterparty of the Purchaser's claim against the Seller under this Purchase Agreement to the extent of any amounts paid by such Swap Counterparty in respect of such Series 2005-1 Mortgage Loan as a Partial Termination Payment pursuant to the Series 2005-1 Interest Rate Swap. Any Series 2008-1 Mortgage Loan not bought back by the Seller pursuant to this Section 3.3 and sold by the Servicer or the Collateral Agent on behalf of the Purchaser, will result in the assignment to the Series 2008-1 Swap Counterparty of the Purchaser's claim against the Seller under this Purchase Agreement to the extent of any amounts paid by such Swap Counterparty in respect of such Series 2008-1 Mortgage Loan as a Partial Termination Payment pursuant to the Series 2008-1 Interest Rate Swap.

In addition to such repurchase obligation, the Seller shall indemnify the Purchaser and the Collateral Agent and the Secured Parties, and hold them harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses resulting from any third-party claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Seller's representations and warranties contained in this Purchase Agreement, but only to the extent such costs and expenses are not attributable to credit losses on the Mortgage Loans and are not otherwise included in the Repurchase Price; *provided, however*, that the Seller will not indemnify the Purchaser and the Collateral Agent for any credit losses with respect to the Eligible Loans. The Seller shall not be obligated under this indemnity for any indirect or consequential damages. It is understood and agreed that the obligations of the Seller set forth in this Section 3.3 to cure or repurchase a Mortgage Loan and to indemnify the Purchaser constitute the sole and exclusive

remedies of the Purchaser respecting a breach of the foregoing representations and warranties, or any First Pay Default Loans.

Section 3.4    Conditions to Amendment Closing Date.

(a)    Conditions to Amendment Closing Date. The obligations of the parties hereto under this Purchase Agreement (as amended and restated) are subject to the condition precedent that the Purchaser and the Company shall have received all of the following, each duly executed and dated as of the Amendment Closing Date (or such earlier date as shall be satisfactory to the Purchaser and the Company) in form and substance satisfactory to the Purchaser and the Company:

(i)    Facility Documents. The Purchase Agreement and each other Facility Document amended and restated as of the Amendment Closing Date, duly executed by each of the parties thereto as of the Amendment Closing Date.

(ii)    Resolutions; Organizational Documents.  In connection with the Amendment Closing Date, certified copies of resolutions of the Board of Directors of each of the Seller and the Servicer authorizing the execution, delivery and performance of this Purchase Agreement and each other Facility Document amended and restated as of the Amendment Closing Date to which it is a party, together with a certified copy of the organizational documents and governing instruments, as applicable, of each of the Seller, the Servicer and the Purchaser.

(iii)    Incumbency and Signatures. In connection with the Amendment Closing Date, a Certificate of the Secretary or an Assistant Secretary of each of the Seller, the Servicer, the Depositary, the Manager, the Indenture Trustee and each Swap Counterparty certifying the names of its officer or officers authorized to sign the Purchase Agreement, the Notes issued as of the Amendment Closing Date and the other amended and restated Facility Documents to which it is a party.

(iv)    Good Standing Certificates. In connection with the Amendment Closing Date, good standing certificates for the Seller, the Servicer and the Purchaser issued as of a recent date acceptable to the Purchaser, the Seller and the Servicer by the Secretary of State of each jurisdiction that the Purchaser, the Seller and the Servicer deem necessary or desirable.

(v)    Opinion of Counsel. In connection with the Amendment Closing Date, favorable opinions from counsel to Purchaser, the Seller, the Servicer, each Swap Counterparty, the Indenture Trustee and the Manager, in form and substance acceptable to the Purchaser, the Seller and the Servicer.

(vi)    [RESERVED].

(vii)    Ratings. In connection with the Amendment Closing Date, copies of letters evidencing (i) that the Series 2008-1 Notes are rated at least "A-1+" and "P-1" by S&P and Moody's, respectively and (ii) that Rating Agency Confirmation has been obtained with respect to all outstanding Series of Notes.

(viii) <u>Private Placement Memorandum</u>. In connection with the Amendment Closing Date, a final copy of the private placement memorandum relating to the Short Term Notes.

(ix) <u>DTC Letter of Representations</u>. In connection with the Amendment Closing Date, a copy of a Letter of Representations relating to the Series 2008-1 Notes executed by the Purchaser and accepted and agreed to by The Depository Trust Company.

(x) <u>Agreement as to Effectiveness</u>. The parties hereto agree to the effectiveness of this Purchase Agreement as of the Amendment Closing Date.

(xi) <u>Other</u>. In connection with the Amendment Closing Date, such other documents as the Purchaser or the Seller or the Servicer may reasonably request.

(b) <u>Conditions to Each Closing</u>. The obligation of the Purchaser to purchase the Mortgage Loans that are the subject of any Transfer Supplement shall be subject to satisfaction of each of the following conditions on or before the related Closing Date:

(i) All of the representations and warranties of the Seller contained in (A) Section 3.1 hereof and (B) only with respect to Mortgage Loans sold on the related Closing Date, Section 3.2 hereof, shall be true and correct in all material respects as of such Closing Date and no Servicer Event of Default shall have occurred and be continuing under this Purchase Agreement;

(ii) The Seller shall have delivered and released to the Custodian all documents, including, without limitation, any Qualifying Documents, required as of the Closing Date to be delivered to the Custodian pursuant to this Purchase Agreement and the Custodial Agreement; and

(iii) No Termination Event shall have occurred and be continuing.

Section 3.5    <u>Covenants of the Seller, the Servicer and the Purchaser</u>.

(a)    <u>Covenants of the Seller and the Purchaser</u>.

(i) <u>Factual Assumption in True-Sale/Non-Consolidation Opinion</u>. The Seller and the Purchaser shall maintain the truth and accuracy of all facts assumed by Cadwalader, Wickersham & Taft LLP in the true-sale/non-consolidation opinion and shall not take or omit to take any action that would result in a change to the continuing truth and accuracy of any of the factual assumptions in the true-sale/non-consolidation opinion.

