**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | |
| TAYLOR BEAN & WHITAKER ) | Case No. 09-07047-JAF |
| MORTGAGE CORP., et al., ) | Chapter 11 |
| ) | |
|         Debtors. ) | |
| _____ ) | |

**MOTION FOR (i) RELIEF FROM THE AUTOMATIC STAY**
**AND (ii) TO PROHIBIT USE OF CERTAIN FUNDS**

Wells Fargo Bank, National Association ("Wells Fargo"), in its capacity as master servicer (the "Master Servicer") in each of the residential mortgage-backed securitizations described below, moves this Court for relief from the automatic stay of 11 U.S.C. § 362(a) and to prohibit use of certain funds,[1] and shows this Court the following:

*Factual Background*

1. Wells Fargo is the Master Servicer, and Taylor Bean & Whitaker Mortgage Corp. ("TBW"), a debtor in possession in this case, is a Designated Servicer or a Servicer (in either such capacity, the "Servicer") in each of the twelve residential mortgage-backed securitizations listed on Exhibit 1 (the "Trusts").

2. Each of the Trusts was created pursuant to the terms of a pooling and servicing agreement or other similar transaction document, which are listed on Exhibit 2 (the "Pooling Agreements"). Each Trust issued various classes of securities (the "Securities") backed by the assets contained in each of the Trusts.

---

[1] Wells Fargo reserves all objections to the exercise by this Court of jurisdiction over any claims which the Debtor or any party may assert against it. This Motion is brought before this Court only because 28 U.S.C. § 1334(e) and § 362 of Title 11 of the United States Code require that such motions be addressed to this Court, and solely to obtain the relief to which the Movants are entitled, as contemplated by 11 U.S.C. § 362(d)(1).

3.     The assets of each Trust are certain pools of residential mortgage loans. Payment on the Securities issued by each of the Trusts is entirely dependent upon payments received with respect to the mortgage loans included in each of the Trusts.

4.     In its capacity as Servicer, TBW plays a central role in the day-to-day management of the mortgage loans and serves as the primary liaison between each of the Trusts and the borrowers of the mortgage loans (the "<u>Mortgagors</u>"). The primary obligations of the Servicer are detailed in separate servicing agreements issued in connection with each of the Trusts, which are listed on Exhibit 4 (collectively, the "<u>Servicing Agreements</u>"). Those obligations include (i) collecting payments on the mortgage loans, including any property taxes and insurance premiums, (ii) establishing and maintaining necessary custodial and escrow accounts to be held in trust for each of the Trusts, into which all payments received from the Mortgagors are required to be deposited, (iii) advancing certain amounts with respect to principal and interest payments that were due on the mortgage loans during the applicable period and which were delinquent at the close of business on the immediately preceding determination date for a particular trust, (iv) monitoring and identifying delinquent mortgage loans, and taking all relevant action related to such delinquent loans, including participation in foreclosure proceedings, (v) remitting funds collected on the mortgage loans to the Master Servicer or securities administrator of each of the Trusts, and (vi) providing specific reports, data, and information regarding the mortgage loans to the Master Servicer.

5.     Wells Fargo, in its capacity as Master Servicer of each of the Trusts, is responsible for monitoring, overseeing and enforcing TBW's obligation to service the mortgage loans in accordance with the terms of the applicable Servicing Agreements.

6.      Each of the Servicing Agreements lists certain circumstances which constitute an event of default on the part of the Servicer (each, an "Event of Default").  If an Event of Default occurs, TBW may be removed as Servicer in accordance with the terms of the applicable Servicing Agreements.  As part of its oversight responsibilities as Master Servicer, Wells Fargo is the party authorized to remove TBW as Servicer under each of the Servicing Agreements upon the occurrence of an Event of Default.

7.      One of the Events of Default listed in each Servicing Agreement is the failure of TBW to maintain certain minimum eligibility requirements.  Such eligibility criteria require, among other things, that TBW be a Freddie Mac-approved servicer in good standing, and for certain of the Trusts, that TBW be a HUD-approved mortgagee.

