Exhibit 13 - Notices of Additional Events of Default dated August 20, 2009 relating to all Trusts other than TBW 2006-6 and TBW 2007-1



To the Persons Listed on
Schedule A attached hereto

NOTICE OF DEFAULT
CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.,
CSMC MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-4

Wells Fargo Bank, National Association ("Wells Fargo"), serves as Master Servicer and Trust Administrator (respectively, the "Master Servicer" and the "Trust Administrator") for the above-referenced securitization pursuant to a Pooling and Servicing Agreement dated as of May 1, 2007 (the "Pooling Agreement"), by and among Credit Suisse First Boston Mortgage Securities Corp., as depositor, DLJ Mortgage Capital, Inc., as seller, Wells Fargo, as servicer, Master Servicer and Trust Administrator, Universal Master Servicing, LLC, as servicer, Select Portfolio Servicing, Inc., as servicer, special servicer, and modification oversight agent, and U.S. Bank National Association, as trustee. Taylor, Bean & Whitaker Mortgage Corp. ("TBW") serves as a Designated Servicer (in such capacity, the "Designated Servicer") for the above-referenced transaction pursuant to the Seller's Purchase, Warranties and Servicing Agreement, dated as of February 1, 2007 (the "Underlying Servicing Agreement"), by and between DLJ Mortgage Capital, Inc., as purchaser, and TBW, as seller and servicer, as modified by that certain Reconstituted Servicing Agreement, dated as of May 1, 2007 (the "RSA" and together with the Underlying Servicing Agreement, the "Servicing Agreement", and collectively with the Pooling Agreement, the "Agreements"), by and among DLJ Mortgage Capital Inc., TBW, as servicer, Wells Fargo, as Master Servicer and Trust Administrator, and U.S. Bank National Association, as trustee. Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Agreements.

**I.      Event of Default has already occurred and continues to occur under the Agreements**

On August 13, 2009, TBW was notified of the occurrence of an Event of Default under Section 8.01(ix) of the Servicing Agreement, as modified by Paragraph 8(E) of the RSA, which provides that an Event of Default shall occur if the Designated Servicer, in its capacity as Seller, ceases to meet the eligibility criteria set forth in the second paragraph of Section 7.02 of the Underlying Servicing Agreement, which section requires, *inter alia*, the Designated Servicer to be a HUD-approved mortgagee whose primary business is in origination and servicing of first lien mortgage loans, and a Freddie Mac approved

seller/servicer in good standing. Pursuant to such notice, attached hereto as Exhibit A, and acting pursuant to the authority granted to it under the Servicing Agreement, the Master Servicer terminated all rights and obligations of TBW as Designated Servicer under the Agreements as of such date.

## II.    Further Notice of Servicer Default: Failure to Remit Funds Due under the Servicing Agreement

Pursuant to Section 8.01(i) of the Servicing Agreement, the Master Servicer hereby provides notice of the occurrence of a default by the Designated Servicer for failing to remit the amounts required to be remitted to the Master Servicer (the "Remittance Amount") pursuant to Section 5.01 of the Servicing Agreement, which Section provides that on each Remittance Date the Designated Servicer shall distribute to the Master Servicer (i) all amounts credited to the Custodial Account as of the close of business on the preceding Determination Date, net of charges against or withdrawals from the Custodial Account pursuant to Section 4.05, plus (ii) all Monthly Advances, if any, which the Designated Servicer is obligated to distribute pursuant to Section 5.03, minus (iii) any amounts attributable to Monthly Payments collected but due on a Due Date or Dates subsequent to the preceding Determination Date. The Remittance Date is defined in the Servicing Agreement as the eighteenth (18th) day of each month, beginning with the First Remittance Date, or if such day is not a Business Day, the first Business Day immediately preceding such date.

This notice shall constitute a notice of default as referenced under Section 8.01(i) of the Servicing Agreement, which section provides that an Event of Default shall occur due to any failure by the Designated Servicer to remit to the Master Servicer any payment required to be made under the terms of the Servicing Agreement which continues unremedied for a period of one (1) Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Designated Servicer by the Master Servicer.

The Designated Servicer failed to remit the Remittance Amount as required under Section 5.01 of the Servicing Agreement related to the August 18, 2009 Remittance Date, and as of the date of this notice of default, the Master Servicer is not in receipt of the Remittance Amount with respect to the August 18, 2009 Remittance Date. As noted above, the Designated Servicer is required to remedy such default by remitting the Remittance Amount for the August 18, 2009 Remittance Date within one (1) Business Day after receipt of this notice of default in order to avoid the occurrence of an Event of Default.

**\*\*\* The Master Servicer hereby directs TBW to immediately remit all funds owed under the Agreements and which were due on August 18, 2009 as described in the preceding paragraphs. Wells Fargo, as Master Servicer, hereby reserves any and all rights it may have at law or equity to damages, including injunctive relief and specific performance to enforce the performance of the Designated Servicer of such obligations under the Agreements. \*\*\***

LEGAL02/31475155v1

**III.    Servicer Termination Effective as of August 13, 2009**

The occurrence of the default described in this notice is in addition to and not in replacement of the Event of Default and Notice of Termination that was previously delivered to you on August 13, 2009.  Delivery of this notice in no way diminishes the efficacy of the earlier notice of termination delivered to you and TBW's rights as Designated Servicer are considered terminated as of August 13, 2009.  Notwithstanding TBW's termination as Designated Servicer on August 13, 2009, please note that TBW is still obligated, pursuant to Section 11.01 of the Servicing Agreement, to continue to discharge its duties and responsibilities as Designated Servicer until the date of appointment of a successor servicer.

Wells Fargo hereby reserves any and all rights it has under the Agreements or at law.

Questions regarding the matters addressed in this notice may be directed to the Master Servicer by contacting Mary Sohlberg via (1) facsimile at (612) 667-3464, or (2) mail addressed to Wells Fargo Bank, N.A., Sixth and Marquette, MAC N9311-161, Minneapolis, Minnesota 55479, Attn: Corporate Trust Servicer—Mary Sohlberg, Vice President.

Dated:  August 20, 2009                    WELLS FARGO BANK, N.A.
                                           as Master Servicer

                                           By: _____
                                           Name:  Mary L. Sohlberg
                                           Title:   Vice President

- 3 -

# SCHEDULE A

Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd Street
Ocala, Florida 34470
Attn: Ray Bowman, President

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Avenue
Ocala, Florida 34475
Attn: Nathan J. Sands, Vice President of Loan Administration

## SCHEDULE A

[See attached]



To the Persons Listed on
Schedule A attached hereto

NOTICE OF DEFAULT
CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.,
CSMC MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-6

Wells Fargo Bank, National Association ("Wells Fargo"), serves as Master Servicer and Trust Administrator (respectively, the "Master Servicer" and the "Trust Administrator") for the above-referenced securitization pursuant to the Series Supplement to the Standard Terms of Pooling and Servicing Agreement, dated as of September 1, 2007 (collectively, the "Pooling Agreement"), by and among Credit Suisse First Boston Mortgage Securities Corp., as depositor, DLJ Mortgage Capital, Inc., as seller, Wells Fargo, as servicer, Master Servicer and Trust Administrator, Bank of America, National Association, as servicer, Universal Master Servicing, LLC, as servicer, Select Portfolio Servicing, Inc., as servicer, special servicer, and modification oversight agent, and U.S. Bank National Association, as trustee. Taylor, Bean & Whitaker Mortgage Corp. ("TBW") serves as a Designated Servicer (in such capacity, the "Designated Servicer") for the above-referenced transaction pursuant to the Seller's Purchase, Warranties and Servicing Agreement, dated as of February 1, 2007 (the "Underlying Servicing Agreement"), by and between DLJ Mortgage Capital, Inc., as purchaser, and TBW, as seller and servicer, as modified by that certain Reconstituted Servicing Agreement, dated as of September 1, 2007 (the "RSA" and together with the Underlying Servicing Agreement, the "Servicing Agreement", and collectively with the Pooling Agreement, the "Agreements"), by and among DLJ Mortgage Capital Inc., TBW, as servicer, Wells Fargo, as Master Servicer and Trust Administrator, and U.S. Bank National Association, as trustee. Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Agreements.

