UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                          Chapter 11

TAYLOR, BEAN & WHITAKER
MORTGAGE CORP.,                                 Case No. 3:09-bk-07047-JAF

        Debtor.                                 *Emergency Relief Requested*

_____/

**EMERGENCY MOTION FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTOR TO PAY OR HONOR CERTAIN PREPETITION
OBLIGATIONS FOR WAGES, SALARIES, AND OTHER EMPLOYEE BENEFITS**

TAYLOR, BEAN & WHITAKER MORTGAGE CORP., as Debtor and Debtor in Possession (the "**Debtor**" or "**TBW**"), by and through its undersigned attorneys, hereby moves for the entry of an order authorizing, but not directing, the Debtor to pay in the ordinary course of business certain prepetition wages, salaries, and other employee benefits. In support of this motion (the "**Motion**"), the Debtor respectfully states as follows:

**Jurisdiction**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are Sections 363(b), 507(a)(4), 507(a)(5), 541(b) and 1129(a)(9)(B) of Title 11 of the United States Code (the

"**Bankruptcy Code**"), and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## Background

### A. Chapter 11 Filing

4. On August 24, 2009, (the "**Petition Date**"), TBW filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5. TBW continues to operate its business and manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. No trustee or examiner has been appointed in this case and no official committee has yet been appointed pursuant to Section 1102 of the Bankruptcy Code.

### B. Company Background

7. Until very recently, TBW was the largest independent (i.e. non-depository owned) mortgage lender in the United States. Headquartered in Ocala, Florida, TBW employed approximately 2,400 people across the country. The largest offices were in Ocala, Florida; Atlanta, Georgia; and Tampa, Florida. TBW's principal business was comprised of:

- Origination, underwriting, processing and funding of conforming conventional and Government-insured residential mortgage loans;

- Sale of mortgage loans into the "secondary market" to government-sponsored enterprises such as the Federal Home Loan Mortgage Corporation ("**Freddie Mac**") or the Government National Mortgage Association ("**Ginnie Mae**"); and

- Mortgage payment processing and loan servicing.

8.      Following the precipitous events of early August, the members of TBW's board of directors and the company's corporate officers, including the Chairman, Vice Chairman, Chief Executive Officer, and Chief Financial Officer, resigned. New, independent members have been appointed to the board, and the new board has appointed Neil F. Luria as the company's Chief Restructuring Officer. The business and financial affairs and ongoing operations of the company are under the direction and control of the new board and the Chief Restructuring Officer. As a result of its ownership interest in Platinum Bank, the Debtor is subject to regulation by the Office of Thrift Supervision ("**OTS**") as a savings and loan holding company, including approval of those selected to serve as officers and directors of the Debtor. On or about August 20, 2009, the OTS approved the candidates for the new board and Mr. Luria to serve in their capacities for the Debtor, subject to completion of final background checks.

9.      For a detailed description of the Debtor's business operations and the reasons for this bankruptcy filing, please see the description contained in the Debtor's Emergency Motion For Entry of Interim and Final Orders Authorizing Use Of Cash Collateral and Granting Replacement Liens Pursuant to 11 U.S.C. §§ 105(a), 361, 363, 541 and 552 and Bankruptcy Rule 4001 (Docket No. 5).

## **Basis for Relief**

10.     As of the Petition Date, the Debtor employs more than 328 employees[1] (collectively, the "**Employees**").

---

[1] The Debtor seeks authority to pay Carol Whiteside, an independent contractor, $3,030.00, in prepetition compensation.

3

11. The Employees perform a wide variety of critical functions, including management, accounting, tax, technical and other tasks. The Employees' skills and their knowledge and understanding of the Debtor's operations, customer relations and infrastructure are essential to the effective reorganization of the Debtor's business.

12. Just as the Debtor depends on its Employees to operate, the Employees depend on the Debtor. In fact, the vast majority of the Debtor's Employees rely exclusively on their compensation, benefits and reimbursement of their expenses to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if the Debtor is not permitted to pay the Employees full unpaid compensation, benefits and reimbursable expenses.

