UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION

IN RE:                                                           CASE NO:    3:09-bk-07047-JAF
TAYLOR, BEAN & WHITAKER MORTGAGE CORP.          CHAPTER:    11

_____/

<u>W. SCOTT WYNN'S MOTION FOR RELIEF FROM
AUTOMATIC STAY</u>

W. SCOTT WYNN (hereinafter referred to as "WYNN"), respectfully moves this Court for

an Order modifying the automatic stay pursuant to 11 U.S.C. Section 362, to the extent applicable.

In support of it's Motion WYNN states as follows:

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and

        157(a) and 362(d) of Title 11, United States Code (hereinafter referred to as "Code").

        Furthermore, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2.      On or about August 24, 2009, TAYLOR, BEAN & WHITAKER MORTGAGE

        CORPORATION(hereinafter referred to as "Debtor") petitioned this Court for relief

        pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. Section 101, *et seq.*

3.      On or about March 22, 2005 WYNN executed a Mortgage and Note in the principal

        amount of $200,000.00 in which Debtor was the lender and holder of the Note. A

        true and correct copy is attached hereto as Exhibit "A".

4.      The property upon which the mortgage encumbered is located in Lake County,

        Florida.

5.      On or about April 20, 2009, WYNN filed a civil action against the Debtor in the

        Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida seeking

        declaratory relief and an accounting . The Complaint was amended on May 12,

2009.  A true and correct copy of said Amended Complaint is attached as Exhibit "B".

6.    The civil action seeks a declaratory judgment as to the rights and obligations of the Debtor and WYNN under the terms of the mortgage and note.

7.    WYNN does not seek a judgment for monetary damages against debtor.

8.    WYNN does not seek a discharge that would be a release nor does he seek to impose a charge on the property of the Debtor.

9.    Section 362(d)(1) of the Bankruptcy code provides that a court shall, upon motion, grant relief from the automatic stay for cause.

10.    WYNN's lack of knowledge as to his rights and/or obligations to Debtor constitutes good cause to lift the automatic stay.

11.    The automatic stay provisions in the Bankruptcy Code must be lifted to adequately inform both the Debtor and WYNN of their respective rights and obligations with respect to the mortgage and note.

12.    Furthermore, the amount of unpaid balance, late fees and interest rate remain in dispute and unknown to the parties without allowing the State court to make a judicial determination and enter a declaratory judgment.

13.    WYNN is desirous of fulfilling his obligation to Debtor but is unsure of the extent of said obligation without allowing the State court to enter an appropriate declaratory judgment.

14.    Attached hereto as Exhibit "C" is WYNN's Affidavit in Support of Motion for Relief from Automatic Stay.

WHEREFORE, WYNN respectfully requests:

A.      That the Automatic Stay, pursuant to 11 U.S.C. Section 362, be modified to permit

WYNN to seek a declaratory judgment in State court in accordance with the

applicable principles of non-bankruptcy law.

B.      Ordering such other and further relief as this Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

U.S. Mail to Taylor, Bean & Whitaker Mortgage Corporation, 1417 N. Magnolia Ave., Ocala, FL

34475; Edward J. Peterson III, Esquire, Strichter, Riedel, Blain & Prosser, 110 E. Madison St., Ste.

200, Tampa, FL 33602-4718; U.S. Trustee-Elena L. Escamilla TB, 135 W. Central Blvd., Suite 620,

Orlando, FL 32801; Bryce W. Ackerman, Esquire, Gray, Ackerman & Haines, P.A., 125 NE 1

Avenue, Ste. 1, Ocala, FL 34470 and to the parties on the Local Rule 1007-2 Parties in Interest List

attached hereto on this 2 nd day of September, 2009.

                                        W. SCOTT WYNN
                                        P.O. Box 447
                                        Groveland, FL 34736
                                        352/429-2185
                                        Plaintiff
                                        Pro Se

Label Matrix for local noticing
113A-3
Case 3:09-bk-07047-JAF
Middle District of Florida
Jacksonville
Tue Sep  1 14:47:38 EDT 2009

Advanced Homebuilders, Inc.
c/o Robert D. Wilcox, Esq.
4190 Belfort Road, Suite 315
Jacksonville, FL 32216-1460

Russell M Blain
Stichter, Riedel, Blain & Prosser
110 East Madison Street, Suite 200
Tampa, FL 33602-4718

DLA Piper LLP (US)
Counsel for FDIC as Receiver for Colonia
100 North Tampa Street, Suite 2200
Tampa, FL 33602-5809
Attn.: Philip V. Martino, Esq.

Kevin M Eckhardt
Akerman Senterfitt
50 North Laura Street
Suite 2500
Jacksonville, FL 32202-3646

Federal Deposit Insurance Corporation as Rec
c/o DLA Piper LLP (US)
100 No. Tampa Street, Ste. 2200
Attn.: Philip V. Martino, Esq.
Tampa, FL 33602-5809

Fidelity National Title
3007 N.DELTA HWY # 206
EUGENE, OR 97408-7119

First American Real Estate Tax
Service
PO BOX 200079
Dallas, TX 75320-0079

Hadlock Title Services, Inc.
679 Worcester Road
Natick, MA 01760-1824

Alicia M Hunt
Department of Justice - Civil Division
Ben Franklin Station
Post Office Box 875
Washington, DC 20044-0875

ACE American Insurance Company
c/o A. Richard Feldman, E. McCord
Clayton, Larry Spector
1515 Market Street, Ste 700
Philadelphia, PA 19102-1907

American International Company
22427 Network Place
Chicago, IL 60673-1224

Cadwalader, Wickersham & Taft
General Post Office
P.O. Box 5929
New York, NY 10087-5929

