**8.10. Compliance With Financing Order.** If Borrower defaults under any Financing Order.

**8.11. Unauthorized Payments.** Borrower shall make any payments (including any adequate protection payments) relating to Borrower's pre-Petition Date obligations or interests, other than (i) as permitted under the Financing Order; (ii) in respect of accrued payroll and related expenses and employee benefits as of the Petition Date; (iii) in accordance with, and to the extent authorized by, orders reasonably satisfactory to Lender; or (iv) as otherwise permitted under this Agreement.

**8.12. Validity of DIP Loan Documents and Superpriority Claims.** Any material provision of this Agreement or any other DIP Loan Document shall cease to be valid and binding on Borrower or cease to be in full force and effect, or Borrower or its affiliates shall so assert in any pleading filed in any court; or any proceeding shall be commenced by Borrower or its affiliates seeking, or otherwise consenting to, (i) the invalidation, subordination or challenging in any respect the superpriority claims and liens granted to secure the Obligations or (ii) any relief under Section 506(c) of the Bankruptcy Code with respect to any Collateral. The creation of Liens or the allowance of claims in parity with or superior to the superpriority claim of Lender in respect of the Obligations, other than any allowed claim for Administrative Fees and Expenses and already disclosed in writing to Lender.

## ARTICLE 9

## **LENDER'S RIGHTS AND REMEDIES**

**9.1. Rights and Remedies.**

    a.    Upon the occurrence of an Event of Default, Lender may, at its election, do any one or more of the following:

        (i)    Accelerate the maturity of and declare all Obligations, whether evidenced by the DIP Loan Documents or otherwise, immediately due and payable in full;

        (ii)    Terminate this Agreement as to any future liability or obligation of Lender, but without affecting Lender's rights and without affecting the Obligations; and

        (iii)    Take possession of, or foreclose on and/or request a receiver of the Collateral.

    b.    In the event Lender seeks to take possession of all or any portion of the Collateral by judicial process, Borrower irrevocably waives (i) the posting of any bond, surety, or security with respect thereto which might otherwise be required; (ii) any demand for possession prior to the commencement of any suit or action to recover the Collateral; and (iii) any requirement that Lender retain possession and not dispose of any Collateral until after trial or final judgment.

c.  If an Event of Default occurs or Borrower fails to pay any of the Obligations when due, the parties acknowledge and agree that the Bankruptcy Court will have exclusive jurisdiction over any and all actions or proceedings initiated by Lender to foreclose on or sell the Collateral, either in whole or in part, in order to satisfy or reduce the Obligations.

d.  The rights, remedies, powers and privileges of Lender provided in this Article 9 are cumulative and not exclusive of any other rights, remedies, powers and privileges provided by law or equity. In addition to the foregoing, Lender shall have all rights and remedies provided by law or equity and any rights and remedies contained in any of the DIP Loan Documents and all such rights and remedies shall be cumulative.

**9.2. No Waiver.** No waiver of any breach of any DIP Loan Document shall be held to constitute a waiver of any other or subsequent breach. No failure on the part of Lender to exercise, and no delay on the part of Lender in exercising any right, power, privilege or remedy under any DIP Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, privilege or remedy under such DIP Loan Documents or otherwise, preclude other or further exercise of any such right, power, privilege or remedy.

