EXHIBIT C-1

EXHIBIT C

FORM OF FINANCING ORDER

**SEE ATTACHED ORDER**

Exhibit C-1

## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TAYLOR, BEAN & WHITAKER MORTGAGE CORP., | Case No. 3:09-BK-07047-JAF |
| Debtor. | |

### ORDER (A) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE, AND (B) GRANTING LIENS AND SUPER-PRIORITY CLAIMS

This matter came before the Court on _____, 2009 on the motion filed by Taylor, Bean & Whitaker Mortgage Corp., the debtor and debtor-in-possession (the "Debtor") in the above captioned Chapter 11 case (the "Case") dated October 21, 2009 (the "Motion"), requesting entry of this Order (the "Order"):

(1) authorizing and approving, pursuant to sections 105 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the postpetition financing (the "DIP Facility"), to be provided to the Debtor pursuant to the "DIP Loan Agreement" dated as of October 21, 2009 by and among Debtor, as Borrower, and Selene Residential Mortgage Opportunity Fund L.P. (the "DIP Lender"), and authorizing the incurrence by the Debtor of all Obligations[1] under the DIP Loan Agreement and the related DIP Loan Documents (as defined below) including, without limitation, all amounts due on account of principal, accrued interest,

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Loan Agreement.

unpaid fees and expenses, indemnification obligations and all other amounts due to the DIP Lender;

(2) requesting on a final and permanent basis, pursuant to sections 364(c)(1), 364(c)(2), and 364(d) of the Bankruptcy Code, that the Obligations under the DIP Facility:

a. have priority over any and all administrative expenses other than the Carve-out (as defined below), including, without limitation, administrative expenses or claims of the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment (the "DIP Superpriority Claim");

b. be and be deemed to be secured by valid, binding, continuing, enforceable, fully perfected, priming and unavoidable first-priority senior security interests in, and liens upon (the "DIP Liens") the Collateral (including the proceeds thereof), as provided for by sections 364(c) and (d) of the Bankruptcy Code, subject solely to the Carve-out to the extent provided for below;

(3) seeking the Court's authorization pursuant to sections 361(a), 363(c), and 364(d)(1) of the Bankruptcy Code to provide adequate protection to those entities, if any, holding existing liens or claims on the Collateral, which liens and claims shall be "primed" and treated as junior in all respects to the DIP Facility from and after entry of this Order; and

(4) requesting this Court to vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Order.

Pursuant to Bankruptcy Rule 4001(c)(1), the Court having found that due and sufficient notice of the Motion and this Hearing (the "Hearing") was provided by the Debtor as set forth in paragraph H below; and having considered the pleadings filed with this Court; and having overruled all unresolved objections to the relief requested in the Motion; and upon the record made by the Debtor at the Hearing, and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A. On August 24, 2009 (the "Commencement Date"), the Debtor commenced in this Court a case under chapter 11 of the Bankruptcy Code. The Debtor is managing its affairs as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. On September 11, 2009, pursuant to section 1102(a) of the Bankruptcy Code, the Office of the United States Trustee for the Middle District of Florida (the "U.S. Trustee"), appointed the official committee of creditors holding unsecured claims (the "Committee"). The Committee was represented by counsel at the Hearing.

C. By order of this Court dated September 3, 2009, Neil F. Luria (the "CRO") of Navigant Capital Advisors LLC was appointed to serve as chief restructuring officer of the Debtor.

D. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E. The Debtor requires the availability of credit to finance the ordinary costs of its liquidation and the Servicing Reconciliation which is the subject of Stipulation Between Debtor Taylor, Bean & Whitaker Mortgage Corp. and Federal Deposit Insurance Corporation, as Receiver for Colonial Bank, dated September 11, 2009 [Docket No. 222] and to preserve the value of its estate. Without such credit, the Debtor would likely not be able to complete an orderly liquidation, and the Debtor's estate would likely suffer considerable harm or loss Available cash collateral is inadequate for the Debtor's needs, purposes and operations.

