UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 09-07047-JAF
CHAPTER 11 CASE

IN RE:

TAYLOR, BEAN & WHITAKER MORTGAGE CORP.

Debtor.

_____/

**MOTION FOR RELIEF FROM STAY**
*(Property Located at 1450 W 112th PL, Chicago, IL 60643)*

MOVANT, **ONEWEST BANK, FSB**, a secured creditor, by and through its undersigned counsel, and respectfully moves this Court pursuant to 11 U.S. Code Section 362(d) of the Bankruptcy Code to grant relief from stay and and as grounds and in support thereof would show the following:

1.  Payments under the note and mortgage are due on the first (1st) day of each month until maturity of the note.  At this time, no plan has been filed with the court.

2.  Movant is the holder of the Note and Mortgage on the subject property originally taken out by Ida Dorantes. See Exhibit A attached.

3.  The debtor is listed as a Third-Party Defendant in Complaint to Foreclose Mortgage filed by MOVANT in the Circuit Court of Cook County, Illinois Case No. **08CH29947**. See Exhibit B attached.

4.  The account is in default for the payment due on May 1, 2008 and Secured Creditor is owed an approximate principal balance of $132,000. See Exhibit C attached.

5.  Failure to receive post-petition payments constitute an unreasonable delay that is prejudicial to Movant/Claimant.  The regular monthly post-petition payments as required by the subject mortgage and note are necessary to provide Movant with adequate protection of its secured interest in the subject real property.  Failure to make the regular post-petition monthly payments is a material default.

6.   The Debtor is a Junior Lien holder on certain real property in COOK County, IL described

as:

### SEE ATTACHED EXHIBIT A

A/K/A: 1450 W 112TH PL, CHICAGO, IL 60643

7.   According to Desktop Valuation, the market value of the property is $85,000.00. See Exhibit
D attached.

8.   **ONEWEST BANK, FSB,** requests, that ten (10) day stay of the Order Granting Relief
pursuant to Bankruptcy Rule 4001 (a)(3) is waived so that **ONEWEST BANK, FSB,** can
pursue its in rem remedies without further delay.

9.   **ONEWEST BANK, FSB,** seeks the award of bankruptcy fees and cost of $800.00 for the
prosecution of this Motion or that a State Court Judge is permitted to award bankruptcy fees
and cost for the prosecution of this Motion.


   **WHEREFORE**, Movant, **ONEWEST BANK, FSB,** moves this Court to enter its order
granting relief from stay to Movant and that the ten (10) day stay of the of the Order Granting Relief
pursuant to Bankruptcy Rule 4001(a)(3) is waived so that, **ONEWEST BANK, FSB,** can pursue its
in rem remedies without further delay and award bankruptcy fees and cost of $800.00 and granting
such other relief as to the Court may deem just and proper.

I HEREBY CERTIFY that a true and correct copy of the attached mailing list and to all unsecured Creditor's under rule 1007 (d) by First Class U.S. Mail postage prepaid this Motion for Relief from Stay and attachments were delivered to the addressees listed under by mailing list by First Class U. S. Mail postage pre-paid and/or electronic mail this _3_ day of ____December____, 2009.

Law Offices of Marshall C. Watson, P.A.
1800 N.W. 49TH Street, Suite 120
Fort Lauderdale, FL 33309
Telephone: (954) 453-0365/1-800-441-2438
Facsimile: (954) 689-3517

By:_____
Scott Weiss, Esq.
Bar Number: 710910

**MAILING LIST:**

**Taylor, Bean & Whitaker Mortgage Corp.**
315 N.E. 14th St.
Ocala, FL 34470

**Amy Denton Harris**
Stichter, Riedel, Blain & Prosser, P.A.
110 E Madison Street, Suite 200
Tampa, FL 33602-4700

**Edward J. Peterson, III**
Stichter, Riedel, Blain & Prosser, PA
110 East Madison Street, Suite 200
Tampa, FL 33602

**Jeffrey W Kelley**
Troutman Sanders LLP
600 Peachtree Street
Suite 5200
Atlanta, GA 30308-2216

**Richard C. Prosser**
Stichter, Riedel, Blain & Prosser PA
110 E. Madison Street, Suite 200
Tampa, FL 33602

**Russell M Blain**
Stichter, Riedel, Blain & Prosser
110 East Madison Street, Suite 200
Tampa, FL 33602

**Elena L Escamilla**
United States Trustee
135 W Central Blvd Suite 620
Orlando, FL 32806

*U.S. Trustee*
**United States Trustee - JAX**
135 W Central Blvd, Suite 620
Orlando, FL 32801

**Arthur J Spector**
Berger Singerman PA
350 East Las Olas Blvd
Suite 1000

**Paul S Singerman**
Berger Singerman PA
200 South Biscayne Boulevard
Suite 1000

**Ida Dorantes**
1450 W 112th PL
Chicago, IL 60643

**Mortgage Electronic Registration Systems, Inc.**
PO Box 2026
Flint, MI 48501-2026

**Unknown Owners and Nonrecord Claimants**
1450 W 112th PL
Chicago, IL 60643

09-63857

Label Matrix for local noticing
113A-3
Case 3:09-bk-07047-JAF
Middle District of Florida
Jacksonville
Wed Dec  2 10:26:56 EST 2009

443 Building Corporation
c/o Robert D. Wilcox
Wilcox Law Firm
4190 Belfort Road, Suite 315
Jacksonville, FL 32216-1460

ACE American Insurance Company
c/o A. Richard Feldman, E. McCord
Clayton, Larry Spector
1515 Market Street, Ste 700
Philadelphia, PA 19102-1907

