FILED VIA MAIL

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA DEC 10 2009
Jacksonville Division

CLERK, U.S. BANKRUPTCY
COURT, TAMPA FLORIDA

CASE NO. **3:09-BK-07047-JAF**

Chapter 11

In re:   Taylor, Bean and Whitaker Mortgage Corporation

Debtor.

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

COMES NOW, the Movant, Joe Johnson, and respectfully MOVE this Honorable Court for Relief from the Automatic Stay imposed in the above captioned matter, and for that he states:

1.       On November 3, 2009, many months *after* the Debtor had filed the Chapter 11 Bankruptcy Petition on August 24, 2009, the Debtor entered into an agreement with the movant to sell to the movant property that it represented it owned located at 5822 North Holly Springs Drive, #1-6, Capitol Heights, Maryland   20743. See Exhibit 1.

2.       During the course of negotiating the sell of that property, the Debtor, along with others, devised a scheme and artifice to defraud the movant of money and property by means of false and fraudulent pretenses, representations and promises, the substance of which scheme and artifice to defraud are more fully described in a civil suit the movant filed against the Debtor in the Circuit Court for Prince George's County on November 17, 2009. See Exhibit 2.

3.       That suit seeks, among other things, monetary damages against the Debtor including an order from the Circuit Court requiring the Debtor to convey the property the Debtor agreed on November 3, 2009 to sell to the movant.

4.       By letter dated December 2, 2009, an individual identifying himself as Jeffrey W. Kelley, Special Counsel for Debtor, advised the movant that he had received a copy of the

Complaint that the movant had filed against the Debtor and that the movant's action in filing the lawsuit against the Debtor was a violation of the automatic stay imposed in favor of the Debtor by virtue of 11 U.S.C. section 362(a)(3). Mr. Kelley requested that the civil action against the Debtor be dismissed. See Exhibit 3.

5.      By email dated December 4, 2009, the movant denied that request and pointed out that a claim, as here, that arises *after* filing a bankruptcy petition and before the case is closed or dismissed is not affected by the automatic stay. See Sanchez v. Gordon, 241 F.3d 1148, 1150-1151 (9th Cir. 2001); Turner Broad. Sys., Inc. v. Sanyo Elec., Inc., 33 Bankr. 996, 999-1000 (Bankr. N.D. Ga. 1983), *affd.* without published opinion 742 F.2d 1465 (11th Cir. 1984); *In re Powell*, 27 Bankr. 146, 147 (Bankr. W.D. Mo. 1983); *In re Anderson*, 23 Bankr. 174, 175 (Bankr. N.D. Ill. 1982); *In re York*, 13 Bankr. 757, 758-59 (Bankr. D. Me. 1981); see Exhibit 4.

6.      As is alleged in the complaint, on October 27, 2009, the Debtor (through a realtor) advertised and offered to the general public property for sale that it represented it was the legal owner; more specifically being 5822 N Holly Springs Drive, #1-6, Capitol Heights, MD   20743. On October 29, 2009, the movant, in response to that advertisement, made the Debtor an offer to purchase that property. The Debtor, in concert with others, made material misrepresentations and failed to make certain disclosures to the movant to induce the contract which conduct gave rise to the claim filed in the Circuit Court against the Debtor.

7.      The claim clearly arose many months *after* the Debtor had filed the bankruptcy petition in this case on August 24, 2009.  Thus, the automatic stay provisions of the Bankruptcy code are inapplicable to the claim the movant filed against the Debtor in the Circuit Court for Prince George's County.

8.      Moreover, and as the complaint also alleges, had the Debtor disclosed, among other things, the fact that it had filed bankruptcy back in August, the movant would not had offered to purchase the property from the Debtor on October 29th. The knowing and willful failure of the Debtor to disclose this fact was material and is tantamount to fraud.

9.      The movant first became aware of the Debtor's financial status following a background investigation that was initiated in the wake of the events leading to the filing of the civil suit in the Circuit Court for Prince George's County.

10.      It should also be noted that the same property the Debtor agreed to sell to the movant on November 3, 2009, is listed among the Bulk Sale of Certain REO Assets the Debtor agreed to sell to Selene on October 21, 2009. The Debtor did not disclose this to the movant nor Selene at or before the time it agreed to sale the property to the movant. This was discovered by the movant after the background investigation was initiated into the Debtor's financial status. See Real Estate Purchase and Sale Agreement between Taylor, Bean & Whitaker Mortgage Corporation and Selene RMOF REO Acquisition II LLC; Annexed as Exhibit 5.

11.      It appears as though the Debtor may have attempted to engage in the forbidden conduct of "flipping" this property which is against HUD regulations. See 24 CFR Part 203.

12.      Notwithstanding the Debtor's fraudulent conduct, it is the movant's contention that the automatic stay provisions of the Bankruptcy code are inapplicable to the claim the movant filed against the Debtor in the Circuit Court for Prince George's County, however, out of the abundance of caution, the movant asks this Court to enter an appropriate order granting the movant relief from the automatic stay provisions of the Bankruptcy code.

## CONCLUSION

For the foregoing reasons, the movant respectfully request that this Court will enter an appropriate order granting the movant relief from the automatic stay provisions of the Bankruptcy code.

Respectfully submitted,

December 8, 2009

Joe Johnson
2600 Brinkley Road PH 1005
Fort Washington, MD  20744
301-686-0531

## CERTIFICATE OF SERVICE

On December 8, 2009, a copy of the foregoing Motion was mailed to all parties and counsel of record, by electronic email and regular, first-class mail, postage prepaid.

Joe Johnson

# EXHIBIT 1



# RESIDENTIAL CONTRACT OF SALE

*This is a Legally Binding Contract; If Not Understood, Seek Competent Legal Advice.*

**THIS FORM IS DESIGNED AND INTENDED FOR THE SALE AND PURCHASE OF IMPROVED SINGLE FAMILY RESIDENTIAL REAL ESTATE LOCATED IN MARYLAND ONLY.** *FOR OTHER TYPES OF PROPERTY INCLUDE APPROPRIATE ADDENDA.*

**TIME IS OF THE ESSENCE.** Time is of the essence of this Contract. The failure of Seller or Buyer to perform any act as provided in this Contract by a prescribed date or within a prescribed time period shall be a default under this Contract and the non-defaulting party, upon written notice to the defaulting party, may declare this Contract null and void and of no further legal force and effect. In such event, all Deposit(s) shall be disbursed in accordance with Paragraph 19 of this Contract.

**1. DATE OF OFFER:** _____ October 28, 2009 _____ .

**2. SELLER:** _____ owner of record _____

**3. BUYER:** _____ Joe Johnson _____

**4. PROPERTY:** Seller does sell to Buyer and Buyer does purchase from Seller, all of the following described Property (hereinafter "Property") known as _____ 5822 HOLLY SPRINGS DR #1-6 _____ located in ___ Capital Heights ___ City/County, Maryland, Zip ___ 20743 ___ , together with the improvements thereon, and all rights and appurtenances thereto belonging.

**5. ESTATE:** The Property is being conveyed: ___ X ___ in fee simple or _____ subject to an annual ground rent, now existing or to be created, in the amount of _____ _____ Dollars ($ _____ ) payable semi-annually, as now or to be recorded among the Land Records of _____ City/County, Maryland.

**6. PURCHASE PRICE:** The purchase price is **One Hundred Ten Thousand** _____ Dollars ($ 110,000.00 ).

**7. PAYMENT TERMS:** The payment of the purchase price shall be made by Buyer as follows:
(a) An initial Deposit by way of _____ check _____ in the amount of **One Thousand** _____ Dollars ($ 1,000.00 ) at the time of this offer.
(b) An additional Deposit by way of _____ in the amount of _____ _____ Dollars ($ _____ ) to be paid within _____ ( _____ ) days from the Date of Contract Acceptance.
(c) All Deposits will be held in escrow by: _____ Key Realty Group, LLC
   (If not a Maryland licensed real estate broker, the parties may execute a separate escrow deposit agreement.)
(d) The purchase price less any and all Deposits shall be paid in full by Buyer in cash, wired funds, bank check, certified check or other payment acceptable to the settlement officer at settlement.
(e) Buyer and Seller instruct broker named in paragraph (c) above to place the Deposits in: **(Check One)**
   ☒ A non-interest bearing account;
   OR ☐ An interest bearing account, the interest on which, in absence of default by Buyer, shall accrue to the benefit of Buyer. Broker may charge a fee for establishing an interest bearing account.

**8. SETTLEMENT:** Date of Settlement _____ December 15, 2009 _____ or sooner if agreed to in writing by the parties.

**9. FINANCING:** Buyer's obligation to purchase the Property is contingent upon Buyer obtaining a written commitment for a loan secured by the Property as follows:
**(Check)** ☐ Conventional Loan as follows:
   Loan Amount $ 110,000.00 _____
   Term of Note _____ 30 _____ Years
   Amortization _____ Years
   Interest Rate _____ %
   Loan Program _____
   Loan Origination/Discount Fees (as a % of loan amount):
      Buyer agrees to pay _____ %;
      Seller agrees to pay _____ %.
      Buyer shall receive the benefit of any reduction in fees.

☒ FHA Financing Addendum
☐ Gift of Funds Contingency Addendum
☐ Owner Financing Addendum
☐ VA Financing Addendum
☐ Assumption Addendum
☐ OTHER: _____

☐ No Financing Contingency

Buyer ___ JJ ___ / _____     Page 1 of 11  10/09     Seller _____ / _____

**10. FINANCING APPLICATION AND COMMITMENT:** Buyer agrees to make a written application for the financing as herein described within _____ Fifteen _____ ( ___15___ ) days from the Date of Contract Acceptance. If such written financing commitment is not obtained by Buyer within _____ Fifteen _____ ( ___15___ ) days from the Date of Contract Acceptance: (1) Seller, at Seller's election and upon written notice to Buyer, may declare this Contract null and void and of no further legal effect; or (2) Buyer, upon written notice to Seller, which shall include written evidence from the lender of Buyer's inability to obtain financing as provided in Paragraph 9 of this Contract, may declare this Contract null and void and of no further legal effect. In either case, the deposit shall be disbursed in accordance with the Deposit paragraph of this Contract. If Buyer has complied with all of Buyer's obligations under this Contract, including those with respect to applying for financing and seeking to obtain financing, then the Release of Deposit agreement shall provide that the deposit shall be returned to Buyer.

**11. ALTERNATE FINANCING:** Provided Buyer timely and diligently pursues the financing described in Paragraph 9 "Financing"; Paragraph 10 "Financing Application and Commitment"; and the provisions of Paragraph 28 "Buyer Responsibility", Buyer, at Buyer's election, may also apply for alternate financing. If Buyer, at Buyers sole option, obtains a written commitment for financing in which the loan amount, term of note, amortization period, interest rate, down payment or loan program differ from the financing as described in Paragraph 9, or any addendum to this Contract, the provision of Paragraph 10 or any addendum to this Contract shall be deemed to have been fully satisfied. Such alternate financing may not increase costs to Seller or exceed the time allowed to secure the financing commitment as provided in Paragraph 10, or any addendum to this Contract.

**12. HOME AND/OR ENVIRONMENTAL INSPECTION:** Buyer acknowledges, subject to Seller acceptance, that Buyer is afforded the opportunity, at Buyer's sole cost and expense, to condition Buyer's purchase of the Property upon a Home Inspection and/or Environmental Inspection in order to ascertain the physical condition of the Property or the existence of environmental hazards. If Buyer desires a Home Inspection and/or Environmental Inspection contingency, such contingency must be included in an addendum to this Contract. Buyer and Seller acknowledge that Brokers, agents or subagents are not responsible for the existence or discovery of property defects.

Inspection(s) Addenda Attached ___*JJ*___                        Inspection(s) Declined _____
                                     Buyer          Buyer                                          Buyer          Buyer

**13. INCLUSIONS/EXCLUSIONS:** Included in the purchase price are all permanently attached fixtures, including all smoke detectors. Certain other **now existing items** which may be considered personal property, whether installed or stored upon the property, are included if box below is checked.

| INCLUDED | INCLUDED | INCLUDED | INCLUDED |
|---|---|---|---|
| ☐ Alarm System | ☐ Exhaust Fan(s) # _____ | ☐ Pool, Equip. & Cover | ☐ Trash Compactor |
| ☐ Built-in Microwave | ☐ Exist. W/W Carpet | ☐ Refrigerator(s) # _____ | ☐ Wall Oven(s) # _____ |
| ☐ Ceiling Fan(s) # _____ | ☐ Fireplace Screen/Doors | ☐ w/ice maker | ☐ Water Filter |
| ☐ Central Vacuum | ☐ Freezer | ☐ Satellite Dish | ☐ Water Softener |
| ☐ Clothes Dryer | ☐ Furnace Humidifier | ☐ Screens | ☐ Window A/C Unit(s) |
| ☐ Clothes Washer | ☐ Garage Opener(s) # _____ | ☐ Shades/Blinds | # _____ |
| ☐ Cooktop | w/remote(s) # _____ | ☐ Storage Shed(s) # _____ | ☐ Window Fan(s) |
| ☐ Dishwasher | ☐ Garbage Disposer | ☐ Storm Doors | # _____ |
| ☐ Drapery/Curtain Rods | ☐ Hot Tub, Equip. & Cover | ☐ Storm Windows | ☐ Wood Stove |
| ☐ Draperies/Curtains | ☐ Intercom | ☐ Stove or Range | |
| ☐ Electronic Air Filter | ☐ Playground Equipment | ☐ T.V. Antenna | |

ADDITIONAL INCLUSIONS (SPECIFY): _____

ADDITIONAL EXCLUSIONS (SPECIFY): _____

**14. AGRICULTURALLY ASSESSED PROPERTY:** The Property, or any portion thereof, may be subject to an Agricultural Land Transfer Tax as imposed by Section 13-301 et seq. of the Tax-Property Article, Annotated Code of Maryland, by reason of the Property's having been assessed on the basis of agricultural use. Agricultural taxes assessed as a result of this transfer shall be paid by _____.

**15. FOREST CONSERVATION AND MANAGEMENT PROGRAM:** Buyer is hereby notified that this transfer may be subject to the Forest Conservation and Management Program imposed by Section 8-211 of the Tax-Property Article, Annotated Code of Maryland. Forest Conservation and Management program taxes assessed as a result of this transfer shall be paid by the _____.

Buyer [DS *JJ*] / _____                    Page 2 of 11    10/09                    Seller _____ / _____

**16. LEAD-BASED PAINT:**

A. FEDERAL LEAD-BASED PAINT LAW: Title X, Section 1018, the Residential Lead-Based Paint Hazard Reduction Act of 1992 (the Act), requires the disclosure of information regarding lead-based paint and lead-based paint hazards in connection with the sale of residential real property constructed prior to 1978. The disclosure shall be made on a Lead-Based Paint Disclosure form meeting federal disclosure requirements. **Seller and any agent involved in the transaction are required to retain a copy of the completed Lead-Based Paint Disclosure form for a period of three (3) years following the date of settlement. A seller who fails to give the required Lead-Based Paint Disclosure form and EPA pamphlet may be liable under the Act for three times the amount of damages and may be subject to both civil and criminal penalties.** Unless otherwise exempt, compliance with the Act is required for housing constructed prior to 1978.

Seller represents and warrants to Buyer, Broker(s), Broker(s)' agents and subagents, intending that they rely upon such warranty and representation, that the property **(Seller to initial applicable line):**

_____ / _____ was constructed prior to 1978;
_____ / _____ date of construction is uncertain;
_____ / _____ was constructed in 1978 or later.

If the Property was constructed prior to 1978 or if the date of construction is uncertain, as indicated by Seller's initial above, Buyer and Seller mutually agree that the requirements of the Act shall apply to the sale of the Property. Buyer and Seller acknowledge that the real estate brokers and salespersons involved in the sale of the Property have no duty to ascertain or verify the date of construction and assume no such duty or responsibility. Buyer and Seller intend that compliance with the Act is an express condition of the formation of a binding and enforceable contract by and between the parties and each unto the other agree, represent and warrant, that no binding and enforceable contract shall exist unless the requirements of the Act have been complied with prior to the execution of this Contract by Buyer and Seller.

B. MARYLAND LEAD POISONING PREVENTION PROGRAM: Under the Maryland Lead Poisoning Prevention Program (the "Program"), any residential dwelling constructed prior to 1950 that is leased for residential purposes is required to be registered with the Maryland Department of the Environment (MDE). Any residential dwelling constructed between 1950 and 1978 that is leased for residential purposes may be registered with the MDE at the election of the owner.

Seller hereby discloses that the property *(Seller to initial applicable lines):*

_____ / _____ was constructed prior to 1950; OR
_____ / _____ was constructed between 1950 and 1978; OR
_____ / _____ was constructed after 1978; **AND**

If constructed in 1978 or earlier, _____ / _____ is or _____ / _____ is not registered in the Program.

If the Property was constructed prior to 1950 and Buyer intends to lease the Property effective immediately following settlement or in the future, Buyer shall be required to register the Property with the Maryland Department of the Environment within thirty (30) days following the date of settlement or within thirty (30) days following the conversion of the Property to rental property as required by the Maryland Program. Buyer shall be responsible for full compliance under the Maryland Program, including but not limited to, registration; inspections; lead-paint risk reduction and abatement procedures; payment of all fees, costs and expenses; and the notice requirements to tenants as well as the requirements of qualified offers.

If the Property is registered under the Maryland Program as indicated above, Seller further discloses to Buyer that an event as defined under the Maryland Program (including, but not limited to, notice of the existence of lead-based paint hazards or notice of elevated blood lead levels from a tenant or state, local or municipal health agency) *(Seller to initial applicable line)* _____ / _____ has; or _____ / _____ has **not** occurred, which obligates Seller to perform either the modified or full risk reduction treatment of the Property as required under the Maryland Program. If an event has occurred that obligates Seller to perform either the modified or full risk reduction treatment of the Property, Seller hereby discloses the scope of such treatment as follows:

_____

_____

If such event has occurred, Seller *(Seller to initial applicable line)* _____ / _____ will; OR _____ / _____ will **not** perform the required treatment prior to transfer of title of the Property to Buyer.

Buyer _____ / _____                Page 3 of 11    10/09                Seller _____ / _____

**17. ADDENDA:** The Addenda checked below, which are hereby attached, are made a part of this Contract:

☐ Affiliated Business Disclosure Notice
☐ As Is
☐ Cash/Conventional Financing Appraisal Contingency
☐ Condominium Resale Notice
☐ Conservation Easement
☐ Disclosure of Licensee Status
☒ First-Time Maryland Home Buyer Transfer & Recordation Tax
☐ Homeowners Association Notice
☐ Kickout
☐ Lead-Based Paint Hazard Inspection
☐ Lead-Based Paint and Lead-Based Hazards Disclosure of Information
☐ Local City/County Certifications/Registrations
☐ Local City/County Notices/Disclosure

☐ Maryland Non-Resident Seller Transfer Withholding Tax
☐ Notice to Buyer and Seller – Maryland Residential Real Property Disclosure/Disclaimer Act
☐ On-Site Sewage Disposal System Inspection
☐ Property Subject to Ground Rent
☐ Property Inspections
☐ Purchase Price Escalation
☐ Short Sale
☐ Sale, Financing, Settlement or Lease of Other Real Estate
☐ Seller's Purchase of Another Property
☐ Third Party Approval
☐ Water Quality

☐ Other Addenda/Special Conditions: _____

**18. WOOD DESTROYING INSECT INSPECTION:** Buyer, at Buyer's expense, (if VA, then at Seller's expense) is authorized to obtain a written report on the state regulated form from a Maryland licensed pest control company that, based on a careful visual inspection, there is no evidence of termite or other wood-destroying insect infestation in the residence or within three (3) feet of the residence; and damage due to previous infestation has been repaired. The provisions of this paragraph also shall apply to: (1) the garage or within three (3) feet of the garage (whether attached or detached); (2) any outbuildings located within three feet of the residence or garage; and (3) a maximum of ten (10) linear feet of the nearest portion of a fence on Seller's Property within three feet of the residence or garage. If there is evidence of present infestation as described above, or if damage caused by present or prior infestation is discovered, Seller, at Seller's expense, shall repair any damage caused by present or prior infestation and have the present infestation treated by a licensed pest control company. If the cost of treatment and repair of such damage exceeds 2% of the purchase price, Seller may, at Seller's option, cancel this Contract, unless Buyer, at Buyer's option should choose to pay for the cost of treatment and repairs exceeding 2% of the purchase price, then this Contract shall remain in full force and effect. If such report reveals damage for which the cost of treatment and repair exceeds 2% of the purchase price, Seller's decision regarding treatment and repair of damage shall be communicated in writing to Buyer within five (5) days from receipt of the report, after which Buyer shall respond to Seller in writing with Buyer's decision within three (3) days from receipt of Seller's notification of Seller's decision. If Seller does not notify Buyer in writing of Seller's decision within five (5) days from receipt of report, Buyer may, at Buyer's option, pay for the cost of treatment and repairs exceeding 2% of the purchase price. If Buyer does not want to pay for the cost of treatment and repairs exceeding 2% of the purchase price, Buyer may terminate this Contract upon written notice delivered to Seller. In the event this Contract is terminated under the terms of this paragraph, the Deposit(s) shall be disbursed in accordance with the Deposit paragraph of this Contract.

**19. DEPOSIT:** If the Deposit is held by a Broker as specified in Paragraph 7(c) of this Contract, Buyer hereby authorizes and directs Broker to hold the Deposit instrument without negotiation or deposit until the parties have executed and accepted this Contract. Upon acceptance, the initial Deposit and additional Deposits (the "Deposit"), if any, shall be placed in escrow as provided in Paragraph 7(e) of this Contract and in accordance with the requirements of Section 17-502(b)(1) of the Business Occupations and Professions Article, Annotated Code of Maryland. If Seller does not execute and accept this Contract, the initial Deposit instrument shall be promptly returned to Buyer. The Deposit shall be disbursed at settlement. In the event this Contract shall be terminated or settlement does not occur, Buyer and Seller agree that the Deposit shall be disbursed by Broker only in accordance with a Release of Deposit agreement executed by Buyer and Seller. In the event Buyer and/or Seller fail to complete the real estate transaction in accordance with the terms and conditions of this Contract, and either Buyer or Seller shall be unable or unwilling to execute a Release of Deposit agreement, Buyer and Seller hereby acknowledge and agree that Broker may distribute the Deposit in accordance with the provisions of Section 17-505(b) of the Business Occupations and Professions Article, Annotated Code of Maryland.

Buyer _____ / _____

Seller _____ / _____

Joe Johnson.zf

**20. DEED AND TITLE:** Upon payment of the purchase price, a deed for the Property containing covenants of special warranty and further assurances (except in the case of transfer by personal representative of an estate), shall be executed by Seller and shall convey the Property to Buyer. Title to the Property, including all chattels included in the purchase, shall be good and merchantable, free of liens and encumbrances except as specified herein; except for uses and occupancy restrictions of public record which are generally applicable to properties in the immediate neighborhood or the subdivision in which the Property is located and publicly recorded easements for public utilities and any other easements which may be observed by an inspection of the Property. Buyer expressly assumes the risk that restrictive covenants, zoning laws or other recorded documents may restrict or prohibit the use of the Property for the purpose(s) intended by Buyer. In the event Seller is unable to give good and merchantable title or such as can be insured by a Maryland licensed title insurer, with Buyer paying not more than the standard rate as filed with the Maryland Insurance Commissioner, Seller, at Seller's expense, shall have the option of curing any defect so as to enable Seller to give good and merchantable title or, if Buyer is willing to accept title without said defect being cured, paying any special premium on behalf of Buyer to obtain title insurance on the Property to the benefit of Buyer. In the event Seller elects to cure any defects in title, this Contract shall continue to remain in full force and effect; and the date of settlement shall be extended for a period not to exceed fourteen (14) additional days. If Seller is unable to cure such title defect(s) and is unable to obtain a policy of title insurance on the Property to the benefit of Buyer from a Maryland licensed title insurer, Buyer shall have the option of taking such title as Seller can give, or terminating this Contract and being reimbursed by Seller for cost of searching title as may have been incurred not to exceed 1/2 of 1% of the purchase price. In the latter event, there shall be no further liability or obligation on either of the parties hereto; and this Contract shall become null and void; and all Deposit(s) shall be disbursed in accordance with the Deposit paragraph of this Contract. In no event shall Broker(s) or their agent(s) have any liability for any defect in Seller's title.

