# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

**TAYLOR, BEAN & WHITAKER**      **Case No.: 3:09-bk-07047-JAF**
**MORTGAGE CORP.,**

                                      **Chapter 11**

      **Debtor.**
_____/

## OBJECTION OF FREDDIE MAC TO DEBTOR'S MOTION
## FOR EXTENSION OF EXCLUSIVITY

Federal Home Loan Mortgage Corporation ("<u>Freddie Mac</u>"), by and through its undersigned counsel, files this, its objection to *Debtor's Motion for Extension of Exclusivity* (the "<u>Motion</u>") (Doc. No.: 819) filed by Taylor, Bean & Whitaker Mortgage Corp. ("<u>TBW</u>"), REO Specialists, LLC ("<u>REO Specialists</u>") and Home America Mortgage, Inc. ("<u>Home</u>," and, together with TBW and REO Specialists, the "<u>Debtors</u>"), as Debtors and as Debtors in possession in the jointly administered Chapter 11 cases (Case No.: 3:09-bk-07047-JAF, Case No.: 3:09-bk-10022-JAF, and Case No.: 3:09-bk-10023-JAF), and states:

1.      On August 24, 2009 (the "<u>Petition Date</u>"), TBW filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). On November 25, 2009, REO Specialists and Home filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On December 15, 2009, the Court ordered that the Debtors' cases be jointly administered under the TBW case, Case No.: 3:09-bk-07047-JAF.

3.     On the Petition Date, TBW filed the *Debtor's Emergency Application for Approval of Agreement with Navigant Capital Advisors, LLC to Provide the Services of Neil F. Luria as Chief Restructuring Officer and Other Support Personnel* (the "Application") (Doc. No.: 13), seeking approval of an agreement TBW entered into with Navigant Capital Advisors, LLC ("Navigant") to provide the services of Neil F. Luria to TBW as its Chief Restructuring Officer, as well as the services of other Navigant employees.

4.     On August 27, 2009, this Court held an emergency hearing on the Application, and on September 3, 2009, the Court entered an *Order Approving On Interim Basis Debtor's Emergency Application for Approval of Agreement with Navigant Capital Advisors, LLC to Provide the Services of Neil F. Luria as Chief Restructuring Officer and Other Support Personnel* (the "Interim Order") (Doc. No.: 128).

5.     On September 21, 2009, Freddie Mac filed its *Objection of Federal Home Loan Mortgage Corporation to Debtor's Emergency Application for Approval of Agreement with Navigant Capital Advisors, LLC to Provide the Services of Neil F. Luria as Chief Restructuring Officer and Other Support Personnel* (Doc. No.: 295).

6.     On September 21, 2009, this Court held a final hearing on the Application, and on November 12, 2009, the Court entered a *Final Order Approving Application and Agreement with Navigant Capital Advisors, LLC, and Authorizing Debtor to Employ Neil F. Luria as Chief Restructuring Officer and Other Support Personnel* (Doc. No.: 635).

7.     Since the Petition Date, TBW's business operations have significantly decreased.

8.      TBW's principal business, prior to the Petition Date, was comprised of the following:

(a)      Origination, underwriting, processing and funding of conforming conventional and Government-insured residential mortgage loans;

(b)      Sale of mortgage loans into the "secondary market," principally to government-sponsored enterprises such as Freddie Mac or the Government National Mortgage Association ("Ginnie Mae"); and

(c)      Mortgage payment processing and loan servicing.

9.      As of the Petition Date, TBW serviced approximately 512,000 mortgage loans (primarily first-lien, fixed-rate mortgages), having a combined unpaid principal balance ("UPB") in excess of Eighty Billion Dollars ($80,000,000,000.00).

10.      Prior to August 4, 2009, TBW was an approved Freddie Mac seller/servicer and, as of that date, serviced approximately Two Hundred Ninety-One Thousand Five Hundred Twenty-Five (291,525) Freddie Mac mortgage loans with an aggregate UPB of approximately Fifty Billion Six Hundred Forty-Six Million Three Hundred Sixty Thousand One Hundred Thirty Seven Dollars ($50,646,360,137.00) (hereinafter, the "Freddie Mac Portfolio").  This represented about 60 percent of all of TBW's servicing business.

