# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re:                                              Case No.: 3:09-bk-07047-JAF
**TAYLOR, BEAN & WHITAKER**
**MORTGAGE CORP.**
                                                    **Chapter 11**
                        **Debtor.**
_____/

## RESPONSE OF RAY BOWMAN AND PAUL ALLEN TO NATIONAL UNION FIRE INSURANCE COMPANY'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY & THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' RESPONSE TO SAME

Raymond E. Bowman ("Bowman") and Paul R. Allen ("Allen"), former officers of

Debtor Taylor Bean & Whitaker Mortgage Corporation ("Taylor Bean"), respectfully submit this

response to National Union Fire Insurance Company of Pittsburgh, Pa.'s ("National Union" or

"Insurer") Motion for Relief from the Automatic Stay, to the Extent Applicable, to Permit

Insurer to Advance Defense Costs of Certain of the Debtors' Former Directors and Officers

("Motion") [DE 1534] and The Official Committee of Unsecured Creditors' Response to the

same ("Committee's Response") [DE 1623].

Messrs. Allen and Bowman join in the Insurer's request that the Court permit the Insurer

to advance Defense Costs to them based upon the terms of the D&O insurance policy at issue.[1]

Although there is some disagreement as to applicability of the $1 million retention (which will

be discussed more below), it is undisputed that: (1) the Insurer has an obligation to advance

---

[1]      A copy of the policy, entitled "Directors, Officers and Private Company Liability Insurance
Policy," is provided as Ex. A hereto ("the Policy"). "D&O insurance is commonly obtained to afford
officers and directors protection from adverse claims, and is often included in executive benefit packages
as incentive for employment." *In re First Central Financial Corp.*, 238 B.R. 9, 13 (Bankr.E.D.N.Y.
1999).

Defense Costs to Allen and Bowman for certain ongoing matters; (2) Allen and Bowman must vigorously defend themselves in these matters in order to protect their individual interests as well as those of the Debtor Taylor Bean; and (3) without the immediate advancement of Defense Costs, Allen and Bowman will be forced to discontinue their defense in these matters, thereby resulting in substantial harm to their own rights and those of the Debtor.

I.      **Immediate Payment Of Defense Costs Is Critical To Safeguard The Rights Of Allen, Bowman, And The Debtor Taylor Bean.**

The collapse of Taylor Bean and its corresponding chapter 11 filings have had a crippling effect upon Allen (the former CEO of Taylor Bean) and Bowman (the former President of Taylor Bean), each of whom has been the subject of a litany of claims brought by multiple third-parties regarding the conduct of Taylor Bean and certain of its officers and directors.  In all of these matters, Debtor Taylor Bean has also been specifically named as a defendant and/or its business operations have been alleged to have violated various state and federal statutes.

It is undisputed that Allen and Bowman are "Insureds" covered by the Policy, and their right to proceeds under the Policy are direct and independent of any rights that Debtor Taylor Bean may have with respect to the proceeds.  (Docket No. 1543 at ¶ 4).  *See First Central Financial,* 238 B.R. at 13 (noting that a D&O policy "provides liability coverage directly to the officers and directors of a corporation for claims asserted against them").  Furthermore, the Insurer has already acknowledged its obligation to advance Defense Costs with respect to certain of the matters pending against Allen and Bowman (and is formulating its coverage position as to others).  (*Id.*).  To date, however, Allen and Bowman have not received any Defense Costs from the Insurer and have been forced to exhaust much of their own personal savings to defend themselves -- and the actions of the Company.

At this point, Allen and Bowman simply do not have the means to continue their defense unless the Insurer provides them with the funds to do so. Without immediate access to these funds, Allen and Bowman will have no choice but to discontinue their defense, which would not only prejudice their individual rights but likely prejudice the rights of the Debtor Taylor Bean as well. This is precisely what D&O policies such as this one are intended to address. *See Okada v. MGIC Indem. Corp.*, 608 F. Supp. 383 (D. Hawaii 1985), *aff'd in pertinent part, rev'd in part,* 795 F.2d 1450 (9th Cir. 1986) (D&O policies must provide contemporaneous payment of defense costs to insureds); *Nu-Way Environmental, Inc. v. Planet Ins. Co.,* Case No. 95 CV 573, 1997 WL 462010, *2 (S.D.N.Y. Aug. 12, 1997) ("without contemporaneous payment of defense costs the insurance would not truly protect the insureds from financial harm caused by the suits against them") (citation omitted).

## II. The Insureds Have A Direct Claim To The Insurance Proceeds, And Advancement Of Defense Costs Is Appropriate And Will Protect The Rights Of The Debtor And The Estate.

### A. Debtor Does Not Have Priority Over Other Insureds, And Advancement Of Defense Costs To The Individual Insureds Is Appropriate.

The central premise of the Committee's objection is that, because Taylor Bean is also an Insured along with Allen and Bowman, this in and of itself provides Taylor Bean a priority right to the insurance proceeds. *See* Committee's Response at 5 ("given that the Debtor is the named insured under the Policy, it has priority rights to the proceeds thereunder"). Tellingly, however, the Committee fails to provide any authority to support their far-reaching proposition. In fact, numerous courts have rejected such arguments and have ordered the distribution of insurance proceeds to officers and directors, even where the policy covers both the individuals and the company.

*In re CHS Electronics, Inc.*, 261 B.R. 538 (Bankr.S.D.Fla. 2001) (Mark, J.), is directly on point. The D&O policy at issue there was similar to the Policy at issue here and provided coverage for claims brought against the entity's directors and officers as well as the entity itself. *Id.* at 540. Although recognizing that courts have held that debtor owned policies are property of the estate, the *CHS* court noted that "several courts have made a distinction between insurance *policies* owned by a debtor, and the *proceeds* payable under the policies." *Id.* at 542 (emphasis in original). Focusing on who has the rights against the insurance proceeds, the *CHS* court adopted the Fifth Circuit's holding in *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987), and found that proceeds available to the individual directors and officers were not part of the bankruptcy estate and granted the motion to allow distribution of proceeds to the directors and officers. *Id.* ("[T]he CHS estate has no property interest in the Proceeds available under Coverage A, the coverage to individual directors and officers.").

*In re First Central Financial*, 238 B.R. 9, is also illustrative. There too the court found that the proceeds of the directors' and officers' liability policy were not part of the estate, even though the policy also provided coverage for the company. *Id.* at 16-17. On that basis, the court permitted the distribution of those proceeds to the individual insureds. *Id.* "In essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection." *Id.* at 16. *Accord In re World Health Alternatives, Inc.*, 369 B.R. 805 (Bankr.D.Del. 2007) (finding that proceeds from D&O policy were not property of the estate).

Even the cases cited by the Committee support permitting the advancement of insurance proceeds to Allen and Bowman. For example, after a lengthy discussion summarizing the current state of the law on this issue, the court in *In Re Petters Company, Inc.*, 419 B.R. 369 (Bankr.D.Minn. 2009), permitted the advancement of defense costs on behalf of an individual

insured officer, Petters, up to 75% of the policy limit without giving the two debtors any priority to them ("Freeing up $7,500,000.00 will enable the submission and payment of the claims … for Defense Expenses incurred by PCI and PGW to date, and something more."). *Id.* at 380.

The same result was reached in *In Re Laminate Kingdom, LLC,* 2008 WL 1766637 (Bankr.S.Dist.Fla. Mar. 13, 2008) (Cristol, J.). There too, even though the policy at issue provided coverage to the debtor as well as the directors and officers, the court found that the insurance proceeds were not part of the estate and that advancement of the individual insured's defense costs was appropriate. *Id.* at *3. Following the reasoning of many other courts that "because of the separate and distinct interests between the directors and officers and the debtor, numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers--even though the insurance policies also provided direct coverage to debtor," Judge Cristol permitted advancement of defense costs to the debtor's directors and officers. *Id.* at *4.

The Committee's opposition is particularly puzzling here, because – unlike the HUD claims tendered by Allen and Bowman – the Insurer has not accepted any of the Company's insurance claims. Accordingly, absent an affirmative determination by the Insurer or a judicial determination as to insurability (neither of which has taken place), the Debtor Taylor Bean currently does not have a right to the proceeds from the Policy. Such hypothetical claims are insufficient to make insurance proceeds property of the bankruptcy estate. *See First Central Financial*, 238 B.R. at 17 ("If entity coverage is hypothetical and fails to provide some palpable benefit to the estate, it cannot be used by the trustee to lever himself into a position of first entitlement to policy proceeds.").

Furthermore, even assuming, *arguendo*, that the proceeds under the policy were considered property of the estate, there is "cause" under 11 U.S.C. § 362(d)(1) to modify the stay to permit the Insurer to advance Allen and Bowman their costs of defending against the pending claims. The *Laminate Kingdom* decision, once again, supports this point. There, the court found "cause" to advance defense costs for directors and officers named in individual proceedings, noting that "bankruptcy courts should be wary of impairing the contractual rights of directors and officers even in cases where the policies provide entity coverage." *Id.* at *4 (citing *In re Adelphia Communications Corp.*, 285 B.R. at 598 (Bankr.S.D.N.Y. 2003)). This is exactly the case here, where an impairment of Allen and Bowman's contractual rights to defense costs would result in their inability to defend themselves in the proceedings in which they are named. *See also In re Cybermedica, Inc.*, 280 B.R. 12, 18 (Bankr.D.Mass. 2002) (permitting advancement of defense costs because the individual insureds would be harmed if disbursements were not made).

It also bears noting that, when it agreed to a "wasting policy" (Docket No. 1543 at ¶ 2), Taylor Bean itself agreed to the "first come, first served" method of dispersing the policy proceeds that is requested here. *See Central Financial*, 238 B.R. at 14 ("payment under the [D&O] policy is normally provided on a first-come, first-served basis"). The Company could have insisted that its claim be given priority over those of the Individual Insureds when it negotiated the policy, but did not do so. *See, e.g., In re Vitek, Inc.*, 51 F.3d 530, 537 (5th Cir. 1995) (finding that insurer may satisfy claims as they are tendered and does not have a duty to preserve insurance proceeds for subsequent claims, absent express language to the contrary). In contrast, Allen and Bowman relied upon the Policy and their status as Insureds when they agreed to be employed as officers of the Company.

**B.    There Is No Conflict Of Interest Between The Individual Insureds And The Debtor; Instead Their Interests Are Aligned.**

It is undisputed that the interests of the Individual Insureds and Debtor Taylor Bean in the underlying matters are aligned.  For example, in the pending matters brought by HUD and certain individual states, in the event that Allen or Bowman are found to have acted improperly or negligently in the performance of their duties, such a finding would adversely impact Taylor Bean's position with respect to these and other related matters.

