(iii)    Decisions Requiring Plan Advisory Committee Vote

Notwithstanding the foregoing powers, the Plan Trustee shall consult with and obtain the approval of the Plan Advisory Committee before making any Material Decisions. Further, the Plan Advisory Committee, and not the Plan Trustee, shall have the sole power to make any Unanimous Decision. See subsection 6.c below of this Section VI.D for a summary of all Material Decisions and Unanimous Decisions.

d.    Distributions and Reserves

The Plan Trustee shall make Distributions to Holders of Allowed Claims in accordance with Article 7 of the Plan and the Plan Trust Agreement, and shall establish Reserves for all Plan Trust Operating Expenses, Administrative Claims, Priority Tax Claims, Priority Claims and Disputed Unsecured Claims.

e.    Investment Powers and Permitted Cash Expenditures

All funds held by the Plan Trustee shall be invested in Cash or in demand and time deposits, such as certificates of deposit and U.S. Treasury Bills having maturities of not more than one year, or other temporary liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Plan Trust Agreement; provided, however, that the right and power of the Plan Trustee to invest Plan Trust Assets, the proceeds thereof, or any income earned by the Plan Trust, shall be limited to the right and power that a liquidating trust is permitted to exercise pursuant to the Treasury Regulations, or as set forth in IRS rulings, notices, guidelines or other IRS pronouncements, and as provided by Bankruptcy Code § 345. The Plan Trustee may expend the Cash of the Plan Trust (x) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective Assets of the Plan Trust during liquidation, (y) to pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Plan Trust), and (z) to satisfy other liabilities incurred by the Plan Trust in accordance with the Plan or the Plan Trust Agreement.

f.    Disputed Ownership Fund.

The Plan Trustee shall be permitted to make the election described in § 1.468B-9(c)(2)(ii) of the Treasury Regulations to treat any portion of the Plan Trust subject to Disputed Claims as a "disputed ownership fund." The Plan Trustee may also, to the extent permitted by law, make such an election for state and local income tax purposes. If the election is made to treat any Disputed Claims as a "disputed ownership fund," then the Plan Trust may (i) allocate taxable income or loss to the Disputed Claims, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed), and (ii) distribute Assets from the Disputed Claims Reserve as, when, and to the extent, such Claims that are Disputed cease to be Disputed, whether by virtue of becoming Allowed or otherwise resolved. The Beneficiaries will be bound by such election, if made by the Plan Trustee and, as such, will, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

g.      Reporting Duties

(i)      Quarterly Filings with Bankruptcy Court and U.S. Trustee

From the Effective Date until a Final Decree is entered, the Trustee shall, within 30 days of the end of each calendar quarter, File with the Bankruptcy Court and submit to the U.S. Trustee quarterly reports setting forth all receipts and disbursements of the Plan Trust as required by the U.S. Trustee guidelines.

(ii)      Tax Reporting

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Plan Trustee of a private letter ruling if the Plan Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Plan Trustee), the Plan Trustee shall file returns for the Plan Trust as a grantor trust pursuant to Treasury Regulations § 1.671-4(a), giving effect to any timely elections made by the Plan Trustee to treat any portion of the Plan Trust as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations.

(iii)      Annual Statements to Beneficiaries

The Plan Trustee shall also send to each Holder of a beneficial interest in the Plan Trust (referred to as Beneficiaries) an annual statement setting forth the Holder's share of items of income, gain, loss, deduction or credit and provide to all such Holders information for reporting such items on their federal income tax returns, as described in the Plan Trust Agreement, except as otherwise provided for U.S. federal income tax purposes in the event that the Plan Trustee timely elects to treat any portion of the Plan Trust as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations.

(iv)      Quarterly Reports to Plan Advisory Committee

The Plan Trustee shall submit reports as it deems advisable to the Advisory Committee not less frequently than each quarter, which shall include reports on the commencement and prosecution of Causes of Action and the proceeds of liquidation of Plan Trust Assets.

(v)      Allocation of Plan Trust Taxable Income

Allocations of Plan Trust taxable income shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on Distributions described in the Plan or the Plan Trust Agreement) if, immediately prior to such deemed Distribution, the Plan Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the Holders of the beneficial interests in the Plan Trust (treating any holder of a Disputed Claim, for this purpose, as a current Holder of a beneficial interest in the Plan Trust entitled to Distributions), taking into account all prior and concurrent Distributions from the Plan

Trust and all Reserve allocations (including all Reserves established pending the resolution of Disputed Claims). Similarly, taxable loss of the Plan Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating Distribution of the remaining Plan Trust Assets. For this purpose, the tax book value of the Plan Trust Assets shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Plan Trust, adjusted in either case in accordance with tax accounting principles prescribed by the IRC, the regulations and other applicable administrative and judicial authorities and pronouncements.

(vi)    Other Filings

The Plan Trustee shall file (or cause to be filed) any other statements, returns or disclosures relating to the Plan Trust that are required by the Plan Trust Agreement or any Governmental Authority.

(vii)    Disputed Ownership Fund – Tax Effect

Notwithstanding the foregoing, in the event that the Plan Trustee timely elects to treat any portion of the Plan Trust subject to disputed claims as a "disputed ownership fund" pursuant to § 1.468B-9(c)(2)(ii) of the Treasury Regulations, any Holders of Claims who as of the Effective Date are Holders of Disputed Claims shall, to the extent of such Disputed Claims, be subject to U.S. federal income taxation in accordance with rules set forth in Section 468B of the Internal Revenue Code and the Treasury Regulations thereunder.

h.    Registry of Beneficial Interests; Non-Transferability

To evidence the beneficial interest in the Plan Trust of each Holder of such an interest, the Plan Trustee shall maintain a registry of such Holders.

Upon issuance thereof, interests in the Plan Trust shall be transferable after written notice to the Plan Trustee only: (a) pursuant to applicable laws of descent and distribution (as in the case of a deceased individual Beneficiary); or (b) by operation of law (as in the case of merger of a corporate Beneficiary).

i.    Retention of Professionals

The Plan Trustee may retain professionals, including but not limited to, attorneys, accountants, investment advisors, auditors and other agents on behalf of the Plan Trust, as necessary or desirable to carry out the obligations of the Plan Trustee hereunder and under the Plan Trust Agreement. More specifically, the Plan Trustee may retain counsel in any matter related to administration of the Plan, including counsel that has acted as counsel for the Debtors, the Creditors' Committee, or its members in the Chapter 11 Cases. Approval of the Bankruptcy Court shall not be required to retain or pay any such professionals.

j.    Termination

The Plan Trust shall terminate after it liquidates and distributes the Plan Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth in the Plan or in the Plan Trust Agreement, or as otherwise ordered by the Bankruptcy Court. The Plan Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Plan Trust for a finite period if it is necessary to the liquidating purpose thereof. Multiple extensions can be obtained. Any extension shall be obtained within the six (6) month period prior to the fifth (5th) anniversary or the end of the immediately preceding extension, as applicable.

k.    Purpose of the Plan Trust

The Plan Trust shall be established for the sole purpose of liquidating and distributing the Plan Trust Assets in accordance with Treasury Regulations § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Subject to definitive guidance from the IRS, all parties shall treat the Plan Trust as a liquidating trust for all federal income tax purposes. The Plan Trust shall not be deemed to be the same legal entity as any of the Debtors, but only the assignee of the Assets and liabilities of the Debtors and a representative of the Estates for delineated purposes within the meaning of § 1123(b)(3) of the Bankruptcy Code.

5.    **Vesting of Assets**

On the Effective Date, all Assets of the Estates shall vest in the Plan Trust and constitute Plan Trust Assets, and each Debtor shall be deemed for all purposes to have transferred legal and equitable title of all Assets of its Estate to the Plan Trust for the benefit of the Holders of Claims against its Estate, whether or not such Claims are Allowed Claims as of the Effective Date, subject, however, to the Plan Liabilities (described in the following paragraph). In accordance with § 1123(b) of the Bankruptcy Code, the Plan Trust is vested with, retain and may exclusively enforce, prosecute and resolve any or all Causes of Action that the Debtors, the Estates, or the Creditors' Committee may have against any Person.

The Trust Assets are transferred to the Plan Trust subject to the following liabilities, if any, which arise out of or relate to any known or unknown Claim or Cause of Action against the respective Debtors or their Estates: (i) Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims that have not been paid as of the Effective Date or that are subsequently Allowed; (ii) all U.S. Trustee fees until such time as the Bankruptcy Court enters a final decree closing each Debtor's Chapter 11 Case; and (iii) any obligations owing to Secured Creditors under the Plan or the Confirmation Order; but (iv) specifically excluding any Claims that have been barred by, or satisfied under, the Plan.

Between the Confirmation Date and the Effective Date, the Debtors will execute all documentation required (i) to transfer control of the Plan Trust Assets to the Plan Trustee, (ii) to consummate the Plan and (iii) to effectuate the terms of the FDIC Settlement Agreement and any other settlement agreement approved by the Bankruptcy Court. After the Effective Date, all

payments and property that any Debtor or its Estate is to receive under the Plan or under any such settlement shall be transferred and conveyed directly to the Plan Trust rather than to the respective Debtor. On the Effective Date, the Debtors shall have no further interest in the Plan Trust Assets.

### 6.    Plan Advisory Committee

On or before the Effective Date, the Plan Advisory Committee shall be deemed appointed and may promptly adopt bylaws to govern the actions of the Plan Advisory Committee. The Plan Advisory Committee shall represent the interests of the Holders of Beneficial Interests during the existence of the Plan Trust, and shall have the obligation to undertake in good faith each of the acts and responsibilities set forth for the Plan Advisory Committee in the Plan Trust Agreement or in the Plan for the benefit of the Beneficiaries.

#### a.    Membership; Voting

The Plan Advisory Committee shall consist of three (3) members of the Creditors' Committee. In the event that less than three (3) of the members of the Creditors' Committee notify counsel to the Creditors' Committee of their intent to serve on the Plan Advisory Committee within fifteen (15) days prior to the Confirmation Hearing, then members shall be chosen as provided in the Plan Trust Agreement. In the event of the resignation of a member of the Advisory Committee, their replacements shall be chosen as provided in the Plan Trust Agreement.

A majority of the members of the Advisory Committee shall constitute a quorum. Except with regard to a Unanimous Decision, a majority vote is required for the Advisory Committee to act on matters before it. In the case of a tie vote, including a tie vote on any Material Decision, the vote of the Plan Trustee shall be taken to break the tie.

#### b.    Fiduciary Duties

The fiduciary duties that applied to the Creditors' Committee prior to the Effective Date, as limited by the exculpations, indemnifications, releases and other protections provided in the Plan, the Plan Trust Agreement, and the Confirmation Order, shall apply to the Plan Advisory Committee. The duties, rights and powers of the Plan Advisory Committee shall terminate upon the termination of the Plan Trust.

#### c.    Rights and Duties

The Plan Advisory Committee's role shall be to consult with the Plan Trustee in the liquidation of the Plan Trust Assets, as more particularly set forth in the Plan Trust Agreement. The Plan Advisory Committee shall have the rights and duties set forth in the Plan Trust Agreement. The rights and powers of the Plan Advisory Committee shall include, but not be limited to, approving all Material Decisions, including the following:

- the Plan Trustee's commencement or continuation of the prosecution of (i) any Cause of Action in which the amount sought to be recovered

exceeds $1 million, or (ii) any objection to a Claim having a stated amount greater than $1 million;

- the Plan Trustee's determination not to object to a Claim having a stated amount in excess of $1 million;

- the settlement of (i) any Cause of Action in which the amount sought to be recovered exceeds $1 million or (ii) any Disputed Claim having a stated amount in excess of $1 million and to approve any release or indemnification to be given by the Plan Trustee in connection with any such settlement;

- any sale of any Assets for a price in excess of $500,000, but no consent or approval of the Plan Advisory Committee is required for any sale of REO or for any release of any individual mortgage loan, including any release for an amount which is less than the outstanding balance of the loan;

- the investment of Cash or other Plan Trust Assets, except for investments in demand and time deposits, such as certificates of deposit, having maturities of less than one year and in U.S. Treasury bills;

- the dissolution of any Debtor;

- the waiver of the attorney-client privilege by the Plan Trustee with respect to any Cause of Action or other litigation related matter, as described in the Plan Trust Agreement;

- the election to treat any portion of the Plan Trust as a "disputed ownership fund" pursuant to § 1.468B-9(c)(2)(ii) of the Treasury Regulations; and

- the election described in Article 7.J. of the Plan as regards undeliverable Distributions.

