# EXHIBIT A

(Settlement Agreement)

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is dated as of June 22, 2011 and entered into pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). This Agreement is made by and among Natixis Real Estate Holdings LLC (successor-by-merger to Natixis Real Estate Capital, Inc.) ("**Natixis**"), Taylor Bean & Whitaker Mortgage Corp. as Chapter 11 Debtor and Debtor in Possession ("**TBW**" or "**Debtor**"), and the Official Committee of Unsecured Creditors of the Debtor (the "**Committee**") (all parties referenced above, collectively, the "**Settling Parties**").

## RECITALS

A. **WHEREAS,** on August 24, 2009 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, (the "**Bankruptcy Court**") (the "**Chapter 11 Case**").

B. **WHEREAS,** prior to the Petition Date, Natixis was a lender to the Debtor pursuant to that certain Second Amended and Restated Loan and Security Agreement between Natixis and the Debtor dated as of November 28, 2008 (the "**Natixis Loan Agreement**").

C. **WHEREAS,** on April 2, 2010, Natixis filed Claim No. 1360 in the Chapter 11 Case as a secured creditor in the amount of $46,485,801.85 (the **Natixis Claim**").

D. **WHEREAS,** on November 12, 2010, Debtor and its co-debtors filed the Second Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated November 12, 2010 (as same has been or may be further amended or restated, the "**Plan**") providing for the appointment of a Plan Trustee (the "**Plan Trustee**") to administer the Debtor's assets post-confirmation in a Liquidating Trust (the "**Liquidating Trust**") to be created upon confirmation of the Plan.

E. **WHEREAS,** the Debtor and the Committee contemplate entering into a settlement agreement with the Federal Home Loan Mortgage Corporation ("**Freddie Mac**"), which settlement agreement will be conditioned upon approval by the Bankruptcy Court (the "**Freddie Mac Settlement Agreement**").

F. **WHEREAS,** if approved, the settlement with Freddie Mac will, among other things, result in funds paid or made available to the Debtor by Freddie Mac ("**Freddie Mac Settlement Proceeds**").

G. **WHEREAS**, there is a dispute between the Debtor and the Committee on the one hand and Natixis on the other as to the nature and extent of Natixis interest in the Freddie Mac Settlement Proceeds and in certain force placed insurance and tax refunds.

H. **WHEREAS** the Settling Parties have concluded that because of, among other things, the complexity, inherent delay and substantial expense of litigating the issues associated with Natixis' rights, if any, to the Freddie Mac Settlement Proceeds and the insurance and tax

refunds, the length of time necessary to resolve each of the issues, the complexity and uncertainty involved and the concomitant disruption to the Debtor's effort to generate distributions for the benefit of the Debtor's creditors, it is in their respective best interests to resolve their disputes and related matters on the terms set forth in this Agreement. The Debtor further believes that the compromise and settlement provided herein is fair and reasonable, and in the best interests of the Debtor, the Debtor's estate and its creditors.

**NOW, THEREFORE**, the Settling Parties, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows, subject to Bankruptcy Court approval:

## ARTICLE I
## SETTLEMENT TERMS

Section 1.1. **Allocation of Freddie Mac Proceeds.** Within two (2) business days following receipt by the Plan Trustee of the Freddie Mac Settlement Proceeds (the "**Natixis Distribution Date**"), the Plan Trustee shall pay to Natixis the sum of $34,300,000 (the "**Natixis Allocation**") in partial satisfaction of Natixis' TBW Class 5 Claim under the Plan. Natixis however agrees that, instead of direct payment to Natixis, a portion of the Natixis Allocation shall be paid by the Plan Trustee as set forth in Section 1.3 below.

Section 1.2. **Settlement of Natixis Refunds**. On the Natixis Distribution Date, the Plan Trustee shall also pay to Natixis in further, partial satisfaction of Natixis' TBW Class 5 Claim under the Plan the sum of $3,000,000.00 in settlement of Natixis' rights, if any, to force placed insurance premiums and tax refunds received by the Debtor (the "**Natixis Refunds**").

