

Navigant Capital Advisors, LLC
Member FINRA
5215 Old Orchard Road
Suite 850
Skokie, IL  60077
847.583.1618  phone
847.583.1719  fax

August __, 2011

Taylor, Bean & Whitaker Plan Trust
Suite 120
Millenia Park One
4901 Vineland Road
Orlando, FL  32811
Attn:  Liquidating Trustee

    Re:  Engagement of Navigant Capital Advisors, LLC ("NCA")

Gentlemen:

  This letter outlines the understanding between NCA and the Taylor, Bean & Whitaker Plan Trust (the "Trust") for the engagement of NCA to perform certain services to the Trust in connection with its ongoing liquidation efforts.

  Taylor, Bean & Whitaker Mortgage Corp. ("TBW") filed for Chapter 11 bankruptcy protection on August 24, 2009 in the U.S. Bankruptcy Court for the Middle District of Florida in Jacksonville, Florida (the "Bankruptcy Court") and retained NCA to provide the services of Neil F. Luria as Chief Restructuring Officer and additional NCA support staff to assist TBW in its restructuring efforts.  By Order dated July__, 2011, the  Third Amended and Restated Joint Plan of Liquidation of the  TBW Debtors and the Official Committee of Unsecured Creditors   (the "Plan") was confirmed by the Bankruptcy Court and the Plan became effective concurrent with the execution hereof.  Pursuant to the terms hereof, the Trust will engage NCA to provide the services of Neil F. Luria as Liquidating Trustee (the "Liquidating Trustee") and the services of additional NCA support staff to assist the Liquidating Trustee in the execution of his duties.    Under the terms of this engagement, NCA will act under the authority of the Liquidating Trustee, the Trust's Plan Trust Agreement (as defined in the Plan), and the Plan Advisory Committee (as defined in the Plan) and will work in conjunction with the Liquidating Trustee and the Plan Advisory Committee to coordinate, oversee, and direct the resources necessary to execute the mission of the Trust.

1.  <u>Scope of Services</u>

  Pursuant to this engagement ("Engagement"), NCA's role will specifically include working with the Trust's Plan Advisory Committee with respect to the following:

- Oversight of the liquidation process as provided for in the Plan and implementation thereof;

Taylor, Bean & Whitaker Plan Trust
August __, 2011
Page 2

- Administration of the Trust;

- Management of the professionals who are assisting the Trust in the liquidation process to enhance coordination of their efforts and individual work product consistent with the Trust's goals;

- Supervision of both short-term as well as long-term liquidity and asset optimization initiatives in order to maximize disposition value(s);

- Management of the Trust's cash and other assets;

- Communication and/or negotiation with outside constituents, including creditors and their advisors;

- Preparation for and coordination of asset dispositions; and

- Such other matters as may be requested consistent with our expertise and as are mutually agreed upon by the parties.

The engagement team will be led by Edward R. Casas who will have general oversight responsibilities with respect to the engagement, and Neil F. Luria. NCA will provide the services of Neil F. Luria as Liquidating Trustee and Edward R. Casas as head of strategy, litigation recoveries and asset disposition. Mr. Luria will also serve under the terms of this Engagement Letter, as necessary, as a director and officer of TBW and its subsidiaries.

NCA and the Liquidating Trustee shall be authorized to make decisions with respect to all aspects of the management and operation of the Trust's business, including without limitation organization and human resources, marketing and sales, logistics, finance and administration and such other areas as they deem necessary or appropriate in a manner consistent with the business judgment rule and the provisions of local law and the United States Bankruptcy Code applicable to the obligations of persons acting on behalf of corporations, subject only to appropriate governance by the Plan Advisory Committee in accordance with the Plan Trust Agreement and the Plan.

In addition to the Liquidating Trustee, NCA will continue to provide the services of various other professionals, at the discretion of the Liquidating Trustee, in various functional areas, including reporting, treasury and cash management, servicing and reconciliation, servicing operations, accounts payables and claims reconciliation, asset sales and capital markets. In addition, NCA will provide the services of various other individual professionals, at the discretion of the Liquidating Trustee, to serve as Trust Administrators (as defined in the Plan Trust Agreement) and/or to serve as officers of TBW and certain of its subsidiaries.

