**PLAN TRUST AGREEMENT**

**TAYLOR, BEAN & WHITAKER MORTGAGE CORP.,**

**HOME AMERICA MORTGAGE, INC., and**

**REO SPECIALISTS, LLC,**

**as Debtors,**

**and**

**NEIL F. LURIA,**

**as Trustee**

2182597v918

# TABLE OF CONTENTS

**PAGE**

| | | |
|---|---|---|
| **SECTION I** | **APPOINTMENT OF TRUSTEE** | **2** |
| **SECTION II** | **PLAN TRUST** | **2** |
| A. | Establishment | 2 |
| B. | Funding | 2 |
| C. | Purpose | ~~3~~5 |
| D. | Beneficiaries Deemed Grantors of Plan Trust | ~~3~~5 |
| E. | Documentation of Trust Assets | ~~3~~5 |
| F. | Initial Valuation of Trust Assets | ~~3~~5 |
| G. | Termination | ~~4~~6 |
| **SECTION III** | **TRUSTEE** | **~~4~~6** |
| A. | Trustee is a Fiduciary | ~~4~~6 |
| B. | Scope of Authority | ~~4~~6 |
| C. | Power to Declare ~~a~~ Disputed Ownership ~~Fund~~ Funds | ~~7~~10 |
| D. | ~~Proof of Authority~~ ~~7~~Power to Establish Qualified Settlement Funds | 10 |
| E. | Proof of Authority | 11 |
| F. | Limitations on Trustee's Authority; Permitted Investments | ~~8~~11 |
| ~~F.~~ G. | Reliance by Trustee | ~~9~~12 |
| ~~G.~~ H. | Authorization to Expend Trust Assets | ~~9~~12 |
| I. | Trust Administrator | 13 |
| J. | Post Effective Date Management | 14 |
| ~~H.~~ K. | Compensation | ~~9~~14 |
| ~~I.~~ L. | Bond | ~~10~~15 |
| ~~J.~~ M. | Insurance | ~~10~~15 |
| ~~K.~~ N. | Confidentiality | ~~10~~15 |
| ~~L.~~ O. | Final Decree | ~~10~~15 |
| ~~M.~~ | ~~Termination~~ | ~~10~~ |
| P. | Termination | 15 |
| **SECTION IV** | **BENEFICIARIES** | **~~10~~15** |
| A. | Maintenance of List of Beneficiaries | ~~10~~15 |
| B. | Identification of Beneficiaries | ~~11~~15 |

C.    Withholding .................................................................................... 11 16

D.    Tax Identification Numbers ............................................................ 11 16

**SECTION V        ADVISORY COMMITTEE** ............................................. **11 16**

A.    Duties and Powers .......................................................................... 11 16

B.    Advisory Committee Members ....................................................... 12 16

C.    Advisory Committee is a Fiduciary ................................................ 12 16

D.    Material Decisions ........................................................................... 12 17

E.    Unanimous Decisions ...................................................................... 14 19

F.    Conflicts ............................................................................................ 14 19

G.    Bylaws and Voting; Selection of Chair; Execution of Documents ... 14 19

H.    Reporting ......................................................................................... 14 19

I.    No Compensation; Reimbursement of Committee Members ...... 15 19

J.    Objection to Fees ............................................................................ 15 20

K.    ~~Termination~~ ........................................................................ 15 Termination    20

**SECTION VI        DISTRIBUTIONS** ...................................................... **15 20**

A.    Application of Trust Assets ............................................................ 15 20

B.    Distributions .................................................................................... 15 20

C.    Reserves Established by Trustee .................................................... 15 20

D.    Priorities .......................................................................................... 16 21

E.    De Minimis Distributions ............................................................... 16 21

F.    Undeliverable Distributions ........................................................... 16 21

G.    Compliance with Laws .................................................................... 16 21

**SECTION VII      REPORTS, TAX MATTERS, BOOKS AND RECORDS** ... **16 21**

A.    Initial Valuation .............................................................................. 16 21

B.    Annual Financial Statements and Statement to Beneficiaries .... 16 21

C.    Quarterly Filings with Bankruptcy Court and U.S. Trustee ....... 16 21

D.    Federal Income Tax ........................................................................ 17 21

E.    Other Filings .................................................................................... 17 22

F.    Disputed Ownership Fund – Tax Effect ....................................... 17 22

G.    Qualified Settlement Fund – Tax Effect ......................................... 22

H.    Books and Records .......................................................................... 17 22

**SECTION VIII   LIMITATION OF LIABILITY** .................................... **18 23**

A.    Exculpation ...................................................................................... 18 23

2182597v9 13

B.    Indemnification ...................................................... ~~18~~23

**SECTION IX    SUCCESSOR TRUSTEE** .......................... ~~19~~24

A.    Removal .................................................................. ~~19~~24

B.    Resignation; Death .................................................. ~~19~~24

C.    Acceptance of Appointment by Successor Trustee ...... ~~19~~24

D.    Continuation of Plan Trust ....................................... ~~19~~24

**SECTION X    EVIDENCE OF AND NON-TRANSFERABILITY OF
              BENEFICIARY'S INTERESTS** ................... ~~20~~25

A.    Beneficial Interests Maintained in Book Entry Form ... ~~20~~25

B.    Non-Transferability of Beneficial Interests ............... ~~20~~25

C.    Limited Exception to Non-Transferability of Beneficial Interests ... ~~20~~25

D.    Beneficial Interests in Plan Trust Not a Security ........ ~~21~~26

**SECTION XI    MISCELLANEOUS** ................................. ~~21~~26

A.    Amendment; Waiver ................................................. ~~21~~26

B.    Intention of Parties to Establish Grantor Trust ........... ~~21~~26

C.    Successor; Preservation of Privilege .......................... ~~21~~26

D.    Bankruptcy Court Jurisdiction .................................. ~~21~~26

E.    Cooperation ............................................................. ~~22~~27

F.    Governing Law ......................................................... ~~22~~27

G.    Severability ............................................................. ~~22~~27

H.    Notices .................................................................... ~~22~~27

I.    Notices if to a Beneficiary ........................................ ~~23~~28

J.    Third-Party Beneficiary ............................................ ~~23~~29

K.    Headings .................................................................. ~~23~~29

L.    Counterparts ............................................................ ~~23~~29

M.    Definitions; Rules of Construction ............................. ~~23~~29

2182597v~9~18

## PLAN TRUST AGREEMENT

**THIS PLAN TRUST AGREEMENT** (this "Agreement") is made this __ day of _____, 2011, by and among **Taylor, Bean & Whitaker Mortgage Corp.**, a Florida corporation ("TBW"), and its wholly-owned subsidiaries **Home America Mortgage, Inc.**, a Florida corporation ("HAM"), and **REO Specialists, LLC**, a Florida limited liability company ("REO"), (TBW, HAM and REO are individually, a "Debtor" and collectively, the "Debtors"), and **Neil F. Luria** ("Luria"), and together with any successors, in his capacity as Plan Trustee under the Plan (in such capacity, the "Trustee").[1]

## PRELIMINARY STATEMENTS:

**A.** On August 24, 2009, TBW filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court").

**B.** On November 25, 2009, HAM and REO filed voluntary petitions under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The Debtors' respective cases were administratively consolidated for ease of administration.

**C.** By Order, dated _____ __, 2011, the Bankruptcy Court confirmed the ~~Second~~Third Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated ~~November 12, 2010~~June 22, 2011 [Dkt. No. 3240] (as same has been or may be further amended or restated, the "Plan").

**D.** The Plan provides for the establishment of a liquidating trust for federal income tax purposes in which ~~all~~ Assets of the Debtors shall vest on the Plan's Effective Date.  The purpose of the liquidating trust is to appoint a trustee to liquidate the Assets of the respective Debtors and make the Distributions provided for under the Plan.

**E.** As provided under the Plan and in this Agreement, the Plan Trust (as defined below) shall (i) accept the Assets of each Debtor transferred to the Plan Trust or cause any Plan Trust Entity (as defined below) to accept the Assets of each Debtor transferred to such Plan Trust Entity, free and clear of Liens, except as provided under the Plan, and subject to all liabilities owed under the Plan by the respective Debtor to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, U.S. Trustee fees, and any obligations owing to Secured Creditors under the Plan or the Confirmation Order, and (ii) distribute all payments provided for under the Plan to such Holders and distribute the Net Distributable Assets of each Debtor's respective Estates to the Holders of Allowed Unsecured Claims against such Debtor.

**F.** This Agreement establishes the Plan Trust, allows the Plan Trust to establish any Plan Trust Entity to further the purposes of this Agreement, appoints the Trustee for the Plan Trust, gives the Plan Trust certain right and powers with respect to any such Plan Trust Entity, and provides the framework within which the Trustee shall carry out its duties and implement key provisions of the Plan.  As provided below, all Distributions the Trustee makes to Creditors shall be

---

[1]    As used in this Agreement, the term "Trustee" shall have the same meaning as the term "Plan Trustee" used in the Plan.

made in accordance with the Plan, this Agreement and § 301.7701-4(d) of the Treasury Regulations issued pursuant to the Internal Revenue Code (the "Treasury Regulations").  In accordance with such Treasury Regulations, the Plan Trust has no objective to continue or engage in the conduct of a trade or business.  The Plan Trust contains a fixed determinable termination date that is not more than five (5) years from the date of creation of the Plan Trust, subject to extension as set forth herein based on all of the facts and circumstances.

FG.    Neither the Plan nor this Agreement substantively consolidates the Assets of the Debtors.  Creditors of each Debtor shall receive Distributions only from Assets of such Debtor.

GH.    Capitalized terms used herein without definition shall have the respective meanings assigned to such terms in the Plan.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtors and the Trustee agree as follows:

**SECTION I**
**APPOINTMENT OF TRUSTEE**

Neil F. Luria shall serve as the Trustee under the Plan, and Luria hereby accepts such appointment and agrees to serve in such capacity, effective upon the Effective Date of the Plan.

2182597v918

**SECTION II**
**PLAN TRUST**

**A.    Establishment.**  Pursuant to the Plan, the Debtor and the Trustee hereby establish the "Taylor, Bean & Whitaker Plan Trust" (the "Plan Trust") on behalf of, and for the benefit of, the Holders of Allowed Claims of the Debtors (whether such Claims are Allowed as of or subsequent to the Effective Date) (collectively, the "Beneficiaries").  Except as provided herein, the Plan Trust shall be vested with title to all Assets of each Debtor.