(ii) <u>Accounting Treatment of Purchaser</u>. The Seller shall consolidate the assets and liabilities of the Purchaser with the assets and liabilities of the Seller in all Financial Statements published and prepared by the Seller, the Purchaser and their Affiliates in accordance with GAAP or any successor accounting standard thereto. Such Financial Statements shall contain a footnote substantially to the effect that the Purchaser

has been established by the Seller as a special-purpose warehouse finance subsidiary of the Seller, and that the Purchaser has purchased the Mortgage Loans and issued and sold the Notes.

(b)     Covenants of the Seller.

(i)     Licenses. The Seller shall maintain its qualifications to do business and all licenses necessary to perform its obligations hereunder except where the failure to maintain such qualification or license would not have a material adverse effect on its ability to perform its obligation under this Purchase Agreement.

(ii)     Changes in Origination and Underwriting Criteria. The Seller shall inform each Rating Agency rating any outstanding Notes and each Swap Counterparty of any material changes (as determined by the Seller) in its origination and underwriting practices and guidelines with respect to the Eligible Loans.

(iii)     LLC Agreement. The Seller shall comply with the covenants listed in Section 3.4 of the LLC Agreement.

(iv)     Reports.     During the term of this Purchase Agreement, the Seller shall furnish to Moody's (i) on a monthly basis such facility content reports and borrowing base reports as were prepared during the related month, (ii) a notification of any proposed renewal of any Interest Rate Swap prior to the date that is two months prior to the required renewal date of such Interest Rate Swap and (iii) promptly after renewal, a notification that such renewal of such Interest Rate Swap actually occurred.

(v)     Qualified Forward Contracts. With respect to each Qualified Forward Contract, the Seller shall (i) obtain Rating Agency Confirmation prior to (A) the assignment of its rights or obligations thereunder to another party or consenting to the assignment of the counterparty's rights and obligations thereunder and (B) modifying or waiving any provision thereof and (ii) provide notice to the Rating Agencies if such Qualified Forward Contract is terminated by either party thereto.

(c)     Covenants of the Servicer.

(i)     Servicing Standards/Sales and Securitizations.     The Servicer will administer and service Mortgage Loans, and arrange for the sale or Securitization of Mortgage Loans, pursuant to the terms of this Purchase Agreement, the Mortgage Notes, applicable law and Accepted Servicing Practices.

(ii)     Defaulted Loans. The Servicer shall sell on behalf of the Purchaser any Mortgage Loan that becomes a Defaulted Loan as soon as practicable after becoming a Defaulted Loan but in any event within twenty (20) days of obtaining actual knowledge that such Mortgage Loan has become a Defaulted Loan.

(iii)     Ten Percent Obligor. The Servicer shall use commercially reasonable efforts to arrange for sales or Securitizations of Mortgage Loans to assure that the unpaid principal balance of Series 2005-1 Mortgage Loans payable by a single obligor shall not

exceed 10% of the unpaid principal balance of all Series 2005-1 Mortgage Loans owned by the Purchaser at any time, and (ii) Series 2008-1 Mortgage Loans payable by a single obligor shall not exceed 10% of the unpaid principal balance of all Series 2008-1 Mortgage Loans owned by the Purchaser at any time.

(iv)     <u>Maintenance of Perfection and Priority</u>.  The Servicer covenants to maintain the perfection and priority of the security interest of the Purchaser and the Collateral Agent, on behalf of the Secured Parties, in the Mortgage Loans in accordance with <u>paragraph 12</u> of the Perfection Representations attached hereto as <u>Schedule A</u>.  The Servicer covenants not to pledge, transfer, assign, sell, dispose of or otherwise deliver any Loan Documents other than in accordance with the Facility Documents.

(v)     <u>Maintenance of List of Loans</u>.  Upon the written request of the Purchaser, the Servicer shall use commercially reasonable efforts to provide the Purchaser as soon as practicable, but in any event within one (1) Business Day of the request thereof, a list of all Mortgage Loans owned by the Purchaser as of the close of business on the Business Day preceding the date of such request (each, a "<u>List of Loans</u>").

(vi)     <u>Qualified Forward Contracts</u>.  The Servicer shall arrange for a Pricing Allocation or Sale Allocation, as applicable, to be made with respect to Qualified Forward Contracts, sufficient for the Forward Coverage Test to be complied with on each day, in accordance with its Customary Servicing Procedures.  The allocation of a Mortgage Loan from time to time to a particular Qualified Forward Contract shall not preclude the Servicer from changing such allocation at any time, or arranging for a Qualified Settlement, subject always to the terms of this Purchase Agreement and the other Facility Documents and subject to the requirement that Series 2005-1 Mortgage Loans shall only be allocated to Series 2005-1 Qualified Forward Contracts and Series 2008-1 Mortgage Loans shall only be allocated to Series 2008-1 Qualified Forward Contracts.  The Servicer shall maintain detailed records of all Qualified Forward Contracts, Qualified Settlements (including a record of each Predecessor Forward Contract, the related Replacement Forward Contract or Replacement Forward Contracts and the specific Mortgage Loans or Securitization Securities that were subject to the Predecessor Forward Contract and the Pricing Allocation or Sale Allocation of the Mortgage Loans and Securitization Securities to each Qualified Forward Contract).  The Servicer shall give written notice to the Issuer, the Collateral Agent, the Indenture Trustee, the Custodian, the applicable Swap Counterparty and the Rating Agencies, of any Qualified Counterparty that becomes a Defaulting Counterparty or an Ineligible Counterparty within one (1) Business Day of the occurrence of the Servicer becoming aware of the event pursuant to which such Person became a Defaulting Counterparty or Ineligible Counterparty, as the case may be.  The Servicer shall give written notice to the Issuer, the Short Term Note Dealers and the applicable Swap Counterparty of any violation or waiver of the Qualified Counterparty Concentration Limits.