8.      On August 4, 2009, Freddie Mac notified TBW that TBW's eligibility as a Freddie Mac seller and servicer was terminated for cause, effective immediately.  Pursuant to a press release also dated August 4, 2009, the United States Department of Housing and Urban Development ("HUD") announced it had suspended TBW's HUD/FHA origination and underwriting approval.

9.      In response to the actions of Freddie Mac and HUD, Wells Fargo notified TBW that an Event of Default had occurred under each of the Servicing Agreements and, pursuant to its authority as Master Servicer under each of the Pooling Agreements and Servicing Agreements, Wells Fargo terminated TBW as Servicer for each of the Trusts on August 13, 2009.  Copies of such notices are attached as Exhibit 9.

10.     Notwithstanding its termination as Servicer, TBW was required to continue to discharge its duties and responsibilities as Servicer under each of the Servicing Agreements until the date of appointment of a successor servicer.  In

accordance with such ongoing obligations, on August 18, 2009 (the "Remittance Date"), TBW was required to remit to Wells Fargo, as Master Servicer for each of the Trusts, all amounts received from the Mortgagors and any advance amounts owed by TBW under the Servicing Agreement for each of the Trusts. TBW failed to remit any amounts to Wells Fargo on the Remittance Date for any of the Trusts. Such total amount for all Trusts was $47,722,524.24 and is further detailed on Exhibit 10.

11. The Servicing Agreements for each of the TBW 2006-6 and TBW 2007-1 Trusts state that such failure of the Servicer to timely remit any payment due *immediately* results in an additional Event of Default. The Servicing Agreements for each of the other Trusts state that any failure by the Servicer to timely remit any payment due, which continues for a period of one business day after the date upon which written notice of such failure to remit is delivered, shall also constitute an Event of Default.

12. On August 20, 2009, Wells Fargo gave TBW notice of the occurrence of an *additional* Event of Default under the terms of each of the Servicing Agreements. For each of the TBW 2006-6 and TBW 2007-1 Trusts, TBW was notified that its failure to remit funds resulted in an additional Event of Default effective as of the date of such notice. A copy of these notices for the TBW 2006-6 and TBW 2007-1 Trusts is attached hereto as Exhibit 12.

13. For each of the other Trusts, TBW's failure to remit funds was subject to a one business day cure period after the date of the notice, and any failure to cure a late remittance after such date would be deemed to result in an additional Event of Default. A copy of these notices is attached hereto as Exhibit 13. TBW failed to cure the late remittances within one business day of the date of the notice.

14.     As of the date of this motion, TBW has not remitted any funds to any of the Trusts.

15.     In each Servicing Agreement, TBW either (i) had no right to cure the defaults specified in the notices or (ii) failed to cure at least one of the defaults within the time allowed for a cure.  Accordingly, TBW has been validly terminated pre-petition as Servicer for each of the Trusts.

16.     Each of the applicable Servicing Agreements and Pooling Agreements provides that, after the Servicer has been terminated, the Master Servicer has responsibility of either assuming the servicing of the mortgage loans or appointing a separate successor servicer.

17.     Wells Fargo intends to fully transition servicing of the mortgage loans in each Trust to a third party servicer as quickly as it is able and has engaged in discussions with potential successor servicers to eventually assume full responsibilities as Servicer.

18.     Each of the Servicing Agreements requires that, after TBW has been terminated as Servicer, TBW is required to cooperate with the Master Servicer in effecting the transfer of servicing to a successor servicer.  In connection with such cooperation, TBW must generally, among other things:

> (a) prepare, execute an deliver to the successor servicer any and all documents and other instruments;
>
> (b) place in such successor servicer's possession all Servicer Files (as that term is defined in the Servicing Agreements);
>
> (c) do or cause to be done all such other acts or things necessary or appropriate to effect such a termination, including but not limited to the transfer and endorsement or assignment of the serviced mortgage loans and related documents, at TBW's sole expense;
>
> (d) cooperate in effecting the termination of TBW's responsibilities and rights as Servicer, including without limitation the transfer to the

successor servicer for administration by it of all amounts which before termination were credited by TBW to any custodial account, escrow account or were received by TBW after such termination with respect to the serviced mortgage loans or any REO Property (as that term is defined in the Servicing Agreements); and

(e) account for all funds.