I.    **Event of Default has already occurred and continues to occur under the Agreements**

On August 13, 2009, TBW was notified of the occurrence of an Event of Default under Section 8.01(ix) of the Servicing Agreement, as modified by Paragraph 8(H) of the RSA, which provides that an Event of Default shall occur if the Designated Servicer, in its capacity as Seller, ceases to meet the eligibility criteria set forth in the clauses enumerated (i)-(iii) in the second paragraph of Section 7.02 of the Underlying Servicing Agreement,

which section requires, *inter alia*, the Designated Servicer to be a HUD-approved mortgagee whose primary business is in origination and servicing of first lien mortgage loans, and a Freddie Mac approved seller/servicer in good standing. Pursuant to such notice, attached hereto as Exhibit A, and acting pursuant to the authority granted to it under the Servicing Agreement, the Master Servicer terminated all rights and obligations of TBW as Designated Servicer under the Agreements as of such date.

## II. Further Notice of Servicer Default: Failure to Remit Funds Due under the Servicing Agreement

Pursuant to Section 8.01(i) of the Servicing Agreement, the Master Servicer hereby provides notice of the occurrence of a default by the Designated Servicer for failing to remit the amounts required to be remitted to the Master Servicer (the "Remittance Amount") pursuant to Section 5.01 of the Servicing Agreement, which Section provides that on each Remittance Date the Designated Servicer shall distribute to the Master Servicer (i) all amounts credited to the Custodial Account as of the close of business on the preceding Determination Date, net of charges against or withdrawals from the Custodial Account pursuant to Section 4.05, plus (ii) all Monthly Advances, if any, which the Designated Servicer is obligated to distribute pursuant to Section 5.03, minus (iii) any amounts attributable to Monthly Payments collected but due on a Due Date or Dates subsequent to the preceding Determination Date. The Remittance Date is defined in the Servicing Agreement as the eighteenth (18th) day of each month, beginning with the First Remittance Date, or if such day is not a Business Day, the first Business Day immediately preceding such date.

This notice shall constitute a notice of default as referenced under Section 8.01(i) of the Servicing Agreement, which section provides that an Event of Default shall occur due to any failure by the Designated Servicer to remit to the Master Servicer any payment required to be made under the terms of the Servicing Agreement which continues unremedied for a period of one (1) Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Designated Servicer by the Master Servicer.

The Designated Servicer failed to remit the Remittance Amount as required under Section 5.01 of the Servicing Agreement related to the August 18, 2009 Remittance Date, and as of the date of this notice of default, the Master Servicer is not in receipt of the Remittance Amount with respect to the August 18, 2009 Remittance Date. As noted above, the Servicer is required to remedy such default by remitting the Remittance Amount for the August 18, 2009 Remittance Date within one (1) Business Day after receipt of this notice of default in order to avoid the occurrence of an Event of Default.

**\*\*\* The Master Servicer hereby directs TBW to immediately remit all funds owed under the Agreements and which were due on August 18, 2009 as described in the preceding paragraphs. Wells Fargo, as Master Servicer, hereby reserves any and all rights it may have at law or equity to damages, including injunctive relief and**

- 2 -

specific performance to enforce the performance of the Designated Servicer of such obligations under the Agreements. \*\*\*

### III.    Servicer Termination Effective as of August 13, 2009

The occurrence of the default described in this notice is in addition to and not in replacement of the Event of Default and Notice of Termination that was previously delivered to you on August 13, 2009. Delivery of this notice in no way diminishes the efficacy of the earlier notice of termination delivered to you and TBW's rights as Designated Servicer are considered terminated as of August 13, 2009. Notwithstanding TBW's termination as Designated Servicer on August 13, 2009, please note that TBW is still obligated, pursuant to Section 11.01 of the Servicing Agreement, to continue to discharge its duties and responsibilities as Designated Servicer until the date of appointment of a successor servicer.

Wells Fargo hereby reserves any and all rights it has under the Agreements or at law.

Questions regarding the matters addressed in this notice may be directed to the Master Servicer by contacting Mary Sohlberg via (1) facsimile at (612) 667-3464, or (2) mail addressed to Wells Fargo Bank, N.A., Sixth and Marquette, MAC N9311-161, Minneapolis, Minnesota 55479, Attn: Corporate Trust Servicer—Mary Sohlberg, Vice President.

Dated:  August 20, 2009

WELLS FARGO BANK, N.A.
as Master Servicer

By:   _Mary L. Sohlberg_
Name:  Mary L. Sohlberg
Title:   Vice President

LEGAL02/31475165v1

## <u>SCHEDULE A</u>

Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd Street
Ocala, Florida 34470
Attn: Ray Bowman, President

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Avenue
Ocala, Florida 34475
Attn: Nathan J. Sands, Vice President of Loan Administration

## SCHEDULE A

[See attached]



Wells Fargo Bank, National Association
Sixth and Marquette
MAC N9311-161
Minneapolis, Minnesota 55479

To the Persons Listed on
Schedule A attached hereto

NOTICE OF DEFAULT
CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.,
CSMC MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-7

Wells Fargo Bank, National Association ("Wells Fargo"), serves as Master Servicer and Trust Administrator (respectively, the "Master Servicer" and the "Trust Administrator") for the above-referenced securitization pursuant to a Pooling and Servicing Agreement dated as of November 1, 2007 (as amended, the "Pooling Agreement"), by and among Credit Suisse First Boston Mortgage Securities Corp., as depositor, DLJ Mortgage Capital, Inc., as seller, Wells Fargo, as servicer, Master Servicer and Trust Administrator, Universal Master Servicing, LLC, as servicer, Banco Popular de Puerto Rico, as servicer and back-up servicer, Greenpoint Mortgage Funding, Inc., as servicer, Select Portfolio Servicing, Inc., as servicer, special servicer, and modification oversight agent, and U.S. Bank National Association, as trustee. Taylor, Bean & Whitaker Mortgage Corp. ("TBW") serves as a Designated Servicer (in such capacity, the "Designated Servicer") for the above-referenced transaction pursuant to the Seller's Purchase, Warranties and Servicing Agreement, dated as of February 1, 2007 (the "Underlying Servicing Agreement"), by and between DLJ Mortgage Capital, Inc., as purchaser, and TBW, as seller and servicer, as modified by that certain Reconstituted Servicing Agreement, dated as of November 1, 2007 (the "RSA" and together with the Underlying Servicing Agreement, the "Servicing Agreement", and collectively with the Pooling Agreement, the "Agreements"), by and among DLJ Mortgage Capital Inc., TBW, as servicer, Wells Fargo, as Master Servicer and Trust Administrator, and U.S. Bank National Association, as trustee. Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Agreements.

I.     **Event of Default has already occurred and continues to occur under the Agreements**

On August 13, 2009, TBW was notified of the occurrence of an Event of Default under Section 8.01(ix) of the Servicing Agreement, as modified by Paragraph 8(H) of the RSA, which provides that an Event of Default shall occur if the Designated Servicer, in its capacity as Seller, ceases to meet the eligibility criteria set forth in the clauses enumerated (i)-(iii) in the second paragraph of Section 7.02 of the Underlying Servicing Agreement,

which section requires, *inter alia*, the Designated Servicer to be a HUD-approved mortgagee whose primary business is in origination and servicing of first lien mortgage loans, and a Freddie Mac approved seller/servicer in good standing. Pursuant to such notice, attached hereto as Exhibit A, and acting pursuant to the authority granted to it under the Servicing Agreement, the Master Servicer terminated all rights and obligations of TBW as Designated Servicer under the Agreements as of such date.

## II.    Further Notice of Servicer Default: Failure to Remit Funds Due under the Servicing Agreement

Pursuant to Section 8.01(i) of the Servicing Agreement, the Master Servicer hereby provides notice of the occurrence of a default by the Designated Servicer for failing to remit the amounts required to be remitted to the Master Servicer (the "Remittance Amount") pursuant to Section 5.01 of the Servicing Agreement, which Section provides that on each Remittance Date the Designated Servicer shall distribute to the Master Servicer (i) all amounts credited to the Custodial Account as of the close of business on the preceding Determination Date, net of charges against or withdrawals from the Custodial Account pursuant to Section 4.05, plus (ii) all Monthly Advances, if any, which the Designated Servicer is obligated to distribute pursuant to Section 5.03, minus (iii) any amounts attributable to Monthly Payments collected but due on a Due Date or Dates subsequent to the preceding Determination Date. The Remittance Date is defined in the Servicing Agreement as the eighteenth (18th) day of each month, beginning with the First Remittance Date, or if such day is not a Business Day, the first Business Day immediately preceding such date.