13. The Debtor's bankruptcy filing occurred in the middle of its normal weekly payroll period. Accordingly, as further discussed below, the Debtor seeks authority to pay the portion of compensation and wages associated with prepetition services.

14. <u>Weekly Wages</u>. In general, the Debtor pays the Employees weekly in a payroll period beginning Thursday of each week and ending on Wednesday of the following week (the "**Weekly Wages**"). The Debtor's payroll for the period ending August 26, 2009 was due to be paid on August 28, 2009[2]. Two days of that payroll period are attributable to the Employees' prepetition services. The wages associated with this period are approximately $100,000.00.

---

[2] A schedule of the amounts owed for the payroll period ending August 26, 2009 is available upon request.

15. <u>Reimbursable Expenses</u>.  Before the Petition Date and in the ordinary course of its business, the Debtor reimburses Employees for certain expenses incurred on behalf of the Debtor in the scope of their employment (the "**Reimbursable Expenses**").  The Reimbursable Expenses include, without limitation, certain expenses for (a) travel expenses for meals, hotels and rental cars, (b) business development expenses, (c) gas mileage expenses, (d) telephone expenses, (e) professional license fees and continuing education costs, (f) working/overtime meals, (g) business relocation expenses, (h) general administrative expenses including supplies, postage, deliveries and other expenses incurred in the normal course of operations.  The Reimbursable Expenses are incurred on the Debtor's behalf and with the understanding that the Debtor would reimburse such expenses.  As of the Petition Date, the Debtor estimates that it owes Employees approximately $9,290.51 on account of Reimbursable Expenses.

16. <u>Deductions and Withheld Amounts</u>.  In the ordinary course of its business, the Debtor deducts certain amounts from Employees' paychecks in each pay period, including, without limitation, garnishments, child support, and other pre-tax and after-tax deductions payable pursuant to certain of the benefit plans discussed herein (such as an Employee's share of health care benefits and insurance premiums, 401(k) contributions, and miscellaneous deductions) (collectively, the "**Deductions**"). The Debtor forwards the amount of the Deductions to the appropriate third-party recipients.  For the prepetition payroll period ending August 26, 2009, the prepetition portion of the Deductions is approximately $1,200.00.  In addition, the Debtor is required by law to withhold amounts related to federal, state and local income taxes, Social Security and Medicare taxes from

an Employee's wages for remittance to the appropriate federal, state or local taxing authority (collectively, the "**Withheld Amounts**"). For the prepetition payroll period ending August 26, 2009, the prepetition portion of the Withheld Amounts is approximately $17,000.00.

17. The Debtor must then match from its own funds for Social Security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (the "**Employer Payroll Taxes**," and together with the Withheld Amounts, the "**Payroll Taxes**"). The prepetition portion of the Payroll Taxes, including both the Withheld Amounts described above and the employer portion, is approximately $8,300.00.

18. <u>Medical and Dental Plans</u>. Prior to the Petition Date, the Debtor provided a healthcare plan through United Healthcare and a dental plan through Guardian Insurance Company. All of the benefit premiums are paid monthly in arrears. The benefit deductions for the health insurance coverage are collected on a current basis from payroll and paid into a group health account at RBC Bank. The Debtor also pays United Healthcare's administrative/service fees from the group health account.

19. Before the Petition Date, the Debtor incurred certain administrative obligations to United Healthcare, which remain unpaid. In addition, before the Petition Date, the Debtor owed amounts for premiums for group coverage under the medical and dental plans for the period from August 1, 2009 through August 14, 2009.

20. As of the Petition Date, the Debtor estimates there are total outstanding obligations under the medical and dental plans in the total aggregate approximate amount

of $242,000. If the Debtor is not authorized to honor its various obligations under the insurance programs its Employees rely upon to meet health and medical coverage needs, many of the Debtor's Employees will not be reimbursed or have their benefit claims paid for the period from August 1 through August 14, 2009. In addition, certain Employees may become primarily obligated for the payment of these claims in cases where health care providers have not been reimbursed and may face termination of health services.