Deutsche Bank Securities, Inc.
60 Wall St., 19th Floor
New York, NY 10005-2836

Elena L Escamilla TB
135 W Central Blvd, Suite 620
Orlando, FL 32801-2476

Federal Deposit Insurance Corporation,
receiver for Colonial Bank, Mont., Ala
c/o Philip V. Martino
100 North Tampa St., Ste 2200
Tampa, FL  33602-5809

First American
2490 PASEO VERDE PKWY SUITE 10
HENDERSON, NV 89074-7120

First National Bank of Layton
136 W 12300 S Ste 201
Draper, UT 84020-8368

Amy Denton Harris
Stichter, Riedel, Blain & Prosser, P.A.
110 E Madison Street, Suite 200
Tampa, FL 33602-4718

Iron Mountain Information Management, Inc.
c/o Frank F. McGinn, Esq.
Bartlett Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110-1610

AT&T Universal Biller
P.O. Box 13148
Newark, NJ 07101-5648

Bank of America National Assoc.
c/o Andrew Zaron
Hunton & Williams, LLP
1111 Brickell Ave., Ste 2500
Miami, Florida 33131-3155

James W Carpenter
Angelo & Banta PA
515 East Las Olas Boulevard
Suite 850
Fort Lauderdale, FL 33301-2277

Dimension Data
P.O. Box 403667
Atlanta, GA 30384-3667

Federal Deposit Insurance Corp.
as receiver for Colonial Bank, N.A.
c/o Thomas R. Califano & Jeremy Johnson
1251 Avenue of the Americas
New York, New York  10020-1104

A Richard Feldman
Bazelon Less & Feldman
1515 Market Street
Suite 700
Philadelphia, PA 19102-1996

First American CoreLogic
P.O. Box 847239
Dallas, TX 75284-7239

Gill R Geldreich
Tennessee Attorney General's Office
Post Office 20207
Nashville, TN 37202

Henley Holding LLC
c/o William Norton
Bradley Arant Boult Cummings LLP
1600 Division St., Ste. 700
Nashville, TN 37203-2771

James G. Hicks
950 Grayson Highway
Lawrenceville, GA 30046-6340

Jason Ward Johnson
Lowndes, Drosdick, Doster, Kantor & Reed
Post Office Box 2809
Orlando, FL 32802-2809

Roy S Kobert
Post Office Box 4961
Orlando, FL 32802-4961

John W Kozyak
Kozyak, Tropin & Throckmorton, PA
2525 Ponce De Leon
9th Floor
Coral Gables, FL 33134-6039

Lamb & Browne
531 Concord Street
Holliston, MA 01746-3312

LandAmerica Tax and Flood
1123 S Parkview Drive
Accounting Department
Covina, CA 91724-3748

Angelina E Lim
Johnson Pope Bokor Ruppel & Burns
911 Chestnut Street
Clearwater, FL 33756-5643

Locke Lord Bissell & Liddell LLP
111 S. Wacker Dr.
Chicago, IL 60606-4302

Philip V Martino
DLA Piper US LLP
100 North Tampa Street, Suite 2200
Tampa, FL 33602-5809

Frank F McGinn
Bartlett Hackett Feinberg PC
155 Federal Street
9th Floor
Boston, MA 02110-1610

McKenna Long & Aldridge, LLP
P.O. Box 116573
Atlanta, GA 30368-6573

MountainView Capital Holdings, L.L.C.
c/o R. Patrick Vance
Jones Walker
201 St. Charles Avenue, Suite 5100
New Orleans, LA 70170-5101

NDS USA LLC
406 E Silver Springs Blvd
Ocala, FL 34470-5828

NL Ventures VII Magnolia, LLC
c/o Michael M. Parker
300 Convent Street, Ste 2200
San Antonio, Texas 78205-3720

Nationwide Title Clearing
c/o Angelina E. Lim, Esq.
Johnson, Pope, Bokor, Ruppel & Burns, LL
P.O. Box 1368
Clearwater, FL 33757-1368

Natixis Real Estate Capital Inc.
c/o Jeffrey N. Rich
599 Lexington Avenue
New York, NY  10022-6030

Michael M. Parker
Fullbright & Jaworrski LLP
300 Convent Street, Ste 2200
San Antionio, TX 78205-3792

Edward J. Peterson III
Stichter, Riedel, Blain & Prosser, PA
110 East Madison Street, Suite 200
Tampa, FL 33602-4718

James H. Post
Smith Hulsey & Busey
225 Water St., Suite 1800
Jacksonville, FL 32202-4494

RBC Bank successor
to Florida Choice Bank
c/o James W. Carpenter
515 East Las Olas Blvd., Ste 850
Fort Lauderdale, FL 33301-2277

RBC Capital Markets
One Liberty Plaza
165 Broadway
New York, NY 10006-1428

Jeffrey N. Rich
K&L GATES LLP
599 Lexington Avenue
New York, NY 10022-6030

Sam Solutions
11511 Abercorn Box 285
Savannah, GA 31419-1901

Robert A. Soriano
Greenberg Traurig, P.A.
625 East Twiggs Street
Suite 100
Tampa, FL 33602-3925

Sovereign Bank
c/o Robert Soriano, Esq.
625 E. Twiggs St., #100
Tampa, FL 33602-3925

TN Dept. of Financial Institutions
c/o Gill Geldreich, Asst. Atty. General
Bankruptcy Division
P.O. Box 20207
Nashville, TN 37202-4015

Tennessee Dept. of Financial Instutions
Attn: Gill Geldreich
c/o TN Atty General's Office, Bankruptcy
PO Box 20207
Nashville, Tennessee 37202-4015