## ARTICLE 10

## PAYMENT OF TAXES AND EXPENSES AND INDEMNIFICATION OF LENDER

**10.1. Payment of Expenses and Taxes.** Without duplication of any right of reimbursement in connection with the 363 Sale and Bid Procedures Order, Borrower agrees (a) to pay or reimburse Lender (and its directors, officers, employees and agents) for all of their respective out-of-pocket costs and expenses incurred in connection with the development, preparation and execution of the DIP Loan Documents, including any amendment, supplement, waiver or modification to, and the enforcement or preservation of any rights under, this Agreement, the Note, the other DIP Loan Documents, the Financing Order and any other documents prepared in connection herewith or therewith, and the consummation and administration of the transactions contemplated hereby and thereby (including, without limitation, the costs and expenses associated with conducting its due diligence investigation of Borrower and the Collateral), and the reasonable fees and disbursements of counsel to Lender (including, one lead outside counsel and one local outside counsel) and professionals engaged by Lender, (b) to pay or reimburse Lender (and its directors, officers, employees and agents) for all of their respective costs and expenses reasonably incurred in connection with the enforcement or preservation of any rights under this Agreement, the Note, the other DIP Loan Documents, the Financing Order and any such other documents following the occurrence and during the continuance of a Default or an Event of Default, including without limitation, the reasonable fees and disbursements of counsel to Lender (including, one lead outside counsel and one local outside counsel) and professionals engaged by Lender, (c) to pay, and indemnify and hold harmless Lender (and its directors, officers, employees and agents) from, any and all recording and filing fees and any and all liabilities with respect to, or resulting from any delay in paying, stamp, excise and other taxes, if any, which may be payable or determined to be payable in connection with the execution and delivery of, or consummation or administration of any of the transactions contemplated by, or any amendment, supplement or modification of, or any waiver

or consent under or in respect of, this Agreement, the Note, the other DIP Loan Documents, the Financing Order and any such other documents, (d) to pay all the expenses of Lender (and its directors, officers, employees and agents) related to this Agreement, the other DIP Loan Documents, the Financing Order, or the Advances in connection with the Case (including without limitation, the on-going monitoring by Lender of the Case, including attendance by Lender and counsel at hearings or other proceedings and the on-going review of documents filed with the Bankruptcy Court) and (e) to pay, and indemnify and hold harmless Lender (and its directors, officers, employees and agents) from and against any and all other liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery, enforcement, performance, preservation of rights and administration of this Agreement, the Note, the other DIP Loan Documents, the Financing Order or the use of the proceeds of the Advances, including without limitation, any of the foregoing relating to the violation of, noncompliance with or liability under, any environmental law applicable to the operations of Borrower or any of its properties (all the foregoing collectively, the "Indemnified Liabilities"), provided that Borrower shall have no obligation hereunder to Lender with respect to Indemnified Liabilities determined by the final judgment of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of Lender or its directors, officers, employees and agents. The agreements in this subsection shall survive repayment of the Advances and all other Obligations payable or to be performed hereunder.

**10.2. Payments by Lender.** If Borrower fails to pay any monies (whether taxes, assessments, insurance premiums or otherwise) due to third persons or entities, or fails to make any deposits or furnish any required proof of payment or deposit, or fails to perform any of Borrower's other covenants under any of the DIP Loan Documents, then in Lender's discretion and upon three (3) Business Days' prior notice to Borrower, Lender may do any or all of the following: (a) make any payment which Borrower failed to pay or any part thereof; (b) set up such reserves in Borrower's loan account as Lender, in its reasonable discretion, deems necessary to protect Lender from the exposure created by such failure; (c) obtain and maintain insurance policies of the type described in Section 6.3 and take any action with respect to such policies as Lender deems prudent; or (d) take any other action, in its reasonable discretion, deemed necessary to preserve and protect its interests and rights under the DIP Loan Documents. Any payments made by Lender hereunder shall reduce, on a dollar for dollar basis, the amount Borrower may borrow from Lender under this Agreement and not constitute: (a) an agreement by Lender to make similar payments in the future or (b) a waiver by Lender of any Default or Event of Default. Lender need not inquire as to, or contest the validity of, any such expense, tax, or Lien and the receipt of notice for the payment thereof shall be conclusive evidence that the same was validly due and owing.

## ARTICLE 11

### WAIVERS

Except as otherwise provided in the Financing Order, Borrower waives demand, protest, notice of protest, notice of payment and nonpayment, and notice of nonpayment at maturity.

Borrower hereby consents to any extensions of time of payment or partial payment at, before or after the Termination Date.