F. The Debtor is unable to obtain sufficient financing from sources other than the DIP Lender on terms more favorable than under the DIP Facility and all the documents and instruments delivered or to be pursuant thereto or in connection therewith (inclusive of the DIP Loan Agreement, the "DIP Loan Documents"). Debtor is not able to obtain sufficient unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code, credit for money borrowed with priority over all administrative expenses of the kind specified under sections 503(b) and 507 of the Bankruptcy Code, or credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien, in each case on more favorable terms and conditions than those provided in the DIP Loan Agreement and this Order. The Debtor is unable to obtain new credit for borrowed money without granting to the DIP Lender the protections provided in the DIP Loan Documents and this Order.

G. The DIP Lender has indicated a willingness to consent and agree to provide financing to the Debtor subject to (i) the entry of this Order, (ii) the terms and conditions

2111635v4

of the DIP Loan Agreement, and (iii) findings by the Court that such postpetition financing is essential to the Debtor's estate, that the terms of such financing were negotiated in good faith and at arm's length, and that the DIP Lender's DIP Liens and DIP Superpriority Claims, and other protections granted pursuant to this Order and the DIP Loan Documents, will not be affected by any subsequent reversal, modification, vacatur or amendment of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code. The DIP Lender has acted in good faith in negotiating, consenting to and in agreeing to provide the postpetition financing arrangements contemplated by this Order and the DIP Loan Documents and the reliance of the DIP Lender on the assurances referred to above is in good faith.

H. Notice of the Hearing and the entry of this Order has been provided to (i) counsel for the Creditor's Committee, (ii) the Office of the United States Trustee for the Middle District of Florida (the "U.S. Trustee"), (iii) counsel for the DIP Lender; and (iv) any other parties requesting or entitled to such notice (collectively, the "Notice Parties"). The requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rule 4001, which notice is good and sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided as a condition to entry of this Order.

I. The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(c) (2). Absent entry of this Order, the Debtor's estate will be irreparably harmed.

J. The ability of the Debtor to finance its liquidation and the availability to the Debtor of sufficient working capital through the incurrence of new indebtedness for borrowed money is in the best interests of the Debtor and its estate. The DIP Facility authorized

hereunder is vital to avoid irreparable harm to the Debtor's estate and to allow the orderly liquidation of the Debtor's businesses and completion of the Servicing Reconciliation. The relief requested in the Motion is necessary, essential and appropriate for the continued management, preservation and orderly liquidation of the Debtor's assets. It is in the best interest of the Debtor's estate to be allowed to establish the DIP Facility contemplated by the DIP Loan Agreement.

K. Based upon the pleadings and proceedings of record in this case: (i) the terms of the DIP Facility are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility has been negotiated in good faith and at arm's length between the Debtor and the DIP Lender, and any credit extended, loans made, and other financial accommodations extended to the Debtor by the DIP Lender shall be deemed to have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

**NOW THEREFORE, ON THE MOTION, AND THE RECORD BEFORE THE COURT WITH RESPECT TO THE MOTION AND THIS CASE, AND WITH THE CONSENT OF THE DEBTOR TO THE FORM AND ENTRY OF THIS ORDER, AND GOOD AND SUFFICIENT CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. <u>Disposition</u>. The Motion is granted in its entirety in accordance with the terms and conditions set forth in this Order and the DIP Loan Agreement. Any objection that has not previously been withdrawn or resolved is hereby overruled. This Order shall immediately become effective upon its entry.

2. <u>Authorization to Borrow</u>. The DIP Loan Agreement is hereby approved on a final basis and the Debtor is authorized to borrow up to $25,175,000.00 consistent with the terms of the DIP Loan Agreement. The Debtor is expressly authorized, empowered and directed to execute and deliver the DIP Loan Agreement and the documents contemplated thereby, and to incur and perform its obligations thereunder, and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtor under the DIP Facility. The Debtor is authorized and directed to do and perform all acts, including paying the principal, interest and fees of the DIP Lender as provided under the DIP Loan Documents. Such fees shall not be subject to court approval. The DIP Loan Documents shall constitute and evidence and are hereby deemed to be legal, valid, and binding obligations of the Debtor and of its estate any successors thereto, enforceable against the Debtor, its estate and its creditors in accordance with the terms of the DIP Loan Documents. Available financing and advances under the DIP Loan Agreement may be made available in accordance with the terms of the DIP Loan Documents to fund the Debtor's ordinary working capital and to pay such other amounts as are required or permitted to be paid pursuant to the DIP Loan Agreement and this Order.