Advanced Homebuilders, Inc.
c/o Robert D. Wilcox, Esq.
4190 Belfort Road, Suite 315
Jacksonville, FL 32216-1460

American Express
c/o Martin Tabinowitz, VP
200 Vesey Street
New York, NY 10285-0002

Arthur J. Spector
Berger Singerman PA
350 East Las Olas Blvd.
10th Floor
Fort Lauderdale, FL 33301-4211

Assured Guaranty Corp.
c/o White & Case LLP, Linda Leali
Wachovia Financial Center
200 S. Biscayne Blvd., Ste. 4900
Miami, FL 33131-2346

Bank of America National Assoc.
c/o Andrew Zaron
Hunton & Williams, LLP
1111 Brickell Ave., Ste 2500
Miami, Florida 33131-3155

Bowie CAD et al
co Michael Reed
P.O. Box 1269
Round Rock, TX 78680-1269

Cal-Western Reconveyance Corporation
c/o Linda S. Finley, Esq. and Kevin A. S
3414 Peachtree Road, N.E., Suite 1600
Atlanta, GA 30326-1164

Centurion Asset Partners, Inc.
c/o Nicholas V. Pulignano, Jr., Esq.
1200 Riverplace Blvd., Suite 800
Jacksonville, Florida 32207-1805

City of Miramar
c/o Douglas R. Gonzales, Esq.
Weiss Derota Helfman, et al
200 East Broward Blvd., Ste 1900
Fort Lauderdale, FL 33301-1949

Coda Roberson
c/o J. Ellsworth Summers, Jr., Esq.
1301 Riverplace Boulevard, Suite 1500
Jacksonville, FL 32207-9000

Compu-Link Corporation d/b/a Celink
c/o Earl M. Barker, Jr.
Slott, Barker & Nussbaum
334 East Duval Street
Jacksonville, FL 32202-2718

Compu-Link Corporation d/b/a Celink
c/o Hollyn J. Foster
Slott,Barker & Nussbaum
334 E. Duval Street
Jacksonville, FL 32202-2718

Cumberland Valley National Bank and Trust
Robert D. Wilcox, Esq.
4190 Belfort Road, Suite 315
Jacksonville, FL 32216-1460

DLA Piper LLP (US)
Counsel for FDIC as Receiver for Colonia
100 North Tampa Street, Suite 2200
Tampa, FL 33602-5809
Attn.: Philip V. Martino, Esq.

Dell Marketing, LP
c/o Keith Fendrick
Holand & Knight
PO box 1288
Tampa, FL 33601-1288

Deutsche Bank AG
c/o Gunster Yoakley & Stewart, P.A.
777 South Flagler Drive, Suite 500E
West Palm Beach, FL 33401-6121

Deutsche Bank AG, New York
c/o Bingham McCutchen LLP
Attn: Robert M. Dombroff
399 Park Avenue
New York, NY 10022-4689

Duncan & Associates, P.A.
and David Isley, Receiver
PO Box 249
Fort Myers, FL 33902-0249

Emc Mortgage corporation
Law Offices of Marshall C. Watson, P.A.
1800 N.W. 49th Street, Suite 120
Ft. Lauderdale, FL 33309-3092

Federal Deposit Insurance Corp.
as receiver for Colonial Bank, N.A.
c/o Thomas R. Califano & Jeremy Johnson
1251 Avenue of the Americas
New York, New York  10020-1104

Federal Deposit Insurance Corporation as Rec
c/o DLA Piper LLP (US)
100 No. Tampa Street, Ste. 2200
Attn.: Philip V. Martino, Esq.
Tampa, FL 33602-5809

Federal Deposit Insurance Corporation,
receiver for Colonial Bank, Mont., Ala
c/o Philip V. Martino
100 North Tampa St., Ste 2200
Tampa, FL  33602-5809

First American Capital LLC
c/o Jon Krigsman
7286 Siena Way
Boulder, CO 80301-3722

First American Real Estate Tax Svc.
c/o Craig Zinda
1 First American Way
Westlake, Texas 76262-5310

First American Title Insurance Company
c/o Schuyler Smith, Esquire
118 W Adams St., #800
Jacksonville, FL 32202-3866

First International Bank & Trust
c/o Schuyler Smith, Esquire
118 W. Adams St., #800
Jacksonville, FL 32202-3866

First National Bank of Layton
136 W 12300 S Ste 201
Draper, UT 84020-8368

Five Brothers Mortgage Company
Services & Securing,Inc.
c/o Kevin B. Paysinger
PO Box 10399
Jacksonville, FL 32247-0399

Grant Ranch Master Community Assoc.
c/o Loura K. Sanchez
5610 Ward Rd.m Ste 300
Arvada, CO 80002-1309

Guaranty Bank
c/o Charles Sebesta
8333 Douglas Ave.
Dallas, TX 75225-6581

Integrity Field Services
c/o Dan C. Wolters
Cavitch, Familo & Durkin Co., LPA
1300 E. 9th St., 20th Floor
Cleveland, OH 44114-1501

James Gregory Hicks
c/o Marchman, Kasraie & Fodor
1755 The Exchange, Ste 339
Atlanta, GA 30339-7403

Litton Loan Servicing
c/o Michelle Hart
1544 Old Alabama Road
Roswell, Georgia  30076-2102

Manatee County Tax Collector
c/o Ken Burton, Jr.
P.O. Box 252300
Bradenton, Florida 34205