**21. CONDITION OF PROPERTY AND POSSESSION:** At settlement, Seller shall deliver possession of the Property and shall deliver the Property vacant, clear of trash and debris, broom clean and in substantially the same condition as existed on the Date of Contract Acceptance. All electrical, heating, air conditioning, plumbing (including well and septic), and any other mechanical systems and related equipment, appliances and smoke detector(s) included in this Contract shall be in working condition. Buyer reserves the right to inspect the Property within five (5) days prior to settlement. **EXCEPT AS OTHERWISE SPECIFIED IN THIS CONTRACT, INCLUDING THIS PARAGRAPH, THE PROPERTY IS SOLD "AS IS".** The obligations of Seller as provided in this paragraph shall be in addition to any Disclosure and Disclaimer Statement as required by Section 10-702, Real Property Article, Annotated Code of Maryland and any provision of any inspection contingency addendum made a part of this Contract.

**22. ADJUSTMENTS:** Ground rent, homeowner's association fees, rent and water rent shall be adjusted and apportioned as of date of settlement; and all taxes, general or special, and all other public or governmental charges or assessments against the Property which are or may be payable on a periodic basis, including Metropolitan District Sanitary Commission, Washington Suburban Sanitary Commission, or other benefit charges, assessments, liens or encumbrances for sewer, water, drainage, paving, or other public improvements completed or commenced on or prior to the date hereof, or subsequent thereto, are to be adjusted and apportioned as of the date of settlement and are to be assumed and paid thereafter by Buyer, whether assessments have been levied or not as of date of settlement if applicable by local law. Any heating or cooking fuels remaining in supply tank(s) at time of settlement shall become the property of Buyer.

**23. SETTLEMENT COSTS:** Buyer agrees to pay all settlement costs and charges including, but not limited to, all Lender's fees in connection herewith, including title examination and title insurance fees, loan insurance premiums, all document preparation and recording fees, notary fees, survey fees where required, and all recording charges, except those incident to clearing existing encumbrances or title defects, except if Buyer is a Veteran obtaining VA financing, those prohibited to be paid by a Veteran obtaining VA financing, which prohibited charges shall be paid by Seller.

**24. TRANSFER CHARGES:**
**A. IN GENERAL.** Section 14-104(b) of the Real Property Article, Annotated Code of Maryland provides that, unless otherwise negotiated in the contract or provided by State or local law, the cost of any recordation tax or any State or local Transfer Tax shall be shared equally between the Buyer and Seller.

**B. FIRST-TIME BUYER.** Under Section 14-104(c) of the Real Property Article, the entire amount of recordation and local transfer tax shall be paid by the Seller of property that is sold to a first-time Maryland homebuyer, unless there is an express agreement that the recordation tax or any state or local transfer tax will not be paid entirely by the Seller.

*RECORDATION AND LOCAL TRANSFER TAX.* If the Buyer is a first-time Maryland homebuyer, Buyer and Seller expressly agree, in accordance with Section 14-104(c) of the Real Property Article, Annotated Code of Maryland, that payment of recordation tax and local transfer tax shall be shared equally between the Buyer and Seller unless a "First-time Maryland Homebuyer Transfer and Recordation Tax Addendum" is attached, which contains a different express agreement.

Buyer _____/_____        Page 5 of 11   10/09        Seller _____/_____

Joe Johnson.zf

*STATE TRANSFER TAX:* Under Section 13-203(b) of the Tax-Property Article, Annotated Code of Maryland, the amount of state transfer tax due on the sale of property to a first-time Maryland homebuyer is reduced from 0.50% to 0.25% and shall be paid entirely by the Seller. Buyer is hereby notified that to ensure receipt of the above reduction, Buyer should so indicate on Page 10 of this Contract and complete the required affidavit at settlement indicating that the Buyer is a first-time Maryland homebuyer.

**25. BROKER LIABILITY:** Brokers, their agents, subagents and employees do not assume any responsibility for the condition of the Property or for the performance of this Contract by any or all parties hereto. By signing this Contract, Buyer and Seller acknowledge that they have not relied on any representations made by Brokers, or any agents, subagents or employees of Brokers, except those representations expressly set forth in this Contract.

**26. BROKER'S FEE:** All parties irrevocably instruct the settlement officer to collect the fee or compensation and disburse same according to the terms and conditions provided in the listing agreement and/or agency representation agreement. Settlement shall not be a condition precedent to payment of compensation.

**27. SELLER RESPONSIBILITY:** Seller agrees to keep existing mortgages free of default until settlement. All violation notices or requirements noted or issued by any governmental authority, or actions in any court on account thereof, against or affecting the Property at the date of settlement of this Contract, shall be complied with by Seller and the Property conveyed free thereof. The Property is to be held at the risk of Seller until legal title has passed or possession has been given to Buyer. If, prior to the time legal title has passed or possession has been given to Buyer, whichever shall occur first, all or a substantial part of the Property is destroyed or damaged, without fault of Buyer, then this Contract, at the option of Buyer, upon written notice to Seller, shall be null and void and of no further effect, and the deposits shall be disbursed in accordance with the Deposit paragraph of this Contract.

**28. BUYER RESPONSIBILITY:** If Buyer has misrepresented Buyer's financial ability to consummate the purchase of the Property, or if this Contract is contingent upon Buyer securing a written commitment for financing and Buyer fails to apply for such financing within the time period herein specified, or fails to pursue financing diligently and in good faith, or if Buyer makes any misrepresentations in any document relating to financing, or takes (or fails to take) any action which causes Buyer's disqualification for financing, then Buyer shall be in default; and Seller may elect by written notice to Buyer, to terminate this Contract and/or pursue the remedies set forth under the Default paragraph of this Contract.

**29. HOMEOWNER'S ASSOCIATION:** The Property is not part of a development subject to the imposition of mandatory fees as defined by the Maryland Homeowner's Association Act, unless acknowledged by attached addendum.

**30. GROUND RENT:** If the Property is subject to ground rent and the ground rent is not timely paid, the ground lease holder (i.e., the person to whom the ground rent is payable) may bring an action under Section 8-402.3 of the Real Property Article, Annotated Code of Maryland. As a result of this action, a lien may be placed upon the property. If the Property is subject to ground rent, Sections 14-116 and 14-116.1 of the Real Property Article provide the purchaser, upon obtaining ownership of the Property, with certain rights and responsibilities relative to the ground rent. (If the Property is subject to ground rent: See Property Subject to Ground Rent Addendum.)

**31. SALE/SETTLEMENT OR LEASE OF OTHER REAL ESTATE:** Neither this Contract nor the granting of Buyer's loan referred to herein is to be conditioned or contingent in any manner upon the sale, settlement and/or lease of any other real estate unless a contingency for the sale, settlement and/or lease of other real estate is contained in an addendum to this Contract. Unless this Contract is expressly contingent upon the sale, settlement and/or lease of any other real estate, Buyer shall neither apply for nor accept a financing loan commitment which is contingent upon or requires as a pre-condition to funding that any other real estate be sold, settled and/or leased.

**32. LEASES:** Seller may neither negotiate new leases nor renew existing leases for the Property which extend beyond settlement or possession date without Buyer's written consent.

**33. DEFAULT:** Buyer and Seller are required and agree to make full settlement in accordance with the terms of this Contract and acknowledge that failure to do so constitutes a breach hereof. If Buyer fails to make full settlement or is in default due to Buyer's failure to comply with the terms, covenants and conditions of this Contract, the initial Deposit and additional Deposits (the "Deposit") may be retained by Seller as long as a Release of Deposit Agreement is signed and executed by all parties, expressing that said Deposit may be retained by Seller. In the event the parties do not agree to execute a Release of Deposit Agreement, Buyer and Seller shall have all legal and equitable remedies. If Seller fails to make full settlement or is in default due to Seller's failure to comply with the terms, covenants and conditions of this Contract, Buyer shall be entitled to pursue such rights and remedies as may be available, at law or in equity, including, without

Buyer _JJ_ / _____

Seller _____ / _____

Joe Johnson.zf

limitation, an action for specific performance of this Contract and/or monetary damages. In the event of any litigation or dispute between Buyer and Seller concerning the release of the Deposit, Broker's sole responsibility may be met, at Broker's option, by paying the Deposit into the court in which such litigation is pending, or by paying the Deposit into the court of proper jurisdiction by an action of interpleader. Buyer and Seller agree that, upon Broker's payment of the Deposit into the court, neither Buyer nor Seller shall have any further right, claim, demand or action against Broker regarding the release of the Deposit; and Buyer and Seller, jointly and severally, shall indemnify and hold Broker harmless from any and all such rights, claims, demands or actions. In the event of such dispute and election by Broker to file an action of interpleader as herein provided, Buyer and Seller further agree and hereby expressly and irrevocably authorize Broker to deduct from the Deposit all costs incurred by Broker in the filing and maintenance of such action of interpleader including but not limited to filing fees, court costs, service of process fees and attorneys' fees, provided that the amount deducted shall not exceed the lesser of $500 or the amount of the Deposit held by Broker. All such fees and costs authorized herein to be deducted may be deducted by Broker from the Deposit prior to paying the balance of the Deposit to the court. Buyer and Seller further agree and expressly declare that all such fees and costs so deducted shall be the exclusive property of Broker. If the amount deducted by Broker is less than the total of all of the costs incurred by Broker in filing and maintaining the interpleader action, then Buyer and Seller jointly, and severally, agree to reimburse Broker for all such excess costs upon the conclusion of the interpleader action.

**34. MEDIATION OF DISPUTES:** Mediation is a process by which the parties attempt to resolve a dispute or claim with the assistance of a neutral mediator who is authorized to facilitate the resolution of the dispute. The mediator has no authority to make an award, to impose a resolution of the dispute or claim upon the parties or to require the parties to continue mediation if the parties do not desire to do so. Buyer and Seller agree that any dispute or claim arising out of or from this Contract or the transaction which is the subject of this Contract shall be mediated through the Maryland Association of REALTORS®, Inc. or its member local boards/associations in accordance with the established Mediation Rules and Guidelines of the Association or through such other mediator or mediation service as mutually agreed upon by Buyer and Seller, in writing. Unless otherwise agreed in writing by the parties, mediation fees, costs and expenses shall be divided and paid equally by the parties to the mediation. If either party elects to have an attorney present that party shall pay his or her own attorney's fees.

Buyer and Seller further agree that the obligation of Buyer and Seller to mediate as herein provided shall apply to all disputes or claims arising whether prior to, during or within one (1) year following the actual contract settlement date or when settlement should have occurred. Buyer and Seller agree that neither party shall commence any action in any court regarding a dispute or claim arising out of or from this Contract or the transaction which is the subject of this Contract, without first mediating the dispute or claim, unless the right to pursue such action or the ability to protect an interest or pursue a remedy as provided in this Contract, would be precluded by the delay of the mediation. In the event the right to pursue such action, or the ability to protect an interest or pursue a remedy would be precluded by the delay, Buyer or Seller may commence the action only if the initial pleading or document commencing such action is accompanied by a request to stay the proceeding pending the conclusion of the mediation. If a party initiates or commences an action in violation of this provision, the party agrees to pay all costs and expenses, including reasonable attorneys' fees, incurred by the other party to enforce the obligation as provided herein. The provisions of this paragraph shall survive closing and shall not be deemed to have been extinguished by merger with the deed.

**35. ATTORNEY'S FEES:** In any action or proceeding between Buyer and Seller based, in whole or in part, upon the performance or non-performance of the terms and conditions of this Contract, including, but not limited to, breach of contract, negligence, misrepresentation or fraud, the prevailing party in such action or proceeding shall be entitled to receive reasonable attorney's fees from the other party as determined by the court or arbitrator. In any action or proceeding between Buyer and Seller and/or between Buyer and Broker(s) and/or Seller and Broker(s) resulting in Broker(s) being made a party to such action or proceeding, including, but not limited to, any litigation, arbitration, or complaint and claim before the Maryland Real Estate Commission, whether as defendant, cross-defendant, third-party defendant or respondent, Buyer and Seller jointly and severally, agree to indemnify and hold Broker(s) harmless from and against any and all liability, loss, cost, damages or expenses (including filing fees, court costs, service of process fees, transcript fees and attorneys' fees) incurred by Broker(s) in such action or proceeding, providing that such action or proceeding does not result in a judgment against Broker(s).

As used in this Contract, the term "Broker(s)" shall mean: (a) the two (2) Brokers as identified on Page 11 of this Contract; (b) the two (2) named Sales Associates identified on Page 11 of the Contract; and (c) any agent, subagent, salesperson, independent contractor or employees of Broker(s). The term "Broker(s)" shall also mean, in the singular, any or either of the named Broker(s) and/or Sales Associate(s) as identified or, in the plural, both of the named Brokers and/or Sales Associates as identified.

This Paragraph shall apply to any and all such action(s) or proceeding(s) against Broker(s) including those action(s) or proceeding(s) based, in whole or in part, upon any alleged act(s) or omission(s) by Broker(s), including, but not limited to, any alleged act of misrepresentation, fraud, non-disclosure, negligence, violation of any statutory or common law duty, or breach of fiduciary duty by Broker(s). The provision of this Paragraph shall survive closing and shall not be deemed to have been extinguished by merger with the deed.

Buyer _____ / _____

Seller _____ / _____

Joe Johnson.zf

**36. NOTICE OF BUYER'S RIGHT TO SELECT SETTLEMENT SERVICE PROVIDERS: Buyer has the right to select Buyer's own title insurance company, title lawyer, settlement company, escrow company, mortgage lender or financial institution as defined in the Financial Institutions Article, Annotated Code of Maryland. Buyer acknowledges that Seller may not be prohibited from offering owner financing as a condition of settlement.**

**37. LIMITED WARRANTY:** NOTICE TO BUYER: IF A WARRANTY PLAN IS BEING OFFERED WITH THE PURCHASE OF THE PROPERTY, IT MAY BE A LIMITED WARRANTY. SINCE SUCH WARRANTY PLANS DO NOT COVER STRUCTURAL DEFECTS AND MAY NOT COVER PRE-EXISTING DEFECTS, BUYER SHOULD REQUEST THE REAL ESTATE AGENT TO PROVIDE BUYER WITH ANY BROCHURE WHICH DESCRIBES THE PLAN IN ORDER TO DETERMINE THE EXTENT OF COVERAGE PROVIDED BY THE WARRANTY.

**38. PROPERTY INSURANCE BROCHURE:** An informational brochure published by the Maryland Association of REALTORS®, Inc. titled "The New Reality of Property Insurance – What You Should Know" is available to explain current issues relative to obtaining insurance coverage for the Property to be purchased.

**39. GUARANTY FUND:** NOTICE TO BUYER: BUYER IS PROTECTED BY THE REAL ESTATE GUARANTY FUND OF THE MARYLAND REAL ESTATE COMMISSION, UNDER SECTION 17-404 OF THE BUSINESS OCCUPATIONS AND PROFESSIONS ARTICLE OF THE ANNOTATED CODE OF MARYLAND, FOR LOSSES IN AN AMOUNT NOT EXCEEDING $25,000 FOR ANY CLAIM.

**40. SINGLE FAMILY RESIDENTIAL REAL PROPERTY DISCLOSURE NOTICE: Buyer is advised of the right to receive a "Disclosure and Disclaimer Statement" from Seller (Section 10-702 Real Property Article, Annotated Code of Maryland).**

**41. MARYLAND NON-RESIDENT SELLER:** If the Property is not the Seller's principal residence and the Seller is a non-resident individual of the State of Maryland or is a non-resident entity which is not formed under the laws of the State of Maryland or qualified to do business in the State of Maryland, a withholding tax from the proceeds of sale may be withheld at the time of settlement except as otherwise provided by Maryland law. (See Maryland Non-Resident Seller Transfer Withholding Tax Addendum.)

**42. INTERNAL REVENUE SERVICE FILING:** Buyer and Seller each agree to cooperate with the settlement officer by providing all necessary information so that a report can be filed with the Internal Revenue Service, as required by Section 6045 of the IRS Code. To the extent permitted by law, any fees incurred as a result of such filing will be paid by the Seller.

**43. NOTICE TO BUYER CONCERNING THE CHESAPEAKE AND ATLANTIC COASTAL BAYS CRITICAL AREA: Buyer is advised that all or a portion of the property may be located in the "Critical Area" of the Chesapeake and Atlantic Coastal Bays, and that additional zoning, land use, and resource protection regulations apply in this area. The "Critical Area" generally consists of all land and water areas within 1,000 feet beyond the landward boundaries of state or private wetlands, the Chesapeake Bay, the Atlantic Coastal Bays, and all of their tidal tributaries. The "Critical Area" also includes the waters of and lands under the Chesapeake Bay, the Atlantic Coastal Bays and all of their tidal tributaries to the head of tide. For information as to whether the property is located within the Critical Area, Buyer may contact the local Department of Planning and Zoning, which maintains maps showing the extent of the Critical Area in the jurisdiction. Allegany, Carroll, Frederick, Garrett, Howard, Montgomery and Washington Counties do not include land located in the Critical Area.**

**44. WETLANDS NOTICE:** Buyer is advised that if all or a portion of the Property being purchased is wetlands, the approval of the U.S. Army Corps of Engineers will be necessary before a building permit can be issued for the Property. Additionally, the future use of existing dwellings may be restricted due to wetlands. The Corps has adopted a broad definition of wetlands which encompasses a large portion of the Chesapeake Bay Region. Other portions of the State may also be considered wetlands. For information as to whether the Property includes wetlands, Buyer may contact the Baltimore District of the U.S. Army Corps of Engineers. Buyer may also elect, at Buyer's expense, to engage the services of a qualified specialist to inspect the Property for the presence of wetlands prior to submitting a written offer to purchase the Property; or Buyer may include in Buyer's written offer a clause making Buyer's purchase of the Property contingent upon a satisfactory wetlands inspection.

**45. FOREST CONSERVATION ACT NOTICE:** If the Property is a tract of land 40,000 square feet or more in size, Buyer is notified that, unless exempted by applicable law, as a prerequisite to any subdivision plan or grading or sediment control permit for the Property, Buyer will be required to comply with the provisions of the Maryland Forest Conservation Act imposed by Section 5-1601, et seq. of the Natural Resources Article, Annotated Code of Maryland, including, among other

Buyer _____ / _____

Seller _____ / _____

Joe Johnson.zf

things, the submission and acceptance of a Forest Stand Delineation and a Forest Conservation Plan for the Property in accordance with applicable laws and regulations. Unless otherwise expressly set forth in an addendum to this Contract, Seller represents and warrants that the Property is not currently subject to a Forest Conservation Plan, Management Agreement or any other pending obligation binding the owner of the Property under said Act; further, Seller represents and warrants that no activities have been undertaken on the Property by Seller in violation of the Forest Conservation Act.

**46. NOTICE CONCERNING CONSERVATION EASEMENTS:** If the Property is encumbered by a Conservation Easement as defined in Section 10-705 of the Real Property Article, Annotated Code of Maryland, the contract must contain a notice concerning the easement, which is contained in an attached addendum. This Paragraph does not apply to the sale of property in an action to foreclose a mortgage or deed of trust. (If the Property is encumbered by a Conservation Easement: See Conservation Easement Addendum.)

**47. FOREIGN INVESTMENT TAXES-FIRPTA:** Section 1445 of the United States Internal Revenue Code of 1986 provides that a Buyer of residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if (a) the purchase price exceeds Three Hundred Thousand Dollars ($300,000.00) and (b) the seller is a foreign person. Unless otherwise stated in an addendum attached hereto, if the purchase price is in excess of Three Hundred Thousand Dollars ($300,000.00), Seller represents that Seller is not a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined by the Internal Revenue Code and applicable regulations) and agrees to execute an affidavit to this effect at the time of settlement.

**48. CRIMINAL ACTIVITY AND SEXUAL OFFENDERS:** Buyer may contact the state, county or municipal police departments in which the Property is located or check the "Sex Offender Registry" at the Maryland Department of Public Safety and Correctional Services website in order to ascertain criminal activity in the vicinity of the Property or the presence of registered sexual offenders who live or work within the vicinity of the Property. Buyer acknowledges that Buyer is solely responsible to inquire of such matters before signing this Contract. Buyer shall have no right to cancel this Contract based upon criminal activity or the presence of registered sexual offenders in the vicinity of the Property. Buyer further acknowledges that no real estate licensee involved in the sale or purchase of the Property, whether acting as the agent for Seller or Buyer, has any duty nor assumes any duty or responsibility to ascertain criminal activity or the presence of registered sexual offenders in the vicinity of the Property.

**49. MILITARY INSTALLATIONS:** This Section does not apply in Allegany, Carroll, Frederick, Garrett, Howard, Montgomery, and Washington Counties. Buyer is advised that the Property may be located near a military installation that conducts flight operations, munitions testing, or military operations that may result in high noise levels.

**50. NOTICE TO THE PARTIES:**

(A) NO REPRESENTATIONS: Brokers, their agents, subagents and employees, make no representations with respect to:

(1) Water quantity, quality, color, or taste or operating conditions of public and/or private water systems;

(2) Location, size or operating condition of on-site sewage disposal systems;

(3) The extensions of public utilities by local municipal authorities, existence or availability of public utilities, and any assessments, fees or costs for public utilities which might be imposed by local municipal authorities, should public utilities be extended or available to the subject Property. (Buyer should consult the Department of Public Works to determine the availability of proposed future extensions of utilities.);

(4) Lot size and exact location. If the subject Property is part of a recorded subdivision, Buyer can review the plat upon request at the Record Office. If the subject Property is not part of a recorded subdivision, Buyer may verify exact size and location through a survey by a licensed engineer or land surveyor, at Buyer's expense; or

(5) Existing zoning or permitted uses of the Property. Buyer should contact the Zoning Office and/or a licensed engineer to verify zoning and permitted uses.

(B) NO ADVISING: Brokers/agents are not advising the parties as to certain other issues, including without limitation: soil conditions; flood hazard areas; possible restrictions of the use of property due to restrictive covenants, subdivision, environmental laws, easements or other documents; airport or aircraft noise; planned land use, roads or highways; and construction materials and/or hazardous materials, including without limitation flame retardant treated plywood (FRT), radon, radium, mold spores, urea formaldehyde foam insulation (UFFI), synthetic stucco (EIFS), asbestos, polybutylene piping and lead-based paint. Information relating to these issues may be available from appropriate governmental authorities. This disclosure is not intended to provide an inspection contingency.

(C) COMPENSATION OF VENDORS: Buyer and Seller each assume full responsibility for selecting and compensating their respective vendors.

(D) PROTECTION OF HOMEOWNERS IN FORECLOSURE ACT NOTICE: BUYER AND SELLER ACKNOWLEDGE THAT, UNDER SECTION 7-310 OF THE REAL PROPERTY ARTICLE OF THE ANNOTATED CODE OF MARYLAND, IF

THE MORTGAGE ON THE PROPERTY IS AT LEAST 60 DAYS IN DEFAULT ON THE DATE OF CONTRACT ACCEPTANCE, SELLER HAS THE RIGHT TO RESCIND THE CONTRACT WITHIN 5 DAYS AFTER THE DATE OF CONTRACT ACCEPTANCE. ANY PROVISION IN THIS CONTRACT OR OTHER AGREEMENT THAT ATTEMPTS OR PURPORTS TO WAIVE ANY OF THE SELLER'S RIGHTS UNDER SECTION 7-310 IS VOID.

**51. NON-ASSIGNABILITY:** This Contract may not be assigned without the written consent of Buyer and Seller. If Buyer and Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until settlement.

**52. PARAGRAPH HEADINGS:** The Paragraph headings of this Contract are for convenience and reference only, and in no way define or limit the intent, rights or obligations of the parties.

**53. COMPUTATION OF DAYS:** As used in this Contract, and in any addendum or addenda to this Contract, the term "days" shall mean consecutive calendar days, including Saturdays, Sundays, and holidays, whether federal, state, local or religious. A day shall be measured from 12:00:01 a.m. to and including 11:59:59 p.m. E.S.T. For the purposes of calculating days, the count of "days" shall begin on the day following the day upon which any act or notice as provided in this Contract, or any addendum or addenda to this Contract, was required to be performed or made.