11.      By overnight letter dated August 4, 2009, Freddie Mac notified TBW that TBW's eligibility to sell and/or service Freddie Mac mortgages was terminated "with cause" immediately and, by about this time, TBW's entire loan origination business and

the sale of mortgages into the secondary market (two of its three pre-petition business activities discussed in paragraph 8 above) ceased *in toto.*

12.    After TBW's eligibility to sell and service Freddie Mac loans was terminated, Freddie Mac initiated the transfer of the servicing of all of the Freddie Mac Portfolio to three (3) interim servicers.   That transfer is now substantially complete. Similarly, virtually all of TBW's other business partners have now transferred the servicing of their portfolios to other servicers.

13.    As of December 15, 2009, the servicing of all TBW mortgage assets had been transferred to interim or subsequent servicers, with the exception of approximately *883 loans*. <u>See</u> *Debtor Taylor, Bean & Whitaker Mortgage Corp.'s Second Interim Reconciliation Report*. (Doc. No.: 776) (hereinafter, the "<u>Second Interim Reconciliation Report</u>").  Thus, TBW has lost about 99.83 % of its pre-petition servicing business, and, based upon the statements of Navigant, this business is not expected to resume.

14.    As of the Petition Date, TBW owned and managed approximately 2,100 foreclosed properties owned, managed and controlled by TBW (the "<u>REO Assets</u>"). <u>See</u> *Debtor Taylor, Bean & Whitaker Mortgage Corp.'s First Interim Reconciliation Report* (Doc. No.: 555).   On December 17, 2009, the Court entered an *Order Approving the Debtor's Sale of Certain REO Assets and Granting Related Relief* (Doc. No.: 802), which was supplemented by the Court's January 11, 2010 *Supplemental Order Approving the Debtor's Sale of Certain REO Assets and Granting Related Relief* (Doc. No.: 859), both of which granted Section 363 approval for the bulk sale of 1,046 parcels of the REO

Assets. Upon information and belief, TBW plans to liquidate the remaining REO Assets when and as possible.

15. TBW hired Navigant on or about August 14, 2009.

16. The Interim Order required Navigant to invoice TBW on a weekly basis and to provide copies of its invoices to various parties. In accordance with the Interim Order, various parties were served with copies of Navigant's invoices to TBW for a portion of the almost nineteen week period from August 24, 2009 through December 31, 2009 (the "Invoices").[1] True copies of the Invoices are attached hereto as Composite Exhibit "A".