Nevertheless, the Committee attempts to manufacture a "conflict" by noting that the Company has also submitted claims to the Insurer.  However, as discussed above, at this point in time, any rights that the Company may have with respect to the policy proceeds are "hypothetical" at best and should not preclude the Insurer from advancing Defense Costs to Allen and Bowman.  Indeed, the Committee's argument, if adopted, would lead to absurd results. For example, the Committee attempts to support its argument by noting that the Florida law allows the Company to bring suit against the Insurer within five years.  *See* Committee Resp. at 11.  But, if the Committee's arguments were correct, then an Insurer would never be permitted to advance Defense Costs to individual directors and officers until after the limitation period expires, because it could hypothetically tender a claim and seek coverage on the last day of the limitations period.  In the meantime, the other insureds would be left to their own devices to defend against claims that are covered by the policy.  This simply cannot be the case, and the Committee has no cited any support of this position.[2]

---

[2]    The Committee also argues that Allen and Bowman are trying to convert their "unsecured claims for indemnification into administrative expense claims."  Committee Resp. at 10.  But, this is incorrect. Allen and Bowman are seeking insurance proceeds from the Insurer based upon the fact that they are direct and independent "Insureds" under the Policy.  They are not seeking payment for these expenses from the Company.  The Committee's mischaracterization of the arguments conflates insurance coverage issues with bankruptcy issues.

**III.     The Dispute As To The Applicability Of The $1 Million SIR Should Not Preclude The Immediate Payment Of The Insurance Proceedings.**

The Insurer has acknowledged that Allen and Bowman, as Individual Insureds under the Policy, are entitled to coverage for their Defense Costs related to the certain administrative proceedings and states that it is still formulating its coverage position as to the other claims. (Docket No. 1543 at ¶ 4).   As the Insurer acknowledges in its motion, however, there is disagreement between itself and the Individual Insureds as to the applicability of a self-insured retention amount of one million dollars ($1,000,000.00).  (*Id.* at 2, n.2).

The crux of the dispute involves whether the claims tendered by Allen and Bowman involve Loss "for which the Company has indemnified or is permitted or required to indemnify the Individual Insured(s) ('Indemnifiable Loss')."  *See* Ex. A at ¶ 6.  Only if a claim involves an "Indemnifiable Loss" do the retention amounts set forth in Endorsement # 11 of the Policy apply. *See* Ex. A, Endorsement # 11.  If the claims at issue do not involve Indemnifiable Losses, the Insurer is obligated to advance the Defense Costs starting from the first dollar.

As acknowledged by the Insurer and the Committee, the Company has refused to indemnify Allen and Bowman for the losses related to the claims.  Accordingly, for this and other reasons, Allen and Bowman believe that their claims do not involve "Indemnifiable Losses" and, therefore, are not subject to any retention amount.  On the other hand, the Insurer has stated its position that the $1 million retention for "Regulatory Claims" would apply in this instance.

If the claims are not "Indemnifiable," Allen and Bowman are entitled to payment of their costs from the Insurer from the first dollar.   On the other hand, if the claims are "Indemnifiable," Allen and Bowman are entitled to payment of their costs from the Company starting from the first dollar to the retention threshold amount (and, thereafter, from the Insurer).  As such, the

dispute over the SIR is largely one between the Company and the Insurer.  But, it is the Individual Insureds who are caught in the middle and suffering harm because their Defense Costs are not being paid.[3]  Accordingly, Allen and Bowman request that the Court order the Insurer to advance all of the Defense Costs incurred by them, until the retention issue is adjudicated or otherwise resolved.

## CONCLUSION

For the reasons above, Ray Bowman and Paul Allen respectfully request that the Court grant leave to the Insurer to advance their Defense Costs and do so immediately.

Dated this 2nd day July, 2010.

Respectfully Submitted,

**BAST AMRON LLP**
*Local Counsel for Paul Allen*
*and Raymond Bowman*
SunTrust International Center
One Southeast Third Avenue
Suite 1440
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (305) 379-7905
Email: jbast@bastamron.com

By: /s/ Jeffrey P. Bast
    Jeffrey P. Bast, Esq. (FBN 996343)

and

Nathan M. Berman (*for Paul Allen*)
Florida Bar No.: 0329230
Zuckerman Spaeder LLP
101 East Kennedy Boulevard, Suite 1200
Tampa, Florida 33602
Tel.:  (813) 221-1010
Fax:   (813) 223-7961
Email: nberman@zuckerman.com

and

---

[3] Of course, to the extent that the bills tendered by Allen, Bowman and Farkas exceed the retention amount and the Insurer accepts all of these claims, there is no dispute that any amounts that have been incurred above and beyond the retention amount should be covered.

William A. Schreiner, Jr. (*for Paul Allen*)
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, D.C.  20036-5807
Tel.: (202) 778-1858
Fax: (202) 822-8106
Email: wschreiner@zuckerman.com

John Z. Lee, Esq. (*for Raymond Bowman*)
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
Tel.: 312.360.6738
Email: jlee@freebornpeters.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 2, 2010, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system and on this day was served on all CM/ECF registered recipients and via U.S. Mail to all parties on the attached matrix.

*/s/ Jeffrey P. Bast*_____
Jeffrey P. Bast

Label Matrix for local noticing
113A-3
Case 3:09-bk-07047-JAF
Middle District of Florida
Jacksonville

Antonio Alonso
Law Office of Marshall C Watson PA
1800 NW 49th Street
Suite 120
Fort Lauderdale, FL 33309-3092

Stephen Andrews
Williams & Connolly LLP
725 12th Street Northwest
Washington, DC 20005-5901

Earl M. Barker Jr.
Slott, Barker & Nussbaum
334 E. Duval St.
Jacksonville, FL 32202-2718

Jeffrey P Bast
Bast Amron LLP
One Southeast Third Ave Suite 1440
Miami, FL 33131-1714

Lawrence J. Bernard
450-5 Busch Drive
Jacksonville, FL 32218-5553

Russell M Blain
Stichter, Riedel, Blain & Prosser
110 East Madison Street, Suite 200
Tampa, FL 33602-4718

Robyn Severs Braun
Taylor & Carls PA
150 N Westmonte Drive
Altamonte Springs, FL 32714-3342

John C Brock Jr.
Florida Default Law Group
Post Office Box  25018
Tampa, FL 33622-5018

Jason B. Burnett
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202-3611

Daniel A Caldwell
Office of U S Attorney
600 Russell Federal Building
75 Spring Street Southwest
Atlanta, GA 30303-3315

James W Carpenter
Angelo & Banta PA
515 East Las Olas Boulevard
Suite 850
Fort Lauderdale, FL 33301-2277

Ezra H Cohen
Troutman Sanders LLP
600 Peachtree Street
Suite 5200
Atlanta, GA 30308-2216

Betsy C Cox
Rogers Towers
1301 Riverplace Boulevard
Suite 1500
Jacksonville, FL 32207-1811

Collette B Cunningham
United States Attorney's Office
300 North Hogan Street
Suite 700
Jacksonville, FL 32202-4204

James D Dantzler Jr
Troutman Sanders LLP
600 Peachtree Street Northeast
Suite 5200
Atlanta, GA 30308-2216

John P Dillman
Linebarger Goggan Blair & Sampson LLP
Post Office Box 3064
Houston, TX 77253-3064

Robert M Dombroff
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

Robert L Doty
Ohio Attorney General
One Government Center
Suite 1340
Toledo, OH 43604-2261

Allison B Duffie
Ben-Ezra & Katz, PA
2901 Stirling Road, Suite 300
Fort Lauderdale, FL 33312-6529

Kevin M Eckhardt
Hunton & Williams, LLP
1111 Brickwell Ave
Suite 2500
Miami, FL 33131-3155

Jonathan T Edwards
Alston & Bird LLP
1201 West Peachtree Street
One Atlantic Center
Atlanta, GA 30309-3449

Lisa J Ehrenreich
Ben-Ezra & Katz, P.A.
2901 Stirling Road, Suite 300
Fort Lauderdale, FL 33312-6529

Raye Curry Elliott
Akerman Senterfitt
50 North Laura St, #2500
Jacksonville, FL 32202-3646

Elena L Escamilla
United States Trustee
135 W Central Blvd  Suite 620
Orlando, FL 32801-2440

Elena L Escamilla TB
135 W Central Blvd, Suite 620
Orlando, FL 32801-2476

A Richard Feldman
Bazelon Less & Feldman
1515 Market Street
Suite 700
Philadelphia, PA 19102-1996

W Keith Fendrick
Holland & Knight, LLP
100 North Tampa Street, Suite 4100
Tampa, FL 33602-3644

Beth K. Findsen
7279 East Adobe Drive, Ste 120
Scottsdale, Az 85255-4041

Linda S Finley
Monarch Plaza - Suite 1600
3414 Peachtree Road
Atlanta, GA 30326-1153

Andrew L. Fivecoat
Albertelli Law
600 Westshore Blvd Suite 400
Tampa, FL 33609-1145

Joseph D Foley Jr
Joseph Dayton Foley, Jr. P.A.
283 Cranes Roost Blvd.
Suite 111
Altamonte Springs, FL 32701-3437

Marcy Ford
Trott & Trott PC
31440 Northwestern Highway
Suite 200
Farmington Hills, MI 48334-5422

Hollyn J Foster
Slott, Barker & Nussbaum
334 East Duval Street
Jacksonville, FL 32202-2718

Larry M Foyle
Kass Shuler Solomon Spector Foyle et al
P O Box 800
Tampa, FL 33601-0800

James D Gassenheimer
Berger Singerman
200 South Biscayne Boulevard
Suite 1000
Miami, FL 33131-5319

Gill R Geldreich
Tennessee Attorney General's Office
Post Office 20207
Nashville, TN 37202

General Electric Capital Corporation
c/o John S. Schoene, Esq.
100 E. Sybelia Ave., Suite 205
Maitland, FL 32751-4757

Brian J Gillis
Bogin Munns & Munns
Post Office Box 2807
Orlando, FL 32802-2807

Douglas R Gonzales
Weiss Serota Helfman
200 East Broward Boulevard
Suite 1900
Fort Lauderdale, FL 33301-1949

James S. Grodin
111 N. Orange Avenue, Suite 1800
Orlando, FL 32801-2343

Amy Denton Harris
Stichter, Riedel, Blain & Prosser, P.A.
110 E Madison Street, Suite 200
Tampa, FL 33602-4718

Judy Simmons Henry
Wright Lindsey & Jennings LLP
200 West Capitol
Suite 2300
Little Rock, AR 72201-3699

Ronald S Holliday
DLA Piper US LLP
100 North Tampa Street, Suite 2200
Tampa, FL 33602-5809

Donald E. Hood
The Law Office of Donald E. Hood, PLLC
6440 N. Central Expressway, Suite 204
Dallas, TX 75206-4167

Alicia M Hunt
Department of Justice - Civil Division
Ben Franklin Station
Post Office Box 875
Washington, DC 20044-0875

May Hustey, Esquire
Glazer & Associates, PA
3113 Stirling Road, Ste 201
Hollywood, FL 33312-6547

Kimberly H. Israel
Held & Israel
6320 St. Augustine Road, Suite 2
Jacksonville, FL 32217-2813

Eugene H Johnson
Johnson Law Firm PA
300 W Adams Street Ste 350
Jacksonville, FL 32202-4330

Jason Ward Johnson
Lowndes, Drosdick, Doster, Kantor & Reed
Post Office Box 2809
Orlando, FL 32802-2809