In addition to approving all Material Decisions, the Plan Advisory Committee shall have the absolute right and power to determine the following by the unanimous vote of all the members of the Advisory Committee (referred to in the Plan Trust Agreement as a "Unanimous Decision"):

- to change the initial bond to be posted by the Plan Trustee; and

- to petition the Bankruptcy Court to remove the Plan Trustee for Cause, or to select a successor Trustee when a successor is required.

    d.    No Compensation: Reimbursement and Retention of Professionals

The members of the Plan Advisory Committee shall serve without compensation, except for reimbursement of fees and expenses as provided for in the Plan and the Plan Trust

Agreement. The Plan Trust shall reimburse the Plan Trustee and each member of the Plan Advisory Committee for its respective reasonable and documented expenses, including out-of-pocket expenses relating to airfare, hotel, meals and other travel costs, and postage, telephone and facsimile charges, for work performed on behalf of or relating to the administration of the Plan Trust or the Advisory Committee, and other necessary expenses. Reimbursement shall include expenses incurred for fees and expenses of counsel to the Plan Trustee, and with respect to the Plan Advisory Committee, to counsel to any member of the Plan Advisory Committee engaged to assist such member to perform its duties hereunder. Reimbursement for fees and expenses of each Plan Advisory Committee member and its counsel shall be subject to a cap to be determined jointly by the Plan Advisory Committee and the Plan Trustee. All amounts payable pursuant to this paragraph shall be paid from the Plan Trust Assets. If the Cash in the Plan Trust shall be insufficient to effect such reimbursement, then the Plan Trustee is hereby authorized to reduce to Cash in a commercially reasonably manner that portion of the Plan Trust Assets necessary to effect such reimbursement. The Plan Advisory Committee shall not retain counsel for the Plan Advisory Committee at the expense of the Plan Trust, unless pursuant to an Order of the Bankruptcy Court for cause shown.

e.      Objection to Fees

The Plan Advisory Committee shall have the right, within 7 days from the delivery of a fee statement, to object to the fees of any professional retained by either the Plan Trust or the Plan Advisory Committee. The objection shall be lodged by giving notice of any such objection to the professional seeking compensation or reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved 15 days after it is made may be submitted to the Bankruptcy Court for resolution. The uncontested portion of each invoice shall be paid within 20 days after its delivery to the Plan Advisory Committee and the Plan Trustee.

**7.      No Liability of Plan Trustee or Plan Advisory Committee and Related Parties; Indemnification**

a.      Exculpation

Neither the Plan Trustee nor any member of the Plan Advisory Committee, nor their respective employees, professionals, agents, representatives or designees (referred to as the Plan Trust Exculpated Parties), shall be liable for any Claims, Causes of Action, liabilities, obligations, losses, damages, costs and expenses (including attorneys' fees and expenses), and other assertions of liability (referred to as the Plan Trust Released Claims) arising out of the discharge of the powers and duties conferred upon the Plan Trustee or the Plan Advisory Committee by the Plan Trust Agreement, the Plan or any Order, or requested to be performed by the Plan Trustee or any member of the Plan Advisory Committee, other than for Plan Trust Released Claims determined by a Final Order to have arisen or resulted solely from such Plan Trust Exculpated Party's gross negligence or willful misconduct. Any action taken or omitted to be taken with the approval of the Bankruptcy Court or the Plan Advisory Committee will conclusively be deemed not to constitute gross negligence or willful misconduct. No Holder of a Claim or other Person will have or be permitted to pursue any Claim or cause of action against

any Plan Trust Exculpated Party for making or approving, or not making or approving, payments or Distributions in accordance with the Plan or for implementing the provisions of the Plan.

b.    Indemnification

To the fullest extent permitted by applicable law, the Plan Trust shall indemnify, defend and hold harmless each Plan Trust Exculpated Party from and against any and all Plan Trust Released Claims arising out of or resulting from such Plan Trust Exculpated Party's acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Plan Trust or the Plan or the discharge of its duties thereunder or under the Plan Trust Agreement; provided, however, that no such indemnification will be made to such Plan Trust Exculpated Party for Plan Trust Released Claims determined by a Final Order to have arisen or resulted solely from such Plan Trust's Exculpated Party's gross negligence or willful misconduct. All fees, costs and expenses, including without limitation attorneys' fees and expert witness fees, incurred by a Plan Trust Exculpated Party in defending a civil or criminal action, suit or proceeding shall be paid by the Plan Trust in advance of the final disposition of such action, suit or proceeding.

8.    **Plan Trustee as Successor to the Debtors**

The Plan Trust shall be the successor to the Debtors and/or the Creditors' Committee for the purposes of §§ 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all Causes of Action and other litigation-related matters. The Plan Trust shall succeed to the attorney-client privilege of the Debtors with respect to all Causes of Action and other litigation-related matters, and the Plan Trustee may waive the attorney-client privilege with respect to any Cause of Action or other litigation-related matter, or portion thereof, in the Plan Trustee's discretion, subject to the approval of the Plan Advisory Committee.

9.    **Preservation of Causes of Action**

Except as otherwise provided in the Plan or expressly in any contract, instrument, release or agreement entered into in connection with the Plan, in accordance with § 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall be vested with and may exclusively enforce and prosecute any Causes of Action that the Debtors, the Estates, the Creditors' Committee or the Plan Trust may have against any Person. The Plan Trustee may pursue such retained Causes of Action in accordance with the best interests of the Plan Trust and its Beneficiaries.

E.    **Distributions under the Plan**

1.    **Timing of Distributions**

a.    Generally

The Plan Trustee shall apply the Plan Trust Assets only in accordance with the Plan and the Plan Trust Agreement. The Plan Trustee shall make all Distributions provided for in the Plan from the Plan Trust Assets, including those to be paid on the Effective Date. The Plan Trustee shall not be required to seek approval of the Bankruptcy Court or any other court with respect to

the administration of the Plan Trust, or as a condition to making any payment or Distribution out of the Plan Trust Assets; provided, however, that, with respect to any Distribution from any "disputed ownership fund" that the Plan Trustee may establish under § 1.468B-9(c)(2)(ii) of the Treasury Regulations, the Plan Trustee shall obtain Bankruptcy Court approval to the extent necessary to comply with all requirements of such Treasury Regulation. All Distributions and the Reserves described in Article 7 of the Plan shall be managed by the Plan Trustee in a manner that accounts for the priority of Distributions under the Plan.

### b. Distributions on Secured Claims

The Plan Trustee shall not distribute Cash as to which a Creditor claims a Lien until the validity, extent, and priority of the Lien has been determined by a Final Order. To the extent that a Lien is adjudicated in favor of such Creditor, it shall be entitled to a Distribution of such Cash in accordance with such Final Order and the treatment of such Secured Creditor's Allowed Claim under the Plan. The FDIC Secured Claims shall be deemed Allowed Claims by virtue of the Confirmation Order, and Distributions shall be made to the FDIC when the Confirmation Order is a Final Order.

### c. Distributions on Allowed Administrative Expense Claims, Priority Tax Claims and Priority Claims

Except as otherwise provided in the Plan, each Holder of an Allowed Administrative Expense Claim, Priority Tax Claim and Priority Claim against any Debtor shall be entitled to a Distribution from Unencumbered Cash as soon as practicable after the later of (a) the Effective Date, and (b) the date upon which any such Claim becomes an Allowed Claim.

### d. Interim Distributions on Unsecured Claims

The Plan Trustee may make annual interim Distributions to Holders of Allowed Unsecured Claims, and may also make more frequent interim Distributions on account of such Claims, from the Net Distributable Assets or Trade Creditor Recovery, as applicable, of the applicable Estate then available, provided that, in either case, each of the following conditions precedent is satisfied: (a) any such Distribution is warranted, economical and not unduly burdensome to the Plan Trust; (b) the Plan Trust has paid all current and outstanding Plan Trust Operating Expenses, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims; and (3) the Plan Trust has allocated adequate funds to the Plan Trust Operating Expense Reserve, the Administrative and Priority Claims Reserve, and the Disputed Claims Reserve of the applicable Estate, and such Reserves will remain adequate after any such interim Distribution is made. This paragraph on Interim Distributions shall be interpreted to be consistent with Revenue Procedure 94-95 § 3.10.

### e. Final Distributions on Unsecured Claims

After (a) the payment of all Plan Trust Operating Expenses, Administrative Expense Claims, Priority Tax Claims and Priority Claims, (b) the prosecution, settlement, or abandonment of all Causes of Action; (c) the allowance or disallowance of all Claims against the Estates, and (d) the liquidation or abandonment of all other Plan Trust Assets, the Holders

of all Allowed Unsecured Claims shall be entitled to a Distribution of all remaining Plan Trust Assets pursuant to the terms of the Plan and the Plan Trust Agreement.

### 2. Reserves

The Plan Trustee shall establish the following Reserves, as provided for in Article 7.C of the Plan.

#### a. Plan Trust Operating Expense Reserve

On the Effective Date, the Plan Trustee shall establish the Plan Trust Operating Expense Reserve to fund administrative and all other miscellaneous needs of the Plan Trust pursuant to the Plan, Confirmation Order and Plan Trust Agreement.

#### b. Administrative and Priority Claims Reserve

On the Effective Date, the Plan Trustee shall establish the Administrative and Priority Claims Reserve to fund all Administrative and Priority Claims pursuant to the Plan that are not Allowed as of the Effective Date.

#### c. Disputed Claims Reserves

Prior to making any Distributions on account of Unsecured Claims, the Plan Trustee shall establish the Disputed Claims Reserve on account of each applicable Debtor. Each Disputed Claims Reserve shall be for the payment of any Unsecured Claim that is a Disputed Claim, to the extent such Disputed Unsecured Claim becomes an Allowed Unsecured Claim against such Debtor.

#### d. General Provisions Regarding All Reserves

In determining the amount of such Reserves, the Plan Trustee may estimate a Claim based upon its own good faith determination of the Claim's value, or may accept the amount of a Claim at its face value as enumerated by the claimant in its Proof of Claim or as otherwise asserted by the claimant or estimated by the Bankruptcy Court. Each Reserve shall represent an allocation of Unencumbered Plan Trust Assets of the applicable Debtor's Estate consisting Cash; provided, however, that the Plan Trust Operating Expense Reserve shall represent an allocation of Unencumbered Plan Trust Assets of TBW's Estate consisting of Cash. The Plan Trustee shall not be required to establish and fund any Reserve with a separate deposit or investment account into which is deposited Unencumbered Plan Trust Assets of the applicable Estate. The Plan Trustee may, but shall not be required to, request that the Bankruptcy Court estimate the value of any Claim for purposes of setting the amount of any Reserve. If at any time the Plan Trustee determines that the amount allocated to any Reserve is insufficient to satisfy all Claims for which it is established, the Plan Trustee may allocate additional amounts to it from other Reserves for the applicable Debtor's Estate or from Unencumbered Plan Trust Assets of such Debtor's Estate consisting of Cash, without further notice or motion. The Plan Trustee may also decrease the amount of any Reserve established for any Estate as the Plan Trustee determines is appropriate; provided, however, the Plan Trustee shall not decrease the amount allocated to the

Administrative and Priority Claims Reserve or any Disputed Claims Reserve without providing to all parties in interest prior notice and an opportunity to be heard. If any Creditor asserts that more than one Debtor is liable for an Administrative Expense Claim, Priority Tax Claim, Priority Claim or Disputed Claim, the Plan Trustee may allocate to the Reserve it deems appropriate on account of only one such Claim. All amounts allocated to any Reserve following the payment or resolution of all Claims for which such Reserve was established shall be available for Distribution to other claimants of such Debtor's Estate pursuant to the terms of the Plan and the Plan Trust Agreement.

### 3.    Distribution Calculation

#### a.    Calculation of Net Distributable Assets

The "Net Distributable Assets" of each Estate as of any date of determination is calculated under the Plan as follows: the total gross Unencumbered Cash proceeds of the Plan Trust Assets allocated to such Estate as of such date, less, to the extent applicable, the Plan Trust Operating Expenses that are outstanding and have not been paid and amounts allocated to the Plan Trust Operating Expense Reserve for such Estate, less the Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims that are outstanding and have not been paid and amounts allocated to the Administrative and Priority Claims Reserve for such Estate, and less the amounts allocated to the Disputed Claims Reserve for such Estate. For avoidance of doubt, the Trade Creditor Recovery does not constitute Cash proceeds of Plan Trust Assets and shall not constitute Unencumbered Cash.

#### b.    Calculation of Interim Distributions

The Plan Trustee may make interim Distributions:

>    (i)    from Net Distributable Assets allocated to any Debtor's Estate, to Holders of Allowed Unsecured Claims against such Debtor, calculated as of the date of the interim Distribution; and

>    (ii)    from amounts available for Distribution in respect of the FDIC GUC Claim, to Holders of Allowed Trade Claims up to the amount of the Trade Creditor Recovery, calculated as of the date of the interim Distribution.

### 4.    Priorities

Unencumbered Cash available for interim Distributions pursuant to the Plan shall, with respect to each Debtor's Estate and subject to the terms of the Plan and the Plan Trust Agreement, be paid or allocated to Reserves established by the Plan Trustee in the following order of priority:

>    **First,**    to pay all outstanding Plan Trust Operating Expenses, and to allocate to the Plan Trust Operating Expense Reserve as provided for in Article 7.C.1 of the Plan;

**Second,** to pay all Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims against such Debtor's Estate, and to allocate to the Administrative and Priority Claims Reserve for such Debtor's Estate as provided for in Article 7.C.2 of the Plan; and

**Third,** to pay Net Distributable Assets to all Holders of Allowed Unsecured Claims against such Debtor's Estate in accordance with the Distribution Calculation in Article 7.D of the Plan, and to allocate to the Disputed Claims Reserve for such Debtor's Estate as provided for in Article 7.C.3 of the Plan.

5.    **Calculation of Unsecured Claims**

a.    Payment in Full

Any Allowed Unsecured Claim is paid in full under the Plan at such time as the Holder of such Allowed Unsecured Claim has been paid the Allowed amount of such Allowed Unsecured Claim plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court); provided, however, that where a Creditor holds Allowed Unsecured Claims for which more than one Debtor is liable, whether jointly, as co-obligor, pursuant to a Guaranty or otherwise, such Creditor is not entitled to receive Distributions under the Plan in excess of the Allowed amount of such Claim plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court), and the Creditor's Allowed Unsecured Claim for which more than one Debtor is liable shall be deemed paid in full at such time as the Creditor has been paid the Allowed amount of one such Allowed Unsecured Claim plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court).

b.    Payment of Interest on Allowed Unsecured Claims

If, and only if, all Holders of Allowed Unsecured Claims against an applicable Debtor have been paid 100% of the amount of their Allowed Claims, such Holders shall be entitled to receive interest (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court) on account of such Allowed Claims, from any remaining proceeds realized from the liquidation or other disposition of Assets of such Debtor; provided, however, that with respect to Allowed Unsecured Claims for which more than one Debtor is liable, interest is payable on such Claims based on the Allowed amount of the joint liability fixed by such Claims.