Section 1.3. **Trade Creditor Participation.** Natixis agrees that the Plan Trustee shall pay over and release to the Liquidating Trust for the exclusive benefit of holders of allowed TBW Class 9 claims under the Plan ("**Trade Creditors**") 15% of the Natixis Allocation ($5,145,000) (the "**Trade Creditor Participation**"). Natixis stipulates and agrees that (i) it is not a Trade Creditor and is not entitled to any distribution as a TBW Class 9 claimant and (ii) the Plan Trustee is authorized, as disbursing agent, to distribute the Trade Creditor Participation to Trade Creditors.

Section 1.4. **Consent to Sale of MSRs**. Natixis consents to the terms of sale of the mortgage servicing rights related to the Freddie Mac loan portfolio formerly serviced by TBW (the "**MSRs**") set forth on **Exhibit A** annexed hereto and made a part hereof. The Settling Parties stipulate and agree that Natixis' share of any Participation (as that term is defined on Exhibit A) shall be 68.6 % (the "**Natixis MSR Participation**").

Section 1.5. **Complete Resolution of Natixis' TBW Class 5 Secured Claim Under the Plan**. Natixis stipulates and agrees that the Natixis Allocation, the Natixis Refunds and the Natixis MSR Participation, if any, shall constitute the entire distribution to which Natixis is entitled under the Plan as a TBW Class 5 secured creditor and that the allowed amount of the Natixis Claim, if any, that is not satisfied as a result of the forgoing distributions shall be treated and administered by the Plan Trustee as an allowed TBW Class 8 general unsecured claim.

Subject to Section 4.3 of this Agreement, the Settling Parties agree that Natixis has valid and perfected liens in the Natixis Allocation, the Natixis Refunds and the Natixis MSR Participation, if any, and that such liens are not subject to avoidance under the Bankruptcy Code or other applicable law.

Section 1.6. **Release of Freddie Mac with Respect to MSRs**. Natixis agrees to enter into a mutual release with Freddie Mac on or prior to the Effective Date in the form set forth on Exhibit B hereto.

Section 1.7. **Conflict Waiver**. Natixis is aware that the Brokers identified in Exhibit A have acted as advisors to other interested parties in the Bankruptcy Case. More specifically:

(a) Natixis acknowledges Navigant Capital Advisors, LLC ("**Navigant**") or its employees and representatives have acted and/or will, in the future, act as: (i) management of the Debtor and its subsidiaries, some, but not all of which, are debtors in possession in the Bankruptcy Case; (ii) Plan Trustee of the Liquidating Trust provided for in the Plan, (iii) support for the roles set forth in (i) and (ii) of this subparagraph, and (iv) a resource for the Committee with respect to financial analysis and other matters in lieu of the Committee's retention of its own financial advisor; and,

(b) Milestone Advisors, LLC ("**Milestone**") has acted and will continue to act as financial advisor to Sovereign in the Bankruptcy Case.

Natixis consents to Navigant and Milestone acting and continuing to act in the capacities described in this Section 1.7 and hereby waives any currently existing or future conflict of interest that may result from Navigant and Milestone acting as Brokers in the MSR sale transaction described in Exhibit A. With respect to Navigant specifically, Natixis acknowledges and agrees that Navigant's role as Broker will be for the benefit, and on behalf of, the Debtor due to Debtor's interest in the MSR sales proceeds.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

Section 2.1. **Representations and Warranties of the Debtor**. The Debtor hereby represents and warrants that: (a) it is duly organized and validly existing under the laws of the jurisdiction of its organization with all requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (b) subject to any necessary approval by the Bankruptcy Court, it has full requisite power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith, (i) have been duly and validly authorized by it and (ii) are not in contravention of its organization documents or any material agreement specifically applicable to it or to which it is a party; (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder; and (d) it, directly or indirectly, and subject to approval by the Bankruptcy Court, has the power and authority to bind itself to the terms of this Agreement or otherwise has been duly

authorized to execute and deliver this Agreement on its behalf.

Section 2.2. **Representations and Warranties of Natixis.** Natixis hereby represents and warrants that: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any agreements specifically applicable to it; (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder; and (d) it directly or indirectly, has the power and authority to bind itself to the terms of this Agreement or otherwise has been duly authorized to execute and deliver this Agreement on its behalf.