NCA's ability to perform this Engagement will depend upon the extent of cooperation that it receives from the Trust, and the Trust's advisors and representatives, including its legal counsel and accountants. In this regard, the Trust agrees to provide NCA full cooperation and access to financial, business and other information concerning the Trust which NCA reasonably deems appropriate. In addition to open access to all such information (including documents and financial records (or projections)), NCA will have full use and access to all work performed by prior investment banking advisors and management consultants, as well as any outside accounting and analyst reports and work papers, all valuation analyses, due diligence materials and other related materials which are (or could be) available to the

Taylor, Bean & Whitaker Plan Trust
August __, 2011
Page 3

Trust (all such information and materials, documents and records being referred to as "Trust Information"). NCA agrees that, except as may otherwise be required by law, NCA will keep confidential and not disclose to third parties (other than representatives or independent contractors retained by NCA) all Trust Information that is confidential or propriety to the Trust and that NCA will use the same only in the performance of its duties under this Engagement.

NCA will begin this Engagement immediately upon (i) receipt of this executed engagement letter and the attached Indemnity Agreement, (ii) receipt of the Retainer as referenced below, (iii) receipt of the first Monthly Fee (as defined below) payment described below, and (iii) the receipt from the Trust of insurance policies described below (which policies must be satisfactory to NCA).

1. Hourly Fees and Expenses

NCA's compensation hereunder shall consist of the following:

For the services provided by Messrs. Casas and Luria, NCA will charge a monthly fee (the "Monthly Fee") in the monthly amount described below in immediately available funds with the first Monthly Fee to be paid upon execution of this Engagement Letter and the Monthly Fee is to be subsequently paid on the first day of each month thereafter through the term hereof. The Monthly Fee amount will be as set forth below:

| Period | Monthly Fee |
|---|---|
| First 6 months | $175,000 per month |
| Second 6 months | $125,000 per month |
| Third 6 months | $100,000 per month |
| Fourth 6 months | $75,000 per month |
| Thereafter | $50,000 per month |

In addition, to the Monthly Fee, NCA shall be paid for the services provided by other NCA professionals at their standard hourly rates. The billing rates for professionals who may be assigned to this Engagement, including those listed above are as follows:

Base Hourly Rates:[1]

| | |
|---|---|
| Senior Managing Directors / Senior Advisors | |
| Managing Directors | $750-875/hr |
| Directors | $625-750/hr |
| Associate Directors | $550-625/hr |
| Managing Consultants | $450-550/hr |
| Consultants / Associates | $350-450/hr |
| Paraprofessionals | $245-350/hr |
| | $95-125/hr |

The Monthly Fees will be paid as described above. In addition, the Trust agrees to pay NCA's reasonably incurred hourly fees (the "Fees") in connection with this Engagement based upon the rates set forth above on a weekly basis; however, the Trust expressly agrees that the hourly rates set forth in this engagement letter are subject to periodic adjustment upon notice to the Trust to reflect economic and other conditions. In addition, upon execution the Trust will pay to NCA (in addition to the first Monthly Fee) a retainer (the "Retainer") in the amount of $100,000, and, subject to the following paragraph, NCA will charge against such Retainer its reasonably incurred and unpaid Fees and expenses on a weekly ba-

---

[1] NCA may utilize independent contractors under the direct supervision of NCA; the hourly rate for such personnel will be billed based upon the qualifications of the professional.

Taylor, Bean & Whitaker Plan Trust
August __, 2011
Page 4

sis. NCA will provide the Trust and the Plan Advisory Committee with reasonably detailed weekly bills and such bills will be due upon receipt and payable, as set forth below, within three (3) days of receipt (after which point they will be charged against the Retainer and if the Retainer is not sufficient to cover such bills, the Trust will promptly wire the deficiency plus the amount necessary to replenish the Retainer in accordance with the following paragraph). If the Trust fails to comply with its obligations under this paragraph, then NCA shall have the right to cease work until the Trust does so comply without incurring any liability whatsoever.