**B.    Funding.**

1.    ~~B. Funding~~Transfer of Title.  Each Debtor hereby transfers, assigns, and delivers to the Plan Trust, effective as of the ~~Plan's~~ Effective Date, for the benefit of the Beneficiaries with Claims against such Debtor, all of such Debtors' right, title and interest in and to all of its Assets, including without limitation, all Claims and Causes of Action of its Estate, ~~in each case~~provided, however, (i) each Debtor hereby retains legal title to, and transfers beneficial title to, its Retained Assets pursuant to Section II.B.2(i), (ii) the Debtor retains all legal and beneficial title to its membership interests in Ocala Funding and shall have all of the Debtor's ownership of, title to, and liabilities associated with such membership interests, and (iii) any Debtor may transfer its title to any Asset to any Entity created by the Plan Trust in accordance with Section II.B.2(ii); provided, further, that all Assets as to which legal or beneficial title is transferred to the Plan Trust or any Entity created by the Plan Trust are transferred free and clear of any Lien, Claim or

interest of any other Person except as provided in the Plan (such Assets with respect to each Debtor, the "Trust Assets" of such Debtor), but subject to the Liabilities (defined below).[2]  The "Trust Assets" shall mean, for each Debtor's Estate, (a) all Assets as to which legal and beneficial title are transferred to the Plan Trust by such Debtor, and (b) the beneficial title to all Retained Assets as to which legal title is retained by such Debtor.  The Assets transferred to any Entity created by the Plan Trust in accordance with Section II.B.2(ii) (each, a "Plan Trust Entity") are not Trust Assets, but the Plan Trust's equity interest in such Plan Trust Entity is a Trust Asset.  In accordance with § 1123(b) of the Bankruptcy Code, the Plan Trust shall be vested with, retain and may exclusively enforce, prosecute and resolve any or all Causes of Action that the Debtors, the Estates or the Creditors' Committee may have against any Person.  The Trustee hereby accepts and agrees to hold the Trust Assets of such Debtor in trust for the Beneficiaries with Claims against such Debtor, in accordance with the terms of this Agreement and the Plan, but subject to the Liabilities, as more particularly described below.

2.    Retained Assets; Assets Transferred to a Plan Trust Entity; Abandonment of Trust Assets.

(i)    Retained Assets.

From time to time on and after the Effective Date, the Trustee may elect for convenience purposes to retain in the Debtors legal title to certain Assets of such Debtor and shall identify on Exhibit B hereto any such Assets (collectively, the "Retained Assets").  As to any such Asset, the Plan Trust shall acquire beneficial ownership of, but shall not have legal title to, such Asset.  The Trustee may in its discretion amend or modify Exhibit B from time to time.  Upon the identification of such Retained Assets on Exhibit B, the beneficial title to those Retained Assets will be deemed conveyed as of the Plan's Effective Date.  The Trustee shall update Exhibit B from time to time to reflect all assets that shall constitute Retained Assets under this Agreement.  The Plan Trust shall have no responsibility for or liability pertaining to the Retained Assets, except as provided in this Agreement.  Upon the liquidation of any Retained Assets by a Debtor, the Trustee shall promptly cause such proceeds to be paid to the Plan Trust in satisfaction of its obligations under the Plan.

(ii)    Asset Transferred to or Held in a Plan Trust Entity.

From time to time on and after the Effective Date, a Debtor may convey all its right, title and interest in any Asset (including its legal title to any Retained Asset), and the Trustee may contribute all of its right, title and

2182597v918

---

[2]    As used in this Agreement, the term "Trust Assets" shall have the same meaning as the term "Plan Trust Assets" used in the Plan.

interest in any Trust Asset (including its beneficial title to any Retained Asset), to any Plan Trust Entity that the Plan Trust may form, so that such Plan Trust Entity has all legal and beneficial title thereto. All the benefits of ownership and liabilities with respect to such Asset or Trust Asset conveyed (hereinafter an "Entity Asset") shall transfer to such Plan Trust Entity. The Plan Trust shall have no responsibility for or liability pertaining to any Entity Asset, except as provided in this Agreement, but shall have the rights and limitation of liability protections that inure to the Plan Trust as the equity owner of such Plan Trust Entity.

(iii)    Abandonment of Trust Assets.

From time to time on and after the Effective Date, the Plan Trust or a Plan Trust Entity may, with the approval of the Advisory Committee, abandon any Trust Asset or Entity Asset (including any Retained Asset as to which it has beneficial ownership) to the Debtor that formerly owned such Asset, so that such Debtor has legal and beneficial title thereto. Further, the Trustee may cause any Debtor to create an Entity to own and hold such asset. All the benefits of ownership and liabilities with respect to such asset shall transfer to such Debtor or Entity. The Plan Trust shall have no responsibility for or liability pertaining to any asset owned by any Debtor or any Entity created by any Debtor.

2182597v918

3.    Transfer is Subject to Liabilities.  The Assets of each Debtor as to which legal or beneficial title is transferred to the Plan Trust or any Plan Trust Entity are hereby transferred subject to the following liabilities, if any, which arise out of or relate to any known or unknown Claim against the respective Debtors or their Estates (such liabilities with respect to each Debtor, the "Liabilities" of such Debtor):  (i) Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims that have not been paid as of the Effective Date or that are subsequently Allowed; (ii) all U.S. Trustee fees until such time as the Bankruptcy Court enters a final decree closing each Debtor's respective Chapter 11 Case; and (iii) any obligations owing to Secured Creditors under the Plan or the Confirmation Order; but (iv) specifically excluding any Claims that have been barred by, or satisfied under, the Plan.

The Trustee hereby accepts and agrees to hold the Trust Assets of such Debtor in trust for the Beneficiaries with Claims against such Debtor, in accordance with the terms of this Agreement and the Plan, but subject to the Liabilities, as more particularly described herein.

i.    Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims that have not been paid as of the Effective Date or that are subsequently Allowed;

ii. all U.S. Trustee fees until such time as the Bankruptcy Court enters a final decree closing each Debtor's respective Chapter 11 Case; and

iii. any obligations owing to Secured Creditors under the Plan or the Confirmation Order; but

iv. excluding, however, any Claims that have been barred by, or satisfied under, the Plan.

4. Plan Distributions and Reserves. The Plan Trust is hereby deemed vested with title to the Trust Assets of each Debtor on the Effective Date, prior to the payment of any Claims to be made under the Plan on the Effective Date. Thus, the Trustee shall distribute from the Trust Assets all Distributions provided for in the Plan, including those to be paid on the Plan's Effective Date, as described below in Section VI. As further provided in Section VI, the Trustee shall also establish (1) an Administrative and Priority Claims Reserve to facilitate the payment of Liabilities, (2) a Plan Trust Operating Expense Reserve to ensure that the Plan Trust has adequate capital to liquidate the Trust permit the Plan Trust to liquidate the Trust Assets, to permit any Plan Trust Entity to liquidate its Entity Assets, and to permit any Debtor to liquidate its Retained Assets, and (3) a Disputed Claims Reserve to preserve, for the benefit of Beneficiaries whose claims are not Allowed on the Effective Date, their respective Pro Rata share of Net Distributable Assets of the Trust.

2182597v918

C. **Purpose.** The Plan Trust shall be established for the primary purpose of liquidating and distributing the Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Plan Trust.

D. **Beneficiaries Deemed Grantors of Plan Trust.** The Plan Trust is intended to qualify as a grantor trust for U.S. federal income tax purposes and shall be structured with the intention of complying with Revenue Procedure 94-45, 1994-C.B. 584, which sets forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Debtor, the Plan Trust and the Beneficiaries, for all U.S. federal income tax purposes, will treat the Trust Assets as having been transferred by the Debtor to the Beneficiaries pursuant to the Plan Trust, followed by a contribution of such Trust Assets by the Beneficiaries to the Plan Trust, with the intention that the Plan Trust will be treated as a grantor trust and the Beneficiaries will be treated as grantors and owners. Assuming the Plan Trust is treated as a liquidating trust, the holders of beneficial interests in the Plan Trust (each such interest, a "Beneficial Interest") should be treated for U.S. federal income tax purposes as the direct owners of an undivided interest in the Trust Assets. For purposes of this Section II.D, the deemed transfer of Trust Assets for U.S. income tax purposes to the holders of beneficial interests in the Plan Trust shall not be reduced by the Liabilities described in Section II.B.3 (excluding amounts owed to Holders of Allowed Administrative Claims, Holders of Allowed Priority Tax Claims, Holders of Allowed Priority Claims, Holders of Allowed Secured Claims, and U.S. Trustee fees) and the Holders of such Liabilities (excluding amounts owed to Holders of Allowed Administrative Claims, Holders of

Allowed Priority Tax Claims, Holders of Allowed Priority Claims, Holders of Allowed Secured Claims, and U.S. Trustee fees) would be treated as beneficial owners in the Plan Trust for U.S. federal income tax purposes.

**E.      Documentation of Trust Assets.**  Each Debtor shall, on or prior to the Effective Date, execute such documents as shall be reasonably required to evidence the transfer to the Plan Trust or any Plan Trust Entity on behalf of the Beneficiaries effective as of the Effective Date (in accordance with Section B.1 and B.2 of this Article II.B hereof) any and all of such Debtor's real and personal property (other than legal title to any Retained Assets) to form the Trust Assets or the Entity Assets.  The Debtors shall have no further obligation to provide any funding with respect to the Plan Trust, except for the transfer of proceeds from any liquidation of any Retained Assets as provided in Section II.B.2.

**F.      Initial Valuation of Trust Assets.**  As soon as practicable after the Effective Date, the Trustee shall apprise each of the Beneficiaries in writing of the value of the Trust Assets by filing such valuation with the Bankruptcy Court.  The valuation shall be used consistently by all parties (including the Debtors, the Trustee and the Beneficiaries) for all federal income tax purposes.  The Trustee may, if it so chooses in its sole discretion, determine the value of the Trust Assets based upon its own good-faith determination, or may seek a judicial valuation of the Trust Assets as of the Effective Date by the Bankruptcy Court.  Such valuation shall include the value of the Plan Trust's equity in any Plan Trust Entity and the Plan Trust's beneficial ownership of any Retained Assets.