(vii)     <u>Extension of Delivery Date</u>.  The Servicer shall only extend the delivery date of a Qualified Forward Contract in connection with a Qualified Settlement or if the Replacement Forward Contract provides for the same or higher delivery price (other than accrued interest) as the Predecessor Forward Contract.

(viii)    Assignment of Trades with GNMA.  The Servicer, on behalf of the Purchaser, shall not conduct any assignment of trade in respect of any Forward Trade with GNMA unless the Issuer is an Approved Seller to GNMA.

(ix)    Loan Documents.  The Servicer shall cause all closing agents and correspondents to deliver all Loan Documents to the Servicer's central loan processing center.

(x)    Reports.  During the term of this Purchase Agreement, the Servicer shall furnish to the Rating Agencies on a monthly basis such facility content reports and borrowing base reports as were prepared during the related month.

(xi)    Non-Delivered Non-Delinquent Loans.  Subject to Section 11.2 hereof, the Servicer shall sell on behalf of the Purchaser any Mortgage Loan that becomes a Non-Delivered Non-Delinquent Mortgage Loan not later than five (5) Business Days prior to the day that such Mortgage Loan may become a Delinquent Loan.  To the extent any Non-Delivered Non-Delinquent Mortgage Loan is not sold on or before the fifth (5th) Business Day prior to the day that such Mortgage Loan may become a Delinquent Loan (a "Failure to Sell Date"), the Collateral Agent shall hold an auction (a "Failure to Sell Auction") for the sale of such Non-Delivered Non-Delinquent Mortgage Loan for settlement not later than three (3) Business Days following the Failure to Sell Date.  The Collateral Agent shall notify potential bidders of the Failure to Sell Auction, including the Rated Bidder, who will be obligated to make a bid in such auction, and each Swap Counterparty.  The Collateral Agent shall sell such Non-Delivered Non-Delinquent Mortgage Loan to the highest bidder, including any Swap Counterparty that is the highest bidder.

(d)    Covenants of the Seller and the Servicer.

(i)    Defense of Title.  Seller warrants and will defend the right, title and interest of Purchaser in and to all Purchased Assets against all adverse claims and demands.

(ii)    No Amendment or Compromise.  None of Seller or those acting on Seller's behalf shall amend, modify, or waive any term or condition of, or settle or compromise any claim in respect of, any item of the Purchased Assets, any related rights or any of the Facility Documents without the prior written consent of Purchaser, except if such amendment or modification does not (i) affect the amount or timing of any payment of principal or interest payable with respect to a Mortgage Loan, extend its scheduled maturity date, modify its interest rate, or constitute a cancellation or discharge of its outstanding principal balance or (ii) materially and adversely affect the security afforded by the real property, furnishings, fixtures, or equipment securing the Mortgage Loan. Notwithstanding the foregoing, the Servicer may amend, modify or waive any term or condition of the Mortgage Loan in accordance with Accepted Servicing Practices; *provided* that Seller shall cause the Servicer to promptly notify Purchaser of any such amendment, modification or waiver.

(iii)    No Assignment.  Except as permitted herein, none of Seller or any Servicer shall sell, assign, transfer or otherwise dispose of, or grant any option with respect to, or pledge, hypothecate or grant a security interest in, or Lien on or otherwise encumber (except pursuant to the Facility Documents) any of the Purchased Assets or any interest therein, provided that this Section 3.5(d) shall not prevent any of the following: any contribution, sale, assignment, transfer or conveyance of Purchased Assets in accordance with the Facility Documents and any forward purchase commitment or other type of take out commitment for the Purchased Assets (without vesting rights in the related purchases as against Purchaser).

(iv)    Servicing of Loans.  Seller shall cause the Servicer to hold or cause to be held all escrow funds collected with respect to the Mortgage Loans in trust accounts in trust for the respective borrowers and shall apply the same for the purposes for which such funds were collected.  If Seller should discover that, for any reason whatsoever, the Servicer has failed to perform fully its servicing obligations with respect to the Mortgage Loans, Seller shall promptly notify Purchaser.

(v)    Nature of Business.  Seller shall not make any material change in the nature of its business as carried on at the date hereof.

(vi)    Insurance.  Seller will, and Seller shall cause the Servicer to, obtain and maintain insurance with responsible companies in such amounts and against such risks as are customarily carried by business entities engaged in similar businesses similarly situated, and will furnish Purchaser on request full information as to all such insurance, and provide within fifteen (15) days after receipt of such request the certificates or other documents evidencing renewal of each such policy.  Seller shall continue to maintain coverage, for itself and its subsidiaries, that encompasses employee dishonesty, forgery or alteration, theft, disappearance and destruction, robbery and safe burglary, property (other than money and securities), and computer fraud in an aggregate amount of at least $1,000,000.

(vii)    MERS.  The Servicer shall continue to be a member of MERS in good standing at all times during the term of this Agreement.

(e)    Notice to Swap Counterparty.  The Servicer shall provide each Swap Counterparty with prompt written notice of any event that would constitute a breach of Section 11.2(p) hereof.

Section 3.6    Representations and Warranties of the Purchaser.  The Purchaser represents and warrants to the Seller that as of each applicable Closing Date:

(a)    Due Organization.  The Purchaser is a limited liability company duly formed and validly existing under the laws of the State of Delaware;

(b)    Due Authorization; Enforceability.  The Facility Documents to which the Purchaser is a party, assuming due authorization, execution and delivery by the Manager, constitute valid and legally binding obligations of the Purchaser, enforceable against the Purchaser in accordance with their terms, subject, as to enforcement, to bankruptcy, insolvency,

reorganization and other similar laws of general applicability relating to or affecting creditors' rights and to general equity principles, regardless of whether such enforcement is considered in a proceeding in equity or at law;

(c) <u>No Conflicts</u>. The execution and delivery of the Facility Documents to which the Purchaser is a party by the Purchaser and its performance of and compliance with the terms of the Facility Documents to which the Purchaser is a party will not violate the Purchaser's LLC Agreement or certificate of formation, and will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under, any indenture, mortgage, deed of trust, loan agreement or other material agreement or instrument to which the Purchaser is a party or by which the Purchaser or to which any property or assets of the Purchaser is subject;

(d) <u>No Defaults</u>. The Purchaser is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state, municipal or governmental agency, which default might have consequences that would materially and adversely affect the condition (financial or other) or operations of the Purchaser or its properties or might have consequences that would affect its performance hereunder; and

(e) <u>No Litigation</u>. No litigation is pending or, to the Purchaser's knowledge, threatened against the Purchaser which would prohibit its entering into this Agreement or performing its obligations under this Agreement.