19. Each Servicing Agreement requires that TBW segregate and hold all funds collected and received pursuant to the mortgage loans serviced by TBW separate and apart from any of its own funds and general assets, and establish and maintain one or more custodial accounts and escrow accounts for each Trust. TBW is not permitted to withdraw funds from such accounts except as specifically authorized by the Servicing Agreements. Except with respect to certain fees and reimbursements which, prior to TBW's termination as Servicer, TBW could pay to itself from such accounts, TBW has no right, title or interest in any of the funds received pursuant to the mortgage loans serviced by it under the Servicing Agreements, and all such funds (the "Funds") are the property of the Trusts held for the benefit of the holders of the Securities, or property of the Mortgagors, held in escrow to pay taxes, insurance and similar charges for the benefit of the Mortgagors.

20. TBW has failed and refused to perform its obligations following its termination as Servicer, including but not limited to the obligations set out in paragraph 18 above, and without any right to do so, has retained possession, custody or continues to exercise control over (i) uncashed checks of mortgagors who have tried to pay their mortgage payments; (ii) receipt of mortgage payments initiated, but not completed, as "ACH" automated payments by mortgagors who have tried to pay their mortgage payments; (iii) the Funds on deposit at one or more depositories; (iv) data and servicing files necessary for any third party to perform the tasks of successor servicer.

21.     In order to quickly and seamlessly transition servicing to a successor servicer, which is essential for the protection of the holders of the Securities and the interests of the Mortgagors, it is imperative that TBW immediately and fully comply with its obligations to assist with the transition of servicing to the successor servicer. Delay in such compliance could result in substantial and irreparable harm to such holders of Securities, any certificate insurer on any trust, and the Mortgagors.

*Relief Requested*

22.     Wells Fargo requests that (i) the Court enter an order terminating and vacating the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code to allow it to take all necessary steps to gain possession, custody, and control over all property in TBW's possession (including the Funds) that should be transferred to Wells Fargo or a successor servicer under the terms of the Servicing Agreements (or alternatively, order that such property is not protected by the automatic stay or any other provision of the Bankruptcy Code, as such property is not property of the estate), and that (ii) to the extent that TBW asserts that any portion of the Funds is property of the estate, that this Court prohibit TBW from using any such Funds.

23.     Section 362(c) of the Bankruptcy Code provides that:

Except as provided in subsections (d), (e), (f) and (h) of this section–

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate ....

24.     Section 362(d) of the Bankruptcy Code provides that:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

25. While a debtor in possession may use property of the estate in accordance with the provisions of 11 U.S.C. § 363, the Funds are not property of TBW's estate. 11 U.S.C. § 541(d). To the extent that TBW asserts that any portion of the Funds are property of the estate, Wells Fargo, as Master Servicer, for the benefit of the Trusts, asserts an interest in such Funds, and accordingly, such Funds constitute cash collateral and Wells Fargo does not consent to the use of any such cash collateral. Accordingly, TBW cannot use cash collateral without court authorization. 11 U.S.C. § 363(c)(2).