This notice shall constitute a notice of default as referenced under Section 8.01(i) of the Servicing Agreement, which section provides that an Event of Default shall occur due to any failure by the Designated Servicer to remit to the Master Servicer any payment required to be made under the terms of the Servicing Agreement which continues unremedied for a period of one (1) Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Designated Servicer by the Master Servicer.

The Designated Servicer failed to remit the Remittance Amount as required under Section 5.01 of the Servicing Agreement related to the August 18, 2009 Remittance Date, and as of the date of this notice of default, the Master Servicer is not in receipt of the Remittance Amount with respect to the August 18, 2009 Remittance Date. As noted above, the Designated Servicer is required to remedy such default by remitting the Remittance Amount for the August 18, 2009 Remittance Date within one (1) Business Day after receipt of this notice of default in order to avoid the occurrence of an Event of Default.

**\*\*\* The Master Servicer hereby directs TBW to immediately remit all funds owed under the Agreements and which were due on August 18, 2009 as described in the preceding paragraphs. Wells Fargo, as Master Servicer, hereby reserves any and all rights it may have at law or equity to damages, including injunctive relief and**

specific performance to enforce the performance of the Designated Servicer of such obligations under the Agreements. \*\*\*

### III.   Servicer Termination Effective as of August 13, 2009

The occurrence of the default described in this notice is in addition to and not in replacement of the Event of Default and Notice of Termination that was previously delivered to you on August 13, 2009. Delivery of this notice in no way diminishes the efficacy of the earlier notice of termination delivered to you and TBW's rights as Designated Servicer are considered terminated as of August 13, 2009. Notwithstanding TBW's termination as Designated Servicer on August 13, 2009, please note that TBW is still obligated, pursuant to Section 11.01 of the Servicing Agreement, to continue to discharge its duties and responsibilities as Designated Servicer until the date of appointment of a successor servicer.

Wells Fargo hereby reserves any and all rights it has under the Agreements or at law.

Questions regarding the matters addressed in this notice may be directed to the Master Servicer by contacting Mary Sohlberg via (1) facsimile at (612) 667-3464, or (2) mail addressed to Wells Fargo Bank, N.A., Sixth and Marquette, MAC N9311-161, Minneapolis, Minnesota 55479, Attn: Corporate Trust Servicer—Mary Sohlberg, Vice President.

Dated: August 20, 2009

WELLS FARGO BANK, N.A.
as Master Servicer

By: _____
Name: Mary K. Sohlberg
Title: Vice President

LEGAL02/31475167v1

# SCHEDULE A

Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd Street
Ocala, Florida 34470
Attn: Ray Bowman, President

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Avenue
Ocala, Florida 34475
Attn: Nathan J. Sands, Vice President of Loan Administration

## SCHEDULE A

[See attached]



**Wells Fargo Bank, National Association**
**Sixth and Marquette**
**MAC N9311-161**
**Minneapolis, Minnesota 55479**

To the Persons Listed on
Schedule A attached hereto

NOTICE OF DEFAULT
TBW MORTGAGE-BACKED TRUST,
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-1

Wells Fargo Bank, N.A. ("Wells Fargo"), serves as Master Servicer (the "Master Servicer") and Trust Administrator (the "Trust Administrator") for the above-referenced securitization pursuant to a Pooling and Servicing Agreement dated as of March 1, 2006 (the "Pooling Agreement"), by and among Credit Suisse First Boston Mortgage Securities Corp., as Depositor, DLJ Mortgage Capital, Inc., as Seller, Wells Fargo as Master Servicer and Trust Administrator, Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), as Servicer (in such capacity, the "Servicer"), and U.S. Bank National Association, as Trustee. TBW serves as Servicer for the above-referenced transaction pursuant to the Pooling Agreement and a Securitization Servicing Agreement dated as of March 1, 2006 (the "Servicing Agreement" and together with the Pooling Agreement, the "Agreements") by and among the Servicer, the Seller, the Master Servicer, the Trust Administrator, and the Trustee. Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed thereto in the Agreements.

## I.    Event of Default has already occurred and continues to occur under the Agreements

On August 13, 2009, TBW was notified of the occurrence of an Event of Default under Section 8.01(a)(xii) of the Servicing Agreement, which provides that an Event of Default shall occur if the Servicer ceases to meet the eligibility criteria set forth in Section 7.01, which section requires, *inter alia*, that the Servicer shall be a Freddie Mac-approved servicer in good standing. Pursuant to such notice, attached hereto as Exhibit A, and acting pursuant to authority granted to it under the Servicing Agreement, the Master Servicer terminated all rights and obligations of TBW as Servicer under the Servicing Agreement as of such date.

## II.    Further Notice of Servicer Default: Failure to Remit Funds Due under the Servicing Agreement

Pursuant to Section 8.01(a)(i) of the Servicing Agreement, the Master Servicer hereby provides notice of the occurrence of a default by the Servicer for failing to remit the amounts required to be remitted to the Master Servicer (the "Remittance Amount") pursuant to Section 4.01 of the Servicing Agreement, which Section provides that on each Remittance Date the Servicer shall remit on a scheduled/scheduled basis by wire transfer of immediately available funds to the Master Servicer (a) all amounts deposited in the Custodial Account as of the close of business on the last day of the related Due Period (net of charges against or withdrawals from the Custodial Account pursuant to Section 3.05), plus (b) all Monthly Advances, if any, that the Servicer is obligated to make pursuant to Section 4.03, minus (c) any amounts attributable to Principal Prepayments, Liquidation Proceeds, Insurance Proceeds, Condemnation Proceeds or REO Disposition Proceeds received after the applicable Principal Prepayment Period, which amounts shall be remitted on the following Remittance Date, together with any additional interest required to be deposited in the Custodial Account in connection with such Principal Prepayment in accordance with Section 3.04 (viii), and minus (d) any amounts attributable to Monthly Payments collected but due on a Due Date or Due Dates subsequent to the first day of the month in which such Remittance Date occurs, which amounts shall be remitted on the Remittance Date next succeeding the Due Date related to such Monthly Payment. The Remittance Date is defined in the Servicing Agreement as the eighteenth (18th) day (or if such 18th day is not a Business Day, the first Business Day immediately following) of the month in which such Distribution Date occurs.

This notice shall constitute a notice of default as referenced under Section 8.01(a)(i) of the Servicing Agreement, which section provides that an Event of Default shall occur due to any failure by the Servicer to remit to the Master Servicer any payment required to be made under the terms of the Servicing Agreement which continues unremedied for a period of one (1) Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Master Servicer.

The Servicer failed to remit the Remittance Amount as required under Section 8.01(a)(i) of the Servicing Agreement related to the August 18, 2009 Remittance Date, and as of the date of this notice of default, the Master Servicer is not in receipt of the Remittance Amount with respect to the August 18, 2009 Remittance Date. As noted above, the Servicer is required to remedy such default by remitting the Remittance Amount for the August 18, 2009 Remittance Date within one (1) Business Day after receipt of this notice of default in order to avoid the occurrence of an Event of Default.

**\*\*\* The Master Servicer hereby directs TBW to immediately remit all funds owed under the Agreements and which were due on August 18, 2009 as described in the preceding paragraphs. Wells Fargo, as Master Servicer, hereby reserves any and all rights it may have at law or equity to damages, including injunctive relief and specific performance to enforce the performance of the Servicer of such obligations under the Agreements. \*\*\***

**III.    Servicer Termination Effective as of August 13, 2009**

The occurrence of the default described in this notice is in addition to and not in replacement of the Event of Default and Notice of Termination that was previously delivered to you on August 13, 2009. Delivery of this notice in no way diminishes the efficacy of the earlier notice of termination delivered to you and TBW's rights as Servicer are considered terminated as of August 13, 2009. Notwithstanding TBW's termination as Servicer on August 13, 2009, please note that TBW is still obligated, pursuant to Section 8.01 of the Servicing Agreement, to continue to discharge its duties and responsibilities as Servicer until the date of appointment of a successor servicer.

Wells Fargo hereby reserves any and all rights it has under the Agreements or at law.