21. <u>Workers' Compensation Program</u>. The Debtor provides workers' compensation benefits to its Employees at the statutorily-required level (the "**Workers' Compensation Program**"). These benefits are currently provided to Employees through AIU Holdings ("AIU"), which administers and pays the Debtor's workers' compensation claims. As of the Petition Date, the Debtor owed AIU approximately $205,000 for workers compensation coverage. If payment is not made, the Workers Compensation Program will be terminated.

22. The Debtor uses ADP to pay all Employees' Weekly Wages. ADP is responsible for paying all withholdings to the applicable third parties, including taxing authorities.

23. The insiders that are to receive payments pursuant to this Motion are listed on **Exhibit A**. None of the officers that resigned (as discussed in paragraph 8 above) are being paid prepetition wages pursuant to this Motion.

**Relief Requested**

24. To minimize the personal hardship that the Employees will suffer if prepetition employee-related obligations are not paid when due or as expected and to

7

maintain morale and an essential workforce during this critical time, the Debtor seeks authority, but not direction, to immediately: (i) pay Employees any prepetition claims related to Weekly Wages; (ii) pay Reimbursable Expenses incurred prior to the Petition Date; (iii) forward any unpaid amounts on account of Deductions or Payroll Taxes to any third party recipients or taxing authority, as applicable; (iv) pay all amounts related to the employee benefit programs discussed above; and (v) pay amounts owed for the Workers Compensation Program. In addition, the Debtor requests that financial institutions be authorized to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtor further requests that all such financial institutions be authorized to rely on the Debtor's designation of any particular check or electronic payment requests as appropriate pursuant to this motion.

## Supporting Authority

25. Courts have generally acknowledged that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See generally In re All American Semiconductor, Inc.,* No. 07-12963 (Bankr. S.D. Fla. May 1, 2007); *In re ITG Vegas, Inc.,* No. 06-163 50 (Bankr. S.D. Fla. Dec. 19, 2006); *In re Gemini Cargo Logistics, Inc.,* No. 06-10870, (Bankr. S.D. Fla. Mar. 20, 2006). In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code.

26. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, Debtors in Possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [its] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business' going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only. . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate. . . ." *Id.*

27. Consistent with the debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See, e.g., In re Tropical Sportswear Int'l Corp.,* 320 B.R. *15,* 17-18 (Bankr. M.D. Fla. 2005) (authorizing payment to critical vendors for prepetition amounts and finding that a sound business justification existed for payment because the vendors would not do business with the Debtor absent the critical vendor status, and the disfavored creditors were not any worse off due to the critical vendor order); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of prepetition wages); *see also Armstrong World Indus., Inc. v, James A. Phillips, Inc., (In re James A. Phillips, Inc.),* 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on Section 363 to allow

9

contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to the debtor).

28. In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business. Specifically, the Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

29. The "doctrine of necessity" or the "necessity of payment" rule originated in railway cases and was first articulated in *Miltenberger v. Logansport, C.&S. W.R. Co.,* 106 U.S. 286 (1882). The doctrine was expanded to non-railroad debtors in the mid-century, *see Dudley v. Mealey,* 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization case, that the court was not "helpless" to apply the rule to supply creditors of non-railroad debtor where the alternative was the cessation of operations), and has long been recognized as precedent within the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (making *S. Ry. Co.* v. *U.S. Fid. & Guar. Co.,* 87 F.2d 118, 119 (5th Cir. 1936) binding 11th Circuit precedent); *S. Ry. Co.* v. *US. Rd. & Guar. Co.,* 87 F.2d 118, 119 (5th Cir. 1936) ("There is a doctrine which permits

preferential payment of a common claim when necessary for the benefit of the estate.") (citing cases, including *Miltenberger,* supra); *see also Tropical Sportswear,* 320 B.R. at 16 (Bankr. M.D. Fla. 2005) (authorizing payment to critical vendors where payment is, *inter alia,* necessary to the reorganization process).