U.S. Department of Housing and Urban Develop
c/o Glenn D. Gillett and Alicia M. Hunt
U.S. Department of Justice
Commercial Litigation Branch
1100 L Street, NW
Washington, D.C 20005-4035

United States Trustee - JAX
135 W Central Blvd, Suite 620
Orlando, FL 32801-2440

Upstreet Developments, LLC
c/o Adam B. Wiens
633 Seventeenth Street, Suite 2700
Denver, CO 80202-3662

R Patrick Vance
Jones Walker
201 Saint Charles Avenue
Suite 5100
New Orleans, LA 70170-5101

Wells Fargo Bank, N.A., as Master Servicer
c/o James H. Post, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202-4494

Adam Wiens
633 Seventeenth Street, Suite 2700
Denver, CO 80202-3662

Robert D Wilcox
Wilcox Law Firm
Enterprise Park
4190 Belfort Road, Suite 315
Jacksonville, FL 32216-1460

Wright Express Financial
33548 Treasury Center
Chicago, IL 60694-3500

Andrew D Zaron
Hunton & Williams LLP
1111 Brickell Avenue
Miami, FL 33131-3155

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Jerry A. Funk
Jacksonville
300

(d)United States Trustee - Jax
135 W Central Blvd, Suite 620
Orlando, FL 32801-2440

End of Label Matrix
Mailable recipients    64
Bypassed recipients     2
Total                  66

PREPARED BY:

Name: Dorothy Payne

Address: **Taylor, Bean & Whitaker Mortgage Corp.**
**1417 North Magnolia Ave**
**Ocala, FL 34475**

Return to:
**W. SCOTT WYNN**
**304 E. BROAD STREET**
**GROVELAND**                    , FL 34736

05-059R

CFN  2005046094
Bk 02795 Pgs 0444 - 455; (12pgs)
DATE: 03/31/2005  03:48:30 PM
JAMES C. WATKINS, CLERK OF COURT
LAKE COUNTY
RECORDING FEES 103.50
MTG DOC 700.00
INTANGIBLE 400.00

—————————————[Space Above This Line For Recording Data]——————————————

# MORTGAGE

**MIN: 10002950000739840l**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated **March 22, 2005**                    , together with all Riders to this document.

**(B)** **"Borrower"** is **W Scott Wynn**, a married man

Borrower is the mortgagor under this Security Instrument.

**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D)** **"Lender"** is Taylor, Bean & Whitaker Mortgage Corp.
Lender is a a **Florida Corporation**                                organized and existing under
the laws of **FL**                                             . Lender's address is
**1417 North Magnolia Ave, Ocala, FL 34475**

**(E)** **"Note"** means the promissory note signed by Borrower and dated **March 22, 2005**                    . The Note states that Borrower owes Lender **Two Hundred Thousand and no/100**
Dollars (U.S. **$200,000.00**                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 01, 2020**                    .

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**FLORIDA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM T9875L1 (0011)—MERS

*(Page 1 of 12 pages)*

Form 3010 1/01
GREATLAND ■
To Order Call 1-800-530-9393 □ Fax 616-791-1131



*024065739840*



PLAINTIFF'S
EXHIBIT
A

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider

☐ Balloon Rider   ☐ Planned Unit Development Rider   ☐ Other(s) [specify]

☐ 1-4 Family Rider   ☐ Biweekly Payment Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010 1/01
GREATLAND ■
ITEM T9876L2 (0011)—MERS    *(Page 2 of 12 pages)*    To Order Call 1-800-530-9393□Fax 616-791-1131

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

| **County** | of | **Lake** | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

XXXXXXXXXXXXXXXX

LOT 9, LAKE LUCY ESTATES, a subdivision according to the Plat thereof as recorded in Plat Book 36, page 63, Public Records of Lake County, Florida.

which currently has the address of

6618 Wynn Lane
[Street]

| **Groveland** | , Florida | **34736** | ("Property Address"): |
| [City] | | [Zip Code] | |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3010 1/01
GREATLAND ■
ITEM T9875L3 (0011)—MERS                    *(Page 3 of 12 pages)*                    To Order Call: 1-800-530-5393 □ Fax: 616-791-1131

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9675L4 (0011)—MERS

*(Page 4 of 12 pages)*

Form 3010 1/01
GREATLAND ■
To Order Call 1-800-530-9393 □ Fax 616-791-1131

holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.    Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.    Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not

otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument,

including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9875L7 (0011)—MERS

Form 3010 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

*(Page 7 of 12 pages)*

**11.  Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9676LB (0011)—MERS                                    *(Page 8 of 12 pages)*

Form 3010 1/01
GREATLAND ■
To Order Call 1-800-530-9393□Fax 616-791-1131

Book2795/Page451    CFN#2005046094                    Page 8 of 12

but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.   Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.   Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.   Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.   Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18.   Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9876L9 (0011)—MERS

*(Page 9 of 12 pages)*

Form 3010 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9875L10 (0011)—MERS                 (Page 10 of 12 pages)

Form 3010 1/01
GREATLAND ■
To Order Call 1-800-530-9393 □ Fax 616-791-1131

Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)    _____ (Seal)
W.Scott Wynn        -Borrower                      -Borrower
6618 Wynn Lane
Grov land, FL 34736

_____ (Seal)    _____ (Seal)
                  -Borrower                      -Borrower

_____ (Seal)    _____ (Seal)
                  -Borrower                      -Borrower

Signed, sealed and delivered in the presence of:

TRUDY EUBANKS                Wendy Shippee

State of Florida
County of LAKE

The foregoing instrument was acknowledged before me this 22nd day of MARCH 2005 by

W. Scott Wynn

who is personally known to me or who has produced

as identification.