## ARTICLE 12

## NOTICES

Unless otherwise provided herein, all consents, waivers, notices or demands by any party relating to the DIP Loan Documents shall be in writing and (except for financial statements and other informational documents which may be sent by first-class mail, postage prepaid) shall be telecopied, personally delivered or sent by registered or certified mail, postage prepaid, return receipt requested, or by receipted overnight delivery service to Borrower or to Lender, as the case may be, at their addresses set forth below:

| | |
|---|---|
| **If to Borrower:** | Taylor, Bean & Whitaker Mortgage Corp.<br>315 NE 14th Street<br>Ocala, Florida 34470<br>Attention: Neil Luria<br>Fax No. (801) 751-9537 |
| **With a copy to:** | Troutman Sanders LLP<br>600 Peachtree St., N.E.<br>Suite 5300<br>Atlanta, GA 30308<br>Attention: Hazen H. Dempster<br>Fax No. (404) 962-6544<br><br>and by email to:<br><br>nluria@ncacf.com |
| **If to Lender:** | Selene Residential Mortgage Opportunity Fund L.P.<br>c/o Selene Investment Partners, LLC<br>50 Charles Lindbergh Boulevard, Suite 500<br>Uniondale, New York 11553<br>Attention: Christopher J. Steele<br>Fax No. (516) 745-6787 |
| **With a copy to:** | Selene Investment Partners, LLC<br>590 Madison Avenue, 8th Floor<br>New York, NY 10022<br>Attention: David Reedy<br>Fax No. (212) 558-2098<br><br>and to: |

Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016
Attention: Richard M. Morris, Esq.
Fax No. (212) 592-1500

Any party may change the address at which it is to receive notices hereunder by notice in writing in the foregoing manner given to the other parties. All notices or demands sent in accordance with this Article 12 shall be deemed received on the earlier of the date of actual receipt or five (5) calendar days after the deposit thereof in the mail or on the date telecommunicated if telecopied.

## ARTICLE 13

## GENERAL PROVISIONS

**13.1. Successors and Assigns.** This Agreement is binding upon and shall inure to the benefit of the respective successors and assigns of each of the parties, including any trustee appointed for Borrower; provided, however, that Borrower may not assign this Agreement or any rights hereunder and any prohibited assignment shall be absolutely void. Lender reserves the right to and may from time to time and at any time without the consent of Borrower sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in Lender's rights and benefits hereunder. In connection therewith, Lender may disclose all documents and information which Lender now or hereafter may have relating to Borrower or Borrower's business.

**13.2. Severability of Provisions.** Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of such provision.

**13.3. Amendments in Writing.** No provision of this Agreement may be changed, waived, modified or terminated except in a writing signed by the parties. This Agreement is the entire agreement between the parties with respect to the matters contained herein. This Agreement supersedes all prior agreements, understandings and negotiations, if any, all of which are merged into this Agreement.

**13.4. Counterparts.** This Agreement may be executed in any number of counterparts (delivered by facsimile or electronic mail) each of which, when executed and delivered, shall be deemed to be an original and all of which, when taken together, shall constitute but one and the same Agreement.

**13.5. Survival of Representations and Warranties.** All representations and warranties made herein or in any other DIP Loan Document and in any document, certificate or statement delivered pursuant hereto or thereto or in connection herewith or therewith shall survive the execution and delivery of this Agreement and the Note.

### 13.6. Further Assurances.

a. Borrower, at its sole cost and expense, shall execute and file all such financing statements, mortgages, deeds of trust and other agreements, documents and instruments, and perform such other acts, as required by law or as reasonably determined by Lender in good faith on advice of its counsel to preserve, enforce, protect or defend any of Lender's rights, powers and privileges granted hereunder, including the Liens granted to Lender and the enforcement of the Obligations in connection with this Agreement, the other DIP Loan Documents and the Financing Order and the priority of such Liens granted pursuant to this Agreement and/or the Financing Order.

b. Notwithstanding the foregoing provisions of Section 13.6(a), the provisions of this Section 13.6(b) shall control the obligation to pay the following costs and expenses:

(i) From and after an Event of Default and during the continuance of such Event of Default, Borrower shall have the sole and absolute obligation to pay the actual out-of-pocket taxes, fees, disbursements, costs, expenses and other charges, including without limitation, attorney fees and expenses (the "Notice Expenses") for preparing and filing in all appropriate recording or filing offices (x) any of the documents referenced in Section 13.6(a) and (y) any notices of the commencement of the Case and the entry of the Financing Order, and advising that no interest in any portion of the Real Estate Assets included in the Collateral may be transferred, mortgaged, pledged, sold or conveyed without the entry of an order of the Bankruptcy Court upon prior notice to Lender.