3. <u>Conditions Precedent</u>. The DIP Lender shall have no obligation to make any loan or advance under the DIP Loan Agreement unless the conditions precedent to making same have been satisfied in full in accordance with the DIP Loan Agreement or waived in a writing signed by the DIP Lender. Among the conditions precedent is that the Bankruptcy Court shall have entered an order in form and content reasonably satisfactory to Lender, pursuant to the Bid Procedures Motion, providing that Selene RMOF REO Acquisition II LLC, an affiliate of

Lender ("Acquisition"), shall have been named the stalking horse bidder for the purchase of the Real Estate Assets on terms and conditions that are reasonably acceptable to Acquisition.

4.   DIP Liens.  As security for the Obligations, pursuant to sections 364(c)(2) and (d) of the Bankruptcy Code, the DIP Lender (effective as of the date of this Order without the necessity of the execution by the Debtor or the filing or recordation of mortgages, security agreements, control agreements, financing statements, or otherwise) is granted the DIP Liens, which are and shall be deemed to be secured by valid, binding, continuing, enforceable, fully perfected, priming and unavoidable first-priority senior security interests in, and liens upon all presently owned and hereafter acquired Collateral as described in the DIP Loan Agreement, senior and superior in priority to all other secured and unsecured creditors of the Debtor's estate. The DIP Liens shall be subject to the payment of the Carve-out (as defined below). The DIP Liens shall secure all of the Obligations, and shall be superior to any security, mortgage or collateral interest or lien, claim or interest in or to any of the Collateral, subject only to the Carve-out. The DIP Liens will be valid and enforceable against any trustee appointed in this case, under chapter 7 or chapter 11 of the Bankruptcy Code, and in any other proceedings related to the case. The DIP Liens shall not be subject to Sections 506(c), 549, 550 or 551 of the Bankruptcy Code.

5.   Superpriority Administrative Claim Status.  Subject only to the Carve-out, all of the Obligations shall be an allowed superpriority administrative expense claim (the "DIP Superpriority Claim" and, together with the DIP Liens, the "DIP Protections") with priority in the case and upon the conversion of the case to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor Case") under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all

2111635v4

administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the Carve-out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Case, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Protections or the Obligations, or with any other claims of the DIP Lender arising hereunder.

6. <u>Disposition of Collateral</u>. Except as provided in the DIP Loan Agreement, the Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of the DIP Lender, and no such consent may be implied from any action, inaction or acquiescence by the DIP Lender.

7. <u>Adequate Protection</u>. There are no parties entitled to adequate protection with respect to the Collateral.

8. <u>Carve-out</u>. The DIP Superpriority Claim and the DIP Liens shall be subject to payment of the following in an amount not to exceed $2,500,000 in the aggregate (collectively, the "<u>Carve-out</u>"): (i) (a) the unpaid fees of the clerk of this Court, (b) the unpaid fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717, and (c) up to $50,000 for unpaid fees and disbursements, including reasonable attorneys' fees of a

2111635v4

chapter 7 trustee appointed in this case pursuant to section 726 of the Bankruptcy Code, and (ii) up to $2,400,000 for the payment of the aggregate allowed unpaid fees and expenses during this case arising after the occurrence of an Event of Default and the acceleration of the Obligations pursuant to Section 9.1 of the DIP Loan Agreement payable under Sections 330 and 331 of the Bankruptcy Code to professionals retained pursuant to an order of the Court by the Debtor and any official creditors committee that may be appointed; provided, however, that no proceeds of the Collateral and no amounts received pursuant to the Professional Carve-out shall be used to pay compensation or expense reimbursement of any Professional Person or creditors' committee or any other costs incurred, directly or indirectly, in respect of, arising from or relating to, the commencement of, prosecution by, or joinder by any creditors' committee or any Person of any Adverse Bankruptcy Action, except to challenge whether an Event of Default has occurred. The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtor, the DIP Lender, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts. No payments of the Carve-out shall reduce the amount of the Obligations owed to the DIP Lender.