Merrill Lynch Credit Corporation
c/o Shapiro & Fishman, LLP
10004 N. Dale Mabry Hwy
Suite 112
Tampa, FL 33618-4492

MountainView Capital Holdings, L.L.C.
c/o R. Patrick Vance
Jones Walker
201 St. Charles Avenue, Suite 5100
New Orleans, LA 70170-5101

Nationwide Title Clearing
c/o Angelina E. Lim, Esq.
Johnson, Pope, Bokor, Ruppel & Burns, LL
P.O. Box 1368
Clearwater, FL 33757-1368

G&I VI 655/755 Business Center FE, LLC
c/o Dana S. Plon, Esquire
Sirlin Gallogly & Lesser, P.C.
1529 Walnut Street, Suite 600
Philadelphia, PA 19102-3012

GreatAmerican Leasing Corporation
c/o The Barthet Firm
200 S. Biscayne Blvd., Suite 1800
Miami, Florida 33131-5336

Henley Holding LLC
c/o William Norton
Bradley Arant Boult Cummings LLP
1600 Division St., Ste. 700
Nashville, TN 37203-2771

Iron Mountain Information Management, Inc.
c/o Frank F. McGinn, Esq.
Bartlett Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110-1610

Jumbolair, Inc.
c/o Keith T. Appleby, Esq.
Fowler White Boggs P.A.
P.O. Box 1438
Tampa, FL 33601-1438

Litton Loan Servicing LP
1800 NW 49th Street Suite 120
Fort Lauderdale, FL 33309-3092

Mary Hamel-Schwulst, Ph.D.
242 Woodman Avenue
Pass Christian, MS 39571-4429

Microsoft Corporation and Microsoft Licensin
c/o Maria A. Milano
Riddell Williams PS
1001 Fourth Ave., Ste 4500
Seattle, WA 98154-1065

NL Ventures VII Magnolia, LLC
c/o Michael M. Parker
300 Convent Street, Ste 2200
San Antonio, Texas 78205-3720

Nationwide Title Clearing,Inc.
c/o Erika Lande, SVP Administration
2100 Alt. 19 N.
Palm Harbor, FL 34683-2620

Gordon R. Duncan
and David Isley, Receiver
Duncan  Associates
PO Box 249
Fort Myers, Fl 33902-0249

Greg Hicks
c/o Raye Curry Elliott, Esq.
50 North Laura St., Suite 2500
Jacksonville, FL 32202-3646

ICBA
Independent Community
518 Lincoln Road
Sauk Centre, MN 56378-2001

JP Morgan
c/o Steven G. Powrozek
Shapiro & Fishman
10004 N. Dale Mabry Hwy., Ste 112
Tampa, FL 33618-4492

Lender Processing Services, Inc
and related affiliates
c/o Sheryl Newman, Esq
601 Riverside Avenue
Jacksonville, FL 32204-2901

MBIA Insurance Corporation
c/o Betsy C. Cox, Atty.
Rogers Towers, P.A.
1301 Riverplace Blvd., Suite 1500
Jacksonville, FL 32207-1811

Massachusetts Property Insurance Underwritin
c/o Kimberly Held Israel
6320 St. Augustine Rd., Ste 2
Jacksonville, FL 32217-2813

Missouri Department of Revenue
c/o Richard Maseles
PO Box 475
Jefferson City, MO 65105-0475

National Alliance Capital Markets
c/o Joseph R. Zapata, Jr., Esquire
Fox Rothschild LLP
997 Lenox Drive, 3rd Floor
Lawrenceville, NJ 08648-2317

Natixis Real Estate Capital Inc.
c/o Jeffrey N. Rich
599 Lexington Avenue
New York, NY  10022-6030

Neasham Investments, LLC
c/o Nina LaFleur
PO Box 861128
St. Augustine, Fl 32086-1128

Neasham Investments, LLC
Attn: Sherri Neasham
131 Spinnaker Ct.
Del Mar, CA 92014-3218

Paul Steven Singerman
Berger Singerman, PA
200 South Biscayne Blvd.
Suite 1000
Miami, FL 33131-5319

Premier Corporate Centre, LLC
c/o Stearns Weaver Miller, et al.
Andrew D. McNamee, Esq.
150 W. Flagler Street, Suite 2200
Miami, FL 33130-1536

RBC Bank (USA), as successor by merger to Fl
c/o J. Cameron Story, III, Esq.
841 Prudential Drive, Suite 841
Jacksonville, Florida 32207-8329

RBC Bank successor
to Florida Choice Bank
c/o James W. Carpenter
515 East Las Olas Blvd., Ste 850
Fort Lauderdale, FL 33301-2277

RN, Inc. d/b/a PIP Printing and Marketing Se
11 S.W. 1st Avenue
Ocala, Fl 34471-1101

Rhode Island Joint Reinsurance Ass'n
c/o Kim Israel
Held & Israel
6320 St. Augustine Road, Suite 2
Jacksonville, FL 32217-2813

Richard A. Perry, Atty. at Law
21 North Magnolia Avenue
Orleans Building, 2nd Floor
Ocala, Fl 34475-6613

Rina L. Eisenberg
2019 Camp Street #4
New Orleans, LA 70130-5047

Seaside National Bank & Trust
c/o Foley & Lardner LLP
111 North Orange Ave., Ste 1800
Orlando, Florida 32801-2343

Selene RMOF REO Acquisition II, LLC
c/o R. Scott Shuker, Esq.
P.O. Box 3353
Orlando, FL 32802-3353