**54. ENTIRE AGREEMENT:** This Contract and any addenda thereto contain the final and entire agreement between the parties, and neither they nor their agents shall be bound by any terms, conditions, statements, warranties or representations, oral or written, not herein contained. The parties to this Contract mutually agree that it is binding upon them, their heirs, executors, administrators, personal representatives, successors and, if permitted as herein provided, assigns. Once signed, the terms of this Contract can only be changed by a document executed by all parties. This Contract shall be interpreted and construed in accordance with the laws of the State of Maryland. It is further agreed that this Contract may be executed in counterparts, each of which when considered together shall constitute the original Contract.

**55. ELECTRONIC DELIVERY:** The parties agree that this Contract offer shall be deemed validly executed and delivered by a party if a party executes this Contract and delivers a copy of the executed Contract to the other party by telefax or telecopier transmittal, or delivers a digital image of the executed document by email transmittal.

| | |
|---|---|
| *Joe Johnson* | |
| DocuSigned By Joe Johnson | 10/28/2009 |
| **Buyer's Signature**          **Date** | **Seller's Signature**          **Date** |
| Joe Johnson | owner of record |
| | |
| **Buyer's Signature**          **Date** | **Seller's Signature**          **Date** |

DATE OF CONTRACT ACCEPTANCE: _____

**Contact Information:**
BUYER / NAME(S): Joe Johnson                    ☒ **Check if First-Time Maryland Homebuyer**
MAILING ADDRESS: _____

SELLER / NAME(S): <u>owner of record</u>
MAILING ADDRESS: _____

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Joe Johnson.zf

Information provided for reference only:

LISTING BROKER: _____   BRANCH OFFICE: _____

OFFICE PHONE: _____ FAX: _____   BROKER/AGENT MLS ID: _____

OFFICE ADDRESS: _____

SALES ASSOCIATE: _____ E-Mail: _____   PHONE: _____

ACTING AS: ☐ LISTING BROKER AND SELLER AGENT; OR
☐ INTRA - COMPANY AGENT WITH BROKER AS DUAL AGENT

SELLING BROKER: ZipRealty, Inc _____   BRANCH OFFICE: DC

OFFICE PHONE: (703) 373-4320 _____ FAX: (866) 667-5248 ____   BROKER/AGENT MLS ID: Zip1/95639

OFFICE ADDRESS: 8245 Boone Blvd ##260, Vienna, VA 22182

SALES ASSOCIATE: Stephen Hudson _____ E-Mail: shudson@ziprealty.com   PHONE: (240) 460-7524

ACTING AS: ☐ SELLER AGENT (WHETHER "COOPERATING AGENT" OR "SELLING AGENT" ); OR
☒ BUYER AGENT; OR
☐ INTRA - COMPANY AGENT WITH BROKER AS DUAL AGENT

©Copyright 2009 Maryland Association of REALTORS®, Inc. For use by REALTOR® members of the Maryland Association of REALTORS® only. Except as negotiated by the parties to the Contract, this form may not be altered or modified in any form without the prior expressed written consent of the Maryland Association of REALTORS®, Inc.

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Joe Johnson.zf



# FHA FINANCING ADDENDUM

ADDENDUM # _____ dated _____ to Contract of Sale dated ___October 28, 2009___,

between Buyer _____ Joe Johnson _____ and

Seller _____ owner of record _____ for Property known

as _____ 5822 HOLLY SPRINGS DR #1-6, Capital Heights, MD 20743 _____ .

The Contract is contingent upon Buyer's obtaining a mortgage insured by the Federal Housing Administration (FHA) and secured by the Property as follows:

## 1. LOAN DETAILS:

Mortgage Insurance Premium (MIP)    $ _____

Loan Program _____ FHA _____

Base Loan Amount    $ _____110,000.00_____

TERM OF LOAN ____30____ Years

INITIAL INTEREST RATE _____ %

**TOTAL LOAN AMOUNT**    $ _____110,000.00_____

Buyer agrees to pay to Lender loan origination/loan discount fees of _____ % of the loan amount and Seller agrees to pay loan origination/loan discount fees of _____ % of the loan amount. Buyer shall receive the benefit of any reduction in said fees. All loan insurance premiums as required by Lender shall be paid by Buyer. BY ACCEPTING A LOAN AGREEMENT WHEREBY THE INTEREST RATE AND LOAN DISCOUNT FEES ARE NOT BEING LOCKED IN, BUYER AGREES TO ACCEPT THE CURRENT MARKET RATE AT THE TIME OF LOCK-IN AND THE RESPONSIBILITY FOR ANY ADDITIONAL FEES CHARGED. BUYER SHALL REMAIN BOUND TO PERFORM UNDER THE CONTRACT, NOTWITHSTANDING ANY SUCH CHANGES IN THE RATE AND/OR FEES.

**2.    MONTHLY PAYMENT:** Payments to Lender shall include monthly principal and interest, plus one-twelfth of the annual real estate taxes, ground rent, special assessments or charges, if any, hazard (fire) insurance premium, flood insurance, where required, and FHA MIP payment.

**3.    LOAN UNDERWRITING:** Buyer and Seller understand that the Lender will have to resubmit the loan to underwriting if, from the time Buyer's loan application was approved to the time of settlement, there are any increases to the interest rate and/or the loan origination/discount fees. To the extent such changes do not conflict with the conditions of the Contract, Buyer agrees to comply with Lender's request for additional or updated information as required to approve the loan.

**4.    FHA AMENDATORY CLAUSE:** It is expressly agreed that notwithstanding any other provisions of the Contract, Buyer shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of deposit or otherwise unless Buyer has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $ _106,150.00_____ . Buyer shall have the privilege and option to proceed with consummation of the Contract without regard to the amount of the appraised value. **The appraised value is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property.** Buyer should satisfy himself/herself that the price **and condition of the Property are acceptable.** NOTICE: The dollar amount to be inserted in the amendatory clause is the purchase price as stated in the Contract. If Buyer and Seller agree to adjust the purchase price in response to an appraised value that is less than the purchase price, a new amendatory clause is not required. However, the loan application package must include the original Contract with the same purchase price as shown in the amendatory clause, along with the revised or amended Contract.

Buyer __DS__ /_____        Page 1 of 2  04/08        Seller _____ /_____

DS
jj

Zip Realty Inc 8245 Boone Blvd, Ste 260, Vienna VA 22182
Phone: 8002255947        Fax:    703-373-4321
Stephen Hudson
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Joe Johnson.zf

**5. MORTGAGE INSURANCE:** Buyer agrees to pay mortgage insurance premiums (MIP) as required by FHA regulations. MIP must be paid at the time of settlement in cash or included in the loan amount; **AND IN ADDITION,** a mortgage insurance premium equal to a percentage of the loan amount must be paid monthly thereafter.

**6. TERMITE INSPECTION:** In all transactions involving FHA financing, fences and outbuildings shall be included in the inspection and certification.

**7. LENDER REQUIRED REPAIRS:** In the event the FHA and/or Lender require any repairs or improvements ("Required Repairs") be made to the Property, Seller agrees to perform the Required Repairs and pay the cost thereof at or prior to settlement, provided the total cost of the Required Repairs does not exceed $ _____ , ("Repair Amount"). **This cost shall be in addition to Seller's other obligations under the terms of the Contract.** Should the cost *of* Required Repairs exceed the Repair Amount:

A. Seller may elect to pay the total cost of the Required Repairs, in which event the Contract shall remain in full force and effect.
B. Seller may terminate the Contract by written notice to Buyer which must include a written estimate of the cost of the Required Repairs. Said written notice shall be provided to Buyer within five (5) days of Seller's receipt of written estimate(s).
C. The Contract shall remain in full force and effect if, within five (5) days of Buyer's receipt of Seller's notice of termination, Buyer elects, in writing, to pay the cost of the Required Repairs, which exceeds the Repair Amount.
D. If neither Buyer nor Seller elects to pay the excess cost of any Required Repairs, the Contract shall become null and void; and all Deposit(s) shall be disbursed in accordance with the Deposit paragraph of the Contract.

**8. CERTIFICATION:** Seller, Buyer and Broker(s) hereby certify that the terms of the Contract to which this Addendum is attached are true to the best of their knowledge and belief. Any other agreement(s) entered into between the parties with respect to the purchase and sale of the Property has been fully disclosed and is attached to the Contract.

**9. FHA REQUIRED NOTICE:** Buyer acknowledges receipt of HUD form #92564-CN entitled: *For Your Protection: Get A Home Inspection.*

Buyer's Initials

*All other terms and conditions of the Contract of Sale remain in full force and effect.*

| | | | |
|---|---|---|---|
| *Joe Johnson* | | | |
| DocuSigned By: Joe Johnson | | | |
| **Buyer Signature** | 10/28/2009 | **Seller Signature** | |
| Joe Johnson | Date | owner of record | Date |
| | | | |
| **Buyer Signature** | Date | **Seller Signature** | Date |
| *Stephen Hudson* | | | |
| DocuSigned By: Stephen Hudson | | | |
| **Broker or Duly Authorized Representative** | 10/28/2009 | | |
| Stephen Hudson | Date | | |
| | | | |
| **Broker or Duly Authorized Representative** | Date | | |

©Copyright 2008 Maryland Association of REALTORS®, Inc. For use by REALTOR® members of the Maryland Association of REALTORS® only. Except as negotiated by the parties to the Contract, this form may not be altered or modified in any form without the prior expressed written consent of the Maryland Association of REALTORS®, Inc.

Joe Johnson.zf



# MARYLAND HOMEOWNERS ASSOCIATION ACT
## DISCLOSURES TO BUYER AND TRANSMITTAL OF DOCUMENTS
For resale of a lot within a development of ANY size
OR for the initial sale of a lot within a development containing 12 or fewer lots
to a person who intends to occupy or rent the lot for residential purposes.

ADDENDUM NUMBER _____ TO CONTRACT OF SALE DATED __October 28, 2009__
BUYER(S):_____
                      Joe Johnson
SELLER(S):_____
                 owner of record
PROPERTY:_____5822 HOLLY SPRINGS DR #1-6, Capital Heights, MD  20743__

The following disclosures are provided by the Vendor ("Seller") to the Buyer who intends to occupy or rent the lot for residential purposes pursuant to 11B-106 of the Maryland Homeowners Association act ("the Act"):

(1).    The lot which is the subject of the contract of sale is located within the development known as __The Villas__

(2).    (i).   The current monthly fees or assessments imposed by the homeowners association upon the lot are $ _____ per month.

        (ii).   The total amount of fees, assessments, and other charges imposed by the homeowners association upon the lot during the prior fiscal year of the homeowners association was:
$ _____

        (iii).  The fees, assessments, or other charges imposed by the homeowners association against the lot are_____ or are not _____ **(Seller to initial applicable provision)** delinquent. If any of the foregoing are delinquent, Seller to explain, giving amounts and dates of delinquency:
_____
_____

(3).    Seller to initial (i) or (ii) and complete as appropriate:

      _____ (i).   The name, address, and telephone number of the management agent of the homeowners association, or other officer or agent authorized by the homeowners association to provide to members of the public, information regarding the homeowners association and the development is:
Name: _____
Address: _____
Telephone: _____

      _____ (ii).   No agent or officer is presently so authorized by the homeowners association.

(4).    Seller to initial (i) or (ii) and complete as appropriate:

      _____ (i).   Seller has actual knowledge of: (Seller to initial all which apply)
      _____ A. The existence of any unsatisfied judgments or pending lawsuits against the homeowners association: if (A) is initialed, explain: _____
_____

      _____ B. Any pending claims, covenant violations actions, or notices of default against the lot. If (B) is initialed, explain: _____
_____

Buyer _____ / _____         Page 1 of 2  10/05         Seller _____ / _____

Zip Realty Inc 8245 Boone Blvd, Ste 260, Vienna VA 22182
Phone: 8002255947       Fax: 703-373-4321    Stephen Hudson
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Joe Johnson.zf

Maryland Homeowners Association Act Disclosures To Buyer

_____ (ii).  Seller has no actual knowledge of any of the items listed in (4)(i) above.

(5).    (i). Attached are copies of the following documents relating to the development and the homeowners association to which the Buyer shall become obligated upon becoming the owner of the lot: (Seller to initial all applicable items.)

_____ A. Articles of incorporation;
_____ B. Declaration of covenants and restrictions;
_____ C. All recorded covenants and restrictions of the primary developments, and of other related developments to the extent reasonably available;
_____ D. The bylaws and rules of the primary development, and other related developments to the extent reasonably available.

(ii). Obligations contained in the attached copies of documents: (Seller to initial any applicable provision.)

A. Are _____ or Are Not _____ enforceable against an owner;

B. Are _____ or Are Not _____ enforceable against the owner's tenants.

The information contained in this Addendum issued pursuant to Section 11B-106(b) of the Maryland Homeowners Association Act is based on the Seller's actual knowledge and belief and is current as of the date hereof.

Seller hereby acknowledges that Seller has provided all information necessary to complete this Addendum, in compliance with the Act, and that Seller has reasonable grounds to believe and does believe, after reasonable investigation, that the information and statements herein provided to Buyer are true and that there is no omission to state a material fact necessary to make the statements not misleading.

| | | | |
|---|---|---|---|
| _____ | | _____ | |
| Seller                     Date | | Seller                     Date | |
| owner of record | | | |

Buyer hereby acknowledges that Buyer, on the date indicated below, has received all of the disclosures contained herein, including attachments as indicated, and that Seller has fully complied with the disclosure requirements of the Act.

| | | | |
|---|---|---|---|
| _____ 10/28/2009 _____ | | _____ | |
| Buyer                     Date | | Buyer                     Date | |
| Joe Johnson | | | |

©Copyright 2005 Maryland Association of REALTORS®, Inc. For use by REALTOR® members of the Maryland Association of REALTORS® only. Except as negotiated by the parties to the Contract, this form may not be altered or modified in any form without the prior expressed written consent of the Maryland Association of REALTORS®, Inc.

Buyer _____ / _____                           Seller _____ / _____

Joe Johnson.zf



## MARYLAND HOMEOWNERS ASSOCIATION ACT
## NOTICE TO BUYER
For resale of a lot within a development of ANY size
OR for the initial sale of a lot within a development containing 12 or fewer lots,
to a person who intends to occupy or rent the lot for residential purposes.

ADDENDUM NUMBER _____ TO CONTRACT OF SALE DATED ___October 28, 2009___
BUYER(S): _____ Joe Johnson
SELLER(S): _____ owner of record
PROPERTY: _____5822 HOLLY SPRINGS DR #1-6, Capital Heights, MD  20743_____

The following notice applies to members of the public who intend to occupy or rent a lot for residential purposes. Under the Maryland Homeowners Association Act ("Act"), "lot" means any plot or parcel of land on which a dwelling is located or will be located within a development.

This sale is subject to the requirements of the Maryland Homeowners Association Act ("the Act"). The Act requires that the seller disclose to you, at or before the time the contract is entered into, or within 20 calendar days of entering into the contract, certain information concerning the development in which the lot you are purchasing is located. The content of the information to be disclosed is set forth in Section 11B-106(b) of the Act ("the MHAA information") as follows:

   (1). A statement as to whether the lot is located within a development;

   (2). Fees:

      (i). The current monthly fees or assessments imposed by the homeowners association upon the lot;
      (ii). The total amount of fees, assessments, and other charges imposed by the homeowners association upon the lot during the prior fiscal year of the homeowners association; and
      (iii). A statement of whether any of the fees, assessments, or other charges against the lot are delinquent;

   (3). The name, address, and telephone number of the management agent of the homeowners association, or other officer or agent authorized by the homeowners association to provide to members of the public, information regarding the homeowners association and the development, or a statement that no agent or officer is presently so authorized by the homeowners association;

   (4). A statement as to whether the owner has actual knowledge of:

      (i). The existence of any unsatisfied judgments or pending lawsuits against the homeowners association; and
      (ii). Any pending claims, covenant violations actions, or notices of default against the lot; and

   (5). A copy of:

      (i). The articles of incorporation, the declaration, and all recorded covenants and restrictions of the primary development, and of other related developments to the extent reasonably available, to which the buyer shall become obligated on becoming an owner of the lot, including a statement that these obligations are enforceable against an owner's tenants, if applicable; and

Buyer ___DS___ / _____          Page 1 of 2   10/05          Seller _____ / _____
      jj

Maryland Homeowners Association Act Notice To Buyer

(ii). The bylaws and rules of the primary development, and of other related developments to the extent reasonably available, to which the buyer shall become obligated on becoming an owner of the lot, including a statement that these obligations are enforceable against an owner and the owner's tenants, if applicable.

If you have not received all of the MHAA information 5 calendar days or more before entering into the contract, you have 5 calendar days to cancel the Contract after receiving all of the MHAA information. You must cancel the contract in writing, but you do not have to state a reason. The seller must also provide you with notice of any changes in mandatory fees exceeding 10 percent of the amount previously stated to exist and copies of any other substantial and material amendment to the information provided to you. You have 3 calendar days to cancel this contract after receiving notice of any changes in mandatory fees, or copies of any other substantial and material amendments to the MHAA information which adversely affect you.

If you do cancel the contract, you will be entitled to a refund of any deposit you made on account of the contract. However, unless you return the MHAA information to the seller when you cancel the contract, the seller may keep out of your deposit the cost of reproducing the MHAA information, or $100, whichever amount is less.

By purchasing a lot within this development, you will automatically be subject to various rights, responsibilities, and obligations, including the obligation to pay certain assessments to the homeowners association within the development. The lot you are purchasing may have restrictions on:

A. Architectural Changes, Design, Color, Landscaping, Or Appearance;
B. Occupancy Density;
C. Kind, Number, Or Use Of Vehicles;
D. Renting, Leasing, Mortgaging Or Conveying Property;
E. Commercial Activity; Or
F. Other Matters.

You should review the MHAA information carefully to ascertain your rights, responsibilities, and obligations within the development.

| 38F50D7223F94AE... *Joe Johnson* DocuSigned By: Joe Johnson | | |
|---|---|---|
| Buyer | Date | Seller | Date |
| Joe Johnson | 10/28/2009 | owner of record | |

| Buyer | Date | Seller | Date |

©Copyright 2005 Maryland Association of REALTORS®, Inc. For use by REALTOR® members of the Maryland Association of REALTORS® only. Except as negotiated by the parties to the Contract, this form may not be altered or modified in any form without the prior expressed written consent of the Maryland Association of REALTORS®, Inc.

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Joe Johnson.zf



## FIRST-TIME MARYLAND HOMEBUYER
## TRANSFER AND RECORDATION TAX ADDENDUM

ADDENDUM # _____ dated _____ to Contract of Sale dated __October 28, 2009__ , between

Buyer _____ __Joe Johnson__ _____ and Seller

_____ __owner of record__ _____ for Property known as

__5822 HOLLY SPRINGS DR #1-6, Capital Heights, MD  20743__

FOR USE ONLY WHEN AN INDIVIDUAL HAS NEVER OWNED RESIDENTIAL REAL PROPERTY IN THE STATE OF MARYLAND AND THE PARTIES INTEND TO PROVIDE FOR AN EXPRESS AGREEMENT ON TERMS DIFFERENT FROM THOSE CONTAINED IN PARAGRAPH 24 OF THE CONTRACT OF SALE.

TO QUALIFY AS A FIRST-TIME MARYLAND HOMEBUYER, EACH BUYER MUST SIGN A STATEMENT UNDER OATH STATING THAT:

(A.)  THE BUYER HAS NEVER OWNED RESIDENTIAL REAL PROPERTY IN MARYLAND THAT HAS BEEN THE INDIVIDUAL'S PRINCIPAL RESIDENCE; AND

(B.)  THE RESIDENCE WILL BE OCCUPIED AS A PRINCIPAL RESIDENCE; OR

(C.)  THE BUYER IS A CO-MAKER OR GUARANTOR OF A MORTGAGE OR DEED OF TRUST TO BE SECURED BY THE PROPERTY AND THE CO-MAKER OR GUARANTOR WILL NOT OCCUPY THE PROPERTY AS A PRINCIPAL RESIDENCE.

BUYER IS A FIRST-TIME MARYLAND HOMEBUYER WHO WILL OCCUPY THE IMPROVED, RESIDENTIAL REAL PROPERTY AS A PRINCIPAL RESIDENCE.

### 1. STATE TRANSFER TAX

(A)   SECTION 13-203(B) OF THE TAX-PROPERTY ARTICLE OF THE ANNOTATED CODE OF MARYLAND PROVIDES THAT THE RATE OF THE STATE TRANSFER TAX IS REDUCED FROM 0.50% TO 0.25% OF THE CONSIDERATION PAYABLE FOR THE INSTRUMENT IN WRITING AND SHALL BE PAID ENTIRELY BY THE SELLER.

(B)   SECTION 14-104(C)(2) OF THE REAL PROPERTY ARTICLE OF THE ANNOTATED CODE OF MARYLAND PROVIDES THAT THE ENTIRE AMOUNT OF STATE TRANSFER TAX SHALL BE PAID BY THE SELLER.

### 2. RECORDATION TAX AND LOCAL TRANSFER TAX

SECTION 14-104(C)(1) OF THE REAL PROPERTY ARTICLE OF THE ANNOTATED CODE OF MARYLAND PROVIDES THAT THE ENTIRE AMOUNT OF RECORDATION TAX AND LOCAL TRANSFER TAX SHALL BE PAID BY THE SELLER UNLESS THERE IS AN EXPRESS AGREEMENT BETWEEN THE PARTIES THAT THE RECORDATION TAX AND LOCAL TRANSFER TAX WILL NOT BE PAID ENTIRELY BY THE SELLER.

BUYER AND SELLER EXPRESSLY AGREE THAT THE COST OF RECORDATION TAX AND LOCAL TRANSFER TAX SHALL BE PAID AS FOLLOWS: (**BUYER AND SELLER TO INITIAL ONE**)

_____ / _____    _____ / _____    SELLER TO PAY
_____ / _____    _____ / _____    BUYER TO PAY
_____ / _____    _____ / _____    OTHER AS FOLLOWS: _____

*All other terms and conditions of the Contract of Sale remain in full force and effect.*

38F50D7223F54AE...
*Joe Johnson*
DocuSigned By: Joe Johnson        __10/28/2009__

**Buyer Signature**                    Date          **Seller Signature**                    Date
Joe Johnson                                          owner of record


**Buyer Signature**                    Date          **Seller Signature**                    Date

©Copyright 2007 Maryland Association of REALTORS®, Inc. For use by REALTOR® members of the Maryland Association of REALTORS® only. Except as negotiated by the parties to the Contract, this form may not be altered or modified in any form without the prior expressed written consent of the Maryland Association of REALTORS®, Inc.

REALTOR®                          10/07

Zip Realty Inc 8245 Boone Blvd, Ste 260,  Vienna VA 22182
Phone: 8002255947          Fax:  703-373-4321          Stephen Hudson                                              Joe Johnson.zf
Produced with ZipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



## Prince George's County Association of REALTORS®, Inc.

### GENERAL ADDENDUM

Special provisions attached hereto and made a part hereof, the Contract dated _____ 10/28/09 _____

on property located at _____ 5822 HOLLY SPRINGS DR #1-6
Capital Heights, MD  20743 _____

Lot _____ , Block _____ , Subdivision _____ ,

located in _____ County, Maryland between

(Buyers) _____ Joe Johnson _____

and (Sellers) _____ owner of record _____ .

**Buyer holds that seller will respond with an acceptance,rejection or counter offer within 24 hours of receipt of this offer dated October 28, 2009 or the offer will be rescinded.**

All other terms and conditions of the Contract shall remain the same and in full force and effect.

Joe Johnson
DocuSigned By: Joe Johnson

Seller **owner of record** _____    Buyer **Joe Johnson** _____

Seller _____    Buyer _____
10/29/2009

Date _____    Date _____

This is the General Addendum recommended by the Prince George's County Association of REALTORS®, Inc.
This Form is the property of the Prince George's County Association of REALTORS®, Inc. and is for use by REALTOR® members only.
Previous edition of this Form may be used until supply is exhausted.