17. A summary of the amounts due included in the Invoices are as follows:

| Week | Hours | Fees | Monthly Fee | Expenses | Total |
|---|---|---|---|---|---|
| 08/24/09 - 08/31/09 | 369.30 | $186,597.50 | $250,000.00 | $15,271.98 | $451,869.48 |
| 09/01/09 - 09/06/09 | 270.00 | $140,540.00 | $0.00 | $10,028.32 | $150,568.32 |
| 09/07/09 - 09/13/09 | 382.50 | $174,972.50 | $0.00 | $12,360.63 | $187,333.13 |
| 09/14/09 - 09/20/09 | 531.75 | $254,391.50 | $0.00 | $19,212.03 | $273,603.53 |
| 09/21/09 - 09/27/09 | 606.65 | $285,653.25 | $250,000.00 | $32,119.83 | $567,773.08 |
| 09/28/09 - 10/04/09 | Unknown | Unknown | Unknown | Unknown | Unknown |
| 10/05/09 - 10/11/09 | Unknown | Unknown | Unknown | Unknown | Unknown |
| 10/12/09 - 10/18/09 | Unknown | Unknown | Unknown | Unknown | Unknown |
| 10/19/09 - 10/25/09 | 1,033.60 | $381,287.50 | $0.00 | $48,922.96 | $430,210.46 |
| 10/26/09 - 11/01/09 | 980.60 | $383,606.00 | $250,000.00 | $41,956.35 | $675,562.35 |
| 11/02/09 - 11/08/09 | 823.90 | $330,256.00 | $0.00 | $24,698.24 | $354,954.24 |
| 11/09/09 - 11/15/09 | 1,171.80 | $414,384.50 | $0.00 | $46,850.12 | $461,234.62 |
| 11/16/09 - 11/22/09 | 929.40 | $359,093.00 | $0.00 | $30,559.06 | $389,652.06 |
| 11/23/09 - 11/29/09 | 526.70 | $200,551.00 | $250,000.00 | $13,879.33 | $464,430.33 |
| 11/30/09 - 12/06/09 | 972.40 | $376,495.50 | $0.00 | $19,972.74 | $396,468.24 |
| 12/07/09 - 12/13/09 | 912.65 | $355,527.75 | $0.00 | $19,528.75 | $375,056.50 |
| 12/14/09 - 12/20/09 | 790.90 | $302,529.00 | $0.00 | $22,711.62 | $325,240.62 |
| 12/21/09 - 12/31/09 | 651.00 | $261,988.00 | $0.00 | $6,549.87 | $268,537.87 |
| | | | | | |
| **Total** | **10,953.15** | **$4,407,873.00** | **$1,000,000.00** | **$364,621.83** | **$5,772,494.83** |

---

[1] Upon information and belief, Navigant has either not invoiced TBW, or has not served copies of invoices to the various required parties, for the period from September 28 through October 18 (the weeks ending October 4, October 11 and October 18, 2009). Though undersigned counsel has diligently searched his own records and made no less than three written requests of TBW's counsel to produce copies of these invoices, none of the referenced invoices have been received by Freddie Mac.

| | |
|---|---|
| **Average Hourly Rate (based on 15 full weeks)** | **$402.43** |
| **Average Weekly Fees (without including $250,000.00 monthly flat fee for Luria and Casas; based on 15 full weeks)** | **$293,858.20** |
| **Average Weekly Expenses (based on 15 full weeks)** | **$24,308.12** |

18.     The Invoices reflect an effective average hourly rate billed by Navigant to TBW of approximately $402.43.  Navigant seems to be utilizing many of its highest paid employees in activities reflected in the Invoices. The effective hourly rate charged to TBW is excessive.

19.     The Invoices reflect that in the almost nineteen weeks from August 24, 2009 through December 31, 2009, Navigant's employees billed TBW for 10,953.15 hours, valued at approximately $4,407,873.00 and $364,621.83 for expenses.  In addition, Navigant is also receiving a flat fee of a $250,000.00 a month for services of Chief Restructuring Officer Neil F. Luria and Edward Casas.[2]  Thus, in the first almost nineteen weeks of this case, TBW has incurred total fees and expenses to Navigant of approximately $5,772,494.83.[3]  This represents approximately seventy-four percent (74%) of the total approximately $7,736,000.00 of TBW's alleged unencumbered cash balance as of November 30, 2009.  See *Financial Reports for the Period November 1, 2009 to November 30, 2009* (Doc. No.: 813).

---

[2]     In addition to these fees, Navigant is due as-yet undetermined Deferred Restructuring Fee Payments in accordance with the terms of the approved engagement letter that was attached to the application to employ Navigant.  Though these Deferred Restructuring Fee Payments are still yet to be determined, they will no doubt be substantial.  By way of example and not limitation, Navigant is due 0.25% of the overall proceeds of the bulk sale of REO assets recently approved by this Court.