Craig I Kelley
Kelley & Fulton, P.A.
1665 Palm Beach Lakes Boulevard
Suite 1000
West Palm Beach, FL 33401-2109

Jeffrey W Kelley
Troutman Sanders LLP
600 Peachtree Street
Suite 5200
Atlanta, GA 30308-2216

Shmuel Klein
113 Cedarhill Ave.
Mahwah, NJ 07430-1353

Roy S Kobert
Post Office Box 4961
Orlando, FL 32802-4961

John W Kozyak
Kozyak, Tropin & Throckmorton, PA
2525 Ponce De Leon
9th Floor
Coral Gables, FL 33134-6039

Jeffrey T Kucera
K & L Gates LLP
200 S. Biscayne Blvd., Suite 3900
Miami, FL 33131-2370

Nina M LaFleur
PO Box 861128
St. Augustine, FL 32086-1128

Carol A Lawson
Douglas Zahm, P.A.
12425 28th St. N.
Suite 200
St. Petersburg, FL 33716-1826

Linda M Leali
White & Case LLP
200 South Biscayne Blvd
Suite 4900
Miami, FL 33131-2352

Hal J. Leitman
Macey, Wilensky, Kessler & Hennings
230 Peachtree Street, NW
Suite 2700
Atlanta, GA 30303-1561

Patrick T Lennon
MacFarlane Ferguson & McMullen
Post Office Box 1531
Tampa, FL 33601-1531

Hywel Leonard
Carlton Fields, PA
P O Box 3239
Tampa, FL 33601-3239

Stephanie C'Lieb
Trenam, Kemker
Post Office Box 1102
Tampa, FL 33601-1102

Angelina E Lim
Johnson Pope Bokor Ruppel & Burns
911 Chestnut Street
Clearwater, FL 33756-5643

James M Liston
Bartlett Hackett Feinberg PC
155 Federal Street
9th Floor
Boston, MA 02110-1610

Leslie Lockard
1500 Providence Highway
Suite 33
Norwood, MA 02062-4631

Ashley D. Lupo
Roetzel & Andress, P.A.
850 Park Shore Drive
Trianon Centre - Third Floor
Naples, FL 34103-3587

(c)KEVIN E MANGUM
MANGUM & ASSOCIATES PA
101 SUNNYTOWN RD STE 200
CASSELBERRY FL  32707-3862

Richard M Maseles
Missouri Department of Revenue
Post Office Box 475
Jefferson City, MO 65105-0475

J.  Timothy Mast
600 Peachtree Street, NE
Suite 5200
Atlanta, Ga 30308-2231

Erin K Mautner
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

Charles W. McBurney Jr.
76 South Laura Street Suite 590
Jacksonville, FL 32202-3404

John H. McCorvey Jr.
McCorvey & Myers
1912 Hamilton Street Suite 204
Jacksonville, FL 32210-2078

Frank F McGinn
Bartlett Hackett Feinberg PC
155 Federal Street
9th Floor
Boston, MA 02110-1610

Andrew D McNamee
Stearns Weaver Miller et al
150 West Flagler Street
Suite 2200
Miami, FL 33130-1536

Daniel Morman
The Barthet Firm
200 South Biscayne Boulevard
Suite 1800
Miami, FL 33131-5333

Christopher B. Mosley
1000 Throckmorton Street
Fort Worth, TX 76102-6312

Wanda D Murray
Law Offices of David J Stern PA
900 South Pine Island Road
Suite 400
Plantation, FL 33324-3920

CS Office of Schuyler S Smith
Schuyler-Stewart-Smith, PA
118 W Adams St, Suite 800
Jacksonville, FL 32202-3866

Michael M. Parker
Fullbright & Jaworrski LLP
300 Convent Street, Ste 2200
San Anionio, TX 78205-3792

Paul Allen and Raymond Bowman
c/o Jeffrey P. Bast, Esq.
BAST AMRON LLP
One Southeast Third Ave.
Suite 1440
Miami, FL 33131-1714

Kevin B Paysinger
Bankruptcy Law Firm of Lansing J. Roy
PO Box 10399
Jacksonville, FL 32247-0399

Richard A. Perry
Richard A Perry, Attorney at Law
820 S E Fort King Street
Ocala, FL 34471-2320

David E. Peterson
Lowndes Drosdick Doster Kantor & Reed PA
215 North Eola Drive
Orlando, FL 32801-2095

Edward J. Peterson III
Stichter, Riedel, Blain & Prosser, PA
110 East Madison Street, Suite 200
Tampa, FL 33602-4718

Dana S Plon
Sirlin Gallogly & Lesser PC
123 South Broad Street
Suite 2100
Philadelphia, PA 19109-1029

Adina L Pollan
Akerman Senterfitt
50 North Laura Street
Suite 2500
Jacksonville, FL 32202-3646

James H. Post
Smith Hulsey & Busey
225 Water St., Suite 1800
Jacksonville, FL 32202-4494

Steven G Powrozek
Shapiro & Fishman LLP
4630 Woodland Corporate Blvd.
Suite 100
Tampa, FL 33614-2429

Richard C. Prosser
Stichter, Riedel, Blain & Prosser PA
110 E. Madison Street, Suite 200
Tampa, FL 33602-4718

Nicholas V. Pulignano Jr.
Marks Gray, P.A.
1200 Riverplace Blvd Suite 800
Jacksonville, FL 32207-1834

Lincoln B Quintana
Quintana McConnin & Sarte LLP
450 B Street
Suite 1430
San Diego, CA 92101-8011

Ahila S Rasul
Kahane & Associates, P.A.
8201 Peters Road, Suite 3000
Plantation, FL 33324-3292

Patricia Redmond
Stearns Weaver Miller et al
150 West Flagler Street
Suite 2200
Miami, FL 33130-1536

Peter M Reed
McCreary Veselka Bragg & Allen PC
Post Office Box 1269
Round Rock, TX 78680-1269

William M Reed
William M Reed PA
Post Office Box 120280
Clermont, FL 34712-0280

Jeffrey N Rich
K & L Gates LLP
599 Lexington Avenue
New York, NY 10022-6030

Carolyn P Richter
Troutman Sanders LLP
600 Peachtree Street Northeast
Suite 5200
Atlanta, GA 30308-2216

Mark S Roher
Adorno & Yoss
350 East Las Olas Boulevard, Suite 1700
Ft. Lauderdale, FL 33301-4217

Scott K. Rutsky
Proskauer Rose LLP
1585 Broadway
New York, NY 10036-8299

Marsha G Rydberg
The Rydberg Law Firm, P.A.
201 North Franklin Street
Suite 1625
Tampa, FL 33602-5113

Loura K. Sanchez
5610 Ward Road, Ste 300
Arvada, CO 80002-1309

Diane W. Sanders
PO Box 17428
Austin, TX 78760-7428

Paula Schaefer
1109 Wildtree Lane
Knoxville, TN 37923-6730

John S Schoene
John S Schoene PA
100 East Sybelia Avenue
#205
Maitland, FL 32751-4757

Gregor Schwinghammer
Gunster Yoakley & Stewart PA
777 South Flagler Drive
Suite 500 East
West Palm Beach, FL 33401-6121

Valerie Shea
Sedgwick Detert Moran & Arnold
2400 E Commercial Boulevard
Fort Lauderdale, FL 33308-4030

Joseph E Shickich Jr
Ridell Williams PS
1001 4th Avenue
Suite 4500
Seattle, WA 98154-1065

R Scott Shuker
Latham Shuker Eden & Beaudine LLP
Post Office Box 3353
Orlando, FL 32802-3353

Lonnie L Simpson
DLA Piper LLP (US)
100 N Tampa St, Suite 2200
Tampa, FL 33602-5809

Paul S Singerman
Berger Singerman PA
200 South Biscayne Boulevard
Suite 1000
Miami, FL 33131-5319

Schuyler S Smith
Schuyler-Stewart-Smith, PA
118 W Adams St, Suite 800
Jacksonville, FL 32202-3866

Owen M. Sonik
Perdue, Brandon, Fielder, Collins
1235 North Loop West, Ste. 600
Houston, TX 77008-1772

Robert A. Soriano
Greenberg Traurig, P.A.
625 East Twiggs Street
Suite 100
Tampa, FL 33602-3925

Arthur J Spector
Berger Singerman PA
2650 North Military Trail
Suite 240
Boca Raton, FL 33431-6346

J. Ellsworth Summers Jr.
Rogers Towers, P.A.
1301 Riverplace Blvd. Suite 1500
Jacksonville, FL 32207-1811

Michael A Tessitore
The Tessitore Law Firm, PA
612 E Colonial Drive
Suite 150
Orlando, FL 32803-4650

Mark A Thompson
DeKalb County Law Department
1300 Commerce Drive
5th Floor
Decatur, GA 30030-3222

Jonathan Tolentino
Jonathan Tolentino, P.A.
501 Goodlette Road, Suite D-100
Naples, FL 34102-5666

Matthew Scott Toll
202 S. Del Prado Blvd.
Cape Coral, FL 33990-1726

USAmeriBank
c/o Patrick T. Lennon
P.O. Box 1531
Tampa, Fl 33601-1531

United States Trustee - JAX 11
135 W Central Blvd, Suite 620
Orlando, FL 32801-2440

K Patrick Vance
Jones Walker
201 Saint Charles Avenue
Suite 5100
New Orleans, LA 70170-5101

Nicolette Corso Vilmos
Broad and Cassel
390 North Orange Avenue
Suite 1400
Orlando, FL 32801-1640

Laura L Walker
Florida Foreclosure Attorneys, PLLC
601 Cleveland  Street, Suite 690
Clearwater, FL 33755-4171

Lawrence Weisberg
Law Offices of Lawrence M Weisberg PA
21301 Powerline Road, Suite 100
Boca Raton, FL 33433-2389

Alan M. Weiss
Holland & Knight LLP
50 N Laura St Ste 3900
Jacksonville, FL 32202-3622

Scott R Weiss
Law Office of Marshall C. Watson, P.A.
1800 NW 49th Street
Suite 120
Ft. Lauderdale, FL 33309-3092

John C Weitnauer
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424

Adam Wiens
633 Seventeenth Street, Suite 2700
Denver, CO 80202-3662

Robert D Wilcox
Wilcox Law Firm
Enterprise Park
4190 Belfort Road, Suite 315
Jacksonville, FL 32216-1460

Lance E. Williams
Riddle & Williams, P.C.
3710 Rawlins Street
Suite 1400 - Regency Plaza
Dallas, TX 75219-4217

Daniel C Wolters
Cavitch Familo & Durkin
1300 East 9th Street
20th Floor
Cleveland, OH 44114-1501

Donald A Workman
Baker & Hostetler
1050 Connecticut Avenue Northwest
Suite 1100
Washington, DC 20036-5304

Karon Y Wright
for David Escamilla, Travis Co Attorney
PO box 1748
Austin, TX 78767-1748

Joseph R Zapata Jr
Fox Rothschild LLP
997 Lenox Drive
3rd Floor
Lawrenceville, NJ 08648-2317