6.    **Payment in Full of Allowed Unsecured Claims for Which More Than One Debtor is Liable.**

To the extent that a Holder of Allowed Unsecured Claims for which more than one Debtor is liable is paid 100% of the Allowed amount of the joint liability fixed by such Claims through interim Distributions, the Plan Trustee shall retain any further interim Distributions that would be made on account of such Claims as if only one Debtor were liable for such Claim until the Plan Trustee makes a final Distribution under the Plan. Prior to making a final

Distribution under the Plan, the Plan Trustee shall determine (with respect to every Allowed Unsecured Claim for which more than one Debtor is liable that has been paid 100% of the Allowed amount of the joint liability fixed by such Claim) the amount of Distributions in respect of such Claim made on account of such Debtor's Estate.  The Plan Trustee shall reallocate the excess Distributions, if any, that it has retained among the liable Estates in proportion to the amount of Distributions made to Claims from such Estates on account of such joint liability.

### 7.    Manner of Distribution

Notwithstanding any other provisions of the Plan or the Plan Trust Agreement providing for a Distribution or payment in Cash, at the option of the Plan Trustee, any Distributions under the Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer, or by ACH.  Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan.  Any Cash Distributions or payments will be issued to Holders in whole cents (rounded to the nearest whole cent when and as necessary).

### 8.    De Minimis Distributions

All *De Minimis* Distributions may be held by the Plan Trust for the benefit of the Holders of Allowed Claims entitled to *De Minimis* Distributions.  When the aggregate amount of *De Minimis* Distributions held by the Plan Trust for the benefit of a Creditor exceeds $50.00, the Plan Trust may distribute such *De Minimis* Distributions to such Creditor.  If, at the time that the final Distribution under the Plan is to be made, the *De Minimis* Distributions held by the Plan Trust for the benefit of a Creditor total less than $50.00, such funds shall be not distributed to such Creditor, but rather, shall constitute Plan Trust Assets and thus eligible to be to distributed to other Creditors.

### 9.    Delivery of Distributions

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made by the Debtors, if before the Effective Date, or the Plan Trustee, if on or after the Effective Date, (i) at the addresses set forth on any Proof of Claim Filed by such Holder (or at the last known addresses of such Holder if no motion requesting payment or Proof of Claim is Filed or the Debtors or the Plan Trustee have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes Filed with the Bankruptcy Court and served on the Plan Trustee by such Holder after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and no written notice of address change has been Filed by such Holder with the Bankruptcy Court and served on the Plan Trustee.

### 10.    Undeliverable Distributions

If any Distribution or other payment to the Holder of an Allowed Claim under the Plan is returned for lack of a current address for the Holder or otherwise, the Plan Trustee shall file with the Bankruptcy Court the name, if known, and last known address of the Holder

and the reason for its inability to make payment. If, after the passage of 90 days, the Distribution or payment still cannot be made, the Plan Advisory Committee may elect either (i) that any further Distribution or payment to the Holder shall be distributed to the Holders of Allowed Claims in the appropriate Class or Classes or (ii) donated to a not-for-profit, non-religious organization approved by the Plan Advisory Committee. In either event, the Allowed Claim shall be deemed satisfied and released, with no recourse to the Plan Trust, the Plan Trustee or the Plan Trust Assets, to the same extent as if the Distribution or payment had been made to the Holder of the Allowed Claim.

### 11. Setoffs and Recoupments

The Debtors, if before the Effective Date, or the Plan Trustee, if on or after the Effective Date, may, to the extent permitted by §§ 502(h), 553, and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, set off against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Causes of Action of any nature whatsoever that the Debtors, the Estates, the Creditors' Committee or the Plan Trust may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors, the Estates, the Creditors' Committee or the Plan Trust of any right of setoff or recoupment that the Debtors, the Creditors' Committee, the Plan Trust or the Estates may have against the Holder of such Claim, nor of any other Cause of Action.

### 12. Distributions in Satisfaction; Allocation

Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Interests in the Plan Trust or the Plan Trust Assets, whether known or unknown, that arose or existed prior to the Effective Date. Distributions received in respect of Allowed Unsecured Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

### 13. Cancellation of Notes and Interests

#### a. Notes

As of the Effective Date, all notes and securities evidencing Claims or Interests and the rights thereunder of the Holders thereof shall, with respect to the Debtors, the Estates or the Plan Trust, be deemed canceled, null and void, and of no further force and effect, and the Holders thereof shall have no rights against the Debtors, the Estates or the Plan Trust, except the right to receive the Distributions provided for in the Plan.

#### b. Interests

From and after the Effective Date, the Plan Trust shall be deemed the sole capital stockholder, shareholder or managing member, as applicable, of each of the Debtors and shall be vested with all the rights and powers exercisable by a sole capital stockholder,

shareholder or managing member, as applicable, under the respective Debtor's corporate or limited liability company governance documents and applicable law.

### 14.    No Interest on Claims

Unless otherwise specifically provided for in the Plan and except as set forth in Article 7 of the Plan, the Confirmation Order, or a post-petition agreement in writing between the Debtors and a Holder of a Claim and approved by an Order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, Confirmation Order or Plan Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

### 15.    Withholding Taxes

The Debtors, if before the Effective Date, and the Plan Trustee, if on or after the Effective Date, shall be entitled to deduct any federal, state or local withholding taxes from any payments under the Plan. As a condition to making any Distribution under the Plan, the Debtors, if before the Effective Date, and the Plan Trustee, if on or after the Effective Date, may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtors, if before the Effective Date, and the Plan Trustee, if on or after the Effective Date, to comply with applicable tax reporting and withholding laws. Failure of a Holder of any Allowed Claim to provide such Holder's taxpayer identification number and such other information and certification may result in forfeiture of such Holder's right to Distributions in respect of its Claim.

### 16.    Reports

The Plan Trustee shall submit such reports as it deems reasonable to the Plan Advisory Committee, including, without limitation, reports on the commencement and prosecution of Causes of Action and the proceeds of liquidation of the Trust Assets. The Plan Trustee shall also report to the Plan Advisory Committee, at the request of any member of the Plan Advisory Committee, on any matter that reasonably relates to the Plan Trust Assets; provided, however, that in providing such reports the Plan Trustee shall not take any action that will in any way infringe on attorney-client privilege or jeopardize the viability of on-going litigation by reporting on Causes of Action directly or indirectly to any interested parties that may be on the Plan Advisory Committee.

### F.    Claims Administration; Disputed Claims

### 1.    Reservation of Rights to Object to Claims and Interests

Unless a Claim or Interest is expressly described as an Allowed Claim or Allowed Interest pursuant to or under the Plan, or otherwise becomes an Allowed Claim or Allowed

Interest prior to the Effective Date, upon the Effective Date, the Plan Trustee shall be deemed to have a reservation of any and all rights, interests and objections of the Debtors, the Creditors' Committee or the Estates to any and all Claims or Interests and motions or requests for payment. The Plan Proponents' failure to object to any Claim or Interest in the Chapter 11 Cases shall be without prejudice to the Plan Trustee's rights to contest or otherwise defend against such Claim or Interest in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of such Claim or Interest.

### 2.    Objections to Claims and Interests

Prior to the Effective Date, the Plan Proponents shall be responsible for pursuing any objection to the allowance of any Claim or Interest. From and after the Effective Date, the Plan Trustee shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving Claims and Interests and making Distributions, if any, with respect to all Claims and Interests (including those Claims or Interests that are subject to objection by the Debtors as of the Effective Date), subject to any approvals of the Plan Advisory Committee that may be required.

### 3.    Service of Objections

An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if the Plan Trustee effects service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Cases.

### 4.    Determination of Claims

Except as otherwise agreed by the Plan Proponents or the Plan Trustee, any Claim as to which a Proof of Claim or motion or request for payment was timely Filed in the Chapter 11 Cases, or deemed timely Filed by Order of the Bankruptcy Court, may be adjudicated or otherwise liquidated pursuant to (i) an Order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties without the need for Bankruptcy Court approval, (iv) applicable non-bankruptcy law, or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim or (c) an application to otherwise limit recovery with respect to such Claim, Filed by any of the Plan Proponents, the Plan Trustee, or any other party in interest on or prior to any applicable deadline for Filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with the Plan. Nothing contained in Article 8 of the Plan shall constitute or be deemed a waiver of any rights, interests, objections or Causes of Action that any of the Plan Proponents or the Plan Trustee may have against any Person in connection with or arising out of any Claim, including without limitation any rights under 28 U.S.C. § 157.

### 5.    No Distributions on Disputed Claims Pending Allowance

No payments or Distributions shall be made with respect to all or any portion of a Disputed Claim, including any Distribution of Assets securing such Disputed Claim or as to which there are competing claims of ownership, unless and until (i) all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, (ii) the Disputed Claim has become an Allowed Claim, and (iii) all conflicting Lien or ownership rights in any Assets securing or evidencing such Allowed Claim have been settled or withdrawn or have been determined by a Final Order; provided, however, that in the event that (x) a portion of such Claim is an Allowed Claim, or (y) a portion of the Assets securing or evidencing any Claim is not subject of conflicting Claims of Lien or ownership rights, the Plan Trustee may, in his discretion, make a Distribution pursuant to the Plan on account of the portion of such Claim that is an Allowed Claim and the portion of such Assets as to which there are no conflicting Claims.

### 6.    Claim Estimation for Disputed Claims

In order to effectuate Distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Cases, any of the Plan Proponents (if before the Effective Date) and the Plan Trustee (if on or after the Effective Date), after notice and a hearing (which notice may be limited to the Holder of such Disputed Claim), shall have the right to seek an Order of the Bankruptcy Court, pursuant to § 502(c) of the Bankruptcy Code, estimating or limiting the amount of (i) property that must be withheld from or reserved for Distribution purposes on account of any Disputed Claim, (ii) such Claim for Claim allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; provided, however, that the Bankruptcy Court shall determine (i) whether such Claims are subject to estimation pursuant to § 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any.

Allowance of Claims shall be in all respects subject to the provisions of § 502 of the Bankruptcy Code, including without limitation subsections (b), (d), (e), (g), (h), and (i) thereof.

### G.    Executory Contracts and Unexpired Leases; Employee Benefit Plans

### 1.    Rejection of Unassumed Executory Contracts and Unexpired Leases

On the Effective Date, except for any Executory Contract (i) that was previously assumed or rejected by an Order of the Bankruptcy Court or otherwise pursuant to § 365 of the Bankruptcy Code or (ii) that is subject to a pending motion to assume or reject before the Bankruptcy Court, each Executory Contract entered into by any of the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, shall be rejected pursuant to §§ 365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejection pursuant to §§ 365 and 1123 of the Bankruptcy Code as of the Confirmation Date.

## 2.    Employee Benefit Plans

Without limiting the generality of Article 9.A of the Plan discussed above, and for the avoidance of doubt, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their employees, retirees and non-employee directors and the employees and retirees of their subsidiaries, including all savings plans, retirement plans, pension plans, healthcare plans, disability plans, severance benefit plans, incentive plans, life and accidental death and dismemberment insurance plans, shall be deemed and treated as Executory Contracts that are rejected by the Debtors pursuant to the Plan and § 365 of the Bankruptcy Code as of the Effective Date.

## 3.    Rejection Damages Bar Date

Except to the extent that another Bar Date applies pursuant to an order of the Bankruptcy Court, any Proofs of Claim with respect to a Claim arising from the rejection of Executory Contracts under the Plan (including Claims under § 365(d)(3) of the Bankruptcy Code) must be Filed by (i) regular mail to BMC Group, Inc. Attn: Taylor Bean & Whitaker Mortgage Corp. Claims Processing, P.O. Box 3020, Chanhassen MN 55317-3020, or (ii) by hand, courier, or overnight delivery to BMC Group, Inc. Attn: Taylor, Bean & Whitaker Mortgage Corp., Claims Processing, 18750 Lake Drive East, Chanhassen, MN 55317, within 30 days after the Effective Date, or such Claim shall not be entitled to a Distribution or be enforceable against the Debtors' Estates, the Plan Trust, the Plan Trustee, their successors, their assigns, or their Assets. Any Allowed Claim arising from the rejection of an Executory Contract shall be treated as a Claim in TBW Class 8, HAM Class 3 or REO Class 3 (General Unsecured Claims), as applicable. Nothing in the Plan extends or modifies any previously applicable Bar Date.

## 4.    Insurance Policies

### a.    Assumption or Rejection

To the extent that any or all of the insurance policies described in the Plan Supplement (referred to as the "Designated Insurance Policies") are considered to be Executory Contracts, then notwithstanding anything contained in the Plan to the contrary, the Plan shall constitute a motion to assume the Designated Insurance Policies in connection with the Plan and to assign them to the Plan Trust. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption and assignment pursuant to § 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Estates, and all parties in interest in the Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each Designated Insurance Policy. To the extent that the Bankruptcy Court determines otherwise with respect to any Designated Insurance Policy, the Debtors reserve the right to seek rejection of such insurance policy or other available relief. The

Plan shall not affect contracts that have been assumed and assigned by Order of the Bankruptcy Court prior to the Confirmation Date.

b.     Vest as Plan Trust Assets

For the avoidance of doubt, all rights under any Designated Insurance Policy that is not considered to be an Executory Contract, and all rights under any other insurance policies under which the Debtors may be beneficiaries (including the rights to make, amend, prosecute and benefit from claims), shall be preserved and shall vest in the Plan Trust pursuant to Article 6.F.1 of the Plan and § 1123(a)(5)(B) of the Bankruptcy Code.