Section 2.3. **Representations and Warranties of the Committee**. The Committee hereby represents and warrants that: (a) it is duly organized and validly existing under the provisions of the Bankruptcy Code; (b) subject to the approval of the Bankruptcy Court, it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its bylaws or any material agreement specifically applicable to it; (c) no proceeding, litigation or adversary proceeding before any court, distributor or administrative or governmental body is pending against it which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder; and (d) subject to the approval of the Bankruptcy Court, it has the power and authority to bind the Committee to the terms of this Agreement or otherwise has been duly authorized by the Committee to execute and deliver this Agreement on its behalf.

Section 2.4. **Representations of the Settling Parties**. Each Settling Party represents and acknowledges that: (a) in executing this Agreement, it does not rely, and has not relied, upon any representation of statement made by any other party or any of such other party's representative, agents or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as may be stated specifically in this Agreement, (b) in executing this Agreement, it has relied entirely upon its own judgment, beliefs and interest and upon the advice of its counsel and that it has had a reasonable period of time to consider the terms of this Agreement before entering into it, and (c) it has reviewed this Agreement and that it fully understands and voluntarily accepts all of the provisions contained herein. Each Settling Party further represents, acknowledges and agrees that this Agreement was the product of negotiations among the Parties and that any rule of construction as to ambiguities being resolved against the drafting party shall not apply in the interpretation of this Agreement.

# ARTICLE III
# COVENANTS

Section 3.1. **Covenants of the Debtor.** The Debtor hereby covenants and agrees that it shall take all actions reasonably necessary to obtain, approval of this Agreement by the Bankruptcy Court. In furtherance of the preceding, the Debtor agrees that within ten (10) days of the execution and delivery of this Agreement by the Settling Parties it shall file a motion (the "**9019 Motion**") seeking an order from the Bankruptcy Court (the "**Approval Order**") approving the terms and provisions hereof and the Debtor's entry into and carrying out of this Agreement.

Section 3.2. **Covenants of Natixis**. Natixis hereby covenants and agrees that, provided the Bankruptcy Court rules that it will enter the Approval Order, it will not oppose the (A) Bankruptcy Court's approval of the Freddie Mac Settlement Agreement and (B) confirmation of the Plan (and its consummation, implementation and administration) provided, however, that if the Plan is modified or amended after the date hereof in any way which materially adversely affects Natixis, Natixis shall have the right to object to such modification or amendment.

# ARTICLE IV
# EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

Section 4.1. **Effective Date.** This Agreement shall become effective on the first date on which each of the following has occurred ("**Effective Date**"):

(a) **Execution.** This Agreement has been fully executed;

(b) **Bankruptcy Court Approval**. This Agreement and the Freddie Mac Settlement Agreement have been approved by orders of the Bankruptcy Court which have become final orders not subject to appeal;

(c) **Occurrence of Plan Effective Date**. The "Effective Date" as defined in Article 12 of the Plan has occurred; and

(d) **Receipt of Freddie Mac Settlement Proceeds**. The Debtor has received the Freddie Mac Settlement Proceeds.

Section 4.2. **Termination Date.** If the Effective Date does not occur on or before August 31, 2011, unless such date is extended by a writing signed by all Settling Parties (the "Termination Date"), then this Agreement shall become null and void, subject to and in accordance with Section 4.3 below, and the Settling Parties shall be returned to the status *quo ante* as if this Agreement had never been executed.

Section 4.3. **Effect of Termination.** Unless otherwise ordered by the Bankruptcy Court, in the event that this Agreement shall not become effective on or prior to the Termination Date or this Agreement should terminate, or be cancelled, or otherwise fail to become effective for any reason, including, without limitation, in the event that the Freddie Mac Settlement Agreement or the settlement as described herein is not approved by the Bankruptcy Court or the

Confirmation Order is reversed or vacated following any appeal taken therefrom, then:

(a) the Settling Parties shall be restored to their respective positions as of the date of this Agreement with all of their respective claims and defenses, preserved as they existed on that date, provided, however, that notwithstanding the foregoing, in the event that this Agreement does not become effective on or prior to the Termination Date, Natixis shall be deemed, by virtue of approval of this Agreement by the Bankruptcy Court, to have a valid and perfected lien in the collateral pledged to Natixis in the Natixis Loan Agreement, which lien shall not be subject to avoidance under the Bankruptcy Code or other applicable law. Except as provided in the preceding sentence, the Settling Parties shall take such steps and file such documents as are necessary to cause such claims and defenses to be restored;