The Trust further agrees that the amount of the Retainer held by NCA will at all times be not less than $100,000, and that the Trust will, from time to time, remit to NCA such additional amounts as may be necessary to maintain the total amount of the Retainer currently held by NCA at or above $100,000.

NCA's expenses as incurred will be billed separately. Generally these expenses include any travel-related expenses, document production, fax transmissions, teleconferencing charges, outside legal expenses incurred by NCA associated with this Engagement (including, fee application expenses, discovery costs and defense costs) and other expenses of this type which are associated with this Engagement. All professional fees and expenses will be paid and reimbursed via wire transfer (per instructions set forth on <u>Exhibit A</u> attached hereto) within three (3) days of receipt of the applicable NCA invoices by the Trust (after which point they will be charged against the Retainer and if the Retainer is not sufficient to cover such bills, the Trust will promptly wire the deficiency in accordance with the provisions hereof). Expenses payable hereunder will also include any unreimbursed expenses incurred in connection with the sale of mortgage servicing rights currently or previously owned by TBW which are sold for the benefit of TBW stakeholders.

In addition to the Monthly Fee and the Fees described above, NCA will receive a deferred restructuring Fee equal to 1.00% of the Aggregate Value (as defined below) of asset and other recoveries received by the Trust on or after the Effective Date from divestiture transactions, including the realization of proceeds from the divestiture of assets (by sale merger, settlement or otherwise) involving the Trust or any of its subsidiaries or affiliates or value associated with any negotiated claims reduction (the "Deferred Restructuring Fee Payments"). For purposes of this agreement, Aggregate Value shall mean gross sale proceeds to which the Trust is entitled from the sale of assets plus any litigation related settlements or payments received or other similar recoveries (including, without limitation, recoveries on servicing advances, due from balances and investments in subsidiaries) and, in the case of any negotiated claims reduction, value shall include the amount of distribution that such holder(s) would have otherwise been entitled to receive in connection with the negotiated claim reduction. The Deferred Restructuring Fee Payments will be made in immediately available funds at the closing of each respective transaction, recovery or payment (and related definitive agreements governing such transactions, recoveries, or payments shall disclose and acknowledge the Trust's liability to NCA for such Deferred Restructuring Fee Payments) or, in the case of any Deferred Restructuring Fee Payment associated with a negotiated claim reduction, at the time of final distributions to general unsecured creditors. It is expressly agreed that the cumulative amount of the Deferred Restructuring Fee Payments shall not be less than $500,000 in the aggregate; any deficiency in the total amount of Deferred Restructuring Fee Payments paid to NCA shall be paid upon the earlier of the Conclusion (as defined below) of the case or upon the termination of NCA's services hereunder. For purposes of this Agreement, the term "Conclusion" shall mean the earlier of (i) the date on which the sale of substantially all of the assets of the Trust has been consummated or (ii) immediately prior to the dissolution of the Trust.

2. <u>Miscellaneous</u>

Taylor, Bean & Whitaker Plan Trust
August __, 2011
Page 5

NCA will act under this engagement letter as an independent contractor with duties solely to the Trust with liability limited to the fees paid to NCA hereunder. Because we will be acting on your behalf in this capacity, it is our practice to receive indemnification. A copy of our standard indemnity form is attached hereto as Exhibit B ("Indemnity Agreement") and must be executed concurrently with this engagement letter. The terms of the Indemnity Agreement are incorporated by reference into this engagement letter.