2182597v918

**G.**      **Termination.**  The Plan Trust shall terminate after the Distribution of all Plan Trust Assets and the full performance of all other duties and functions of the Trustee under the Plan and this Agreement, or as otherwise ordered by the Bankruptcy Court.  Notwithstanding the foregoing, the Plan Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Plan Trust for a finite period if it is necessary to the liquidating purpose thereof.  Multiple extensions can be obtained.  Any extension shall be obtained within the six (6) month period prior to the fifth (5th) anniversary or the end of the immediately preceding extension, as applicable.

**SECTION III
TRUSTEE**

**A.      Trustee is a Fiduciary.**  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the Plan Trust.  The Trustee may deal with the Trust Assets, Entity Assets or Retained Assets, as permitted by the provisions hereof.  The Trustee shall have the authority to bind the Plan Trust and for all purposes hereunder shall be acting in the capacity as Trustee and not individually.  All Distributions made by the Trustee of Cash comprising the FDIC Carve-out and the BB&T Fundson behalf of a Creditor of a Debtor shall be made by the Trustee solely in its capacity as disbursing agent for the FDICsuch Creditor and, to the extent required by law or otherwise, shall be reported for U.S. income tax purposes as Distributions from this Plan Trust or, if applicable, from any "disputed ownership fund" or "qualified settlement fund" created by the Trustee under this Agreement.  Such Distributions shall include, but not be limited to, payments of Cash to be made to Holders of Allowed Trade Claims pursuant to any of the Bayview Settlement Agreement, the FDIC Settlement Agreement, the

Freddie Mac Settlement Agreement, the Natixis Settlement Agreement, the Sovereign Settlement Agreement, and any other settlement agreement to which any Debtor or the Plan Trust is or becomes a party.

**B.    Scope of Authority.**  The Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Plan, subject to the terms of this Agreement.  The Trustee shall in an expeditious but orderly manner liquidate and convert to Cash the Trust Assets, the Entity Assets and the Retained Assets, make Distributions and not unduly prolong the duration of the Plan Trust.  In so doing, the Trustee shall exercise its reasonable business judgment in liquidating the Trust Assets.  Without any further Bankruptcy Court approval (except as specifically required herein) and without the approval of the Advisory Committee (except as to Material Decisions), and subject in all respects to the other terms and conditions of this Agreement, the Trustee shall have the power to take the following actions:

(1)    liquidate the Trust Assets by any means permitted by law, liquidate the Trust Assets, cause any Plan Trust Entity to liquidate its Entity Assets, and cause any Debtor to liquidate its Retained Assets, including, without limitation, the sale of Trust Assets such assets and the prosecution or settlement of Causes of Action;

(2)    handle the prosecution or settlement of objections to and estimations of Claims;

2182597v918

(3)    calculate and implement all Distributions in accordance with the Plan; whether to be made on or after the Effective Date of the Plan;

(4)    manage the wind-down of the Debtor's operations, if any, including filing tax returns of the Debtors (including the filing of final tax returns and the payment of any taxes shown thereon, and the right to request an expedited determination under § 505 of the Bankruptcy Code), settling or satisfying Administrative Claims, Priority Tax Claims, and Priority Claims, and completing any sales of Assets that were not completed as of the Effective Date (including on behalf of any Debtor any sale of Retained Assets);

(5)    liquidate or otherwise dispose of collateral that secures any Allowed Secured Claim, and remit any proceeds of such disposition in accordance with the priority set forth in Section VI.D. of this Agreement;

(6)    file pleadings and papers and seek relief before the Bankruptcy Court or other courts of competent jurisdiction, where appropriate;

(7)    hold legal or beneficial title to the Trust Assets;

(8)    protect and enforce the rights to the Trust Assets vested in the Trustee by this Agreement by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable law and general principles of equity;

(9)    file, prosecute, settle, compromise, withdraw, litigate to judgment, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with Causes of Action and any other Claims in favor of or against the Plan Trust as the Trustee shall deem advisable;

(10)   establish, maintain and terminate accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, in which the Trust Assets or other Cash and property of the Plan Trust may be deposited, and draw checks or make withdrawals from such accounts on the sole signature of the Trustee;

(11)   execute any document or pleading, and file any pleading, ~~relating to the Trust Assets and~~incidental to the exercise of any of the Trustee's powers ~~and duties~~ granted herein (whether relating to the Trust Assets, any Entity Assets or any Retained Assets), including the exercise of the Debtors' or the Creditors Committee's respective rights as such rights existed prior to the Effective Date to conduct discovery and oral examinations of any party under Rule 2004 of the Federal Rules of Bankruptcy Procedure;

(12)   determine and satisfy any and all liabilities created, incurred or assumed by the Plan Trust;

(13)   pay all fees and expenses, and make all other payments relating to, the administration, management, maintenance, operation, preservation or liquidation of the Trust Assets ~~or~~by the Plan Trust, cause any Plan Trust Entity to do so with respect to its Entity Assets, and cause any Debtor to do so with respect to its Retained Assets, or relating to the pursuit of Causes of Action, and pay all U.S. Trustee Fees;

(14)   file or cause to be filed, if necessary, any and all tax and information returns with respect to any Debtor~~or~~, the Plan Trust or any Plan Trust Entity, and pay or cause to be paid taxes properly payable by any Debtor, the Plan Trust or any Plan Trust Entity, if any;

(15)   obtain insurance coverage with respect to the liabilities and obligations of the Trustee and the Plan Trust (including as an officer, director, manager, shareholder or member of any Plan Trust Entity or Debtor), in the form of an errors and omissions policy, fiduciary policy or otherwise~~)~~; provided, however, the Plan Trust is a successor of the Debtor for the purposes of continuing to receive benefits under insurance policies entered into by the Debtor;

(16)   obtain or cause to be obtained insurance coverage with respect to real and personal property which ~~may be~~is or may become Trust Assets, Retained Assets or Entity Assets;

(17)   dissolve any Entity (including any Debtor or Plan Trust Entity), terminate joint ventures, and otherwise wind up any Entity ~~owned by the Plan Trust~~;

2182597v918

(18)    create any Entity (referred to as a Plan Trust Entity) for the purpose of holding or managing ~~Trust~~Entity Assets, or in connection with the sale or other disposition thereof or for any other purpose ~~consistent with~~, and exercise on behalf of such Plan Trust Entity all the corporate or limited liability company or other powers available to such Plan Trust Entity under applicable law, and cause such Plan Trust Entity to dividend, as a return on capital, the net proceeds from the sale of Entity Assets, all such powers to be exercised in a manner that is consistent with the other provisions of this Agreement;

(19)    execute rights of setoff against any and all Claims, rights and Causes of Action of any nature that the Trustee may at any time hold against such Holder; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim under or in accordance with the Plan shall constitute a waiver or release by the Trustee of any such Claim, right or Cause of Action that the Trustee may at any time possess against such Holder;

**(20)**    retain and pay, or cause to be retained and paid, law firms to aid the Trustee in the prosecution of any Causes of Action that constitute ~~the~~ Trust Assets or Entity Assets, and to perform such other functions as may be appropriate, including advising or assisting the Trustee in the discharge of its duty as Trustee.  The Trustee may commit the Plan Trust to and shall pay such law firms' reasonable compensation for services rendered and expenses incurred.  A law firm shall not be disqualified because it was counsel to the Debtors or the Creditors' Committee or its members or continues to serve as counsel to the Debtors;

(21)    retain and pay, or cause to be retained and paid, public accounting firms to perform such reviews and/or audits of the financial books and records of the Plan Trust and any Plan Trust Entity, and to prepare and file any tax returns or informational returns for the Plan Trust and any Plan Trust Entity, or to consult on matters impacting the Plan Trust or any Plan Trust Entity.  The Trustee may commit the Plan Trust to pay, and shall ~~pay~~cause any Plan Trust Entity to pay, any such accounting firm's reasonable compensation for services rendered and expenses incurred;

(22)    retain and pay such other third parties as necessary or appropriate to assist the Trustee in carrying out its powers and duties under this Agreement.  The Trustee may commit the Plan Trust to pay, and shall ~~pay~~cause any Plan Trust Entity to pay, all such persons or entities reasonable compensation for services rendered and expenses incurred;

(23)    employ employees to assist the Trustee in carrying out its powers and duties under this Agreement.  The Trustee shall pay all such employees reasonable salaries in the amounts it shall determine are appropriate.  If the Trustee employs employees, it shall establish payroll procedures and pay any and all

2182597v~~9~~18

federal, state or local tax withholding required under applicable law with respect to such employees, obtain workers' compensation insurance, and take all other actions it deems necessary

(24)  invest any moneys held as part of the Trust Assets in accordance with the terms of Section III.EF.2 hereof;

(25)  represent the interests of the Beneficiaries with respect to any matters relating to the Plan, this Agreement or, the Plan Trust, or any Plan Trust Entity affecting the rights of such Beneficiaries; and engage in any transaction necessary or appropriate to the foregoing or to facilitate implementation of the Plan and the Confirmation Order, including but not limited to, entering into, performing and exercising rights under contracts and leases on behalf of the Plan Trust or any Plan Trust Entity;

(26)  act as disbursing agent for the FDIC to pay the Trade Creditor Recovery to the Trade Creditors from the FDIC Carve-out pursuant to the FDIC Settlement Agreement, and to otherwise perform all duties and enforce all rights of the Trustee or TBW under the FDIC Settlement Agreement;

(27)  act as disbursing agent for the FDIC to disburse the BB&T Funds to (i) borrowers harmed by TBW and Colonial Bank as a result of TBW's insolvency or (ii) investors that funded loans that did not close, as more particularly described in Section 1.7(d) of the FDIC Settlement Agreement; and

(28)  act as disbursing agent to disburse the Additional Trade Creditor Recovery and any other payments or distributions to be made to Holders of Allowed Trade Claims or other Claims pursuant to the Bayview Settlement Agreement, the Freddie Mac Settlement Agreement, the Natixis Settlement Agreement, the Sovereign Settlement Agreement, and any other settlement agreement to which any Debtor or the Plan Trust is or becomes a party;

(29)  serve as a director, officer or manager of TBW and any of its subsidiaries, with the power to appoint and remove any director, officer or manager of TBW and any of its subsidiaries, and in such capacities act as the Trustee deems appropriate with respect to any and all matters impacting TBW or any of its subsidiaries after the Effective Date, all as determined by the Trustee and in accordance with this Agreement; and

(30)  (28) assume such other responsibilities and powers as may be vested in the Trustee (in it capacity as such or in its capacity as an officer, director, manager, shareholder or member of any Plan Trust Entity) pursuant to the Plan or Bankruptcy Court Order or not inconsistent therewith, or as may be necessary and proper to carry out the provisions of the Plan.