Section 3.7  <u>Perfection Representations</u>. The Perfection Representations shall be a part of this Purchase Agreement for all purposes.

# ARTICLE IV

# ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 4.1  <u>The Servicer; Servicing and Administration of the Mortgage Loans</u>. (a) (i) The Purchaser hereby appoints, authorizes and empowers the Servicer to perform all of the duties and responsibilities of the Servicer under this Purchase Agreement. The Servicer, as an independent contract servicer, shall service and administer the Mortgage Loans. The Servicer shall act in the best interest of and for the benefit of the Purchaser with a view to the maximization of timely recovery of principal and interest on the Mortgage Loans and in a manner that will maximize the proceeds of sales and Securitizations of the Mortgage Loans. The Servicer will perform under any Qualified Forward Contracts assigned to the Purchaser pursuant to <u>Section 2.1(a)</u> hereof. The Servicer will be required to service and administer each Mortgage Loan in accordance with the Guidelines and in the same manner in which, and with the same care, skill, prudence and diligence with which, it services and administers similar mortgage loans which it owns.

The Servicer shall service the Eligible Loans in a manner consistent with the Portfolio Criteria and the Portfolio Aging Limitations. Additionally, (x) as any Series 2005-1 Note becomes due and payable, whether pursuant to the terms thereof or by the occurrence of an Indenture Event of Default that results in the acceleration of the maturities of the Series 2005-1 Notes or Optional Repurchase, maturity or otherwise, the Purchaser shall cause the Servicer to

arrange for the sale or securitization of Series 2005-1 Mortgage Loans at such times and in such manner so that the proceeds of the sale or securitization, together with amounts received by the Purchaser in connection with the Series 2005-1 Interest Rate Swap, are available to pay amounts due and owing on such Series 2005-1 Notes at any time when due and owing and (y) as any Series 2008-1 Note becomes due and payable, whether pursuant to the terms thereof or by the occurrence of an Indenture Event of Default that results in the acceleration of the maturities of the Series 2008-1 Notes or Optional Repurchase, maturity or otherwise, the Purchaser shall cause the Servicer to arrange for the sale or securitization of Series 2008-1 Mortgage Loans at such times and in such manner so that the proceeds of the sale or securitization, together with amounts received by the Purchaser in connection with the Series 2008-1 Interest Rate Swap, are available to pay amounts due and owing on such Series 2008-1 Notes at any time when due and owing. Without limiting the foregoing, (x) in the event that on the Business Day prior to the Final Maturity of any Series 2005-1 Extended Notes or the third Business Day prior to the Final Maturity of any Series 2005-1 Non-Called Notes, there are insufficient funds on deposit in the sub-account of the Collateral Account attributable to the Series 2005-1 Notes to repay those Series 2005-1 Extended Notes and Series 2005-1 Non-Called Notes, and the Purchaser is unable to issue Series 2005-1 Short Term Notes or allocated Term Notes in an amount sufficient to repay the Series 2005-1 Extended Notes maturing on the next Business Day and the Series 2005-1 Non-Called Notes maturing on the third following Business Day, the Servicer shall use commercially reasonable efforts to obtain three (3) or more bids for the sale or securitization of one or more Series 2005-1 Mortgage Loans owned by the Purchaser (at least two (2) of which shall be from unaffiliated third-parties), and shall sell or securitize such Series 2005-1 Mortgage Loan(s) on such day to the highest bidder in a manner so that the proceeds from such sale or securitization, together with amounts received or to be received by the Purchaser in connection with the related Interest Rate Swap, are sufficient to repay the Series 2005-1 Extended Notes maturing on the next Business Day and the Series 2005-1 Non-Called Notes maturing on such third following Business Day; *provided, however,* that if such Series 2005-1 Extended Notes and Series 2005-1 Non-Called Notes have not been paid in full on the 30th day following the conversion of Secured Liquidity Notes and Callable Notes to Series 2005-1 Extended Notes and Series 2005-1 Non-Called Notes, as the case may be, the Servicer shall use commercially reasonable efforts to arrange for the sale or securitization of one or more Series 2005-1 Mortgage Loans owned by the Issuer, and shall sell or securitize such Series 2005-1 Mortgage Loan(s) in a manner so that the proceeds from such sale or securitization, together with amounts received or to be received by the Issuer in connection with the Series 2005-1 Interest Rate Swap, if any, are sufficient to repay such Series 2005-1 Extended Notes and Series 2005-1 Non-Called Notes on the 50th day following the conversion of such Series 2005-1 Notes to Series 2005-1 Extended Notes or Series 2005-1 Non-Called Notes, as the case may be, and if such Series 2005-1 Extended Notes and Series 2005-1 Non-Called Notes have not been paid in full on the 50th day following the conversion of such Series 2005-1 Notes to Series 2005-1 Extended Notes or Series 2005-1 Non-Called Notes, as the case may be, the Collateral Agent shall hold an auction (a "Principal Paydown Auction") of Series 2005-1 Mortgage Loans sufficient to pay such Series 2005-1 Extended Notes and Series 2005-1 Non-Called Notes for settlement not later than the 60th day following the conversion of such Series 2005-1 Notes to Series 2005-1 Extended Notes or Series 2005-1 Non-Called Notes, as the case may be, and (y) in the event that on the Business Day prior to the Final Maturity of any Series 2008-1 Extended Notes or the third Business Day prior to the Final Maturity of any Series 2008-1 Non-Called Notes, there are insufficient funds