26. Because TBW has been validly terminated pre-petition as Servicer for each of the Trusts, none of the agreements by which TBW served as Servicer are "executory contracts" within the meaning of 11 U.S.C. § 365, and TBW cannot assume, or assume and assign, any such agreements. Courts uniformly hold that when a party terminates its contract with a debtor before the petition date, that contract (A) does not become property of the debtor's estate and (B) cannot be assumed under Section 365 of the Bankruptcy Code. *E.g. In re American Ship Bldg. Co., Inc.*, 164 B.R. 358 (Bankr. M.D. Fla. 1994) (stating that "[t]o be assumable, an executory contract cannot have been terminated prepetition."); *Oca, Inc. v. M. P.C. (In re OCA, Inc.)*, 378 B.R. 493, 517 (Bankr. E.D. La. 2007) (holding that where business services agreement was terminated prepetition, there was no contract for debtor to assume, as the terminated contract was no longer executory); *EBC I, Inc. v. America Online, Inc. (In re EBC I, Inc.)*, 356 B.R. 631, 638 (Bankr. D. Del. 2006) (stating that "if a contract is terminated pre-petition it is no longer executory and section 365 is not applicable.") (citing *In re C & S Grain Co*., 47

F.3d 233, 237 (7th Cir. 1995) (concluding that because contracts were terminated pre-petition they could not be assumed under section 365).

27.  Indeed, "[s]ignificant policy considerations [would be] implicated [if] a debtor [was] permitted to reinstate an otherwise valid prepetition termination of an executory contract: 'The implications of a contrary finding would render virtually every validly terminated executory contract revivable by a debtor by simply initiating bankruptcy proceedings. Such a holding is not only unwarranted, but contrary to the intent of the drafters of the code.'" *E.g. In re 421 Willow Corp.*, No. MISC. 03-182, 2003 WL 22318022, at *5 (E.D. Pa. Oct. 9, 2003).

28.  Because Wells Fargo validly terminated TBW as Servicer in each of the Trusts before TBW filed this bankruptcy case, the Servicing Agreements are not property of TBW's bankruptcy estate under Section 541 of the Bankruptcy Code. *Mortgage Network Corp. v. Federal Home Loan Mortgage Corp.*, No. 94-55996, 1996 WL 64984 (9th Cir. Feb. 12, 1996) (holding that a terminated servicer has "no remaining possessory interest in the servicing rights."); *Am. Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp.*, 75 F.3d 1401, 1412 (9th Cir. 1995), *cert. denied*, 519 U.S. 812 (1996) (holding that upon termination, TMNI was no longer a servicer and, by the terms of the contract, "had no right to service mortgages," and therefore, "it had no remaining possessory interest in the servicing rights."). Applicable nonbankruptcy law determines property rights. *Butner v. United States*, 440 U.S. 48, 56 (1979). Thus, under applicable nonbankruptcy law, namely contract law, once Wells Fargo terminated TBW as Servicer, all TBW's rights under the Servicing Agreements ceased.

29. To determine whether "cause" exists warranting relief from automatic stay, bankruptcy courts conduct a case-by-case inquiry and apply the totality-of-the-circumstances test. *Alan Francis Beane, Appellant v. United States of America (In re Beane)*, 404 B.R. 942 (M.D. Fla. 2008); *In re 7710 SW 59th Court, LLC*, No. 09-18440-BKC-AJC, 2009 WL 1530701, at *2 (Bankr. S.D. Fla. May 28, 2009) (citing *In re Murray Industries, Inc.*, 121 B.R. 635, 636 (Bankr. M.D. Fla. 1990).

30. When a party terminates a contract with a debtor prepetition and the debtor seeks to maintain possession of property under such terminated contract, courts have found cause exists to grant relief from the automatic stay under Section 362(d)(1) of the Bankruptcy Code. *E.g. In re Greenfield Dry Cleaning & Laundry, Inc.*, 249 B.R. 634, 644 (Bankr. E.D. Pa. 2000) (holding that "our decision that the Agreement terminated pre-petition thrust the Debtor into the position of seeking to maintain possession of the Premises under a contractual agreement which has terminated. In these circumstances, we conclude that [the creditor] has proven "cause" for relief from the automatic stay generally, under 11 U.S.C. § 362(d)(1)."); *Bell v. Alden Owners, Inc.*, 199 B.R. 451, 463 (Bankr. S.D.N.Y. 1996) ("cause exists for granting relief from the automatic stay when an executory contract is validly terminated prior to the commencement of a bankruptcy case."); *Gary Hill, Jr. v. MKBS Holdings, LLC (In re Hill)*, 307 B.R. 821, 824 (Bankr. W.D. Pa. 2004) (possessory interest "is not sufficient to preclude annulment of the stay."); *Fed. Nat'l Mortgage Ass'n v. Barbara R. Fitzgerald and Molly T. Whiton (In re Fitzgerald)*, 237 B.R. 252, 262 (Bankr. D. Conn. 1999) (creditor established its initial burden of showing cause under Section 362(d)(1) when the