Questions regarding the matters addressed in this notice may be directed to the Master Servicer by contacting Mary Sohlberg via (1) facsimile at (612) 667-3464, or (2) mail addressed to Wells Fargo Bank, N.A., Sixth and Marquette, MAC N9311-161, Minneapolis, Minnesota 55479, Attn: Corporate Trust Servicer—Mary Sohlberg, Vice President.

Dated:  August 20, 2009

WELLS FARGO BANK, N.A.
as Master Servicer

By: _____
Name:  Mary L. Sohlberg
Title:   Vice President

## SCHEDULE A

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Avenue
Ocala, Florida 34475
Attn: Nathan J. Sands, Vice President of Loan Administration

Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd Street
Ocala, Florida 34470
Attn: Nathan J. Sands, Vice President of Loan Administration

U.S. Bank National Association
EP-MN-WS3D
60 Livingston Avenue
St. Paul, Minnesota 55107
Attention: Structured Finance – TBW 2006-1

Fitch Ratings
One State Street Plaza
New York, New York 10004

Standard & Poor's Ratings Services
55 Water Street
New York, New York 10041
Attention: Residential Mortgages

Credit Suisse First Boston Mortgage Securities Corp.
11 Madison Avenue
4th Floor
New York, New York 10010
Attention: Kari Roberts and Bruce Kaiserman

LEGAL02/31475180v1

# EXHIBIT A

[See attached]



To the Persons Listed on
Schedule A attached hereto

NOTICE OF DEFAULT
TBW MORTGAGE-BACKED TRUST,
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-2

Wells Fargo Bank, N.A. ("Wells Fargo"), serves as Master Servicer (the "Master Servicer") and Trust Administrator (the "Trust Administrator") for the above-referenced securitization pursuant to a Pooling and Servicing Agreement dated as of April 1, 2006 (the "Pooling Agreement"), by and among Credit Suisse First Boston Mortgage Securities Corp., as Depositor, DLJ Mortgage Capital, Inc., as Seller, Wells Fargo as Master Servicer and Trust Administrator, Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), as Servicer (in such capacity, the "Servicer"), and U.S. Bank National Association, as Trustee. TBW serves as Servicer for the above-referenced transaction pursuant to the Pooling Agreement and a Securitization Servicing Agreement dated as of April 1, 2006 (the "Servicing Agreement" and together with the Pooling Agreement, the "Agreements") by and among the Servicer, the Seller, the Master Servicer, the Trust Administrator, and the Trustee. Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed thereto in the Agreements.

    **I.**    **Event of Default has already occurred and continues to occur under the Agreements**

On August 13, 2009, TBW was notified of the occurrence of an Event of Default under Section 8.01(a)(xii) of the Servicing Agreement, which provides that an Event of Default shall occur if the Servicer ceases to meet the eligibility criteria set forth in Section 7.01, which section requires, *inter alia*, that the Servicer shall be a Freddie Mac-approved servicer in good standing. Pursuant to such notice, attached hereto as Exhibit A, and acting pursuant to authority granted to it under the Servicing Agreement, the Master Servicer terminated all rights and obligations of TBW as Servicer under the Servicing Agreement as of such date.

    **II.**    **Further Notice of Servicer Default: Failure to Remit Funds Due under the Servicing Agreement**

Pursuant to Section 8.01(a)(i) of the Servicing Agreement, the Master Servicer hereby provides notice of the occurrence of a default by the Servicer for failing to remit the amounts required to be remitted to the Master Servicer (the "Remittance Amount") pursuant to Section 4.01 of the Servicing Agreement, which Section provides that on each Remittance Date the Servicer shall remit on a scheduled/scheduled basis by wire transfer of immediately available funds to the Master Servicer (a) all amounts deposited in the Custodial Account as of the close of business on the last day of the related Due Period (net of charges against or withdrawals from the Custodial Account pursuant to Section 3.05), plus (b) all Monthly Advances, if any, that the Servicer is obligated to make pursuant to Section 4.03, minus (c) any amounts attributable to Principal Prepayments, Liquidation Proceeds, Insurance Proceeds, Condemnation Proceeds or REO Disposition Proceeds received after the applicable Principal Prepayment Period, which amounts shall be remitted on the following Remittance Date, together with any additional interest required to be deposited in the Custodial Account in connection with such Principal Prepayment in accordance with Section 3.04 (viii), and minus (d) any amounts attributable to Monthly Payments collected but due on a Due Date or Due Dates subsequent to the first day of the month in which such Remittance Date occurs, which amounts shall be remitted on the Remittance Date next succeeding the Due Date related to such Monthly Payment. The Remittance Date is defined in the Servicing Agreement as the eighteenth (18th) day (or if such 18th day is not a Business Day, the first Business Day immediately following) of the month in which such Distribution Date occurs.

This notice shall constitute a notice of default as referenced under Section 8.01(a)(i) of the Servicing Agreement, which section provides that an Event of Default shall occur due to any failure by the Servicer to remit to the Master Servicer any payment required to be made under the terms of the Servicing Agreement which continues unremedied for a period of one (1) Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Master Servicer.

The Servicer failed to remit the Remittance Amount as required under Section 8.01(a)(i) of the Servicing Agreement related to the August 18, 2009 Remittance Date, and as of the date of this notice of default, the Master Servicer is not in receipt of the Remittance Amount with respect to the August 18, 2009 Remittance Date. As noted above, the Servicer is required to remedy such default by remitting the Remittance Amount for the August 18, 2009 Remittance Date within one (1) Business Day after receipt of this notice of default in order to avoid the occurrence of an Event of Default.

**\*\*\* The Master Servicer hereby directs TBW to immediately remit all funds owed under the Agreements and which were due on August 18, 2009 as described in the preceding paragraphs. Wells Fargo, as Master Servicer, hereby reserves any and all rights it may have at law or equity to damages, including injunctive relief and specific performance to enforce the performance of the Servicer of such obligations under the Agreements. \*\*\***

### III.    Servicer Termination Effective as of August 13, 2009

- 2 -

The occurrence of the default described in this notice is in addition to and not in replacement of the Event of Default and Notice of Termination that was previously delivered to you on August 13, 2009. Delivery of this notice in no way diminishes the efficacy of the earlier notice of termination delivered to you and TBW's rights as Servicer are considered terminated as of August 13, 2009. Notwithstanding TBW's termination as Servicer on August 13, 2009, please note that TBW is still obligated, pursuant to Section 8.01 of the Servicing Agreement, to continue to discharge its duties and responsibilities as Servicer until the date of appointment of a successor servicer.

Wells Fargo hereby reserves any and all rights it has under the Agreements or at law.

Questions regarding the matters addressed in this notice may be directed to the Master Servicer by contacting Mary Sohlberg via (1) facsimile at (612) 667-3464, or (2) mail addressed to Wells Fargo Bank, N.A., Sixth and Marquette, MAC N9311-161, Minneapolis, Minnesota 55479, Attn: Corporate Trust Servicer—Mary Sohlberg, Vice President.

Dated: August 20, 2009

WELLS FARGO BANK, N.A.
as Master Servicer

By: _____
Name: Mary L. Sohlberg
Title: Vice President

## SCHEDULE A

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Avenue
Ocala, Florida 34475
Attn: Nathan J. Sands, Vice President of Loan Administration

Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd Street
Ocala, Florida 34470
Attn: Nathan J. Sands, Vice President of Loan Administration

U.S. Bank National Association
EP-MN-WS3D
60 Livingston Avenue
St. Paul, Minnesota 55107
Attention: Structured Finance – TBW 2006-2

Fitch Ratings
One State Street Plaza
New York, New York 10004

Standard & Poor's Ratings Services
55 Water Street
New York, New York 10041
Attention: Residential Mortgages

Credit Suisse First Boston Mortgage Securities Corp.
11 Madison Avenue
4th Floor
New York, New York 10010
Attention: Peter Sack and Bruce Kaiserman

# EXHIBIT A

[See attached]



**Wells Fargo Bank, National Association**
**Sixth and Marquette**
**MAC N9311-161**
**Minneapolis, Minnesota 55479**

To the Persons Listed on
Schedule A attached hereto

NOTICE OF DEFAULT
TBW MORTGAGE-BACKED TRUST,
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-3

Wells Fargo Bank, N.A. ("Wells Fargo"), serves as Master Servicer (the "Master Servicer") and Securities Administrator (the "Securities Administrator") for the above-referenced securitization pursuant to a Trust Agreement dated as of June 1, 2006 (the "Trust Agreement"), by and among Structured Asset Securities Corporation, as Depositor, Wells Fargo as Master Servicer and Securities Administrator, and U.S. Bank National Association, as Trustee. Taylor, Bean & Whitaker Mortgage Corp. ("TBW") serves as Servicer (in such capacity, the "Servicer") for the above-referenced transaction pursuant to a Securitization Servicing Agreement dated as of June 1, 2006 (the "Servicing Agreement" and together with the Trust Agreement, the "Agreements") by and among the Servicer, the Master Servicer, the Securities Administrator, the Trustee and Lehman Brothers Holdings Inc., as Seller. Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed thereto in the Agreements.