30. Today, the rationale for the necessity of payment rule — the rehabilitation of a debtor in a reorganization case is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Just For Feet, Inc.,* 242 B.R. 821 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *Tropical Sportswear,* 320 B.R. at 16; *In re Quality Interiors, Inc.,* 127 B.R. 391, 396 (Bankr. M.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed ... where bankruptcy courts permit the payment of certain prepetition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Richer Indus., Inc.,* 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v Cent. Wash.Bank (In re Adams Apple, Inc.),* 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation…." is appropriate); *Mich. Bureau of Workers' Disability Conip. v Chateaugay Corp. (In re Chateaugay Corp.),* 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition worker's compensation claims

on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 3 *Collier on Bankruptcy,* 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

31. Similarly, pursuant to state laws, the Debtor must maintain the Workers' Compensation Program to ensure prompt and efficient payment and/or reimbursement of its Employees. If the Debtor fails to maintain the Workers' Compensation Program, it will be prohibited by state law from operating without making significant adjustments. Payment of all workers' compensation amounts, therefore, is crucial to the continued operation of the Debtor's business.

32. Courts also have permitted postpetition payment of prepetition claims pursuant to section 105(a) in other situations, such as if nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the Debtor's business reorganization plan. *See In re UNR Indus.,* 143 B.R. 516, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the Debtor's successful reorganization); *Ionosphere Clubs,* 98 B.R. at 167-77 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

33. This flexible approach is particularly critical where a prepetition creditor provides vital goods or services to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations. In *In re Structurlite Plastics Corp.,* 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court stated that "a bankruptcy court may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the Debtor and payment of creditors in full or at least proportionately." *Id.* The court explained that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932.

**Sufficient Cause Exists for the Court to Authorize
the Debtor to Honor Employee Wage and Benefit Obligations**

34. Sections 507(a)(4) and (a)(5) of the Bankruptcy Code give priority up to $10,950 per individual for prepetition claims for wages, salaries, vacation and sick leave and claims for contributions to employee benefit plans. As priority claims, the Debtor is required to pay these claims in full to confirm a chapter 11 plan. *See* II U.S.C. §1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for wages, salaries and commissions for contributions to an employee benefit plan). The amounts the Debtor is requesting to pay do not exceed $10,950.00 per individual.

35. Additionally, as part of the relief requested herein, the Debtor seeks authority to pay to the appropriate entities the Deductions and the Payroll Taxes. The Debtor does not believe that the amounts designated to be paid on account of the Deductions and Payroll Taxes are property of the Debtor's estate under Section 541 of

the Bankruptcy Code. The Deductions and Payroll Taxes represent Employee earnings that governments (in the case of taxes), Employees (in the case of voluntarily withheld amounts) and judicial authorities (in the case of involuntarily withheld amounts) have designated for deduction from Employees' paychecks. Failure to remit these amounts could result in hardship to the Employees.

36. Indeed, certain Deductions, like child support and alimony payments, are not the Debtor's property, but rather, have been withheld from Employees' paychecks on another party's behalf, *See* 11 U.S.C. § 541(b). Moreover, the Debtor and its officers are required by federal or state laws to make certain tax payments that have been withheld from its Employees' paychecks. 26 U.S.C. §§ 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92, 95-97 (3d Cir. 1994) (holding state law requiring debtor to withhold city income tax from its Employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co. v Mich. (In re DuCharmes & Co.),* 852 F.2d 194, 196 (6th Cir. 1988) (noting individual officers of a company may be held personally liable for failure to pay trust fund taxes). Further, because the Deductions and Payroll Taxes are not property of the Debtor's estate, these amounts are not subject to the normal bankruptcy prohibitions against payment. *See Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron),* 155 F.3d 718, 721 (4th Cir. 1998). The Debtor therefore requests that the Court confirm that such trust fund withholding is not property of the Debtor's estate and that the Debtor may transmit the Payroll Taxes to the proper parties in the ordinary course of business.