_____
                      Notary Public

TRUDY E. EUBANKS
MY COMMISSION # DD 057749
EXPIRES March 13, 2007
FL Notary Discount Assoc Co

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010 1/01
                                                  GREATLAND ■
ITEM T9876L12 (0011)—MERS         (Page 12 of 12 pages)    To Order Call 1-800-530-9393 □ Fax 616-791-1131

# NOTE

March 22, 2005                                     Groveland                                        Florida
[Date]                                              [City]                                           [State]

6618 Wynn Lane
Groveland, FL  34736
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **200,000.00**                    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Taylor, Bean & Whitaker Mortgage Corp.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **5.1250**%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      **1st**      day of each month beginning on      **May 01, 2005**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **April 01, 2020**                    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL  34475**

                                                                  or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,594.64**

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

---

FLORIDA FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3210 1/01

ITEM T5996L1 (0011)                    *(Page 1 of 3 pages)*                    GREATLAND ■
To Order Call 1-800-530-9393 □ Fax 616-791-1131



'23036739840'

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in

this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
W.Scott Wynn                        -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

*[Sign Original Only]*

FLORIDA FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3210 1/01

ITEM T5996L3 (0011)          *(Page 3 of 3 pages)*          GREATLAND ■
                                          To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR LAKE COUNTY, FLORIDA

CASE NO.: 2009-CA-002316

W. SCOTT WYNN,

        Plaintiff,

v.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.(MERS, INC.), a Delaware
corporation and TAYLOR, BEAN &
WHITAKER MORTGAGE CORPORATION,
a Florida corporation,

        Defendants.

_____/

### FIRST AMENDED
### VERIFIED COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, W. SCOTT WYNN, sues the Defendants, MORTGAGE ELECTRONIC

REGISTRATION SYSTEMS, INC.(MERS, INC.), a Delaware corporation and TAYLOR, BEAN

& WHITAKER MORTGAGE CORPORATION, a Florida corporation and alleges:

1.      This is an action for declaratory relief to declare that MORTGAGE ELECTRONIC

        REGISTRATION SYSTEMS, INC.(MERS, INC.) and/or TAYLOR, BEAN &

        WHITAKER MORTGAGE CORPORATION is obligated to modify the parties'

        existing mortgage at the prevailing interest rate as of March 28, 2009.

### JURISDICTION AND VENUE

2.      The Plaintiff's claims arise under the Florida Constitution and the laws of the State

        of Florida.

3.      This Court has subject matter jurisdiction pursuant to Article V, section 5(b) of the



PLAINTIFF'S
EXHIBIT
_B_

Florida Constitution and section 26.012, Florida Statutes.

4.      Venue is proper in Lake County, Florida because the real property subject to the

mortgage is in Lake County, Florida.

## PARTIES

5.      Plaintiff, W. SCOTT WYNN, is the mortgagor under a mortgage dated March 22,

2005. A true and correct copy of said mortgage is attached hereto as Exhibit A.

6.      The mortgage has been modified since the original mortgage but the modification(s)

have not been recorded by the Defendants.

7.      Defendant, TAYLOR, BEAN & WHITAKER MORTGAGE CORPORATION, is

the Lender pursuant to the mortgage and all payments have been directed to them.

8.      MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.(MERS, INC.)

MERS is the nominee for the Lender and is the mortgagee under the mortgage.

## FACTS

9.      On March 22, 2005 Plaintiff and Defendant entered into a Mortgage securing the

Plaintiff's primary residence as security.  The total amount of said mortgage was

$200,000.00 at 5.1250% interest over 15 years.

10.     Plaintiff and Defendant subsequently entered into one or more Mortgage

modification or modifications after Plaintiff paid Defendant significant sums over

and above the regular monthly payment due.

11.     On August 8, 2008, Plaintiff tendered to Defendant the sum of $24,000.00 and

requested a further modification of said mortgage.  Plaintiff also paid a $100.00

service or recording fee.

12.    The parties were unable to agree upon the terms and conditions of a modification and the mortgage was not modified.

13.    On September 12, 2008, September 30, 2008, October 7, 2008 and October 14, 2008, Plaintiff requested the return of his monies. A true and correct copy of said requests are attached hereto as composite Exhibit B.

14.    The Defendant, TAYLOR, BEAN & WHITAKER, responded stating that it had credited Plaintiff's monies to his account and that they could not be returned. A true and correct copy of said response is attached hereto as composite Exhibit C.

15.    On March 26, 2009, Plaintiff tendered the sum of $6,000.00 to the Defendant's legal counsel, John Lippincott, Esquire, contingent upon the Defendant modifying the mortgage at the prevailing interest rate. A true and correct copy of Plaintiff's letter and check are attached hereto as Exhibit D.

16.    The Defendant, TAYLOR, BEAN & WHITAKER negotiated the Plaintiff's check without reservation or protest.

17.    Defendant, TAYLOR, BEAN & WHITAKER was aware at the time of negotiation of Plaintiff's check, that said payment was contingent upon modification of the mortgage at the prevailing rate of interest at that time.

18.    On March 31, 2009, Defendant, TAYLOR, BEAN & WHITAKER provided Plaintiff with a Modification of Mortgage Agreement at the same rate of interest as in the original mortgage.

19.    On April 2, 2009, Plaintiff demanded that Defendant, TAYLOR, BEAN & WHITAKER comply with the contingency on the check and letter dated March 26,

2009. A copy of said letter is attached hereto as Exhibit E.

20.     On April 7, 2009, Defendant returned the Plaintiff's check in the amount of $6,000.00, although it had previously credited said sum to Plaintiff's account.