(ii) At any time other than from and after an Event of Default and during the continuance thereof, the Notice Expenses attributable to the filing and other actions described in Section 13.6(b)(i) that are made upon the demand of Lender shall be paid as follows: (x) 50% shall be paid by Borrower up to a maximum amount of $175,000; and (y) the amount not payable by Borrower under clause (x) shall be paid by Lender.

### 13.7. Additional Financing.
Notwithstanding any provision of this Agreement to the contrary, Borrower shall be permitted to borrow an amount equal to up to $175,000 for the payment of the actual Notice Expenses and any such borrowings shall be an Obligation under this Agreement.

## ARTICLE 14

## CHOICE OF LAW, VENUE AND JURY TRIAL WAIVER

THE VALIDITY OF THE DIP LOAN DOCUMENTS, THEIR CONSTRUCTION, INTERPRETATION, AND ENFORCEMENT AND THE RIGHTS OF THE PARTIES HERETO SHALL BE DETERMINED UNDER, GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW. THE PARTIES AGREE

THAT ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THE DIP LOAN DOCUMENTS SHALL BE TRIED AND LITIGATED ONLY IN THE BANKRUPTCY COURT, AND/OR THE FEDERAL COURTS HAVING APPELLATE JURISDICTION THEREFROM. **BORROWER AND LENDER EACH WAIVES, TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, THE RIGHT TO A TRIAL BY JURY** IN ANY PROCEEDING UNDER THE DIP LOAN DOCUMENTS OR RELATING TO THE DEALINGS OF BORROWER AND LENDER AND ANY RIGHT EACH MAY HAVE TO ASSERT THE DOCTRINE OF "FORUM NON CONVENIENS" OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS <u>ARTICLE 14</u>. BORROWER AND LENDER EACH AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL (OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID, TO SUCH PARTY, AS THE CASE MAY BE AT ITS ADDRESS SET FORTH IN <u>ARTICLE 12</u> OR AT SUCH OTHER ADDRESS OF WHICH THE PARTY SHALL HAVE BEEN NOTIFIED PURSUANT THERETO.

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date first above written.

TAYOR, BEAN & WHITAKER MORTGAGE CORP.

By: _____
Name: Neil Carn
Title: Chief Reducing Officer

SELENE RESIDENTIAL MORTGAGE OPPORTUNITY FUND L.P.
By: Selene Investment Partners LLC

By: _____
Name:
Title: Authorized Person

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date first above written.

TAYOR, BEAN & WHITAKER MORTGAGE CORP.

By: _____
Name:
Title:

SELENE RESIDENTIAL MORTGAGE
OPPORTUNITY FUND L.P.
By: Selene Investment Partners LLC

By: _____
Name: Scott A. Shaw
Title: Authorized Person

# EXHIBITS/SCHEDULES

## EXHIBITS

Exhibit A          Form of Borrower's Request
Exhibit B          Form of Borrowing Base Certificate
Exhibit C          Form of Financing Order
Exhibit D          Form of Note
Exhibit E          Form of Subordination Agreement

## SCHEDULES

Schedule 2.2       Bank Accounts
Schedule 4.1(a)    Land
Schedule 4.1(b)    Ground Leases
Schedule 4.1(c)    Condominium Units
Schedule 4.3(a)    Permitted Liens
Schedule 5.1       List of Subsidiaries
Schedule 5.6       Pending Litigation
Schedule 7.1       Indebtedness