9. <u>Payment of Administrative Claims</u>. So long as no Event of Default shall have occurred and be continuing (i) the Debtor shall be permitted to pay administrative expenses allowed and payable by order of the Court under sections 330 and 331 of the Bankruptcy Code, as the same may become due and payable, and (ii) such payments shall not be applied to reduce the Carve-out.

10. <u>Section 506(c) Waiver</u>. As a further condition of the DIP Facility and any obligation of the DIP Lender to make any Advance pursuant to the DIP Loan Agreement and as

2111635v4

a condition of this Order, the Debtor (and any successors thereto or any representatives thereof, including any trustees appointed in this case or any Successor Case) shall be deemed to have waived any rights to surcharge the DIP Lender, the DIP Liens or any of the Collateral, including rights or benefits of Section 506(c) of the Bankruptcy Code, or otherwise. In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or the DIP Liens.

11. **Fees and Expenses of the DIP Lender.** The Debtor will promptly, following receipt of a written invoice from the DIP Lender, pay the reasonable costs, fees (including reasonable attorneys' fees), charges, and expenses incurred by the DIP Lender in connection with the DIP Loan Documents. Such fees and expenses will be paid by the Debtor whether or not the transactions contemplated hereby are consummated. None of such costs, fees, charges, and expenses shall be subject to Court approval and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court, provided that the Court shall have jurisdiction to determine any dispute concerning such invoices.

12. **Lien Restrictions on the Collateral.** Other than the Carve-out, until all of the Obligations have been irrevocably paid in full in cash, no claim, lien or security interest having priority superior to or *pari passu* with those granted by this Order to the DIP Lender shall be granted by the Debtor or permitted by any order of the Court heretofore or hereafter entered in this case, in whole or in part, with respect to any of the Collateral under Section 364 of the Bankruptcy Code or otherwise.

13. <u>DIP Lien Perfection</u>. This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, recording any mortgage, security deed or deed of trust, filing any UCC financing statement, entering into any deposit account control agreement, or securities account control agreement or the taking of possession of any Collateral) in order to validate, perfect or enforce the DIP Liens or to entitle the DIP Liens to the priorities granted pursuant to this Order and the DIP Loan Agreement. Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file such mortgages, deeds of trust, financing statements, security agreements, notices and other agreements or documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such mortgages, deeds of trust, financing statements, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of this case. Subject to the terms and conditions of Section 13.6 of the DIP Loan Agreement, the Debtor shall execute and deliver to the DIP Lender any such mortgages, deeds of trust, financing statements, security agreements, notices and other agreements or documents as the DIP Lender may reasonably request to in order to preserve, enforce, protect or defend any of the DIP Lender's rights, powers and privileges granted under the DIP Loan Agreement, including the DIP Liens and the enforcement of the Obligations in connection with the DIP Loan Agreement, the other DIP Loan Documents and this Order and the priority of such DIP Liens granted pursuant to the DIP Loan Agreement and/or this Order. The DIP Lender in its discretion, may file a photocopy of this Order as

2111635v4

a mortgage, deed of trust, or financing statement with any recording officer designated to file mortgages, deeds of trust or financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Order.

14. <u>Event of Default</u>. As provided in the DIP Loan Agreement, failure by the Debtor to comply with any term of this Order shall constitute an Event of Default under the DIP Loan Agreement.

15. <u>Rights and Remedies Upon Event of Default.</u>

(a) Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that after the occurrence of any Event of Default and at any time thereafter upon five (5) business days prior notice via email or facsimile of such occurrence, in each case given to each of counsel for the Debtor, counsel for Creditors Committee and the and the U.S. Trustee, the DIP Lender shall be entitled to exercise its rights and remedies based upon the DIP Loan Documents. Notwithstanding the occurrence of an Event of Default: (i) the Debtor shall continue to deliver and cause the delivery of all Net Cash Proceeds to the DIP Lender as provided in the DIP Loan Agreement (ii) the DIP Lender shall continue to apply such proceeds in accordance with the provisions of the DIP Loan Agreement; (iii) the Debtor shall have no right to use any of such proceeds; and (iv) in such event, any obligation otherwise imposed on the DIP Lender to provide any loan or advance to the Debtor pursuant to the DIP Facility shall be suspended, <u>provided that</u>, in the DIP Lender's reasonable discretion, the DIP Lender may continue to make loans and advances to (A) maintain, protect or preserve the Collateral or its rights therein, and/or (B) implement and exercise its rights and remedies in accordance with the terms of the DIP Loan Agreement, including in connection with the sale of the Collateral. Following the giving of