Selene Residential Mortgage Opportunity Fund
c/o R. Scott Shuker, Esq.
P.O. Box 3353
Orlando, FL 32802-3353

Sian Ocean Residences Condo Assoc Inc
c/o May Hustey Esq
Glazer & Associates PA
3113 Stirling Rd Ste 201
Hollywood FL 33312-6547

Sovereign Bank
c/o Robert Soriano, Esq.
625 E. Twiggs St., #100
Tampa, FL 33602-3925

TN Dept. of Financial Institutions
c/o Gill Geldreich, Asst. Atty. General
Bankruptcy Division
P.O. Box 20207
Nashville, TN 37202-4015

Tennessee Dept. of Financial Instutions
Attn: Gill Geldreich
c/o TN Atty General's Office, Bankruptcy
PO Box 20207
Nashville, Tennessee 37202-4015

U.S. Department of Housing and Urban Develop
c/o Glenn D. Gillett and Alicia M. Hunt
U.S. Department of Justice
Commercial Litigation Branch
1100 L Street, NW
Washington, D.C 20005-4035

United States Trustee - Jax
135 W Central Blvd, Suite 620
Orlando, FL 32801-2440

Upstreet Developments, LLC
c/o Adam B. Wiens
633 Seventeenth Street, Suite 2700
Denver, CO 80202-3662

Urban Trust Bank Holdings, Inc.
c/o Joseph Dayton Foley, Jr., P.A.
283 Cranes Roost Blvd., Suite 111
Altamonte Springs, FL 32701-3437

W Scott Wynn
PO Box 447
Groveland FL 34736-0447

Wells Fargo Bank
c/o A. Michelle Hart
McCalla Raymer, LLC
1544 Old Alabama Rd.
Roswell, GA 30076-2102

Wells Fargo Bank, N.A.
c/o John C. Weitnauer, Esq.
Alston & Bird, LLP
1201 W. Peachtree St., One Atlantic Ctr
Atlanta, GA 30309-3424

Wells Fargo Bank, N.A., as Master Servicer
c/o James H. Post, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202-4494

End of Label Matrix
Mailable recipients      84
Bypassed recipients       0
Total                    84

## BILL OF SALE

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the terms and conditions of the Servicing Business Asset Purchase Agreement by and between the FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK, FSB ("**Seller**"), and ONEWEST BANK, FSB ("**Purchaser**"), dated March 19, 2009 (the "**Agreement**"), the Seller does hereby bargain, sell, assign, transfer, set over and convey to the Purchaser, its successors and assigns, without recourse, all right, title and interest of the Seller in and to the Assets, as defined in the Agreement, including the Servicing Rights, for all purposes, in accordance with Article II of the Agreement.

THIS BILL OF SALE IS EXECUTED AND DELIVERED WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, WHETHER EXPRESS, IMPLIED OR CREATED BY OPERATION OF LAW, EXCEPT AS PROVIDED IN THE AGREEMENT AND THE MASTER PURCHASE AGREEMENT.

ACKNOWLEDGMENT

STATE OF _New York_ )

                            )

COUNTY OF _New York_ )

      Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared George Alexander, known to me to be the person whose name is subscribed to the foregoing instrument, as _Manager, Structured Transactions_ of the Federal Deposit Insurance Corporation as Receiver of IndyMac Federal Bank, FSB, and he acknowledged to me that he executed the same as the act of the Federal Deposit Insurance Corporation, for the purposes and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office on this the _19th_ day of _March_, _____, 2009.

                         _Sabrina Minchella_
                         Notary Public

[SEAL]

                         My Commission expires: _9-27-2011_

SABRINA MINCHELLA
NOTARY PUBLIC, State of New York
No. 02MI6099685
Qualified in New York County
Commission Expires: _9-27-2011_

Executed this _19th_ day of _March_____, 2009.

**SELLER:**
FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
INDYMAC FEDERAL BANK, FSB

By: _George Alexand_____

Name: _George Alexander_

Title: _Manager, Structured Transactions_

_Lisa A. Nudley_____
WITNESS

This instrument was prepared by:

Name:

Address:
**Taylor, Bean & Whitaker Mortgage Corp.**
**1417 North Magnolia Ave**

After Recording Return To:
**CHICAGO ABSTRACT TITLE**
**180 WEST WASHINGTON, STE 1201**
**CHICAGO**              **, IL**
**60602**



Doc#:  0633226213 Fee: $46.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 11/28/2006 04:00 PM Pg:  1 of 12

Exhibit: _A_____

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

**MIN: 100029500**█████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **April 04, 2006**                         , together with all Riders to this document.

**(B) "Borrower"** is **IDA DA?RANTES**

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is **Taylor, Bean & Whitaker Mortgage Corp.**
Lender is a **a Florida Corporation**                                        organized and existing under the laws of **FL**                                                                              . Lender's address is
**1417 North Magnolia Ave, Ocala, FL  34475**

**(E) "Note"** means the promissory note signed by Borrower and dated **April 04, 2006**                    . The Note states that Borrower owes Lender **One Hundred Thirty Two Thousand and no/100**
Dollars (U.S. $ **132,000.00**                      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 01, 2036**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3014 1/01
ITEM T9608L1 (0011)—MERS                          (Page 1 of 12 pages)                    GREATLAND ■
                                                                  To Order Call: 1-800-530-9393 □ Fax 616-791-1131

*0240691127862*

12 PGS

EXHIBIT A

(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider           ☐ Second Home Rider

☐ Balloon Rider              ☐ Planned Unit Development Rider   ☐ Other(s) [specify]

☐ 1-4 Family Rider           ☐ Biweekly Payment Rider

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "**Escrow Items**" means those items that are described in Section 3.