**PGCAR FORM 1323    General Addendum**    1/05
Zip Realty Inc 8245 Boone Blvd, Ste 260, Vienna VA 22182
Phone: 8002255947    Fax: 703-373-4321    Stephen Hudson    Joe Johnson.zf
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

## NSP DPCCA LEAD DISCLOSURE
## Federal Lead-Based Paint Law; Title X, Section 1018
### (Residential Lead-Based Paint Hazard Reduction Act of 1992)

**Property Address** _5822 Holly Springs Dr, Capital Heights MD 20743_

**Lead Warning Statement:** Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

### Seller's Disclosure (initial)

(a) _____   Property was constructed prior to 1978;

_____   Property was constructed in 1978 or later; or

_____   Date of construction is uncertain.

If the Property was constructed prior to 1978 or if the date of construction is uncertain, as indicated by Seller's initials above, Buyer and Seller mutually agree that the requirements of the Act shall apply to the sale of the Property.

(b) _____   Known lead-based paint and/or lead-based paint hazards are present in the housing;
      **or**

_____   Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing

(c) _____   Seller has provided the purchaser with all available records and reports pertaining to lead-based paint   and/or lead-based paint hazards in the housing; **or**

_____   Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### Purchaser's Acknowledgment (initial)

(e) _____   Purchaser has received copies of all information listed above.

(f) _____   Purchaser has received the pamphlet _Protect Your Family from Lead in Your Home_.

(g) Purchaser has: (check one)

_____ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

```
┌─DS─┐
│ JJ │
└────┘
```
Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

## Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

_____    Date _____
Seller

```
┌──────────────────────────┐
│ 38F60D7223F94AE...        │
│ Joe Johnson               │
│ DocuSigned By: Joe Johnson│
└──────────────────────────┘
```
_____    Date  10/29/2009  _____
Purchaser



# DOWN PAYMENT ON YOUR DREAM

## (NEIGHBORHOOD STABILIZATION PROGRAM (NSP)/NEIGHBORHOOD CONSERVATION INITIATIVE (NCI)
## CONTRACT ADDENDUM AND NOTICE TO SELLER

ADDENDUM# _____ dated _____ to the Contract of Sale dated __10/28/09_____, between
Buyer _____Joe Johnson_____ and
Seller _____Owner of record_____, for the Property known as
_____3822 Holly Springs Dr, Capital Heights MD 20743_____.

The following provisions are included in and supersede any conflicting language in the Contract.

The Down Payment on Your Dream (NSP/NCI) was established through the Housing and Economic Recovery Act of 2008 to assist home buyers in purchasing vacant foreclosed properties. The Buyer will be applying for the federal and state funded Down Payment on Your Dream (NSP/NCI) Program to provide down payment and closing cost assistance to purchase the Property in the amount of (select one below based on qualifying zip code):

___ *The lesser of 3.5% of the purchase price or $15,000; OR*
___ *The lesser of 7.0% of purchase price or $20,000 (Target Zip Codes or Workforce Housing)*

### Qualifying Zip Codes
20607, 20608, 20705, 20710, 20715, **20716**, 20720,20721, 20613, 20722, **20743**, 20623, 20735, 20740, **20747**, **20744**, 20769, 20770, 20781, 20782, **20783**, 20784, **20785**, **20706**, 20707, **20708**, 20712, 20745, 20737, **20746**, **20748**, **20772**, **20774**.

### Of the 33 zip codes above the following are considered Target Zip Codes:
**20716, 20743, 20747, 20744, 20783, 20785, 20706, 20708, 20746, 20748, 20772, 20774**

Buyer and Seller agree that Buyer's application for down payment and closing costs under the Down Payment on Your Dream (NSP/NCI) Program is subject to approval and compliance with federal, state and local requirements.

1.  **Purchase Discount**
    Federal Regulations for the NSP/NCI Program require that properties acquired with NSP/NCI funding be discounted a minimum of 1% from the current appraised value, as determined by an appraisal completed within 60 days of the initial contract offer. The Purchase Price offered in the Residential Contract of Sale reflects a 1% or more discount from what buyer believes to be the current fair market value of the Property.

2.  **APPRAISAL CONTINGENCY**
    The Contract is contingent upon Buyer's obtaining an appraisal of the Property. The appraisal will be at Buyer's expense and will be performed by a Maryland licensed appraiser and shall be completed within 60 days of Date of Contract Acceptance.

    If the appraised value of the Property is not at least 1% higher than the Purchase Price as set forth in the Contract, Buyer shall notify Seller, in writing, of such fact within Five (5) days from receipt of the written appraisal and shall include a copy of the written appraisal. The written notice from Buyer to Seller shall state that Buyer requests Seller reduce the Purchase Price to an amount that is 1% below the appraised value.

    Upon receipt of the written notice from Buyer of Buyer's request to reduce the Purchase Price to 1% below the appraised value, Seller, At Seller's election and upon written notice to Buyer not later than _____ (___) days following receipt by Seller of the written notice from Buyer, may either:

**NEIGHBORHOOD STABILIZATION PROGRAM (NSP)**
**CONTRACT ADDENDUM AND NOTICE TO SELLER**
**Page 2**

A) Agree to reduce the Purchase Price to an amount <u>1%</u> below the appraised value, in which event the Contract shall remain in full force and effect; **OR**
B) Decline to reduce the Purchase Price to an amount <u>1%</u> below the appraised value.

If Seller declines to reduce the Purchase Price to an amount at least <u>1%</u> below the appraised value, or fails to respond within the time period above, Buyer shall have the unconditional right to terminate the Contract and Buyer shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of deposit or otherwise.

3.    **Uniform Relocation Assistance and Real Property Acquisition Policies Act**
This is a Voluntary acquisition of a foreclosed property; the Buyer does not have the authority to acquire the Seller's Property by eminent domain, and will not acquire the Property if negotiations fail to result in an amicable agreement. Owner-occupants who move as a result of a Voluntary Acquisition are <u>not</u> eligible for relocation assistance. A lawful tenant-occupant who is displaced and moves as a result of a Voluntary Acquisition for a federally-assisted project <u>may</u> be eligible for relocation assistance. Seller cannot unlawfully evict a tenant, or fail to renew a lease in anticipation of federal assistance to purchase the Property.

| Signature of Seller | Date | Witness | Date |

| Signature of Seller | Date | Witness | Date |

*Joe Johnson*     10/29/2009
DocuSigned By: Joe Johnson

| Signature of Buyer | Date | Witness | Date |

| Signature of Buyer | Date | Witness | Date |



## ADDENDUM OF CLAUSES

ADDENDUM # _____ dated _____ to the Contract of Sale dated _____, between

Buyer _____ **Joe Johnson** _____ and

Seller _____ **owner of record** _____ for Property known as

_____ **5822 HOLLY SPRINGS DR #1-6, Capital Heights, MD 20743** _____

The following provisions are included in and supersede any conflicting language in the Contract. It is expressly provided that only the numbered paragraphs which are checked and initialed by all Parties shall be made a part of the Contract. TIME IS OF THE ESSENCE WITH REGARD TO EACH PROVISION OF THIS ADDENDUM.

☐ **1. SELLER'S CREDIT TO BUYER.** In addition to any other amount(s) which Seller has agreed to pay under other provisions of the Contract, (example: origination/discount points, transfer/recordation tax, lender fees), Seller shall credit Buyer at time of settlement with the sum of $ _____ or **0.000** % of Purchase Price towards Buyer's settlement costs. It is Buyer's responsibility to confirm with lender that the entire credit provided for herein may be utilized. If lender prohibits Seller from payment of any portion of such credit, then said credit shall be reduced to the maximum amount allowed by lender.

☐ **2. LENDER CHARGES.** In the event of FHA or VA financing, lender's fees to Seller shall not exceed $ _____ .

☒ **3. TRANSFER AND RECORDATION TAXES. TRANSFER CHARGES.** Transfer and recordation taxes shall be paid by: _____ **seller** _____ . First Time Maryland Homebuyer Transfer and Recordation Tax Addendum Attached: ☒ YES ☐ NO

☐ **4. QUALIFICATION LETTER CONTINGENCY.** The Contract is contingent until 9 p.m. on the _____ day after the Date of Contract Acceptance ("Deadline") upon Buyer delivering to Seller a prequalification letter from an institutional lender stating that the financing described in the Contract is available to Buyer and that, based upon written loan application, a preliminary credit report and the information provided by Buyer, the financing should be committed subject to appropriate verification, approval and commitment. At anytime after the Deadline, but prior to delivery to Seller of the prequalification letter, Seller may, upon written notice to Buyer, declare the Contract null and void and of no further force or effect.

☐ **5. HOME INSPECTION.** The Contract is contingent until 9 p.m. on the _____ day after the Date of Contract Acceptance ("Deadline") for an inspection of the property by Buyer, a home inspection firm and/or other qualified contractor representative(s) at Buyer's selection and expense. Seller will have all utilities in service at the time of inspection(s). This contingency will terminate at the Deadline unless by the Deadline Buyer delivers to Seller either A or B as follows:

A. A copy of the report(s) from the inspection(s) of the Property together with a Home Inspection Notice listing home inspection conditions or terms that Buyer requests Seller to repair, and/or stipulating a dollar credit, as allowed by Lender, to be paid at settlement by Seller toward Buyer's charges to buy the property.

If Seller elects not to perform in accordance with the Home Inspection Notice or to make only part of the repairs requested, Seller shall deliver notice to Buyer of such decision within 3 days after receipt of the Home Inspection Notice. Within 3 days after receipt of a notice from the other party, either party may:
(i) deliver notice accepting the terms contained in the other party's notice; or
(ii) deliver notice continuing negotiations by making another offer; or
(iii) deliver notice that this Contract will become void at 9 p.m. on the 3rd Day following receipt, unless the recipient delivers to the other party Notice of the acceptance of the last received offer prior to the specified date and time, in which event the Contract will remain in full force and effect.

Failure of either party to respond within 3 Days after receipt of a notice from the other party will result in acceptance by both parties of the terms of the most recent notice.

©2009. Prince George's County Association of REALTORS®, Inc.
This Form is the property of the Prince George's County Association of REALTORS®, Inc. and is for use by its members only.
PGCAR Form #1301 - Addendum of Clauses

Produced with ZipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Unless otherwise agreed to in writing between the parties, this clause does not release Seller from any responsibilities as set forth in the Contract paragraphs titled: PERSONAL PROPERTY, FIXTURES AND UTILITIES, EQUIPMENT, MAINTENANCE AND CONDITION; CONDITION OF PROPERTY AND POSSESSION; WELL AND SEPTIC; TERMITE INSPECTION; AND TERMS, any other property condition paragraph, or any other provisions agreed to in the Contract and any addendum, amendment, or notice.

B.  Notice declaring the Contract null and void and of no further legal force and effect.

6.  **"AS IS" PROPERTY CONDITION.** The Property is sold as is and shall be delivered "As Is" physical condition to be determined as of the ☒ Date of Contract Acceptance, ☐ date of Home Inspection OR ☐ (other) _____ _____ . The Seller makes no representation or warranty, express or implied, as to the condition of the Property or any equipment or system contained therein. All clauses in this Contract pertaining to Property condition, termites or compliance with city, state or county regulations are hereby deleted from this Contract. The Seller will have no obligation to make repairs to the electrical, plumbing, heating, air conditioning, or any other mechanical system, equipment or fixture. Smoke detectors will be installed as required by the laws or regulations of the appropriate jurisdiction. The property shall be delivered free and clear of trash and debris and broom clean. Lender's Requirements shall be complied with by Buyer.

7.  **GENERAL INSPECTION CONTINGENCY (no walkaway).** The Buyer has the right, until 9 p.m. on the _____ day after the Date of Contract Acceptance (Deadline), for an inspection of the Property by the Buyer, a home inspection firm and/or other qualified contractor representative(s) at the Buyer's discretion and expense. Seller will have all utilities in service at the time of inspection(s).

8.  **GENERAL INSPECTION CONTINGENCY (with walkaway).** This Contract is contingent until 9 p.m. on the **15** day after the Date of Contract Acceptance (Deadline) for an inspection of the Property by the Buyer, a home inspection firm and/or other qualified contractor representative(s) at the Buyer's discretion and expense. Seller will have all utilities in service at the time of inspection(s). This contingency will terminate at the Deadline unless by the Deadline, the Buyer Delivers to the Seller Notice declaring the Contract null and void and of no further force and effect. Buyer's deposit shall be refunded in accordance with the DEPOSITS paragraph of the Contract.

9.  **GIFT LETTER.** The Contract is contingent until 9 p.m., on the _____ day after the Date of Contract Acceptance ("Deadline") upon Buyer providing to Seller a Gift Letter and necessary documentation satisfactory to Lender ("Gift Letter") in the amount of $ _____ from _____ . At anytime after the Deadline, but prior to delivery to Seller of the Gift Letter, Seller, upon written notice to Buyer, may declare the Contract null and void and of no further force and effect. Once the Gift Letter has been delivered, in the event Buyer does not have the gift funds to proceed to settlement as provided in the Contract, Buyer shall be in default.

10. **SALE OF BUYER'S PROPERTY AND KICKOUT.** This Contract is contingent until 9 p.m. on the _____ day after the Date of Contract Acceptance ("Deadline") upon the sale of Buyer's property located at _____ _____ ("Buyer's Property"). If Buyer does not satisfy or remove this contingency by the Deadline pursuant to Paragraph 10C below, then at any time after the Deadline, but prior to Buyer satisfying or removing this contingency, either Seller or Buyer may declare the Contract null and void by providing written notice to the other party.

A.  Seller may continue to offer the Property for sale and accept bona fide back-up offers to the Contract. If during the term of this contingency, a back-up offer is accepted, Seller shall deliver written notice to Buyer requiring that this contingency be satisfied or removed by Buyer pursuant to Paragraph 10C below not later than 9 p.m. on the _____ day following delivery of the notice from Seller to Buyer.

B.  Buyer's Property shall be listed exclusively with and actively marketed by a licensed real estate broker and entered into a multiple listing service within 3 days from the Date of Acceptance.

C.  Buyer may either:

(i)  satisfy this contingency by delivering to Seller a copy of the contract for the sale of Buyer's Property with evidence that all contingencies under the contract of sale, other than financing, have been removed or waived, together with a

©2009. Prince George's County Association of REALTORS®, Inc.
This Form is the property of the Prince George's County Association of REALTORS®, Inc. and is for use by its members only.
ᴾGCAR Form #1301 - Addendum of Clauses

Rev. 5/09
Page 2 of 5
Joe Johnson.zf

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: B8744763-0EDE-44A7-9751-1CA62817DD1C

prequalification letter as described in the Qualification Letter Contingency Paragraph 4 of this Addendum for the purchase of Buyer's Property; or

(ii) remove this contingency by delivering to Seller (a) Lender's commitment letter stating that the financing for the purchase of Buyers' Property is not contingent in any manner upon the sale and settlement of any real estate of Buyer or obtaining a lease of any real estate owned by Buyer and that Buyer has sufficient funds available for the down payment and closing costs necessary to complete settlement; or (b) evidence of sufficient funds available to complete settlement without obtaining financing and the sale and settlement of Buyer's Property.

D.  If Buyer satisfies the requirements of Paragraph 10C(i) above, the Contract will remain contingent upon the settlement of Buyer's Property. Settlement under the Contract may not be delayed more than _____ days after the settlement date (as specified in the Contract) without the parties' written consent. If a further delay is required to obtain coinciding settlements and the parties do not agree, then the Contract, upon written notice by either Seller or Buyer, may be declared null and void. If at any time the contract for the sale of Buyer's Property becomes void because of a failure of a contingency in the contract of sale for Buyer's property, Buyer shall immediately deliver written notice to Seller together with evidence of a written release of the contract of sale at which time either Seller or Buyer, upon written notice, may declare the Contract null and void by delivering notice to the other party.

☐ +    11.  **COINCIDING SETTLEMENTS.** Settlement on the Contract is contingent upon the settlement on the contract for the sale of Buyer's Property located at _____ ("Buyer's Property"). A copy of said contract is attached evidencing that all contingencies, other than financing, have been removed or waived, along with a prequalification letter as described in the Qualification Letter Contingency Paragraph of this Addendum for the purchase of Buyer's Property. Settlement under the Contract may not be delayed more than _____ days after the settlement date as specified in the Contract without the parties' prior written consent. If a further delay is required to obtain coinciding settlements and the parties do not agree, upon written notice by either Seller or Buyer the Contract may be declared null and void. If at any time the contract for the sale of Buyer's Property becomes void because of a failure of a contingency in the contract of sale for Buyer's property, Buyer shall immediately deliver written notice to Seller together with evidence of a written release of the contract of sale at which time either Seller or Buyer upon written notice may declare the Contract null and void by delivering notice to the other party.

☐ +    12.  **OPTION TO KEEP HOUSE ON MARKET.** Seller may continue to offer the Property for sale and accept bona fide back-up offers to the Contract. If during the contingency period(s) as set forth in Paragraph 10 _____ of this Addendum or Paragraph #'s _____ of form # _____ , a back-up offer is accepted, Seller shall deliver written notice to Buyer as provided in Paragraph 10 of this Addendum.

☐ +    13.  **CONTINGENT ON SELLER PURCHASING ANOTHER HOME.** The Contract is contingent until 9 p.m. on the _____ day from the Date of Contract Acceptance (Deadline) to allow Seller to enter into a contract of sale to purchase another home of Seller's election. This provision and the Contract will remain in full force and effect unless, prior to the Deadline, Seller, upon written notice to Buyer shall declare the Contract null and void.

☐ +    14.  **PRE-SETTLEMENT OCCUPANCY AND LEASE AGREEMENT.** See attached Addendum - PGCAR #1316

☐ +    15.  **POST-SETTLEMENT OCCUPANCY AND LEASE AGREEMENT.** See attached Addendum - PGCAR #1315

☐ +    16.  **BACK-UP CONTRACT OR OFFER.** The Contract is first back-up to another contract of sale dated _____ , between Seller and _____ as Buyer ("the Primary Contract"). The Contract shall become the primary contract immediately upon delivery of notice from Seller to Buyer that the other contract is of no further force and effect along with a copy of the fully executed release of the Primary Contract. Buyer, upon written notice to Seller, may declare the Contract null and void and of no further force and effect at any time prior to the Contract becoming the primary contract of sale. If the Primary Contract settles, this Contract shall be null and void. The rights and obligations of the parties under the Primary Contract are superior to the rights and obligations of the parties to the back-up contract.

©2009. Prince George's County Association of REALTORS®, Inc.
This Form is the property of the Prince George's County Association of REALTORS®, Inc. and is for use by its members only.

DocuSign Envelope ID: B8744763-DEDE-44A7-9751-1CA82817DD1C

☐ ✛ **17. LICENSED SELLER/BUYER AGENT.** The parties acknowledge that _____ is a licensed real estate sales person, in _____ (DC, MD, VA) associated with _____ and may share in the brokerage fee to be paid and is Buyer, Seller or is related to one of the Parties hereto.

☐ ✛ **18. HOLDING DEPOSIT CHECKS.** It is understood and agreed by all Parties that Buyer has instructed the Agent to hold and not deposit the deposit check until _____ days after Date of Acceptance at which time said check shall be deposited as specified in the Contract.

☐ ✛ **19. INSPECTION - MOLD.** See attached MAR Addendum PGCAR Form #1405.

☐ ✛ **20. INSPECTION/CERTIFICATION - WELL.** See attached MAR Addendum PGCAR Form #1403A or 1403B.

☐ ✛ **21. INSPECTION - ON-SITE SEWAGE DISPOSAL SYSTEM INSPECTION AND TEST (OSDS).** See attached MAR Addendum PGCAR Form #1406.

☐ ✛ **22. RADON TESTING.** See attached PGCAR Addendum #1402.

☐ ✛ **23. LEAD PAINT.** See attached addendum PGCAR Form #1404.

☐ ✛ **24. INSPECTION - ENVIRONMENTAL.** See attached MAR Addendum PGCAR Form #1401.

☐ ✛ **25. THIRD PARTY APPROVAL.** See attached MAR Addendum PGCAR Form #1326.

☐ ✛ **26. TRANSFER OF DEPOSIT.** It is agreed that the deposit specified in the Contract is currently held by _____ and was deposited on a prior contract. The total amount of any and all deposits received from Buyer by _____ is $ _____ who is authorized to transfer said deposit to this Contract.

☐ ✛ **27. SUBJECT TO AN EXISTING LEASE.** Buyer agrees to take title to the property subject to the existing lease(s). Buyer(s) has been provided with copy(ies) of said lease(s); has read said lease(s) inspected said lease(s) and is fully familiar with all the covenants, terms and conditions contained therein. Seller(s) agrees to transfer any and all security deposit(s) plus accrued interest at the statutory rate to Buyer and to adjust rents as of the date of settlement. At settlement, Seller shall deliver to Buyer a letter to the current tenant(s), signed by he Seller, to advise the tenant(s) of the fact that the Property has been sold; the name and address of the new owner (now landlord); the fact that the tenant(s) security deposit, plus accrued interest, has been transferred to the new landlord; and directions to the tenant(s) to make all future payment of rent to the new landlord at the address as set forth in the notice to tenant(s).

☐ ✛ **28. BROKERAGE FEE PAID BY BUYER.** It is understood and agreed by all parties that _____ , affiliated with (company name) _____ , is acting as an agent solely representing Buyer in this transaction ("Buyer's Broker".) Seller has no obligation to Buyer's Broker, and does not owe a brokerage fee or other consideration of any nature to said Buyer's Broker. The settlement officer is directed to collect from Buyer's funds, at settlement, and to disburse said fee, as per the separate written Buyer's Broker Agreement between Buyer's Broker and Buyer. This Buyer's Broker's fee is separate and apart from any brokerage fee owed to the Listing Broker by Seller pursuant to the Contract. The parties acknowledge that the said Buyer's Broker relationship was disclosed to Seller and/or Seller's agent prior to showing the Property to Buyer.

©2009. Prince George's County Association of REALTORS®, Inc.
This Form is the property of the Prince George's County Association of REALTORS®, Inc. and is for use by its members only.

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: B8744763-0EDE-44A7-9751-1CA528170D1C

☐ ✛ **29. AGREEMENT BETWEEN SELLER (FSBO/BUILDER) AND BUYER'S BROKER.** It is understood and agreed by all parties that _____ , affiliated with _____ , is acting as an agent solely representing Buyer in this transaction ("Buyer's Broker".) Seller agrees to pay to Buyer's Broker a brokerage fee in the amount equal to $ _____ or _____ % of the Purchase Price. The settlement officer is directed to deduct from the proceeds of the sale at settlement and to disburse said brokerage fee, as per the separate written FSBO/Builder Agreement between Buyer's Broker and Seller. The parties acknowledge that the said Buyer's Broker relationship was disclosed to Seller and/or Seller's agent prior to showing the Property to Buyer.

☐ ✛ **30. COMMON DRIVEWAY.** Buyer is advised that this property shares a driveway in common with _____

☐ ✛ **31. INTEREST-BEARING ACCOUNT DEPOSIT.** The Parties direct _____ _____ , Broker, to place the deposit in an interest-bearing escrow account. Interest shall accrue and be payable to Buyer at time of settlement. For accounting purposes, Buyer's social security number is _____ . A Processing fee of $ _____ shall be charged to the party receiving the interest by the above Broker for this service. In the event of a forfeiture of deposit, any interest accrued shall be payable to Seller.

☐ ✛ **32. IRS Section 1031 TAX DEFERRED EXCHANGE (Seller).** The parties acknowledge, affirm and agree that the Seller shall have the option of effecting a Section 1031 Tax Deferred Exchange at no additional expense or liability to the Buyer. The intention of the Parties is for the Seller/Exchanger to use Section 1031 of the Internal Revenue Code to postpone taxes by exchanging the Property for other property to be designated later and acquired through a trust established at Settlement. The Buyer and Seller/Exchanger will execute necessary documents to complete the exchange, including any assignments or trust agreements.

The Seller will pay all expenses associated with the tax deferred exchange and hold the Buyer harmless from any liability in connection therewith.

All references to "Seller" in the Contract shall mean Seller/Exchanger.