[3]     This does not include, of course, either: (a) any amounts that either were, or should have been, invoiced by Navigant for the period of September 28 through October 18 (the weeks ending October 4, October 11 and October 18, 2009), which could be estimated, in the aggregate, between $600,000 and $900,000; or (b) professional fees for: (i) Stichter, Riedel, Blain & Prosser, P.A. (Fees: $634,659.50; Expenses: $19,767.67), counsel to the Debtor; (ii) Troutman Sanders, LLP (Fee: $2,102,826.00; Expenses: $44022.89), special counsel to the Debtor; and (iii) Berger Singerman, P.A. (Fees: $627,230.50; Expenses: $20,025.66), counsel to the Official Committee of Unsecured Creditors; all of which have recently filed fee applications aggregating Three Million Three Hundred Sixty-Four Thousand Seven Hundred Sixteen and No/100 Dollars ($3,364,716.00) in fees and Eighty-Three Thousand Eight Hundred Sixteen and 22/100 Dollars ($83,816.22) in expenses.

20.     On December 22, 2009, Debtors filed the Motion, pursuant to Sections 1121(b), 1121(c)(2) and 1121(c)(3) of the Bankruptcy Code, seeking, among other things, an Order (A) extending, until June 10, 2010, the 120-day period prescribed in Section 1121 during which TBW has the initial exclusive right to propose and file a Chapter 11 plan; and (B) upon TBW filing the plan, further extending exclusivity until the entry of an order at the conclusion of the hearing on confirmation of the plan as filed. The Motion appears to have been filed on the day that the 120-day initial period expired, and was not set for hearing on that day. Therefore, the exclusivity period has expired of its own terms and the Motion is moot.

21.     If the Court is nevertheless willing to hear the Debtor's Motion on the merits, then it should be denied. At the current burn rate, the granting of the requested extension of the exclusivity period through June 10, 2010, would ensure that another approximately Seven Million Five Hundred Thousand Dollars ($7,500,000) of the Debtors' funds will be expended to pay Navigant prior to the time the TBW files a proposed Plan, representing approximately $5,583,305.80 (average weekly fees of $293,858.20 for nineteen weeks from January 24, 2010 through June 10, 2010) for Navigant's fees, plus approximately $461,854.28 (average weekly expenses of $24,308.12 for nineteen weeks) for Navigant's expenses, plus the monthly flat fee for services of Chief Restructuring Officer Neil F. Luria and Edward Casas in the aggregate amount of $1,500,000 (plus as-yet undetermined additional Deferred Restructuring Fee Payments). An extension of the exclusivity period will only serve to further severely dilute, if not wholly eliminate, the value of Debtors' bankruptcy estates.

22.     Moreover, as demonstrated above and as TBW has admitted on the record, there is effectively no business left to restructure in this bankruptcy, and Navigant's services are being provided in the context of what is undeniably a liquidating Chapter 11 case.   There is virtually no chance that TBW will emerge from Chapter 11 as a reorganized, operating entity.   None of TBW's pre-petition management remains in place, and the vast majority of its pre-petition employees have left.   TBW, at this point, is nothing more than a shell organization with effectively no ongoing business.   It is being operated by Navigant, Inc., which, on information and belief, has no equity or other ownership interest of any kind whatsoever in TBW.   Navigant has no stake in TBW's future, except insofar as it continues to receive about half a million dollars per week in fees.

23.     In direct contrast, Freddie Mac and other creditors of the estate have a huge interest in TBW's future.   As noted above, Freddie Mac accounted for approximately 60 percent of TBW's pre-petition servicing business.   Freddie Mac is still due and owing hundreds of millions of dollars from TBW, far in excess of the $245 million that the Second Interim Reconciliation Report indicates is allocable to Freddie Mac from TBW's various accounts.   It appears that the Debtor does not plan to distribute any of that money any time soon, and certainly has no incentive to do so for as long as it has the exclusive right to file a proposed plan of reorganization.