Andrew D Zaron
Hunton & Williams LLP
1111 Brickell Avenue
Miami, FL 33131-3155

William Knight Zewadski
Trenam, Kemker, Scharf, Barkin, et al
P.O. Box 1102
Tampa, FL 33601-1102

Deborah M. Zumwalt
Epsten Grinnell & Howell APC
9980 Carroll Canyon Road
2nd Floor
San Diego, Ca 92131-1136

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

Kevin E Mangum
Mangum & Associates PA
5100 Highway 17-92
Suite 200
Casselberry, FL 32707

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
End of Label Matrix
Mailable recipients   138
Bypassed recipients     1
Total                 139
```

# EXHIBIT "A"

## *National Union Fire Insurance Company of Pittsburgh, Pa.*
### CLAIM REPORTING INFORMATION SHEET

Reporting Under Policy/Bond Number: *01-203-95-48*

Type Of Coverage: *DOP0897*

Insured's Name, As Given On Policy Declaration(Face Page):

*TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

Contact Person:

Title:

Phone: _(_____)_____-_____Ext

Case or Claimant Name:

If The Party Involved Is Different From "Insured" Name (As Given On The Policy Declaration) State

Relationship:

Insurance Broker/Agent: *CRC INSURANCE SERVICES INC*

Address: *105 W ADAMS ST 18TH FL*
*CHICAGO, IL 60603-4109*

Contact: *RENEE ENGMAN*

Phone:

Please Provide The Information Requested Above So That We Can Expedite Our Service To You.

Send Notice Of Claims To:

c-Claim for Financial Lines       Phone: (888) 602-5246
AIG Domestic Claims, Inc.        Fax:    (866) 227-1750
175 Water Street                 Email:  c-Claim@AIG.com
9th Floor
New York, NY 10038

centralized Customer Link and Information Management

## **POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (7/06)

# AIG AIG EXECUTIVE LIABILITY[SM]

Insurance provided by the following member of American International Group, Inc.

## National Union Fire Insurance Company of Pittsburgh, Pa.®

A capital stock company

## DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE POLICY
### Including Employment Practices and Securities Liability

*PrivateEdge[sm]*

NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. HOWEVER THE INSUREDS MAY UNDER CERTAIN CONDITIONS TENDER THE DEFENSE OF A CLAIM. IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

POLICY NUMBER: *01-203-95-48*     REPLACEMENT OF POLICY NUMBER: *00-193-32-86*

## DECLARATIONS

ITEM 1.   NAMED ENTITY:   *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

          MAILING ADDRESS:   *315 NE 14TH ST.*
          *OCALA, FL 34470*

          STATE OF INCORPORATION OR STATE OF FORMATION OF THE NAMED ENTITY:
          *Florida*

ITEM 2.   SUBSIDIARY COVERAGE: any past, present or future Subsidiary of the Named Entity

ITEM 3.   POLICY PERIOD:   From: *September 1, 2008*   To: *September 1, 2009*
          (12:01 A.M. standard time at the address stated in Item 1.)

ITEM 4.   LIMIT OF LIABILITY:   *$5,000,000*
          aggregate for all Loss combined (including Defense Costs)

*1177777*

ITEM 5.     RETENTION:

Judgments, Settlements and
Defense Costs (non- Indemnifiable Loss)          None

Employment Practices Claims
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)

*N/A*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

Security Claims (other than private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)

*$500,000*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

All Other Claims (including private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)

*$500,000*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

ITEM 6.     CONTINUITY DATES:

A.    Coverages A and B(ii):          *September 1, 2007*

B.    Coverage B(i):                  *September 1, 2007*

C.    Outside Entity Coverage: Per Outside Entity,
           see endorsement # *6*

ITEM 7.     PREMIUM: *$183,725*      +      *$1,837 FL Surcharge*

*Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: Not applicable, coverage rejected by insured. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*

*A copy of the TRIA disclosure sent with the original quote is attached hereto.*

*1177777*

ADDITIONAL PREMIUM FOR PUNITIVE, EXEMPLARY AND
MULTIPLIED DAMAGES: *$1,825*                    (included in above ☒)
(No punitive damages coverage provided: ☐ )


ITEM 8.     NAME AND ADDRESS OF INSURER (hereinafter "Insurer"):

            (This policy is issued only by the insurance company indicated below.)

            *National Union Fire Insurance Company of Pittsburgh, Pa.*

            *175 Water Street*

            *New York, NY 10038*

*1177777*

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (APPLICABLE TO CERTIFIED AND NON- CERTIFIED ACTS)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury- in concurrence with the Secretary of State, and the Attorney General of the United States- to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

Policy Number: *01-203-95-48*
Policy Period Effective Date From: *September 1, 2008*   To: *September 1, 2009*

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.


_Elizabeth M. Tuck_
_____
SECRETARY

_[signature]_
_____
PRESIDENT

_[signature]_
_____
AUTHORIZED REPRESENTATIVE


_____
COUNTERSIGNATURE & DATE

_____
COUNTERSIGNED AT


CRC INSURANCE SERVICES INC
105 W ADAMS ST 18TH FL
CHICAGO, IL 60603-4109


_1177777_

68461 (8/97)

## FLORIDA ADDENDUM TO THE DECLARATIONS

**If you have questions about your insurance policy, or questions about claims relating to your insurance policy, please contact your insurer at the following:**

**American International Companies®**
**70 Pine Street**
**New York, NY 10270**
**(212) 770- 7000**

74825 (02/01)



# AIG EXECUTIVE LIABILITY <sup>SM</sup>

Insurance provided by the following member of American International Group, Inc.

## DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE POLICY

### Including Employment Practices and Securities Liability

## *PrivateEdge*®

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the insurance company designated in Item 8 of the Declarations, herein called the Insurer, agrees as follows:

## 1. INSURING AGREEMENTS

### COVERAGE A: INDIVIDUAL INSURED INSURANCE

This policy shall pay the Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers or Employees of the Company except when and to the extent that the Company has indemnified such Insureds. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

### COVERAGE B: PRIVATE COMPANY INSURANCE

This policy shall pay the Loss of the Company arising from a:

    (i)    Claim first made against the Company, or

    (ii)    Claim first made against an Individual Insured,

during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only when and to the extent that the Company has indemnified the Individual Insured for such Loss pursuant to law, common or statutory, or contract, or the Charter or By-laws of the Company duly effective under such law which determines and defines such rights of indemnity. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

### DEFENSE PROVISIONS

The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender to the Insurer the defense of a Claim for which coverage is provided by this policy to the Insurer in accordance with Clause 8 of the policy. Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the applicable retention amount) of such Claim prior to its final disposition. Selection of counsel to defend a "Designated Claim" shall be made in accordance with Clause 9 of the policy.

## 2. DEFINITIONS

    (a)    "Affiliate" means: (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

(b)   "Claim" means:

    (1)   a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations); or

    (2)   a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

        (i)   service of a complaint or similar pleading; or

        (ii)   return of an indictment (in the case of a criminal proceeding); or

        (iii)   receipt or filing of a notice of charges.

    (3)   an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") (or similar state, local or foreign agency) which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured. However, in no event shall the term "Claim" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

The term "Claim" shall include an Employment Practices Claim and a Securities Claim.

(c)   "Company" means the Named Entity and any Subsidiary thereof.

(d)   "Continuity Date" means the date set forth in:

    (1)   Item 6A of the Declarations with respect to Coverages A and B(ii); or

    (2)   Item 6B of the Declarations with respect to Coverage B(i); or

    (3)   Item 6C of the Declarations with respect to a Claim made against an Individual Insured(s) arising out of such Insured's service as a director, officer, trustee or governor of an Outside Entity.

(e)   "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of officers or Employees of the Company.

(f)   "Employee(s)" means any past, present or future employee, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee in his or her capacity as such. An individual who is leased to the Company shall also be an Employee, but only if the Company provides indemnification to such leased individual in the same manner as is provided to the Company's employees. Any other individual who is contracted to perform work for the Company, or who is an independent contractor for the Company shall also be an Employee, but only if the Company provides indemnification to such individual in the same manner as that provided to the Company's employees, and such individual is scheduled by written endorsement attached hereto and the Company pays any additional premium required by the Insurer relating to such individual.

(g)   "Employment Practices Claim" means a Claim alleging an Employment Practices Violation.

(h)    "Employment Practices Violation(s)" means any actual or alleged:

    (1)    wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

    (2)    harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);

    (3)    discrimination, (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

    (4)    Retaliation (including lockouts);

    (5)    employment-related misrepresentation(s) to an Employee or applicant for employment with the Company;

    (6)    employment-related libel, slander, humiliation, defamation, invasion of privacy;

    (7)    wrongful failure to employ or promote;

    (8)    wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

    (9)    wrongful discipline;

    (10)    failure to grant tenure;

    (11)    failure to provide or enforce adequate or consistent corporate policies and procedure relating to any Employment Practices Violation; or

    (12)    violation of an individual's civil rights relating to any of the above,

but only if the Employment Practices Violation relates to an Employee(s), or applicant for employment with the Company or an Outside Entity, whether direct, indirect, intentional or unintentional.

With respect to any customer or client of the Company, whether individually or as a class or group, Employment Practices Violation shall mean only any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

(i)    "Individual Insured(s)" means:

    (1)    any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company, but only in their capacities as such. Coverage will automatically apply to all new directors, officers, management committee members or members of the Board of Managers of the Company after the inception date of this policy;

    (2)    any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company serving in the capacity as director, officer, trustee or governor of an Outside Entity, but only if such service is at the specific written request or direction of the Company;

    (3)    in the event the Company operates outside the United States, then the terms director, officer, management committee member or member of the Board of Managers shall also mean those titles, positions or capacities in such foreign Company which are equivalent to such positions in an organization incorporated or formed within the United States; and

    (4)    any Employee(s) of the Company.

(j)     "Insured(s)" means:

    (1)     an Individual Insured; and

    (2)     the Company.

(k)     "Loss" means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest, and Defense Costs; however, Loss shall not include: (1) civil or criminal fines or penalties imposed by law; (2) taxes; (3) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds; (4) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (5) any liability or costs incurred by any Insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an Employment Practices Claim; or (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

If an additional premium is stated in Item 7 of the Declarations page, then Loss shall specifically include, (subject to the policy's other terms, conditions and exclusions, including but not limited to exclusions relating to personal profit or advantage, deliberate fraud, criminal acts or willful violation of any statute, rule or regulation) punitive, exemplary and multiple damages (including the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act). It is further understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages. If an additional premium is not stated in Item 7 of the Declarations then Loss shall not include punitive, exemplary damages or the multiplied portion of multiple damages.

(l)     "Named Entity" means the organization stated in Item 1 of the Declarations whether a corporation, association, limited liability company or other type of business organization.

(m)     "No Liability" means: (1) a final judgment of no liability obtained prior to trial, in favor of all Insureds, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) a final judgment of no liability obtained after trial, in favor of all Insureds, after the exhaustion of all appeals. In no event shall the term "No Liability" apply to a Claim made against an Insured for which a settlement has occurred.

(n)     "Outside Entity" means:

    (1)     a not-for-profit organization under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended); or

    (2)     any other corporation, partnership, joint venture or other organization listed by endorsement to this policy.

(o)     "Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(p)     "Related Wrongful Acts" shall mean Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from a common nucleus of facts. Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action.

(q)     "Retaliation" means a Wrongful Act of an Insured relating to or alleged to be in response to any of the following activities: (1) the disclosure or threat of disclosure by an Employee to a superior or to any governmental agency of any act by an Insured which act is alleged to be a violation of any federal, state, local or foreign