H.     **Exculpations and Releases, and Related Injunctions**

1.     **Debtor's Exculpation and Release of Chapter 11 Protected Parties**

Except as otherwise specifically provided in the Plan, pursuant to § 1123(b)(3)of the Bankruptcy Code, as of the Effective Date, the Debtors and their Estates exculpate, release and discharge the following (defined in the Plan, collectively, as the "Chapter 11 Protected Parties"): (1) Neil F. Luria, Jeffery W. Cavender, Matthew E. Rubin, William Maloney and R. Bruce Layman, each of whom serves as a current officer or director of one or more of the Debtors, (2) TBW's Creditors' Committee, its members, and their respective directors, officers, employers, employees, and counsel, (3) Navigant, Stichter Riedel, Troutman Sanders, and Berger Singerman, and their respective officers, directors, partners, employees and equity holders. The exculpation, release and discharge by the Debtors and their Estates of the Chapter 11 Protected Parties is from any Claim, obligation, Cause of Action or liability, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law or in equity, which is based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Chapter 11 Cases, except those resulting solely from such Person's gross negligence or willful misconduct, as adjudicated by a Final Order, and including but not limited to acts or omissions in connection with the commencement and administration of the Chapter 11 Cases, the Investigation, the sale of assets, the arranging for post-petition financing, the prosecution and defense of contested matters and adversary proceedings, the settlement of Claims and the disbursement of funds, the administration of TBW'S ESOP, and the promulgation of the Plan and solicitation of acceptances thereto (defined in the Plan, collectively, as the "Chapter 11 Released Claims"). The scope of the Debtors' exculpation, release and discharge includes Chapter 11 Released Claims that could have been asserted derivatively on behalf of the Debtors or their Estates, but does not include any Avoidance Action or any prepetition Claim, obligation, Cause of Action or liability based on money borrowed from or owed to the Debtors as set forth in the Debtors' books and records.

2.      **Further Exculpation and Release of Chapter 11 Protected Parties**

Except as otherwise specifically provided in the Plan, pursuant to § 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, the Chapter 11 Protected Parties shall be exculpated, and released from all Chapter 11 Released Claims by each other, by any Holder of a Claim or Interest, by any party in interest, and by their respective agents, employees, successors and assigns. Without limiting the generality of the foregoing, each Chapter 11 Protected Party shall be entitled to and granted the protections and benefits of § 1125(e) of the Bankruptcy Code.

3.      **Release of the Federal Deposit Insurance Corporation**[44]

On and effective as of the Effective Date, (a) the Debtor, the Debtor's Estate, all of the Debtor's creditors, and any other parties in interest, each of their respective subsidiaries and affiliates and the predecessors, successors and assigns of any of them and any other Person that claims or might claim through, on behalf of or for the benefit of any of the foregoing, whether directly or derivatively, and (b) the Committee (defined in the Plan as, collectively, the "<u>Non-FDIC Releasors</u>") shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged the Federal Deposit Insurance Corporation in its capacity as receiver of Colonial Bank and in its corporate capacity, their respective past or present parent entities, subsidiaries, affiliates, directors, officers, employees, professionals and the predecessors, successors and assigns of any of these (defined in the Plan as, collectively, the "<u>FDIC Releasees</u>") from any and all Claims, demands, rights, liabilities, or Causes of Action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which the Non-FDIC Releasors, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any FDIC Releasee (i) that are released or deemed to be released pursuant to the Plan, (ii) any and all Claims that arise in, relate to or have been or could have been asserted in the Chapter 11 Case, the FDIC Stipulation, the Motion for Relief from the Automatic Stay Pursuant to § 362, filed by FDIC in the Chapter 11 Case on August 28, 2009 (defined in the Plan as the "<u>Stay Relief Motion</u>"), the Emergency Motion for Turnover, Approval of Procedures for the Maintenance and Use of Borrower Payments, and Immediate Resolution of Related Issues, filed by the Debtor in the Chapter 11 Case on August 31, 2009 (defined in the Plan as the "<u>Turnover Motion</u>" and together with the Stay Relief Motion, the "<u>Actions</u>"), the Plan and the negotiations and compromises set forth in the FDIC Settlement Agreement and the Plan, or otherwise that are based upon, related to, or arise out of or in connection with the Actions or any Claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged or that could have been alleged in the Actions, including, without limitation, any such Claim, demand, right, liability, or Cause of Action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred by the Non-FDIC Releasors arising directly or

---

[44] The consideration given by the FDIC for the releases set forth in this paragraph is set forth in the FDIC Settlement Agreement.

indirectly from or otherwise relating to the Actions (defined in the Plan as, collectively, the "<u>FDIC Released Claims</u>"). Notwithstanding anything in Article 10.C of the Plan to the contrary, (A) the foregoing is not intended to release, nor shall it have the effect of releasing, the FDIC Releasees from the performance of their obligations in accordance with the FDIC Settlement Agreement or the FDIC Stipulation, (B) each Non-FDIC Releasor shall retain the right to assert any and all FDIC Released Claims by way of setoff, contribution, contributory or comparative fault or in any other defensive manner in the event that such Non-FDIC Releasor is sued on any FDIC Released Claim by an FDIC Releasee or any other Person (but solely as a defense against the Claims of such Person and not for purposes of obtaining an affirmative recovery for the benefit of the Non-FDIC Releasor) and such FDIC Released Claim shall be determined in connection with any such litigation as if the provisions of Article 10.C of the Plan were not effective, (C) the foregoing is not intended to release, nor shall it have the effect of releasing, the FDIC Releasees from matters related to Platinum Community Bank, including, without limitation, issues associated with Platinum bank accounts and the Platinum related loans service released after September 4, 2009, (D) the foregoing is not intended to release, nor shall it have the effect of releasing, any releasee or any Person of Claims that may be held or asserted by the Federal Deposit Insurance Corporation in any capacity (including, without limitation, as regulator or as receiver for any failed depository institution other than the Debtor), to the extent that any such Claims are unrelated to the Debtor, its Chapter 11 Case, the Debtor Released Claims (defined below) or the FDIC Released Claims, and (E) the foregoing release is not intended to release, nor shall it have the effect of releasing, any claims filed in the FDIC receivership of Colonial Bank. Notwithstanding anything herein to the contrary, the term FDIC Releasee shall not include, and the release contemplated hereby shall not release, the Federal Deposit Insurance Corporation in its capacity as a receiver of, or in connection with its oversight of, any financial institution other than Colonial Bank.

4.      **Release by the Federal Deposit Insurance Corporation**

On and effective as of the Effective Date, the FDIC in its capacity as Receiver of Colonial Bank and its subsidiaries and affiliates and the predecessors, successors and assigns of any of them and any other person that claims or might claim through, on behalf of or for the benefit of any of the foregoing, whether directly or derivatively (defined in the Plan as, collectively, the "<u>FDIC Releasors</u>"), shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged the Debtor, the Debtor's Estate, the Debtor's current directors, officers, employees and professionals, the Creditors' Committee, and the Creditors' Committee's professionals (defined in the Plan as, collectively, the "<u>Debtor Releasees</u>") from any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which the FDIC Releasors or any of them, or anyone claiming through them, on their behalf or for their benefit have or may have or claim to have, now or in the future, against any Debtor Releasee (i) that are released or deemed to be released pursuant to the Plan, (ii) any and all Claims that arise in, relate to or have been or could have been asserted in the Chapter 11 Case, the FDIC Stipulation, the Actions, the Plan and the negotiations and compromises set forth in the FDIC Settlement Agreement and the Plan, or otherwise are

based upon, related to, or arise out of or in connection with any of the Debtor's assets or any assets to be received by the Debtor as provided in the FDIC Settlement Agreement, or otherwise are based upon, related to, or arise out of or in connection with the Actions or any Claim, act, fact, transaction, occurrence, statement or omission in connection with, or alleged or that could have been alleged in the Actions, including, without limitation, any such Claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred by the FDIC Releasors arising directly or indirectly from or otherwise relating to the Actions (defined in the Plan as, collectively, the "Debtor Released Claims"). Notwithstanding anything contained in Article 10.D of the Plan or elsewhere to the contrary, (a) the foregoing is not intended to release, nor shall it have the effect of releasing, (i) the Debtor Releasees from the performance of their obligations in accordance with the FDIC Settlement Agreement, (ii) any Claims against any former (*i.e.*, not current) officers, directors, employees, agents, fiduciaries, subsidiaries, accountants, auditors, attorneys, appraisers, joint tortfeasors, or contractors of TBW, including without limitation Lee Farkas, Desiree Brown, Paul Allen, Delton DeArmas, or their insurers, based upon alleged conduct that caused the damages set forth in the FDIC Proof of Claim, (iii) any Claims against Bank of America, N.A., and Bank of America, N.A., as successor by merger to LaSalle Bank, N.A. and LaSalle Global Trust Services, Ocala Funding, LLC, any Person to which TBW or any of its employees, officers, directors, or subsidiaries transferred any asset or interest in any asset, or their insurers, (iv) any Claims or prospective Claims which may be asserted by an insurer of Colonial Bank, including without limitation Federal Insurance Company, by way of subrogation or assignment pursuant to any insurance policy or financial institution bond, including those Claims arising out of conduct described in the Proof of Loss submitted to Federal Insurance Company on February 1, 2010 or (v) any Claims described in Section 1.3(b)(i) of the FDIC Settlement Agreement. Further, notwithstanding anything contained in Article 10.D of the Plan or elsewhere to the contrary, (b) each FDIC Releasor shall retain the right to assert any and all Debtor Released Claims by way of setoff, contribution, contributory or comparative fault or in any other defensive manner in the event that such FDIC Releasor is sued on any Debtor Released Claim by a Debtor Releasee or any other Person (but solely as a defense against the Claims of such Person and not for purposes of obtaining an affirmative recovery for the benefit of the FDIC Releasor) and such Debtor Released Claim shall be determined in connection with any such litigation as if the provisions of Article 10.D of the Plan were not effective.

5.      Release by Plan Releasing Parties and Related Injunction

A.      When a REMIC Settlement Agreement becomes effective, then with respect to the corresponding REMIC Securitization, the Debtor, the Debtor's Estate, all the Debtor's Creditors, each of their respective subsidiaries and Affiliates and the predecessors, successors and assigns of any of them and any other Person that claims or might claim through, on behalf of or for the benefit of any of the foregoing, whether directly or derivatively, and (b) the Creditors' Committee (defined in the Plan, collectively, as the "Plan Releasing Parties") shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged Wells Fargo, the REMIC Trustee, any REMIC Insurer, the past, present and future REMIC

Certificateholders, and the REMIC Trust, their respective past or present parent entities, subsidiaries, affiliates, agents, directors, officers, employees, professionals and the predecessors, successors and assigns of any of these (defined in the Plan, collectively, as the "REMIC Trust Released Parties") from any and all Claims, demands, rights, obligations, liabilities, promises, agreements, damages, actions, suits, losses, expenses (including attorney's fees) or Causes of Action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, now accrued or which may hereafter accrue, whether asserted or unasserted (defined in the Plan, individually, as a "REMIC Trust Released Claim" and, collectively, as the "REMIC Trust Released Claims"), which the Plan Releasing Parties or any of them have or may have, or claim to have, now or in the future, against any REMIC Trust Released Party based in whole or in part on any facts, conduct, activities, transactions, events, or occurrences, known or unknown, which have or allegedly have existed, occurred, happened, arisen, or transpired from the beginning of time to the effective date of the REMIC Settlement Agreement that (i) relate to or arise from or in connection with the Debtor's rights to fees incurred or reimbursement of advances made by the Debtor in connection with the REMIC Trust, in its role as servicer or otherwise, or the termination or attempted termination of the Debtor as servicer by Wells Fargo, or for interest on such fees or advances; (ii) relate to or arise out of the Debtor's failure to perform any of its undertakings, obligations, covenants, representations, warranties, and agreements under the REMIC Servicing Agreement, or to third parties; (iii) relate to or arise under §§ 547 or 548 of the Bankruptcy Code or any other avoiding powers under the Bankruptcy Code or similar federal or state laws which arise out of or are related to any obligations or transfers made to, from, or in connection with the REMIC Trust; (iv) relate to or arise under any other federal or state laws (including common law claims or equitable remedies) which arise out of or are related to any obligations or transfers made to, from, or in connection with the REMIC Trust; or (v) were asserted or could have been asserted by any Plan Releasing Party in or in connection with the Chapter 11 Cases, the REMIC Trust Stipulation (or were reserved in the REMIC Trust Stipulation), the Plan or during the negotiations that preceded the compromises set forth in the REMIC Settlement Agreement (any of the foregoing are defined in the Plan, individually, as a "Debtor Released REMIC Claim", or collectively, as the "Debtor Released REMIC Claims"); and all Plan Releasing Parties will be permanently enjoined, except as expressly contemplated by Article 10.E.2 of the Plan, from taking any of the following actions against any REMIC Trust Released Party or any property of a REMIC Trust Released Party on account of any Debtor Released REMIC Claims:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind with respect to any Debtor Released REMIC Claim; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order with respect to any Debtor Released REMIC Claim; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Lien with respect to any Debtor Released REMIC Claim; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a REMIC Trust Released Party with respect to any Debtor Released REMIC Claim; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the REMIC Settlement Agreement.