(b) except for the provisions of this Section 4.3, the terms and provisions of this Agreement shall be null and void and shall have no further force or effect with respect to the Settling Parties, and neither the existence nor the terms of this Agreement (nor any negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used in any action or proceeding for any purpose; and

(c) any judgment or order entered by the Bankruptcy Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

## ARTICLE V
## NO ADMISSIONS

Section 5.1. **No Admissions.** The Settling Parties intend this Agreement and the settlement described herein to be in resolution of disputed claims, and, except as set forth in Section 4.3(a) above, this Agreement shall not be deemed an admission by any Settling Party as to the merits of any claim or defense with respect to these claims.

Section 5.2. **Agreement Inadmissible.** Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement, shall be admissible in any proceeding for any purpose, except to seek approval of or to enforce the terms of the Agreement.

## ARTICLE VI
## MISCELLANEOUS PROVISIONS

Section 6.1. **Good Faith.** The Settling Parties agree that the Agreement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with each of the Settling Parties' representative competent legal counsel.

Section 6.2. **Integration.** Any exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

Section 6.3. **Amendments.** This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties, as the case may be, or their respective successors-in-interest.

Section 6.4. **Authority**. Each counsel or other person executing this Agreement or any of its exhibits on behalf of any party hereto hereby warrants that such person has the full authority to do so.

Section 6.5. **Counterparts.** This Agreement may be executed by facsimile and in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the parties to this Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Bankruptcy Court.

Section 6.6. **Successors**. This Agreement shall be binding upon, and inure to the benefit of, the successors of the parties hereto, including any corporation or other entity into or with which any party merges, consolidates or reorganizes.

Section 6.7. **Jurisdiction.** The United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all parties hereto submit to the jurisdiction of such Bankruptcy Court for purposes of implementing and enforcing the settlement embodied in this Agreement. The Settling Parties expressly reserve their jurisdictional rights to any action, suit or proceeding commenced outside the terms of this Agreement.

Section 6.8. **Further Assurances.** Each of the Settling Parties hereto agrees to execute and deliver, or to cause to be executed and delivered, all such instruments, and to take all such action as the other Settling Parties may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Agreement.

Section 6.9. **Governing Law.** This Agreement and any exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Florida, and the rights and obligations of the parties to this Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Florida without giving effect to that state's choice of law principles.

Section 6.10. **Entire Agreement.** This Agreement constitutes the entire agreement between the Settling Parties and no representations, warranties or inducements have been made to any party concerning this Agreement other than the representations, warranties and covenants contained and memorialized in this Agreement. Without limiting the generality of the forgoing, this Agreement supersedes, and replaces in its entirety, the prior version of the Settlement Agreement executed by the parties on or about May 30, 2011 to be held in escrow, and the Settling Parties expressly agree that such prior version is null and void. It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Agreement is entered into may turn out to be other than or different from the facts now known to each party or believed by such party to be true; each party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this

Agreement shall be in all respects effective and not subject to termination by reason of any such different facts or law.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date set forth above.

        TAYLOR BEAN & WHITAKER
        MORTGAGE CORP.

By: _____
        Neil F. Luria
        Chief Restructuring Officer


        OFFICIAL COMMITTEE OF UNSECURED
        CREDITORS OF THE DEBTOR

By: _____
        Sheryl Newman
        Chairperson


        NATIXIS REAL ESTATE HOLDINGS LLC,
        successor by merger to NATIXIS REAL
        ESTATE CAPITAL, INC.

By: _____
        MANAGING DIRECTOR
By: _____
        Thomas G. Sharpe
        Managing Director

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date set forth above.

                                            TAYLOR BEAN & WHITAKER
                                            MORTGAGE CORP.

                                            By: _____
                                                    Neil F. Luria
                                                    Chief Restructuring Officer


                                            OFFICIAL COMMITTEE OF UNSECURED
                                            CREDITORS OF THE DEBTOR

                                            By: _____
                                                  Sheryl Newman
                                                  Chairperson


                                            NATIXIS REAL ESTATE HOLDINGS LLC,
                                            successor by merger to NATIXIS REAL
                                            ESTATE CAPITAL, INC.