Any advice or opinions provided by NCA in the capacity as financial advisor (i.e., not as Liquidating Trustee) may not be disclosed or referred to publicly or to any third party except in accordance with NCA's prior written consent. It is further understood that any advice rendered by NCA pursuant to this Engagement in the capacity as financial advisor (*i.e.*, not as Liquidating Trustee), including any advice rendered during the course of participating in negotiations and meetings with management the Plan Advisory Committee, as well as any written materials provided by NCA, are intended solely for the benefit and confidential use of the Trust and the Plan Advisory Committee and will not be reproduced, summarized, described or referred to or given to any other person for any purpose without NCA's prior written consent. Notwithstanding the foregoing, to the extent that any materials are intended to be protected by the attorney/client privilege, the parties hereto will work with counsel to develop appropriate mechanisms to protect such information.

The Trust acknowledges and agrees that (i) NCA is not being retained to advise the Trust on, or to express any opinion as to, the wisdom, desirability or prudence of consummating a recapitalization, restructuring, reorganization or other transaction and (ii) NCA is not and will not be construed as a fiduciary of the Trust or any affiliate thereof and will have no duties or liabilities to the equityholders or creditors of the Trust, any affiliate of the Trust or any other person by virtue of this Engagement and the retention of NCA hereunder, all of which duties and liabilities are hereby expressly waived. Claimholders of the Trust are not intended beneficiaries hereunder. Notwithstanding the foregoing, NCA acknowledges that Neil F. Luria is serving in a fiduciary capacity as Liquidating Trustee and other NCA professionals may serve, at the discretion of the Liquidating Trustee, as Trust Administrators of the Trust or officers of TBW and its subsidiaries in connection. The Trust confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice.

NCA and its officers, employees, representatives and agents will be entitled to the benefit of the most favorable indemnities the Trust is legally able to provide, whether under the Trust's by-laws, certificates of incorporation, by contract or otherwise. The Trust agrees that it will use its best efforts to specifically include and cover NCA and its employees or agents providing services to the Trust under the Trust's liability policy for directors' and officers' insurance . In the event that the Trust (i) is unable to include NCA and such individuals under the Trust's policy, or (ii) does not maintain first dollar liability coverage, in effect for at least $10 million, it is agreed that NCA may in its discretion attempt to purchase a separate directors' and officers' policy or other such insurance policy that will cover NCA employees and representatives providing services to the Trust only and that the cost of same shall be invoiced to the Trust and reimbursed by the Trust as an out-of-pocket cash expense. If NCA is unable to purchase such insurance, then NCA reserves the right to terminate this agreement.

The terms of this engagement letter shall be construed, interpreted and applied in accordance with the laws of the State of Florida and the United States Bankruptcy Code. The Trust irrevocably submits to the jurisdiction of any court of the State of Florida or the United States Bankruptcy Court of the Middle District of the State of Florida for the purpose of any suit, action or other proceeding arising out of this engagement letter which is brought by or against the Trust. Each of the Trust (and, to the extent permitted by law, on behalf of the Trust's equity holders and creditors) and NCA hereby knowingly, vo-

Taylor, Bean & Whitaker Plan Trust
August __, 2011
Page 6

luntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this engagement letter.

Because NCA and its affiliates serve clients on a national basis in numerous cases, both in and out of court, it is possible that NCA or its affiliates may have rendered services to, or have business associations with, other entities which had, or have, relationships with the Trust, including creditors of the Trust. Nonetheless, except as described below, NCA and affiliates have not, and will not perform services for, or have business connections with, any of these aforementioned entities in this matter involving the Trust. Notwithstanding the foregoing, the Trust acknowledges that (i) NCA will be providing servicing directly or indirectly to the Federal Home Loan Mortgage Corporation in connection with the sale of certain mortgage servicing rights previously owned by TBW, and (ii) NCA may in the future provide services to certain subsidiaries of TBW, including Ocala Funding LLC, and the Trust consents to NCA providing such services and hereby waives any currently existing or future conflict of interest that may result from NCA providing such services.

This engagement letter, and any modification or amendment thereto, may be executed in counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument.