2182597v918

**C.    Power to Declare ~~a~~ Disputed Ownership ~~Fund~~Funds.**  The Trustee shall be permitted to make the election described in § 1.468B-9(c)(2)(ii) of the Treasury Regulations to treat any portion of the Plan Trust subject to Disputed Claims as a "disputed ownership fund."  The Trustee may establish one or more disputed ownership funds with respect to Disputed Claims.  The Trustee may also, to the extent permitted by law, make such an election for state and local income tax purposes.  If the election is made to treat ~~the~~any Disputed Claims as a "disputed ownership fund," then the Plan Trust may (i) allocate taxable income or loss to ~~the~~such Disputed Claims, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed), and (ii) distribute Plan Trust Assets from the Disputed Claims Reserve as, when, and to the extent, such Claims that are Disputed cease to be Disputed, whether by virtue of becoming Allowed or otherwise resolved, subject to such approval of the Bankruptcy Court, if any, as may be required.  The Beneficiaries will be bound by such election, if made by the Trustee, and, as such, will, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

**D.    Power to Establish Qualified Settlement Funds.**  The Trustee shall be permitted to establish one or more "qualified settlement funds" within the meaning of the Internal Revenue Code and related Treasury Regulations with respect to any WARN Act Claims, or any other Claims for which a "qualified settlement fund" is required or permitted by law.

**E.    ~~D.~~Proof of Authority.**  No person dealing with the Plan Trust or any Plan Trust Entity shall be obligated to inquire into the authority of the Trustee or a Trust Administrator in ~~connectio~~connection with the protection, conservation or disposition of Trust Assets or Plan Trust Assets.  It is intended that a signed copy of this Agreement serve as adequate proof of the ~~Trustee's~~authority of the Trustee to act, if such proof is required for any reason by any third party.  If proof of authority of a Trust Administrator is required for any reason by any third party, it is intended that a signed copy of this Agreement, together with a letter signed by the Trustee confirming that such Person is as of a relevant date a Trust Administrator, serve as adequate proof of the authority of a Trust Administrator to act.  If proof of authority of a director, officer or manager of TBW or any of its subsidiaries is required for any reason by any third party, it is intended that a signed copy of this Agreement, together with a letter signed by the Trustee confirming that such Person is as of a relevant date a director, officer or manager of such entity, serve as adequate proof of the authority of such Person to act.

**F.    ~~E.~~Limitations on Trustee's Authority; Permitted Investments.**

1.    No Trade or Business.  The Trustee shall not and shall not be authorized to engage in any trade or business with respect to the Trust Assets (and shall not allow any Plan Trust Entity to do so with respect to Entity Assets) or any proceeds therefrom, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan Trust within the meaning of Treasury Regulation § 301.7701-4(d).  The Trustee shall take such actions consistent with the orderly liquidation of the Trust Assets and the Entity Assets as required by applicable law and consistent with the treatment of the Plan Trust as a liquidating trust under Treasury Regulation § 301.7701-4(d).

2.      Permitted Investments.  The Trustee is authorized to invest Trust Assets only in investments (a) that are consistent with the provisions of § 345 of the Bankruptcy Code unless ordered otherwise by the Bankruptcy Court and (b) that a liquidating trust within the meaning of Treasury Regulation § 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations, whether set forth in IRS rulings, notices, guidelines or other IRS pronouncements.  Subject to the foregoing, investments of Trust Assets (i) shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs and (ii) shall be limited to demand and time deposits, such as certificates of deposit, having maturities of not more than one year, and U.S. Treasury bills or other temporary liquid investments that are readily convertible to known amounts of Cash.  The Trustee shall have no liability for interest or producing income on any moneys received by the Plan Trust hereunder, and held for Distribution or payment to the Beneficiaries, except for interest income actually received by the Trustee.  The Trustee shall have no liability for any investment of Trust Assets which is approved by the Advisory Committee or the Bankruptcy Court.  The Trustee shall cause any Plan Trust Entity to comply with this paragraph as regards any Entity Assets comprised of Cash.

3.      Advisory Committee.  The Trustee must obtain the approval of the Advisory Committee regarding all Material Decisions, as described in Section V.D.  Further, the Advisory Committee, and not the Trustee, shall have the sole power to make any Unanimous Decision, as described in Section V.E.

4.      No Investment Company.  The Trustee shall not take any action that would result in the Plan Trust becoming subject to registration as an "investment company" pursuant to the Investment Company Act of 1940, as amended.

5.      No Commingling.  All moneys and other Assets received by the Plan Trust shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Beneficiaries, but need not be segregated from other Trust Assets, unless and to the extent required by law or by the Plan.  The Trustee shall not commingle any of the Trust Assets with its own property or the property of any other Person.  The Trustee shall cause any Plan Trust Entity to comply with this paragraph as regards any Entity Assets comprised of Cash.

**G.**      ~~F.~~ Reliance by Trustee.

1.      The Trustee, and the Trustee's agents (including any Trust Administrator), may rely upon, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

2182597v9_18_

2.     The Trustee, and the Trustee's agents (including any Trust Administrator), may consult with legal counsel, financial or accounting advisors, and other professionals to be selected by ~~it~~the Trustee, and neither the Trustee nor such agent shall not be liable for any action taken or omitted to be taken by it in accordance with the advice thereof.

3.     Persons dealing with the Trustee or any of the Trustee's agents (including any Trust Administrator) shall look only to the Trust Assets to satisfy any liability incurred by the Trustee or the Plan Trust to such ~~person~~Person in carrying out the terms of this Agreement, ~~and the~~. The Trustee shall have no personal obligation to satisfy any such liability, except to the extent such liability or obligation ~~are~~is determined by a Final Order to have resulted primarily and directly from the Trustee's gross negligence or willful misconduct.

**H.**   ~~G.~~**Authorization to Expend Trust Assets.**  The Trustee may incur reasonable and necessary expenses in liquidating and converting to Cash the Trust Assets ~~to Cash~~, any Plan Trust Entity's Entity Assets, and any Debtor's interest in Retained Assets.  Such expenses shall be payable from the corpus of the Plan Trust with a priority that is senior to Distributions to Beneficiaries.  Without limiting the foregoing, the Trustee may expend the Trust Assets (i) to pay fees and expenses of administration of the Plan Trust to perform the Trustee's obligations under this Agreement, or to cause any Plan Trust Entity or Debtor to liquidate its asset for the benefit of this Plan Trust ~~Plan Trust~~ (including, but not limited to, the fees and expenses of the Trustee, expenses of the Advisory Committee members and fees and expenses of their respective counsel, any taxes imposed on the Plan Trust or in respect of the Trust Assets, and fees and expenses in connection with litigation), and (ii) to satisfy other liabilities incurred or assumed by the Plan Trust or to which the Trust Assets or Entity Assets are otherwise subject under the Plan in accordance with this Agreement ~~or the Plan~~, the Plan or the Confirmation Order.  With respect to any Entity Assets, the Trustee may expend Trust Assets to cause any Plan Trust Entity to monetize its Entity Assets, and to maintain such assets until they are sold and the proceeds remitted to the Plan Trust.  With respect to any Retained Assets, the Trustee may expend Trust Assets to cause any Debtor to monetize the Retained Assets to which such Debtor has legal title, and to maintain such assets until they are sold and the proceeds remitted to the Plan Trust.  The Trustee shall not need the approval of the Bankruptcy Court to make any payment that the Trustee is authorized to make under this Agreement.

**I.     Trust Administrator.**  The Trustee may appoint one or more Persons to serve with the designation of Trust Administrators for the Plan Trust (each, a "Trust Administrator").  A Trust Administrator shall serve at the discretion of the Trustee.  The appointment or removal of a Trust Administrator shall be set forth in a letter or other notice of appointment or removal, addressed to such Person and signed by the Trustee, and shall be effective on the date stated in such notice.  It shall be the duty of any Trust Administrator to assist the Trustee in the performance of the Trustee's routine and administrative duties under this Agreement.  In furtherance of the foregoing, a Trust Administrator shall have the authority to take any of the following actions, in the name of or on behalf of the Plan Trust or any Estate of any Debtor:

1. handle all matters relating to the administration of mortgage loans or other Trust Assets owned by the Plan Trust, including without limitation the execution of documents on behalf of the Plan Trust or the Estate of any Debtor in connection with the amendment, refinancing, payoff or enforcement of any mortgage loan or other Trust Asset;

2. deposit funds into or transfer funds among any of the accounts maintained by the Trust, on the sole signature of the Trust Administrator or its authorized officer;

3. withdraw funds from any general operating account of the Plan Trust, on the sole signature of the Trust Administrator or its authorized officer, to pay routine or ordinary expenses of the Plan Trust;

4. obtain and preserve the Plan Trust's qualification to do business in any jurisdiction in which such qualification is necessary;

5. assist the Trustee in the routine tasks of the Trustee, in its capacity as an officer, director, manager, shareholder or member of any Plan Trust Entity or Debtor, and handle all of the matters described in paragraphs 1 through 4 above, but with respect to the Retained Assets or the Entity Assets, as applicable; and

2182597v918

6. comply with any written directive of the Trustee with respect to administrative matters or the routine operations of the Plan Trust.

In no event shall a Trust Administrator have the authority to withdraw funds or assets from any of the Plan Trust's deposit, time, investment or securities accounts, other than (i) if necessary to effect transfers among such accounts or (ii) to withdraw funds from any general operating account of the Plan Trust to pay routine or ordinary expenses of the Plan Trust. All such transfers and withdrawals shall be reflected in the books and records of the Plan Trust.