on deposit in the sub-account of the Collateral Account attributable to the Series 2008-1 Notes to repay those Series 2008-1 Extended Notes and Series 2008-1 Non-Called Notes, and the Purchaser is unable to issue Series 2008-1 Short Term Notes or allocated Term Notes in an amount sufficient to repay the Series 2008-1 Extended Notes maturing on the next Business Day and the Series 2008-1 Non-Called Notes maturing on the third following Business Day, the Servicer shall use commercially reasonable efforts to obtain three (3) or more bids for the sale or securitization of one or more Series 2008-1 Mortgage Loans owned by the Purchaser (at least two (2) of which shall be from unaffiliated third-parties), and shall sell or securitize such Series 2008-1 Mortgage Loan(s) on such day to the highest bidder in a manner so that the proceeds from such sale or securitization, together with amounts received or to be received by the Purchaser in connection with the Series 2008-1 Interest Rate Swap, are sufficient to repay the Series 2008-1 Extended Notes maturing on the next Business Day and the Series 2008-1 Non-Called Notes maturing on such third following Business Day; *provided, however,* that if such Series 2008-1 Extended Notes and Series 2008-1 Non-Called Notes have not been paid in full on the 30th day following the conversion of Secured Liquidity Notes and Callable Notes to Series 2008-1 Extended Notes and Series 2008-1 Non-Called Notes, as the case may be, the Servicer shall use commercially reasonable efforts to arrange for the sale or securitization of one or more Series 2008-1 Mortgage Loans owned by the Issuer, and shall sell or securitize such Series 2008-1 Mortgage Loan(s) in a manner so that the proceeds from such sale or securitization, together with amounts received or to be received by the Issuer in connection with the Series 2008-1 Interest Rate Swap, if any, are sufficient to repay such Series 2008-1 Extended Notes and Series 2008-1 Non-Called Notes on the 50th day following the conversion of such Series 2008-1 Notes to Series 2008-1 Extended Notes or Series 2008-1 Non-Called Notes, as the case may be, and if such Series 2008-1 Extended Notes and Series 2008-1 Non-Called Notes have not been paid in full on the 50th day following the conversion of such Series 2008-1 Notes to Series 2008-1 Extended Notes or Series 2008-1 Non-Called Notes, as the case may be, the Collateral Agent shall hold a Principal Paydown Auction of Series 2008-1 Mortgage Loans sufficient to pay such Series 2008-1 Extended Notes and Series 2008-1 Non-Called Notes for settlement not later than the 60th day following the conversion of such Series 2008-1 Notes to Series 2008-1 Extended Notes or Series 2008-1 Non-Called Notes, as the case may be. The Collateral Agent shall notify potential bidders of the Principal Paydown Auction, including the Rated Bidder, who will be obligated to make a bid in any such auction. During the Principal Paydown Auction in respect of any Series 2005-1 Mortgage Loan, the Collateral Agent shall promptly notify the Series 2005-1 Swap Counterparty of the highest bid price obtained in the Principal Paydown Auction for such Series 2005-1 Mortgage Loan and such Swap Counterparty shall have the right to bid on such Series 2005-1 Mortgage Loan. During the Principal Paydown Auction in respect of any Series 2008-1 Mortgage Loan, the Collateral Agent shall promptly notify the Series 2008-1 Swap Counterparty of the highest bid price obtained in the Principal Paydown Auction for such Series 2008-1 Mortgage Loan and such Swap Counterparty shall have the right to bid on such Series 2008-1 Mortgage Loan. In either case, the Collateral Agent shall sell such Mortgage Loan to the highest bidder, including any applicable Swap Counterparty that is the highest bidder. Further, the Servicer shall use commercially reasonable efforts to arrange for sales and Securitizations of Mortgage Loans in such a fashion as shall assure that, after giving effect to such sales and Securitizations, the unpaid principal balance of (i) Series 2005-1 Mortgage Loans payable by a single obligor shall not exceed 10% of the unpaid principal balance of all Series 2005-1 Mortgage Loans owned by the Purchaser at any time, and (ii) Series

2008-1 Mortgage Loans payable by a single obligor shall not exceed 10% of the unpaid principal balance of all Series 2008-1 Mortgage Loans owned by the Purchaser at any time.

The Servicer shall, in accordance with Customary Servicing Practices, enforce for the benefit of the Purchaser, all rights of the Purchaser under each Qualified Forward Contract and shall arrange for the Sale Allocation and delivery of Mortgage Loans or Securitization Securities, as applicable, into the related Qualified Forward Contract in accordance with the terms of such Qualified Forward Contract. In the case of any Forward Trade, the Servicer shall cause Mortgage Loans to be delivered to the applicable Agency in compliance with the Guidelines of such Agency and the terms of the Master Agreement with the applicable Agency such that the Securitization Security issued in respect of such Mortgage Loans conforms to the requirements of such Forward Trade and is timely delivered thereunder.

Except as set forth in Section 2.8 hereof, the Company and any of its Affiliates may purchase any Delinquent Loans or Defaulted Loans from the Purchaser at any time and from time to time at par plus accrued interest payable in cash at closing and on such other terms as the Purchaser and any such purchaser shall agree. The Company and any of its Affiliates will not purchase any non-Delinquent Loans or non-Defaulted Loans from the Purchaser except for (a) purchases of Mortgage Loans pursuant to Section 2.8 hereof or pursuant to the repurchase obligations of the Seller or the Servicer pursuant to Sections 3.3 or 6.2 hereof, (b) sales by the Purchaser to Securitization Vehicles affiliated with the Seller, or (c) purchases by the Seller of Mortgage Loans for the purpose of facilitating a sale of such Mortgage Loans to an unaffiliated third-party pursuant to an arrangement entered into by the Seller and such unaffiliated third-party prior to the purchase of such Mortgage Loans, where (i) the Purchaser could not sell such Mortgage Loans directly to such unaffiliated third-party because of contractual, regulatory or operational issues or restrictions and (ii) the purchase price paid by the Seller for such Mortgage Loans would not be less than the purchase price that the Purchaser would otherwise have been entitled to receive had it sold such Mortgage Loans directly to such unaffiliated third-party.