10

Debtor could only show that it had a mere possessory interest in the property after the petition date).

31. In these circumstances, this Court should not allow TBW to maintain possession, custody, or control over property and servicing rights that TBW held as a Servicer for the Trusts.

## CONCLUSION

**WHEREFORE**, Wells Fargo respectfully requests that the Court enter an order:

a. terminating and vacating the automatic stay for cause pursuant to Section 362(d)(1) of the Bankruptcy Code to allow it to take all necessary steps to gain possession, custody, and control over all property in TBW's possession that should be transferred to Wells Fargo or a successor servicer under the terms of the Servicing Agreements, including the Funds (or alternatively, order that such property is not protected by the automatic stay or any other provision of the Bankruptcy Code, as such property is not property of the estate), and that

b. to the extent that TCB asserts that any Funds in its possession, custody or control is property of the estate, prohibiting TCB from using any such Funds;

c. requiring TBW to provide Wells with an accounting of all Funds it has received and has not yet remitted, including but not limited to reflecting all disbursements, transfers, and fees paid; and

    d.   Granting other such relief as the Court deems just and proper.

Dated this 28th day of August, 2009.

                             SMITH HULSEY & BUSEY

                             By    *s/ James H. Post*
                                   James H. Post

                             Florida Bar Number 175460
                             225 Water Street, Suite 1800
                             Jacksonville, FL  32202
                             (904) 359-7700
                             (904) 359-7708 (facsimile)
                             jpost@smithhulsey.com

                             and

                             **ALSTON & BIRD LLP**

                             John C. Weitnauer
                             William B. Macurda
                             Jonathan T. Edwards
                             1201 West Peachtree Street
                             One Atlantic Center
                             Atlanta, Georgia 30309-3424
                             (404) 881-7000
                             kit.weitnauer@alston.com
                             jonathan.edwards@alston.com

                             Attorneys for Wells Fargo Bank, National
                             Association, as Master Servicer

668044

## Certificate of Service

I certify that a copy of this document has been furnished by mail to the following parties, this 28th day of August, 2009:

*Debtor*
**Taylor, Bean & Whitaker Mortgage Corp.**
315 N.E. 14th St.
Ocala, FL 34470


*U.S. Trustee*
**Elena L Escamilla TB**
135 W Central Blvd, Suite 620
Orlando, FL 32801
ustp.region21.or.ecf@usdoj.gov

*Debtors' Attorneys*
**Amy Denton Harris**
**Edward J. Peterson, III**
**Russell M Blain**
Stichter, Riedel, Blain & Prosser, P.A.
110 E Madison Street, Suite 200
Tampa, FL 33602-4700
aharris.ecf@srbp.com
epeterson.ecf@srbp.com
rblain.ecf@srbp.com