**I.    Event of Default has already occurred and continues to occur under the Agreements**

On August 13, 2009, TBW was notified of the occurrence of an Event of Default under Section 8.01(a)(xii) of the Servicing Agreement, which provides that an Event of Default shall occur if the Servicer ceases to meet the eligibility criteria set forth in Section 7.01, which section requires, *inter alia*, that the Servicer shall be a Freddie Mac-approved servicer in good standing. Pursuant to such notice, attached hereto as Exhibit A, and acting pursuant to authority granted to it under the Servicing Agreement, the Master Servicer terminated all rights and obligations of TBW as Servicer under the Agreements as of such date.

**II.    Further Notice of Servicer Default: Failure to Remit Funds Due under the Servicing Agreement**

Pursuant to Section 8.01(a)(i) of the Servicing Agreement, the Master Servicer hereby provides notice of the occurrence of a default by the Servicer for failing to remit the amounts required to be remitted to the Master Servicer (the "Remittance Amount") pursuant to Section 4.01 of the Servicing Agreement, which Section provides that no later than 5:00 p.m. New York City time, the Servicer shall remit on a scheduled/scheduled basis by wire transfer of immediately available funds to the Master Servicer (a) all amounts deposited in the Custodial Account as of the close of business on the last day of the related Due Period (net of charges against or withdrawals from the Custodial Account pursuant to Section 3.04), *plus* (b) all Monthly Advances, if any, that the Servicer is obligated to make pursuant to Section 4.03, *minus* (c) any amounts attributable to Principal Prepayments, Liquidation Proceeds, Insurance Proceeds, Condemnation Proceeds or REO Disposition Proceeds received after the applicable Principal Prepayment Period, which amounts shall be remitted on the following Remittance Date, together with any additional interest required to be deposited in the Custodial Account in connection with such Principal Prepayment in accordance with Section 3.04 (viii), and *minus* (d) any amounts attributable to Monthly Payments collected but due on a Due Date or Due Dates subsequent to the first day of the month in which such Remittance Date occurs, which amounts shall be remitted on the Remittance Date next succeeding the Due Date related to such Monthly Payment. The Remittance Date is defined in the Servicing Agreement as: with respect to each Distribution Date, the 18th day (or if such 18th day is not a Business Day, the first Business Day immediately following) of the month in which such Distribution Date occurs.

This notice shall constitute a notice of default as referenced under Section 8.01(a)(i) of the Servicing Agreement, which section provides that an Event of Default shall occur due to any failure by the Servicer to remit to the Master Servicer any payment required to be made under the terms of the Servicing Agreement which continues unremedied for a period of one Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Master Servicer.

The Servicer failed to remit the Remittance Amount as required under Section 8.01(a)(i) of the Servicing Agreement related to the August 18, 2009 Distribution Date, and as of the date of this notice of default, the Master Servicer is not in receipt of the Remittance Amount with respect to the August 18, 2009 Distribution Date. As noted above, the Servicer is required to remedy such default by remitting the Remittance Amount for the August 18, 2009 Distribution Date within one (1) Business Day after receipt of this notice of default in order to avoid the occurrence of an Event of Default.

**\*\*\* The Master Servicer hereby directs TBW to immediately remit all funds owed under the Agreements and which were due on August 18, 2009 as described in the preceding paragraphs. Wells Fargo, as Master Servicer, hereby reserves any and all rights it may have at law or equity to damages, including injunctive relief and specific performance to enforce the performance of the Servicer of such obligations under the Agreements. \*\*\***

**III.    Servicer Termination Effective as of August 13, 2009**

The occurrence of the default described in this notice is in addition to and not in replacement of the Event of Default and Notice of Termination that was previously delivered to you on August 13, 2009. Delivery of this notice in no way diminishes the efficacy of the earlier notice of termination delivered to you and TBW's rights as Servicer are considered terminated as of August 13, 2009. Notwithstanding TBW's termination as Servicer on August 13, 2009, please note that TBW is still obligated, pursuant to Section 9.01 of the Servicing Agreement, to continue to discharge its duties and responsibilities as Servicer until the date of appointment of a successor servicer.

Wells Fargo hereby reserves any and all rights it has under the Agreements or at law.

Questions regarding the matters addressed in this notice may be directed to the Master Servicer by contacting Mary Sohlberg via (1) facsimile at (612) 667-3464, or (2) mail addressed to Wells Fargo Bank, N.A., Sixth and Marquette, MAC N9311-161, Minneapolis, Minnesota 55479, Attn: Corporate Trust Servicer—Mary Sohlberg, Vice President.

Dated:  August 20, 2009

WELLS FARGO BANK, N.A.
as Master Servicer

By: _____
Name:  Mary L. Sohlberg
Title:   Vice President

## SCHEDULE A

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Avenue
Ocala, Florida 34475
Attn: Nathan J. Sands, Vice President of Loan Administration

U.S. Bank National Association
EP-MN-WS3D
60 Livingston Avenue
St. Paul, Minnesota 55107
Attention: Structured Finance – TBW 2006-3

Moody's Investors Service, Inc.
99 Church Street
New York, New York 10007
Attention: Residential Mortgages

Standard & Poor's Ratings Services
55 Water Street
New York, New York 10041
Attention: Residential Mortgages

Structured Asset Securities Corporation
745 Seventh Avenue
7th Floor
New York, New York 10019
Attention: Mortgage Finance TBW 2006-3

# EXHIBIT A

[See attached]



**Wells Fargo Bank, National Association**
**Sixth and Marquette**
**MAC N9311-161**
**Minneapolis, Minnesota 55479**

To the Persons Listed on
Schedule A attached hereto

NOTICE OF DEFAULT
TBW MORTGAGE-BACKED TRUST,
TBW MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-4

Wells Fargo Bank, N.A. ("Wells Fargo"), serves as Master Servicer (the "Master Servicer") and Trust Administrator (the "Trust Administrator") for the above-referenced securitization pursuant to a Pooling and Servicing Agreement dated as of August 1, 2006 (the "Pooling Agreement"), by and among Credit Suisse First Boston Mortgage Securities Corp., as Depositor, DLJ Mortgage Capital, Inc., as Seller, Wells Fargo as Master Servicer and Trust Administrator, Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), as Servicer (in such capacity, the "Servicer"), and U.S. Bank National Association, as Trustee. TBW serves as Servicer for the above-referenced transaction pursuant to the Pooling Agreement and a Securitization Servicing Agreement dated as of August 1, 2006 (the "Servicing Agreement" and together with the Pooling Agreement, the "Agreements") by and among the Servicer, the Seller, the Master Servicer, the Trust Administrator, and the Trustee. Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed thereto in the Agreements.

**I.    Event of Default has already occurred and continues to occur under the Agreements**

On August 13, 2009, TBW was notified of the occurrence of an Event of Default under Section 8.01(a)(xii) of the Servicing Agreement, which provides that an Event of Default shall occur if the Servicer ceases to meet the eligibility criteria set forth in Section 7.01, which section requires, *inter alia*, that the Servicer shall be a Freddie Mac-approved servicer in good standing. Pursuant to such notice, attached hereto as Exhibit A, and acting pursuant to authority granted to it under the Servicing Agreement, the Master Servicer terminated all rights and obligations of TBW as Servicer under the Servicing Agreement as of such date.