37. As described above, the majority of the Debtor's Employees rely exclusively on their compensation, benefits or reimbursement of their expenses to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if the Debtor is not permitted to honor obligations for the unpaid compensation, benefits and Reimbursable Expenses. If the Debtor is unable to honor such obligations, Employee morale and loyalty will be jeopardized at a time when such support is critical and certain Employees are likely to seek alternate employment.

38. For all of these reasons, paying prepetition wages and employee benefits will benefit the Debtor's estate and its creditors by allowing the Debtor's business operations to continue without interruption. Indeed, the Debtor believes that, without the requested relief, its Employees are very likely to seek alternative employment opportunities. The loss of valuable Employees, with the resulting loss of institutional knowledge, would be distracting at this critical time. Accordingly, there can be no doubt that the Debtor must take all reasonable steps to retain its Employees by, among other things, honoring all prepetition wages, benefits and related obligations.

**Failure to Honor Employee Obligations Within 20 Days
of the Petition Date May Cause Immediate and Irreparable Harm**

39. Pursuant to the recently revised Bankruptcy Rule 6003, the court may grant relief regarding a motion to pay all or part of a prepetition claim that arose before the Petition Date within twenty (20) days after the filing of the petition if the relief is necessary to avoid immediate and irreparable harm.

40. As described above, the Employees are integral to the Debtor's business operations. Failure to satisfy obligations with respect to the Employees in the ordinary

course of business during the first twenty (20) days of these cases will jeopardize the loyalty and trust of the Employees. Certain of the Employees may leave and thereby cause serious disruption to the Debtor's business operations during this critical period when the Debtor needs the continued support of its Employees to allow for a successful reorganization.

41. Moreover, the vast majority of the Debtor's Employees rely exclusively on their compensation, benefits and reimbursement of their expenses to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if the Debtor is not permitted to pay the Employees in the ordinary course of business. Accordingly, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of the employee obligations.

**Cause Exists to Authorize the Debtor's Financial
Institutions to Honor Checks and Electronic Fund Transfers**

42. The Debtor represents that it has sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves and expected cash flows from ongoing business operations. Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be authorized, when requested by the Debtor, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the Weekly Wages.

43. For all of the foregoing reasons, the Debtor believes that granting the relief requested herein is appropriate and in the best interests of all parties-in-interest.

**Reservation of Rights**

44. The Debtor does not at this time seek to assume any executory contracts or obligations, and the Motion should not be deemed to be an assumption or adoption of any employee agreements or policies. Rather, the Debtor merely seeks to take steps that it believes to be necessary to keep its existing Employee base intact to maximize the value of the Chapter 11 estate, pending further decisions relevant to the contemplated reorganization. Also, the Debtor expressly reserves its right to exercise discretion within its business judgment regarding the payments contemplated by the motion for particular Employees or former Employees, and nothing in the Motion shall, in and of itself confer upon any Employees or other parties an entitlement to administrative priority or other preferences in distribution from the Debtor's estate.

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter an order granting this Motion and awarding such other and further relief as may be just and proper.

DATED: September 1, 2009.

>  /s/ Edward J. Peterson, III
> Russell M. Blain (FBN 236314)
> rblain@srbp.com
> Edward J. Peterson, III (FBN 014612)
> epeterson@srbp.com
> Amy Denton Harris (FBN 0634506)
> aharris@srbp.com
> Stichter, Riedel, Blain & Prosser, P.A.
> 110 East Madison Street, Suite 200
> Tampa, Florida 33602
> Telephone: (813) 229-0144
> Facsimile: (813) 229-1811
> Attorneys for Debtor

**EXHIBIT "A"**

| Name | Position |
|---|---|
| Pamela J. Detrow | Chief Credit Officer |
| Jeremy Collett | Executive Vice President, Capital Markets |
| Erla Carter-Shaw | Executive Vice President, Loan Administration and Foreclosure |
| Heather Abernathy | Vice President – Closing |
| Jeffery W. Cavender | General Counsel and Assistant Secretary |
| Stuart Scott | Chief Operating Officer |