21.     The return of Plaintiff's check was a contradiction of Defendant's prior position that no monies could be returned after a crediting to the mortgagor's account.

22.     Plaintiff asserts that Defendants are obligated to modify the mortgage as the check was negotiated with the express condition of modification on the face of the check. The condition was further clarified by the letter to Defendant's counsel.

23.     A dispute or controversy exists between Plaintiff and Defendant over whether the Defendants are obligated to modify the existing mortgage under the conditional terms expressed on the check and letter dated March 26, 2009.

24.     A dispute or controversy exists as to whether the Plaintiff is entitled to the return of his $24,000.00 paid on August 8, 2008 as the parties failed to reach agreement on a modification.

25.     Plaintiff has refused to return to the Plaintiff the sum of $24,000.00 paid on August 8, 2008, and has determined that he is in default of the Mortgage agreement.

26.     Plaintiff is in doubt of his legal rights and obligations in this matter and requests the Court's declaratory judgment to assist him.

27.     Plaintiff believes Defendants are bound to modify the mortgage based upon Chapter 673, Florida Statutes and/or other provisions of the Uniform Commercial Code.

28.     Plaintiff demands an accounting of the sums paid to Defendants.

WHEREFORE, Plaintiff prays this Court will enter it's order finding:

A.    That Plaintiff is not in default of the Mortgage Deed nor any Modification of Mortgage.

B.    That the Defendants accepted Plaintiff's payment of $24,000.00 in August, 2008 but that the parties were unable to agree to terms of a modification of the mortgage.

C.    That Defendants refused to return the Plaintiff's monies tendered in August, 2008 and has instead found Plaintiff to be in default of the Mortgage or Modification of Mortgage.

D.    That the Plaintiff tendered the sum of $6,000.00 on March 26, 2009 directly to the Defendant's legal counsel, John Lippincott, Esquire.

E.    That the Plaintiff's March 26, 2009 payment was expressly contingent upon modification of his mortgage at the prevailing rate of interest at that time and that the contingency was pressed on the check.

F.    That the Defendants negotiated the Plaintiff's check without protest or reservation of rights.

G.    That the Defendants are obligated to modify the Plaintiff's mortgage at the prevailing rate of interest at the time of negotiation of the check.

H.    Requiring the return of Plaintiff's $24,000.00 paid in August, 2008 in the absence of a modification of mortgage applying said sums to the principal owed.

I.    Requiring an accounting of all sums due and paid to date by the Plaintiff.

J.    Awarding Plaintiff his costs and attorney's fees for the filing of this action.

K.    Such other and further relief as the Court deems just and proper.

Plaintiff demands trial by jury on all issues so triable.

I have reviewed the facts contained herein, I am familiar with and have knowledge of the facts contained therein and I declare that those facts are true and correct to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

W. SCOTT WYNN, ESQUIRE
P.O. Box 447
Groveland, FL 34736
PH: 352/429-2185
Florida Bar# 0352772
Pro Se

SWORN TO AND SUBSCRIBED before me this 12th day of May, 2009.

MICHELLE TREANOR
MY COMMISSION # DD 724732
EXPIRES: October 14, 2011
Bonded Thru Budget Notary Services

NOTARY PUBLIC
My Commission Expires: 10/14/11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by first class mail, this 12 day of May, 2009 to: Taylor, Bean & Whitaker, C/o Ct Corporation System-Registered Agent, 1200 S Pine Island Road, Plantation FL 33324 and Mortgage Electronic Registration Systems, Inc.(Mers, Inc.) , C/o Electronic Data Systems, LLC-Registered Agent, 3300 SW 34th Ave, Ste 101, Ocala Fl 34474.

W. SCOTT WYNN, ESQUIRE

PREPARED BY:

Name: Dorothy Payne

Address: **Taylor, Bean & Whitaker Mortgage Corp.**
**1417 North Magnolia Ave**
**Ocala, FL 34475**

Return to:
**W. SCOTT WYNN**
**304 E. BROAD STREET**
**GROVELAND**              **, FL 34736**
05-059R

```
CFN   2005046094
Bk 02795 Pgs 0444 - 455; (12pgs)
DATE: 03/31/2005  03:48:30 PM
JAMES C. WATKINS, CLERK OF COURT
LAKE COUNTY
RECORDING FEES 103.50
MTG DOC 700.00
INTANGIBLE 400.00
```

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

MIN: 100029500007398401

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated **March 22, 2005**                              , together with all Riders to this document.

**(B)** **"Borrower"** is **W Scott Wynn**, a married man

Borrower is the mortgagor under this Security Instrument.

**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D)** **"Lender"** is **Taylor, Bean & Whitaker Mortgage Corp.**
Lender is a **a Florida Corporation**                                                organized and existing under
the laws of **FL**                                                . Lender's address is
**1417 North Magnolia Ave, Ocala, FL  34475**

**(E)** **"Note"** means the promissory note signed by Borrower and dated **March 22, 2005**                    . The Note states that Borrower owes Lender **Two Hundred Thousand and no/100**
Dollars (U.S. **$200,000.00**                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 01, 2020**                    .