- 13 -

2111635v4


notice by the DIP Lender of the occurrence of an Event of Default, the Debtor shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether an Event of Default has occurred. If the Debtor does not contest the right of the DIP Lender to exercise its remedies based upon whether an Event of Default has occurred within such time period, or if the Debtor does timely contest the occurrence of an Event of Default and the Court declines to stay the enforcement thereof within such five (5) business day period, the automatic stay, as to the DIP Lender shall automatically terminate at the end of such notice period.

(b) The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of this Order as necessary to (1) permit the Debtor to grant the DIP Liens and to incur all Obligations to the DIP Lender under the DIP Loan Documents, the DIP Facility, and this Order, as applicable, (2) authorize the DIP Lender to retain and apply payments hereunder, and (3) otherwise permit the DIP Lender to take any action permitted in accordance with this Order.

(c) Nothing included herein shall prejudice, impair, or otherwise affect the DIP Lender's rights to seek any other or supplemental relief in respect of the Debtor or the DIP Lender's rights, as provided in the DIP Loan Agreement, to suspend or terminate the making of loans under the terms provided in the DIP Loan Agreement.

16. <u>Proofs of Claim.</u> The DIP Lender will not be required to file proofs of claim in this case or any Successor Case on account of the Obligations.

17. <u>Binding Effect.</u> The provisions of this Order shall be binding upon and inure to the benefit of the DIP Lender and the Debtor. Any successors or assigns of the Debtor (including any trustee or other fiduciary hereinafter appointed as a legal representative of the

Debtor or with respect to the property of the estate of the Debtor) whether in this case, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case, shall be bound by the provisions of this Order.

18. <u>Survival</u>. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in this case, (ii) converting this case to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing this case, (iv) withdrawing of the reference of this case from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of this case in this Court. The terms and provisions of this Order including the DIP Protections granted pursuant to this Order and the DIP Loan Documents shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by this Order until all of the Obligations of the Debtor to the DIP Lender pursuant to the DIP Loan Agreement have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Loan Agreement which survive such discharge by their terms). The Obligations shall not be discharged by the entry of an order confirming a Plan, the Debtor having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code. The Debtor shall not propose or support any Plan that is not conditioned upon the payment in full in cash of all of the Obligations on or prior to the earlier to occur of (i) the effective date of such Plan and (ii) the Termination Date. This Court shall retain jurisdiction, notwithstanding any dismissal of this case, for the purpose of enforcing the DIP Liens and the DIP Superpriority Claim.

19. <u>Modifications</u>. The Debtor is authorized to do and perform all acts which may be reasonably required or necessary for the Debtor's performance under the DIP Facility

2111635v4

- 15 -

and this Order, including, without limitation, the modification or amendment of the DIP Loan Agreement or any other DIP Loan Documents with the consent of the DIP Lender without further order of this Court, in each case, in such form as the Debtor and the DIP Lender may agree (except for any modification or amendment to shorten the maturity of Advances made under the DIP Loan Agreement or increase the rate of interest or fees payable thereunder); *provided, however*, that notice of any material modification or amendment shall be provided to the Committee and the U.S. Trustee, each of which will have five (5) days from the date of such notice within which to object in writing; *provided further, however*, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court. The Debtor waives any right to seek any modification or extension of this Order without the prior written consent of the DIP Lender, and no such consent may be implied by any action, inaction or acquiescence of the DIP Lender.

18. <u>Insurance Policies</u>. Effective as of entry of this Order, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payees on each insurance policy maintained by the Debtor which in any way relates to the Collateral.