(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

<table>
<tr><td style="text-align:center"><b>County</b><br>[Type of Recording Jurisdiction]</td><td style="text-align:center">of</td><td style="text-align:center"><b>Cook</b><br>[Name of Recording Jurisdiction]</td><td>:</td></tr>
</table>

Lots 9 and 10 in Block 59 in Washington Heights, being a Re-Subdivision of Lots 1 and 2 in Block 913 all of Block 14, Lots 7 to 63 inclusive in Block 20, Lots 1, 2, and 3 in Block 21, and all of Blocks 24, 25, 28, and 29, all in Section 18 and 19, also a Subdivision of the West ½ of the Northwest ¼ of Section 20, and that portion of the East ½ of the Southwest ¼ of Section 19, East of Prospect Avenue, all in Township 37 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

Pin: 25-20-108-019-0000 Vol: 465, 25-20-108-020-0000 Vol: 465

<table>
<tr><td>which currently has the address of</td><td>-</td><td style="text-align:center"><b>1450 W 112thPL</b><br>[Street]</td><td></td></tr>
<tr><td style="text-align:center"><b>Chicago</b><br>[City]</td><td>, Illinois</td><td style="text-align:center"><b>60643</b><br>[Zip Code]</td><td>("Property Address"):</td></tr>
</table>

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or

partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.**   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.**   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.    Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.    Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.

Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9608L6 (0011)—MERS                                    (Page 6 of 12 pages)

Form 3014 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan

charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon

an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not**

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9608L10 (0011)—MERS

*(Page 10 of 12 pages)*

Form 3014 1/01

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

25. **Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

*ILLINOIS*—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

ITEM T9608L11 (0011)—MERS

*(Page 11 of 12 pages)*

Form 3014 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
IDA DAORANTES                -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower

Witness:                                  Witness:

_____                 _____

State of Illinois
County of _Cook_

This instrument was acknowledged before me on    4-4-2006          (date) by
          IDA Dorontes

                                                                 (name[s] of person[s]).

┌─────────────────────────────────┐
│         OFFICIAL SEAL           │
│         JUAN C OROZCO           │
│ NOTARY PUBLIC - STATE OF ILLINOIS│
│ MY COMMISSION EXPIRES:04/18/07   │
└─────────────────────────────────┘
                                          _____
                                                 Notary Public

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3014 1/01
ITEM T9608L12 (0011)—MERS                              (Page 12 of 12 pages)        GREATLAND ■
                                                                    To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

# INITIAL INTEREST℠ NOTE

| April 04, 2006 | Chicago | Illinois |
|---|---|---|
| [Date] | [City] | [State] |
| | 1450 W 112thPL | |
| | Chicago, IL 60643 | |

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$132,000.00**    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Taylor, Bean & Whitaker Mortgage Corp.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **7.6250%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of the month beginning on    **June 01, 2006**    . Before the first fully amortizing principal and interest payment due date, my monthly payments will be only for the interest due on the unpaid principal of this Note. The due date of my first payment including fully amortizing principal and interest is the first day of    **June 01, 2016**    . I will make payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on **May 01, 2036**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL 34475**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$838.75**    until the due date of the first fully amortizing principal and interest payment. Beginning with the first fully amortizing principal and interest payment, my payment will be in the amount of U.S. $**1,073.49**

The Note Holder will notify me prior to the date of any change in the amount of my monthly payment in accordance with Section 7 of this Note. The Note Holder will provide the title and telephone number of a person who will answer any questions I may have regarding the notice.

MULTISTATE INITIAL INTEREST FIXED RATE NOTE—Single Family—Freddie Mac UNIFORM INSTRUMENT    Form 5206 5/04

ITEM 1023L1 (0408)    (Page 1 of 4 pages)    GreatDocs™
To Order Call: 1-800-968-5775

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to the changes. If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, the partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the due date of my last interest only payment, the amount of my monthly payment will not change unless the Note Holder agrees in writing to that change.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    **Fifteen**    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **5.0000**% of the overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE INITIAL INTEREST FIXED RATE NOTE—Single Family—Freddie Mac UNIFORM INSTRUMENT        Form 5206 5/04

ITEM 1023L2 (0406)                              *(Page 2 of 4 pages)*                        GreatDocs™
                                                                              To Order Call: 1-800-968-5775

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
IDA D. ORANTES                        -Borrower                                             -Borrower

_____ (Seal)        _____ (Seal)
                                      -Borrower                                             -Borrower

_____ (Seal)        _____ (Seal)
                                      -Borrower                                             -Borrower

*[Sign Original Only]*

Without recourse, pay to the order of            Pay To The Order Of

IndyMac  Bank F.S.B.

By: Taylor, Bean & Whitaker                      Without Recourse
    Mortgage Corp.                               IndyMac Bank, F.S.B.

_____                  By: _____
Erla Carter-Shaw, E.V.P                              Brian Brouillard
                                                     First Vice President

MULTISTATE INITIAL INTEREST FIXED RATE NOTE—Single Family—Freddie Mac UNIFORM INSTRUMENT        **Form 5206 5/04**

ITEM 1023L4 (0406)                    *(Page 4 of 4 pages)*                    GreatDocs™
                                                                   To Order Call: 1-800-968-5775

Cook County #21762

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

IndyMac Federal Bank FSB f/k/a IndyMac Bank, F.S.B.
PLAINTIFF

Vs.