☐ ✛ **33. IRS Section 1031 TAX DEFERRED EXCHANGE (Buyer).** The parties acknowledge, affirm and agree that the Buyer is acquiring the Property as the replacement to complete a Tax Deferred Exchange under section 1031 of the Internal Revenue Code. The Seller will cooperate to complete this transaction, however, the Seller shall bare no additional expense or incur any additional tax in order to do so.

☐ ✛ **34. HOME WARRANTY:** ☐ Buyer ☐ Seller   agrees to provide and pay for, at Settlement, a Home Warranty with the following terms and specifications; Cost not to exceed $ _____
Warranty Company Name: _____
Warranty Issued for term of: _____

*Joe Johnson*
DocuSigned By: Joe Johnson
38F50D7223FB4AE...

__10/21/2009__                    _____
Buyer                    Date    Seller                                    Date
**Joe Johnson**                  **owner of record**


_____         _____
Buyer                    Date    Seller                                    Date

©2009. Prince George's County Association of REALTORS®, Inc.
This Form is the property of the Prince George's County Association of REALTORS®, Inc. and is for use by its members only.

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



# CORRIDOR MORTGAGE GROUP

11/12/2009

Pre Approval Letter

For:    Joe Johnson
        5822 Holly Springs Drive
        Capitol Heights, MD

To Whom It May Concern:

Based on analysis of the above applicant's **disclosed employment history, income, available funds to close, and credit history**, Corridor Mortgage Group can give pre-approval for **FHA** financing with a purchase price of **$110000**.

Corridor Mortgage Group's final commitment will be subject to the following items of information:

- ratified sales contract
- satisfactory appraisal for the sales price
- final underwriting review

This pre-approval is also subject to verification of all financial information disclosed by the applicant, and may be withdrawn if future information is received that adversely affects the applicant's ability to qualify.

The interest rate used in this pre-approval is 5.5%.

This letter is not the final commitment by the lender.

Sincerely,

*Margaret A Swan*

Margaret Swan
Senior Loan Officer

Corridor Mortgage Group, Inc. 11085 Stratfield Court Marriottsville MD 21104
Phone: 410-313-9900 • Fax: 410-313-8200

Joe Johnson
2600 Brinkley Road PH 1005
Fort Washington MD 20744

citibank

10024

15-7301 552250

DATE 10/29/09

PAY TO THE
ORDER OF  Key Realty Group LLC                    $1,000 —

— One Thousand & 00/100 —————————————— DOLLARS

Citibank, F.S.B.
Washington DC OFFICE
MEMO  Land GRZ Hot Springs

⑆254070116⑆ ⑈673843910567 10024

Nov 04 09 10:54p    Steve Hudson    410 730-7931    P.1

DocuSign Envelope ID: 13F326C7-A0B8-4B4C-B736-511934BBF3B1

## Case Number: 1350776

## CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE

**WARNING: THIS CONTRACT HAS SUBSTANTIAL LEGAL CONSEQUENCES AND THE PARTIES ARE ADVISED TO CONSULT LEGAL AND TAX COUNSEL.**

Taylor, Bean & Whitaker Mortgage Corp., a Florida Corporation (Seller) whether one or more, and _____
_____ Joe Johnson _____ (Buyer,)
whether one or more, do hereby covenant, contract and agree as follows:

1.   AGREEMENT TO SALE AND PURCHASE: Seller agrees to sell, and Buyer agrees to buy from Seller the property described as follows: *(complete adequately to identify property)*

Lot 6458 Block _____ Unit #1-6, Phase/Section _____ of *The Villes* _____ Subdivision
recorded in Plat Book _____ Page(s) _____ , _____ County, Maryland.

Address: 5822 *Holly Spring Dr.#1-6 Capitol Heights MD 20743*

Or, being more specifically described as follows (or use attached exhibit):
_____

Together with the following items, if any: *(Strike items to be retained by Seller)* curtains and rods, draperies and rods, valances, blinds, window shades, screens, shutters, awnings, wall-to-wall carpeting, mirrors fixed in place, ceiling fans, attic fans, mail boxes, television antennas and satellite dish system with controls and equipment, permanently installed heating and air-conditioning units, window air-conditioning units, built-in security and fire detection equipment, plumbing and lighting fixtures including chandeliers, water softener, stove, built-in kitchen equipment, garage door openers with controls, built-in cleaning equipment, all swimming pool equipment and maintenance accessories, shrubbery, landscaping, permanently installed outdoor cooking equipment, built-in fireplace screens, artificial fireplace logs and all other property owned by Seller and attached to the above described real property except the following property which is not included *(list items not included):* NIA

All property sold by this contract is called the "Property."

2.   SALES PRICE:   The parties agree to the following sales price:

| | Amount | Amount |
|---|---|---|
| Purchase Price | $ 110,000 | |
| Earnest Money | | $1,000.00 |
| New Loan | | $ |
| Assumption of Loan | | $ |
| Seller Financing | | $ |
| Cash at Closing | | $ 109,000 |
| Total ( both columns should be equal) | $ 110,000.00 | $ 110,000.00 |

Both columns should be an equal amount.

If the unpaid principal balance(s) of any assumed loan(s), if any, as of the Closing Date varies from the loan balance(s) stated above, the cash payable at closing will be adjusted by the amount of any variance.

Buyer Initials _____        - 1 -        Seller Initials _____

DocuSign Envelope ID: 13F326C7-A0B8-4B4C-B736-511934BBF3B1



## TB&W REO ADDENDUM TO SALE AND PURCHASE AGREEMENT

SELLER: Taylor, Bean & Whitaker Mortgage Corp
BUYER: Joe Johnson
CASE#: 1332776   PROPERTY ADDRESS: 5822 Holly Sprg Dr #156
Capital Heights MD
207

1.   Buyer acknowledges that the Seller obtained the property by foreclosure or deed in lieu of foreclosure. In the event a circumstance arises that would prevent the Seller from being able to perform on this Addendum and/or the Sale and Purchase Agreement, at Seller's option and in Seller's sole discretion, Seller may notify Buyer that the Sale and Purchase Agreement is cancelled and the earnest money deposit shall be returned to Buyer and Seller shall have no further obligation to sell or convey the property to Buyer.

2.   Buyer accepts the property in its "AS IS, WHERE IS, AND WITH ALL FAULTS" condition at the time of closing, including any hidden defects, known or unknown. Buyer acknowledges that neither Seller nor its agents have made any representations or warranties, implied or expressed, relating to the condition of the property. Seller and its agents shall not be responsible for the repair, replacement or modification of any deficiencies, malfunctions, or mechanical defects in the materials, workmanship and mechanical components of the apartment structures and improvements prior or subsequent to closing. Items of personal property are not included in this sale. Seller makes no representation or warranty, express or implied, as to the condition of personal property, title to personal property or whether any personal property is encumbered by liens. Buyer agrees that Seller shall have no liability for any claim or losses Buyer or Buyer's successors may incur as a result of any condition or other defect which may now or hereafter exist with respect to the property. The property has neither been habited in nor inspected by Seller.

This Property is being sold in its existing condition. Seller will make no repairs and will convey this Property without any representations or warranties, either expressed or implied. There may be material facts of which the Seller is not aware of, which may be discoverable to the casual observer or qualified expert, or latent hidden defects, which time may reveal. The Seller is not responsible for any defects, whether visible, latent, hidden or otherwise.

The Buyer is advised to obtain professional Property inspections and to inspect all public records relating to the Property. The improvements on the Property may not conform to current building codes and/or may not have all required building permits. Buyer is strongly advised to inspect all public records, have a professional home inspection to ascertain the exact condition of the Property and make reasonable inquiries regarding individual concerns before inspection contingency deadlines contained in the Agreement.

Buyer acknowledges that the Property is being sold "As-Is", where is, with all faults. Prior to closing, Buyer will make such inspections of the conditions of the Property, as Buyer deems necessary at Buyer's discretion. Seller makes and has made, no representations or warranties as to the condition of the Property and specifically disclaims and excludes any and all warranties, expressed or implied, oral or written.

3.   Title Agents.  Closing shall be held at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for title insurance, or if no title insurance, designated by Seller.

4.   Inspections: Buyer acknowledges that it is the Buyer's sole responsibility and expense to obtain inspections of the property by qualified professionals to look for defects. Buyer(s) may request that the Sale and Purchase Agreement be canceled if, within have Ten (10) calendar days from the contract date, the property is inspected by a professional home inspector who discovers a structural, roof, system defect, or non-compliance with local codes, zoning, or building requirements that TB&W elects not to correct, or if within such 10 day period, the property is inspected for the presence of radon by a professional radon inspector to an extent unsatisfactory to you. A copy of the property inspection report, or radon test report, as applicable, must be attached to the cancellation request. The cancellation contingency is limited to structural, roof, defective components within the mechanical and operating systems (which include the electrical, plumbing, sewage, heating and air conditioning systems only) or non-compliance with local codes, zoning, or building requirements. Kitchen appliances, window air conditioner units, light fixtures, receptacles, minor issues and switch covers are not included in the operating systems. Equipment age or energy efficiency ratings are not included in the

1|Page

DocuSign Envelope ID: 13F326C7-A0B8-4B4C-B736-511934BBF3B1

cancellation contingency. The earnest money deposit will be returned ONLY IF TRUBY, in its sole and reasonable discretion, concurs with the home inspection report finding(s). Buyer shall have five (10) calendar days from the contract date to have all inspections completed by a professional inspection company or licensed contractor. Any notice of cancellation must be provided to the Seller in writing within three (3) days from the end of the inspection time period, otherwise the Buyers right to cancel under this contingency shall be removed. If the property is winterized prior to Buyers inspections, and the inspections Buyer wishes to perform require the property to be de-winterized, Buyer agrees to provide Seller notice of the specific date and time of Buyers inspection so Seller can have the property re-winterized immediately following the inspection. Buyer agrees to give Seller 72 hours written notice prior to any de-winterization of the property at renhelp@stevehudson.com. Failure to provide said notice will make Buyer responsible for any damage resulting from the property not being winterized. If Buyer chooses not to make inspections, Seller and Seller's agent will be held harmless in the event of any mechanical failures or structural defects.

5.     Buyer agrees to indemnify Seller and fully protect, defend, and hold Seller, its agents, employees and contractors, harmless from and against any and all claims, costs, liens, loss, damages, attorney's fees and expenses of every kind and nature that may be sustained by or made against Seller or any damage to the property of any adjoining property, or any injury to Buyer or any other person that may result from or arise out of inspections made by buyer or its agents, employees and contractors prior to closing.

6.     Repairs by Seller. Seller's obligation to make repairs shall be limited to those repairs that it has agreed to make provided such agreement is in writing and is contained in the Sale and Purchase Agreement or any Addendum thereto, including this Addendum. Except for the foregoing, Seller shall not be obligated for any repairs of any nature whatsoever.

7.     If this sale is being financed, Buyer shall have five (5) business days from the date of the Sale and Purchase Agreement to make loan application. The Sale and Purchase Agreement may be cancelled by Seller in the event Buyer is not "prequalified" within five (5) business days from the date of the Sale and Purchase Agreement. Buyer shall be responsible to provide written evidence of Buyers "Pre-Approval / Pre-Qualification" by a Mortgage Lender to Seller within said time frame. If Buyer fails to provide said written evidence, the Seller, at Sellers option shall have the option of cancelling the Sale and Purchase Agreement with a return of deposit monies to the Buyer.

8.     Notwithstanding any other provision of the Sale and Purchase Agreement (including, if applicable, any financing contingency), in no event shall the Sale and Purchase Agreement be contingent upon the ability of the Buyer to sell or close other real estate owned by the Buyer.

9.     This will transfer with a Special or Limited Warranty Deed, Cash Sale Deed, or Quit Claim Deed depending on the state where the property is located and the laws of title transfer in that state. All parties to the sale are to be made aware to allow ten (10) to twenty (20) business days for the execution of the Deed.

10.    Buyer absolutely may not occupy the property nor make any repairs, prior to closing and funding. Buyer shall be in default of the Sale and Purchase Agreement in the event Buyer occupies and alters the property prior to closing.

11.    Termination of Contract. In the event the Sale and Purchase Agreement is terminated by Seller pursuant to any provision of the Sale and Purchase Agreement, this Addendum, or any other addendum to the Sale and Purchase Agreement, Seller's sole liability to Buyer will be to return the deposit monies with no further obligations, liabilities or responsibilities to one another. Buyer agrees to release Seller from all liability associated with the Sale and Purchase Agreement upon return of the deposit by Seller.

12.    Buyer acknowledges that Seller acquired title to the subject property through deed-in-lieu, judicial foreclosure, or at a non-judicial foreclosure sale properly conducted at the request of Seller in connection with a previous loan made by Seller that defaulted resulting in said foreclosure sale. Buyer further acknowledges that Seller has not conducted any investigation, test or inspection of, and that Seller has no knowledge (actual, constructive or inquiry) of any lead-based paint or lead-based paint hazards at, on, in or about the Property. Any information made available to Buyer in connection with lead-based paint and lead-based paint hazards concerning the Property are made a part of this Sale and Purchase Agreement.

2 | P a g e

DocuSign Envelope ID: 13F326C7-A0B8-4B4C-B736-511934BBF3B1

13. Buyer further acknowledges that Seller's acquisition of title to the Property through deed-in-lieu, judicial foreclosure, or at a non-judicial foreclosure sale may require additional time to obtain proper recorded title to the Property. Buyer acknowledges that closing may be postponed to delay closing so that Seller may obtain recorded title to the Property. Buyer shall indemnify Seller and fully protect, defend, and hold Seller, its agents, employees and contractors, harmless from and against any and all claims, costs, liens, loss, damages, attorney's fees and expenses of every kind and nature that may be made against Seller, or any injury to Buyer or any other person that may result from or arise out of a delay in closing under this Section.

14. Waiver of Trial by Jury. Seller and Buyer knowingly and conclusively waive all rights to trial by jury in any action or proceeding relating to this Sale and Purchase Agreement.

15. Conflict. In the event a conflict between the Sale and Purchase Agreement and this Addendum, this Addendum shall govern. However, unless specifically amended herein, all of the terms and conditions of the Sale and Purchase Agreement shall remain in full force and effect.

16. Utilities: It is the responsibility of the Buyer to have the utilities turned on in their name if the Buyer requires any utilities on in order to facilitate inspections the Buyer wishes to conduct on the property. The Buyer or agent for the same hereby holds the Seller harmless and assumes full responsibility for any and all related deposits, connection and usage fees associated with this activation. The Buyer further assumes full financial responsibility for any damages, which may occur as a result of the above action. Once a utility has been turned on, Buyer may choose to leave it on in their name if the closing is less than 30 days away. If closing is longer than 30 days, Buyer shall have the utility turned off after the reason for the utility being turned on has been accomplished.

17. Seller makes no representations as to the property's compliance with any applicable building code or zoning ordinance. Any obligation of Seller to obtain a compliance certificate relating to the property (such as a certification relating to smoke detectors, certificate of occupancy, etc.) is assumed by the Buyer and shall not apply in the event the property is not in habitable condition, unless otherwise required by law. Therefore, it is understood between the parties that the Buyer is solely responsible, at the Buyer's own expense, to obtain a certificate of occupancy, smoke detector certificate, or any other certificate, and provide them to Seller's attorney/closing agent prior to closing.

18. Buyer agrees to pay to the Seller at time of closing an administrative fee in the amount of $300 for the processing and fees involved in REO transactions.

19. There may be multiple counter offers pending. Seller's signature on final accepted offer is deemed acceptance of that offer only.

20. **THIS ADDENDUM AND THE SALE AND PURCHASE AGREEMENT ARE NOT ASSIGNABLE BY THE BUYER.**

The undersigned approve and accept this addendum and acknowledge this addendum to be a part of the Sale and Purchase Agreement.

Purchaser: _____

Date: _____

Seller: Taylor, Bean & Whitaker Mortgage Corp.

Date: _____

Purchaser: «CoBuyer»

Date: _____

DocuSign Envelope ID: 13F326C7-A0B8-4B4C-B736-511934BBF3B1

15. REPRESENTATIONS: Seller represents that as of the Closing Date (a) there will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing payment of any loans assumed by Buyer and (b) assumed loans will not be in default. If any representation in this contract is untrue on the Closing Date, this contract may be terminated by Buyer and the earnest money will be refunded to Buyer. All representations contained in this contract will survive closing.

16. FEDERAL TAX REQUIREMENT: If Seller is a "foreign person", as defined by applicable law, or if Seller fails to deliver an affidavit that Seller is not a "foreign person", then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. IRS regulations require filing written reports if cash in excess of specified amounts is received in the transaction.

17. AGREEMENT OF PARTIES: This contract contains the entire agreement of the parties and cannot be changed except by their written agreement.

18. NOTICES: All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile machine as follows:

To Buyer at:                                        To Seller at:

2600 Brinkley Rd. PH 1005                          Taylor, Bean & Whitaker Mortgage Corp.
2720 Crestonie

Fort Washington, 20744                             Attn: Pam Carney
Districk Heights, MD 30747

Telephone   240 605-9921                           315 NE 14th Street, Ocala, FL 34470

Facsimile _____                          Telephone (352)690-9458

                                                   Facsimile (352)732-9458

19. ASSIGNMENT: This agreement may not be assigned by Buyer without the consent of Seller. This agreement may be assigned by Seller and shall be binding on the heirs and assigns of the parties hereto.

20. PRIOR AGREEMENTS: This contract incorporates all prior agreements between the parties, contains the entire and final agreement of the parties, and cannot be changed except by their written consent. Neither party has relied upon any statement or representation made by the other party or any sales representative bringing the parties together. Neither party shall be bound by any terms, conditions, oral statements, warranties, or representations not herein contained. Each party acknowledges that he has read and understands this contract. The provisions of this contract shall apply to and bind the heirs, executors, administrators, successors and assigns of the respective parties herein. When herein used, the singular includes the plural and the masculine includes the feminine as the context may require.

21. EMINENT DOMAIN: If the property is condemned by eminent domain after the effective date hereof, the Seller and Buyer shall agree to continue the closing, or a portion thereof, or cancel this Contract. If the parties cannot agree, this contract shall ☐ remain valid with Buyer being entitled to any condemnation proceeds at or after closing, or ☒ be cancelled and the earnest money returned to Buyer.

Buyer Initials _____            - 6 -            Seller Initials _____

DocuSign Envelope ID: CB434E35-C9EE-4A1E-A3E9-02D612821B66

DocuSign Envelope ID: 13F326C7-A0B8-4B4C-B738-611934BBF3B1

22.   OTHER PROVISIONS
      Home is being sold "as is, where is" NO said written or implied warranties offered.

      15 Day Financing Contingency

      _____

      _____

      _____

      _____

      _____

      _____

23.   TIME IS OF THE ESSENCE IN THE PERFORMANCE OF THIS AGREEMENT.

24.       GOVERNING LAW:  This contract shall be governed by the laws of the State of Maryland.


          Whether or not listed above, deadlines contained in this Contract may be extended informally by a writing signed by the
          person granting the extension except for the closing date which must be extended by a writing signed by both Seller and
          Buyer.

      EXECUTED the  5  day of  Nov 2009  , 2002 (THE EFFECTIVE DATE).
          38F60D7223F94AE...

      _Joe Johnson_____
      Buyer Signed By: Joe Johnson          Seller: Taylor, Bean & Whitaker Mortgage Corp.


      Buyer: _____          Seller: _____


      Buyer Initials _____          - 7 -          Seller Initials _____

DocuSign Envelope ID: 13F326C7-A0B8-4B4C-B736-511934BBF3B1



EXHIBIT FOR DESCRIPTION OR ATTACH SEPARATE DESCRIPTION

Buyer Initials _____    - 8 -    Seller Initials _____

DocuSign Envelope ID: 13F326C7-ADB8-4B4C-B736-511834B8F3B1

## Taylor, Bean & Whitaker Mortgage Corp.
### Utility Activation

Date: _11/3/09_                Agent: _Stephen Hudson_

Broker: _ZIP Realty_          Fax: _866-667-5248_

Office Phone No: _703-373-4320_  Cell Phone No: _240-460-7524_

Buyer: _Joe Johnson_

TBW Case Number: _1350776_

Property Address: _5822 Holy Spring Dr. #1-6 Capitol Heights MD-20743_

> ### Step 1. Please Review Policy, Sign & Send with Contract

When you receive written permission (see Step 2.) from Taylor, Bean & Whitaker Mortgage Corp., the utilities can be turned on in the purchaser's name. The undersigned purchaser or agent for the same hereby holds Taylor, Bean & Whitaker Mortgage Corp. harmless and assumes full responsibility for any and all related deposits, connection and usage fees associated with this activation. The undersigned further assumes full financial responsibility for any damages, which may occur as a result of the above action.

Please sign below accepting the above terms and conditions and submit along with your contract package.

Buyer: _____

Date: _____

Buyer: _____

Date: _____

Stephen Hudson
Selling Agent: Stephen Hudson

11/3/2009
Date

> ### Step 2. Form will be faxed to you from Property Management

*(This area to be filled out by Taylor, Bean &Whitaker Mortgage Corp.)*
**This following utilities may be activated and tested:**

Gas:        x Yes    ☐No

Electric:    x Yes    ☐No

Water:      x Yes    ☐ No (Air test systems only)

APPROVAL: _____    DATE: _____

1 | P a g e

DocuSign Envelope ID: 13F328C7-AD88-4B4C-B736-511934BBF3B1

## Taylor, Bean & Whitaker Mortgage Corp.
### Utility Activation Check List

Before the utilities are scheduled to be turned on complete the following check list:

☐ Turn All Breakers Off including main and subpanels

☐ Check for any visible broken pipes (if found notify us immediately)

☐ Check all appliances gas and water lines (☐dishwasher ☐fridge ☐washing machine)

☐ If appliances are missing make sure lines are capped off, such as open electrical or plumbing

☐ Turn off all hose bibs (water spickets)

☐ Turn off both washer connections

☐ Turn off the main valve to the water heater (located at top of water heater) & Ensure drain value at bottom of unit is closed

☐ Turn off all toilet shut off valves

☐ Turn off water shut off valves to all sinks, and move faucet handles into off position.

☐ It is strongly advised to have a licensed contractor or inspector present when turning on the utilities, to avoid any damage to the property.

☐ After water is turned on a walk through inspection should be done to check for leaks. It is also important to listen for leaks that could be occurring in walls or areas that cannot be seen. If a leak is found, ensure water main is cut off immediately and notify Taylor Bean and Whitaker.

I/We acknowledge receipt and understanding of the "Utility Activation Check List" addendum. The undersigned further assumes full financial responsibility for any damages, which may occur as a result of the utilities being turned on.

_____    _____
Buyer:    Buyer:

_____    _____
Date    Date

2|Page

DocuSign Envelope ID: 13F328C7-ADB8-4B4C-B736-511834BBF3B1

## TITLE INFORMATION

Name of Title Company: *Lakeforest title*

Address: *18310 Montgomery Village Ave #220*

Address: *Gaithersburg MD   20879*

Office Phone: *301-590-0500*

Fax Number: *301-590-0486*

Email Address: *Lakeforesttitle@aol.com*

Contact: *Marc Malakoff*


**ATTENTION: Properties will not be taken off the market until the contract is signed by both parties**


Also, please remember **ALL** Taylor Bean Homes are sold AS-IS! We only require a minimum escrow deposit of $1000. There is a $300 administrative fee that is charged to the buyer on **EVERY** file.

DocuSign Envelope ID: 13F328C7-A0B8-4B4C-B738-51193488F3B1

## Buyer's Information Sheet

### Taylor, Bean & Whitaker Mortgage Corp. REO

# PLEASE PRINT LEGIBLY

**WHAT NAME(S) DO YOU WANT ON THE CONTRACT:**

_Joe Johnson_

**SUBJECT PROPERTY ADDRESS:** _5822 Holly Spring Dr. #1-6_
_Capital Heights_

**Buyer #1 Name:** _Joe Johnson_    **Date Of Birth:** _5/31/20 MD 20743_

**Social Security No** (Needed to complete title insurance order): _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_

**Mailing Address:** _2600 Brinkley Rd PH 1005_

_Ft. Washington MD 20744_

**Marital Status:**    ☐ Single    ☐ Married    ☐ Widow

**Name of Spouse:** _____

**Home Phone:** _____

**Fax:** _____

**Work Phone:** _____

**Cell Phone:** _____

**Email Address:** _____

**Buyer #2 Name:** _____    **Date of Birth:** _____

**Social Security No.** (Needed to complete title insurance order) _____

**Mailing Address:** _____

_____

**Marital Status:**    ☐ Single    ☐ Married    ☐ Widow

**Name of Spouse:** _____

**Home Phone:** _____    **Work Phone:** _____

**Cell Phone:** _____    **Email Address:** _____

**Best way to communicate with you: (Please check the most appropriate one)**

☐ Home Phone        ☐ Cell Phone        ☐ Email

DocuSign Envelope ID: 13F326C7-A0B6-4B4C-B736-511934BBF3B1

**Receipt for Earnest Money Deposit  must be signed by the party holding the earnest money.**

### RECEIPT (YOU MUST ATTACH A COPY OF THE EARNEST MONEY)

Receipt of Earnest Money is acknowledged.