24.     TBW (through Navigant) asserts, however, that it needs additional time to complete the so-called "asset reconciliation," by which it means coming to a conclusion regarding the ownership of particular loans.   The asset reconciliation, however, is not expected to be completed until late 2010 or 2011.   Moreover, there are currently at least

three ongoing lawsuits, styled: (i) BNP Paribas Mortgage Corporation v. Bank of America, N.A., with case number 09-CV-9783, pending in the United States District Court for the Southern District of New York; (ii) Deutsche Bank, AG v. Bank of America, N.A., with case number 09-CV-9784; pending in the United States District Court for the Southern District of New York, and (iii) Bank of America v. Colonial Bank v. Federal Deposit Insurance Corporation, with case number 09-22384; pending in the United States District Court for the Southern District of Florida and with case number 09-14844-H; pending in the United States Court of Appeals for the Eleventh Circuit (hereinafter, the "Actions") where the ownership of certain TBW loans is at issue. It is Freddie Mac's understanding that TBW (through Navigant) has taken no action whatsoever to assert the automatic stay or other estate interest in those cases. Thus, those Actions are proceeding apace and any asset ownership determinations in the "asset reconciliation" report ultimately issued by TBW are nevertheless likely to be subject to competing claims and interests based on any determinations reached in those two Actions.

25. Under these circumstances, Freddie Mac and/or other creditors may well believe that this case should proceed in a different manner than does Navigant. For example, those creditors, including Freddie Mac, might well be interested in submitting a proposed Liquidating Plan of Reorganization which requires the immediate distribution of monies related to assets the ownership of which is not in dispute. Such proposed Plan might also provide for the continued review by the estate, either through Navigant or a trustee, of the ownership of the disputed assets. Alternatively, it might propose some other mechanism to deal with monies attributable to assets which are in dispute. If the

creditors are not given this opportunity, then Navigant will continue to incur fees of multiple hundreds of thousands of dollars per week for an indefinite period of time, notwithstanding that the creditors may well be able to demonstrate that doing so is not in the best interests of the estate. The creditors should at the very least be permitted to propose to the interested parties a Liquidating Plan of Reorganization which details a course of action different than the one that has effectively been adopted here by fiat without the confirmation of any Plan. Extending the exclusivity period will deny the creditors that opportunity.

26.     Finally, TBW also seeks an order from the Court further extending the exclusivity period once it files a proposed Plan until after an order on confirmation is issued on that Plan. There is simply no basis for this request. 11 U.S.C. 1121(c)(3) provides a breathing period for a debtor that files a proposed Plan before the exclusivity period expires, allowing it 180 days from the petition date to obtain acceptances from any impaired class before any other party can file a competing Plan. The Code does not contain any blanket prohibition against other creditors from filing competing Plans until an order on confirmation of the debtor's Plan is issued. There is simply no reason, nor is there any statutory basis, to do so here.

WHEREFORE, Freddie Mac respectfully requests that this Court enter an Order denying the Motion.

Respectfully submitted,

/s/ Jason Ward Johnson
Gary R. Soles
Florida Bar No.: 0616149
Jason Ward Johnson

Florida Bar No.: 0186538
**LOWNDES, DROSDICK, DOSTER,**
**KANTOR & REED, P.A.**
450 South Orange Avenue, Suite 800
Orlando, Florida 32803
Telephone: (407) 843-4600
Facsimile: (407) 843-4444
e-mail: jason.johnson@lowndes-law.com

and

/s/ George Kielman
George Kielman, Managing Associate
General Counsel
Kenton W. Hambrick, Associate General
Counsel
Soha Mody, Associate General Counsel
Federal Home Loan Mortgage Corporation
8200 Jones Branch Drive - MS 202
McLean, Virginia  22102
Telephone: (703) 903-2640
Facsimile: (703) 903-3691

Attorneys for Federal Home Loan Mortgage
Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 19th day of January, 2010, I electronically filed the foregoing *Objection Of Freddie Mac To Debtor's Motion for Extension of Exclusivity* with the Clerk of Court by using the Case Management/Electronic Case Filing ("CM/ECF") system which will send a notice of electronic filing, and I will complete service of the foregoing as required by Rule 5, Federal Rules of Civil Procedure, made applicable by Rule 7005, *Federal Rules of Bankruptcy Procedure*, to all parties indicated on the electronic filing receipt.

/s/ Jason Ward Johnson
Jason Ward Johnson