law, common or statutory, or any rule or regulation promulgated thereunder; (2) the actual or attempted exercise by an Employee of any right that such Employee has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (4) Employee strikes.

(r) "Securities Claim" means a Claim (including a civil lawsuit or criminal proceeding brought by the Securities & Exchange Commission) made against an Insured anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

    (1) brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the Company, or

    (2) brought by a securities holder of the Company, whether directly, by class action, or derivatively on the behalf of the Company, or otherwise, alleging any Wrongful Act of an Insured.

(s) "Subsidiary" means:

    (1) any for-profit organization which, on or before the inception of the Policy Period, is more than 50% owned by the Named Entity, either directly, or indirectly through one or more of its Subsidiaries;

    (2) automatically any for-profit organization whose securities are not publicly traded and whose assets total less than 25% of the total consolidated assets of the Company as of the inception date of this policy which becomes a Subsidiary during the Policy Period. The Named Entity shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period; or

    (3) an organization which becomes a Subsidiary during the Policy Period (other than a for-profit organization described in paragraph (2) above), but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Entity shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to such new Subsidiary.

An organization becomes a Subsidiary when the Named Entity owns more than a 50% ownership interest in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries. An organization ceases to be a Subsidiary when the Named Entity ceases to own more than a 50% ownership in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded under this policy with respect to a Claim made against Individual Insureds or a Claim made against any Subsidiary, shall only apply to Claims for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

(t)  "Wrongful Act" means:

   (1)  with respect to Individual Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors, officers or Employees of the Company;

   (2)  with respect to the Company, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Company; and

   (3)  with respect to service on an Outside Entity, any matter claimed against an Individual Insured as defined in definition (i)(2) arising out of his or her serving as a director, officer, trustee or governor of an Outside Entity in such capacity, but only if such service is at the specific written request or direction of the Company.

With respect to an Employment Practices Claim, the term "Wrongful Act" shall include any Employment Practices Violation.

## 3. EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover Loss arising from any Claims made against the estates, heirs, or legal representatives of deceased Individual Insureds, and the legal representatives of Individual Insureds in the event of incompetency, insolvency or bankruptcy, who were Individual Insureds at the time the Wrongful Act upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from all Claims made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an Individual Insured for all Claims arising solely out of his or her status as the spouse of an Individual Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the Individual Insured and the spouse, or property transferred from the Individual Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of an Individual Insured, subject to the policy's terms, conditions and exclusions.

## 4. EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

(a)  arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

(b)  arising out of, based upon or attributable to: (1) profits in fact made from the purchase or sale by an Insured of securities of the Company within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law; or (2) payments to an Insured of any remuneration without the previous approval of the stockholders of the Company, which payment without such previous approval shall be held to have been illegal;

(c)  arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law;

[The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c).]

(d)    alleging, arising out of, based upon or attributable to the facts alleged, or to the same or Related Wrongful Act alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e)    alleging, arising out of, based upon or attributable to as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an Insured had notice,  or alleging any Wrongful Act which is the same or Related Wrongful Act to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f)    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Insured serving in any capacity, other than a director, officer, management committee member, member of the Board of Managers or Employee of the Company, or as a director, officer, trustee or governor of an Outside Entity;

(g)    for any Wrongful Act arising out of an Individual Insured serving in a capacity as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or a director, officer, trustee or governor thereof;

(h)    alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement; provided, however, that with respect to Employment Practice Claims, this exclusion shall not apply to the extent any liability does not arise under such express employment contract or agreement;

(i)    which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured; provided, however, this exclusion shall not apply to:

    (1)    any Claim brought by an Individual Insured where such Claim is in the form of a cross- claim or third- party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of this policy; or

    (2)    an Employment Practices Claim brought by an Employee of the Company other than an Employee who is or was a director, member of the Board of Managers  or management committee member of the Named Entity;

(j)    alleging, arising out of, based upon or attributable to any public offering of securities by the Company, an Outside Entity or an Affiliate or alleging a purchase or sale of such securities subsequent to such public offering;

provided, however, that this exclusion will not apply to:

    (1)    any purchase or sale of securities exempted pursuant to section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; however, the Named Entity shall give the Insurer written notice of any public offering exempted pursuant to section 3(b), together with full particulars and as soon as practicable, but not later than 30 days after the effective date of the public offering;

    (2)    to any public offering of securities (other than a public offering described in paragraph (1) above), as well as any purchase or sale of such securities subsequent to such public offering, in the event that within 30 days prior to the effective time of  such public offering: (i) the Named Entity shall give the

Insurer written notice of such public offering together with full particulars and underwriting information required thereto and (ii) the Named Entity accepts such terms, conditions and additional premium required by the Insurer for such coverage. Such coverage is also subject to the Named Entity paying when due any such additional premium. In the event the Company gives written notice with full particulars and underwriting information pursuant to (i) above, then the Insurer must offer a quote for coverage under this paragraph;

(k) alleging, arising out of, based upon or attributable to the purchase by the Company of securities of a "publicly traded entity" in a transaction which resulted, or would result, in such entity becoming an Affiliate or Subsidiary of the Company; provided, however, this exclusion shall not apply in the event that within 30 days prior to it becoming an Affiliate or Subsidiary, the Named Entity gives written notice of the transaction to the Insurer together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this policy required by the Insurer relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to the transaction. An entity is a "publicly traded entity" if any securities of such entity have previously been subject to a public offering;

(l) alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this exclusion shall not apply to Securities Claims;

(m) for emotional distress, or for injury from libel or slander, or defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to any Securities Claim or Employment Practices Claim;

(n) for any actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or for any direction or request to test, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants; provided, however, this exclusion shall not apply to any Claim brought by a securities holder of the Company in its capacity as such or to any Employment Practices Claim;

(o) for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, local or foreign statutory law or common law; provided, however, that this exclusion shall not apply to Loss arising from a Claim for Retaliation;

(p) alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, however, this exclusion shall not apply to Loss arising from a Claim for Retaliation; or

(q) with respect to Coverage B(i) only:

   (1) for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

   (2) for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

68462 (8/97)                                   8

(3)    for the rendering or failure to render any service to a customer or client of the Insured; provided, however, that this exclusion shall not apply to any:

    (i)    Claim solely alleging Employment Practices Violations;

    (ii)    Securities Claim; or

    (iii)    Claim for the rendering or failure to render any professional service to the extent such professional services errors and omissions coverage has been added to this policy by written endorsement attached hereto; or

(4)    seeking fines or penalties or non-monetary relief against the Company; provided, however, that this exclusion shall not apply to any Securities Claim or Employment Practices Claim.

## 5. LIMIT OF LIABILITY and REINSTATED LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)

**Defense Costs are not payable by the Insurer in addition to the limit of liability. Defense Costs are part of Loss and as such are subject to the applicable Limit of Liability for Loss.**

### A.   General Terms

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss, under Coverage A and Coverage B combined, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable); however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period, or the Reinstated Limit as described below (if elected). Further, a Claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one applicable aggregate Limit of Liability stated in Item 4 of the Declarations, or subject to the one aggregate Reinstated Limit if such Reinstated Limit is applicable to such Claim.

### B.   Reinstated Limit of Liability

In the event of a Claim under this policy, the Named Entity shall have the right to purchase a Reinstated Limit equal to the Limit of Liability stated in Item 4 of the Declarations. The Reinstated Limit shall be subject to the following conditions:

1.    The right to elect the Reinstated Limit commences on the date a Claim is reported to the Insurer and expires on the last day of the Policy Period; provided, that in all events, only one reinstatement is permitted under this policy. The effective date of the reinstatement shall be the date on which the Insurer acknowledges receipt of the written notice of the Insured's election to exercise the reinstatement.

2.    If the Policy Period of this policy is more than one year, then the additional premium to elect the Reinstated Limit at any time after one year from the inception date of this policy shall be fixed at 150% of the premium set forth in Item 7 of the Declarations. Regardless of the length of the Policy Period of this policy, the additional premium to elect the Reinstated Limit within one year from the inception date of this policy shall be an amount determined by the Insurer at the time of the election of the Reinstated Limit unless otherwise indicated by written endorsement to this policy.

3.    The Reinstated Limit shall only apply to Claims made against an Insured after the effective date of the reinstatement and prior to the end of the Policy

Period or the Discovery Period, if applicable, ("Reinstatement Claims"); provided, however, that the Reinstated Limit shall not apply to Claims which allege a Related Wrongful Act to Claim(s) reported to the Insurer prior to the effective date of the reinstatement.

4.   The Reinstated Limit shall be the maximum liability of the Insurer for all Reinstatement Claims. The Limit of Liability described in Clause 5A as applicable to Claims made against the Insureds prior to the effective date of the reinstatement shall not apply to any Reinstatement Claim.

5.   Upon exercise of the Reinstated Limit, the entire premium set forth in Item 7 of the Declarations shall be deemed fully earned; the Insureds shall not be entitled to any return premium as a result of the exercise of the Reinstated Limit nor shall any of the premium paid for the policy be credited toward the additional premium required to exercise the Reinstated Limit.

6.   In no event shall the right to a reinstatement apply if prior to the effective date of the reinstatement, this policy has been cancelled, is otherwise not in effect, or the Discovery Period has been elected.

7.   Other than as stated above, coverage for Reinstatement Claims shall be subject to the same terms, conditions and exclusions of the policy applicable to other Claims under this policy. The Insurer cannot otherwise modify any terms, conditions or exclusions of this policy as a condition of providing the reinstatement.

## 6. RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5 of the Declarations, such Retention amount to be borne by the Company or the Insureds and shall remain uninsured, with regard to all Loss under: (1) Coverage A or B(ii) for which the Company has indemnified or is permitted or required to indemnify the Individual Insured(s) ("Indemnifiable Loss"), or (2) Coverage B(i). A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or Related Wrongful Act.

Subject to the above paragraph, the Retention amounts stated in Item 5 of the Declarations shall apply. In the event a Claim triggers more than one amount stated in Item 5 of the Declarations, only the highest such amount shall apply, which amount shall apply to all Loss under such Claim.

The Retention amount shall be reduced in the event that an Insured consents to the first "Settlement Opportunity", as defined in Clause 8, by the percentage described in Clause 8, subject to the conditions described in Clause 8.