B.      The Release is not intended to release, nor shall it have the effect of releasing, Wells Fargo, the REMIC Trustee or any REMIC Insurer from the performance of its obligations in accordance with the REMIC Settlement Agreement.

6.      Release by REMIC Releasing Certificateholders of REMIC Certificateholder Releasees and Related Injunction

When a REMIC Settlement Agreement becomes effective, then with respect to the corresponding REMIC Securitization, the past, present and future REMIC Certificateholders of the REMIC Trust, each of their respective subsidiaries and affiliates and the predecessors, successors and assigns of any of them and any other Person that claims or might claim through, on behalf of or for the benefit of any of the foregoing, whether directly or derivatively (defined in the Plan, collectively, as the "REMIC Releasing Certificateholders") shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged Wells Fargo, the REMIC Trustee, any REMIC Insurer, and the REMIC Trust, their respective past or present parent entities, subsidiaries, affiliates, agents, directors, officers, employees, professionals and the predecessors, successors and assigns of any of them (defined in the Plan, individually, as a "REMIC Certificateholder Releasee"), from any and all Claims which the REMIC Releasing Certificateholders or any of them have or may have, or claim to have, now or in the future, against any Certificateholder Releasee based in whole or in part on any facts, conduct, activities, transactions, events, or occurrences, known or unknown, which have or allegedly have existed, occurred, happened, arisen, or transpired from the beginning of time to the effective date of the REMIC Settlement Agreement, that relate to the negotiations and compromises set forth in the REMIC Settlement Agreement; and all REMIC Releasing Certificateholders will be permanently enjoined from taking any of the following actions against any REMIC Certificateholder Releasee or any property of a REMIC Certificateholder Releasee on account of or with respect to any such REMIC Claims released hereunder: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Lien; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a REMIC Certificateholder Releasee; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the REMIC Settlement Agreement.

7.      Release by REMIC Trust Releasing Parties of Plan Proponent Released Parties and Related Injunction

A.      When a REMIC Settlement Agreement becomes effective, then, with respect to the corresponding REMIC Securitization, Wells Fargo, the REMIC Trustee, any REMIC Insurer, the REMIC Trust, each of the past, present and future REMIC Certificateholders, each of their respective subsidiaries and affiliates and the predecessors, successors and assigns of any of them and any other person that claims or might claim

through, on behalf of or for the benefit of any of the foregoing, whether directly or derivatively (defined in the Plan, collectively, as the "REMIC Trust Releasing Parties") shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged the Debtor, the Debtor's Estate, the Debtor's current directors, officers, employees, agents and professionals, the Creditors' Committee and the Creditors' Committee's professionals (defined in the Plan, collectively, as the "Plan Proponent Released Parties") from any and all Claims which the Trust Releasing Parties or any of them have or may have, or claim to have, now or in the future, against any Plan Proponent Released Party based in whole or in part on any facts, conduct, activities, transactions, events, or occurrences, known or unknown, which have or allegedly have existed, occurred, happened, arisen, or transpired from the beginning of time to the effective date of the REMIC Settlement Agreement, that relate to or arise out of the REMIC Trust, the REMIC Servicing Agreement or the REMIC Pooling Agreement, specifically including but not limited to (i) any post-petition Claims relating thereto, and (ii) the REMIC Damage Claims (defined in the Plan, individually, as a "REMIC Trust Released Claim" and collectively, as the "REMIC Trust Released Claims"); and all REMIC Trust Releasing Parties will be permanently enjoined, except as expressly contemplated by Article 10.G.2 of the Plan from taking any of the following actions against any Plan Proponent Released Party or any property of a Plan Proponent Released Party on account of such released REMIC Trust Released Claims: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind with respect to any REMIC Trust Released Claim; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order with respect to any REMIC Trust Released Claim; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Lien with respect to any REMIC Trust Released Claim; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a Plan Proponent Released Party with respect to any REMIC Trust Released Claim; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the REMIC Settlement Agreement.

B.      This release is not intended to release, nor shall it have the effect of releasing, the Debtor or the Creditors' Committee from the performance of their obligations pursuant to, or in accordance with, the REMIC Settlement Agreement. Also, this release is not intended to release, nor shall it have the effect of releasing, the REMIC Initial Purchaser, the REMIC Depositor, or any of their respective past or present parent entities, subsidiaries, affiliates, agents, underwriters, directors, officers, employees, professionals and the predecessors, successors and assigns of any of them and any other Person that might be liable through any of the foregoing, whether directly or derivatively (defined in the Plan as the "REMIC Transferor Parties"), from any Claims that the REMIC Trust Releasing Parties or any of them have or may have, or claim to have, now or in the future, in their individual or representative capacities or as assignee or subrogee, against the REMIC Transferor Parties either at law, in equity, pursuant to contract, whether arising under and in connection with the REMIC Pooling Agreement, the REMIC Servicing Agreement or otherwise.

8.    **Limitation on Releases**

A. Except as provided in Articles 10.A, 10.B, 10.C and 10.E of the Plan (described above in subsection 1, 2, 3 and 5 of this Section VI.H), no provision of the Plan, the Disclosure Statement, or the Confirmation Order shall be deemed to act upon or release any Causes of Action or any rights to payment that the Plan Trust, the Estates, or any party in interest may have against any Person for any act, omission, or failure to act that occurred prior to the Petition Date other than the Chapter 11 Released Claims.

B. Notwithstanding any provision herein to the contrary, no provision of the Plan or the Confirmation Order shall (i) discharge or release the Debtor or any other Person from any right, Claim, cause of action, or power or interest held or assertable by the United States Securities and Exchange Commission ("SEC") or (ii) enjoin, impair or delay the United States Securities and Exchange Commission from commencing or continuing any Claims, causes of action, proceedings or investigations against the Debtor or any other Person in any non-bankruptcy forum.[45]

I.    Effect of Confirmation and Injunction.

1.    **Plan Injunction**

Except as otherwise expressly provided in the Plan, the documents executed pursuant to the Plan, or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date (including all Governmental Authorities) shall be permanently enjoined from, on account of such Claims or Interests, taking any of the following actions, either directly or indirectly, against or with respect to any Debtor, any Estate, any Chapter 11 Protected Party, any Plan Trust Exculpated Party, or the Plan Trust, or any of their respective properties: (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, executing, collecting, or recovering in any manner any judgment, award, decree, or order, or attaching any property pursuant to the foregoing; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (iv) asserting or effecting any setoff, recoupment, or right of subrogation of any kind against any Claim or Cause of Action; (v) enjoining or invalidating any foreclosure or other conveyance of a Plan Trust Asset or Asset of any Debtor; and (vi) taking any act, in any manner, in any place whatsoever, that does not conform to, comply with, or that is inconsistent with any provision of the Plan. Any Person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. This injunction shall not enjoin or prohibit (i) the

---

[45]    The SEC staff has questioned the propriety of any release or injunction in the Debtors' Plan to the extent that may impact the rights of public shareholders of Colonial BancGroup, Inc. against nondebtors and asserts that the releases in the Plan should have no impact on alleged Claims by shareholders of Colonial BancGroup, Inc.

Holder of an Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the Distribution provisions of the Plan or (ii) any party at interest from seeking the interpretation or enforcement of any of the obligations of the Debtors, the Plan Trustee, or the Plan Trust under the Plan. The Confirmation Order also shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any Claim or cause of action against any Debtor, any Estate, any Chapter 11 Protected Party, any Plan Trust Exculpated Party, or the Plan Trust, or any of their respective properties, based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under the Plan have been made or are not yet due.

### 2.    Continuation of Existing Injunctions and Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under §§ 105 or 362 of the Bankruptcy Code, the Plan, by Orders of the Bankruptcy Court, or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Plan Trust.

### 3.    Binding Effect of Plan

Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, subject to the occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not the Holder has Filed a Claim. The rights, benefits and obligations of any Person named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person (including, without limitation, any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

### 4.    No Effect on Objections to Fee Applications

Except as provided in Article 3.A.3(b) of the Plan discussed above, nothing contained in the Plan shall affect the rights of parties in interest to object to Fee Applications or obviate the power of the Bankruptcy Court to issue Orders with respect to Fee Applications.

### 5.    Freddie Mac's Contentions Concerning Bankruptcy Court's Lack of Authority

As discussed in Section VI.B.11 of this Disclosure Statement, Freddie Mac is in conservatorship pursuant to the provisions of HERA. Title 12 U.S.C. § 4617(f) provides "[e]xcept as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." Freddie Mac, and apparently the Conservator, contend that this statute means, among

other things, that the Bankruptcy Court does not have the power to (i) require Freddie Mac to release Claims against the FDIC, (ii) subject Freddie Mac to the Plan injunction or (iii) restrict transferability of rights to Distribution. The Plan Proponents believe that Freddie Mac and the Conservator construe this and other provisions of HERA far too broadly and, accordingly, the Plan Proponents do not agree that § 4617(f) restricts the Bankruptcy Court's power or authority to confirm the Plan. The Plan Proponents will address the scope of § 4617(f) at or prior to Confirmation. The Plan Proponents reserve all rights and defenses with respect to Freddie Mac's and the Conservator's contentions with respect to HERA.

### J.     Conditions Precedent to Effective Date; Revocation, Withdrawal, or Non-Consummation of the Plan

The Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below:

- **Approval of Disclosure Statement.** The Bankruptcy Court shall have approved a disclosure statement to the Plan in form and substance acceptable to the Plan Proponents.

- **Approval of Plan Compromises.** The compromises and settlements contained in the Plan shall be approved without material modification by a Final Order in accordance with Bankruptcy Rule 9019 and shall be binding and enforceable against all Holders of Claims and Interests under the terms of the Plan.

- **Form of Confirmation Order.** The Confirmation Order shall be in form and substance acceptable to the Plan Proponents.

- **Entry of Confirmation Order.** (a) The Confirmation Order (i) shall have been entered by the Bankruptcy Court, (ii) shall not be subject to any stay of effectiveness, and (iii) shall have become a Final Order, (b) the Confirmation Date shall have occurred, and (c) no request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

- **Plan Trust.** The Plan Trust shall have been formed, and all formation documents for the Plan Trust shall have been properly executed and Filed as required by the Plan and applicable law.

- **Plan Trustee.** The appointment of the Plan Trustee shall have been confirmed by Order of the Bankruptcy Court.

If, after the Confirmation Order is entered, each of the conditions to effectiveness cannot be satisfied or has not been waived by the Plan Proponents, then upon motion by the Plan Proponents, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the Filing of such a motion, the Confirmation Order shall not be

vacated if each of the conditions to effectiveness is either satisfied or duly waived before the Bankruptcy Court enters an Order granting the relief requested in such motion. As used in the preceding sentence, a condition to effectiveness may be waived only by a writing executed by the Plan Proponents. If the Confirmation Order is vacated pursuant to Article 12.B of the Plan, the Plan shall be null and void in all respects, and nothing contained in the Plan, the Disclosure Statement, or any pleadings Filed in connection with the approval thereof shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors, (iii) prejudice in any manner the rights of the Debtors in the Chapter 11 Cases, or (iv) constitute an admission of any fact or legal position or a waiver of any legal rights held by any party prior to the Confirmation Date.

### K.    Miscellaneous Provisions

#### 1.    Retention of Jurisdiction

Pursuant to §§ 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, on and after the Confirmation Date, the Bankruptcy Court shall retain jurisdiction to the fullest extent permitted by 28 U.S.C. §§ 1334 and 157, including jurisdiction for the following purposes: (i) to hear and determine the Chapter 11 Cases and all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Cases, including, without limitation, matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan, the Plan Trust Agreement or the Confirmation Order, and (ii) to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Cases. Without limiting the generality of the foregoing, the Bankruptcy Court's post-Confirmation Date jurisdiction shall include jurisdiction:

- over all Causes of Action (including, without limitation, Avoidance Actions and Designated Causes of Action) and proceedings to recover Assets of the Estates or of the Plan Trust, wherever located;

- over motions to assume, reject, or assume and assign executory contracts or unexpired leases, and the allowance or disallowance of any Claims resulting therefrom;

- over disputes concerning the ownership of Claims or Interests;

- over disputes concerning any Distribution under the Plan;

- over objections to Claims, motions to allow late-Filed Claims, and motions to estimate Claims;

- over proceedings to determine the validity, priority or extent of any Lien asserted against property of the Debtors, the Estates, or the Plan

Trust, or property abandoned or transferred by the Debtors, the Estates, or the Plan Trustee;

- over proceedings to determine the amount, if any, of interest to be paid to Holders of Allowed Unsecured Claims, if any Allowed Unsecured Claims are paid in full pursuant to the terms of the Plan;

- over matters related to the assets of the Estates or of the Plan Trust, including, without limitation, liquidation of Plan Trust Assets; provided, however, that subject to the terms of the Plan Trust Agreement and any requisite approval of the Plan Advisory Committee, the Plan Trustee shall have no obligation to obtain the approval or authorization of the Bankruptcy Court or file a report to the Bankruptcy Court concerning the sale, transfer, assignment or other disposition of Plan Trust Assets; and provided, further, that the Plan Trustee may seek Orders of the Bankruptcy Court approving the sale, transfer, assignment or other disposition of Plan Trust Assets as appropriate to facilitate such transactions;

- over matters relating to the subordination of Claims or Interests;

- to enter and implement such Orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

- to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions, or to reconcile any inconsistencies in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

- to issue Orders in aid of execution, implementation, or consummation of the Plan;

- over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith;

- over requests for allowance or payment of Claims entitled to priority under § 507(a)(2) of the Bankruptcy Code and any objections thereto;

- over all Fee Applications;

- over matters concerning state, local or federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

- over conflicts and disputes between the Plan Trustee, the Plan Trust, the Plan Advisory Committee, and Holders of Claims or Interests;

- over disputes concerning the existence, nature or scope of a Debtor's liability, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

- over matters concerning the Debtors' insurance policies, if any, including jurisdiction to re-impose the automatic stay or its applicable equivalent provided in the Plan;

- to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Debtors, the Estates or their property, the Creditors' Committee, the Plan Trust or its property, the Plan Trustee, the Plan Advisory Committee, any Professional, or the Confirmation Order;

- to enter a Final Decree closing the Chapter 11 Cases;

- to enforce all Orders previously entered by the Bankruptcy Court; and

- over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or the Plan.