                                            By: _____

                                            By: _____

EXHIBIT A TO SETTLEMENT
AGREEMENT
(NOT FILED)

2269853v1

# EXHIBIT B TO SETTLEMENT AGREEMENT
## (MUTUAL RELEASE)

2269853v1

# Exhibit B

## MUTUAL RELEASE

This Mutual Release (the "**Release**") is dated as of _____, 2011 and is made by and between Natixis Real Estate Holdings LLC (successor-by-merger to Natixis Real Estate Capital, Inc.) ("**Natixis**") and the Federal Home Loan Mortgage Corporation in Conservatorship ("**Freddie Mac**"). This release is provided as contemplated in Section 1.6 of that certain Settlement Agreement ("**Agreement**") entered into as of the date hereof by and among Natixis, Taylor Bean & Whitaker Mortgage Corp. as Chapter 11 Debtor and Debtor in Possession ("**Debtor**"), and the Official Committee of Unsecured Creditors of the Debtor (the "**Committee**"). Capitalized terms not otherwise defined herein shall have the same meaning attributed to them in the Agreement. This Release is entered into in consideration of the mutual promises, covenants and agreements set forth herein and in consideration of the promises, covenants and agreements described in the Agreement and for other good and valuable consideration acknowledged by Natixis and Freddie Mac to be satisfactory and adequate.

(a) Upon the Effective Date, and with the express exception of Freddie Mac's future obligations with respect to the Participation in connection with a sale of the MSRs within the Sale Period as set forth in Exhibit A to the Freddie Mac Settlement Agreement, Natixis, its predecessors, successors and assigns, and any other person or entity that claims or might claim through, on behalf of, or for the benefit of any of the foregoing, whether directly or derivatively, (the "Natixis Releasors"), irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge Freddie Mac, its current and former subsidiaries, affiliates, directors, officers, employees, conservator, receiver, liquidator, trustee, professionals, and the predecessors, successors, and assigns of any of these (collectively, the "Freddie Mac Releasees") from any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character, or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which the Natixis Releasors, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any of the Freddie Mac Releasees that relate to Natixis' interest in the MSRs, including without limitation any and all claims with respect to the Acknowledgement Agreement dated May 27, 2005 among Freddie Mac, TBW and IXIS Real Estate Capital, Inc. (as amended, restated, modified or supplemented from time to time). Without limiting the generality of the forgoing, Natixis agrees that, in the event no sale of the MSRs takes place within the Sale Period (as that term is defined on Exhibit A to the Agreement), Natixis shall have no further rights or claims in and to the MSRs after expiration of the Sale Period, including without limitation any and all claims with respect to the Acknowledgment Agreement.

(b) Upon the Effective Date, and with the express exception of Natixis' agreements with respect to a sale or sales of the MSRs set forth in Exhibit A to the Agreement, Freddie Mac, its predecessors, successors and assigns, and any other person or entity that claims or might claim through, on behalf of, or for the benefit of any of the foregoing (other than the Federal Housing Finance Agency), whether directly or derivatively, (the "Freddie Mac Releasors"), irrevocably and unconditionally, fully,

finally, and forever waive, release, acquit, and discharge Natixis, its current and former subsidiaries, affiliates, directors, officers, employees, professionals, and the predecessors, successors, and assigns of any of these (collectively, the "Natixis Releasees") from any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character, or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which the Freddie Mac Releasors, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any of the Natixis Releasees that relate to Natixis' interest in the MSRs, including without limitation any and all claims with respect to the Acknowledgement Agreement dated May 27, 2005 among Freddie Mac, TBW and IXIS Real Estate Capital, Inc. (as amended, restated, modified or supplemented from time to time).

IN **WITNESS WHEREOF,** the parties hereto have caused this Release to be executed as of the date set forth above.

NATIXIS REAL ESTATE HOLDINGS LLC, successor by merger to NATIXIS REAL ESTATE CAPITAL, INC.

By: _____

By: _____

FEDERAL **HOME LOAN MORTGAGE CORPORATION**

By: _____