Either the Trust or NCA may terminate this engagement letter upon 3 days' written notice; provided, however, that (i) all fees and expenses reimbursement due through the effective date of termination will be paid within 3 days of the effective date of termination and the Retainer may be credited against any amounts then due to NCA hereunder, (ii) no termination of this engagement letter will affect NCA's right to payment of fees or expense reimbursement pursuant to Section 1 or the indemnification contemplated by the Indemnity Agreement, and (iii) NCA will be entitled to any Deferred Restructuring Fee Payments it would have otherwise been entitled to related to any divestiture or other event that would have triggered the payment of a Deferred Restructuring Fee Payment occurring within 12 months of termination. Notwithstanding the foregoing, if NCA terminates this Engagement Letter without Cause or NCA fails to provide through NCA or its assignees the services of the Liquidating Trustee, NCA will not be entitled to receive any additional Deferred Restructuring Fee Payments. For purposes hereof, "Cause" shall mean: (i) breach of the terms hereof by the Trust, (ii) breach of the terms of the Indemnity Agreement by the Trust, or (iii) NCA determines, in its sole discretion, that the Trust does not have enough unencumbered cash in order to fund its expenses in the ordinary course.

All notices required or permitted to be delivered under this engagement letter shall be sent, if to us, to the address of NCA's Skokie, Illinois office as set forth at the head of this letter, to the attention of Mr. Edward R. Casas, and if to you, to the address for you set forth above, to the attention of the Trustee, with copies to Trust's general counsel and the members of the Plan Advisory Committee, or to such other name or address as may be given in writing to the other party. All notices under this engagement letter shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given only upon actual receipt.

This engagement letter may only be assigned by NCA to affiliates or entities that retain the Liquidating Trustee and may only be modified, amended or waived by a writing signed by the parties hereto.

If the terms of our engagement as set forth in this letter are satisfactory, kindly sign the enclosed copy of this letter along with the attached Indemnity Agreement and return executed copies to me by fax with originals by overnight mail accompanied with a wire transfer in the amount of the Retainer.

Taylor, Bean & Whitaker Plan Trust
August __, 2011
Page 7

      We look forward to working with you.

                                      Very truly yours,

                                      NAVIGANT CAPITAL ADVISORS, LLC

                                      By:_____
                                           Edward R. Casas
                                           Senior Managing Director

Accepted, acknowledged and agreed to:

TAYLOR, BEAN & WHITAKER PLAN TRUST


By:_____

Title:_____

Date: _____

**Exhibit A**

**Wiring Instructions**

Please direct wire to:

Navigant Capital Advisors, LLC
Bank of America
135 S. LaSalle St
Chicago, IL 60674
ABA # 071000505
Account # 5800151127

**Exhibit B**

May __, 2011

Navigant Capital Advisors, LLC
5215 Old Orchard Road
Suite 850
Skokie, IL  60077

Ladies and Gentlemen:

This letter will confirm that in connection with the engagement (the "Engagement") of Navigant Capital Advisors, LLC ("NCA") by Taylor, Bean & Whitaker Plan Trust (the "Trust") as reflected in the engagement letter dated the date hereof (all capitalized terms used but not otherwise defined herein having meanings described in such engagement letter) the Trust agrees to indemnify and hold harmless NCA and its affiliates and their respective members, officers, directors, employees and agents and each other person, if any, controlling NCA or any of its affiliates (each referred to herein as an "Indemnified Person") to the fullest extent permitted by law from and against any losses, claims, damages, obligations, penalties, judgments, awards, costs, disbursements or liabilities, including amounts paid in settlement (collectively, "Losses"), based upon, related to, arising out of or in connection with the Engagement, and will reimburse each Indemnified Person for all expenses (including fees and expenses of counsel) ("Expenses") as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation, or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party.  Furthermore, the Trust will pay NCA at its standard hourly rates for any NCA professional time incurred in connection with any action, claim, suit, investigation or proceeding described in the foregoing sentence.  Notwithstanding the foregoing, in no event shall the Trust be responsible for any Losses or Expenses that arise out of or in connection with the Engagement which are finally judicially determined to have resulted primarily and directly from the willful misconduct or gross negligence of NCA.