**J.    Post Effective Date Management.** As provided in the Plan, TBW, HAM and REO may continue to exist after the Effective Date. Thus, after the establishment of the Plan Trust and the appointment of the Trustee, TBW, HAM and REO may continue to act, by and through their directors, officers and managers, to the fullest extent provided under their respective articles, bylaws, limited liability company agreements and other organizational documents, and applicable law.

**K.    H. Compensation.**

1.    The Plan Trust shall reimburse the Trustee for the actual reasonable out-of-pocket expenses incurred by the Trustee, including, without limitation, necessary travel, lodging, postage, telephone and facsimile charges upon receipt of periodic billings.

2.    Subject to such adjustments as may be agreed to from time to time by the Advisory Committee and the Trustee, the Trustee and employees or agents of

the Trustee shall be entitled to receive compensation pursuant to that certain engagement letter attached hereto as <u>Exhibit A</u> for services rendered on behalf of the Plan Trust.  Any change in compensation must be agreed to by the Advisory Committee and the Trustee, and further Order of the Bankruptcy Court is not required.

3.   The Trust Assets shall be subject to the Claims of the Trustee and agents that the Trustee may engage as described in such engagement letter, and the Trustee shall be entitled, out of any Cash in the Plan Trust, to pay its compensation, to itself and such agents, and reimburse itself and such agents for all actual out-of-pocket expenses, and satisfy or recover any and all loss, liability, expense, or damage which the Trustee or such agents may incur or sustain in good faith in the exercise and performance of any of the powers and duties of the Trustee.

4.   All compensation and other amounts payable to the Trustee, for itself or such agents, shall be paid from the Trust Assets.  If the Cash in the Plan Trust shall be insufficient to compensate and reimburse the Trustee and such agents, as the case may be, for any amounts to which it the Trustee, for itself or its agents, is entitled hereunder, then the Trustee is hereby authorized to reduce to Cash in a commercially reasonable manner that portion of the Trust Assets necessary so as to effect such compensation and reimbursement.

2182597v918

5.   The Trustee shall not be required to file a fee application to pay itself any compensation provided for under this Agreement.   The Trustee's compensation shall, however, be subject to review and, if appropriate, objection by the Advisory Committee.

**L.**   ~~I.~~ **Bond.**  If the Bankruptcy Court so orders, the Trustee shall serve with a bond, the costs and expenses of which shall be paid by the Plan Trust.

**M.**   ~~J.~~ **Insurance.**  The Trustee shall obtain insurance with respect to the liabilities and obligations of the Trustee and the Advisory Committee under this Agreement (in the form of an errors and omissions policy or other appropriate policy), the costs and expenses of which shall be paid by the Plan Trust, unless both the Trustee and the Advisory Committee unanimously agree that such insurance shall not be required.

**N.**   ~~K.~~ **Confidentiality.**  The Trustee shall, and shall cause its agents and representatives to, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person or matter to which any of the Trust Assets relates or of which the Trustee has become aware in its capacity as Trustee.

**O.**   ~~L.~~ **Final Decree.**  It shall be the duty of the Trustee to seek and obtain a final decree or decrees from the Bankruptcy Court upon full administration of the Plan Trust.

**P.**   ~~M.~~ **Termination.**  The duties, responsibilities and powers of the Trustee shall terminate on the date the Plan Trust is dissolved under applicable law in accordance with the Plan.

## SECTION IV
## BENEFICIARIES

**A.    Maintenance of List of Beneficiaries.**  The Beneficiaries of the Plan Trust are comprised of all Holders of Allowed Claims against the Debtors, whether such Claims are Allowed as of or subsequent to the Effective Date.  If a Holder's Disputed Claim is resolved and becomes an Allowed Claim, the Holder shall receive the same percentage recovery as Holders of Allowed Claims in the same Class as if the Holder's Allowed Claim was an Allowed Claim as of the Effective Date of the Plan; provided, however, that post-Effective Date interest shall not be allowed.  The Trustee shall maintain a register identifying the record Holders of Beneficial Interests in the Trust.  All references to Beneficiaries shall mean Beneficiaries of record as set forth in the official register maintained by the Trustee and the term shall not mean any Holder of an Allowed Claim that is not recorded as a Beneficiary in such official registry.

**B.    Identification of Beneficiaries.**  In order to determine the actual names, addresses and tax identification numbers of the Beneficiaries with respect to any Debtor, the Trustee shall be entitled to conclusively rely on the names, addresses and tax identification numbers set forth in (1) such Debtor's Schedules, (2) such Debtor's Claims Register, or (3) the ~~proofs~~Proofs of ~~claim~~Claim filed against such Debtor with the Bankruptcy Court.  Each Beneficiary's right to any Distribution from the Plan Trust, which is dependent upon such Beneficiary's classification under the Plan, shall be that accorded to such Beneficiary under the Plan.  Each Distribution by the Trustee to the Beneficiaries shall be made in accordance with the terms set forth herein.  The Trustee may ~~establish~~establish a record date that it deems practicable for determining the Beneficiaries for a particular purpose.

**C.    Withholding.**  Unless otherwise permitted to be paid directly to a Beneficiary, the Trustee shall withhold from the amounts distributable to the Beneficiaries from the Trust Assets at any time such sum or sums as may be required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof.

**D.    Tax Identification Numbers.**  The Trustee shall require any Beneficiary to furnish to the Trustee its Employer or Taxpayer Identification Number as assigned by the IRS, and the Trustee may condition any Distribution to any Beneficiary upon receipt of such identification number.  For the avoidance of doubt, the Trustee may request Bankruptcy Court authority to release funds set aside for Distribution to Beneficiaries who have not provided proper tax identification numbers and make those funds available to the remaining Beneficiaries.

## SECTION V
## ADVISORY COMMITTEE

**A.    Duties and Powers.**  The Advisory Committee[3] is established pursuant to the terms of the Plan and shall function consistent with the Plan and this Agreement.  The Advisory Committee shall represent the interests of the Holders of Beneficial Interests during the existence of the Plan Trust, and shall have the obligation to undertake in good faith each of the acts and responsibilities set forth for the Advisory Committee in this Agreement or in the Plan for the

---

[3]    As used in this Agreement, the term "Advisory Committee" shall have the same meaning as the term "Plan Advisory Committee" used in the Plan.

benefit of the Beneficiaries.  The Advisory Committee shall begin to act on the Effective Date and shall oversee the actions of the Trustee in accordance with the terms of the Plan Trust Agreement until further Order of the Bankruptcy Court.

**B.    Advisory Committee Members.**  The Advisory Committee shall be appointed by the Creditors' Committee and identified in the Plan Supplement, and the Confirmation Order shall confirm the appointment of the initial Advisory Committee.  The Advisory Committee shall consist of three (3) members.  The initial three members shall be from the members of the Creditors' Committee.  In the event that less than three (3) of the members of the Creditors' Committee notify counsel to the Creditors' Committee of their intent to serve on the Advisory Committee within fifteen (15) days prior to the Confirmation Hearing, then the Creditors' Committee will either (i) choose from among the Holders of Unsecured Claims to fill any vacancy until three (3) members of such designation have been selected or (ii) elect not to fill the vacancy.   In the event of the resignation of a member of the Advisory Committee, the remaining members may, but need not, designate a successor from among the Holders of Unsecured Claims.  Unless and until any such vacancy is filled, the Advisory Committee shall function with such reduced membership.

**C.    Advisory Committee is a Fiduciary.**  The fiduciary duties that applied to the Creditors' Committee prior to the Effective Date, as limited by the exculpations, indemnifications, releases and other protections provided in the Plan, this Agreement, and the Confirmation Order, shall apply to the Advisory Committee.  The duties, rights and powers of the Advisory Committee shall terminate upon the termination of the Plan Trust.

2182597v918

**D.    Material Decisions.**  The Trustee shall consult with the Advisory Committee generally and shall obtain the consent or approval of the Advisory Committee before making any of the following decisions (each, a "Material Decision") which may, where indicated below, be obtained by Notice Approval (as defined below):

1.   the Trustee's commencement of the prosecution of (i) any Cause of Action in which the amount sought to be recovered (a) is greater than $1 million and less than or equal to $5 million, the approval or consent of which may be obtained by Notice Approval, or (b) exceeds $5 million, the approval or consent of which may not be obtained by Notice Approval, and (ii) any objection to a Claim having a stated amount (a) greater than $1 million and less than or equal to $5 million, the approval or consent of which may be obtained by Notice Approval or (b) greater than $5 million, the approval or consent of which may not be obtained by Notice Approval;

2.   the Trustee's determination not to object to a Claim having a stated amount (i) in excess of $1 million and less than or equal to $5 million, the approval or consent of which may be obtained by Notice Approval, or (ii) in excess of $5 million, the approval or consent of which may not be obtained by Notice Approval;

3.   the settlement of (i) any Cause of Action in which the amount sought to be recovered (a)  is greater than $1 million and less than or equal to $5 million, the approval or consent of which may be obtained by Notice Approval, or (b)

exceeds $5 million, the approval or consent of which may not be obtained by Notice Approval and (ii) any Disputed Claim having a stated amount (a) greater than $1 million and less than or equal to $5 million and to approve any release or indemnification to be given by the Trustee in connection with any such settlement, the approval or consent of which may be obtained by Notice Approval, or (b) in excess of $5 million and to approve any release or indemnification to be given by the Trustee in connection with any such settlement, the approval or consent of which may not be obtained by Notice Approval;

4.   any sale of ~~Assets~~<u>Trust Assets by the Plan Trust, sale of Entity Assets by a Plan Trust Entity, or sale of Retained Assets by a Debtor</u> for a price in excess of $500,000, other than a sale of REO; and, <u>provided</u> <u>further</u>, the Trustee may release any individual mortgage loan (including for an amount less than the outstanding unpaid balance of the loan) without the approval of the Advisory Committee;

5.   all Distributions proposed by the Trustee;

6.   the investment of Cash or other Trust Assets, except for investments in demand and time deposits, such as certificates of deposit, having maturities of less than one year and in U.S. Treasury bills;

7.   the dissolution of any Debtor;