(ii)     Except to the extent that this Purchase Agreement provides for a contrary specific course of action, the Servicer shall service and administer each Mortgage Loan without regard to (a) any other relationship that the Servicer, any sub-servicer or any Affiliate of the Servicer or any sub-servicer may have with the borrowers or any Affiliate of such borrowers, (b) the ownership of any Subordinated Note by the Servicer, or any sub-servicer or any Affiliate of either, (c) the Servicer's obligations to make any Servicer Monthly Advances, Servicing Advances or to incur servicing expenses with respect to each Mortgage Loan, (d) the Servicer's or any sub-servicer's right to receive compensation for its services under this Purchase Agreement or with respect to any particular transaction or (e) the ownership, servicing or management for others by the Servicer or any sub-servicer of any other mortgage loans or property. The Servicer shall maintain its qualification to do business and all licenses necessary to perform its obligations hereunder.

(b)     The Servicer may enter into additional servicing or sub-servicing agreements with third-parties with respect to any of its respective obligations hereunder; *provided* that any such agreement shall be consistent with the provisions of this Purchase Agreement, that the Servicer shall have obtained the consent of each Swap Counterparty and no

sub-servicer (or its agent or subcontractors) shall grant any modification, waiver or amendment to any mortgage loan without the approval of the Servicer. Notwithstanding any servicing or sub-servicing agreement, any of the provisions of this Purchase Agreement relating to agreements or arrangements between the Servicer and any Person acting as servicer or sub-servicer (or its agents or subcontractors) or any reference to action taken through any Person acting as servicer or sub-servicer or otherwise, the Servicer shall remain obligated and primarily liable to the Purchaser for the servicing and administering of the mortgage loans and arranging for the sale and Securitization of each mortgage loan pursuant to the provisions of this Purchase Agreement without diminution of such obligation or liability by virtue of such servicing or sub-servicing agreements or arrangements or by virtue of indemnification from any Person acting as servicer or sub-servicer (or its agents or subcontractors) to the same extent and under the same terms and conditions as if the Servicer alone were engaging in such activities. In the event the Servicer is a sub-servicer, the Purchaser shall be entitled to proceed directly against the Servicer as sub-servicer to enforce the Servicer's obligations to the Purchaser.

(c)    Without limiting the generality of the foregoing, the Servicer is hereby authorized and empowered to waive, modify or vary any term of any mortgage loan or consent to the postponement of compliance with any such term or in any manner grant indulgence to any Mortgagor if in the Servicer's reasonable and prudent determination such waiver, modification, postponement or indulgence is not materially adverse to the Purchaser and such waiver, modification, postponement or indulgence is done in accordance with Accepted Servicing Practices. Without limiting the generality of the foregoing, the Servicer shall continue, and is hereby authorized and empowered, to execute and deliver on behalf of itself and the Purchaser all instruments of satisfaction or cancellation, or of partial or full release, discharge and all other comparable instruments, with respect to each Mortgage Loan and with respect to the related Mortgaged Property. If reasonably required by the Servicer, the Purchaser shall furnish the Servicer with any powers of attorney, in recordable form, and other documents necessary or appropriate to enable the Servicer to carry out its servicing and administrative duties under this Purchase Agreement.

Section 4.2    Sales and Securitizations. (a) Subject to the servicing standards described in Section 4.1 hereof, the Servicer shall have full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration that it may deem necessary and desirable in connection with arranging for the sale and Securitization of Conforming Loans with FHLMC, GNMA, other Securitization Vehicles or third-party purchasers, including, without limitation, the authority to identify and make a Sale Allocation of particular Mortgage Loans to a Qualified Forward Contract and deliver Mortgage Loans owned by the Purchaser to fulfill a Qualified Forward Contract. The Purchaser shall cause all Forward Trades to be Qualified Forward Contracts at all times and, except pursuant to any Qualified Settlement, shall not, without the prior written consent of (i) in the case of a Series 2005-1 Qualified Forward Contract, the Series 2005-1 Swap Counterparty, amend any Series 2005-1 Qualified Forward Contract in any respect that is adverse to the Purchaser or in any manner that would cause such Forward Trade not to be a Series 2005-1 Qualified Forward Contract and (ii) in the case of a Series 2008-1 Qualified Forward Contract, the Series 2008-1 Swap Counterparty, amend any Series 2008-1 Qualified Forward Contract in any respect that is adverse to the Purchaser or in any manner that would cause such Forward Trade not to be a Series 2008-1 Qualified Forward Contract. Except to the extent permitted by the Facility