*Local Rule 1007-2 Parties in Interest*
See attached mailing matrix


                                        *s/ James H. Post*
                                           Attorney

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113A-3<br>Case 3:09-bk-07047-JAF<br>Middle District of Florida<br>Jacksonville<br>Thu Aug 27 17:12:27 EDT 2009 | AT&T Universal Biller<br>P.O. Box 13148<br>Newark, NJ 07101-5648 | American International Company<br>22427 Network Place<br>Chicago, IL 60673-1224 |
| Cadwalader, Wickersham & Taft<br>General Post Office<br>P.O. Box 5929<br>New York, NY 10087-5929 | DLA Piper LLP (US)<br>Counsel for FDIC as Receiver for Colonia<br>100 North Tampa Street, Suite 2200<br>Tampa, FL 33602-5809<br>Attn.: Philip V. Martino, Esq. | Deutsche Bank Securities, Inc.<br>60 Wall St., 19th Floor<br>New York, NY 10005-2836 |
| Dimension Data<br>P.O. Box 403667<br>Atlanta, GA 30384-3667 | Federal Deposit Insurance Corp.<br>as receiver for Colonial Bank, N.A.<br>c/o Thomas R. Califano & Jeremy Johnson<br>1251 Avenue of the Americas<br>New York, New York 10020-1104 | Federal Deposit Insurance Corporation as Rec<br>c/o DLA Piper LLP (US)<br>100 No. Tampa Street, Ste. 2200<br>Attn.: Philip V. Martino, Esq.<br>Tampa, FL 33602-5809 |
| Federal Deposit Insurance Corporation,<br>receiver for Colonial Bank, Mont., Ala<br>c/o Philip V. Martino<br>100 North Tampa St., Ste 2200<br>Tampa, FL 33602-5809 | Fidelity National Title<br>3007 N.DELTA HWY # 206<br>EUGENE, OR 97408-7119 | First American<br>2490 PASEO VERDE PKWY SUITE 10<br>HENDERSON, NV 89074-7120 |
| First American CoreLogic<br>P.O. Box 847239<br>Dallas, TX 75284-7239 | First American Real Estate Tax<br>Service<br>PO BOX 200079<br>Dallas, TX 75320-0079 | First National Bank of Layton<br>136 W 12300 S Ste 201<br>Draper, UT 84020-8368 |
| Hadlock Title Services, Inc.<br>679 Worcester Road<br>Natick, MA 01760-1824 | Iron Mountain Information Management, Inc.<br>c/o Frank F. McGinn, Esq.<br>Bartlett Hackett Feinberg P.C.<br>155 Federal Street, 9th Floor<br>Boston, MA 02110-1610 | James G. Hicks<br>950 Grayson Highway<br>Lawrenceville, GA 30046-6340 |
| Lamb & Browne<br>531 Concord Street<br>Holliston, MA 01746-3312 | LandAmerica Tax and Flood<br>1123 S Parkview Drive<br>Accounting Department<br>Covina, CA 91724-3748 | Locke Lord Bissell & Liddell LLP<br>111 S. Wacker Dr.<br>Chicago, IL 60606-4302 |
| McKenna Long & Aldridge, LLP<br>P.O. Box 116573<br>Atlanta, GA 30368-6573 | NDS USA LLC<br>406 E Silver Springs Blvd<br>Ocala, FL 34470-5828 | RBC Bank successor<br>to Florida Choice Bank<br>c/o James W. Carpenter<br>515 East Las Olas Blvd., Ste 850<br>Fort Lauderdale, FL 33301-2277 |
| RBC Capital Markets<br>One Liberty Plaza<br>165 Broadway<br>New York, NY 10006-1428 | Sam Solutions<br>11511 Abercorn Box 285<br>Savannah, GA 31419-1901 | Sovereign Bank<br>c/o Robert Soriano, Esq.<br>625 E. Twiggs St., #100<br>Tampa, FL 33602-3925 |
| TN Dept. of Financial Institutions<br>c/o Gill Geldreich, Asst. Atty. General<br>Bankruptcy Division<br>P.O. Box 20207<br>Nashville, TN 37202-4015 | Tennessee Dept. of Financial Instutions<br>Attn: Gill Geldreich<br>c/o TN Atty General's Office, Bankruptcy<br>PO Box 20207<br>Nashville, Tennessee 37202-4015 | United States Trustee - Jax<br>135 W Central Blvd, Suite 620<br>Orlando, FL 32801-2440 |

Wright Express Financial
33548 Treasury Center
Chicago, IL 60694-3500

End of Label Matrix
Mailable recipients   30
Bypassed recipients    0
Total                 30