**II.    Further Notice of Servicer Default: Failure to Remit Funds Due under the Servicing Agreement**

Pursuant to Section 8.01(a)(i) of the Servicing Agreement, the Master Servicer hereby provides notice of the occurrence of a default by the Servicer for failing to remit the amounts required to be remitted to the Master Servicer (the "Remittance Amount") pursuant to Section 4.01 of the Servicing Agreement, which Section provides that on each Remittance Date the Servicer shall remit on a scheduled/scheduled basis by wire transfer of immediately available funds to the Master Servicer (a) all amounts deposited in the Custodial Account as of the close of business on the last day of the related Due Period (net of charges against or withdrawals from the Custodial Account pursuant to Section 3.05), plus (b) all Monthly Advances, if any, that the Servicer is obligated to make pursuant to Section 4.03, minus (c) any amounts attributable to Principal Prepayments, Liquidation Proceeds, Insurance Proceeds, Condemnation Proceeds or REO Disposition Proceeds received after the applicable Principal Prepayment Period, which amounts shall be remitted on the following Remittance Date, together with any additional interest required to be deposited in the Custodial Account in connection with such Principal Prepayment in accordance with Section 3.04 (viii), and minus (d) any amounts attributable to Monthly Payments collected but due on a Due Date or Due Dates subsequent to the first day of the month in which such Remittance Date occurs, which amounts shall be remitted on the Remittance Date next succeeding the Due Date related to such Monthly Payment. The Remittance Date is defined in the Servicing Agreement as the eighteenth (18th) day (or if such 18th day is not a Business Day, the first Business Day immediately following) of the month in which such Distribution Date occurs.

This notice shall constitute a notice of default as referenced under Section 8.01(a)(i) of the Servicing Agreement, which section provides that an Event of Default shall occur due to any failure by the Servicer to remit to the Master Servicer any payment required to be made under the terms of the Servicing Agreement which continues unremedied for a period of one (1) Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Master Servicer.

The Servicer failed to remit the Remittance Amount as required under Section 8.01(a)(i) of the Servicing Agreement related to the August 18, 2009 Remittance Date, and as of the date of this notice of default, the Master Servicer is not in receipt of the Remittance Amount with respect to the August 18, 2009 Remittance Date. As noted above, the Servicer is required to remedy such default by remitting the Remittance Amount for the August 18, 2009 Remittance Date within one (1) Business Day after receipt of this notice of default in order to avoid the occurrence of an Event of Default.

**\*\*\* The Master Servicer hereby directs TBW to immediately remit all funds owed under the Agreements and which were due on August 18, 2009 as described in the preceding paragraphs. Wells Fargo, as Master Servicer, hereby reserves any and all rights it may have at law or equity to damages, including injunctive relief and specific performance to enforce the performance of the Servicer of such obligations under the Agreements. \*\*\***

### III.    Servicer Termination Effective as of August 13, 2009

LEGAL02/31475177v1

The occurrence of the default described in this notice is in addition to and not in replacement of the Event of Default and Notice of Termination that was previously delivered to you on August 13, 2009. Delivery of this notice in no way diminishes the efficacy of the earlier notice of termination delivered to you and TBW's rights as Servicer are considered terminated as of August 13, 2009. Notwithstanding TBW's termination as Servicer on August 13, 2009, please note that TBW is still obligated, pursuant to Section 8.01 of the Servicing Agreement, to continue to discharge its duties and responsibilities as Servicer until the date of appointment of a successor servicer.

Wells Fargo hereby reserves any and all rights it has under the Agreements or at law.

Questions regarding the matters addressed in this notice may be directed to the Master Servicer by contacting Mary Sohlberg via (1) facsimile at (612) 667-3464, or (2) mail addressed to Wells Fargo Bank, N.A., Sixth and Marquette, MAC N9311-161, Minneapolis, Minnesota 55479, Attn: Corporate Trust Servicer—Mary Sohlberg, Vice President.

Dated:  August 20, 2009

WELLS FARGO BANK, N.A.
as Master Servicer

By:  _Mary L. Sohlberg_
Name: Mary L. Sohlberg
Title:  Vice President

## SCHEDULE A

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Avenue
Ocala, Florida 34475
Attn: Nathan J. Sands, Vice President of Loan Administration

Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd Street
Ocala, Florida 34470
Attn: Nathan J. Sands, Vice President of Loan Administration

Taylor, Bean & Whitaker Mortgage Corp.
Attention: Jeffery W. Cavendar
1690 Stone Village Lane, No. 102
Kennesaw, Georgia 30152

U.S. Bank National Association
EP-MN-WS3D
60 Livingston Avenue
St. Paul, Minnesota 55107
Attention: Structured Finance – TBW 2006-4

Moody's Investors Service, Inc.
99 Church Street
New York, New York 10007
Attention: Residential Mortgages

Standard & Poor's Ratings Services
55 Water Street
New York, New York 10041
Attention: Residential Mortgages

Credit Suisse First Boston Mortgage Securities Corp.
11 Madison Avenue
4th Floor
New York, New York 10010
Attention: Peter Sack and Bruce Kaiserman

LEGAL02/31475177v1

# EXHIBIT A

[See attached]



**Wells Fargo Bank, National Association**
**Sixth and Marquette**
**MAC N9311-161**
**Minneapolis, Minnesota 55479**

To the Persons Listed on
Schedule A attached hereto

NOTICE OF DEFAULT
TBW MORTGAGE-BACKED TRUST SERIES 2006-5,
MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-5

Wells Fargo Bank, N.A. ("Wells Fargo"), serves as Master Servicer (the "Master Servicer") and Securities Administrator (the "Securities Administrator") for the above-referenced securitization pursuant to a Pooling and Servicing Agreement dated as of October 1, 2006 (the "Pooling Agreement"), by and among BNP Paribas Mortgage Securities LLC, as Depositor, Wells Fargo as Master Servicer and Securities Administrator, and U.S. Bank National Association, as Trustee. Taylor, Bean & Whitaker Mortgage Corp. ("TBW") serves as seller and servicer (in such capacity, the "Servicer") for the above-referenced transaction pursuant to that certain Master Mortgage Loan Purchase and Servicing Agreement, dated as of October 1, 2006 (the "MMLPSA"), by and between TBW, as seller and servicer and BNP Paribas Mortgage Corp., as initial purchaser, as modified by that certain Assignment, Assumption and Recognition Agreement, dated as of October 26, 2006 (the "AAR" and together with the MMLPSA, the "Servicing Agreement" and the Servicing Agreement together with the Pooling Agreement, the "Agreements"), by and among BNP Paribas Mortgage Corp., as assignor, the Depositor, as assignee and TBW, as the company. Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed thereto in the Agreements.

**I.      Event of Default has already occurred and continues to occur under the Agreements**

On August 13, 2009, TBW was notified of the occurrence of an Event of Default under Section 14.01(vii) of the MMLPSA, which provides that an Event of Default shall occur if the Servicer ceases to meet the qualifications of a Freddie Mac seller/servicer. Pursuant to such notice, attached hereto as Exhibit A, and acting pursuant to authority granted to it under the Servicing Agreement, the Master Servicer terminated all rights and obligations of TBW as Servicer under the Agreements as of such date.

**II.      Further Notice of Servicer Default: Failure to Remit Funds Due under the Servicing Agreement**

Pursuant to Section 14.01(i) of the MMLPSA, the Master Servicer hereby provides notice of the occurrence of a default by the Servicer for failing to remit the amounts required to be remitted to the Master Servicer (the "Remittance Amount") pursuant to Section 11.14 of the Servicing Addendum under the MMLPSA, which Section provides that on each Distribution Date the Servicer shall distribute to the Master Servicer (A)(i) all amounts credited to the related Custodial Account as of the close of business on the preceding Determination Date, net of charges against or withdrawals from the related Custodial Account pursuant to Subsection 11.05, plus (ii) all Monthly Advances, if any, which the Servicer is obligated to distribute pursuant to Subsection 11.34; minus (B)(x) any amounts attributable to Principal Prepayments received after the preceding Determination Date and (y) any amounts attributable to Monthly Payments collected but due on a Due Date or Dates subsequent to the preceding Determination Date. The Distribution Date is defined in the MMLPSA as the eighteenth (18th) day of each month, commencing on the eighteenth (18th) day of the month next following the month in which the related Cut-Off Date occurs, or if such eighteenth (18th) day is not a Business Day, the first Business Day immediately preceding such eighteenth (18th) day.