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**FLORIDA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM T9875L1 (0011)—MERS                    *(Page 1 of 12 pages)*

Form 3010 1/01
GREATLAND ■
To Order Call 1-800-530-9393 □ Fax 616-791-1131

*024065739840*


Book2795/Page444    CFN#2005046094    age 1 of 12

PLAINTIFF'S
EXHIBIT
A

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider

☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]

☐ 1-4 Family Rider    ☐ Biweekly Payment Rider

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9876L2 (0011)—MERS

*(Page 2 of 12 pages)*

Form 3010 1/01
GREATLAND ■
To Order Call 1-800-530-9393 □ Fax 616-791-1131

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

| County | | of | Lake | |
| [Type of Recording Jurisdiction] | | | [Name of Recording Jurisdiction] | |

~~SEE ATTACHED EXHIBIT~~

LOT 9, LAKE LUCY ESTATES, a subdivision according to the Plat thereof as recorded in Plat Book 36, page 63, Public Records of Lake County, Florida.

which currently has the address of **6618 Wynn Lane**
[Street]

**Groveland** , Florida **34736** ("Property Address"):
[City]                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3010 1/01
GREATLAND ■
ITEM T9875L3 (0011)—MERS                    *(Page 3 of 12 pages)*                    To Order Call 1-800-530-5393 □ Fax 616-791-1131

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3010 1/01
                                                                                                          GREATLAND ■
ITEM T9876L4 (0011)—MERS                        *(Page 4 of 12 pages)*        To Order Call 1-800-530-9393 □ Fax 616-791-1131

holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3010 1/01
GREATLAND ■
ITEM T9875L5 (0011)—MERS          *(Page 5 of 12 pages)*          To Order Call 1-800-530-9393 □ Fax 616-791-1131

otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument,

including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)  Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9875L7 (0011)—MERS

*(Page 7 of 12 pages)*

Form 3010 1/01

GREATLAND ■
To Order Call 1-800-530-9393 □ Fax 616-791-1131

**11.  Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9876LB (0011)—MERS

*(Page 8 of 12 pages)*

Form 3010 1/01
GREATLAND ■
To Order Call 1-800-530-9393 □ Fax 616-791-1131

but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                               Form 3010 1/01
ITEM T9875L9 (0011)—MERS                                 *(Page 9 of 12 pages)*         GREATLAND ■
                                                                        To Order Call 1-800-530-9393 □ Fax 616-791-1131

require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.  Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9875L10 (0011)—MERS                    *(Page 10 of 12 pages)*

Form 3010 1/01
GREATLAND ■
To Order Call 1-800-530-9393 □ Fax 616-791-1131

Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
W.Scott Wynn                    -Borrower
6618 Wynn Lane
Grov land, FL 34736

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

Signed, sealed and delivered in the presence of:

TRUDY EUBANKS            Wendy Shippee

State of Florida
County of LAKE

The foregoing instrument was acknowledged before me this 22nd day of MARCH 2005 by

W. Scott Wynn

who is personally known to me or who has produced

as identification.

_____
                            Notary Public

TRUDY E. EUBANKS
MY COMMISSION # DD 157749
EXPIRES March 13, 2007
NOTARY  FL Notary Discount Assoc Co

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
ITEM T9875L12 (0011)—MERS                (Page 12 of 12 pages)
Form 3010 1/01
GREATLAND
To Order Call 1-800-530-9393 Fax 616-791-1131

# NOTE

| | | |
|---|---|---|
| **March 22, 2005** | **Groveland** | **Florida** |
| [Date] | [City] | [State] |

**6618 Wynn Lane**
**Groveland, FL  34736**
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$ 200,000.00**                    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Taylor, Bean & Whitaker Mortgage Corp.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **5.1250%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      **1st**      day of each month beginning on      **May 01, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **April 01, 2020**                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL  34475**

                                                  or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,594.64**

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

FLORIDA FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3210 1/01

ITEM T5996L1 (0011)                          *(Page 1 of 3 pages)*                          GREATLAND ■
                                                                              To Order Call 1-800-530-9393 □ Fax: 616-791-1131



*23036739840*

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in

this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
W. Scott Wynn                   -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower

*[Sign Original Only]*

FLORIDA FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3210 1/01

ITEM 7599GL3 (0011)          *(Page 3 of 3 pages)*          GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



352-429-2185
352-429-2186 Facsimile
866-939-4878 Toll-Free

**W. SCOTT WYNN**

Attorney at Law
304 E. Broad St., P.O. Box 447
Groveland, FL 34736

Personal Injury
Wrongful Death
Real Estate
Family Law

October 14, 2008

CERTIFIED MAIL

Taylor, Bean & Whitaker
Attn: Marisol Silva
1417 North Magnolia Avenue
Ocala, FL 34475-9078

Re:    Loan No. 739840
       Wesley Scott Wynn

Dear Ms. Silva:

On August 8, 2008 I sent Taylor, Bean & Whitaker a cashiers' check in the sum of $24,000.00. I also sent an additional check of $100.00 to cover your modification charge. **The sole purpose of this payment was to modify my mortgage in order to lower my payments, not simply to reduce the principal balance.**

Thereafter, we were unable to reach an agreement as to the amount of the new mortgage, as I requested a gratuitous reduction by Taylor, Bean & Whitaker.

My mortgage was never modified. I have on several occasions requested the return of my monies but have received **absolutely no response** from Taylor, Bean & Whitaker, whatsoever.

Therefore, this letter is to demand the return of the $24,000.00 (less August payment) plus the $100.00 modification fee for a total of $ 22,745.15. I expect payment within ten (10) days or I will take whatever further action I deem appropriate.

Thank you for your consideration and cooperation in this regard.