19. <u>Subsequent Reversal</u>. The DIP Loan Agreement was negotiated in good faith and at arms' length between the Debtor and the DIP Lender, and DIP Lender is fully entitled to protection under section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Order or the DIP Loan Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of the DIP Lender: (i) such modification, vacatur, amendment, or stay shall not affect the validity of any obligation of the Debtor to the DIP Lender that is or was incurred prior to the effective date of

such modification, vacatur, amendment, or stay (the "Effective Date"), or the validity, enforceability or priority of the DIP Superpriority Claim or DIP Liens authorized or created by this Order and the DIP Loan Documents; and (ii) the Obligations pursuant to this Order and the DIP Loan Documents arising prior to the Effective Date shall be governed in all respects by the original provisions of this Order and the DIP Loan Documents, and the validity of any such credit extended or lien, claim or security interest granted pursuant to this Order and the DIP Loan Documents is and shall be protected by section 364(e) of the Bankruptcy Code. Because any Advances made pursuant to the DIP Loan Agreement will be made in reliance on this Order, the obligations owed to the DIP Lender prior to the effective date of any stay, modification or vacation of this Order shall not, as a result of any subsequent order in this case or in any Successor Case, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Order and/or the DIP Loan Agreement.

22. **Additional Collateral Rights.** As long as the Obligations have not been irrevocably paid in full in cash: (i) there shall not be entered in this case or any Successor Case any order which authorizes relief from the automatic stay permitting anyone other than the DIP Lender to realize upon any portion of the Collateral; and (ii) without limiting any of the foregoing, if the Debtor, its successor, estate, trustee or other authorized representative shall obtain credit or incur debt pursuant to sections 364 (b) 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Loan Agreement, then all of the cash proceeds derived from such credit or debt shall immediately be applied to reduce the Obligations owed to the DIP Lender, until all Obligations have been irrevocably paid in full in cash. Nothing contained herein shall prejudice, impair, or otherwise affect the DIP Lender's right to seek any other or supplemental relief in

respect of its rights arising out of the DIP Loan Agreement, or to suspend or terminate the making of any Advances to the Debtor under the DIP Loan Agreement.

23. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

24. <u>Findings of Fact and Conclusions of Law</u>. This Order constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon the entry thereof. Any applicable stay, including, without limitation, under Bankruptcy Rule 6004(h), is hereby waived and shall not apply to this Order.

25. <u>Retention of Jurisdiction</u>. This Court has and will retain jurisdiction to enforce this Order and the DIP Loan Documents according to their terms. This retention of jurisdiction includes without limitation jurisdiction over proceedings initiated by DIP Lender or the Debtor's estate to foreclose on or sell the Collateral, either in whole or in part, pursuant to Section 363 of the Bankruptcy Code or otherwise, in order to satisfy or reduce the Obligations.

26. <u>Controlling Effect of Order</u>. To the extent any provision of this Order conflicts with any provision of the Motion, the provisions of this Order shall control.

27. <u>Adequate Notice.</u> Notice of the Hearing and the relief requested in the Motion has been provided by the Debtor to the Committee, the U.S. Trustee, and as set forth in the Certificate of Service filed with respect to the Motion. The notice given by the Debtor of the Motion and the Hearing was given in accordance with the applicable Bankruptcy Rules, was due and sufficient and no other or further notice of the Motion was necessary or required. Within

2111635v4

three (3) business days after the Court's entry of this Order, the Debtor shall mail copies of this Order to the Notice Parties.

**SO ORDERED, ADJUDGED, DECREED AND STIPULATED**, this ___ day of _____ 2009 at Jacksonville, Florida.

JERRY A. FUNK
United States Bankruptcy Judge

[CONTINUED ON NEXT PAGE]

Prepared and presented by:

TROUTMAN SANDERS LLP

/s/ Jeffrey W. Kelley
Ezra H. Cohen (Ga. Bar No. 173800)
Jeffrey W. Kelley (Ga. Bar No. 412296)
Hazen H. Dempster (Ga. Bar No. 217592
Bank of America Plaza, Suite 5200
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Telephone No.:   (404) 885-3383
Facsimile No.:   (404) 962-6847
Email: ezra.cohen@troutmansanders.com
Email: jeffrey.kelley@troutmansander.com
Email: hazen.dempster@troutmansanders.com

Special Counsel for Debtor