Ida Dorantes; Mortgage Electronic Registration Systems,
Inc.; Taylor, Bean & Whitaker Mortgage Corporation;
Unknown Owners and Nonrecord Claimants
DEFENDANTS

No.


08 C H 29942

## COMPLAINT TO FORECLOSE MORTGAGE

NOW COMES the Plaintiff, INDYMAC FEDERAL BANK FSB F/K/A INDYMAC BANK,
F.S.B., by and through its attorneys, CODILIS & ASSOCIATES, P.C., complaining of the
defendants herein and, pursuant to 735 ILCS 5/15-1101, states as follows:

1. Plaintiff files this Complaint to Foreclose the mortgage, trust deed or other conveyance in the
nature of a mortgage (hereinafter called "Mortgage") hereinafter described, and names the persons
identified in the above caption as "Defendants", as parties hereto.

2. Attached as "EXHIBIT A" is a true copy of the Mortgage.

3. Information concerning said Mortgage:

    (A) Nature of the instrument: Mortgage.

    (B) Date of the Mortgage: 4/4/2006

    (C) Name of mortgagor(s):

        Ida Dorantes

    (D) Name of the mortgagee:

        Mortgage Electronic Registration Systems, Inc. as Nominee for Taylor, Bean &
        Whitaker Mortgage Corporation

    (E) Date and Place of Recording or Registering:

        11/28/2006
        Office of the Recorder of Deeds of Cook County Illinois

    (F) Identification of Recording: Document No. 0633226213

Page 1 of 4

EXHIBIT B

(G) Interest subject to the mortgage: Fee Simple.

(H) Amount of original indebtedness:

   (1) Original Indebtedness: $132,000.00

(I) Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

LOTS 9 AND 10 IN BLOCK 59 IN WASHINGTON HEIGHTS, BEING A RE-SUBDIVISION OF LOTS 1 AND 2 IN BLOCK 913 ALL OF BLOCK 14, LOTS 7 TO 63 INCLUSIVE IN BLOCK 20, LOTS 1,2 AND 3 IN BLOCK 21, AND ALL OF BLOCKS 24,25,28 AND 29, ALL IN SECTION 18 AND 19, ALSO A SUBDIVISION OF THE WEST 1/2 OF THE NORTHWEST 1/4 OF SECTION 20, AND THAT PORTION OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 19, EAST OF PROSPECT AVENUE, ALL IN TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**COMMONLY KNOWN AS:**       1450 W. 112th Place
                             Chicago, IL 60643

**TAX PARCEL NUMBER:** 25-20-108-019
25-20-108-020

(J) Statement as to defaults: Mortgagors have not paid the monthly installments of principal, taxes, interest and insurance for 05/01/2008, through the present; the principal balance due on the Note and the Mortgage is $132,000.00, plus interest, costs, advances and fees. Interest accrues pursuant to the note.

(K) Name of present owner(s) of said premises:
   Ida Dorantes

(L) Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated and alleged to be subordinate and inferior to the mortgage of the Plaintiff:

Mortgage Electronic Registration Systems, Inc. , by virtue of a Mortgage executed by Ida Dorantes , dated 04/04/2006, and Recorded/registered on 11/28/2006 in the office of the Recorder/Registrar of Deeds of Cook County, Illinois, as Document No. 0633226214 , to secure a note in the principal sum of $33,000.00;

Taylor, Bean & Whitaker Mortgage Corporation , by virtue of the fact that, upon information and belief, it may be the holder of the note secured by the trust deed recorded as document #0633226214 as referenced further herein.

(M) Names of persons who executed the Note, Assumption Agreement(s), or Personal Guarantee:

Ida Dorantes

Please note that no personal deficiency will be sought against any party who has received a Chapter 7 discharge or who are personally protected by the automatic stay at sale confirmation.

(N) Capacity in which Plaintiff brings this foreclosure: Plaintiff is the Mortgagee under 735 ILCS 5/15-1208.

(O) Facts in support of a redemption period shorter than the longer of 7 months from the date the mortgagor or, if more than one, all the mortgagors have been served with summons or by publication or have otherwise submitted to the jurisdiction of the court, or 3 months from the entry of the judgment of foreclosure, whichever is later, if sought:

The redemption period shall be determined pursuant to 735 ILCS 5/15-1603.

(P) Statement that the right of redemption has been waived by all owners of redemption: There has been no executed waiver of redemption by all owners of redemption, however Plaintiff alleges that it is not precluded from accepting such a waiver of redemption by the filing of this complaint.

(Q) Facts in support of request for attorneys' fees and of costs and expenses, if applicable: The subject mortgage provides for payment of attorney fees, court costs, and expenses in the event of a default under the mortgage.

(R) Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and identity of such receiver, if sought: Unless otherwise alleged, Plaintiff will pray for said relief after the filing of the instant foreclosure action by separate petition if such relief is sought.

(S) Offer to the mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought: No allegation of an offer is made however Plaintiff alleges that it is not precluded from making or accepting such offer by the filing of the instant foreclosure action.

(T) Name or names of defendants whose rights to possess the mortgaged real estate, after the confirmation of a foreclosure sale, are sought to be terminated and, if not elsewhere stated, the facts in support thereof:

Ida Dorantes;

4. Plaintiff avers that in addition to persons designated by name herein and the Unknown Defendants herein before referred to, there are other persons, and/or non-record claimants who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Complaint described, including but not limited to the following:

Unknown Owners and NonRecord Claimants, if any.