Signature:_____    Date: _____, 20____

By:_____

_____    Telephone (_____)_____
Address

_____    Facsimile (_____)_____
City        State        Zip Code

Buyer Initials _____            -9-            Seller Initials _____

ov 17 09 10:28a     Steve Hudson            410 730-7931          P. 1

Nov 16 08 10:14a     Steve Hudson           410 730-7931          P. 1
DocuSign Envelope ID: F44CBB5E-AA86-4831-8686-F27487CDFE14

DocuSign Envelope ID: 13F336C7-A068-464C-B736-5119348BF381

## Case Number: 1350776
## CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE

**WARNING: THIS CONTRACT HAS SUBSTANTIAL LEGAL CONSEQUENCES AND THE PARTIES ARE ADVISED TO CONSULT LEGAL AND TAX COUNSEL.**

Taylor, Bean & Whitaker Mortgage Corp., a Florida Corporation (Seller), whether one or more, and _____ Joe Johnson _____ (Buyer), whether one or more, do hereby covenant, contract and agree as follows:

1. AGREEMENT TO SALE AND PURCHASE: Seller agrees to sell, and Buyer agrees to buy from Seller the property described as follows: (complete adequately to identify property)

Lot 645 Block _____ Unit 1-6 Phase/Section _____ of The villas _____ Subdivision, as recorded in Plat Book _____ Page(s) _____ County, Maryland.

Address: 3822 Holly Spring Dr #1-6 Capital Heights MD 28743

Or, being more specifically described as follows (or see attached exhibit):

Together with the following items, if any: (Strike items to be retained by Seller) curtains and rods, draperies and rods, valances, blinds, window shades, screens, shutters, awnings, wall-to-wall carpeting, mirrors fixed in place, ceiling fans, attic fans, mail boxes, television antennas and satellite dish system, with controls and equipment, permanently installed heating and air-conditioning units, window air-conditioning units, built-in security and fire protection equipment, plumbing and lighting fixtures including chandeliers, water softener, stove, built-in kitchen equipment, garage door openers with controls, built-in cleaning equipment, all swimming pool equipment and maintenance accessories, shrubbery, landscaping, permanently installed outdoor cooking equipment, built-in fireplace screens, artificial fireplace logs and all other property owned by Seller and attached to the above described real property except the following property which is not included (list items not included): N/A

All property sold by this contract is called the "Property."

2. SALES PRICE: The parties agree to the following sales price: 126,900 .99

| | Amount | Amount |
|---|---|---|
| Purchase Price | $126,900 | |
| Earnest Money | | $1,000.00 |
| New Loan | | $ |
| Assumption of Loan | | $ |
| Seller Financing | | $ |
| Cash at Closing | | $125,900 |
| Total ( both columns should be equal) | $126,900 | $126,900 |

Both columns should be an equal amount.    $126,900   $126,900

125,900.99

If the unpaid principal balance(s) of any assumed loan(s), if any, as of the Closing Date varies from the loan balance(s) stated above, the cash payable at closing will be adjusted by the amount of any variance.

Buyer Initials _____          - 1 -          Seller Initials _____

09 10:28a    Steve Hudson           410 730-7931        P.

DocuSign Envelope ID: 13F326C7-A0B8-4B4C-B736-511934B6F3B1

A.   FINANCING: The following provisions apply with respect to financing:

☐   CASH SALE: This contract is not contingent on financing.

☐   OWNER FINANCING: Seller agrees to finance N/A_____ dollars of the purchase price pursuant to a promissory note from Buyer to Seller of $N/A_____, bearing N/A____ % interest per annum, payable over a term of N/A_____ years with even monthly payments, secured by a deed of trust or mortgage lien with the first payment to begin on the N/A day of N/A____, 20N/A.

☐   NEW LOAN OR ASSUMPTION: This contract is contingent on Buyer obtaining financing. Within 5 (FIVE) business days after the effective date of this contract, Buyer shall apply for all financing or noteholder's approval of any assumption, and obtain financing or assumption pre-approval. Financing or assumption approval will be deemed to have been obtained when the lender determines that Buyer has satisfied all of lender's financial requirements (those items relating to Buyer's net worth, income and creditworthiness). If Buyer intends to obtain a new loan, the loan will be of the following type:

☐ Conventional  ☐ VA  ☒ FHA  ☐ Other: 205K (0)_____

The following provisions apply if a new loan is to be obtained:

**FHA.** It is expressly agreed that notwithstanding any other provisions of this contract, the Purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the Purchaser (Buyer) has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement lender setting forth the appraised value of the Property of not less than $ PURCHASE PRICE. The Purchaser (Buyer) shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. The Purchaser (Buyer) should satisfy himself/herself that the price and condition of the Property are acceptable. Buyer herein out agrees and acknowledges Seller at his sole discretion reserves the right to cancel, terminate or release Purchaser (Buyer) if FHA Requirements require corrective action above and beyond 5% of purchase sales price. _____ _____ (Initials)      (Initials)

**VA.** If Buyer is to pay the purchase price by obtaining a new VA-guaranteed loan: It is agreed that, notwithstanding any other provisions of this contract, Buyer shall not incur any penalty by forfeiture of earnest money or otherwise be obligated to complete the purchase of the Property described herein, if the contract purchase price or cost exceeds the reasonable value of the Property established by the Veterans Administration. Buyer shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the reasonable value established by the Veterans Administration. The Purchaser (Buyer) should satisfy himself/herself that the price and condition of the Property are acceptable. Buyer herein out agrees and acknowledges Seller at his sole discretion reserves the right to cancel, terminate or release Purchaser (Buyer) if VA Requirements require corrective action above and beyond 5% of purchase sales price. _____ (Initials)    _____ (Initials)

**Existing Loan Review.** If an existing loan is not to be released at closing, Seller shall provide copies of the loan documents (including note, deed of trust or mortgage, modifications) to Buyer within N/A_____ calendar days from acceptance of this contract. This contract is conditional upon Buyer's review and approval of the provisions of such loan documents. Buyer consents to the provisions of such loan documents if no written objection is received by Seller from Buyer within N/A_____ calendar days from Buyer's receipt of such documents. If the lender's approval of a transfer of the Property is required, this contract is conditional upon Buyer's obtaining such approval without change in the terms of such loans, except as may be agreed by Buyer. If lender's approval is not obtained on or before N/A this contract shall be terminated on such date. The Seller ☒ shall ☐ shall not, be released from liability under such existing loan. If Seller is to be released and release approval is not obtained, Seller may nevertheless elect to proceed to closing, or terminate this agreement in the sole discretion of Seller.

Buyer Initials _____        - 2 -        Seller Initials _____

DocuSign Envelope ID: 13F326C7-A0B8-4B4C-B736-511934BBF3B1

Credit Information. If Buyer is to pay all or part of the purchase price by executing a promissory note in favor of Seller or if an existing loan is not to be released at closing, this contract is conditioned upon Seller's approval of Buyer's financial ability and creditworthiness, which approval shall be at Seller's sole and absolute discretion. In such case: (1) Buyer shall supply to Seller on or before N/A_____, at Buyer's expense, information and documents concerning Buyer's financial, employment and credit condition; (2) Buyer consents that Seller may verify Buyer's financial ability and creditworthiness; (3) any such information and documents received by Seller shall be held by Seller in confidence, and not released to others except to protect Seller's interest in this transaction; (4) if Seller does not provide written notice of Seller's disapproval to Buyer on or before N/A, then Seller waives this condition.

4. EARNEST MONEY: Buyer shall deposit $1,000.00 as earnest money with *Lakeforest Title* upon execution of this contract by both parties.

5. PROPERTY CONDITION:

INSPECTION PERIOD: Buyer will complete any inspection within 10 days from the contract date.

☒ Buyer accepts the property in its "as-is" condition. The purchaser has satisfied themselves as to the condition of the property and will not protest the Seller for corrections or unknown or known deficiencies or defects.

MAINTENANCE, INSPECTIONS, AND REPAIR: Seller will keep the Property in the same condition from Effective Date until closing, except for normal wear and tear ("maintenance requirement") required by this Contract. Seller will provide access and the Buyer will be responsible for connecting any and all utilities for inspections. Buyer will repair all damages to the Property resulting from the inspections and return the Property to its pre-inspection condition.

Buyer hereby represents that he has personally inspected and examined the above-mentioned premises and all improvements thereon. Buyer hereby acknowledges that unless otherwise set forth in writing elsewhere in this contract neither Seller nor Seller's representatives, if any, have made any representations concerning the present or past structural condition of the improvements. Buyer and Seller agree to the following concerning the condition of the property:

SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978. An addendum providing such disclosure ☒ is attached ☐ is not applicable.

Buyer agrees that he will not hold Seller or its representatives responsible or liable for any present or future structural problems or damage to the foundation or slab of said property. If the subject residential dwelling was constructed prior to 1978, Buyer may conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards, to be completed within 10 (TEN) days after execution of this agreement. In the alternative, Buyer may waive the opportunity to conduct an assessment/inspection by indicating said waiver on the attached Lead-Based Paint Disclosure form.

MECHANICAL EQUIPMENT AND BUILT IN APPLIANCES: All such equipment is sold ☒ as-is without warranty, or ☐ shall be in good working order on the date of closing. Any repairs needed to mechanical equipment or appliances, if any, shall be the responsibility of ☐ Seller ☒ Buyer.

UTILITIES: Water is provided to the property by UNKNOWN_____ Sewer is provided by UNKNOWN_____ Gas is provided by UNKNOWN_____. Electricity is provided by UNKNOWN_____.

Buyer Initials _____    -3-    Seller Initials _____

ocuSign Envelope ID: 13F329C7-A0B8-4B4C-B736-511934BBF3B1

Other: _____

_____

_____

_____

The present condition of all utilities is accepted by Buyer.

6.    CLOSING: The closing of this sale will be on or before ~~30 Days from the Effective Date~~ **Dec. 15, 2009** (unless extended pursuant to the terms hereof. Closing shall be held at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for title insurance, or if no title insurance, designated by Seller. The Closing will take place at _**Lakefront Title**_

Closing may be extended to within 7 days after objections to matters disclosed in the title abstract, certificate or Commitment or by the survey have been cured.

*If financing or assumption approved has been obtained*, the Closing Date will be extended up to 15 days if necessary to comply with lender's closing requirements (for example, appraisal, survey, state/use policies, lender-required repairs, closing documents). If either party fails to close this sale by the Closing Date, the non-defaulting party will be entitled to exercise the remedies contained herein. The closing date may also be extended by written agreement of all parties.

7.    DEED AND TITLE: Upon payment of the purchase price, a deed for the Property containing covenants of special warranty and further assurances shall be executed by Seller and shall convey the Property to Buyer. Title to the Property, including all chattels included in the purchase, shall be good and merchantable, free of liens and encumbrances except as specified herein, except for use and occupancy restrictions of public record which are generally applicable to properties in the immediate neighborhood or the subdivision in which the Property is located and publicly recorded easements for public utilities and any other easements which may be observed by an inspection of the Property. Buyer expressly assumes the risk that restrictive covenants, zoning laws or other recorded documents may restrict or prohibit the use of the Property for the purposes intended by Buyer.

In the event Seller is unable to give good and merchantable title or such as can be insured by a Maryland licensed title insurer, with Buyer paying not more than the standard rate as filed with the Maryland Insurance Commissioner, Seller, at Seller's expense, shall have the option of curing any defect so as to enable Seller to give good and merchantable title or, if Buyer is willing to accept title without said defect being cured, paying any special premium on behalf of the Buyer to obtain title insurance on the Property to the benefit of Buyer. In the event Seller elects to cure any defects in the title, this Contract shall continue to remain in effect and the date of settlement shall be extended for a period not to exceed fourteen (14) additional days. If Seller is unable to cure such title defects and is unable to obtain a policy of title insurance on the property on the Property to the benefit of Buyer, from a Maryland licensed title insurer, Buyer shall have the option of taking such title as Seller can give, or terminating this Contract, and being reimbursed by the Seller for cost of searching title as may have been incurred not to exceed ½ of 1% of the purchase price. In the latter event, there shall be no further liability or obligation on either of the parties hereto (except that Buyer shall be entitled to be reimbursed by Seller for actual costs (inspections, appraisals, escrow fees, etc.) incurred in furtherance of the attempted purchase of the Property), and this contract shall become null and void and all deposits hereunder shall be returned to Buyer in accordance with the terms of this Contract.

8.    APPRAISAL, SURVEY AND TERMITE INSPECTION: Any appraisal of the property shall be the responsibility of ☒Buyer ☐Seller. A survey is: ☐not required ☐required, the cost of which shall be paid by ☐Seller ☒Buyer. A termite inspection is ☐not required ☐required, the cost of which shall be paid by ☐Seller ☒Buyer. If a survey is required it shall be obtained within 5 days of closing.

9.    POSSESSION AND TITLE: Seller shall deliver possession of the Property to Buyer at closing. Title shall be conveyed to Buyer, if more than one as ☐ Joint tenants with rights of survivorship, ☐ tenants in common, ☐ Other: _____. Prior to closing the Property shall remain in the possession of Seller and Seller shall deliver the property to Buyer in substantially the same condition at closing, as on the date of this contract, reasonable wear and tear excepted.

Buyer Initials _____                        - 4 -                        Seller Initials _____

cuSign Envelope ID: 13F326C7-A0B8-4B4C-B736-511934BBF3B1

10. **CLOSING COSTS AND EXPENSES:** The following closing costs shall be paid as provided. *(Leave blank if the closing cost does not apply.)*

| | | | | |
|---|---|---|---|---|
| Attorney Fees | ☒ | | ☐ | ☐ |
| Title Insurance - Lenders | ☒ | | ☐ | ☐ |
| Title Abstract or Certificate | ☒ | | ☐ | ☐ |
| Property Insurance | ☒ | | ☐ | ☐ |
| Recording Fees | ☒ | | ☐ | ☐ |
| Appraisal | ☒ | | ☐ | ☐ |
| Survey | ☒ | | ☐ | ☐ |
| Termite Inspection | ☒ | | ☐ | ☐ |
| Origination fees | ☒ | | ☐ | ☐ |
| Discount Points | ☒ | | ☐ | ☐ |
| If contingent on repairing, cost and expenses of repairing | ☒ | | ☐ | ☐ |
| Title Insurance - Owners | | | | |
| Buyer to pay an Administration Fee $300.00 payable to Seller | ☒ | | ☐ | ☐ |
| Buyer's Agent Commission | ☐ | | ☒ | ☐ |
| Listing Agent Commission | ☐ | | ☒ | ☐ |
| Buyer Pays All Closing Costs | ☒ | | ☐ | ☐ |
| Transfer Tax & Recording Fees | ☒ | | ☒ | ☐ |
| All other closing costs | ☒ | | ☒ | ☐ |

- 50/50 between buyer and seller.

11. **PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents, if any, will be prorated through the Closing Date. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If a loan is assumed and the lender maintains an escrow account, the escrow account must be transferred to Buyer without any deficiency. Buyer shall reimburse Seller for the amount in the transferred account. Buyer shall pay the premium for a new insurance policy. If taxes are not paid at or prior to closing, Buyer will be obligated to pay taxes for the current year.

12. **CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty loss after the effective date of the contract, Seller shall restore the Property to its previous condition as soon as reasonably possible. If Seller fails to do so due to factors beyond Seller's control, Buyer may either (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance and the Closing Date will be extended as necessary, or (c) accept the Property in its damaged condition and accept an assignment of insurance proceeds.

13. **DEFAULT:** Buyer and Seller are required and agree to make full settlement in accordance with the terms of this Contract and acknowledge that failure to do so constitutes a breach hereof. If Buyer fails to make full settlement, or is in default due to Buyer's failure to comply with the Contract, the deposit may be retained by Seller as long as a release of deposit agreement is signed and executed by all parties, expressing that said deposit may be retained by Seller. In the event that the parties do not agree to execute a release of deposit, Buyer and Seller shall have all legal and equitable remedies. If Seller fails to make full settlement or is in default due to Seller's failure to comply with the Contract (with the exception of title problems, covered in Section 7, above), Buyer shall be entitled to pursue such rights and remedies as may be available at law or in equity, including without limitation, an action for specific performance of this Contract and/or monetary damages.

14. **ATTORNEY'S FEES:** The prevailing party in any legal proceeding brought under or with respect to the transaction described in this contract is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

*Comission SPHt: 2.5/ Zip Realty*

*1.5/ Key Realty Group LLC.*

Buyer Initials _____          - 5 -          Seller Initials _____

Z

DocuSign Envelope ID: 13F326C7-A0B6-4B4C-B736-511934BBF3B1

15. REPRESENTATIONS: Seller represents that as of the Closing Date (a) there will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing payment of any loans assumed by Buyer and (b) assumed loans will not be in default. If any representation in this contract is untrue on the Closing Date, this contract may be terminated by Buyer and the earnest money will be refunded to Buyer. All representations contained in this contract will survive closing.

16. FEDERAL TAX REQUIREMENT: If Seller is a "foreign person", as defined by applicable law, or if Seller fails to deliver an affidavit that Seller is not a "foreign person", then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. IRS regulations require filing written reports if cash in excess of specified amounts is received in the transaction.

17. AGREEMENT OF PARTIES: This contract contains the entire agreement of the parties and cannot be changed except by their written agreement.

18. NOTICES: All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile machine as follows:

To Buyer at:                                    To Seller at:

2600 Brinkley Rd. PH 1005                       Taylor, Bean & Whitaker Mortgage Corp.
2230 Crestwich
Fort Washington, 2 0744  (N)                    Attn: Pam Carson
Beverley Heights, MD 20744  (N)
                                                315 NE 14th Street, Ocala, FL 34470

Telephone  240 605-9921                         Telephone (352)690-8458

Facsimile _____                   Facsimile (352)732-9458

19. ASSIGNMENT: This agreement may not be assigned by Buyer without the consent of Seller. This agreement may be assigned by Seller and shall be binding on the heirs and assigns of the parties herein.

20. PRIOR AGREEMENTS: This contract incorporates all prior agreements between the parties, contains the entire and final agreement of the parties, and cannot be changed except by their written consent. Neither party has relied upon any statement or representation made by the other party or any sales representative bringing the parties together. Neither party shall be bound by any terms, conditions, oral statements, warranties, or representations not herein contained. Each party acknowledges that he has read and understands this contract. The provisions of this contract shall apply to and bind the heirs, executors, administrators, successors and assigns of the respective parties herein. When herein used, the singular includes the plural and the masculine includes the feminine as the context may require.

21. EMINENT DOMAIN: If the property is condemned by eminent domain after the effective date hereof, the Seller and Buyer shall agree to continue this closing, or a portion thereof, or cancel this Contract. If the parties cannot agree, this contract shall ☐ remain valid with Buyer being entitled to any condemnation proceeds at or after closing, or ☒ be cancelled and the earnest money returned to Buyer.

Buyer Initials _____              - 6 -              Seller Initials _____

DocuSign Envelope ID: CB434E35-C9EE-4A1E-A3E9-02D612821B66

DocuSign Envelope ID: 13F328C7-A0B8-4B4C-B738-5119348BF381

22.    OTHER PROVISIONS
Home is being sold "as is, where is" NO said written or implied warranties offered.

_15 Day Financing Contingency_

23.    TIME IS OF THE ESSENCE IN THE PERFORMANCE OF THIS AGREEMENT.

24.    GOVERNING LAW: This contract shall be governed by the laws of the State of Maryland.

Whether or not listed above, deadlines contained in this Contract may be extended informally by a writing signed by the person granting the extension except for the closing date which must be extended by a writing signed by both Seller and Buyer.

EXECUTED the _X_ day of _Nov 2009_ , 2009 (THE EFFECTIVE DATE).

36F50D7223F94AE...
Joe Johnson
Buyer Signed By: Joe Johnson

Seller: Taylor, Bean & Whitaker Mortgage Corp.

Buyer:                                    Seller:

Buyer Initials _____                    -7-                    Seller Initials _____

DocuSign Envelope ID: 13F326C7-AD98-4B4C-B736-611934B9F3B1



EXHIBIT FOR DESCRIPTION OR ATTACH SEPARATE DESCRIPTION

Buyer Initials _____        - 3 -        Seller Initials _____

DocuSign Envelope ID: 13F326C7-A0B6-4B4C-B736-5119348BF3B1

**Receipt for Earnest Money Deposit** must be signed by the party holding the earnest money.

**RECEIPT (YOU MUST ATTACH A COPY OF THE EARNEST MONEY)**

Receipt of Earnest Money is acknowledged.

Signature:_____        Date:_____, 20____

By:_____

_____                  Telephone (____)_____
Address

_____                  Facsimile (____)_____
City         State       Zip Code

Buyer Initials                    - 9 -                    Seller Initials

cuSign Envelope ID: 13F326C7-A0B8-4B4C-B736-511934BBF3B1



## TB&W REO ADDENDUM TO SALE AND PURCHASE AGREEMENT

**SELLER:** Taylor, Bean & Whitaker Mortgage Corp
**BUYER:** Joe Johnson
**CASE#:** 1350776   **PROPERTY ADDRESS:** 5822 Holly Spring Dr. #1-6
Capital Height 15 MD
207,

1.  Buyer acknowledges that the Seller obtained the property by foreclosure or deed in lieu of foreclosure. In the event a circumstance arises that would prevent the Seller from being able to perform on this Addendum and/or the Sale and Purchase Agreement, at Seller's option and in Seller's sole discretion, Seller may notify Buyer that the Sale and Purchase Agreement is cancelled and the earnest money deposit shall be returned to Buyer and Seller shall have no further obligation to sell or convey the property to Buyer.

2.  Buyer accepts the property in its "AS IS, WHERE IS, AND WITH ALL FAULTS" condition at the time of closing, including any hidden defects, known or unknown. Buyer acknowledges that neither Seller nor its agents have made any representations or warranties, implied or expressed, relating to the condition of the property. Seller and its agents shall not be responsible for the repair, replacement or modification of any deficiencies, malfunctions, or mechanical defects in the materials, workmanship and mechanical components of the appurtenant structures and improvements prior or subsequent to closing. Items of personal property are not included in this sale. Seller makes no representation or warranty, express or implied, as to the condition of personal property, title to personal property or whether any personal property is unencumbered by liens. Buyer agrees that Seller shall have no liability for any claim or losses Buyer or Buyer's successors may incur as a result of any condition or other defect which may now or hereafter exist with respect to the property. The property has neither been habited in nor inspected by Seller.

    This Property is being sold in its existing condition. Seller will make no repairs and will convey this Property without any representations or warranties, either expressed or implied. There may be material facts of which the Seller is not aware of, which may be discoverable to the casual observer or qualified expert, or latent hidden defects, which time may reveal. The Seller is not responsible for any defects, whether visible, latent, hidden or otherwise.

    The Buyer is advised to obtain professional Property inspections and to inspect all public records relating to the Property. The improvements on the Property may not conform to current building codes and/or may not have all required building permits. Buyer is strongly advised to inspect all public records, have a professional home inspection to ascertain the exact condition of the Property and make reasonable inquiries regarding individual concerns before inspection contingency deadlines contained in the Agreement.

    Buyer acknowledges that the Property is being sold "As-Is", where is, with all faults. Prior to closing, Buyer will make such inspections of the conditions of the Property, as Buyer deems necessary at Buyer's discretion. Seller makes, and has made, no representations or warranties as to the condition of the Property and specifically disclaims and excludes any and all warranties, expressed or implied, oral or written.