No Retention shall apply to a Claim which is in the form of a civil action for monetary relief and the Insurer shall thereupon reimburse the Defense Costs paid by the Insured, in the event of:

(1)   a determination of No Liability of all Insureds; or

(2)   a dismissal or a stipulation to dismiss the civil litigation Claim without prejudice and without the payment of any consideration by any Insured;

provided, however, that in the case of (2) above, such reimbursement shall occur ninety (90) days after the date of dismissal or stipulation as long as the Claim is not re-brought (or any other Claim which is subject to the same single retention by virtue of Clause 6 is not brought) within that time, and further subject to an undertaking by the Company in a form acceptable to the Insurer that such reimbursement shall be paid back by the Company to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of Clause 6) is brought after such 90 day period and before the expiration of the statute of limitations for such Claim.

## 7. NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations.

If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Company on the behalf of any Insured or by the Insurer, whichever comes first.

(a)    The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:

    (1)    anytime during the Policy Period or during the Discovery Period (if applicable); or

    (2)    within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b)    If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging a Related Wrongful Act to the Claim for which such notice has been given shall be considered made at the time such notice was given.

(c)    If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Related Wrongful Act to such circumstances, shall be considered made at the time such notice of such circumstances was given.

## 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.

Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Entity on behalf of all Insureds to the Insurer pursuant to the notice provisions of Clause 7 of this policy. This right shall terminate if not exercised within 30 days of the date the Claim is first made against an Insured, pursuant to Clause 7 of the policy. Further, from the date the Claim is first made against the Insureds to the date when the Insurer accepts the tender of the defense of such Claim, the Insureds shall take no action, or fail to take any required action, that prejudices the rights of the Insureds or the Insurer with respect to such Claim. Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent. The assumption of the defense of the Claim shall be effective upon written confirmation sent thereof by the Insurer to the Named Entity. Once the defense has been so tendered, the Insured shall have the right to effectively associate with the Insurer in the defense and the negotiation of any settlement of any Claim, subject to the provisions of this Clause 8. However, the Insurer shall not be obligated to defend such Claim after the

Limit of Liability has been exhausted, or after an Insured's rejection of a Settlement Opportunity as defined in this Clause 8.

When the Insurer has not assumed the defense of a Claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

**The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 8, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy.**

The Insurer shall have the right to effectively associate with the Company in the defense of any Claim that appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Company and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

If the Insurer recommends a settlement within the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity"), and the Insureds consent to such settlement, then the Insured's applicable retention amount shall be retroactively reduced by ten percent (10%) for such Loss. It shall be a condition to such reduction that the Insureds must consent to such settlement within thirty (30) days of the date the Insureds are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made.

However, if a Settlement Opportunity arises and the Insureds do not consent to the settlement within the time prescribed above, the retention amount shall remain the applicable amount set forth in Item 5 of the Declarations even if consent is given to a subsequent Settlement Opportunity.

Furthermore, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed, then, subject to the applicable limit of liability, the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Opportunity Amount") plus (2) 50% of covered Loss in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 50% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Company and the Insureds at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the Retention amount stated in Item 5 of the Declarations.

9. **PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED CLAIMS**

This clause applies only to an Employment Practices Claim or a Securities Claim (each of the foregoing hereinafter referred to as a "Designated Claim").

Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms ("Panel Counsel Firms") from which a selection of legal counsel shall be made to conduct the defense of any Designated Claim against an Insured pursuant to the terms set forth below.

In the event the Insurer has assumed the defense pursuant to Clause 8 of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. In the event the Insureds are already defending a Designated Claim, then the Insureds shall select a Panel Counsel Firm to defend the Insureds.

The selection of the Panel Counsel Firm, whether done by the Insurer or the Insureds, shall be from the list of Panel Counsel Firms designated for the type of Claim and be from the jurisdiction in which the Designated Claim is brought. In the event a Designated Claim is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the Designated Claim is maintained or where the corporate headquarters or state of formation of the Named Entity is located. In such instance, however, the Insurer shall, at the written request of the Named Entity, assign a non-Panel Counsel Firm of the Insurer's choice in the jurisdiction in which the Designated Claim is brought to function as "local counsel" on the Designated Claim to assist the Panel Counsel Firm which will function as "lead counsel" in conducting the defense of the Designated Claim.

With the express prior written consent of the Insurer, an Insured may select (in the case of the Insured defending the Claim), or cause the Insurer to select (in the case of the Insurer defending the Claim), a Panel Counsel Firm different from that selected by other Insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Entity.

## 10. DISCOVERY CLAUSE

Except as indicated below, if the Named Entity shall cancel or the Named Entity or the Insurer shall refuse to renew this policy, the Named Entity shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during said Discovery Period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 30 days of the effective date of cancellation or nonrenewal. The Additional Premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable.  This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

The Additional Premium Amount for: (1) one year shall be 75% of the "full annual premium"; (2) two years shall be 150% of the "full annual premium"; (3) three years shall be a reasonable premium amount to be mutually agreed upon by the Insured and the Insurer. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

In the event of a Transaction, as defined in Clause 12, the Named Entity shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such

longer or shorter period as the Named Entity may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the Named Entity at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent.

This policy may be canceled by or on the behalf of the Insurer only in the event of nonpayment of premium by the Named Entity. In the event of non-payment of premium by the Named Entity, the Insurer may cancel this policy by delivering to the Named Entity or by mailing to the Named Entity, by registered, certified, or other first class mail, at the Named Entity's address as shown in Item 1 of the Declarations, written notice stating when, not less than 30 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender. The Insurer shall have the right to the premium amount for the portion of the Policy Period during which the policy was in effect.

If this policy shall be canceled by the Named Entity, the Insurer shall retain the customary short rate proportion of the premium herein.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 12. CHANGE IN CONTROL OF NAMED ENTITY

If during the Policy Period:

    a.   the Named Entity shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    b.   any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of directors of the Named Entity, or acquires the voting rights of such an amount of such securities;

        (either of the above events herein referred to as the "Transaction"),

then this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Named Entity shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Named Entity shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

## 13. SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Company's and the Insureds' rights of recovery thereof, and the Company and the Insureds shall execute all papers required and shall do every-thing that may be necessary to secure such rights, including the execution of such documents necessary to enable the Insurer to effectively bring suit in the name of the

Company or the Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless such Insured has been convicted of a criminal act, or been determined to have committed a dishonest, fraudulent act or willful violation of any statute, rule or law, or obtained any profit or advantage to which such Insured was not legally entitled.

## 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance. This policy specifically shall be excess of any other policy pursuant to which any other insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss.

In the event of a Claim against an Insured arising out of his or her service as a director, officer, trustee or governor of an Outside Entity or an Employment Practices Claim against a leased Employee as described in definition (f) of Clause 2, coverage as is afforded by this policy shall be specifically excess of indemnification provided by such Outside Entity or such leasing company and any insurance provided to such Outside Entity or such leasing company.

Further, in the event other insurance is provided to the Outside Entity or leasing company referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the Insurer or any member company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a Claim) then the Insurer's maximum aggregate Limit of Liability for all Losses combined in connection with a Claim covered, in part or in whole, by this policy and such other insurance policy issued by AIG shall not exceed the greater of the Limit of Liability of this policy or the limit of liability of such other AIG insurance policy.

## 15. NOTICE AND AUTHORITY

It is agreed that the Named Entity shall act on behalf of the Subsidiaries and all Insureds with respect to the giving of notice of a Claim, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a Claim to the Insurer and the exercising or declining of any right to a Discovery Period or Reinstated Limit.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

## 17. DISPUTE RESOLUTION PROCESS

The Insured shall have the option, in its sole discretion, to submit all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, to the alternative dispute resolution process ("ADR") set forth in this clause.

The Insureds may elect the type of ADR discussed below. The Insurer agrees to submit to the ADR process chosen by the Insured. Once elected, the ADR cannot be terminated prior to a determination without the consent of the Insured and the Insurer.

There shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Entity is incorporated or formed in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations page as the mailing address for the Named Entity. The Named Entity shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Company to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Company or their legal representatives. Bankruptcy or insolvency of the Company or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 19. REPRESENTATIONS AND SEVERABILITY

In granting coverage under this Policy, it is agreed that the Insurer has relied upon the statements and representations contained in the application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete. All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this policy and are to be considered as incorporated into this policy.

With respect to such statements and representations, no knowledge or information possessed by any Individual Insured, except for those person or persons who executed the application, shall be imputed to any other Individual Insured. If any person who executed the application knew that such statement or representation was inaccurate or incomplete,

then this policy will be void as to all Insureds other than Individual Insureds who are "non-employee Directors" of the Company and who did not personally know the statement or representation to be inaccurate or incomplete. (The term "non-employee Director" shall have the meaning described in Securities & Exchange Commission rules or regulations promulgated pursuant to Section 16 of the Securities Exchange Act of 1934).

## 20. WORLDWIDE TERRITORY

This policy shall apply to Claims made against an Insured anywhere in the world.

## 21. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is now accessible through our online Panel Counsel Directory at http://www.briefbase.com/default.aspx at the "Panel Counsel" tab. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Panel Counsel" tab and then click on the "Directors & Officers (Securities Claims)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)

**APPENDIX A**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is now accessible through our online Panel Counsel Directory at http://www.briefbase.com/default.aspx at the "Panel Counsel" tab. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Panel Counsel" tab and then click on "Employment Practices Liability" link and select the applicable Panel Counsel Directory, either the "4-97 Monoline/Public Companies" link or the "Private Edge" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)

## ENDORSEMENT# *1*

This endorsement, effective *12:01 a.m.  September 1, 2008*      forms a part of
policy number   *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance
company which issued this policy, and 2) "you", "your", "named Insured", "First Named
Insured", and "Insured" mean the Named Corporation, Named Organization, Named
Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other
Insured(s)" means all other persons or entities afforded coverage under the policy.

It is hereby agreed and understood that the cancellation provision of this policy is to be
deleted in its entirety and to be replaced with the following:

A.   The Insured shown in the Declarations may cancel this policy by mailing or
delivering to the Insurer advance written notice of cancellation.

B.1.  Cancellation for Policies in Effect Ninety (90) Days or Less

If this policy has been in effect ninety (90) days or less the Insurer may cancel this
policy by mailing or delivering to the Insured written notice of cancellation,
accompanied by the reasons for cancellation, at least:

a)   Ten (10) days before the effective date of cancellation if the Insurer cancels
for nonpayment of premium; or

b)   Twenty (20) days before the effective date of cancellation if the Insurer
cancels for any other reason, except the Insurer may cancel immediately if
there has been:

1.   A material misstatement or misrepresentation; or
2.   A failure to comply with underwriting requirements established by the
Insurer.

B.2.  Cancellation for Policies in Effect for More Than Ninety (90) Days

If this policy has been in effect for more than ninety (90) days the Insurer may
cancel this policy only for one or more of the following reasons:

a)   Nonpayment of premium;

b)   The policy was obtained by a material misstatement;

c)   There has been a failure to comply with underwriting requirements established
by us within ninety (90) days of the date of effectuation of coverage;

d)   There has been a substantial change in the risk covered by the policy; or

e)   The cancellation is for all insureds under such policies for a given class of
insureds.

### END 001

## ENDORSEMENT# *1*    (continued)

If the Insurer cancels this policy for any of these reasons, the Insurer will mail or deliver to the First Named Insured written notice of cancellation, accompanied by the reasons for the cancellation at least:

1.  Ten (10) days before the effective date of cancellation if cancellation is for the reason stated in B2(a) above; or

2.  Forty- five (45) days before the effective date of cancellation if cancellation is for the reasons stated in B 2(b), (c), (d) or (e) above.

The following is added:

C.1.  Non- Renewal

a)  If the Insurer decides not to renew this policy the Insurer will mail or deliver to the Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least forty- five (45) days prior to the expiration of this policy.

b)  Any notice of nonrenewal will be mailed or delivered to the Insured's last mailing address known to the Insurer. If notice is mailed, proof of mailing will be sufficient proof of notice.

C.2.  Renewal

a)  The Insurer shall give the named insured at least forty- five (45) days advance written notice of the renewal premium.

**ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS SHALL REMAIN THE SAME.**

_____
AUTHORIZED REPRESENTATIVE

*END 001*

**ENDORSEMENT# *2***

This endorsement, effective *12:01 a.m.    September 1, 2008*        forms a part of
policy number   *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**
**(BROAD FORM)**

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable to make any payment for Loss in connection with any Claim(s)
made against any Insured(s):

A.    alleging, arising out of, based upon, attributable to, or in any way involving, directly
      or indirectly the hazardous properties of nuclear material, including but not limited
      to:

      (1)    nuclear material located at any nuclear facility owned by, or operated by or on
             behalf of, the Company, or discharged or dispersed therefrom; or

      (2)    nuclear material contained in spent fuel or waste which was or is at any time
             possessed, handled, used, processed, stored, transported or disposed of by or
             on behalf of the Company; or

      (3)    the furnishing by an Insured or the Company of services, materials, parts or
             equipment in connection with the planning, construction, maintenance,
             operation or use of any nuclear facility; or

      (4)    claims for damages to the company or its shareholders which alleges, arises
             from, is based upon, is attributed to or in any way involves, directly or
             indirectly, the hazardous properties of nuclear material.

B.

      (1)    which is insured under a nuclear energy liability policy issued by Nuclear
             Energy Liability Insurance Association, Mutual Atomic Energy Liability
             underwriters, or Nuclear Insurance Association of Canada, or would be insured
             under any such policy but for its termination or exhaustion of its Limit of
             Liability; or,

      (2)    with respect to which (a) any person or organization is required to maintain
             financial protection pursuant to the Atomic Energy Act of 1954, or any law
             amendatory thereof, or (b) the Insured is, or had this policy not been issued
             would be entitled to indemnity from the United States of America, or any
             agency thereof, under any agreement entered into the United States of
             America, or any agency thereof, with any person or organization.

As used in this endorsement:

      "hazardous properties" include radioactive, toxic or explosive properties;

      "nuclear material" means source material, special nuclear material or byproduct
      material;

      "source material", "special nuclear material", and "byproduct material" have the
      meanings given them in the Atomic Energy Act of 1954 or in law amendatory
      thereof;

*END 002*

**ENDORSEMENT#** *2*    (continued)

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

(a)    any nuclear reactor,

(b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# *3*

This endorsement, effective *12:01 a.m.  September 1, 2008*   forms a part of
policy number   *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CAPTIVE INSURANCE COMPANY
## (WITH SPECIFIC CAPTIVE CARVE-OUT)

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payments for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon, or attributable to the ownership, management, maintenance and/or control by the Company of any captive insurance company or entity including but not limited to Claim(s) alleging the insolvency or bankruptcy of the Company as a result of such ownership, operation, management and control.

Notwithstanding the above, this exclusion shall not apply to the captive insurance company listed below (hereinafter "Captive(s)"):

CAPTIVE INSURANCE COMPANY

*Second Street Insurance Corp.*

It is further understood and agreed that in regard to the Captive(s) listed above the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against the Insureds alleging, arising out of, based upon, or attributable to any third party business performed by or contracted into by the Captive(s) listed above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

## *END 003*

## ENDORSEMENT# 4

This endorsement, effective *12:01 a.m.    September 1, 2008*    forms a part of
policy number  *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### COMMISSIONS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable to make any payment for Loss in connection with any Claim(s)
made against any Insured(s) alleging, arising out of, based upon, or attributable to:

(i)    Payments, commissions, gratuities, benefits or any other favors to or for the
benefit of any full or part-time domestic or foreign government or armed
services officials, agents, representatives, employees or any members of their
family or any entity with which they are affiliated; or

(ii)    Payments, commissions, gratuities, benefits or any other favors to or for the
benefit of any full or part-time officials, directors, agents, partners,
representatives, principal shareholders, or owners or employees, or "affiliates"
(as that term is defined in The Securities Exchange Act of 1934, including any
officers, directors, agents, owners, partners, representatives, principal
shareholders or employees of such affiliates) of any customers of the
company or any members of their family or any entity with which they are
affiliated; or

(iii)    Political contributions, whether domestic or foreign.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

### *END 004*

82543 (6/03)                    Page 1 of 1

## ENDORSEMENT# 5

This endorsement, effective *12:01 a.m.   September 1, 2008*      forms a part of
policy number   *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COVERAGE TERRITORY ENDORSEMENT

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

_____

AUTHORIZED REPRESENTATIVE

*END 005*

89644 (7/05)                         Page 1 of 1

## ENDORSEMENT# *6*

This endorsement, effective *12:01 a.m.    September 1, 2008*    forms a part of
policy number   *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OUTSIDE ENTITY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the
following entities shall be deemed an "Outside Entity" with respect to its corresponding
Continuity Date below:

| OUTSIDE ENTITY | CONTINUITY DATE |
|---|---|
| 1)    a not-for-profit organization<br>under Section 501(c)(3)<br>of the Internal Revenue Code<br>of 1986 (as amended). | *September 1, 2007* |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

## *END 006*

ENDORSEMENT# *7*

This endorsement, effective *12:01 a.m.    September 1, 2008*    forms a part of
policy number   *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAUSE 5. AMENDED
### REINSTATEMENT OF LIMITS OPTION DELETED

In consideration of the premium charged, it is hereby understood and agreed that Clause 5. LIMIT OF LIABILITY and REINSTATED LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS) is deleted in its entirety and replaced with the following:

5.    **LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)**

**Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the applicable Limit of Liability for Loss.**

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss, under Coverage A and Coverage B combined, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable); however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period. Further, a Claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one applicable aggregate Limit of Liability stated in Item 4 of the Declarations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 007*

### ENDORSEMENT# *8*

This endorsement, effective *12:01 a.m.    September 1, 2008*    forms a part of
policy number  *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "NO LIABILITY" AND 10% RETENTION REDUCTION
### PROVISIONS DELETED

In consideration of the premium charged, it is hereby understood and agreed that the
policy is hereby amended as follows:

(1)    The Definition of "No Liability" is hereby deleted in its entirety.

(2)    The last two paragraphs of Clause 6. RETENTION CLAUSE is hereby deleted in its
entirety.

(3)    The final three paragraphs of Clause 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS
(INCLUDING THE ADVANCEMENT OF DEFENSE COSTS) are deleted in their entirety
and replaced with the following:

> In the event the Insureds do not consent to the first Settlement Opportunity,
> then, the Insurer's liability for all Loss on account of such Claim shall not
> exceed: (1) the amount for which the Insurer could have settled such Claim
> plus Defense Costs incurred as of the date such settlement was proposed in
> writing by the Insurer, ("Settlement Opportunity Amount") plus (2) 50% of
> covered Loss in excess of such Settlement Opportunity Amount subject to the
> policy's Limit of Liability. Notwithstanding the foregoing, this paragraph shall
> not apply until the Settlement Opportunity Amount exceeds the Retention
> amount stated in Item 5 of the Declarations.

> For purposes of this Clause 8, "Settlement Opportunity" means an Insurer
> recommended settlement that is within the policy's applicable Limit of Liability
> and that is acceptable to the claimant, provided that the Insureds consent to
> such settlement within thirty (30) days of the date the Insureds are first made
> aware of the Settlement Opportunity, or in the case of a Settlement
> Opportunity which arises from a settlement offer by the claimant, then within
> the time permitted by the claimant to accept such settlement offer, but in all
> events no later than thirty (30) days after the settlement offer was made.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

### *END 008*

86913 (11/04)                        Page 1 of 1

**ENDORSEMENT#** *9*

This endorsement, effective *12:01 a.m.    September 1, 2008*    forms a part of
policy number    *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUSION (O) AMENDED ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), Clause 4. EXCLUSIONS, is hereby amended by deleting Exclusion (o) in its entirety and replacing it with the following:

(o)    for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law;

It is acknowledged that Claims for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately preceding paragraph, include, without limitation, any and all Claims which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

(1)    the refusal, failure or inability of any Insured(s) to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

(2)    improper deductions from pay taken by any Insured(s) from any Employee(s) or purported employee(s); or

(3)    failure to provide or enforce legally required meal or rest break periods;

Notwithstanding the foregoing, this exclusion (o) shall not apply to the extent that a Claim is for Retaliation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

❂ American International Group, Inc.  All rights reserved

*END 009*

86885 (3/08)    Page 1 of 1

## ENDORSEMENT# *10*

This endorsement, effective *12:01 a.m.    September 1, 2008*    forms a part of
policy number  *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EMPLOYMENT PRACTICES COVERAGE DELETED

In consideration of the premium charged, it is hereby understood and agreed that, notwithstanding any other provision of this policy (including any endorsement attached hereto, whether such endorsement precedes or follows this endorsement in time or sequence), this policy shall not provide coverage for Loss arising out of an Employment Practices Claim.   It is further agreed that all sections of the policy which relate to coverage for Employment Practices Claims are deleted in their entirety.

It is further understood and agreed that the policy is hereby amended as follows:

### I.

Item 5. of the Declarations is deleted in its entirety and replaced with the following:

ITEM 5.    RETENTION:

Judgments, Settlements and
Defense Costs (non- Indemnifiable Loss)          None


Securities Claims (other than private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)          *$500,000*
for Loss arising from Claims
alleging the same Wrongful
Act or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)


All Other Claims (including private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)          *$500,000*
for Loss arising from Claims
alleging the same Wrongful
Act or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

### II.

Clause 2. DEFINITIONS is amended as follows:

1.    Definition (b) "Claim" is amended by deleting subparagraph (3) in its entirety and deleting the final paragraph thereof and replacing it with the following:

The term "Claim" shall include a Securities Claim.


### *END 010*

## ENDORSEMENT# _10_   (continued)

2.  Definition (t) "Wrongful Act" is amended by deleting the last sentence thereof, which reads as follows:

> "With respect to an Employment Practices Claim, the term "Wrongful Act" shall include any Employment Practices Violation."

### III.

Clause 4. EXCLUSIONS is amended as follows:

1.  Exclusions (h), (i), (m), (n) and (q) are amended by deleting all references to exceptions for Employment Practices Claims.

2.  Exclusions (o) and (p) are amended by deleting all references to exceptions for Claims for Retaliation.

3.  The following exclusion shall apply and is added at the end of Clause 4:

> (r)    with respect to all Coverages: alleging an Employment Practices Violation(s).

### IV.

Clause 9. PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED CLAIMS is amended by deleting the first sentence of the Clause and replacing it with the following:

> "This clause applies only to a Securities Claim (hereinafter referred to as a "Designated Claim")."

### V.

It is further understood and agreed that any reference(s) to an Employment Practices Claim or an Employment Practices Violation within the policy shall not operate to grant coverage for Loss alleging an Employment Practices Violation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

### *END 010*

## ENDORSEMENT# *11*

This endorsement, effective *12:01 a.m.    September 1, 2008*    forms a part of
policy number    *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### REGULATORY CLAIMS - SEPARATE RETENTION

In consideration of the premium charged, it is hereby understood and agreed that, the
policy is amended as follows:

1.    Item 5. RETENTION is deleted in its entirety and replaced with the following:

ITEM 5.    RETENTION:

Judgments, Settlements and
Defense Costs (non-Indemnifiable Loss)    None

Employment Practices Claims
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)

for Loss arising from Claims
alleging the same Wrongful Act or
Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

Securities Claims (other than private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)    *$500,000*
for Loss arising from Claims
alleging the same Wrongful Act or
Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

Regulatory Claims
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)    *$1,000,000*
for Loss arising from Claims
alleging the same Wrongful Act or
Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

All Other Claims (including private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)    *$500,000*
for Loss arising from Claims
alleging the same Wrongful Act or
Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

### *END 011*

**ENDORSEMENT#** *11*    (continued)

2.    The following definition is hereby added to the policy:

"Regulatory Claim(s)" shall mean:

any Claim(s) made against any Insured(s) alleging, arising out of, based upon, or attributable to any violation(s) of any local, state or federal administrative or regulatory statute, code, rule or regulation or procedure, as well as any and all Claims brought by any local, state or federal governmental body and/or any agency or subdivision thereof; provided, however that the foregoing definition shall not include any Employment Practices Claim or Securities Claim.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 011*

**ENDORSEMENT#** *12*

This endorsement, effective *12:01 a.m.    September 1, 2008*    forms a part of policy number   *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SUBSIDIARY - AUTO- SUBSIDIARY PERCENTAGE DECREASED

In consideration of the premium charged, it is hereby understood and agreed that subparagraph (2) of the Definition of Subsidiary is hereby amended by decreasing the automatic threshold from 25% to  *10* %.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

### *END 012*

82521 (6/03)                    Page 1 of 1

**ENDORSEMENT#** *13*

This endorsement, effective *12:01 a.m.    September 1, 2008*        forms a part of
policy number   *01-203-95-48*
issued to   *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DEFINITION OF SECURITIES CLAIM AMENDED

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended by deleting Clause 2. DEFINITIONS, paragraph (r) "Securities Claim," in its entirety and replacing it with the following:

(r)    "Securities Claim" means a Claim (including a civil lawsuit or criminal proceeding brought by the Securities & Exchange Commission) made against an Insured anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

(1)    brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities representing equity in or debt of the Company, or

(2)    brought by a holder of securities representing equity in or debt of the Company, whether directly, by class action, or derivatively on the behalf of the Company, or otherwise, alleging any Wrongful Act of an Insured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END*
**13**

### ENDORSEMENT# *14*

This endorsement, effective *12:01 a.m.    September 1, 2008*    forms a part of
policy number    *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PROFESSIONAL ERRORS & OMISSIONS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable to make any payment for Loss in connection with any Claim(s)
made against any Insured(s) alleging, arising out of, based upon or attributable to any
Insured(s)' performance of or failure to perform professional services for others for a fee,
or any act(s), error(s) or omission(s) relating thereto.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

### *END 014*

**ENDORSEMENT# *15***

This endorsement, effective *12:01 a.m.    September 1, 2008*    forms a part of
policy number   *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**DISCOVERY AMENDED**
**BILATERAL - ONE YEAR PRESET - TWO AND THREE TBD**

In consideration of the premium charged, it is hereby understood and agreed that the
policy (and any endorsement amending Clause 10. DISCOVERY CLAUSE) is hereby
amended to the extent necessary for the policy to provide the following:

Clause 10. DISCOVERY CLAUSE, is deleted in its entirety and replaced with the following:

**10.   DISCOVERY CLAUSE**

Except as indicated below, if the Named Entity shall cancel or the Named Entity or
the Insurer shall refuse to renew this policy, the Named Entity shall have the right
to a period of either one, two or three years following the effective date of such
cancellation or nonrenewal upon payment of the respective "Additional Premium
Amount" described below (herein referred to as the "Discovery Period") in which to
give to the Insurer written notice of Claims first made against the Insureds during
said Discovery Period for any Wrongful Act occurring prior to the end of the Policy
Period and otherwise covered by this policy. The rights contained in this paragraph
shall terminate, however, unless written notice of such election together with the
additional premium due is received by the Insurer within 30 days of the effective
date of cancellation or nonrenewal. The Additional Premium for the Discovery Period
shall be fully earned at the inception of the Discovery Period. The Discovery Period
is not cancelable. This clause and the rights contained herein shall not apply to any
cancellation resulting from non-payment of premium.

The Additional Premium Amount for: (1) one year shall be *150* % of the "Full Annual
Premium"; (2) two or three years shall be an amount to be determined in the
absolute and sole discretion of the Insurer. As used herein, "Full Annual Premium"
means the premium level in effect immediately prior to the end of the Policy Period.

In the event of a Transaction, as defined in Clause 12, the Named Entity shall have
the right, within 30 days before the end of the Policy Period, to request an offer
from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring
prior to the effective time of the Transaction) for a period of no less than three
years or for such longer or shorter period as the Named Entity may request. The
Insurer shall offer such Discovery Period pursuant to such terms, conditions and
premium as the Insurer may reasonably decide. In the event of a Transaction, the
right to a Discovery Period shall not otherwise exist except as indicated in this
paragraph.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 015*

## ENDORSEMENT# *16*

This endorsement, effective *12:01 a.m.    September 1, 2008*    forms a part of
policy number *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### TERRORISM EXCLUSION - CERTIFIED ACTS

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of an "act of terrorism", which is defined in the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007 (collectively, "TRIA") as follows:

(1)    ACT OF TERRORISM. -
    (A)    CERTIFICATION. - The term "act of terrorism" means any act that is certified by the Secretary [of the Treasury], in concurrence with the Secretary of State, and the Attorney General of the United States -
        (i)    to be an act of terrorism;
        (ii)    to be a violent act or an act that is dangerous to -
            (I)    human life;
            (II)    property; or
            (III)    infrastructure;
        (iii)    to have resulted in damage within the United States, or outside of the United States in the case of -
            (I)    an air carrier or vessel [described in TRIA]; or
            (II)    the premises of a United States mission; and
        (iv)    to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
    (B)    LIMITATION. -    No act shall be certified by the Secretary as an act of terrorism if -
        (i)    the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
        (ii)    property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.
    (C)    DETERMINATIONS FINAL. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.
    (D)    NONDELEGATION. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

The following applies solely to commercial property policies:

Where required by state law, if an act of terrorism results in fire, the Insurer will pay for the direct loss or damage to Covered Property, as this term is defined in the commercial property policy, caused by that fire.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 016*

**ENDORSEMENT# _17_**

This endorsement, effective _12:01 a.m._    _September 1, 2008_                    forms a part of
policy number   _01-203-95-48_
issued to _TAYLOR, BEAN & WHITAKER MORTGAGE CORP_

by    _National Union Fire Insurance Company of Pittsburgh, Pa._

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 68461 | 08/97 | PRIVATE EDGE ADMITTED DEC |
| 81285 | 01/03 | TRIA DEC DISCLOSURE FORM |
| 74825 | 02/01 | FLORIDA ADDENDUM TO THE DECLARATIONS |
| 68462 | 08/97 | PRIVATE EDGE ADMITTED POLICY PAGES |
|  | 06/08 | SECURITIES CLAIM PANEL COUNSEL LIST |
|  | 06/08 | EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL |
| 76105 | 05/00 | FLORIDA AMENDATORY - CANCELLATION/NONRENEWAL |
| 82545 | 06/03 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| 82463 | 06/03 | CAPTIVE INSURANCE COMPANY (WITH SPECIFIC CAPTIVE CARVE OUT) |
| 82543 | 06/03 | COMMISSIONS EXCLUSION |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 82544 | 06/03 | OUTSIDE ENTITY ENDORSEMENT |
| 82468 | 06/03 | CLAUSE 5. AMENDED REINSTATEMENT OF LIMITS OPTION DELETED |
| 86913 | 11/04 | "NO LIABILITY" AND 10% RETENTION REDUCTION PROVISIONS DELETED |
| 86885 | 03/08 | EXCLUSION (O) AMENDED (FLSA) |
| 82475 | 06/03 | EMPLOYMENT PRACTICES COVERAGE DELETED |
| 82507 | 06/03 | REGULATORY CLAIMS - SEPARATE RETENTION |
| 82521 | 06/03 | SUBSIDIARY - AUTO-SUBSIDIARY PERCENTAGE DECREASED |
|  |  | DEFINITION OF SECURITIES CLAIM AMENDED |
| 82503 | 06/03 | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION |
| 86861 | 11/04 | DISCOVERY AMENDED BILATERAL - ONE YEAR PRESET TWO AND THREE TBD |
| 96557 | 02/08 | TERRORISM EXCLUSION - CERTIFIED ACTS |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

**_END 017_**

**ENDORSEMENT# *17***

This endorsement, effective *12:01 a.m.    September 1, 2008*                forms a part of
policy number    *01-203-95-48*
issued to *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by        *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| | | |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 017*

78859 (10/01)                        Page 2 of 2

ENDORSEMENT# *18*

This endorsement, effective  *12:01 a.m.    September 1, 2008*    forms a part of
policy number  *01-203-95-48*
issued to    *TAYLOR, BEAN & WHITAKER MORTGAGE CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OTHER INSURANCE AND INDEMNIFICATION CLAUSE AMENDATORY (POLICY EXCESS TO SPECIFIC POLICY)

In consideration of  the premium charged,  it is hereby  understood and agreed  that Clause
14. **OTHER INSURANCE AND INDEMNIFICAITON** is  amended by  deleting the  first
paragraph thereof and replacing it with the following:

> Such insurance  as is  provided by  this policy  shall apply  only as  excess over  any
> other valid and collectible insurance.  This policy specifically shall  be excess of any
> other policy pursuant to  which any other  insurer has a  duty to defend  a Claim for
> which this policy may be obligated to pay Loss.

> It is further understood and agreed that such insurance as  is provided by this policy
> shall be excess to Epack Directors and Officers Liability Form G-129170-A issued to
> Platinum Bancshares,  Inc. by  Continental Casualty  Company, and  any renewal  or
> replacement thereof; provided, however, that all terms and conditions of this policy,
> not Epack  Directors  and  Officers Liability  Form  G-129170-A  issued to  Platinum
> Bancshares, Inc. by Continental Casualty Company, shall apply.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

American International Group, Inc. All rights reserved.

**BRANCH**            **END 18**
    *Archive Copy*