**The preceding list is non-exhaustive, it being the intent of the Debtors as set forth in the Plan that the Bankruptcy Court retain subject-matter jurisdiction to the maximum extent permitted by applicable law, which will maximize the Plan Trustee's flexibility when choosing the forum for the liquidation of litigation Assets. Retention of jurisdiction by the Bankruptcy Court will benefit all creditors of the Estates as to those litigation Assets for which the Bankruptcy Court proves to be the most economical and/or efficient forum. In addition, with respect to controversies asserting common questions of law on which the Bankruptcy Court has already promulgated the law of the case and/or the United States District Court for the Middle District of Florida or the Eleventh Circuit Court of Appeals has provided (or will provide) definitive guidance, prosecution of Causes of Action in the Bankruptcy Court may provide certainty of outcome (and resulting reduction in litigation expenses) not attainable outside of the Bankruptcy Court in a jurisdiction that will consider previously settled questions of law anew.**

### Designated Causes of Action

As of the Petition Date, litigation filed by or on behalf of the Debtors concerning several Causes of Action described in this Disclosure Statement was pending. The Debtors' and the

Creditors' Committee's investigations to date have revealed, and they anticipate that further investigation may also reveal, other Causes of Action which (along with the Causes of Action pending as of the Petition Date) may be asserted [in the Bankruptcy Court] by the Plan Trustee after the Effective Date under the Plan's provisions regarding the retention of subject-matter jurisdiction.

Without limiting the foregoing, the Debtors anticipate that they, if before the Effective Date, or the Plan Trustee, if after the Effective Date, may file lawsuits against the Creditors or Persons listed on Exhibit F attached hereto for the Causes of Action described on Exhibit F. The Debtors, if before the Effective Date, and the Plan Trustee, if after the Effective Date, also retain all rights to file any action that is a core proceeding under the Bankruptcy Code against these Persons, either as part of the lawsuit prosecuting such Designated Causes of Action or in a separate lawsuit, including without limitation Claims for fraudulent conveyance under the Bankruptcy Code and common law, preference and equitable subordination.

The Plan Proponents hereby include in the Designated Causes of Action listed on Exhibit F are each of the following Causes of Action, to the extent related to the Causes of Action enumerated on this Exhibit: declaratory judgment, specific performance, turnover, setoff, recoupment, subrogation, subordination, attorneys' fees, expenses, costs and other items of damages against such Persons, and any other remedy with respect to any such Causes of Action.

The enumeration of Causes of Action on Exhibit F is without prejudice to the retention of jurisdiction under the Plan over any Cause of Action that the Debtors or the Plan Trustee, after the date of this Disclosure Statement, either discover or determine is an appropriate Cause of Action to pursue.

## 2.    Final Order

Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Plan Proponents (if prior to the Effective Date) or the Plan Trustee (if after the Effective Date) upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

## 3.    Amendments and Modifications

The Plan Proponents may modify the Plan at any time prior to the Confirmation Hearing in accordance with § 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to "substantial consummation" (as such term is defined in § 1101(2) of the Bankruptcy Code) of the Plan with respect to any Debtor, the Plan Proponents or the proposed Plan Trustee, as appropriate, may modify the Plan in accordance with § 1127(b) of the Bankruptcy Code by Filing a motion on notice to only the Persons listed on the service list established by the Bankruptcy Court pursuant to Bankruptcy Rule 2002, and the solicitation of all Creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court.

### 4.    Tax Exemption

Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the execution, delivery or recording of an instrument of transfer on or after the Confirmation Date shall be deemed to be made pursuant to and under the Plan, including, without limitation, any such acts by the Debtors, if before the Effective Date, and the Plan Trustee, if on or after the Effective Date (including, without limitation, any subsequent transfers of property by the Plan Trust or the Plan Trustee), and shall not be taxed under any law imposing a stamp tax, transfer tax or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental authority in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order and the Plan, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

### 5.    Non-Severability

Except as specifically provided in the Plan, the terms of the Plan constitute interrelated compromises and are not severable, and no provision of those Articles may be stricken, altered, or invalidated, except by amendment of the Plan by the Plan Proponents.

### 6.    Revocation

The Plan Proponents reserve the right to revoke and withdraw the Plan prior to the Confirmation Date in whole or as to any one or more of the Debtors.  Without limiting the foregoing, if the Plan Proponents withdraw the Plan as to either Debtor/REO Specialists or Debtor/HAM, then Debtor and any remaining co-Debtor, with the consent of the Creditors' Committee, may proceed to seek confirmation of the Plan as to them.  If the Plan is revoked or withdrawn for all the Debtors, the Plan shall be null and void.  If the Plan is null and void as to any or all of the Debtors, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, the Creditors' Committee, or any other Person or to prejudice in any manner the rights of the Debtors, the Creditors' Committee, or any other Person in any further proceedings involving the Debtors, or be deemed an admission by the Debtors or the Creditors' Committee, including with respect to the amount or allowability of any Claim or the value of any property of the Estates.

### 7.    Controlling Documents

a.    In the event and to the extent that any provision of the Plan or the Plan Trust Agreement is inconsistent with any provision of this Disclosure Statement, the provisions of the Plan or Plan Trust Agreement, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Plan is inconsistent with any provision of the Plan Trust Agreement, the Plan Trust Agreement shall control and take precedence.  In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Plan Trust Agreement, the provisions of the Confirmation Order shall control and take precedence.

b.      In the event and to the extent that any provision of the Plan or the FDIC Settlement Agreement is inconsistent with any provision of this Disclosure Statement, the provisions of the Plan or the FDIC Settlement Agreement, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Plan is inconsistent with any provision of the FDIC Settlement Agreement, the FDIC Settlement Agreement shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the FDIC Settlement Agreement, the provisions of the Confirmation Order shall control and take precedence.

c.      In the event and to the extent that any provision of the Plan or any REMIC Settlement Agreement is inconsistent with any provision of this Disclosure Statement, the provisions of the Plan or the REMIC Settlement Agreement, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Plan is inconsistent with any provision of the REMIC Settlement Agreement, the REMIC Settlement Agreement shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the REMIC Settlement Agreement, the provisions of the Confirmation Order shall control and take precedence.

### 8.      Governing Law

Except to the extent that a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless specifically stated, the rights, duties, and obligations arising under the Plan, any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control) and, with respect to the Debtors' corporate governance matters shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to conflicts of law principles.

### 9.      Filing of Additional Documents

On or before "substantial consummation" (as such term is defined in § 1101(2) of the Bankruptcy Code) of the Plan, the Plan Proponents may File with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate and further evidence the terms and conditions of the Plan.

### L.      Cramdown and Bankruptcy Rule 9019 Requests

The Plan Proponents request confirmation of the Plan as a Cramdown Plan with respect to any Impaired Class that does not accept the Plan or is deemed to have rejected the Plan. If confirmation in the case of REO Specialists and Home America Mortgage or both is denied, confirmation is requested with respect to TBW and any Debtor as to which confirmation is not denied.

## VII.    CERTAIN FACTORS TO BE CONSIDERED REGARDING THE PLAN

Holders of Claims against the Debtors should read and consider carefully the factors set forth below, as well as the other information set forth in this Disclosure Statement (and the

documents delivered together herewith and/or incorporated by reference), prior to voting to accept or reject the Plan. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation.

## A.   Risk Factors Regarding Bankruptcy Cases

### 1.   Allowance of Claims

This Disclosure Statement has been prepared based on preliminary information and review of filed Claims and the Debtor's books and records. Upon completion of more detailed analysis of filed Claims, the actual amount of Allowed Claims may differ from the Debtor's current estimates.

As discussed above, as of July 1, 2010, 3,257 Claims had been filed against the Debtors asserting liquidated amounts of approximately $9.1 billion in the aggregate. The Debtors believe that they have valid objections to many of the filed Claims and, thus, that the ultimate allowed amount of such Claims will be significantly less than the asserted amounts. Nevertheless, the amount of Disputed Claims in these cases is expected to be material. As a result, the ultimate amount of Allowed Claims in these cases could significantly exceed the Debtors' estimates in the development of the Plan as set forth in the Plan Summary Table.

### 2.   Objections to Classification of Claims Pursuant to § 1122 of the Bankruptcy Code

In evaluating whether the Plan meets the requirements for confirmation under § 1129 of the Bankruptcy Code, this Disclosure Statement assumes the validity of the Plan's classifications of claims and interests. If the Holder of a Claim or Interest were to object to the proposed classification of such Claim or Interest in the Plan pursuant to § 1122 of the Bankruptcy Code, and prevail in such objection, then the requirements for confirmation of the Plan may be different from what is set forth in this Disclosure Statement. This difference may or may not have a material effect on the confirmability of the Plan.

### 3.   Valuation Risk

The Plan Trustee is required under the Plan Trust Agreement to file with the Bankruptcy Court an initial valuation of all Trust Assets which assumes, among other things, values as of the Effective Date for the aggregate Assets contributed by the Debtor's Estate to the Plan Trust. In addition to the potential for error inherent in any valuation of illiquid Assets, recent developments in the United States economy as a whole, and in the banking industry in particular, make it particularly difficult to predict the values of those Assets of the Debtors that have not been sold or are unliquidated (such as Claims and Causes of Action) as of the date of this Disclosure Statement.

To the extent the value actually realized by the Plan Trustee from Assets contributed by a particular Estate is more than the value of such Assets estimated by the Plan Trustee, the Creditors of that Estate may materially affect Distributions to and tax treatment affecting such Creditors. See Section VIII of this Disclosure Statement for tax disclosure generally.

### 4.    Risk of Non-Confirmation of the Plan

Even if all Impaired Classes accept or could be deemed to have accepted the Plan, the Plan may not be confirmed by the Bankruptcy Court. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things: (a) that the Confirmation of the Plan not be followed by a need for further liquidation or reorganization; (b) that the value of distributions to dissenting Holders not be less than the value of distributions to such Holders if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code; and (c) that the Plan and the Debtors otherwise comply with the applicable provisions of the Bankruptcy Code. Although the Debtors believe that the Plan will meet all applicable tests, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 5.    Nonconsensual Confirmation

Pursuant to the "cramdown" provisions of § 1129 of the Bankruptcy Code, the Bankruptcy Court can confirm the Plan as to a given Debtor if at least one Impaired Class of Claims against the debtor has accepted the Plan (with such acceptance being determined without including the acceptance of any "insider" in such Class) and, as to each Impaired Class of Claims against or Interests in the debtor that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Impaired Class.

The Debtors reserve the right to modify the terms of the Plan as necessary for Confirmation without the acceptance of all Impaired Classes. Such modification could result in less favorable treatment for any non-accepting Classes than the treatment currently provided by the Plan.

### 6.    Delays of Confirmation and/or Effective Date

Any delay in Confirmation and effectiveness of the Plan could result in, among other things, increased Administrative Expense Claims. These or any other negative effects of delays in Confirmation or effectiveness of the Plan could endanger the ultimate approval of the Plan by the Bankruptcy Court. Moreover, unless the Plan is confirmed by January 31, 2011, the FDIC Settlement Agreement becomes null and void unless the deadline is extended by the parties thereto.

### 7.    Plan Trust Operations

The ultimate amount of Cash available to satisfy the allowed amount of all General Unsecured Claims and General Unsecured Claims (Trade Creditors) against TBW (TBW Classes 8 and 9), and General Unsecured Claims against HAM and REO Specialists (HAM Class 3 and REO Class 3), depends, in part, on the manner in which the Plan Trustee operates the Plan Trust and the expenses the Plan Trustee (and Plan Advisory Committee) incurs. By virtue of the Plan Trustee's ability, with approval of the Plan Advisory Committee), to supplement the funding of the Plan Trust Operating Expense Reserve from Plan Trust Assets after the Effective Date, the expenses of the Plan Trustee (and Plan Advisory Committee) will have de facto priority over distributions to Holders of Claims in TBW Classes 8 and 9, HAM Class 3, and REO Class 3. As

a result, if the Plan Trustee and Plan Advisory Committee incur professional or other expenses in excess of current expectations, the amount of Cash remaining to satisfy Allowed Claims in TBW Classes 8 and 9, HAM Class 3, and REO Class 3 will be less than anticipated.