If any litigation, investigation or proceeding is commenced as to which NCA proposes to demand indemnification, NCA will notify the Trust with reasonable promptness; provided, however, that any failure by NCA to notify the Trust will relieve the Trust from its obligations hereunder only to the extent the Trust has been materially prejudiced by such failure or delay.  NCA will have the right to retain counsel (and local counsel, if appropriate) of its own choice to represent it, and the Trust will pay the fees, expenses and disbursements of such counsel.  The Trust retains the right to participate in the defense of such litigation, investigation or proceeding as to which NCA seeks indemnification through counsel of the Trust's choice (the cost of which will be paid by the Trust) and NCA will reasonably cooperate with such counsel and the Trust (including, to the extent possible and consistent with its own interests, keeping the Trust reasonably informed of such defense).  The Trust will be liable for any settlement of any claim against NCA made with the Trust's written consent, which consent will not be unreasonably withheld.

If, for any reason, the foregoing indemnification is unavailable to any of the Indemnified Parties or is insufficient to hold them harmless in respect of any Losses or Expenses, then the Trust will contribute to the amount paid or payable by any of the Indemnified Parties as a result of such Losses and Expenses in such proportion as is appropriate to reflect the relative benefits (or anticipated benefits) to the Trust on the one hand and the Indemnified Parties on the other hand from the matter giving rise to the need for indemnification, or if such allocation is not permitted by applicable law, then in such proportion as is appropriate to reflect not only the relative benefits received by the Trust and beneficiaries on the one hand and the Indemnified Parties on the other hand, but also the relative fault of the Trust and its advisers (other than NCA) on the one hand and the Indemnified Parties on the other hand, as well as any other relevant equitable considerations. The relative benefits received (or anticipated to be received) by the Trust and its beneficiaries on the one hand and by the Indemnified Parties on the other hand will be deemed to be in the same proportion as such benefit bears to the total fees paid to NCA pursuant to the Engagement related to the matter giving rise to the need for indemnification. The relative fault of any party or other person will be determined by reference to such party's or person's knowledge, access to information and opportunity to prevent or correct any misstatement, omission, misconduct or breach of duty. In no event will the amount required to be contributed by the Indemnified Parties hereunder exceed the total amount of fees paid to NCA pursuant to the Engagement. You and we agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

The reimbursement, indemnity and contribution obligations of the Trust hereunder will (i) be in addition to any liability which the Trust may otherwise have, (ii) survive the completion or termination of NCA's engagement under the Engagement and (iii) shall be binding upon any successors and assigns of the Trust. Notwithstanding anything contained herein to the contrary, for the purposes hereof, the Trust agrees that any Losses or Expenses of NCA resulting from work undertaken by NCA in connection with the sale of TBW's current or former mortgage servicing rights for the benefit of TBW stakeholders are deemed to be based upon, related to, arising out of or in connection with the Engagement and subject to indemnification hereunder.

The Trust agrees that without the prior written consent of NCA, it will not consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claims, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless (i) such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from any and all claims and liabilities arising out of such action, claim, suit or proceeding and (ii) there is no statement in connection therewith as to an admission of fault culpability or failure to act by or on behalf of any Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any written modification thereof signed by the parties and shall remain in full force and effect regardless of any termination or the completion of NCA's services under the Engagement.

This agreement will be deemed made in Florida. The validity and interpretation of this agreement will be governed by, and construed and enforced in accordance with, the laws of the State of Florida (excluding the conflicts of laws rules) and the United States Bankruptcy Code The parties

irrevocably submit to the jurisdiction of any court of the State of Florida or the United States Bankruptcy Court of the Middle District of the State of Florida for the purpose of any suit, action or other proceeding arising out of this agreement which is brought by or against the Trust. Each of the Trust and NCA hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this agreement.

                                        Very truly yours,

                                        TAYLOR, BEAN & WHITAKER
                                        PLAN TRUST

                                        By:_____
                                        Title:_____
                                        Date:_____

Accepted, acknowledged and agreed to:

NAVIGANT CAPITAL ADVISORS LLC

By:_____
    Edward R. Casas
    Senior Managing Director

Date:_____