8.   the waiver of the attorney-client privilege by the Trustee with respect to any Cause of Action or other litigation related matter, as described in Section XI.C of this Agreement;

9.   the election to treat any portion of the Plan Trust as a "disputed ownership fund" pursuant to § 1.468B-9(c)(2)(ii) of the Treasury Regulations;

10.   the election described in Article 7.J. of the Plan as regards undeliverable Distributions<u>; and</u>

11.   <u>the election to abandon any Trust Asset under Section II.B.2(iii).</u>

Notwithstanding any provision herein to the contrary, the approval of any Material Decision that the Trustee may obtain by Notice Approval may be obtained in the following manner (such process being referred to herein as "<u>Notice Approval</u>"):  The Trustee shall give written notice to the Advisory Committee of any request to approve a Material Decision.  The Advisory Committee shall have two (2) Business Days to deliver a response to such request to the Trustee.  In the event emergency action is required with respect to any such matter as to which the Trustee is seeking Notice Approval and the Trustee is unable to provide two (2) Business Days' notice as required herein, then, to avoid injury or harm to the ~~Plan~~ Trust Assets or its Beneficiaries, the Trustee may in its written request to approve a Material Decision shorten the notice period (a "<u>Shortened Notice</u>") and shall therein give such notice as may be practicable under the circumstances.  If the Trustee does not receive a written objection to such request from a member of the Advisory Committee

within the applicable time period as provided herein or in any Shortened Notice, the Trustee shall be deemed to have obtained the approval and consent of such member of the Advisory Committee to the Trustee's request to approve such Material Decision.  All requests to approve a Material Decision, including any Shortened Notice, and all responses, if any, shall be given in accordance with Section 11.XI.H of this Agreement, which allows for notice by electronic mail, among other means.   "Business Day" means any day except a Saturday, Sunday or other day on which commercial banks in New York City are authorized by law to close.

After consulting with the Advisory Committee, the Trustee may also, but is not required to, submit a proposed settlement to a court of competent jurisdiction, including the Bankruptcy Court, for its approval, and may comply with any settlement approved by such court.

If any decision described in paragraphs 1 through 11 above of this Section V.D is to be effectuated by TBW, HAM or REO after the Effective Date of the Plan, rather than effectuated by the Plan Trust or the Trustee, then TBW, HAM or REO, as the case may be, shall obtain the consent or approval of the Advisory Committee, or follow the requirements applicable to the Trustee to obtain Notice Approval, of such decision prior to making such decision, and such decision shall be considered a Material Decision for all purposes under this Agreement.

**E.    Unanimous Decisions.**  The Advisory Committee shall have the absolute right and power to determine the following by the unanimous vote of all the members of the Advisory Committee (each, a "Unanimous Decision"):

2182597v918

    1.    to change the initial bond (if any bond is required by the Bankruptcy Court) to be posted by the Trustee; and

    2.    to petition the Bankruptcy Court to remove the Trustee for Cause (as such term is defined in Section IX.A below), or to select a successor Trustee when a successor is required hereunder.

**F.    Conflicts.**  If the Trustee in good faith perceives a conflict between a provision of this Agreement and a direction by the Advisory Committee, the Trustee may promptly deliver a notice to the Advisory Committee requesting clarification and proposing a course of action to be taken by the Trustee.  If the Trustee does not receive a written response within three (3) Business Days after receipt of such notice by the Advisory Committee, the Trustee may take such actions as it deems advisable and consistent with the terms of the Plan and this Agreement.  In the event a response to such notice is timely received and a disagreement among the parties as to the correct course of action persists, the Trustee shall promptly seek resolution of such matter by the Bankruptcy Court.  In the event emergency action is required by the Trustee, and the Trustee is unable to provide three (3) Business Days' prior written notice of a conflict, the Trustee is authorized to act notwithstanding the perceived conflict in order to avoid irreparable injury or harm to the Plan Trust Assets and its Beneficiaries and shall give such notice, if any, as may be practicable under the circumstances.

**G.    Bylaws and Voting; Selection of Chair; Execution of Documents.**  The members of the Advisory Committee may adopt bylaws.  A majority of the members of the Advisory Committee shall constitute a quorum.  Except with regard to a Unanimous Decision, a majority vote

is required for the Advisory Committee to act on matters before it.  In the case of a tie vote, including a tie vote on any Material Decision, the vote of the Trustee shall be taken to break the tie. The Advisory Committee may meet and vote in person or telephonically, and each member shall be entitled to receive reasonable notice of any such meeting.  The members of the Advisory Committee shall select a Chair, and the Chair shall be authorized to execute any document and give any notice provided for herein on behalf of the Advisory Committee.

> **H.    Reporting.**  The Trustee shall submit such reports as it deems reasonable to the Advisory Committee (but at a minimum quarterly), including, without limitation, reports on the commencement and prosecution of Causes of Action and the proceeds of liquidation of the Trust Assets.  The Trustee shall also report to the Advisory Committee, at the request of any member of the Advisory Committee, on any matter that reasonably relates to the Trust Assets; provided, however, that in providing such reports the Trustee shall not take any action that will in any way infringe on the attorney-client privilege or jeopardize the viability of on-going litigation by reporting on Causes of Action directly or indirectly to any interested parties that may be on the Advisory Committee.

> **I.    No Compensation; Reimbursement of Committee Members.**  The members of the Advisory Committee shall serve without compensation, except for reimbursement of fees and expenses as provided for in the Plan and this Agreement.  The Plan Trust shall reimburse each member of the Advisory Committee for its respective reasonable and documented expenses, including out-of-pocket expenses relating to airfare, hotel, meals and other travel costs, and postage telephone and facsimile charges, for work performed on behalf of or relating to the administration of the Plan Trust or the Advisory Committee, and other necessary expenses. Reimbursement shall include expenses incurred for fees and expenses of counsel to any member of the Advisory Committee in assisting such member to perform its duties hereunder.  Reimbursement for fees and expenses of each Advisory Committee member and its counsel shall be subject to a cap to be determined jointly by the Advisory Committee and the Trustee.  All amounts payable pursuant to this paragraph shall be paid from the Trust Assets.  If the Cash in the Plan Trust shall be insufficient to effect such reimbursement, then the Trustee is hereby authorized to reduce to Cash in a commercially ~~reasonably~~ reasonable manner that portion of the Trust Assets necessary to effect such reimbursement.  The members of the Advisory Committee shall not receive fees or compensation from the Plan Trust for their service as members thereof.  The Advisory Committee shall not retain counsel for the Advisory Committee at the expense of the Plan Trust, unless pursuant to an Order of the Bankruptcy Court for cause shown.

> **J.    Objection to Fees.**  The Advisory Committee shall have the right, within 7 days from the delivery of a fee statement, to object to the fees of any professional retained by either the Plan Trust or the Advisory Committee.  The objection shall be lodged by giving notice of any such objection to the professional seeking compensation or reimbursement.  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  Any objection that remains unresolved 15 days after it is made may be submitted to the Bankruptcy Court for resolution.  The uncontested portion of each invoice shall be paid within 20 days after its delivery to the Advisory Committee and the Trustee.

**K.        Termination.**  The duties, responsibilities and powers of the Advisory Committee shall terminate on the date the Plan Trust is dissolved under applicable law in accordance with the Plan.

**SECTION VI**
**DISTRIBUTIONS**

**A.        Application of Trust Assets.**  The Trustee shall apply Trust Assets only in accordance with this Agreement and the Plan.

**B.        Distributions.**  The Trustee shall make Distributions in accordance with Article 7 of the Plan.  The Trustee may hold back from any interim Distributions made under the Plan amounts credited to Reserves.

**C.        Reserves Established by Trustee.**  The Trustee shall maintain the Plan Trust Operating Expense Reserve, the Administrative and Priority Claims Reserve, and the Disputed Claims Reserve, as provided for in Article 7.C of the Plan.  The Trustee may decrease the amount of any Reserve established for any Estate, and may allocate Plan Trust expenses among the Estates and the various Reserves established for the Estates of the Debtors, as the Trustee determines is appropriate; provided, however, the Trustee shall not decrease the amount allocated to the Administrative and Priority Claims Reserve or any Disputed Claims Reserve without seeking approval of the Bankruptcy Court and in connection therewith, providing notice of any applicable proceedings in the Bankruptcy Court (i) in connection with any proceeding seeking to reduce the amounts allocated to the Administrative and Priority Claim Reserve, to all parties holding an Administrative or Priority Claim, and (ii) in connection with any proceeding seeking to reduce the amounts allocated to any Disputed Clams Reserve of any Estate, to all parties holding a Disputed Claim against such Estate.

**D.        Priorities**.  Cash available for distribution pursuant to Paragraph B of this Section VI with respect to each Debtor's Estate shall be paid in accordance with the priorities provided for in Article 7.E of the Plan.

**E.        *De Minimis* Distributions.**  All *De Minimis* Distributions shall be administered as provided for in Article 7.H of the Plan.

**F.        Undeliverable Distributions.**  Any undeliverable Distributions shall be administered as provided for in Article 7.J of the Plan.

**G.        Compliance with Laws.**  Any and all Distributions made by the Trustee shall be in compliance with applicable laws, including, but not limited to, applicable tax, federal and state securities laws.

- 21 -

**SECTION VII**
**REPORTS, TAX MATTERS, BOOKS AND RECORDS**

      **A.**     **Initial Valuation.**  The Trustee shall file with the Bankruptcy Court as soon as practicable after the Effective Date an initial valuation of the Trust Assets, as more particularly described in Section II.F of this Agreement.

      **B.**     **Annual Financial Statements and Statement to Beneficiaries.**  As soon as practicable after the end of each calendar year and as soon as practicable upon termination of the Plan Trust, the Trustee shall (i) submit to the Bankruptcy Court and the Advisory Committee financial statements of the Plan Trust at the end of such calendar year or period and the receipts and disbursements of the Plan Trust for such period, and (ii) subject to Section VII.D, mail to each Beneficiary a separate statement for each Beneficiary setting forth such Beneficiary's share of items of income, gain, loss, deduction or credit and advise all such Beneficiaries to report such items on their federal and state income tax returns, except as otherwise provided for U.S. federal income tax purposes in the event that the Trustee timely elects to treat any portion of the Plan Trust as a "disputed ownership fund" pursuant to § 1.468B-9(c)(2)(ii) of the Treasury Regulations.