Documents, the Purchaser shall not sell, transfer, pledge or assign (x) any Mortgage Loan except pursuant to a Sales Allocation under either a Qualified Forward Contract or to an Agency pursuant to the applicable Qualifying Documents, or (y) any Securitization Security except pursuant to a Qualified Forward Contract. No Mortgage Loan or Securitization Security shall be delivered in respect of any Qualified Forward Contract prior to the settlement date or trade date set forth therein. No Qualified Forward Contract shall be transferred, sold, assigned, pledged or subject to any claim, participation interest or security interest, or, except in the case of a Qualified Settlement, paired off or otherwise settled other than through physical delivery of the Mortgage Loans or Securitization Securities, as applicable, to the counterparty named in such Qualified Forward Contract; *provided* that no such Qualified Settlement may be performed unless, on the same Business Day on which the Predecessor Forward Contract is settled pursuant to such Qualified Settlement, one or more Replacement Forward Contracts are established in respect of each Mortgage Loan which was subject to the Predecessor Forward Contract. In connection with any Securitization of Mortgage Loans, in the event the Purchaser receives Securitization Securities from the Securitization Vehicle in exchange for such Mortgage Loans, the Servicer shall, on behalf of the Purchaser and subject to the covenant set forth in (y) above, deliver such Securitization Security into the related Qualified Forward Contract in accordance with the terms of such Qualified Forward Contract and, in the event such Qualified Forward Contract fails to exist, shall arrange for the sale of such Securitization Securities after such failure; *provided* that any such Securitization Security that is (x) not issued by at least one of FHLMC and GNMA or (y) rated below "AAA" by S&P and/or "Aaa" by Moody's shall be sold by the Servicer within two (2) Business Days of receipt thereof by the Purchaser. The proceeds of sale of any Securitization Security and the proceeds of sale of any whole loan will be remitted directly to the applicable sub-account of the Collateral Agent at the direction of the Servicer on the settlement date for such sale and will be deposited into the applicable sub-account of the Collateral Account maintained by the Collateral Agent on the day of receipt.

(b)     With respect to each Securitization or sale, as the case may be, entered into by the Purchaser, the Servicer agrees:

(i)     To cooperate fully with the Purchaser, any prospective purchaser, any Rating Agency, any Securitization Vehicle or any party to any agreement executed in connection with such sale or Securitization of the Mortgage Loans, with respect to all reasonable requests and due diligence procedures and to use commercially reasonable efforts to facilitate such sale or Securitization, as the case may be;

(ii)     To restate as of each closing date of a sale or Securitization, as the case may be, the representations and warranties contained in Section 3.1 hereof and to state that it has no knowledge, based on its activities as servicer hereunder, that any representations and warranties contained in Section 3.2 hereof (excluding Section 3.2(d) hereof) are untrue as of the date thereof or that any event or circumstance arose after the related Closing Date that would cause such representation or warranty to be inaccurate in any material respect as of the closing date of such sale or Securitization;

(iii)     To deliver to the Purchaser for inclusion in any prospectus or other offering material such written information regarding the Seller and the Servicer, their respective financial condition, their mortgage loan origination and servicing experience,

and their mortgage loan delinquency, foreclosure and loss experience as shall be reasonably requested by the Purchaser and to indemnify and hold harmless the Purchaser against certain liabilities, losses and expenses arising under the Securities Act in connection with any material misstatement contained in such written information or any omission of a material fact the inclusion of which was necessary in order to make such written information not materially misleading in light of the circumstances under which it was made; and

(iv)    To deliver to the Purchaser and to any Person designated by the Purchaser, such opinions of counsel as are customarily delivered by originators/servicers in connection with sales or Securitizations, as the case may be.

All Mortgage Loans not sold or transferred pursuant to a sale or Securitization shall continue to be serviced pursuant to the terms of this Purchase Agreement.

(c)    Upon the sale or Securitization of any Mortgage Loan, the rights and obligations of the Servicer hereunder with respect to such Mortgage Loan shall be terminated on the effective date of such sale or Securitization. Upon written request from the Purchaser, the Servicer shall prepare, execute and deliver to the successor entity designated by the Purchaser any and all documents and other instruments, place in such successor's possession all Mortgage Loan Files, and do or cause to be done all other acts or things necessary or appropriate to effect the purposes of such termination, including but not limited to the transfer and endorsement or assignment of the Mortgage Loans and related documents, at the Servicer's sole expense. The Servicer shall cooperate with such successor in effecting the termination of the Servicer's responsibilities and rights hereunder, including without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Servicer to any Collection Account or Escrow Account or thereafter received with respect to the Mortgage Loan, subject to the Servicer's right to withdraw any amounts it is entitled pursuant to this Purchase Agreement. Notwithstanding any other provision of this Purchase Agreement to the contrary, neither the Issuer or any designated agent on behalf of the Issuer shall have the power or authority to, prior to the sale or Securitization of any Mortgage Loan, make a distribution to the Seller (or to any designated agent or Affiliate on its behalf) of any servicing rights relating to such Mortgage Loan.

(d)    If the Collateral Agent arranges for the sale of Mortgage Loans by the Issuer pursuant to this Purchase Agreement and (x) the aggregate sale price of any Mortgage Loans sold on any Business Day to a particular buyer (including any Securitization Vehicle), as set forth in the related sale notice, is less than ninety-three percent (93%) of the aggregate Outstanding Purchase Price of such Mortgage Loans or (y) a Termination Event has been declared or an automatic Termination Event has occurred, then without limitation of any of the Servicer's or the Purchaser's obligations hereunder or under any of the other Facility Documents, the applicable Swap Counterparty, the Servicer and the Collateral Agent shall agree to cooperate in connection with the sale, delivery and assignment of the Mortgage Loans, Securitization Securities, Qualified Forward Contracts and Forward Trades in a manner which will maximize the sales proceeds and net Settlement Receipts from the sale of such Mortgage Loans, Securitization Securities, Qualified Forward Contracts and Forward Trades; *provided* that (1) the Series 2005-1 Swap Counterparty shall have the right to direct the sale of any Series 2005-1

Mortgage Loan and (2) the Series 2008-1 Swap Counterparty shall have the right to direct the sale of any Series 2008-1 Mortgage Loan, in each case, that (x) is not (i) a Delinquent Loan or a Defaulted Loan (other than Delinquent Loans and Defaulted Loans for which the current market value (as determined by QRM or a successor third-party pricing source agreed to by the Servicer and the applicable Swap Counterparty) of the related Reference Mortgage Loan is less than ninety-three percent (93%) of the Outstanding Purchase Price of such Delinquent Loan or Defaulted Loan) and (ii) subject to a Qualified Forward Contract and (y) has a current market value (as determined by QRM or a successor third-party pricing source agreed to by the Servicer and the applicable Swap Counterparty) less than ninety-three percent (93%) of the aggregate Outstanding Purchase Price of such Mortgage Loan.