This notice shall constitute a notice of default as referenced under Section 14.01(i) of the MMLPSA, which section provides that an Event of Default shall occur due to any failure by the Servicer to remit to the Master Servicer any payment required to be made under the terms of the Agreement which continues unremedied for a period of one (1) Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Master Servicer.

The Servicer failed to remit the Remittance Amount as required under Section 11.14 of the Servicing Addendum under the MMLPSA related to the August 18, 2009 Distribution Date, and as of the date of this notice of default, the Master Servicer is not in receipt of the Remittance Amount with respect to the August 18, 2009 Distribution Date. As noted above, the Servicer is required to remedy such default by remitting the Remittance Amount for the August 18, 2009 Distribution Date within one (1) Business Day after receipt of this notice of default in order to avoid the occurrence of an Event of Default.

**\*\*\* The Master Servicer hereby directs TBW to immediately remit all funds owed under the Agreements and which were due on August 18, 2009 as described in the preceding paragraphs. Wells Fargo, as Master Servicer, hereby reserves any and all rights it may have at law or equity to damages, including injunctive relief and specific performance to enforce the performance of the Servicer of such obligations under the Agreements. \*\*\***

### III.    Servicer Termination Effective as of August 13, 2009

The occurrence of the default described in this notice is in addition to and not in replacement of the Event of Default and Notice of Termination that was previously

LEGAL02/31474834v2

delivered to you on August 13, 2009. Delivery of this notice in no way diminishes the efficacy of the earlier notice of termination delivered to you and TBW's rights as Servicer are considered terminated as of August 13, 2009. Notwithstanding TBW's termination as Servicer on August 13, 2009, please note that TBW is still obligated, pursuant to Section 16 of the MMLPSA Agreement, to continue to discharge its duties and responsibilities as Servicer until the date of appointment of a successor servicer.

Wells Fargo hereby reserves any and all rights it has under the Agreements or at law.

Questions regarding the matters addressed in this notice may be directed to the Master Servicer by contacting Mary Sohlberg via (1) facsimile at (612) 667-3464, or (2) mail addressed to Wells Fargo Bank, N.A., Sixth and Marquette, MAC N9311-161, Minneapolis, Minnesota 55479, Attn: Corporate Trust Servicer—Mary Sohlberg, Vice President.

Dated: August 20, 2009

WELLS FARGO BANK, N.A.
as Master Servicer

By: _____
Name: Mary L. Sohlberg
Title: Vice President

## SCHEDULE A

Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd Street
Ocala, Florida 34470
Attn: President

Jeffrey Cavender, Esquire
General Counsel
1690 Stone Village Lane
No. 102
Kennesaw, GA 30152

U.S. Bank National Association
EP-MN-WS3D
60 Livingston Avenue
St. Paul, Minnesota 55107
Attention: Trust Administration – TBW 2006-5

Moody's Investors Service, Inc.
99 Church Street
New York, New York 10007
Attention: Residential Mortgage Monitoring Department

Standard & Poor's Ratings Services
55 Water Street
New York, New York 10041
Attention: Asset Backed Survelliance Department

BNP Paribas Mortgage Securities LLC
538 787 Seventh Avenue
7th Floor
New York, New York 10019
Attention: Mortgage Trading

LEGAL02/31474834v2

# EXHIBIT A

[See attached]



Wells Fargo Bank, National Association
Sixth and Marquette
MAC N9311-161
Minneapolis, Minnesota 55479

To the Persons Listed on
Schedule A attached hereto

NOTICE OF DEFAULT
TBW MORTGAGE-BACKED TRUST,
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-2

Wells Fargo Bank, N.A. ("Wells Fargo"), serves as Master Servicer (the "Master Servicer") and Trust Administrator (the "Trust Administrator") for the above-referenced securitization pursuant to an Amended and Restated Pooling and Servicing Agreement dated as of May 1, 2007 (the "Pooling Agreement"), by and among Credit Suisse First Boston Mortgage Securities Corp., as Depositor, DLJ Mortgage Capital, Inc., as Seller, Wells Fargo as Master Servicer and Trust Administrator, Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), as Servicer (in such capacity, the "Servicer"), and U.S. Bank National Association, as Trustee. TBW serves as Servicer for the above-referenced transaction pursuant to the Pooling Agreement and a Securitization Servicing Agreement dated as of May 1, 2007 (the "Servicing Agreement" and together with the Pooling Agreement, the "Agreements") by and among the Servicer, the Seller, the Master Servicer, the Trust Administrator, and the Trustee. Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed thereto in the Agreements.

**I.**      **Event of Default has already occurred and continues to occur under the Agreements**

On August 13, 2009, TBW was notified of the occurrence of an Event of Default under Section 8.01(a)(xii) of the Servicing Agreement, which provides that an Event of Default shall occur if the Servicer ceases to meet the eligibility criteria set forth in Section 7.01, which section requires, *inter alia*, that the Servicer shall be a Freddie Mac-approved servicer in good standing. Pursuant to such notice, attached hereto as Exhibit A, and acting pursuant to authority granted to it under the Servicing Agreement, the Master Servicer terminated all rights and obligations of TBW as Servicer under the Servicing Agreement as of such date.

**II.**      **Further Notice of Servicer Default: Failure to Remit Funds Due under the Servicing Agreement**

Pursuant to Section 8.01(a)(i) of the Servicing Agreement, the Master Servicer hereby provides notice of the occurrence of a default by the Servicer for failing to remit the amounts required to be remitted to the Master Servicer (the "Remittance Amount") pursuant to Section 4.01 of the Servicing Agreement, which Section provides that on each Remittance Date the Servicer shall remit on a scheduled/scheduled basis by wire transfer of immediately available funds to the Master Servicer (a) all amounts deposited in the Custodial Account as of the close of business on the last day of the related Due Period (net of charges against or withdrawals from the Custodial Account pursuant to Section 3.05), *plus* (b) all Monthly Advances, if any, that the Servicer is obligated to make pursuant to Section 4.03, *minus* (c) any amounts attributable to Principal Prepayments, Liquidation Proceeds, Insurance Proceeds, Condemnation Proceeds or REO Disposition Proceeds received after the applicable Principal Prepayment Period, which amounts shall be remitted on the following Remittance Date, together with any additional interest required to be deposited in the Custodial Account in connection with such Principal Prepayment in accordance with Section 3.04 (viii), and *minus* (d) any amounts attributable to Monthly Payments collected but due on a Due Date or Due Dates subsequent to the first day of the month in which such Remittance Date occurs, which amounts shall be remitted on the Remittance Date next succeeding the Due Date related to such Monthly Payment. The Remittance Date is defined in the Servicing Agreement as the eighteenth (18th) day (or if such 18th day is not a Business Day, the first Business Day immediately following) of the month in which such Distribution Date occurs.

This notice shall constitute a notice of default as referenced under Section 8.01(a)(i) of the Servicing Agreement, which section provides that an Event of Default shall occur due to any failure by the Servicer to remit to the Master Servicer any payment required to be made under the terms of the Servicing Agreement which continues unremedied for a period of one (1) Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Master Servicer.

The Servicer failed to remit the Remittance Amount as required under Section 8.01(a)(i) of the Servicing Agreement related to the August 18, 2009 Remittance Date, and as of the date of this notice of default, the Master Servicer is not in receipt of the Remittance Amount with respect to the August 18, 2009 Remittance Date. As noted above, the Servicer is required to remedy such default by remitting the Remittance Amount for the August 18, 2009 Remittance Date within one (1) Business Day after receipt of this notice of default in order to avoid the occurrence of an Event of Default.

**\*\*\* The Master Servicer hereby directs TBW to immediately remit all funds owed under the Agreements and which were due on August 18, 2009 as described in the preceding paragraphs. Wells Fargo, as Master Servicer, hereby reserves any and all rights it may have at law or equity to damages, including injunctive relief and specific performance to enforce the performance of the Servicer of such obligations under the Agreements. \*\*\***

### III.    Servicer Termination Effective as of August 13, 2009

- 2 -

The occurrence of the default described in this notice is in addition to and not in replacement of the Event of Default and Notice of Termination that was previously delivered to you on August 13, 2009. Delivery of this notice in no way diminishes the efficacy of the earlier notice of termination delivered to you and TBW's rights as Servicer are considered terminated as of August 13, 2009. Notwithstanding TBW's termination as Servicer on August 13, 2009, please note that TBW is still obligated, pursuant to Section 8.01 of the Servicing Agreement, to continue to discharge its duties and responsibilities as Servicer until the date of appointment of a successor servicer.