With Kind Regards,

W. SCOTT WYNN

WSW/mt

**PLAINTIFF'S EXHIBIT**

*B*



352-429-2185
352-429-2186 Facsimile
866-939-4878 Toll-Free

**W. SCOTT WYNN**
Attorney at Law
304 E. Broad St., P.O. Box 447
Groveland, FL 34736

Personal Injury
Wrongful Death
Real Estate
Family Law

October 7, 2008

THIRD REQUEST

Taylor, Bean & Whitaker
Attn: Marisol Silva
1417 North Magnolia Avenue
Ocala, FL 34475-9078

Re:    Loan No. 739840
       Wesley Scott Wynn

Dear Ms. Silva:

On August 8, 2008, I submitted a cashiers check in the amount of $24,000.00 and another for $100.00 to reduce my mortgage principal. I believe $1,354.85 of this was credited to my August 1 mortgage payment.

On September 12, 2008 I requested the return of my monies which would be $22,645.15 plus the $100.00 fee. To date I have not received said monies.

This letter is to again demand the return of $22,745.15. This is my third request.

Thank you for your consideration and cooperation in this regard.

With Kind Regards,

W. SCOTT WYNN

WSW/mt



352-429-2185
352-429-2186 Facsimile
866-939-4878 Toll-Free

Personal Injury
Wrongful Death
Real Estate
Family Law

# W. SCOTT WYNN

Attorney at Law
304 E. Broad St., P.O. Box 447
Groveland, FL 34736

September 30, 2008

Taylor, Bean & Whitaker
Attn: Marisol Silva
1417 North Magnolia Avenue
Ocala, FL 34475-9078

Re:    Loan No. 739840
        Wesley Scott Wynn

Dear Ms. Silva:

On August 8, 2008, I submitted a cashiers check in the amount of $24,000.00 and another for $100.00 to reduce my mortgage principal. I believe $1,354.85 of this was credited to my August 1 mortgage payment.

On September 12, 2008 I requested the return of my monies which would be $22,645.15 plus the $100.00 fee. To date I have not received said monies.

This letter is to again demand the return of $22,745.15.

Thank you for your consideration and cooperation in this regard.

With Kind Regards,

W. SCOTT WYNN

WSW/mt



352-429-2185
352-429-2186 Facsimile
866-939-4878 Toll-Free

**W. SCOTT WYNN**

Attorney at Law
304 E. Broad St., P.O. Box 447
Groveland, FL 34736

Personal Injury
Wrongful Death
Real Estate
Family Law

September 12, 2008

Taylor, Bean & Whitaker
Attn: Marisol Silva
1417 North Magnolia Avenue
Ocala, FL 34475-9078

Re:    Loan No. 739840
       Wesley Scott Wynn

Dear Ms. Silva:

This letter is to request the return of the $24,000.00 I recently paid to reduce my mortgage. I would also ask that the $100.00 fee for the modification documents be refunded.

I am very disappointed in your total unwillingness to work with me in this difficult economic period.

Thank you for your consideration and cooperation in this regard.

With Kind Regards,

W. SCOTT WYNN

WSW/mt

Enclosure

W. SCOTT WYNN
Attorney at Law
904 East Broad Street, P.O. Box 447
Groveland, FL 34736
352-429-2185
352-429-2186 Facsimile

Real Estate                                                    Personal Injury
Family Law                                                     Wrongful Death

March 23, 2009

Taylor, Bean & Whitaker
Attn: John Lippincott
5150 Stilesboro Road, Building 500, Suite 500
Kennesaw, GA 30152

Re:    Loan No. 739840
       6618 Wynn Lane, Groveland, Florida 34736

Dear Mr. Lippincott:

Enclosed please find my check in the amount of $6,000.00 toward the above-referenced loan. Please be advised that payment is contingent upon Taylor, Bean and Whitaker modifying my mortgage at the prevailing interest rate. As indicated to you previously, I am not able to make the regular monthly payments due to the fact Taylor, Bean & Whitaker did not lower my payments based upon the reduction of principal I made last August of $24,000.00.

Please also be advised that should Taylor, Bean and Whitaker continue to refuse to modify my mortgage, I will consider all options, including bringing a declaratory judgment action against them. I continue to ask that we resolve this matter without the necessity of litigation.

Thank you for your consideration and cooperation in this regard.

With Kind Regards,

W. SCOTT WYNN

WSW/mt

cc:    Taylor, Bean and Whitaker

       Enclosure

PLAINTIFF'S
EXHIBIT
C

# View Images

The image of the item you selected is displayed below  To return to the previous page,
select 'Back'  To make the image larger or smaller select 'Enlarged View' or 'Normal
View'

## Transaction Detail

| Date | Transaction Type/ Description | Number | Amount | |
|---|---|---|---|---|
| | | | Debits | Credits |
| 3/31/2009 | CHECK | 1078 | $6,000.00 | |
| | Check number 0000000001078 | | | |





Taylor, Bean & Whitaker Mortgage Corp.
Office of General Counsel

Direct Dial: 678-742-4837
Direct Facsimile: 678-742-4993
Email: jlippincott@taylorbean.com

December 17, 2008

**Via First Class Mail**

W. Scott Wynn, Esq.
304 E. Broad Street
P.O. Box 447
Groveland, Florida 34736

Re:    6618 Wynn Lane, Groveland, Florida 34736
       Loan No.:    739840

Dear Mr. Wynn:

As you have stated in previous letter, on August 8, 2008, you sent Taylor Bean & Whitaker Mortgage Corp. ("TBW") a check for $24,000 along with a request to modify your loan. The full check amount was credited to your account and loan modification was sent to you. Unfortunately, you refused to endorse the loan modification.

On August 20, 2008, you requested a further reduction of your principal balance to $75,000 without any payment. TBW is under no obligation to "voluntarily" reduce your principal balance without payment.