That the name of each of such persons is unknown to Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made party defendants to this action by the name and description of UNKNOWN OWNERS and NONRECORD CLAIMANTS.

## REQUEST FOR RELIEF

**WHEREFORE, THE PLAINTIFF REQUESTS:**

(i) A judgment of foreclosure and sale.

(ii) An order granting a shortened redemption period, if sought.

(iii) A personal judgment for deficiency, if applicable and sought, and only against parties who have not received a Chapter 7 bankruptcy discharge who are personally protected by the automatic stay at sale confirmation.

(iv) An order granting possession, if sought.

(v) An order placing the mortgagee in possession or appointing a receiver, if sought.

(vi)   A judgment for attorneys' fees, costs and expenses, if sought.

(vii)   For the Appointment of a Selling Officer, if deemed appropriate by this court.

(vii) Such other and further relief as the Court deems just.

IndyMac Federal Bank FSB  f/k/a IndyMac Bank, F.S.B.

BY: _____
         CODILIS & ASSOCIATES, P.C.
         One of its Attorneys

Bridget M. O'Neill
ARDC# 6282030

Codilis & Associates, P.C.
Attorneys for Plaintiff
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
Cook #21762
14-08-21351

UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 09-07047-JAF
CHAPTER 11 CASE

IN RE:

TAYLOR, BEAN & WHITAKER MORTGAGE CORP.

Debtor.
_____/

STATE OF _____Texas_____
COUNTY OF _____Travis_____

## AFFIDAVIT IN SUPPORT OF MOTION
## FOR RELIEF FROM STAY

BEFORE ME, the undersigned authority, on this day personally appeared

_____Dennis Kirkpatrick_____ on behalf of **ONEWEST BANK, FSB,** who is over

the age of eighteen years, is fully qualified and authorized to give this Affidavit and has personal

knowledge of the matters addressed herein. After being by me duly sworn on her/his oath

deposed and stated:

1. My name is _____Dennis Kirkpatrick_____. I am a _____Vice President_____ for,

   **ONEWEST BANK, FSB,** with regards to this loan with **ONEWEST BANK, FSB.** In

   the course of my employment, I have become familiar with the manner and method in

   which **ONEWEST BANK, FSB,** maintains its books and records in its regular course of

   business. Those books and records are managed by employees and agents whose duty is

   to keep the books and records accurately and completely and to record each event or item

   at or near the time of the event or item so noted.

2. **ONEWEST BANK, FSB** had to retain Counsel to represent it before this Court and is

   incurring legal expenses and attorneys fees of at least $800.00 for handling the Motion

   for Relief from Stay for which it is entitled to reimbursement under the terms of the Note.

09-63857

EXHIBIT C

3.  I have reviewed the books and records which reveal that **ONEWEST BANK, FSB** is the owner and holder of a real estate Note ( Note ) which is secured by a Deed of Trust of even date executed by **IDA DORANTES** on or about August 4, 2006.

4.  As of November 19, 2009, debtor(s) were in default on (17) monthly contractual payments of $838.75 each for the month(s) of (05/1/2008-09/1/2009), (2) monthly contractual payments of $1,803.54 each for the month(s) of (10/1/2009-11/1/2009). As of the date Movant s Motion was filed, the principal balance owed by Debtor(s) to **ONEWEST BANK, FSB** was $132,000.00.

5.  The foregoing facts are of my own personal knowledge and belief, and if called upon to appear as a witness, I could, and would, testify completely thereto. I declare under penalty of perjury that to the best of my knowledge, the foregoing facts are true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

Affiant   Dennis Kirkpatrick
Vice President

Sworn to and subscribed before me this
_____23_____ day of ___Nov_____,2009.
NOTARY PUBLIC, State of _____Texas_____
Commissioned Name of Notary Public _____
Personally known __✓__ or produced identification
Type of Identification Produced _____

KRYSTLE GISSELLE PRICE
Notary Public, State of Texas
My Commission Expires
June 15, 2011

09-63857

9339 Carroll Park Dr, Suite 100  San Diego, CA 92121  t 858.909.4300  f 858.909.2900  www.hanqual.com



**LENDER PROCESSING SERVICES**

# Desktop Valuation ™
POWERED BY APPLIED ANALYTICS

File Number    32756964
Loan Number   ~200310457~

## Client Information
| | |
|---|---|
| Client   ONEWEST BANK, FSB | |
| Branch   FNMA - FORECLOSURE (AUSTIN, TX) | Loan # |
| Fax/Email | Attention:  PARKER, MIJIZA |

## Subject Property Data
| | | |
|---|---|---|
| Borrower DORANTES, IDA | Property Type     SFR | |
| Address   1450 W 112TH PL | APN   25-20-108-019-0000 | |
| City     CHICAGO     State  IL | Zip   60643 | |
| Transfer Date   4/4/2006     Price   $165,000 | Buyer/Seller  LUSK, DAVID/LUSK, DAVID E JR | |

## Regional Housing Market Summary
| | | | |
|---|---|---|---|
| Population | 50236 | Population Density (per sq mi) | 6755.9 |
| Median Home Value | $150,000 | Median Household Income | $67,048 |
| Housing Units (per sq mi) | 2351.5 | Per Capita Income | $28,680 |
| Median Rent | $159 | Average Age | 39.7 |