3.  **Title Agent.** Closing shall be held at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for title insurance, or if no title insurance, designated by Seller.

4.  **Inspections.** Buyer acknowledges that it is the Buyer's sole responsibility and expense to obtain inspections of the property by qualified professionals to look for defects. Buyer(s) may request that the Sale and Purchase Agreement be canceled if, within have Ten (10) calendar days from the contract date, the property is inspected by a professional home inspector who discovers a structural, roof, system defect, or non-compliance with local codes, zoning, or building requirements that TB&W elects not to correct, or If within such 10 day period, the property is inspected for the presence of radon by a professional radon inspector to an extent unsatisfactory to you. A copy of the property inspection report, or radon test report, as applicable, must be attached to the cancellation request. The cancellation contingency is limited to structural, roof, defective components within the mechanical and operating systems (which include the electrical, plumbing, sewage, heating and air conditioning systems only) or noncompliance with local codes, zoning, or building requirements. Kitchen appliances, window air conditioner units, light fixtures, receptacles, mixer faucet and switch covers are not included in the operating systems. Equipment age or energy efficiency ratings are not included in the

xouSign Envelope ID: 13F328C7-A0B8-4B4C-B736-511934BBF3B1

cancellation contingency. The earnest money deposit will be returned ONLY IF TREW, in its sole and reasonable discretion, concurs with the home inspection report findings(s). Buyer shall have five (10) calendar days from the contract date to have all inspections completed by a professional inspection company or licensed contractor. Any notice of cancellation must be provided to the Seller in writing within three (3) days from the end of the inspection time period, otherwise the Buyers right to cancel under this contingency shall be removed. If the property is winterized prior to Buyers inspections, and the inspections Buyer wishes to perform require the property to be de-winterized, Buyer agrees to provide Seller notice of the specific date and time of Buyers inspection so Seller can have the property re-winterized immediately following the inspection. Buyer agrees to give Seller 72 hours written notice prior to any de-winterization of the property at rentalp@steviostean.com. Failure to provide said notice will make Buyer responsible for any damage resulting from the property not being winterized. If Buyer chooses not to make inspections, Seller and Seller's agent will be held harmless in the event of any mechanical failures or structural defects.

5.  Buyer agrees to indemnify Seller and fully protect, defend, and hold Seller, its agents, employees and contractors, harmless from and against any and all claims, costs, liens, loss, damages, attorney's fees and expenses of every kind and nature that may be sustained by or made against Seller or any damage to the property of any adjoining property, or any injury to Buyer or any other person that may result from or arise out of inspections made by Buyer or its agents, employees and contractors prior to closing.

6.  Repairs by Seller. Seller's obligation to make repairs shall be limited to those repairs that it has agreed to make provided such agreement is in writing and is contained in the Sale and Purchase Agreement or any addendum thereto, including this Addendum. Except for the foregoing, Seller shall not be obligated for any repairs of any nature whatsoever.

7.  If this sale is being financed, Buyer shall have five (5) business days from the date of the Sale and Purchase Agreement to make loan application. The Sale and Purchase Agreement may be cancelled by Seller in the event Buyer is not "prequalified" within five (5) business days from the date of the Sale and Purchase Agreement. Buyer shall be responsible to provide written evidence of Buyers "Pre-Approval / Pre-Qualification" by a Mortgage Lender to Seller within said time frame. If Buyer fails to provide said written evidence, the Seller, at Sellers option shall have the option of canceling the Sale and Purchase Agreement with a return of deposit monies to the Buyer.

8.  Notwithstanding any other provision of the Sale and Purchase Agreement (including, if applicable, any financing contingency), in no event shall the Sale and Purchase Agreement be contingent upon the ability of the Buyer to sell or close other real estate owned by the Buyer.

9.  Title will transfer with a Special or Limited Warranty Deed, Cash Sale Deed, or Quit Claim Deed depending on the state where the property is located and the laws of title transfer in that state. All parties to the sale are to be made aware to allow ten (10) to twenty (20) business days for the execution of the Deed.

10.  Buyer absolutely may not occupy the property nor make any repairs, prior to closing and funding. Buyer shall be in default of the Sale and Purchase Agreement in the event Buyer occupies and alters the property prior to closing.

11.  Termination of Contract. In the event the Sale and Purchase Agreement is terminated by Seller pursuant to any provision of the Sale and Purchase Agreement, this Addendum, or any other addendum to the Sale and Purchase Agreement, Seller's sole liability to Buyer will be to return the deposit monies with no further obligations, liabilities or responsibilities to one another. Buyer agrees to release Seller from all liability associated with the Sale and Purchase Agreement upon return of the deposit by Seller.

12.  Buyer acknowledges that Seller acquired title to the subject property through deed-in-lieu, judicial foreclosure, or at a non-judicial foreclosure sale property conducted at the request of Seller in connection with a previous loan made by Seller that defaulted resulting in said foreclosure sale. Buyer further acknowledges that Seller has not conducted any investigation, test or inspection of, and that Seller has no knowledge (actual, constructive or inquiry) of any lead-based paint or lead-based paint hazards at, on, in or about the Property. Any information made available to Buyer in connection with lead-based paint and lead-based paint hazards concerning the Property are made a part of this Sale and Purchase Agreement.

DocuSign Envelope ID: 13F326C7-A0B8-4B4C-B736-511934BBF381

13.  Buyer further acknowledges that Seller's acquisition of title to the Property through deed-in-lieu, judicial foreclosure, or at a non-judicial foreclosure sale may require additional time to obtain proper recorded title to the Property. Buyer acknowledges that closing may be postponed to delay closing so that Seller may obtain recorded title to the Property. Buyer shall indemnify Seller and fully protect, defend, and hold Seller, its agents, employees and contractors, harmless from and against any and all claims, costs, liens, loss, damages, attorney's fees and expenses of every kind and nature that may be made against Seller, or any injury to Buyer or any other person that may result from or arise out of a delay in closing under this Section.

14.  Waiver of Trial by Jury. Seller and Buyer knowingly and conclusively waive all rights to trial by jury in any action or proceeding relating to this Sale and Purchase Agreement.

15.  Conflict. In the event a conflict between the Sale and Purchase Agreement and this Addendum, this Addendum shall govern. However, unless specifically amended herein, all of the terms and conditions of the Sale and Purchase Agreement shall remain in full force and effect.

16.  Utilities. It is the responsibility of the Buyer to have the utilities turned on in their name if the Buyer requires any utilities on in order to facilitate inspections the Buyer wishes to conduct on the property. The Buyer or agent for the same hereby holds the Seller harmless and assumes full responsibility for any and all related deposits, connection and usage fees associated with this activation. The Buyer further assumes full financial responsibility for any damages, which may occur as a result of the above action. Once a utility has been turned on, Buyer may choose to leave it on in their name if the closing is less than 30 days away. If closing is longer than 30 days, Buyer shall have the utility turned off after the reason for the utility being turned on has been accomplished.

17.  Seller makes no representations as to the property's compliance with any applicable building code or zoning ordinance. Any obligation of Seller to obtain a compliance certificate relating to the property (such as a certification relating to smoke detectors, certificate of occupancy, etc.) is assumed by the Buyer and shall not apply in the event the property is not in habitable condition, unless otherwise required by law. Therefore, it is understood between the parties that the Buyer is solely responsible, at the Buyer's own expense, to obtain a certificate of occupancy, smoke detector certificate, or any other certificate, and provide them to Seller's attorney/closing agent prior to closing.

18.  Buyer agrees to pay to the Seller at time of closing an administrative fee in the amount of $300 for the processing and fees involved in REO transactions.

19.  There may be multiple counter offers pending. Seller's signature on final accepted offer is deemed acceptance of that offer only.

20.  THIS ADDENDUM AND THE SALE AND PURCHASE AGREEMENT ARE NOT ASSIGNABLE BY THE BUYER.

The undersigned approve and accept this addendum and acknowledge this addendum to be a part of the Sale and Purchase Agreement.

Purchaser: _____

Date: _____

Purchaser: «CoBuyers»

Date: _____

Seller: Taylor, Bean & Whitaker Mortgage Corp.

Date: 11/17/09

9  10:30a    Steve Hudson                    410 75_-7931                    p.7

xcuSign Envelope ID: 13F328C7-A0B6-4B4C-B736-61193488F3B1

Receipt for Earnest Money Deposit must be signed by the party holding the earnest money.

**RECEIPT (YOU MUST ATTACH A COPY OF THE EARNEST MONEY)**

Receipt of Earnest Money Deposit is hereby

Signature: _____    Date: __11/30/__  __09__

By: _Moob T. Mrubqbh_

Address: 5022 Holly Spring Drive #1    Telephone: (301) 590-0500

City: Leesb. Md Melvb  Md 20743  State  Zip Code    Facsimile: (39) 590-0480

---

Joe Johnson                                                                    10042
2600 Brinkley Road PH 1005
Fort Washington MD 20744         **citibank**

                                              DATE _11/17/09_    15-7011 #15/2540

PAY TO THE
ORDER OF __ LAKeForest Title + Escrow Co.__    $1,000.—

__One Thousand + 00/100__ _____  DOLLARS

Citibank, F.S.B.
Washington DC 20036-0967
MEMO _5022 N HollySprings_
         _EMD_

⑆254070116⑆ ⑈6738439105⑈ 10042

---

Buyer Initials _____         -9-         Seller Initials _____

PG7192241
**Residential Full Listing**
**5822 HOLLY SPRINGS DR #1-6, CAPITOL HEIGHTS, MD 20743-4339**

Page 1 of 3
01-Dec-2009
11:33 am





 5822 HOLLY SPR

©2009 Microsoft Corp ©2005 NAVTEQ, and/er Tele Atlas, Inc.

| | | |
|---|---|---|
| Status: CNTG/KO | | List Price: $95,000 |
| Contract Date: 17-Nov-2009 | Close Date: | Close Price: |
| Foreclosure: Yes | Auction: No | Potential Short Sale: No |
| MLS#: PG7192241 | Address: 5822 HOLLY SPRINGS DR #1-6 | |
| Postal City: Capitol Heights | County/State: PRINCE GEORGES, MD | Zip Code: 20743-4339 |
| Class: Residential | Election District: 18 | Ownership: Fee Simple, Sale |
| Listing Type: Excl. Right | Inc. City/Town: | |
| Legal Subdiv: THE VILLAS | | |
| Advertised Subdiv: THE VILLAS | ADC Map: 1-1 | TBM Map: |
| Model Name: | Area: | Lot AC/SF: 0.19/8,093 |
| Tax ID: 17182083319 | Total Taxes: $3,527 | Tax Year: 2009 | HOA Fee: $175.00 / Monthly |
| Age: 17 | Year Built: 1992 | Tot Sqft - Fin: 0 | C/C FEE: / |
| Style: Colonial | Type: Townhouse | TH Type: End | # Levels: 2    # Fireplaces: 0 |

| INTERIOR | Total | Main | Upper 1 | Upper 2 | Lower 1 | Lower 2 | | Schools |
|---|---|---|---|---|---|---|---|---|
| Bedrooms: | 3 | 0 | 3 | 0 | 0 | 0 | | ES: |
| Full Baths: | 2 | 0 | 2 | 0 | 0 | 0 | | MS: |
| Half Baths: | 1 | 1 | 0 | 0 | 0 | 0 | | HS: |

Room List:

| Room | Dimension | Level | Flooring | Fireplace |
|---|---|---|---|---|

Main Entrance:
Interior Style:
Dining/Kitchen: Kit-Dining Combo
Appliances:
Amenities:
Property Condition:
Security:
Windows/Doors:
Walls/Ceilings:

**Basement (Y/N):** No
Foundation:
Handicap: None
Unit Description:
R-Factor Basement:
Tot Sqft - Fin: 0

R-Factor Ceiling:
Above Grade Fin/Unfin: /

House Dimensions:
R-Factor Walls:
Below Grade Fin/Unfin: /

**DIRECTIONS:** FROM BELTWAY TAKE ROUTE 214 (CENTRAL AVENUE) TOWARDS DC, TURN LEFT ONTO OLD CENTRAL AVE, LEFT ON ROLLINS DR., LEFT ON NORTH HOLLY SPRINGS DRIVE.

Copyright (c) 2009 Metropolitan Regional Information Systems, Inc.
Information is believed to be accurate, but should not be relied upon without verification.
Accuracy of square footage, lot size and other information is not guaranteed.

PG7192241
**Residential Full Listing**
**5822 HOLLY SPRINGS DR #1-6, CAPITOL HEIGHTS, MD 20743-4339**

Page 2 of 3
01-Dec-2009
11:33 am

**AGENT REMARKS:** Bank Owned. Please do not call office number/only to contact broker. To get more info, quickest response is by e-mail to zarrabinia@verizon.net Closing to be at Lakeforest Title. No Kitchen Appliances and leak in one of the ceilings. AS IS Addendum must be presented with your offer.$300 Fee charged to buyers from REO Bank Plz send offer on PDF to: offerBOP@Verizon.net HOA TB
**INTERNET REMARKS:** END UNIT TH FRESHLY PAINTD IN GOOD CONDITION. 3 bedrooms, 2 full baths and one half bath. THIS IS A BANK OWNED PROPERTY Call your Realtor or call us . . .will go quickly. HOA fee TBD

**EXTERIOR**

| | | |
|---|---|---|
| New Construction: No | Builder Name: | Lot Sqft: 8,093 |
| Bulding Sites/Lots: | Lot Dimensions: | Lot Acreage: 0.19 |
| Soil Type: | | Total Units: |
| Exterior: | | |
| Exterior Construction: Alum/Steel Siding | | |
| Lot Description: | | |
| Other Structures: | | |
| Roads: | | |
| Roofing: | | |
| Topography: | | |
| Transportation: | | |
| View Exposure: | | |
| Transfer Development Rights: | Wooded Acres: | Fenced Acres: |

**PARKING:** Drvwy/Off Str

| | | |
|---|---|---|
| Type of Garage: | # Garage Spaces: | # Assigned Spaces: |
| Type of Carport: | # Carport Spaces: | |
| Parking Block/Square: | Parking Inc in List Price: | Parking Lot: |
| Parking Space #: | Parking Inc in Sale Price: | |

**UTILITIES**

| | |
|---|---|
| Heating System: Forced Air | Heating Fuel: Electric |
| Cooling System: Central A/C | Cooling Fuel: Electric |
| Hot Water: Electric | Sewer/Septic: Public Sewer |
| Water: Public | Metering: |
| TV/Cable/Comm: | |

**FARM:** No
**WATER:** No
**VACATION:** No

**FINANCIAL INFORMATION**

| | | | |
|---|---|---|---|
| Earnest Money: | Other Fees: | Other Pmt Freq: | County: |
| City/Town: | Refuse: $20.41 | Front Foot Fee: 422.27 | Water/Swr Hook-up: |
| Total Taxes: $3,527 | Land: $50,000 | Improvements: $150,000 | Yr Assessed: 2010 |
| Tax Year: 2009 | Special Tax Assess: $997 | Tot Tax Assessment: $200,000 | Tap: |
| Investor Ratio: | Agricultural District: | Year Renovated: | Year Converted: |
| Project Approved: | | | |
| Possession: Immediate | | | |
| Tenants Rights: | | | |
| Current Financing/Loan: | | | |
| New Financing: | | | |
| Cash to Assume: | Owner/Private Finance: | Interest Rate: | Years: |
| Amortized Years: | Balloon- # of Years: | Annual Rent Income: | Rental Year: |
| Special Assessment: | Remaining Yrs: | Special Assessment 2: | Remaining Yrs: |

| | |
|---|---|
| Condo/Coop Fee: – Frequency: | |
| HOA Fee: 175.00 – Frequency: Monthly | HOA Y/N: Yes |
| HOA/Condo/Coop Community Amenities: | |
| HOA/Condo/Coop Rules: | |
| HOA/Condo/Coop Fees Include: | |
| HOA/Condo/Coop Management: | |

Copyright (c) 2009 Metropolitan Regional Information Systems, Inc.
Information is believed to be accurate, but should not be relied upon without verification.
Accuracy of square footage, lot size and other information is not guaranteed.



PG7192241
**Residential Full Listing**
**5822 HOLLY SPRINGS DR #1-6, CAPITOL HEIGHTS, MD 20743-4339**

## LEGAL INFORMATION

| | | | |
|---|---|---|---|
| Lot: 6452 | Block/Square: | Section: | Phase: |
| Parcel Number: | Liber #: 30492 | Folio #: 601 | Zoning Code: RT |
| Master Plan Zoning: | Historic Designation ID: | | Tax Map #: |

Contract Info: As is condition clause required, Relo/Bank Addendum
Disclosures: Other, Prop Disclaimer
Documents:
Special Permits:

## OWNER, SHOWING CONTACT, PROPERTY MANAGEMENT INFORMATION

| | | |
|---|---|---|
| Owner 1 Name:  OWNER ON RECORD | Home #: | Office #: |
| Showing Contact 1: CSS CSS | Home #: (866) 891-7469 | Office #: |
| | Monthly Rent: | Lease Exp. Date: |
| Show Instructions: Call 1st-Showing Service | | |
| Show Time: - | Show Days: | |

## LISTING AGENT/BROKER/COMPENSATION

| | | |
|---|---|---|
| Listing Agent: MATTHEW ZARRABINIA , ID: 3014572 | Home: (240) 372-7795 | Home Fax: (301) 589-8638 |
| Cell Phone: (240) 372-7795        Agent Office: (301) 977-5377 | Pager: | Voice Mail: x |
| Agent  Email: zarrabinia@verizon.net | | |

Company: Key Realty Group, LLC, KYRG1
Address: 910 Clopper Rd Unit 210N, Gaithersburg, MD 20878

Office: (301) 977-5377
Fax: (301) 576-4555

| | | | |
|---|---|---|---|
| Sub-Agent Comp: 0.0 | Buyer-Agent Comp: 2.5 | Add'l Comp: | |
| Dual Agency: Yes | Variable Rate Comp: No | Desg Rep: No | |
| List Date: 27-Oct-2009 | Update Date: 17-Nov-2009 | Update Type: OTHER | Off Mkt Date: |
| Orig Price: $95,000 | Prior LP: | Days on Mkt MLS:: 21 | Days on Mkt Property: 22 |
| Photo Option:  Lister will Submit All | | Total Photos: 1 | Advertising:  IDX-PUB |

## SOLD/LEASED INFORMATION

| | | |
|---|---|---|
| Contract Date: 17-Nov-2009 | Number of Hrs on Kickout: 1,000 | Last Contingency Expires: 03-Dec-2009 |
| Type of Contingency: Other | | |

Copyright (c) 2009 Metropolitan Regional Information Systems, Inc.
Information is believed to be accurate, but should not be relied upon without verification.
Accuracy of square footage, lot size and other information is not guaranteed.



**Long & Foster**
The Total Homeownership Experience

1 888 PLANNER
(752-6637)

Listing # PG7192241
822 HOLLY SPRINGS DR #1-6, Capitol Heights, MD, 20743

**Offered at $95,000**
Mortgage: $396

## PROPERTY DETAILS

| | |
|---|---|
| Type: | Townhouse |
| Style: | Colonial |
| Year Built: | 1992 |
| Subdivision: | THE VILLAS |
| County: | PRINCE GEORGES |
| Number of Bedrooms: | 3 |
| Baths: | 2 |
| Halfbaths: | 1 |
| Lot Size: | 0.19 acres |

END UNIT TH FRESHLY PAINTD IN GOOD CONDITION. 3 bedrooms, 2 full baths and one half bath. THIS IS A BANK OWNED PROPERTY Call your Realtor or call us . . .will go quickly. HOA fee TBD

## ADDITIONAL DETAILS

| | |
|---|---|
| Levels: | 2 |
| Exterior: | Alum/Steel Siding |
| Parking: | Drvwy/Off Str |
| Ownership: | Fee Simple |
| Lot Square Footage: | 8093 |

**Listed By:**

Key Realty Group, LLC

## UTILITIES

| | |
|---|---|
| Heating: | Forced Air |
| Cooling: | Central A/C |
| Water: | Public |
| Sewer: | Public Sewer |
| Water Heater: | Electric |

FINANCING

Mortgage: $396
* based on 30 year APR loan with 20% down and no points.

PROSPERITY MORTGAGE COMPANY
1-888-752-6637

All information is deemed reliable but not guaranteed, and should be independently verified.

Listing data provided by **Metropolitan Regional Information** as of **Thursday, November 26, 2009.**



# Taylor Bean REO

| | |
|---|---|
| **Search Listings** | |
| **Buyer Instructions** | |
| **Vendor/Contractor** | |
| **Service Area** | |
| **About Us** | |

**Contact Us:**
315 NE 14th Street
Ocala, FL 34470

REOinfo@taylorbean.com

Phone: 352.438.3427

www.plantinumbank.net
Customercare@platinumbank.net


EQUAL HOUSING
LENDER

## Search REO - Foreclosures - Bank Owned Real

Address:

City:                State:   Zip Code:
                     MD

Advanced Search

[ **Search** ]

## Property Detail

**$95,000**                                    CONTRAC
5822 N Holly Springs Drive
Capitol Heights, MD 20743
To hear pre-recorded info on this home, call: **888-273-3787**

Image
Not
Available

### Description
Single Family
Prince Georges County
3 Bedrooms
2.5 Bathrooms
Built 1992
1452 Square Feet
Case Number: 1350776

### Features
Well maintained Townhouse offers 3 bedrooms, 2.5 baths, enclosed por
living area

## Search Results

### Properties 11 - 14 of 14

2004 Arcola Ave, Silver Spring, MD, 20902

**$360,000**                          For additional i
Single Family                         REO Home, call ou
3 Bedrooms                                      REO inf
2 Bathrooms                              (888)
Built 1955
1820 Square Feet

SALE PENDING

5822 N Holly Springs Drive, Capitol Heights, MD, 20743

 **Taylor Bean REO**

### Search REO - Foreclosures - Bank Owned Real Estate

Address:

City:                State:        Zip Code
                     MD

Advanced Search

[ Search ]

**Contact Us:**
315 NE 14th Street
Ocala, FL 34470

REOinfo@taylorbean.com

Phone: 352.438.3427

www.plantinumbank.net
Customercare@platinumbank.net


EQUAL HOUSING
LENDER

## Property Detail

**$95,000**                                    SALE PENDING
5822 N Holly Springs Drive
Capitol Heights, MD 20743
To hear pre-recorded info on this home, call: **888-273-3787**

Image
Not
Available

**Description**
  Single Family
  Prince Georges County
  3 Bedrooms
  2.5 Bathrooms
  Built 1992
  1452 Square Feet
  Case Number: 1350776

**Features**
Well maintained Townhouse offers 3 bedrooms, 2.5 baths, enclosed porch, 1,452 sq ft gross living area

## Search Results

**Properties 11 - 16 of 16**                    Relevance

8202 Ironclad Court, Gaithersburg, MD, 20877



**$250,000**          For additional info on this Maryland
Townhouse          REO Home, call our 24 Hour pre-recorded
3 Bedrooms          REO information line
2.5 Bathrooms          (888) 258-1483
Built 2002
1584 Square Feet

2004 Arcola Ave, Silver Spring, MD, 20902

# EXHIBIT 2

## CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

JOE JOHNSON )
)
    Plaintiff, )
)
Vs. ) Civil No. **CAL09-36433**
)
TAYLOR, BEAN AND WHITAKER )
MORTGAGE CORPORATION, et al., )
)
    Defendants. )

## FIRST AMENDED COMPLAINT

COMES NOW, the Plaintiff, Joe Johnson, and files this First Amended Complaint and represents to the Court, that:

## JURISDICTION

1.    This Court has jurisdiction as the acts and omissions giving rise to this complaint occurred in Prince George's County.

## PARTIES

2.    The Plaintiff is a resident of Prince George's County in Fort Washington, Maryland.

3.    Defendant, Taylor, Bean and Whitaker is a Mortgage Corporation, hereinafter referred to as ("TBW"), authorized to do business in the State of Maryland and at the time of the acts complained of was doing business in the State of Maryland.

4.    Defendant, Key Realty Group LLC, is a licensed realtor, hereinafter referred to as ("Key Realty"), authorized to do business in the State of Maryland and at the time of the acts complained of was doing business in the State of Maryland.