The ultimate amount of Cash available for Distribution to Holders of Allowed Claims in TBW Classes 8 and 9, HAM Class 3, and REO Class 3 will also be affected by the performance and relative success of the Plan Trustee in liquidating Plan Trust Assets, including the prosecution of Causes of Action against potential defendants. The less successful the Plan Trustee is in pursuing such matters, the less Cash there will be available for Distribution to satisfy Allowed Claims. For the avoidance of doubt, the Debtor has not assumed any recovery on account of such potential Causes of Action for purposes of (i) estimating recoveries on Allowed Claims under the Liquidation Analysis or (ii) determining whether the Plan meets the Feasibility Test

### 8.    Causes of Action

In accordance with § 1123(b) of the Bankruptcy Code, even after confirmation of the Plan, the Plan Trustee will retain and may enforce any Claims, demands, rights and Causes of Action that the Estates may have against any Person, including claims for preference, fraudulent conveyance and setoff. In pursuing any such claims, the Plan Trustee will act in the best interest of the Estates. Accordingly, a Holder of a Claim may be subject to one or more such claims brought by the Plan Trustee, even if such Holder voted in favor of the Plan.

### B.    Risk Factors Relating to Securities Laws

Section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan from registration under the Securities Act and state securities laws if three principal requirements are satisfied: (i) the securities must be offered and sold under a plan and must be securities of the debtor, an affiliate participating in a joint plan with the debtor or a successor to the debtor under the Plan; (ii) the recipients of the securities must hold a prepetition or administrative expense claim against the debtor or an interest in the debtor; and (iii) the securities must be issued entirely in exchange for the recipient's claim against or interest in the debtor, or principally in such exchange and partly for cash or property. To the extent that the rights to distributions from the Plan Trust are deemed to constitute securities issued in accordance with the Plan, the Debtors believe that such interests satisfy the requirements of § 1145(a)(1) of the Bankruptcy Code and, therefore, such interests are exempt from registration under the Securities Act and applicable state securities laws.

### 1.    Non-Transferability

Holders of General Unsecured Claims and General Unsecured Claims (Trade Creditors) against TBW (TBW Classes 8 and 9), and Holders of General Unsecured Claims against HAM and REO Specialists (HAM Class 3 and REO Class 3) also should be aware that their rights to any Distribution from the Plan Trust are not transferable. Similarly, to the extent there is any Distribution on Subordinated Claims, the rights to such Distribution from the Plan Trust are not transferable. Therefore, there will not be any trading market for such rights, nor will those the

rights be listed on any public exchange or other market. The lack of liquidity of the rights to distributions from the Plan Trust may have a negative impact on their value.

### 2.   Uncertainty of Value

In addition to the prohibition on the transfer of rights to distributions from the Plan Trust as discussed above, the value of such rights will depend on the various risks and uncertainties outlined above. The realizable value of Plan Trust Assets will vary depending upon the extent to which these risks materialize. In addition, the resolution of Causes of Action held by the Plan Trust and the reconciliation of Claims against the Debtors' Estates may require a substantial amount of time, during which time interest will not accrue on Allowed Claims in TBW Classes 8 and 9, HAM Class 3, and REO Class 3. These delays could reduce the ultimate value of any recovery.

## VIII.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

**U.S. Treasury Circular 230 Disclosure: To ensure compliance with U.S. Treasury Circular 230, each Holder of a Claim or an Interest is hereby notified that (a) any discussion of U.S. federal tax issues in this Disclosure Statement is not intended or written to be relied upon, and cannot be relied upon, by any Holder of a Claim or an Interest for the purpose of avoiding penalties that may be imposed on a Holder of a Claim or an Interest under Title 26 of the United States Code (referred to as the IRC); (b) such discussion is written in connection with the solicitation of votes accepting the Plan; and (c) a Holder of a Claim or an Interest should seek advice based upon its particular circumstances from an independent tax advisor.**

### A.   General

A description of certain U.S. federal income tax consequences of the Plan is provided below. The description is based on the IRC, the Treasury Regulations, judicial decisions and administrative determinations, all as in effect on the date of this Disclosure Statement. Changes in any of these authorities or in their interpretation may have retroactive effect, which may cause the U.S. federal income tax consequences of the Plan to differ materially from the consequences described below. No ruling has been requested from the Internal Revenue Service (referred to as the IRS) and no legal opinion has been requested from counsel concerning any tax consequence of the Plan, and no tax opinion is given by this Disclosure Statement.

This description does not cover all aspects of U.S. federal income taxation that may be relevant to the Debtors or Holders of Claims. For example, the description does not address issues of special concern to certain types of taxpayers, such as dealers in securities, life insurance companies, financial institutions, tax exempt organizations, Governmental Authorities and foreign taxpayers, nor does it address tax consequences to Holders of Interests in the Debtors. This description does not discuss the possible state tax, non-U.S. tax or non-income tax consequences that might apply to the Debtors or to Holders of Claims.

For these reasons, the description that follows is not a substitute for careful tax planning and professional tax advice based upon the individual circumstances of each Holder of a Claim. Holders of Claims are urged to consult with their own tax advisors regarding the federal, state, local and foreign tax consequences of the Plan.

### B.    Tax Consequences of Payment of Allowed Claims Pursuant to Plan Generally

The federal income tax consequences of the implementation of the Plan to the Holders of Allowed Claims will depend on, among other things, the consideration to be received by the Holder, whether the Holder reports income on the accrual or cash method, whether the Holder receives Distributions under the Plan in more than one taxable year, whether the Holder's Claim is Allowed or Disputed on the Effective Date and whether the Holder has taken a bad debt deduction or a worthless security deduction with respect to its Claim.

### 1.    Recognition of Gain or Loss

#### a.    In General

In general, a Holder of an Allowed Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the Holder's tax basis in the Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Allowed Claim and the Holder, the length of time the Holder held the Claim and whether the Claim was acquired at a market discount. If the Holder realizes a capital loss, the Holder's deduction of the loss may be subject to limitation. The Holder's tax basis for any property received under the Plan generally will equal the amount realized. The Holder's amount realized generally will equal the sum of the Cash and the fair market value of any other property received by the Holder under the Plan on the Effective Date or a subsequent distribution date, less the amount (if any) treated as interest, as discussed below.

#### b.    Post-Effective Date Cash Distributions

Because certain Holders of Allowed Claims, including Disputed Claims that ultimately become Allowed Claims, may receive Distributions after the Effective Date, the imputed interest provisions of the IRC may apply and cause a portion of the subsequent Distributions to be treated as interest. Additionally, because Holders may receive Distributions with respect to an Allowed Claim in a taxable year or years following the year of the initial Distribution, any loss and a portion of any gain realized by the Holder may be deferred. All Holders of Allowed Claims are urged to consult their tax advisors regarding the possible application of (or ability to elect out of) the "installment method" of reporting with respect to their Claims.

#### c.    Receipt of Interest

Holders of Allowed Claims will recognize ordinary income to the extent that they receive Cash or property, including beneficial interests in the Plan Trust, that is allocable to accrued but unpaid interest that the Holder has not yet included in its income. If an Allowed Claim includes

interest, and if the Holder receives less than the amount of the Allowed Claim pursuant to the Plan, the Holder must allocate the Plan consideration between principal and interest. The Plan provides that, to the extent applicable, all Distributions to a Holder of an Allowed Claim will apply first to the principal amount of such Claim until such principal amount is paid in full and then to any interest accrued on such Claim prior to the Petition Date, and the remaining portion of such Distributions, if any, will apply to any interest accrued on such Claim after the Petition Date. There is no assurance, however, that the IRS will respect this treatment and will not determine that all or a portion of amounts distributed to such Holder and attributable to principal under the Plan is properly allocable to interest. Holders of Allowed Claims are strongly urged to consult their own tax advisors in this regard. If the Plan consideration allocable to interest with respect to an Allowed Claim is less than the amount that the Holder has previously included as interest income, the previously included but unpaid interest may be deducted, generally as a loss.

d.      Bad Debt and/or Worthless Securities Deduction

A Holder who, under the Plan, receives in respect of a Claim an amount less than the Holder's tax basis in the claim may be entitled in the year of receipt (or in an earlier or later year) to a bad debt deduction in some amount under § 166(a) of the Internal Revenue Code or a worthless securities deduction under § 165(g) of the Internal Revenue Code. The rules governing the character, timing and amount of bad debt or worthless securities deductions place considerable emphasis on the facts and circumstances of the Holder, the obligor and the instrument with respect to which a deduction is claimed. Holders of Claims, therefore, are urged to consult their tax advisors with respect to their ability to take such a deduction.

## C.      Treatment of the Plan Trust and its Beneficial Owners

The Plan Trust is intended to be treated for U.S. federal income tax purposes (1) in part as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations and (2) in part as one or more Disputed Claims or other reserves taxed either as discrete trusts pursuant to section 641, *et seq.*, of the IRC or as disputed ownership funds pursuant to section 1.468B-9(b)(1) of the Treasury Regulations, as determined by the Plan Trustee in the manner specified in the Plan Trust Agreement. The remainder of this tax discussion assumes that this treatment is correct. If the IRS succeeds in requiring a different characterization of the Plan Trust, the Plan Trust could be subject to tax on all of its net income and gains, with the result that the amounts received by holders of Allowed Claims could be reduced.

### 1.      Plan Trust

Except as discussed in subsection 2 below (titled Disputed Claims and Other Reserves), the Plan Trust will not be treated as a separate entity for U.S. federal income tax purposes. Instead, the Holders of "beneficial interests" in the Plan Trust will be treated as owning their respective pro rata shares of the applicable Plan Trust Assets, subject to any liabilities of the Debtors assumed by the Plan Trust and any liabilities of the Plan Trust itself. Holders of "beneficial interests" in the Plan Trust will include all Holders of Allowed Claims that are entitled to receive Distribution from the Plan Trust pursuant to the Plan.

For U.S. federal income tax purposes, the transfer of the Plan Trust Assets (to the extent not distributed to holders of Allowed Claims as of the Effective Date) to the Plan Trust will be treated as a transfer of the Plan Trust Assets from the Debtors to the Holders of Allowed Claims, subject to any liabilities of the Debtors or the Plan Trust payable from the proceeds of such assets, followed by such Holders' transfer of such assets (subject to such liabilities) to the Plan Trust in exchange for their respective beneficial interests in the Plan Trust. Thus, each Holder of an Allowed Claim on the Effective Date should be treated as transferring its Claim to the Debtors in exchange for the Holder's *pro rata* share of the applicable Plan Trust Assets (subject to any liabilities of the Plan Trust) followed by the Holder's transfer of such assets (subject to applicable liabilities) to the Plan Trust. The "applicable Plan Trust Assets" are the Plan Trust Assets (or the proceeds thereof) from which a Holder of an Allowed Claim is entitled to a Distribution under the Plan. The Holder should recognize gain or loss equal to the difference between the fair market value of the applicable Plan Trust Assets (subject to any applicable liabilities) and the Holder's adjusted basis in its Allowed Claim. The tax basis of the applicable Plan Trust Assets deemed received in the exchange will equal the amount realized by the Holder and the holding period for such assets will begin on the day following the exchange. For the avoidance of doubt, if the Plan Trustee elects to treat any Disputed Claims reserve as a disputed ownership fund for U.S. federal income tax purposes, as described below, then the Holders of Allowed Claims are not intended to be treated for federal income tax purposes as receiving Plan Trust Assets that are contributed to any Disputed Claims reserve until such time as such Disputed Claims reserve makes distributions, in which case (and at which time) the Holders of Allowed Claims are intended to be treated as receiving the distributions actually received from the Disputed Claims reserve, if any.

Each Holder of an Allowed Claim will be required to include its annual taxable income, and pay Tax to the extent due on, its allocable share of each item of income, gain, loss, deduction or credit recognized by the Plan Trust (including interest or dividend income earned on bank accounts and other investments) and the Plan Trustee will allocate such items to the Holders using a reasonable allocation method. If the Plan Trust sells or otherwise disposes of a Plan Trust Asset in a transaction in which gain or loss is recognized, each Holder of an Allowed Claim that is entitled to a Distribution from such Plan Trust Asset (or the proceeds thereof) will be required to include in income gain or loss equal to the difference between (a) the Holder's *pro rata* share of the Cash or property received in exchange for the applicable Plan Trust Asset sold or otherwise disposed of and (b) the Holder's adjusted basis in the Holder's *pro rata* share of the applicable Plan Trust Asset. The character and amount of any gain or loss will be determined by reference to the character of the asset sold or otherwise disposed of. Each Holder of an Allowed Claim will be required to report any income or gain recognized on the sale or other disposition of an applicable Plan Trust Asset whether or not the Plan Trust distributes the sale proceeds currently and may, as a result, incur a tax liability before the holder receives a Distribution from the Plan Trust.

Notwithstanding the foregoing, Distributions made as of the Effective Date to Holders of Allowed Claims are intended to be treated for U.S. federal income tax purposes as directly from the Debtors to the Holders of such Allowed Claims, and such Holders shall include in their taxable incomes any interest earned on such Distributions from the Effective Date to the date on which the actual Distribution is made.

## 2.    Disputed Claims and Other Reserves

Any reserves for Disputed Claims or the other similar reserves that may be established by the Plan Trustee may be treated as one or more reserves taxed either as discrete trusts pursuant to section 641, *et seq*., of the IRC or as disputed ownership funds pursuant to section 1.468B-9(b)(1) of the Treasury Regulations, as determined by the Plan Trustee in the manner specified in the Plan Trust Agreement. If treated as discrete trusts, income and gain recognized with respect to the Plan Trust Assets in any Disputed Claims reserve will be subject to an entity-level tax to the extent the income or gain is not distributed to Holders of Allowed Claims within the same taxable year. If treated as disputed ownership funds, income and gain recognized with respect to any Plan Trust Assets in any Disputed Claims reserve will be subject to an entity-level tax regardless of whether income or gain is distributed to Holders of Allowed Claims within the same taxable year.