      **C.**     **Quarterly Filings with Bankruptcy Court and U.S. Trustee.**  From the Effective Date until a Final Decree is entered, the Trustee shall, within 45 days of the end of each calendar quarter, file with the Bankruptcy Court and submit to the U.S. Trustee quarterly reports setting forth all receipts and disbursements of the Plan Trust as required by the U.S. Trustee guidelines.

2182597v918

      **D.**     **Federal Income Tax.**  Except to the extent that any portion of the Plan Trust is treated as a "disputed ownership fund" or a "qualified settlement fund" for U.S. federal income tax consequences, the following shall apply:

          1.     <u>Tax Reporting</u>.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Trustee), the Trustee shall file returns for the Plan Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a).

          2.     <u>Allocations of Plan Trust Taxable Income</u>.  Items of income, gain, loss, expense, and other tax items will be allocated to those Beneficiaries that would be entitled to receive such items if they constituted Cash distributions or reductions therefrom, and such Beneficiaries shall be responsible for the payment of taxes on a current basis that result from such allocations.

      **E.**     **Other Filings.**  The Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Plan Trust that are required to be filed under applicable law, guidelines, rules and regulations of any Governmental Authority.

      **F.**     **Disputed Ownership Fund – Tax Effect**.  Notwithstanding anything in this Agreement to the contrary, in the event that the Trustee timely elects to treat any portion of the

Plan Trust subject to Disputed Claims as a "disputed ownership fund" pursuant to § 1.468B-9(c)(2)(ii) of the Treasury Regulations, any Holders of Claims who, as of the Effective Date, are holders of Disputed Claims shall, to the extent of such Disputed Claims, not be treated as having received any portion of the Assets ~~upon the transfer of the Assets~~as to which legal or beneficial title is transferred to the Plan Trust hereunder and shall not be deemed grantors of the Plan Trust to the extent of such Disputed Claims for U.S. federal income tax purposes, but rather shall be subject to U.S. federal income taxation in accordance with rules set forth in Section 468B of the Internal Revenue Code and the Treasury Regulations thereunder.

**G.     Qualified Settlement Fund – Tax Effect.** In the event that any portion of the Pan Trust is treated as a "qualified settlement fund" pursuant to § 1.468B-1 of the Treasury Regulations, the U.S. federal income tax consequences shall be determined in accordance with rules set forth in Section 468B of the Internal Revenue Code and the Treasury Regulations thereunder.

**H.**     ~~G.~~**Books and Records.** The Trustee shall maintain books and records relating to the Trust Assets, the income of the Plan Trust, and the payment of expenses of, the liabilities of or assumed by, and the Claims against, the Plan Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof in accordance with applicable law. Such books and records shall be maintained on a modified Cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Plan Trust. Except for reports required by this Section VII, nothing in this Agreement requires the Trustee to file any accounting with respect to Trust Assets. Holders of Beneficial Interests shall have the right upon thirty (30) days' prior written notice delivered to the Trustee to inspect such books and records (including financial statements), subject, however, to the requesting Person entering into a confidentiality agreement, satisfactory in form and substance to the Trustee, prior to such inspection. Nothing in this Agreement provides any Beneficiary with a right to review, inspect, seek discovery of or otherwise obtain any information that is privileged or subject to a third party's rights of privacy or confidentiality.

**SECTION VIII**
**LIMITATION OF LIABILITY**

**A.     Exculpation.** Neither the Trustee nor any member of the Advisory Committee, nor their respective employees, professionals, agents, representatives or designees, including any Trust Administrator, nor any director, officer or manager of TBW or any of its subsidiaries who held such position on or after the Effective Date (each, a "Plan Trust Exculpated Party" and collectively, the "Plan Trust Exculpated Parties"), shall be liable for any Claims, causes of action, liabilities, obligations, losses, damages, costs and expenses (including attorneys' fees and expenses), and other assertions of liability (collectively "Plan Trust Released Claims") arising out of the discharge of the powers and duties conferred upon the Trustee or the Advisory Committee by this Agreement, the Plan or any Order of the Bankruptcy Court, or requested to be performed by the Trustee or any member of the Advisory Committee, other than for Plan Trust Released Claims determined by a Final Order to have arisen or resulted solely from such Plan Trust Exculpated Party's gross negligence or willful misconduct. Any action taken or omitted to be taken with the approval of the Bankruptcy Court or the Advisory Committee will conclusively be deemed not to constitute gross negligence or willful misconduct. With regard to the investment of Trust Assets, no Plan Trust Exculpated Party shall have any liability for any decision regarding the investment of Trust Assets

- 23 -

if that investment decision is approved by the Advisory Committee or the Bankruptcy Court.  No Holder of a Claim or other Person will have or be permitted to pursue any Claim or cause of action against any Plan Trust Exculpated Party for making or approving, or not making or approving, payments or Distributions in accordance with the Plan or for implementing the provisions of the Plan.  The Trustee and the members of the Advisory Committee shall have absolute discretion to pursue or not to pursue any and all Claims, Causes of Action, or other matters, activities or things as it determines is in the best interests of the Beneficiaries using their reasonable business judgment and consistent with the purposes of the Plan Trust, and shall have no liability for the outcome of their decisions, except as provided in this paragraph.  The Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee under the Bankruptcy Code and the Advisory Committee shall be entitled to enjoy all of the rights, powers, immunities and privileges of an official committee of unsecured creditors under the Bankruptcy Code.  Each of the Trustee and the members of the Advisory Committee, may, in connection with the performance of its respective functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, not taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.  Notwithstanding such authority, neither the Trustee nor any member of the Advisory Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Trustee or such member or any other Plan Trust Exculpated Party, unless such determination is determined by a Final Order to be solely due to such Plan Trust Exculpated Party's gross negligence or willful misconduct.

2182597v9̶18

**B.      Indemnification**.  To the fullest extent permitted by applicable law, the Plan Trust shall indemnify, defend and hold harmless each Plan Trust Exculpated Party from and against any and all Plan Trust Released Claims arising out of or resulting from such Plan Trust Exculpated Party's acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Plan Trust or the Plan or the discharge of its duties hereunder or thereunder, or at the request of the Trustee or any member of the Advisory Committee, including without limitation, relating to any action, suit, proceeding or investigation brought by or threatened against such Plan Trust Exculpated Party; provided, however, that no such indemnification will be made to such Plan Trust Exculpated Party for Plan Trust Released Claims determined by a Final Order to have arisen or resulted solely from such Plan Trust Exculpated Party's gross negligence or willful misconduct.  All Plan Trust Released Claims for which indemnity is provided under this Agreement to any Plan Trust Exculpated Party shall be payable on demand from Trust Assets prior to payment to Beneficiaries from Trust Assets.  The Trustee may commit the Plan Trust to indemnify any Plan Trust Exculpated Party in accordance with the terms of this Section in any engagement letter or contract that the Trustee may enter into in connection with hiring or retaining such third parties pursuant to this Agreement.

**SECTION IX**
**SUCCESSOR TRUSTEE**

**A.      Removal.**  The Trustee may be removed by the Bankruptcy Court upon petition made by the Advisory Committee for Cause.  For purposes of the removal of the Trustee, "Cause" shall mean any of the following actions or omissions of the Trustee in connection with serving in

its capacity as Trustee for the Plan Trust:   (i) the commission of an act of fraud, misappropriation, dishonesty, embezzlement, gross negligence or willful misconduct which is materially injurious to the Plan Trust or any Beneficiary; (ii) criminal felony indictment; or (iii) the continuing and/or willful failure to perform the duties or obligations of the Trustee as set forth in this Agreement, if such failure is not cured within fifteen (15) days after written notice from the Advisory Committee.

**B.     Resignation; Death.**  The Trustee may resign by giving not less than thirty (30) days' prior written notice thereof to the Bankruptcy Court.  Such resignation shall become effective on the later to occur of (i) the date specified in such notice and (ii) the selection of a successor and the acceptance by such successor of such appointment.  If the Trustee dies, the Advisory Committee must promptly appoint a successor Trustee.

**C.     Acceptance of Appointment by Successor Trustee.**  Any successor Trustee shall be chosen by the Advisory Committee.  In the event of extended delay in the appointment by the Advisory Committee, the Bankruptcy Court shall appoint a successor Trustee.  Any successor Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall file such acceptance with the Plan Trust records.  If required as a condition to a successor Trustee's appointment, the successor should post a bond or provide evidence of insurance adequate to ensure the performance of the obligations of the successor hereunder.  Thereupon, such successor Trustee shall, without any further act, become vested with all the estate's properties, rights, powers, trusts and duties of its predecessor in the Plan Trust with like effect as if originally named herein.

2182597v9̶18̶

**D.     Continuation of Plan Trust.**  The death, resignation or removal of the Trustee shall not operate to terminate the Plan Trust created by this Agreement or revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action taken by the Trustee.  The Trustee agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the Trustee and the Trustee's successors or assigns.  In the event of the resignation or removal of the Trustee, the Trustee shall (if alive and competent) promptly perform each of the following:

1.     execute and deliver by the effective date of resignation or removal instruments conveying and transferring to such successor Trustee under the Plan Trust all the estates, properties, rights, powers, and trusts of such predecessor Trustee, and such other documents, instruments and other writings as may be reasonably required by the successor Trustee to effect the termination of the resigning or removed Trustee's capacity under this Agreement;

2.     deliver to the successor Trustee all documents, instruments, records and other writings relating to the Plan Trust as may be in the possession or under the control of the resigning or removed Trustee, and

3.     assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee.

The resigning or removed Trustee hereby appoints the successor Trustee as its attorney-in-fact and agent with full power of substitution and in its name, place and stead to do any

and all such acts that such resigning or removed Trustee is obligated to perform under this Section. This power of attorney is coupled with an interest and is irrevocable.

## SECTION X
## EVIDENCE OF AND NON-TRANSFERABILITY OF BENEFICIARY'S INTERESTS

**A.      Beneficial Interests Maintained in Book Entry Form.**  All Beneficial Interests shall be uncertificated and deemed issued by book entry only, in the register maintained by the Trustee.