Section 4.3    Liquidation of Mortgage Loans.  In the event that any payment due under any Mortgage Loan is not paid when the payment becomes due and payable, by Servicer Monthly Advance or otherwise, or in the event that the Mortgagor fails to perform any other covenant or obligation under the Mortgage Loan and such failure continues beyond any applicable grace period, the Servicer shall take such action as the Servicer would take under similar circumstances with respect to a similar mortgage loan held for its own account for investment, which action shall be consistent with Accepted Servicing Practices and in the best interest of the Purchaser, and which action shall be consistent with the related PMI Policy, if any; *provided, however,* that any Defaulted Loan will be sold by the Servicer on behalf of the Purchaser as soon as practicable after becoming a Defaulted Loan.

Section 4.4    Collection of Mortgage Loan Payments.  The Servicer shall proceed diligently, pursuant to Accepted Servicing Practices, to collect all payments called for under the terms and provisions of each Mortgage Loan it is obligated to service hereunder and shall follow such collection procedures as are consistent with this Purchase Agreement (including without limitation, the servicing standards set forth in Section 4.1 hereof) and Accepted Servicing Practices.  The Servicer shall ascertain and estimate, in accordance with Accepted Servicing Practices, Escrow Payments and all other charges that will become due and payable with respect to each Mortgage Loan and the Mortgaged Property, to the end that the installments payable by the Mortgagors will be sufficient to pay such charges as and when they become due and payable.  The Servicer shall segregate and hold all payments received by it separate and apart from any of its funds and general assets and in trust for the Secured Parties and shall apply such payments as provided in Section 4.5 hereof.  The accounts established by the Servicer pursuant to this Article IV may include any number of sub-accounts for convenience in administering the Mortgage Loans.

Section 4.5    Establishment of, and Deposits to, Collection Account.  (a) The Servicer shall establish with the Collateral Agent a single, segregated trust account which shall be designated as the collection account (the "Collection Account"), which shall be held in trust in the name of the Collateral Agent for the benefit of the Secured Parties.  The Collection Account shall include two sub-accounts, one of which shall be held in trust for the benefit of the Series 2005-1 Noteholders and the Series 2005-1 Swap Counterparty, and one of which shall be held in trust for the benefit of the Series 2008-1 Noteholders and the Series 2008-1 Swap Counterparty. The Servicer shall from time to time deposit, within two (2) Business Days of the receipt thereof, and retain (x) in the sub-account of the Collection Account established for the benefit of the Series 2005-1 Noteholders and the Series 2005-1 Swap Counterparty, the following collections

received by the Servicer in respect of Series 2005-1 Purchased Assets and (y) in the sub-account of the Collection Account established for the benefit of the Series 2008-1 Noteholders and the Series 2008-1 Swap Counterparty, the following collections received by the Servicer in respect of Series 2008-1 Purchased Assets:  (i) all payments on account of scheduled principal on the related Mortgage Loans, (ii) all payments on account of interest on the related Mortgage Loans (including Acquisition Date Accrued Interest), (iii) any Principal Prepayments on the related Mortgage Loans other than Principal Prepayments in full of the related Mortgage Loans, (iv) all related Liquidation Proceeds, (v) all Insurance Proceeds including amounts required to be deposited pursuant to <u>Section 4.11</u> (other than proceeds to be held in the Escrow Account and applied to the restoration or repair of the Mortgaged Property or released to the Mortgagor in accordance with Accepted Servicing Practices as specified in <u>Section 4.15</u> hereof), <u>Section 4.12</u> and <u>Section 4.16</u> hereof, (vi) all Condemnation Proceeds which are not applied to the restoration or repair of the Mortgaged Property or released to the Mortgagor pursuant to <u>Section 4.15</u> hereof, (vii) any amounts required to be deposited by the Servicer pursuant to <u>Section 4.11</u> hereof in connection with the deductible clause in any blanket hazard insurance policy, (viii) any amounts received with respect to or related to any REO Property and all REO Disposition Proceeds pursuant to <u>Section 4.17</u> hereof and (ix) any other amounts received with respect to or related to the related Mortgage Loan but not including late payment charges and interest paid on funds deposited in the Escrow Account, to the extent permitted by applicable law, which shall be retained by the Servicer for its own account.  The Collection Account shall be established with a Qualified Institution acceptable to the Purchaser.

(b)     All monies on deposit in the Collection Account shall be invested by the Servicer in Eligible Investments having maturities no later than the next Distribution Date.

Section 4.6     <u>Permitted Withdrawals From Collection Account and Collateral Account; Deposit into the Collateral Account</u>. (a) The Servicer shall have the right, from time to time, to withdraw any amounts deposited into the Collection Account by mistake or overpayment or as otherwise required to make adjustments to amounts deposited therein in accordance with ordinary and normal servicing adjustments.  In connection with any withdrawals of amounts deposited by the Servicer into the Collateral Account by mistake or overpayment or as otherwise required to make adjustments to amounts deposited therein in accordance with ordinary and normal servicing adjustments, the Servicer shall provide the Collateral Agent with a written request, including such information with respect to such withdrawals as such Collateral Agent may reasonably request to justify such withdrawal.  Upon receipt of such request, the Collateral Agent shall direct the Qualified Depository maintaining the Collateral Account to make such withdrawal from the Collateral Account and deposit it with the Servicer; *provided* that, if such request is for an amount less than $10,000 and the aggregate amount withdrawn from the Collateral Account under this proviso in the current Due Period is less than $50,000, such request may be honored by the Qualified Depository upon a telephonic or electronic request from the Servicer and without direction from the Collateral Agent.

(b)     Pursuant to the terms of the Security Agreement, the Collateral Agent shall establish a single, segregated, non-interest bearing trust account which shall be designated as the collateral account (the "<u>Collateral Account</u>"), which shall be held in trust in the name of the Collateral Agent for the benefit of the Secured Parties and over which the Collateral Agent