Wells Fargo hereby reserves any and all rights it has under the Agreements or at law.

Questions regarding the matters addressed in this notice may be directed to the Master Servicer by contacting Mary Sohlberg via (1) facsimile at (612) 667-3464, or (2) mail addressed to Wells Fargo Bank, N.A., Sixth and Marquette, MAC N9311-161, Minneapolis, Minnesota 55479, Attn: Corporate Trust Servicer—Mary Sohlberg, Vice President.

Dated: August 20, 2009

WELLS FARGO BANK, N.A.
as Master Servicer

By: _____
Name: Mary L. Sohlberg
Title: Vice President

## SCHEDULE A

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Avenue
Ocala, Florida 34475
Attn: Nathan J. Sands, Vice President of Loan Administration

Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd Street
Ocala, Florida 34470
Attn: Nathan J. Sands, Vice President of Loan Administration
Attn: Paul Allen

Taylor, Bean & Whitaker Mortgage Corp.
Attention: Jeffery W. Cavendar
1690 Stone Village Lane, No. 102
Kennesaw, Georgia 30152

U.S. Bank National Association
EP-MN-WS3D
60 Livingston Avenue

- 3 -

St. Paul, Minnesota 55107
Attention: Structured Finance – TBW 2007-2

Moody's Investors Service, Inc.
99 Church Street
New York, New York 10007
Attention: Residential Mortgages

Standard & Poor's Ratings Services
55 Water Street
New York, New York 10041
Attention: Residential Mortgages

Credit Suisse First Boston Mortgage Securities Corp.
11 Madison Avenue
4th Floor
New York, New York 10010
Attention: Peter Sack and Bruce Kaiserman

LEGAL02/31475157v1

## EXHIBIT A

[See attached]



To the Persons Listed on
Schedule A attached hereto

NOTICE OF DEFAULT
CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.,
CSAB MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-1

Wells Fargo Bank, National Association ("Wells Fargo"), serves as Master Servicer and Trust Administrator (respectively, the "Master Servicer" and the "Trust Administrator") for the above-referenced securitization pursuant to a Pooling and Servicing Agreement dated as of April 1, 2007 (the "Pooling Agreement"), by and among Credit Suisse First Boston Mortgage Securities Corp., as depositor, DLJ Mortgage Capital, Inc., as seller, Wells Fargo, as servicer, Master Servicer and Trust Administrator, Universal Master Servicing, LLC, as servicer, Select Portfolio Servicing, Inc., as servicer, special servicer, and modification oversight agent, and U.S. Bank National Association, as trustee. Taylor, Bean & Whitaker Mortgage Corp. ("TBW") serves as a Designated Servicer (in such capacity, the "Designated Servicer") for the above-referenced transaction pursuant to the Seller's Purchase, Warranties and Servicing Agreement, dated as of February 1, 2007 (the "Underlying Servicing Agreement"), by and between DLJ Mortgage Capital, Inc., as purchaser, and TBW, as seller and servicer, as modified by that certain Reconstituted Servicing Agreement, dated as of April 1, 2007 (the "RSA" and together with the Underlying Servicing Agreement, the "Servicing Agreement", and collectively with the Pooling Agreement, the "Agreements"), by and among DLJ Mortgage Capital Inc., TBW, as servicer, Wells Fargo, as Master Servicer and Trust Administrator, and U.S. Bank National Association, as trustee. Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Agreements.

**I.    Event of Default has already occurred and continues to occur under the Agreements**

On August 13, 2009, TBW was notified of the occurrence of an Event of Default under Section 8.01(ix) of the Servicing Agreement, as modified by Paragraph 8(E) of the RSA, which provides that an Event of Default shall occur if the Designated Servicer, in its capacity as Seller, ceases to meet the eligibility criteria set forth in the second paragraph of Section 7.02 of the Underlying Servicing Agreement, which section requires, *inter alia*, the Designated Servicer to be a HUD-approved mortgagee whose primary business is in origination and servicing of first lien mortgage loans, and a Freddie Mac approved

seller/servicer in good standing. Pursuant to such notice, attached hereto as Exhibit A, and acting pursuant to the authority granted to it under the Servicing Agreement, the Master Servicer terminated all rights and obligations of TBW as Designated Servicer under the Agreements as of such date.

## II.    Further Notice of Servicer Default: Failure to Remit Funds Due under the Servicing Agreement

Pursuant to Section 8.01(i) of the Servicing Agreement, the Master Servicer hereby provides notice of the occurrence of a default by the Designated Servicer for failing to remit the amounts required to be remitted to the Master Servicer (the "Remittance Amount") pursuant to Section 5.01 of the Servicing Agreement, which Section provides that on each Remittance Date the Designated Servicer shall distribute to the Master Servicer (i) all amounts credited to the Custodial Account as of the close of business on the preceding Determination Date, net of charges against or withdrawals from the Custodial Account pursuant to Section 4.05, plus (ii) all Monthly Advances, if any, which the Designated Servicer is obligated to distribute pursuant to Section 5.03, minus (iii) any amounts attributable to Monthly Payments collected but due on a Due Date or Dates subsequent to the preceding Determination Date. The Remittance Date is defined in the Servicing Agreement as the eighteenth (18th) day of each month, beginning with the First Remittance Date, or if such day is not a Business Day, the first Business Day immediately preceding such date.

This notice shall constitute a notice of default as referenced under Section 8.01(i) of the Servicing Agreement, which section provides that an Event of Default shall occur due to any failure by the Designated Servicer to remit to the Master Servicer any payment required to be made under the terms of the Servicing Agreement which continues unremedied for a period of one (1) Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Designated Servicer by the Master Servicer.

The Designated Servicer failed to remit the Remittance Amount as required under Section 5.01 of the Servicing Agreement related to the August 18, 2009 Remittance Date, and as of the date of this notice of default, the Master Servicer is not in receipt of the Remittance Amount with respect to the August 18, 2009 Remittance Date. As noted above, the Designated Servicer is required to remedy such default by remitting the Remittance Amount for the August 18, 2009 Remittance Date within one (1) Business Day after receipt of this notice of default in order to avoid the occurrence of an Event of Default.

**\*\*\* The Master Servicer hereby directs TBW to immediately remit all funds owed under the Agreements and which were due on August 18, 2009 as described in the preceding paragraphs. Wells Fargo, as Master Servicer, hereby reserves any and all rights it may have at law or equity to damages, including injunctive relief and specific performance to enforce the performance of the Designated Servicer of such obligations under the Agreements. \*\*\***

LEGAL02/31475154v1

### III.   Servicer Termination Effective as of August 13, 2009

The occurrence of the default described in this notice is in addition to and not in replacement of the Event of Default and Notice of Termination that was previously delivered to you on August 13, 2009. Delivery of this notice in no way diminishes the efficacy of the earlier notice of termination delivered to you and TBW's rights as Designated Servicer are considered terminated as of August 13, 2009. Notwithstanding TBW's termination as Designated Servicer on August 13, 2009, please note that TBW is still obligated, pursuant to Section 11.01 of the Servicing Agreement, to continue to discharge its duties and responsibilities as Designated Servicer until the date of appointment of a successor servicer.

Wells Fargo hereby reserves any and all rights it has under the Agreements or at law.

Questions regarding the matters addressed in this notice may be directed to the Master Servicer by contacting Mary Sohlberg via (1) facsimile at (612) 667-3464, or (2) mail addressed to Wells Fargo Bank, N.A., Sixth and Marquette, MAC N9311-161, Minneapolis, Minnesota 55479, Attn: Corporate Trust Servicer—Mary Sohlberg, Vice President.

Dated:  August 20, 2009

WELLS FARGO BANK, N.A.
as Master Servicer

By: _Mary L. Sohlberg_
Name:  Mary L. Sohlberg
Title:   Vice President

LEGAL02/31475154v1

## SCHEDULE A

Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd Street
Ocala, Florida 34470
Attn: Ray Bowman, President

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Avenue
Ocala, Florida 34475
Attn: Nathan J. Sands, Vice President of Loan Administration

# EXHIBIT A

[See attached]

LEGAL02/31475154v1