Since that time, you have demanded that your $24,000 payment be refunded by TBW, the same $24,000 that was credited to your account. That payment was accepted and cannot be refunded. Once a payment is accepted and credited to a loan account, it cannot be refunded just because the borrower wants it back.

On December 10, 2008, you sent a letter in which you stated you are willing to reduce the principal balance on your mortgage by an additional $10,000 if the terms of a mortgage modification can be agreed upon. TBW will be more than willing to discuss options with you. Your case will be handled by the Executive Vice-President of Loan Servicing, Ms. Erla Carter-Shaw. She can be contacted at 1-800-728-1129, ext. 11350.

I must point out that nothing in this letter should be construed as a waiver of any rights or remedies TBW may have against you or any other person or entity at law or in equity. TBW expressly retains any and all rights and remedies and does not relinquish any of these rights or remedies based upon anything contained in any documents you have presented to TBW. Furthermore, TBW, by way of this letter, does not agree to any

PLAINTIFF'S
EXHIBIT
D

5150 Stilesboro Road, Buil        ennesaw, GA 30152



W. Scott Wynn, Esq.
6618 Wynn Lane, Groveland, Florida 34736
December 17, 2008


terms, conditions or requirements that you may have presented in any previous correspondence.

   Please contact Ms. Shaw at your earliest convenience so that you may be able to come to an agreement to the terms of a loan modification.  Thank you.


                                    Yours very truly,



                                    John Lippincott
                                    Associate Counsel

cc:    Ms. Erla Carter-Shaw

# W. SCOTT WYNN

Attorney at Law
304 East Broad Street, P.O. Box 447
Groveland, FL 34736
352-429-2185
352-429-2186 Facsimile

Real Estate
Family Law

Personal Injury
Wrongful Death

April 2, 2009

Taylor, Bean & Whitaker
Attn: Marisol Silva
1417 North Magnolia Avenue
Ocala, FL 34475-9078

Re:    Loan No. 739840
       Wesley Scott Wynn

Dear Ms. Silva:

On March 23, 2009, I tendered payment of $6,000.00 to Taylor, Bean & Whitaker through your attorney. I have enclosed herewith a copy of the letter which was sent with the payment. As you can see, payment was "contingent upon modification at the prevailing interest rate." By negotiating the check you have approved of this condition.

I received this date your proposed modification agreement which is not acceptable to me. I also question the accuracy of the payoff amount. The interest rate is not at the "prevailing rate." I am requesting that my balance be amortized over 30 years with a balloon after 10 years at the prevailing current interest rate for 30 year mortgages.

I have attempted to resolve this issue time and time again with your company to no avail. It is beyond me why there is so little communication or cooperation with regard to a modification agreement.

Thank you for your consideration and cooperation in this regard.

With Kind Regards,

W. SCOTT WYNN
WSW/mt

cc:    John Lippincott

PLAINTIFF'S
EXHIBIT
E

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION

IN RE:                                            CASE NO:      3:09-bk-07047-JAF
TAYLOR, BEAN & WHITAKER MORTGAGE CORP.           CHAPTER:    11

_____/

### AFFIDAVIT IN SUPPORT OF WYNN'S
### MOTION FOR RELIEF FROM AUTOMATIC STAY

STATE OF FLORIDA
COUNTY OF LAKE

BEFORE ME, the undersigned authority personally appeared W. SCOTT WYNN, who, being duly sworn, deposes and says:

1.    Affiant has personal knowledge of the facts contained herein and is competent to testify to same.

2.    On or about March 22, 2005, W. SCOTT WYNN executed a Mortgage and Note in the principal amount of $200,000.00.

3.    Affiant believes the approximate balance owing on said note is approximately $53,000.00.

4.    Debtor, TAYLOR, BEAN & WHITAKER MORTGAGE CORPORATION is the lender under the terms of the Mortgage and also the obligee under the Note.

5.    Affiant has made certain payments since the inception of the mortgage which were not properly credited by the Debtor.

6.    Affiant made certain payments to Debtor which were returned to Affiant and not credited to Affiant's account.

7.    On March 26, 2009 Affiant made a certain payment contingent upon modification of the mortgage at the prevailing rate of interest which Debtor accepted by virtue of negotiating Affiant's check which included said terms.

8.    Debtor has failed and refused to honor the contingency placed upon Affiant's check after negotiating same.



9.    Affiant filed suit against Debtor on April 20, 2009 in the Circuit Court of the Fifth Judicial

Circuit in and for Lake County, Florida, seeking declaratory judgment and an accounting.

10.    The property upon which the mortgage is held is located in Lake County, Florida.

11.    Affiant is in need of a declaratory judgment specifying the Debtor and Affiant's respective

rights and obligations.

12.    Lake County, Florida is a more convenient forum to litigate issues concerning the rights and

obligations of the parties to the mortgage and note.

13.    Affiant does not seek monetary damages from Debtor.

FURTHER AFFIANT SAYETH NOT.

W. SCOTT WYNN, Affiant

STATE OF FLORIDA
COUNTY OF LAKE

I HEREBY CERTIFY, that on this day, before me, an officer duly authorized to take acknowledgments and oaths personally came and appeared W. SCOTT WYNN, who is personally known to me or who has produced _____ as identification, and who did take oath and acknowledged before me the execution of same freely and voluntarily for the purposes therein expressed.

WITNESS my hand and official seal in the county and state last aforesaid this 1st day of September, 2009.



[SEAL]

MICHELLE TREANOR
MY COMMISSION # DD 724732
EXPIRES: October 14, 2011
Bonded Thru Budget Notary Services

NOTARY PUBLIC
Print Name: Michelle Treanor
My Commission Expires: 10/14/11