## Comparable Sales Data
| | Address | Price | Date | Dist-Mi | Site-Ac | Age | Bed | Bath | GLA | Bsmt | Pool |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sub | 1450 W 112TH PL | 165000 | 4/4/2006 | 0 | 0.09 | 1932 | 4 | 1 | 1145 | No | No |
| 1 | 11549 S LAFLIN ST | 85000 | 4/10/2009 | 0.38 | 0.09 | 1965 | 0 | 1 | 900 | No | No |
| 2 | 11649 S THROOP ST | 88000 | 5/7/2009 | 0.56 | 0 | 1962 | 3 | 1 | 1000 | No | No |
| 3 | 621 W 116TH ST | 83500 | 8/4/2009 | 1.14 | 0 | 1950 | 4 | 1 | 1250 | No | No |

## Comparable Sales Analysis
| | Subject | Sale 1 | | Sale 2 | | Sale 3 | |
|---|---|---|---|---|---|---|---|
| Street Address | 1450 W 112TH PL | 11549 S LAFLIN ST | | 11649 S THROOP ST | | 621 W 116TH ST | |
| City | CHICAGO | CHICAGO | | CHICAGO | | CHICAGO | |
| State/Zip | IL    60643 | IL    60643 | | IL    60643 | | IL    60628 | |
| Sale Price | 165000 | 85000 | 0 | 88000 | 0 | 83500 | 0 |
| Sale Date | 4/4/2006 | 4/10/2009 | 0 | 5/7/2009 | 0 | 8/4/2009 | 0 |
| Distance (mi) | N/A | 0.38 | 0 | 0.56 | 0 | 1.14 | 0 |
| Site Size (acres) | 0.09 | 0.09 | 0 | 0 | 0 | 0 | 0 |
| Age (Years) | 77 | 44 | -3300 | 47 | -3000 | 59 | -1800 |
| Bedrooms | 4 | 0 | 0 | 3 | 1000 | 4 | 0 |
| Baths | 1 | 1 | 0 | 1 | 0 | 1 | 0 |
| Living Area (s.f.) | 1145 | 900 | 3700 | 1000 | 2200 | 1250 | -1600 |
| Basement | No | No | 0 | No | 0 | No | 0 |
| Pool | No | No | 0 | No | 0 | No | 0 |
| Adjusted Values   Net Adj (%) | | 0.5 | 85400 | 0.2 | 88200 | -4.1 | 80100 |
| Gross Adj (%) | | 8.2 | | 7 | | 4.1 | |

EXHIBIT D

9339 Carroll Park Dr, Suite 100  San Diego, CA 92121  t 858.909.4300  f 858.909.2900  www.hanqual.com

**Desktop** Valuation ™
POWERED BY APPLIED ANALYTICS

File Number        32756964
Loan Number     ▪▪▪▪▪▪▪▪▪

## Comparable Location Map



## Subject Property Satellite Image

*Photo Not Available*

## Appraiser Reconciliation

The appraiser has researched the sales history of the subject property for the past 3 years:

[✓] The property has not transferred ownership during this period

[ ] The subject last transferred for  N/A          on date  N/A

**Comments:**

Public records, MLS and Realtor.com.  The subject conforms with the neighborhood price, size and condition with no negative external influences noted.  The local economy is slow, unemployment is high, prices are declining and excess REO competition drives this market.  Based on a review of the data, home prices appear to be trending downward at this time. Typical marketing times average at 90-120 days and the homes that best compare to the subject predominate from $75,000 to $95,000.

The subject is an older home that has been well maintained and updated. It is in good condition. Interior photos from a prior report indicate the interior is updated. The recent exterior photo shows home to be in good condition.

The supplemental data provided were the most similar sales with emphasis placed on proximity and date of sale. The most recent were given most weight as they best reflect the current market, important in this market which is still in decline. Current listings were also considered, to gain further insight into current market conditions. This area is depressed, many sales and listings in the area available for less then the value of this home but are inferior in condition and many are not habitable. These sales best reflect the subjects condition and appeal to the market under the current conditions. Value determined to be $85,000.

| | | |
|---|---|---|
| Based on this desktop analysis, our estimate of the market value for the subject property is: | $85,000 | Effective date of desktop analysis:    09/11/2009 |

9339 Carroll Park Dr, Suite 100  San Diego, CA 92121  t 858.909.4300  f 858.909.2900  www.hanqual.com

## DesktopValuation™
POWERED BY APPLIED ANALYTICS

File Number    32756964
Loan Number    3002████████

### Subject Property Assessment

| | | | | | |
|---|---|---|---|---|---|
| Subject location | — | # Prop. for sale on subject street | 0 | Neighborhood Influences (<½ mi of subject) | |
| Property type | SFR | Broken doors/windows | No | Overhead utility lines | No |
| Able to view property | Yes | Construction in process | No | Commercial uses | No |
| Gated community | No | Roof damage | No | Boarded-up homes | No |
| Exterior condition | Fair | Structural damage | No | Railroad tracks | No |
| Conforms to neigh. | Yes | Siding damage | No | Freeway/highway | No |
| Property maintenance | Poor | Fire damage | No | Airport/flight path | No |
| Garage condition | Fair | Flood/water damage | No | Waste mgmt. facilities | No |

### Subject Property Front Photograph



The exterior condition of the subject property, based on this photograph, has been considered in the overall analysis by the LPS Applied Analytics analyst. No other subject attributes are confirmed/denied, unless obvious to the reviewer as a result of this photograph.

### Subject Property Street Scene



Limiting Conditions and Certification incorporated and made a part of this report are on file with LPS Applied Analytics and available through our internet web link www.hanqual.com/Downloads/DVILimitingConditions.pdf. Or you may contact LPS Applied Analytics at 1-800-282-1104 to receive a copy.