5.    Defendant, Matthew Zarrabinia, is a licensed real estate agent, hereinafter referred to as ("Zarrabinia"), authorized to engage in real estate transactions in the State of

Maryland and at the time of the acts complained of was a resident of Montgomery County in Boyd, Maryland.

## COMPLAINT

### COUNT I
### (Anticipatory Breach of Agreement)

6.    At all times relevant, Defendant, TBW represented that it was the legal owner of a foreclosed real estate property located at 5822 N Holly Springs Drive, #1-6, in Capitol Heights, Maryland 20743, hereinafter "the property".

7.    Sometime prior to October 27, 2009, Defendant, TBW employed the service of Defendant, Key Realty to advertise, market and sell the property.

8.    At all times relevant, Defendant, Key Realty, employed Defendant, Zarrabinia as a real estate agent and Defendant, Zarrabinia was acting within the scope of his employment with Defendant, Key Realty.

9.    Defendant, Zarrabinia was assigned by Defendant, Key Realty with the primary responsibility of overseeing the advertisement, marketing and sell of the property.

10.    On or about October 27, 2009, Defendant, Zarrabinia, acting as agent for Defendant, TBW advertised the property for sale with a listing price of $95,000. The property was described as an "end unit townhouse that had been freshly painted in good condition with 3 bedrooms, 2 full baths and one half baths."

11.    On or about October 29, 2009, the Plaintiff offered to purchase the property from Defendant, TBW for $110,000.

12.    On November 3, 2009, Defendant, Zarrabinia notified the Plaintiff that Defendant, TBW had accepted the Plaintiff's offer.

2

13.    As a condition of acceptance, Defendant, TBW required that Plaintiff execute its disclosures for the property.

14.    Defendant, Zarrabinia provided Plaintiff with a written document described as a contract for the sale and purchase of real estate that stated in part that Defendant, TBW agreed to sell the property to the Plaintiff for $110,000. The closing date was set for on or before December 15, 2009.

15.    On November 4, 2009, Plaintiff executed the disclosures and written contract and gave it back to Defendant, Zarrabinia on that same day.

16.    On November 11, 2009, Defendant, Zarrabinia told the Plaintiff that he had received a higher offer than Plaintiff's and requested that Plaintiff send his absolute best offer.

17.    Plaintiff refused and advised Defendant, Zarrabinia that Defendant, TBW had already accepted the Plaintiff's offer to purchase the property and agreed to sell the property to the Plaintiff for $110,000.

18.    By its actions and inactions, Defendant, TBW advised the Plaintiff in positive and unconditional language, that Defendant TBW repudiated the agreement and would refuse to sell the property to the Plaintiff for $110,000, thereby anticipatorily breaching its agreement with the Plaintiff.

19.    At all times relevant, the Plaintiff was capable and ready to perform under the agreement.

20.    Plaintiff has suffered losses and damages as a result of Defendant, TBW's anticipatory breach of the said agreement.

WHEREFORE, the Plaintiff, Joe Johnson, demands judgment that the Contract of Sale between the Plaintiff and Defendant, TBW be specifically enforced, and that Defendant, TBW

3

be ordered to transfer title and possession of the aforesaid Property to the Plaintiff, or in the alternative, that judgment be entered against Defendant, TBW in the amount of One Hundred Ten Thousand Dollars ($110,000), as and for compensatory damages, plus interest, cost and reasonable attorney fees, and for such further and other relief as the Court deems just and proper.

## COUNT II
(Specific Performance)

21.     The Plaintiff adopts by reference each and every factual allegation made in the preceding paragraphs.

22.     On November 4, 2009, Plaintiff and Defendant, TBW entered into a valid and enforceable Contract of Sale for the purchase by the Plaintiff of Defendant, TBW's property that it represented it was the legal owner located at 5822 N Holly Springs Drive, #1-6, in Capitol Heights, Maryland 20743, hereinafter "the property".

23.     The terms of the agreement required Defendant, TBW to sell the property to the Plaintiff for $110,000.

24.     Settlement was scheduled for on or before December 15, 2009.

25.     By its actions and inactions, Defendant, TBW advised the Plaintiff that they were not going to sell the property to the Plaintiff because they had subsequently received a higher offer than Plaintiff's.

26.     At all times relevant hereto, Plaintiff was ready, willing and able to perform under the terms of the Contract of Sale.

27.     Defendant, TBW failed to sell the property to the Plaintiff for $110,000 or take the necessary action to satisfactorily perform under the Contract of Sale.

4

28.    Defendant, TBW breached the Contract of Sale by failing to sale the property to the Plaintiff for $110,000 including by failing to take the necessary action to satisfactorily perform under the Contract of Sale.

29.    Plaintiff has no adequate remedy at law.

WHEREFORE, the Plaintiff, Joe Johnson, demands judgment that the Contract of Sale between the Plaintiff and Defendant, TBW be specifically enforced, and that Defendant, TBW be ordered to transfer title and possession of the aforesaid Property to the Plaintiff, and for such further and other relief as the Court deems just and proper.

## COUNT III
### (Fraud/Deceit and Misrepresentation (non-disclosure))

30.    At all times relevant, prior to November 17, 2009, Defendant, TBW represented that it was the legal owner of a foreclosed real estate property located at 5822 N Holly Springs Drive, #1-6, in Capitol Heights, Maryland 20743, hereinafter "the property."

31.    Based upon information and belief, and as Defendant, TBW then well knew, Defendant, TBW did not legally own the property but the property was legally owned by and under the deed of the Federal Home Loan Mortgage Corporation, hereinafter referred to as "Freddie Mac".

32.    Based upon information and belief, on or about August 24, 2009, Defendant, TBW filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §101, et seq. in the United States Bankruptcy Court for the Middle District of Florida, in a case styled as *In Re TBW Mortgage Corp.* Case No. 09-07047-JAF.

33.    Based upon further information and belief, on or about October 20, 2009, Defendant, TBW, entered into a written Real Estate Purchase and Sale Agreement with Selene RMOF REO Acquisition II LLC, hereinafter ("Selene"), to sell, assign, transfer, convey and

deliver to Selene all of Defendant, TBW's rights, title, and interest in and to all of its REO properties, including its' foreclosed real estate property located at 5822 N Holly Springs Drive, #1-6, in Capitol Heights, Maryland  20743.

34.     Based upon further information and belief, and without Selene's knowledge, sometime prior to October 27, 2009, Defendant, TBW employed the service of Defendant, Key Realty to advertise, market and sell the property.

35.     At all times relevant, Defendant, Key Realty, employed Defendant, Zarrabinia as a real estate agent and Defendant, Zarrabinia was acting within the scope of his employment with Defendant, Key Realty.

36.     Defendant, Zarrabinia was assigned by Defendant, Key Realty with the primary responsibility of overseeing the advertisement, marketing and sell of the property.

37.     On or about October 27, 2009, Defendant, Zarrabinia acting as agent for Defendant, TBW advertised the property for sale with a listing price of $95,000. The property was described as an "end unit townhouse that had been freshly painted in good condition with 3 bedrooms, 2 full baths and one half baths."

38.     On or about October 29, 2009, the Plaintiff offered to purchase the property from Defendant, TBW for $110,000.

39.     At all times relevant, prior to Plaintiff offering to purchase the property from Defendant, TBW, Plaintiff had a contract to purchase property from a seller in Prince George's County Maryland for $80,000. The closing date was set for on or before November 6, 2009.

40.     On November 3, 2009, Defendant, Zarrabinia knowingly made a false representation of a material fact to the Plaintiff that Defendant, TBW had accepted the Plaintiff's offer.

41.     Thereafter, on November 11, 2009, Defendant, Zarrabinia falsely represented to the Plaintiff that he had received a legitimate higher offer than Plaintiff's and requested that Plaintiff send his absolute best offer.

42.     Defendant, Zarrabinia knew that he had not received a legitimate higher offer than the Plaintiff's or knew that his representations were made with such reckless disregard of the truth so as to be the equivalent of actual knowledge of the falsity.

43.     Plaintiff refused and advised Defendant, Zarrabinia that Defendant, TBW had already accepted the Plaintiff's offer to purchase the property and agreed to sell the property to the Plaintiff for $110,000.

44.     On November 16, 2009, Defendant, Zarrabinia, acting as agent for Defendant, TBW, conveyed to the Plaintiff that the best chance of Plaintiff getting the property would be to offer to pay more for the property. Defendant, Zarrabinia advised Plaintiff to submit his best and highest offer.

45.     By email dated November 16, 2009, Plaintiff advised the Defendants through Plaintiff's agent that although he did not want to, but rather felt intimidated and placed under duress by the Defendants' threats and statements suggesting that Plaintiff would not get the property unless Plaintiff offered to pay more for the property, Plaintiff sent Defendant, Zarrabinia his highest and best offer of $126,900 at the suggestion of the buyer's agent.

46.     Defendant, Zarrabinia knowingly made material false representations to the Plaintiff to induce the Plaintiff to pay an additional $16,900 to Defendant, TBW for the property.

47.     Nonetheless, on November 17, 2009, and without Selene's knowledge, Defendant, TBW fraudulently purported to agree to sell the property to the Plaintiff.

7

48.     The Defendants, and each of them, knew or should have known but failed to disclose to the Plaintiff, that on or about August 24, 2009, Defendant, TBW had filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §101, et seq. in the United States Bankruptcy Court for the Middle District of Florida and that the property was under the jurisdiction of the United States Bankruptcy Court and that Defendant, TBW required a court order from the Bankruptcy Court to sell the property.

49.     The Defendants, and each of them, also knew or should have known but failed to disclose to the Plaintiff that the property was legally owned by and under the deed of "Freddie Mac" and that Defendant, TBW was the debtor-in-possession.

50.     The Defendants, and each of them, further knew or should have known but failed to disclose to the Plaintiff, that on October 20, 2009, Defendant, TBW, had entered into a written agreement with Selene to sell, assign, transfer, convey and deliver to Selene all of Defendant, TBW's rights, title, and interest in and to all of its REO properties, including its' foreclosed real estate property located at 5822 N Holly Springs Drive, #1-6, in Capitol Heights, Maryland   20743.

51.     The Defendants, and each of them, had a duty to disclose these facts to the Plaintiff but knowingly and willfully withheld them from the Plaintiff.

52.     The disclosure of these facts were material and the Defendants knew or should have known that the Plaintiff would not had agreed to purchase the property from Defendant, TBW had he known of the existence of these undisclosed facts.

53.     The Plaintiff not only relied upon the misrepresentations and the belief that these facts were not in existence, but had a right to rely upon it in the full belief of their truth, and but for the misrepresentations and non-disclosed facts, Plaintiff would not had agreed to

purchase the property from Defendant, TBW.

54.    The Plaintiff in complete reliance upon the Defendants' representations and acting on the belief that the non-disclosed facts were not in existence, Plaintiff withdrew the contract to purchase the property from the seller in Prince George's County for $80,000.

55    The Defendants' conduct was fraudulent and perpetrated upon the Plaintiff for the sole purpose of injuring the Plaintiff.

56.    As a result of the Defendants' misrepresentation and concealment, Plaintiff has suffered damages.

WHEREFORE, the Plaintiff, Joe Johnson, demands judgment against the Defendants, and each of them, jointly and severally, in the amount of Eighty Thousand Dollars ($80,000), as and for compensatory damages, punitive damages in the amount of One Hundred Sixty Thousand Dollars ($160,000), plus interest, cost and reasonable attorney fees, and for such further and other relief as the Court deems just and proper.

### COUNT IV
### (Unfair or Deceptive Trade Practices)

57.    At all times relevant, Defendant, TBW represented that it was the legal owner of a foreclosed real estate property located at 5822 N Holly Springs Drive, #1-6, in Capitol Heights, Maryland 20743, hereinafter "the property".

58.    Sometime prior to October 27, 2009, Defendant, TBW employed the service of Defendant, Key Realty to advertise, market and sell the property.

59.    At all times relevant, Defendant, Key Realty, employed Defendant, Zarrabinia as a real estate agent and Defendant, Zarrabinia was acting within the scope of his employment with Defendant, Key Realty.

9

60.     Defendant, Zarrabinia was assigned by Defendant, Key Realty with the primary responsibility of overseeing the advertisement, marketing and sell of the property.

61.     On or about October 27, 2009, Defendant, Zarrabinia, acting as agent for Defendant, TBW advertised the property for sale with a listing price of $95,000. The property was described as an "end unit townhouse that had been freshly painted in good condition with 3 bedrooms, 2 full baths and one half baths."

62.     On or about October 29, 2009, the Plaintiff offered to purchase the property from Defendant, TBW for $110,000.

63.     On November 3, 2009, Defendant, Zarrabinia notified the Plaintiff that Defendant, TBW had accepted the Plaintiff's offer.

64.     As a condition of acceptance, Defendant, TBW required that Plaintiff execute its disclosures for the property.

65.     Defendant, Zarrabinia provided Plaintiff with a written document described as a contract for the sale and purchase of real estate that stated in part that Defendant, TBW agreed to sell the property to the Plaintiff for $110,000. The closing date was set for on or before December 15, 2009.

66.     On November 4, 2009, Plaintiff executed the disclosures and written contract and gave it back to Defendant, Zarrabinia on that same day.

67.     Based upon information and belief, Defendant, TBW told Defendant, Zarrabinia to forward all offers as they came in so that the Defendant could sell the property as quickly as possible at the highest price.

68.     Based upon information and belief, after Defendant, TBW had accepted the Plaintiff's offer, there were no other pending offers. Plaintiff had no knowledge that

Defendant, TBW was soliciting or would be soliciting for other buyers after accepting Plaintiff's offer to purchase the property on November 3, 2009.

69.     On November 11, 2009, Defendant, Zarrabinia told the Plaintiff that he had received a higher offer than Plaintiff's and requested that Plaintiff send his absolute best offer.

70.     Plaintiff refused and advised Defendant, Zarrabinia that Defendant, TBW had already accepted the Plaintiff's offer to purchase the property and agreed to sell the property to the Plaintiff for $110,000.

71.     By its actions and inactions, Defendant, TBW advised the Plaintiff in positive and unconditional language, that Defendant, TBW had repudiated the agreement and would refuse to sell the property to the Plaintiff for $110,000.

72.     By advertising the property for sale and accepting the Plaintiff's offer without the intent to sell the property to the Plaintiff, Defendant, TBW committed unfair and deceptive trade practices in violation of Section 13-303 of the Maryland Consumer Protection Act.

73.     By failing to disclose to the Plaintiff before offering to sell the property to the Plaintiff that on August 24, 2009, Defendant, TBW had filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §101, et seq. in the United States Bankruptcy Court for the Middle District of Florida, in a case styled as *In Re TBW Mortgage Corp.*, Case No. 09-07047-JAF and, that the Defendant required a court order from the Bankruptcy Court to sell the property to the Plaintiff, Defendant, TBW committed unfair and deceptive trade practices in violation of Section 13-303 of the Maryland Consumer Protection Act.

74.     By failing to disclose to the Plaintiff before offering to sell the property to the Plaintiff that Freddie Mac was the legal owner of the property and that Defendant, TBW was

11

the debtor-in-possession, Defendant, TBW committed unfair and deceptive trade practices in violation of Section 13-303 of the Maryland Consumer Protection Act.

75.    By failing to disclose to the Plaintiff before offering to sell the property to the Plaintiff that on October 20, 2009, Defendant, TBW, had entered into a written agreement with Selene to sell, assign, transfer, convey and deliver to Selene all of Defendant, TBW's rights, title, and interest in its REO property located at 5822 N Holly Springs Drive, #1-6, in Capitol Heights, Maryland   20743 or, that Defendant, TBW would be soliciting for other buyers after accepting the Plaintiff's offer on November 3, 2009, Defendant, TBW committed unfair and deceptive trade practices in violation of Section 13-303 of the Maryland Consumer Protection Act.

76.    By representing to the Plaintiff that Plaintiff's offer had been accepted, when in fact and truth, as the Defendant then well knew, this representation was false and misleading, Defendant, TBW committed unfair and deceptive trade practices in violation of Section 13-303 of the Maryland Consumer Protection Act.

77.    By soliciting other buyers after accepting the Plaintiff's offer and agreeing to sell the property to the Plaintiff on November 3, 2009 for $110,000, Defendant, TBW committed unfair and deceptive trade practices in violation of Section 13-303 of the Maryland Consumer Protection Act.

78.    By accepting or attempting to accept another offer for the purchase of the property after having agreed to sell the property to the Plaintiff on November 3, 2009, Defendant, TBW committed unfair and deceptive trade practices in violation of Section 13-303 of the Maryland Consumer Protection Act.

79.     By use of a contract related to the sale of the property that contained a clause limiting or precluding the buyer's right to obtain consequential damages or limiting the buyer's recourse as a result of the seller's breach or cancellation of the contract, Defendant, TBW committed unfair and deceptive trade practices in violation of Section 13-303 of the Maryland Consumer Protection Act.

80.     By each and every act and omission described herein and throughout other counts of this complaint, Defendant, TBW otherwise committed unfair and deceptive trade practices all in direct violation of Section 13-303 of the Maryland Consumer Protection Act.

81.     Plaintiff has suffered losses and damages as a result of Defendant, TBW's unfair and deceptive trade practices.

WHEREFORE, the Plaintiff, Joe Johnson, demands compensatory damages against Defendant, TBW in the amount of Eighty Thousand ($80,000), as and for compensatory damages, punitive damages in the amount of One Hundred Sixty Thousand Dollars ($160,000), plus interest, cost and reasonable attorney fees, and for such further and other relief as the Court deems just and proper.

## COUNT V
### (Unjust Enrichment)

82.     At all times relevant, Defendant, TBW represented that it was the legal owner of a foreclosed real estate property located at 5822 N Holly Springs Drive, #1-6, in Capitol Heights, Maryland 20743, hereinafter "the property".

83.     On or about October 27, 2009, Defendant, Zarrabinia acting as agent for Defendant, TBW advertised the property for sale with a listing price of $95,000. The property was described as an "end unit townhouse that had been freshly painted in good condition with 3 bedrooms, 2 full baths and one half baths."

84.    On or about October 29, 2009, the Plaintiff offered to purchase the property from Defendant, TBW for $110,000.

85.    On November 3, 2009, Defendant, Zarrabinia notified the Plaintiff that Defendant, TBW had accepted the Plaintiff's offer.

86.    As a condition of acceptance, Defendant, TBW required that Plaintiff execute its disclosures for the property.

87.    Defendant, Zarrabinia provided Plaintiff with a written document described as a contract for the sale and purchase of real estate that stated in part that Defendant, TBW agreed to sell the property to the Plaintiff for $110,000. The closing date was set for on or before December 15, 2009.

88.    On November 4, 2009, Plaintiff executed the disclosures and written contract and gave it back to Defendant, Zarrabinia on that same day.

89.    Based upon information and belief, Defendant, TBW told Defendant, Zarrabinia to forward all offers as they came in so that the Defendant could sell the property as quickly as possible at the highest price.

90.    Based upon information and belief, after Defendant, TBW had accepted the Plaintiff's offer, there were no other pending offers. Plaintiff had no knowledge that Defendant, TBW was soliciting or would be soliciting for other buyers after accepting Plaintiff's offer to purchase the property on November 3, 2009.

91.    On November 11, 2009, Defendant, Zarrabinia told the Plaintiff that he had received a higher offer than Plaintiff's and requested that Plaintiff send his absolute best offer.

92.    Plaintiff refused and advised Defendant, Zarrabinia that Defendant, TBW had already accepted the Plaintiff's offer to purchase the property and agreed to sell the property to

the Plaintiff for $110,000.

93.    The Plaintiff's offer to purchase the property from Defendant, TBW conferred a benefit upon Defendant, TBW in an amount in excess of $15,000.

94.    Defendant, TBW was aware of, and had knowledge of, the benefits conferred upon the sale of the property by Plaintiff's offer because at the time Defendant, TBW accepted the Plaintiff's offer, Plaintiff's offer was the highest and Defendant, TBW used Plaintiff's offer to solicit other buyers and to fraudulently induce the Plaintiff into engaging in what amounted to a bidding contest for the property and, in doing so, Defendant, TBW ultimately conferred a benefit from the Plaintiff in an amount in excess of $31,900.

95.    Defendant, TBW's acceptance and retention of the subsequent offer on the property while it had already accepted the Plaintiff's offer on November 3, 2009 to sell the property to the Plaintiff for $110,000 and while Defendant, TBW had knowledge of the benefit being conferred to the Defendant by the Plaintiff, make it inequitable for Defendant, TBW to retain these benefits without payment of their value.

WHEREFORE, the Plaintiff, Joe Johnson, demands judgment against the Defendant, TBW in the amount of Thirty-One Thousand Nine Hundred Dollars ($31,900), plus interest, cost and reasonable attorney fees, and for such further and other relief as the Court deems just and proper.

## COUNT VI
### (Tortious Interference With Contractual Relations)

96.    The Plaintiff adopts by reference each and every factual allegation made in the preceding paragraphs.

97.    At all times relevant, Defendant, TBW represented that it was the legal owner of a foreclosed real estate property located at 5822 N Holly Springs Drive, #1-6, in Capitol

Heights, Maryland 20743, hereinafter "the property".

98.    Sometime prior to October 27, 2009, Defendant, TBW employed the service of Defendant, Key Realty to advertise, market and sell the property.

99.    At all times relevant, Defendant, Key Realty, employed Defendant, Zarrabinia as a real estate agent and Defendant, Zarrabinia was acting within and outside the scope of his employment with Defendant, Key Realty.

100.    Defendant, Zarrabinia was assigned by Defendant, Key Realty with the primary responsibility of overseeing the advertisement, marketing and sell of the property.

101.    On or about October 27, 2009, Defendant, Zarrabinia, acting as agent for Defendant, TBW advertised the property for sale with a listing price of $95,000. The property was described as an "end unit townhouse that had been freshly painted in good condition with 3 bedrooms, 2 full baths and one half baths."

102.    On or about October 29, 2009, the Plaintiff offered to purchase the property for $110,000.

103.    On November 3, 2009, Defendant, Zarrabinia notified the Plaintiff that Defendant, TBW had accepted the Plaintiff's offer.

104.    As a condition of acceptance, Defendant, TBW required that Plaintiff execute its disclosures for the property.

105.    Defendant, Zarrabinia provided Plaintiff with a written document described as a contract for the sale and purchase of real estate that stated in part that Defendant, TBW agreed to sell the property to the Plaintiff for $110,000. The closing date was set for on or before December 15, 2009.

16

106.    On November 4, 2009, Plaintiff executed the disclosures and written contract and gave it back to Defendant, Zarrabinia on that same day to deliver to Defendant, TBW.

107.    Defendant, Zarrabinia was fully aware of the existence of the formulation of the agreement between the Plaintiff and Defendant, TBW.

108.    Based upon information and belief, Defendant, Zarrabinia knowingly and willfully withheld the Plaintiff's executed disclosures and written contract from Defendant, TBW or wrongly delayed the delivery of the Plaintiff's executed disclosures and written contract to Defendant, TBW.

109.    Based upon further information and belief, Defendant, Zarrabinia withheld the Plaintiff's executed disclosures and written contract from Defendant, TBW or wrongly delayed the delivery of the Plaintiff's executed disclosures and written contract to Defendant, TBW because he had subsequently received a higher offer than Plaintiff's for the property and wanted Plaintiff to offer more than $110,000.

110.    As a result of Defendant, Zarrabinia's conduct, Defendant, TBW repudiated the agreement with the Plaintiff and would not sell the property to the Plaintiff for $110,000 as it had agreed to do on November 3, 2009.

111.    Plaintiff has suffered losses and damages as a result of Defendant, Zarrabinia's tortious interference with the contractual relations between the Plaintiff and Defendant, TBW.

WHEREFORE, the Plaintiff, Joe Johnson, demands judgment against Defendant, Key Realty and Defendant, Zarrabinia, jointly and severally, in the amount of Fifty Thousand Dollars ($50,000), as and for compensatory damages, punitive damages in the amount of One Hundred Thousand Dollars ($100,000), plus interest, cost and reasonable attorney fees, and for such further and other relief as the Court deems just and proper.

17