## D.    Information Reporting and Withholding

Under the IRC's backup withholding rules, the Holder of an Allowed Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan unless the Holder comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact, or provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax. Holders of Allowed Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

## E.    Importance of Obtaining Professional Tax Assistance

**The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a Holder's individual circumstances. Accordingly, Holders are urged to consult with their tax advisors about the U.S. federal, state, local and foreign income and other tax consequences of the Plan.**

## IX.    ALTERNATIVES TO CONFIRMATION OF THE PLAN

The Debtors believe that the Plan provides a recovery to creditors that is greater than or equal to the probable recoveries by creditors if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. If the Plan is not confirmed because the requisite Classes did not vote to accept the Plan, then the Debtors will likely file a motion to convert these Chapter 11 Cases to cases under Chapter 7, in which event the Debtors believe that Creditor recoveries will be substantially diminished.

X.    **ACCEPTANCE AND CONFIRMATION OF THE PLAN; VOTING REQUIREMENTS**

The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must make a series of findings concerning the Plan and the Debtors, including that (i) the Plan has classified Claims in a permissible mariner; (ii) the Plan complies with applicable provisions of the Bankruptcy Code; (iii) the Debtor has complied with applicable provisions of the Bankruptcy Code; (iv) the Debtor has proposed the Plan in good faith and not by any means forbidden by law; (v) the disclosure required by § 1125 of the Bankruptcy Code has been made; (vi) the Plan has been accepted by the requisite votes of Creditors or Interest Holders in each class (except to the extent that cramdown is available under § 1129(b) of the Bankruptcy Code); (vii) the Plan is feasible and confirmation is not likely to be followed by further financial restructuring of the Debtors; (viii) the Plan is in the "best interests" of all Holders of Claims or Interests in an Impaired class (see "Best Interests Test" below); and (ix) all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation, have been paid or the Plan provides for the payment of such fees on the Effective Date. The Debtors believe that the Plan satisfies all the requirements for confirmation.

A.    **Best Interests Test**

Each Holder of a Claim or Interest in an Impaired class must either (i) accept the Plan or (ii) receive or retain under the Plan Cash or property of a value, as of the Effective Date of the Plan, that is not less than the value such Holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. The Bankruptcy Court will determine whether the Cash and property issued under the Plan to each Class equals or exceeds the value that would be allocated to the Holders in a liquidation under Chapter 7 of the Bankruptcy Code (the "Best Interests Test"). The Debtors believe that the Holders of Claims against and Interests in the Debtors will have an equal or greater recovery as a result of the liquidation of the Debtor's Assets by the Plan Trust as discussed herein and than could be realized in a Chapter 7 liquidation.

The Debtors are liquidating and therefore are not seeking to require Creditors to accept non-Cash consideration so that the Estates could pursue going concern value. Accordingly, the only question is whether the Creditors will have recovered more (or at least as much) under the Plan than they would recover through an asset liquidation by a Chapter 7 trustee.

To determine the value that a Holder of a Claim or Interest in an Impaired Class would receive if the Debtors were liquidated under Chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtor's Assets if the Debtor's Chapter 11 Cases had been converted to a Chapter 7 liquidation case and the Debtor's Assets were liquidated by a Chapter 7 trustee (the "Liquidation Value"). The Liquidation Value would consist of the Net Proceeds from distribution of the Debtor's Assets, augmented by Cash held by the Debtors and reduced by certain increased costs and Claims that arise in a Chapter 7 liquidation case that do not arise in a Chapter 11 case.

As explained below, the Liquidation Value available for satisfaction of Claims and Interests in the Debtors would be reduced by: (a) the costs, fees and expenses of the liquidation under Chapter 7, which would include disposition expenses and the compensation of one or more trustees and their counsel and other retained professionals, (b) the fees of the Chapter 7 trustee(s) and (c) certain other costs arising from conversion of these Chapter 11 Cases to Chapter 7. A hypothetical Liquidation Analysis prepared by the Debtors is attached to this Disclosure Statement as Exhibit C.

As is evident from the Liquidation Analysis, the Debtors believe that Creditors have and will continue to clearly benefit from the liquidation under Chapter 11 of the Bankruptcy Code. Had the Assets been liquidated by a Chapter 7 trustee, the Debtors project that the maximum recovery would have been substantially less. The Debtors have realized a greater return than a Chapter 7 trustee would have obtained on the sale of their Assets, specifically due to the Debtors' familiarity with its Assets and the Debtors' ability to negotiate the highest and best price for the sales of its Assets. Further, recoveries have been increased due to the global settlement the Debtors reached with the FDIC. The Debtors have already entered into settlements and engaged in Assets sales through auction or private sales approved by the Bankruptcy Court to reduce their Assets to Cash. Therefore, the Debtors have already established systems and protocols for the efficient disposition of the Assets of the Estates and are in the process of liquidating their limited remaining Assets.

In addition, converting these Chapter 11 Cases to a Chapter 7 liquidation at this stage of the wind-down would result in an immense waste of the Debtors' resources that were already expended in connection with the sale of the Debtors' Assets and would delay converting the remaining Assets to Cash. It would also result in substantial additional claims against the Estates.

It is also anticipated that a Chapter 7 liquidation -would result in a significant delay in payments being made to Creditors. Bankruptcy Rule 3002(c) provides that conversion of Chapter 11 cases to Chapter 7 will trigger a new bar date for filing claims against the Estates, and that the new bar date will be more than 90 days after these Chapter 11 Cases convert. Not only would a Chapter 7 liquidation delay distribution to Creditors, but it is possible that additional Claims that were not asserted in these Chapter 11 Cases, or were late-filed, could be filed against the Estates. The Debtor has received and are analyzing late-filed Claims and may file additional claims objections in the near future. Reopening the Bar Dates in connection with conversion to Chapter 7 would provide these and other claimants an additional opportunity to timely file Claims against the Estates.

For the reasons set forth above, the Debtors believe that the Plan provides a superior recovery for the Holders of Claims, and the Plan meets the requirements of the Best Interests Test.

## B.    Financial Feasibility Test

In order to confirm a plan, the Bankruptcy Code requires the Bankruptcy Court to find that confirmation of the Plan is not likely to be followed by liquidation or the need for further

financial reorganization of the Debtors (the "Feasibility Test"). Thus, for a plan to meet the Feasibility Test, the Bankruptcy Court must find that there is a reasonable likelihood that the Debtors will possess the working capital and other resources necessary to meet its obligations under the Plan. Because a form of liquidation is proposed in the Plan and no further financial reorganization of the Debtors will be possible, the Debtors believe that the Plan meets the feasibility requirement.

### C.    Acceptance by Impaired Classes

Section 1129(a) of the Bankruptcy Code requires that each class of claims or interests that is impaired under a plan accept the Plan (subject to the "cramdown" exception contained in § 1129(b) of the Bankruptcy Code. Under § 1129(b) of the Bankruptcy Code, if at least one but not all impaired classes do not accept the Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting classes are treated in the mariner required by the Bankruptcy Code. The process by which non-accepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if (i) the Plan meets all confirmation requirements except the requirement of § 1129(a)(8) of the Bankruptcy Code that the Plan be accepted by each class of claims or interests that is impaired and (ii) the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan, as referred to in § 1129(b) of the Bankruptcy Code and applicable case law.

A class of claims under a plan "accepts" the Plan if the Plan is accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims in the class that actually vote on the Plan. A class of interests accepts the Plan if the Plan is accepted by Holders of Interests that hold at least two-thirds in amount of the allowed interests in the class that actually vote on a plan.

A class that is not "impaired" under a plan is conclusively presumed to have accepted the Plan. Solicitation of acceptances from such a class is not required. A class is "impaired" unless (i) the legal, equitable and contractual rights to which a claim or interest in the class entitles the Holder are not modified or (ii) the effect of any default is cured and the original terms of the obligation are reinstated. Under the Plan, TBW Class 1, HAM Class 1, and REO Class 1 are not Impaired and are deemed to accept the Plan. TBW Classes 10 and 11, HAM Classes 4 and 5, and REO Classes 4 and 5 are not entitled to receive or retain any property under the Plan on account of Claims or Interests and are conclusively presumed to have rejected the Plan. All other Classes of Claims under the Plan are Impaired under the Plan and Holders of Allowed Claims in such Classes are entitled to vote to accept or reject the Plan.

The Plan provides fair and equitable treatment of impaired Claims, as either (a) each impaired unsecured creditor receives or retains under the Plan property of a value equal to the amount of its allowed Claim or (b) the Holders of Claims and Interests that are junior to such Class of impaired claims will not receive or retain any property under the Plan, subject to the applicability of the judicial "new value" doctrine. Pursuant to the Plan, no Holders of any Claim or Interest junior to the Holders of such impaired Classes will receive or retain any property on account of such junior Claims.

As noted above, Holders of Claims and Interests in Claims and Interests in Classes TBW Classes 10 and 11, HAM Classes 4 and 5, and REO Classes 4 and 5 are receiving no property under the Plan and are therefore deemed to reject the Plan. However, the Plan provides fair and equitable treatment to these Holders because there are no Classes junior to these Classes and no Class senior to these Classes is being paid more than in full on its Allowed Claims.

If any Impaired Class fails to accept the Plan, the Debtors intend to request that he Bankruptcy Code confirm the Plan pursuant to § 1129(b) of the Bankruptcy Code with respect to those Classes.

### D.    Voting Procedures

#### 1.    Ballots

If voting for or against the Plan, please use only the Ballot or Ballots sent to you with this Disclosure Statement. Votes cast to accept or reject the Plan will be counted by Class. Please read the voting instructions on the reverse side of the Ballot for a thorough explanation of voting procedures.

**If you believe that you are a holder of a claim in a voting class for which you do not receive a Ballot, if your Ballot is damaged or lost, or if you have questions concerning voting procedures, please contact the BMC Group by telephone at (888) 909-0100 between the hours of 9:00 am. and 6:00 p.m. (eastern time), Monday through Friday or via email at info@bmcgroup.com. However, the BMC Group cannot provide you with legal advice.**

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan. If you hold Claims or Interests in more than one Class and you are entitled to vote Claims or Interests in more than one Class, you will receive separate Ballots that must be used to vote in each separate Class.

Unless otherwise directed in your solicitation package, mail your completed Ballot(s) to:

| If by regular mail: | Messenger or overnight delivery: |
|---|---|
| TBW Mortgage Ballot Processing | TBW Mortgage Ballot Processing |
| c/o BMC Group Inc. | c/o BMC Group Inc. |
| PO BOX 3020 | 18750 Lake Drive East |
| Chanhassen, MN  55317-3020 | Chanhassen, MN  55317 |

**Do not return Ballots to the bankruptcy court.** A Ballot that does not indicate an acceptance or rejection of the Plan will not be counted either as a vote to accept or a vote to reject the Plan.  If you cast more than one Ballot voting the same Claim before 4:00 p.m. (Eastern Time) on the voting deadline, the last Ballot received before the voting deadline will be deemed to reflect your intent and thus will supersede any prior Ballots. Additionally, you may not split your votes for your Claims within a particular Class under the Plan either to accept or reject the Plan.  Therefore, a Ballot or a group of Ballots within a Plan Class received from a single creditor that partially rejects and partially accepts the Plan will not be counted.

Unless the Bankruptcy Court permits you to do so after notice and hearing to determine whether sufficient cause exists to permit the change, you may not change your vote after the voting deadline passes. **Do not return any stock certificates, debt instruments or other securities with your Ballot. Facsimile, email or electronically transmitted Ballots will not be accepted.**

**Please put your taxpayer identification number on your Ballot; the disbursing agent may not be able to make distributions to you without it.**

2.       **Deadline for Voting**

**The deadline for casting Ballots either accepting or rejecting the Plan is provided in the Plan Notice.**

3.       **Importance of Your Vote**

Your vote is important. The Bankruptcy Code defines acceptance by a Class of Claims as acceptance by Holders of at least two-thirds in amount and a majority in number of Allowed Claims in that Class that vote. **Only those Creditors who actually vote are counted for purposes of determining whether a Class has voted to accept the Plan. Your failure to vote will leave to others the decision to accept or reject the Plan.**

XI.      **RECOMMENDATION AND CONCLUSION**

**The Debtors believe that confirmation and consummation of the Plan is in the best interests of Creditors and that the Plan should be confirmed. The Debtors strongly recommend that all Creditors receiving a Ballot vote in favor of the Plan.**

[Signatures on following page]

Dated: November __2010

Respectfully submitted,

TAYLOR BEAN AND WHITAKER MORTGAGE CORP.
HOME AMERICA MORTGAGE, INC.
REO SPECIALISTS, LLC

By: /s/ Neil F. Luria _____
    Neil F. Luria
    Chief Restructuring Officer

/s/ Jeffrey W. Kelley
Jeffrey W. Kelley (GA Bar No. 412296)
jeff.kelley@troutmansanders.com
J. David Dantzler, Jr. (GA Bar No. 205125)
david.dantzler@troutmansanders.com
**TROUTMAN SANDERS LLP**
600 Peachtree Street, Suite 5200
Atlanta, Georgia 30308
Telephone No:404-885-3358
Facsimile No.:404-885-3995
**SPECIAL COUNSEL FOR THE DEBTOR AND DEBTOR IN
POSSESSION TAYLOR, BEAN & WHITAKER MORTGAGE CORP.**


Russell M. Blain (FBN 236314)
rblain@srbp.com
Edward J. Peterson, III (FBN 014612)
epeterson@srbp.com
**STICHTER, RIEDEL, BLAIN & PROSSER, P.A.**
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone No.:        813-229-0144
Facsimile No.:813-229-1811
**COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**