**B.      Non-Transferability of Beneficial Interests.**  Subject to Section X.C below, the Beneficial Interests are non-transferable.   Any purported assignment, pledge, mortgage, sale, transfer or other disposition other than as permitted by Section X.C below shall be void and will not be registered on the register maintained by the Trustee.

**C.      Limited Exception to Non-Transferability of Beneficial Interests.**  The Beneficial Interests of any Beneficiary in the Plan Trust are not transferable except after written notice to the Trustee *only*:  (i) pursuant to applicable laws of descent and Distribution (as in the case of a deceased individual Beneficiary); ~~or~~ (ii) by operation of law (as in the case of a merger of a Beneficiary that is an entity); or (iii) pursuant to any applicable rights of the Federal Housing Finance Agency under the Housing and Economic Recovery Act of 2008 as Conservator of Freddie Mac.  The Trustee shall not be required to record any transfer in favor of any transferee which, in the sole discretion of the Trustee, is or might be construed to be ambiguous or to create uncertainty as to the Holder of the interest in the Plan Trust.  Until a transfer of a Beneficial Interest is in fact recorded on the books and records maintained by the Trustee for the purpose of identifying Beneficiaries, the Trustee, whether or not in receipt of documents of transfer or other documents relating to the transfer, may nevertheless make Distributions and send communications to Beneficiaries, as though it has no notice of any such transfer, and in so doing the Trustee shall be fully protected and incur no liability to any purported transferee or any other Person.

**D.      Beneficial Interests in Plan Trust Not a Security.**  Under § 1145 of the Bankruptcy Code, the issuance and transfer of Beneficial Interests under the Plan shall be exempt from registration under the Securities Act of 1933 and applicable state and local laws requiring registration of securities.

## SECTION XI
## MISCELLANEOUS

**A.      Amendment; Waiver.**  This Agreement cannot be amended or waived without the majority vote of the Advisory Committee (or, in the event that there are less than three (3) members then serving, the unanimous vote of the Advisory Committee) and the consent of the Trustee; provided, however, that no change shall be made to this Agreement that would adversely affect the federal income tax status of the Plan Trust as a "grantor trust" in accordance with Section VII.D. All amendments to this Agreement shall be in writing and signed by the Trustee and the Chair of the Advisory Committee.

**B.    Intention of Parties to Establish Grantor Trust.**  This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

**C.    Successor; Preservation of Privilege.**  The Plan Trust shall be the successor to the Debtors and/or the Creditors' Committee for the purposes of §§ 1123, ~~1129~~1129, 1142 and 1145 of the Bankruptcy Code and with respect to all Causes of Action and other litigation-related matters. In connection with the rights, Claims, and Causes of Action that constitute the Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Plan Trust shall vest in the Plan Trust and its representatives, and the Debtor, the members of the Creditors' Committee, and the Trustee are authorized and directed to take all necessary actions to effectuate the transfer of such privileges.  The Trustee and the Advisory Committee shall be deemed to have a joint and common interest and, as such, communications among the Trustee and the Advisory Committee shall be protected from disclosure.  The Trustee may waive its attorney-client privilege with respect to any Cause of Action or other litigation-related matter, or portion thereof, in the Trustee's discretion, subject to the approval of the Advisory Committee.

**D.    Bankruptcy Court Jurisdiction.**  As provided in Article 13 of the Plan, the Bankruptcy Court has and shall retain post-Confirmation jurisdiction over all controversies, suits and disputes that may arise under this Agreement, including, without limitation, the interpretation or enforcement of this Agreement, the Distribution of Trust Assets (including without limitation the Persons entitled to receive any Distribution and jurisdiction over any interpleader action that the Trustee may file in the Bankruptcy Court to determine the identity of such Persons), the maintenance or liquidation of any Entity Assets by any Plan Trust Entity, the maintenance or liquidation of any Retained Assets by any Debtor, any petition to remove the Trustee, and any disputes between the Trustee, the Plan Trust, the Advisory Committee, and Holders of Claims or Interests.  The Trustee shall also have standing in any such proceeding to represent and enforce the rights of the Plan Trust and the Beneficiaries arising under this Agreement or the Plan, and the Advisory Committee shall have standing in any such proceeding to appear.  Any and all Claims against or disputes to which the Trustee or the Advisory Committee is a party regarding this Agreement, the amount of Distributions to be made hereunder or under the Plan, or the Persons to whom such Distributions should be remitted, are subject to the exclusive jurisdiction of the Bankruptcy Court, to the extent the Bankruptcy Court has retained post-Confirmation jurisdiction over such matter.

**E.    Cooperation.**  The Debtors shall provide the Trustee with copies of their books and records as the Trustee shall reasonably require for the purpose of performing its duties and exercising its powers hereunder.

**F.    Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without giving effect to rules governing the conflict of law.

**G.    Severability.**  If any provision of this Agreement or the application thereof to any person or circumstance shall be determined by a Final Order of a court of competent jurisdiction to be invalid or unenforceable to any extent, then (a) such provision shall be deemed enforceable only to the extent necessary to comply with applicable law, as applied to any Persons or circumstances

as to which it is held invalid or unenforceable, and shall be enforced as so modified to the fullest extent permitted by law, and (b) the remainder of this Agreement, and the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and shall be valid and enforced to the fullest extent permitted by law.

       **H.**    **Notices.**  All notices, demands, consents, requests and other communications required or permitted to be given or made hereunder (collectively, "<u>Notices</u>"), except as otherwise specifically provided in this Agreement, shall be in writing, addressed to such party at its address as set forth below, and either (a) delivered in person, (b) mailed, by certified, registered or express mail, postage prepaid, (c) sent in a prepaid overnight delivery envelope via a nationally-recognized courier service (such as Federal Express), (d) faxed, or (e) sent by e-mail; <u>provided</u> that any party may change its address for notice by designating such party's new address ~~or~~, facsimile number <u>or e-mail address</u> in a Notice to the sending party given at least five (5) Business Days before it shall become effective.  All Notices shall be conclusively deemed to have been properly given when received or, if addressed in accordance with this Section and (1) if delivered in person, upon receipt, (2) if mailed by certified, registered or express mail, postage prepaid, on the third (3rd) Business Day after being deposited in the mails, (3) if sent by nationally-recognized courier service, on the next Business Day, (4) if faxed, when sent if confirmation of the transmission is shown on the sending machine, and (5) if ~~emailed~~<u>e-mailed</u>, when sent if no delivery failure message is received.

2182597v~~9~~<u>18</u>

           **If to the Debtors:**

               Taylor, Bean and Whitaker Mortgage Corp.
               Home America Mortgage, Inc.
               REO Specialists, LLC
               c/o Neil F. Luria
               Suite 120, Millenia Park One
               4901 Vineland Road
               Orlando, FL 32811
               Facsimile:  801-751-9537
               ~~Email~~<u>E-mail</u>:  nluria@navigantcapitaladvisors.com

           **If to the Trustee:**

               Neil F. Luria
               Suite 120, Millenia Park One
               4901 Vineland Road
               Orlando, FL 32811
               Facsimile:  801-751-9537
               ~~Email~~<u>E-mail</u>:  nluria@navigantcapitaladvisors.com

With a copy to:

> Berger Singerman, P.A.
> 200 S. Biscayne Boulevard
> Suite 1000
> Miami, FL 33131
> Telephone:  (305) 714-4343
> Attn:   Paul Steven Singerman
> E-mail: singerman@bergersingerman.com

> and

> Berger Singerman, P.A.
> 350 East Las Olas Boulevard
> Suite 1000
> Fort Lauderdale, FL 33301
> Telephone:  (954) 627-9901
> Attn:   James L. Berger
> E-mail:  jberger@bergersingerman.com

**If to members of the Advisory Committee:**

2182597v918

The address ~~or~~ facsimile number or e-mail address for notices provided by such member to the Trustee

**I.    Notices if to a Beneficiary.**  Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box, and addressed in the name of and to the address set forth on the Debtor's Schedules or such Beneficiary's ~~proof~~Proof of ~~claim~~Claim, such other notice filed with the Bankruptcy Court and the Plan Trust, or by other means reasonably calculated to apprise the Beneficiary.

**J.    Third-Party Beneficiary.**  There shall be no third-party beneficiaries of the Plan Trust; provided, however, that the Advisory Committee shall be an express third-party beneficiary hereof.

**K.    Headings.**  The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

**L.    Counterparts.**  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.  A facsimile copy of a signature page is the equivalent of an original signature page.

**M.    Definitions; Rules of Construction.**  Capitalized terms used herein without definition shall have the respective meanings assigned to such terms in the Plan.  References to a

"Section" or "§"shall be to a Section to this Agreement unless otherwise specifically provided. Any term defined therein may be used in the singular or plural. The terms "include," "includes" and "including" shall be deemed to be followed by "without limitation." All pronouns used therein shall be deemed to cover all genders. Except as otherwise specified or limited therein, references to any Person include the successors and assigns of such Person. References "from" or "through" any date mean, unless otherwise specified, "from and including" or "through and including," respectively. Unless otherwise specified therein, all payments described or references to "$" therein shall refer to United States Dollars. References to any agreement, instrument or document shall include all schedules, exhibits, annexes and other attachments thereto.

[Signatures on following page]

2182597v918

- 30 -

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**DEBTORS:**

**TAYLOR, BEAN & WHITAKER MORTGAGE CORP.,
HOME AMERICA MORTGAGE, INC., and
REO SPECIALISTS, LLC**

By:_____
    Neil F. Luria, solely in his capacity as
    Chief Restructuring Officer

**TRUSTEE:**

_____
**Neil F. Luria**, in his personal capacity

2182597v918

<u>Exhibit A</u>

Engagement Letter

# Exhibit B

## Retained Assets

Document comparison by Workshare Professional on Sunday, July 10, 2011 9:19:54 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://ATLDMS01/Atlanta01/2182597/9 |
| Description | #2182597v9<Atlanta01> - TBW Plan Trust Agreement |
| Document 2 ID | interwovenSite://ATLDMS01/Atlanta01/2182597/18 |
| Description | #2182597v18<Atlanta01> - TBW Plan Trust Agreement |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 310 |
| Deletions | 178 |
| Moved from | 7 |
| Moved to | 7 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 502 |