IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

TAYLOR, BEAN & WHITAKER MORTGAGE
CORP., REO SPECIALISTS, LLC, and HOME
AMERICA MORTGAGE, INC.,

Debtors.

Chapter 11

Case No. 3:09-bk-07047-JAF
Case No. 3:09-bk-10022-JAF
Case No. 3:09-bk-10023-JAF

*Jointly Administered Under
Case No. 3:09-bk-07047-JAF*

## ORDER CONFIRMING THIRD AMENDED AND RESTATED JOINT PLAN OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Before the Court is the Plan Proponents'[1] request to confirm the *Third Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 3240], filed June 22, 2011. The Plan is a liquidating plan overwhelmingly supported by Holders of Claims, and virtually all objections have been consensually resolved. After consideration of the arguments, evidence, and proffers made at or in connection with the Confirmation Hearing, the Court, having approved the settlement agreements proposed in connection with the Plan, to wit: the FDIC Settlement Agreement,[2] the REMIC Settlement Agreement, the Freddie Mac Settlement Agreement, the Sovereign Settlement Agreement,[3] the Natixis Settlement Agreement, the Bayview

---

[1] All capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2] The term "*FDIC Settlement Agreement,*" as used in this Confirmation Order, means the FDIC Settlement Agreement and all five amendments thereto.

[3] The term "*Sovereign Settlement Agreement*" as used in this Confirmation Order and in the Plan means the Settlement Agreement among Sovereign, the Debtor and the Creditors' Committee.

Settlement Agreement and the Bank of America Settlement Agreement[4] (collectively the "**Settlement Agreements**"), confirms the Plan.

## Procedural History

1.     On August 24, 2009, TBW commenced its Chapter 11 Case, and on November 24, 2009, REO and HAM commenced their Chapter 11 Cases.  The Chapter 11 Cases are being jointly administered.

2.     On September 21, 2010, Plan Proponents filed their *Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 1966], and Debtors filed their *Disclosure Statement of the Debtors, Pursuant to Section 1125 of the Bankruptcy Code, With Respect to Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 1968].

3.     On November 4, 2010, Plan Proponents filed their *First Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 2119], and Debtors filed their *First Amended and Restated Disclosure Statement of the Debtors, Pursuant to Section 1125 of the Bankruptcy Code, With Respect to Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 2120].

---

[4] The term *"Bank of America Settlement Agreement,"* as used in this Confirmation Order, means the Settlement Agreement attached as Exhibit A to the Motion to Approve Settlement Agreement by and among Taylor, Bean & Whitaker Mortgage Corp., the Official Committee of Unsecured Creditors and Bank of America, N.A. [Docket No. 3300].

2295421v5

4.    On November 10, 2010, the Court entered its *Order Approving First Amended and Restated Disclosure Statement* [Docket 2136].

5.    On November 10, 2010, the Court entered its *Order Approving (I) Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan and Limited Waiver of Local Rule 3018-1; (II) Related Notice and Objection Procedures; (III) Procedures to Determine Holders of Claims in TBW Class 9; and (IV) Waiver of Local Rule 3071-1(b)* (the "Procedures Order") [Docket No. 2137].

6.    On November 12, 2010, Plan Proponents filed their *Second Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 2143], and Debtors filed their *Second Amended and Restated Disclosure Statement of the Debtors, Pursuant to Section 1125 of the Bankruptcy Code, With Respect to the Second Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 2144].

7.    On November 23, 2010, the Court issued its *Order Approving Second Amended and Restated Disclosure Statement, Scheduling Confirmation Hearing, and Fixing Time for Filing Acceptances or Rejection of Second Amended and Restated Joint Plan of Liquidation* [Docket 2190].

8.    On December 21, 2010, BMC Group, Inc., which serves as Debtors' Claims, Noticing and Balloting Agent, filed its *Certificate of Mailing* certifying as to its

mailing, on December 7, 2010, of Plan Proponents' solicitation packages, non-voting packages, and notices with respect to the Plan. [Docket 2337].

9.      On January 11, 2011, ACE American Insurance Company filed its *Limited Objection to the Second Amended and Restated Joint Plan of Liquidation of the Debtor, Taylor Bean & Whitaker Mortgage Co. and the Official Committee of Unsecured Creditors* [Docket No. 2443] seeking premiums that the Debtor allegedly collected and is still holding for a type of homeowner's insurance that Ace American Insurance Company issued.

10.     On January 12, 2011, First American Title Insurance Company filed its *Objection of First American Title Insurance Company to Debtors' Second Amended and Restated joint Plan of Liquidation* [Docket No. 2446] seeking, *inter alia*, relief with respect to a note in the principal amount of approximately $341,600, secured by a residence.

11.     On January 12, 2011, various Texas ad valorem taxing jurisdictions ("**Texas Ad Valorem Taxing Jurisdictions**") filed their *Objection to Confirmation of Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 2447] seeking to preserve liens and Administrative Expense Claims for taxes, including interest and penalties, assessed after the Petition Date.

12.     On January 12, 2011, various other Texas taxing authorities ("**Texas Taxing Jurisdictions**") filed their *Objection to Confirmation of Joint Plan of Liquidation*

*of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 2454] seeking to preserve liens for ad valorem taxes assessed on the Debtor's real estate before the Petition Date and to have Administrative Expense Claims for post-petition tax claims, as well as interest and penalties.

13.    On January 12, 2011, LPP Mortgage, Ltd., LNV Corporation, and MGC Mortgage, Inc. filed their *Objection of LPP Mortgage, Ltd., LNV Corporation and MGC Mortgage, Inc. to the Second Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 2458] seeking payment of amounts shown on the Reconciliation Report as due to MGC Mortgage, Inc., as well as other amounts that MGC Mortgage, Inc. is allegedly owed and asserting a secured claim with respect to such amounts.

14.    On April 7, 2011, Sandy S. Smith filed an *Objection to the Confirmation of the Discharge Plan Due to the Need for Review of Debtor Fraud Upon the Securities Exchange Commission (Under 15 U.S.C. 781), §1348, Securities and Commodities Fraud, Request for Revocation of Confirmation "Procured by Fraud"* [Docket Nos. 2938 and 3013].

15.    On June 16, 2011, the Court entered its *Order Rescheduling Confirmation Hearing and Fixing Dates with Respect to Confirmation and Compromises of Controversies* [Docket No. 3217]. The order set the Confirmation Hearing for July 13, 2011, with July 6, 2011 as the date for filing objections to confirmation. The order also provided that objections to motions which are filed after the entry of the order and which

seek approval of compromises pursuant to Bankruptcy Rule 9019 must be filed by the later of (a) seven days following the date of filing of the motion or (b) Wednesday, June 29, 2011.

16.     On June 22, 2011, Plan Proponents filed their *Third Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 3240].

17.     On July 1, 2011, Michael R. and Dianna L. Elliott filed their (i) *Objection to Approve Settlement Agreement By and Among Taylor, Bean & Whitaker Mortgage Corp., Federal Home Loan Mortgage Corporation and the Official Committee of Unsecured Creditors Docket 3237; (ii) Objection to the Confirmation of the Second Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Docket 2143* [Docket No. 3298].

18.     On July 6, 2011, BMC Group, Inc. filed its *Declaration of Voting Agent Regarding the Tabulation of Votes With Respect to the Second Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 3304] (the "**Vote Certification**").

19.     On July 6, 2011, Mark A. Armour filed his (i) *Objection to Approve Settlement Agreement By and Among Taylor, Bean & Whitaker Mortgage Corp., Federal Home Loan Mortgage Corporation and the Official Committee of Unsecured Creditors Docket 3237; (ii) Objection to the Confirmation of the Second Amended and Restated*

*Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Docket 2143* [Docket No. 3299].

20.     On July 7, 2011, Joni Cox Tanner and Charles Tanner filed their (i) *Objection to Approve Settlement Agreement By and Among Taylor, Bean & Whitaker Mortgage Corp., Federal Home Loan Mortgage Corporation and the Official Committee of Unsecured Creditors Docket No. 3237*; and (ii) *Objection to the Confirmation of the Second Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Docket 2143* [Docket No. 3306].

21.     On July 7, 2011, Bank of America filed *Bank of America's Limited Objection to Third Amended Joint Plan of Liquidation and Settlement Agreement Among Debtor, The Official Committee of Unsecured Creditors and Federal Home Loan Mortgage Corporation* [Docket No. 3313] (the "**BofA Limited Objection**").  On July 8, 2011, the FDIC joined in the BofA Limited Objection by filing the *Joinder of The Federal Deposit Insurance Corporation, as Receiver of Colonial Bank, to Bank of America's Limited Objection to Third Amended Joint Plan of Liquidation and Settlement Agreement Among Debtor, The Official Committee of Unsecured Creditors and Federal Home Loan Mortgage Corporation* [Docket 3320] (the "**FDIC Joinder**").  Similarly, on July 8, 2011, Deutsche Bank joined in the BofA Limited Objection by filing its *Joinder of Deutsche Bank AG to Bank of America's Limited Objection to Third Amended Joint Plan of Liquidation and Settlement Agreement Among Debtor, The Official Committee of Unsecured Creditors and Federal Home Loan Mortgage Corporation* [Docket 3321] (the

"**Deutsche Bank Joinder**"). Finally, on July 11, 2011, BNP Paribas joined in the BofA Limited Objection by filing its *Joinder of BNP Paribas to Bank of America's Limited Objection to Third Amended Joint Plan of Liquidation and Settlement Agreement Among Debtor, The Official Committee of Unsecured Creditors and Federal Home Loan Mortgage Corporation* [Docket 3323] (the "**BNP Paribas Joinder**").

22.    On July 10, 2011, the Plan Proponents filed the *Plan Supplement with Respect to the Third Amended and Restated Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* (the "**Plan Supplement**") [Docket 3322].

23.    On July 11, 2011, Jay D. Oyler filed his (i) *Objection to Approve Settlement Agreement By and Among Taylor, Bean & Whitaker Mortgage Corp., Federal Home Loan Mortgage Corporation and the Official Committee of Unsecured Creditors Docket No. 3237*; and (ii) *Objection to the Confirmation of the Second Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Docket 2143* [Docket No. 3324].

24.    On July 13, 2011, the Confirmation Hearing was held before the Court.

## Findings of Fact and Conclusions of Law[5]

25.    **JURISDICTION AND VENUE.** This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a

---

[5] The determinations, findings, judgments, decrees and orders set forth herein constitute the Court's findings of fact and conclusions of law. Each finding of fact set forth herein, to the extent that it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact. Pursuant to Bankruptcy Rule 9014(c) the Court directs that no further compliance with Bankruptcy Rule 7052 is required.

core proceeding, which this court can determine.  28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Cases in this Court is proper.  28 U.S.C. § 1408.  Each Debtor is eligible for relief under section 109[6] of the Bankruptcy Code.

26.    **JUDICIAL NOTICE.**  The Court takes judicial notice of the docket of the Debtors' Chapter 11 Cases, including the documents, pleadings, and orders described in the foregoing Procedural History.

27.    **NOTICE OF CONFIRMATION HEARING.**   Notice of the Confirmation Hearing and the relevant deadlines for submission of objections and ballots, as set forth in the Procedures Order entered November 10, 2010 [Docket No. 2137], was provided, as more fully reflected in the Certificate of Mailing filed by BMC Group, Inc. on December 21, 2010 [Docket No. 2337] and in subsequent Certificates of Mailings with respect to continuance and rescheduling of the Confirmation Hearing.  Such notice is adequate and sufficient as to all parties affected by the Plan and the transactions contemplated by the Plan and this Order, pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002(b) and 3020(b), and other applicable law and rules, and no other or further notice was, is or shall be necessary.

28.    **OBJECTIONS RESOLVED CONSENSUALLY.** The objections to confirmation by the following Persons were resolved consensually, with the resolutions set forth on the record at the Confirmation Hearing: Ace American Insurance Company (objection withdrawn prior to the hearing), First American Title Insurance Company,

---

[6] Each reference hereafter to a "section" refers to a section of the Bankruptcy Code.

Texas Ad Valorem Taxing Jurisdictions, Texas Taxing Jurisdictions, LPP Mortgage, Ltd, LNV Corporation, and MGC Mortgage, Inc., the BofA Limited Objection, the FDIC Joinder, the Deutsche Bank Joinder, and the BNP Paribas Joinder.

      (i)     The objection filed by First American Title Insurance Company is withdrawn with prejudice based on the agreement of the Debtor to reserve for all payments received by the Debtor in the future on the note at issue in the adversary proceeding filed by First American Title Company. Both the Debtor and First American Title Insurance Company reserve all rights, claims, and defenses in said adversary proceeding.

      (ii)    The objection filed by LPP Mortgage, Ltd. ("**LPP**"), LNV Corporation ("**LNV**"), and MGC Mortgage, Inc. is withdrawn with prejudice based on the Debtor's agreement that, in the event that the Court determines that LPP and LNV have an Allowed Secured Claim, LPP and LNV will be entitled to treatment as a creditor in the "Other Allowed Secured Claims" class of creditors to the extent of their Allowed Secured Claim. The parties reserve all rights, claims, and defenses with respect to the Claims asserted by LPP and LNV.

      (iii)    The objection filed by the Texas Ad Valorem Taxing Jurisdictions is overruled and the objection filed by the Texas Taxing Jurisdictions is withdrawn with prejudice based on the Debtor's agreement that if it owns the real property or the note and mortgage secured by the real property assessed, it either has paid the Allowed Claim or will pay the Allowed Claim at issue. However, if

the Debtor does not own or service the note and mortgage secured by the real property assessed, such claims are not a liability of the Debtor and the applicable taxing authority shall contact the investor or successor servicer for payment. If a claim for ad valorem taxes is properly asserted against the Debtor, the Debtor shall pay the postpetition interest as allowed by the Court and shall pay penalties to the extent in compensation for actual pecuniary loss, as allowed by the Court or otherwise agreed to by the Debtor.

(iv)    The BofA Limited Objection, the FDIC Joinder, the Deutsche Bank Joinder and the BNP Paribas Joinder were withdrawn and resolved based upon the clarification of the Freddie Mac Settlement Agreement agreed to by the Debtor, the Committee, the foregoing objecting parties, and Freddie Mac, as follows: Nothing in the Freddie Mac Settlement Agreement is intended to or shall be interpreted to limit, waive or release any claim of Ocala Funding or its creditors, except (i) to the extent that Ocala Funding could bring claims belonging to TBW that are specifically described as the "Debtor's Claims" in recital K of the Freddie Mac Settlement Agreement (i.e., TBW's claims based on tax and insurance servicing advances for the benefit of Freddie Mac; TBW's claims based on unpaid servicing fees owed to TBW; and TBW's claims based on repurchase payments made to Freddie Mac) and (ii) claims arising from the allocation of loans described in Section 1.6 of the Freddie Mac Settlement Agreement.

29.    **OBJECTIONS OVERRULED.**    The objections to confirmation by Michael R. Elliott and Dianna L. Elliott, by Sandy S. Smith, by Joni Cox Tanner and Charles Tanner, by Jay D. Oyler, and by Mark A. Armour were overruled for the reasons set forth on the record at the Confirmation Hearing.    Subject to the provisions of paragraph 42, nothing herein shall prevent the foregoing borrowers from asserting (i) legally cognizable foreclosure defenses in state court actions under mortgages originated by TBW or (ii) claims against former TBW officers or employees convicted of wrongdoing in connection with TBW.

30.    **GOOD FAITH FORMULATION AND SOLICITATION.**    The Plan Proponents acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to section 1125(e) and Bankruptcy Rules 3017 and 3018, with respect to the formulation of the Plan, the solicitation of acceptances with regard thereto and the other property to be distributed thereunder.    Pursuant to section 1125(e), the transmittal of solicitation materials, the solicitation of acceptances of the Plan, and the offering, issuance and distribution of consideration pursuant to the Plan are not, and will not be, governed by or subject to any otherwise applicable law, rule or regulation governing the solicitation of acceptance of a plan of reorganization or the offer, issuance or purchase of securities.

31.    **COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129.** As set forth more fully herein, the Plan Proponents have met their burden of proving the elements of sections 1129(a) and 1129(b) by a preponderance of the evidence, which is

the applicable evidentiary standard.    The Plan Proponents have also proven these elements by clear and convincing evidence.

        (a)      **Section 1129(a)(1) – Compliance with the Applicable Provisions of the Bankruptcy Code.** As required by section 1129(a)(1), the Plan complies with all applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122 and 1123.    Therefore, the Plan satisfies the requirements of section 1129(a)(1).

        (i)      **Sections 1122 and 1123(a)(1)-(4) – Classification and Treatment of Claims and Interests.**

Pursuant to sections 1122(a) and 1123(a)(1), Article 2[7] of the Plan designates Classes of Claims and Interests, other than Administrative Expense Claims and Priority Tax Claims,[8] for all Debtors.    As required by section 1123(a), each Class of Claims or Interests contains only Claims or Interests that are substantially similar to other Claims or Interests within that Class.    Pursuant to sections 1123(a)(2) and 1123(a)(3), Article 2 identifies all Classes of Claims and Interests that are impaired or not impaired under the Plan, and Article 4 sets forth the treatment of all Impaired Classes.    Pursuant to section 1123(a)(4), Article 4 provides the same treatment for each Claim or Interest within a particular Class, unless the Holder of a Claim or Interest agrees to less favorable treatment of its Claim or Interest.    Therefore, the Plan satisfies the requirements of sections 1122 and 1123(a)(1) through (4).

---

[7] Each reference hereafter to an "Article" refers to an Article of the Plan.
[8] Pursuant to section 1123(a)(1) of the Bankruptcy Code, these Claims are not required to be classified.

        (ii)     **Section 1123(a)(5) – Adequate Means for Implementation of the Plan.**

Articles 6, 7, and 8 and various other provisions of the Plan provide adequate means for implementing the Plan, including, among other things, consummation of the FDIC Settlement Agreement, the REMIC Settlement Agreement, the Bayview Settlement Agreement, the Freddie Mac Settlement Agreement, the Sovereign Settlement Agreement, the Natixis Settlement Agreement, and the Bank of America Settlement Agreement, appointment of the Plan Trustee, appointment of a Plan Advisory Committee, preservation of all Causes of Actions, including Avoidance Actions, the vesting of assets in the Plan Trust, and the establishment of Reserves. The Disclosure Statement and Plan adequately reserve the Causes of Action defined therein, as to Avoidance Actions (as defined) and other Causes of Action, such as for professional malpractice, breach of fiduciary duties, and other nonbankruptcy actions sounding in contract, tort or equitable principles. Upon the Effective Date of the Plan, the Debtors will have sufficient Cash to make all payments required to be made pursuant to the terms of the Plan. Therefore, the Plan satisfies the requirements of section 1123(a)(5).

        (iii)    **Section 1123(a)(6) – Prohibition Against the Issuance of Non-Voting Equity Securities and Adequate Protection for Voting Power of Classes of Securities.**

No non-voting equity securities will be issued pursuant to the Plan. As of the Effective Date, all Interests in the Debtors will be deemed canceled in accordance with the terms of the Plan and the Plan Trust. Therefore, the Plan satisfies the requirements of section 1123(a)(6).

2295421v5

(iv)    **Section 1123(a)(7) – Selection of Directors, Officers, or Plan Trustee in a Manner Consistent with the Interests of Creditors and Equity Security Holders and Public Policy.**

Pursuant to Article 6.G, on the Effective Date, the Plan Trustee will be Neil Luria, who, during the Chapter 11 Cases, has served as the Chief Restructuring Officer of TBW and as officer of REO and HAM. He has served with distinction and has built a very substantial base of knowledge about the Debtors' business and the issues that the Plan Trustee must resolve. Pursuant to Article 6.B, on the Effective Date, the officers and directors of the Debtors shall cease to serve and the Plan Trustee shall be deemed the sole director and officer of the Debtors for all purposes. The Plan Trustee may be removed, in accordance with the terms of the Plan Trust, for cause by order of the Court upon petition by the Plan Advisory Committee. Pursuant to Article 6.H, the Plan Advisory Committee will be composed of three members of the Creditors' Committee. By virtue of their service on the Creditors' Committee, these members will have a very substantial base of knowledge about the Debtors' business and the issues that the Plan Trustee must resolve. Therefore, the Plan meets the requirements of section 1123(a)(7).

(v)    **Section 1123(b)(3) – Retention, Enforcement and Settlement of Claims Held by the Debtor.**

In accordance with section 1123(b)(3), the Plan Trust shall be vested with and may exclusively enforce, prosecute or resolve any or all Causes of Action, which include Designated Causes of Action and Avoidance Actions, that the Debtors, the Estates, or the Creditors' Committee may have against any Person. This is specifically provided for in Articles 6.H and 6.L, as well as in Disclosure Statement ¶ VI.D.7, which are effective to

provide for the preservation of such Causes of Action. Therefore, the Plan satisfies the requirements of section 1123(b)(3).

### (vi) Section 1123(b)(5) – Modification of the Rights of Holders of Claims.

Articles 3 and 4 modify or leave unaffected, as the case may be, the rights of Holders of each Class of Claims and Interests. Therefore, the Plan satisfies the requirements of section 1123(b)(5).

### (vii) Section 1123(b)(6) – Consistency with the Bankruptcy Code.

The Plan contains no provision that is inconsistent with the applicable provisions of the Bankruptcy Code. Therefore, the Plan meets the requirements of section 1123(b)(6).

**(b)    Section 1129(a)(2) – Compliance with Applicable Provisions of the Bankruptcy Code.** The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code with respect to the Plan, as required by section 1129(a)(2). The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and the Procedures Order, entered November 10, 2010 [Docket No. 2137]. Therefore, the Plan Proponents have satisfied the requirements of section 1129(a)(2).

(c)      **Section 1129(a)(3) – Proposal of Plan in Good Faith.**  The Plan was negotiated at arm's length and was formulated and proposed in good faith and not by any means forbidden by law.  This appears from the totality of the circumstances surrounding the formulation of the Plan and the reasonable likelihood that it will achieve results consistent with the objectives and purposes of the Bankruptcy Code.  All parties that have participated in the Plan process have acted in good faith in connection with the Plan within the meaning of section 1125(e).  Therefore, the Plan satisfies the requirements of section 1129(a)(3).

(d)      **Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as Reasonable.**  Any payments made or to be made by the Debtors under the Plan for services or for costs or expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or will be subject to the approval of this Court as reasonable.  Therefore, the Plan satisfies the requirements of section 1129(a)(4).

(e)      **Section 1129(a)(5) – Disclosure of Identity of Proposed Management.**  The Plan Proponents have disclosed the identity and affiliations of Neil Luria, who is the individual proposed to serve, after confirmation of the Plan, as Plan Trustee as well as the sole director or officer of the Debtors.  Based on his performance as the Debtor's Chief Restructuring Officer, his appointment to these offices is consistent with the interest of creditors and with public policy.  No

2295421v5

- 17 -

insiders will be employed by any reorganized Debtor. Therefore, the Plan satisfies the requirements of Section 1129(a)(5).

(f) **Section 1129(a)(6) – Approval of Rate Changes.** Section 1126(a)(6) is inapplicable to the Plan because the Plan does not contemplate any change in rates with respect to which a governmental regulatory commission has jurisdiction. Therefore, the Plan satisfies the requirements of Section 1129(a)(6).

(g) **Section 1129(a)(7) – Best Interests of Holders of Claims and Interests.** With respect to each impaired Class of Claims or Interests, each Holder of a Claim or Interest in such impaired Class (i) has accepted the Plan; (ii) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date; or (iii) has agreed to receive less favorable treatment. Therefore, the Plan satisfies the requirements of section 1129(a)(7).

(h) **Section 1129(a)(8) –Acceptance of the Plan by Each TBW Impaired Class.** As reflected in the Vote Certification, each TBW Impaired Class has voted to accept the Plan, except TBW Class 6 (Plainfield Secured Claim), TBW Class 10 (Subordinated Claims) and TBW Class 11 (Interests in TBW). With respect to TBW Class 6, Plainfield holds a security interest which is junior to that of Sovereign in collateral which is of a value that is insufficient to

satisfy the Sovereign indebtedness secured by that collateral.   Therefore the Plainfield Claim is not a Secured Claim.  TBW Class 10 and TBW Class 11 receive nothing under the Plan and are deemed to reject it.

Also, as reflected in the Vote Certification, each Impaired HAM Class has voted to accept the Plan except HAM Class 4 (Subordinated Claims) and HAM Class 5 (Interests in HAM), which receive nothing under the plan and are deemed to reject it.

Further, as reflected in the Vote Certification, each Impaired REO Class has voted to accept the Plan except REO Class 4 (Subordinated Claims) and REO Class 5 (Interests in REO Specialists), which receive nothing under the Plan and are deemed to reject it.

Notwithstanding that the Plan does not satisfy the requirements of section 1129(a)(8) with respect to the non-accepting Impaired Classes, the Plan is confirmable because, as described below, the Plan satisfies the requirements for "cramdown" under Section 1129(b) with respect to the non-accepting Impaired Classes.

(i)     **Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a).**  Except to the extent that the Holder of a particular Allowed claim has agreed to a different treatment of such Claim, the Plan provides that Allowed Administrative Expense Claims, Priority Tax Claims and

Priority Claims against all Debtors will be treated in accordance with section 1129(a)(9). Therefore, the Plan satisfies the requirements of section 1129(a)(9).

(j)     **Section 1129(a)(10) – Acceptance by at Least One Impaired, Non-Insider Class.** As shown on the Vote Certification, at least one of the Impaired Classes of Claims for each of the Debtors has voted to accept the Plan, without including any acceptance of the Plan by any Insider of the Debtors. Therefore, the Plan satisfies the requirements of section 1129(a)(10).

(k)     **Section 1129(a)(11) – Feasibility of the Plan.** The Plan Trustee will have on the Effective Date Unencumbered Cash to pay in full the Debtors' Allowed Administrative Expense Claims, Priority Tax Claims and Priority Claims. Additionally, the Plan Trustee has made provision for the payment of Allowed Secured Claims to the extent required by the Plan. Therefore, the Plan satisfies the requirements of section 1129(a)(11).

(l)     **Section 1129(a)(12) – Payment of Bankruptcy Fees.** Article 3.B provides that all fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid in Cash by the Plan Trustee when otherwise due. Therefore, the Plan satisfies the requirements of section 1129(a)(12).

(m)    **Section 1129(a)(13) – Continuation of Retiree Benefits.** The Debtors have no "retiree benefit" programs, as such term is defined in section 1114. Therefore, section 1129(a)(13) is inapplicable.

(n)    **Section 1129(a)(14) – No Domestic Support Obligations.** The Debtors are not required by a judicial or administrative order, or by any statute, to pay domestic support obligations. Therefore, section 1129(a)(14) is inapplicable.

(o)    **Section 1129(a)(15) – Debtors Are Not individuals.** The Debtors are not individuals. Therefore, section 1129(a)(15) is inapplicable.

(p)    **Section 1129(a)(16) – Applicable Non-Bankruptcy Law Regarding the Transfers.** The transfers to be made pursuant to the Plan comply with applicable non-bankruptcy law. Therefore, the Plan satisfies the requirements of section 1129(a)(16).

(q)    **Section 1129(b) – Confirmation of the Plan Notwithstanding Impaired Classes that Do Not Accept the Plan.** The Plan does not discriminate unfairly and is fair and equitable with respect to the non-accepting Classes. Therefore, pursuant to section 1129(b)(1), the Plan may be confirmed notwithstanding that, pursuant to section 1126(g), certain Impaired Classes are deemed not to have accepted the Plan. Other than the failure to satisfy the requirements in section 1129(a)(8) with respect to these non-accepting Classes, all the requirements of section 1129(a) have been satisfied.

(r)     **Bankruptcy Rule 3016(a) – Identification of Plan**.  The Plan is dated and identifies the Plan Proponents.

(s)     **Bankruptcy Rule 3016(b) – Disclosure Statement**.     The Disclosure Statement was duly filed and approved.

(t)     **Bankruptcy Rule 3016(c) – Injunction Under a Plan**.  The Plan provisions that provided for an injunction of acts not otherwise enjoined under the Code have described such acts specifically and conspicuously, in bold text and have identified the entities that are subject to the injunction.

(u)     **Section 1129(c) – Only One Plan**.  Other than the Plan (including previous versions thereof), no plan has been filed in these Chapter 11 Cases. Therefore, the Plan satisfies the requirements of section 1129(c).

(v)     **Section 1129(d) – Principal Purpose of the Plan**.     No governmental unit has requested that the Plan not be confirmed on the grounds that the primary purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  Therefore, the Plan satisfies the requirements of section 1129(d).

32.     **BURDEN OF PROOF.**    The Plan Proponents have met their burden of proving the elements of sections 1129(a) and 1129(b) by a preponderance of the evidence, which is the applicable evidentiary standard.  The Plan Proponents have also satisfied the elements of sections 1129(a) and 1129(b) by clear and convincing proof.

33.    **SATISFACTION OF CONDITIONS PRECEDENT TO CONFIRMATION.** Each condition precedent to the Effective Date of the Plan has occurred or is reasonably likely to occur.

34.    **PLAN SUPPLEMENT.** The provisions of the Plan Supplement are necessary and appropriate to implement the Plan.

35.    **MODIFICATIONS CONTAINED IN THE PLAN.** The modifications contained in the Plan are non-material in that they do not adversely change the treatment of any Holder of a Claim or Interest and do not require re-solicitation of any Class.

36.    **SETTLEMENT AGREEMENTS.** The Settlement Agreements, which are the FDIC Settlement Agreement, the REMIC Settlement Agreement, the Freddie Mac Settlement Agreement, the Sovereign Settlement Agreement, the Natixis Settlement Agreement, the Bayview Settlement Agreement, and the Bank of America Settlement Agreement each confers substantial benefit on the Debtor's Estate. Each Settlement Agreement has been considered and approved before Confirmation by order ("**9019 Order**")[9] granting a motion ("**9019 Motion**") pursuant to Bankruptcy Rule 9019.

37.    **THIRD PARTY RELEASES IN SETTLEMENT AGREEMENTS.** Certain of the Settlement Agreements, to wit, the FDIC Settlement Agreement, the

---

[9] The FDIC Settlement Agreement, including the First Amendment to Settlement Agreement, was approved by 9019 Order [Docket No. 1936] entered September 14, 2010 and a Third Amendment to Settlement Order was approved by a 9019 Order [Docket No. 2472] entered January 24, 2011. The Second Amendment to Settlement Agreement, the Fourth Amendment to the Settlement Agreement, and the Fifth Amendment to the Settlement Agreement each extends the Termination Date, so that it is now August 31, 2011.

REMIC Settlement Agreement, and the Bayview Settlement Agreement, provide for releases ("**Third Party Releases**") whereby Persons unaffiliated with the Debtors, such as Holders of Claims, release Claims against the FDIC, the REMIC parties, and Bayview and certain affiliates ("**Third Party Releasees**"). Each of the Third Party Releasees has made to the Estates a contribution justifying such a release. The benefits under these Settlement Agreements are inseparable from the Third Party Releases, and these settlements are necessary to the confirmation and consummation of the Plan. The Releasing Persons have been given notice of the provisions with respect to these third party releases, and the few objections to them were withdrawn or overruled. Specifically, as set forth in paragraph 28, the objection filed by LPP and LNV, which included objections to releases, was withdrawn with prejudice. Additionally, as set forth in paragraph 28, the objections filed by certain *pro se* borrowers, which included objections to releases, were overruled with prejudice. Finally, the BofA Limited Objection, the FDIC Joinder, the Deutsche Bank Joinder, and the BNP Paribas Joinder (each of which included objections to releases) were withdrawn with prejudice. Moreover, the Plan has received the overwhelming vote of the Holders of Impaired Claims that have voted on the Plan. In light of these facts, the Court concludes that the Third Party Releases are fair and appropriate.

38.    **REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** The rejection of an executory contract or unexpired lease, as contemplated by Article 9 shall be legal, valid and binding upon the Debtors and all non-Debtor parties to such executory contract or unexpired lease, all to the same extent as if such rejection had

been effectuated pursuant to an appropriate authorizing Order, entered pursuant to section 365(b), before Confirmation.   Further rejection pursuant to Article 9 satisfies the requirements of section 365(b).

39.   **EXCULPATION**.   The evidence presented in connection with the Confirmation Hearing, together with the pleadings and other documents on file in these Chapter 11 Cases, establish that the exculpations described in Article 10.A and B are fair and appropriate and reflect the standard of liability for estate fiduciaries.

40.   **RETENTION OF JURISDICTION**.   The Court may properly retain jurisdiction over the matters set forth in Article 13.

41.   **RULINGS AT THE CONFIRMATION HEARING**.   The Court incorporates by reference all findings of fact and conclusions of law set forth on the record at the Confirmation Hearing as if set forth fully herein.

42.   **SUFFICIENCY OF NOTICE TO BORROWERS AND CLAIMS OF BORROWERS**.   Borrowers under residential mortgage loans ("**Borrowers**") who have not asserted or threatened to assert Claims against the Debtors are not known Creditors. To the extent that any such Borrowers are in fact Creditors of the Debtors, they are unknown Creditors because (i) their identities are neither known nor reasonably ascertainable by the Debtors through reasonably diligent efforts or, alternatively, (ii) the Debtors neither knew nor should have known that it was reasonably foreseeable that such Borrowers have Claims against the Debtors.   The notice by publication of the Bar Date

was reasonably calculated to reach all unknown Creditors.  Furthermore, the notice reasonably conveyed all the required information and permitted a reasonable time for response.  Accordingly, pursuant to the stay and injunction set forth in paragraphs 55 and 56, respectively, any Claims of such Borrowers that were not timely filed against the Debtors shall be forever enjoined, barred and expunged with respect to the Debtors.  The stay and injunction shall not prevent Borrowers from asserting (i) legally cognizable foreclosure defenses in state court actions under mortgages originated by TBW or (ii) claims against former TBW officers or employees convicted of wrongdoing in connection with TBW.

### Order

It is therefore **ORDERED**:

43.     **PLAN CONFIRMATION.**   The Plan, as modified herein or on the record of the Confirmation Hearing, is APPROVED and CONFIRMED in each and every respect pursuant to section 1129 of the Bankruptcy Code.  The terms of the Plan Supplement and each document comprising the Plan Supplement shall be, and hereby are, incorporated by reference into and are an integral part of the Plan and shall be, and hereby are APPROVED.  The treatment of Claims and Interests as provided in the Plan is approved.

44.     **AUTHORIZATION TO ACT.**   The Plan and any amendments, modifications and supplements thereto and all documents and agreements introduced into evidence at the Confirmation Hearing (including all exhibits and attachments thereto),

and the execution, delivery and performance thereof by the Debtors, are authorized and approved, including the documents included in the Plan Supplement.

45.    **CONFIRMATION ORDER CONTROLLING.**  If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

46.    **OBJECTIONS.**  To the extent that any objections to confirmation of the Plan have not been withdrawn prior to entry of this Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, all such objections are hereby overruled.  Objections to confirmation of the Plan that have been withdrawn shall be, and they hereby are, deemed withdrawn with prejudice.

47.    **APPROVAL OF FDIC SETTLEMENT AGREEMENT.**  After notice and a hearing, the Court approved, and hereby fully and finally approves, the FDIC Settlement Agreement.  This approval includes, but is not limited to, the allowance of the FDIC-GUC Claim, the allowance of the FDIC Substantial Contribution Claim, and the release of the FDIC, as set forth in Article 10.C.

48.    **APPROVAL OF REMIC SETTLEMENT AGREEMENT.**  After notice and a hearing, the Court approved all twelve REMIC Settlement Agreements. This approval includes, but is not limited to, the release by Plan Releasing Parties of REMIC Trust Released Parties and related injunction, as set forth in Article 10.E (including footnote 1 thereto), the release by REMIC Certificateholders of REMIC

Certificateholder Releasees and related injunction as set forth in Article 10.F., and the Release by REMIC Trust Releasing Parties of Plan Proponent Released Parties and related injunction, as set forth in Article 10.G.

49.    **APPROVAL OF FREDDIE MAC SETTLEMENT AGREEMENT.** After notice and a hearing, the Court approved the Freddie Mac Settlement Agreement. This approval includes, but is not limited to, the confidential Exhibit A thereto, which sets forth the terms upon which Freddie Mac will consent to a sale of the Freddie Mac MSRs and the formula for determining the amount of the net sale proceeds, if any, to which the Estate, Sovereign, and Natixis shall be jointly entitled.  The Freddie Mac Settlement Agreement was approved in conjunction with the Sovereign Settlement Agreement and the Natixis Settlement Agreement because the Sovereign Settlement Agreement and the Natixis Settlement Agreement also include the same confidential Exhibit A and provide for the release of Claims by Sovereign and Natixis respectively against Freddie Mac with respect to the Freddie Mac MSRs, except for Sovereign's and Natixis' respective Claims to their respective allocation of the sale proceeds of the Freddie Mac MSRs in accordance with their respective agreements.

50.    **APPROVAL    OF    THE    SOVEREIGN    SETTLEMENT AGREEMENT.**    After notice and a hearing, the Court approved the Sovereign Settlement Agreement.  This approval includes, but is not limited to, the confidential Exhibit A thereto, which is the same as the confidential Exhibit A to the Freddie Mac Settlement Agreement and to the Natixis Settlement Agreement.  This approval also

includes, but is not limited to, Exhibit B to the Sovereign Settlement Agreement, which exhibit is the Mutual Release that Sovereign and Freddie Mac are to enter before the Sovereign Effective Date. After the Sovereign Effective Date, Sovereign will be entitled to the Sovereign Allocation, as provided for in the Sovereign Agreement. The Debtor and the Plan Trustee as successor to the Debtor's Estate shall segregate the proceeds of the REMIC Settlement Agreement and the Bayview Settlement Agreement, as provided in the objection filed by Sovereign to those settlement agreements, until Sovereign's Claim to those proceeds can be resolved.

51.    **APPROVAL OF THE NATIXIS SETTLEMENT AGREEMENT.** After notice and a hearing, the Court approved the Natixis Settlement Agreement. This approval includes, but is not limited to, the confidential Exhibit A thereto, which is the same as confidential Exhibit A to the Freddie Mac Settlement Agreement and to the Sovereign Settlement Agreement. This approval also includes, but is not limited to, Exhibit B to the Natixis Settlement Agreement, which exhibit is the Mutual Release that Natixis and Freddie Mac are to enter before the Natixis Effective Date. After the Natixis Effective Date, Natixis will be entitled to the Natixis Allocation, as provided for in the Natixis Settlement Agreement.

52.    **APPROVAL OF THE BAYVIEW SETTLEMENT AGREEMENT.** After notice and a hearing, the Court approved the Bayview Settlement Agreement. This approval includes, but is not limited to, the Release by Plan Proponent Releasing Parties (Bayview), of Bayview Trust Releasing Parties, as provided in Article 10.I, the Release

2295421v5

by Bayview Certificateholders of Bayview Certificateholder Releasees, as provided in

Article 10.J, and the Release by Bayview Trust Releasing Parties of the Plan Proponent

Released Parties (Bayview), as provided in Article 10.K.

53. **APPROVAL OF THE BANK OF AMERICA SETTLEMENT**
**AGREEMENT.** The Bank of America Settlement is hereby approved. This approval

includes, but is not limited to, the allowance of the Ocala Funding Claim, as that term is

defined in the Bank of America Settlement Agreement.

54. **BINDING EFFECT OF PLAN.** Except as otherwise provided in section

1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, subject to the

occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a

Claim against, or Interest in, the Debtors, the Estates and their respective successors or

assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan,

whether or not such Holder has accepted the Plan and whether or not such Holder has

filed a Claim. The rights, benefits and obligations of any Person named or referred to in

the Plan, whose actions may be required to effectuate the terms of the Plan, shall be

binding on and shall inure to the benefit of any heir, executor, administrator, successor or

assign of such Person (including, without limitation, the Plan Trustee pursuant to the

Plan).

55. **CONTINUATION OF EXISTING INJUNCTIONS AND STAYS.**
Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays

provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code,

the Plan, by Orders of the Bankruptcy Court, or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Plan Trust.

56.    **INJUNCTION.** Except as otherwise expressly provided in the Plan, the documents executed pursuant to the Plan, or this Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date (including all Governmental Authorities) are permanently enjoined from, on account of such Claims or Interests, taking any of the following actions, either directly or indirectly, against or with respect to any Debtor, any Estate, any Chapter 11 Protected Party, any Plan Trust Exculpated Party, the Plan Trust, any Plan Trust Entity or any of their respective properties:  (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award, decree, or attaching any properties pursuant to the foregoing; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind; (iv) asserting or effecting any setoff, recoupment, or right of subrogation of any kind against any Claim or Cause of Action; (v) taking any act, in any manner, in any place whatsoever, that does not conform to, comply with, or that is inconsistent with any provision of the Plan.  Any Person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.  This injunction shall not enjoin or prohibit (i) the Holder of a Disputed Claim from litigating its right to seek to have such Disputed

2295421v5

- 31 -

Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan or (ii) any party in interest from seeking the interpretation or enforcement of any of the obligations of the Debtors, the Plan Trustee, or the Plan Trust under the Plan. The Confirmation Order also shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any Claim or Cause of Action against any Debtor, any Estate, any Chapter 11 Protected Party, any Plan Trust Exculpated Party, the Plan Trust, or any Plan Trust Entity or any of their respective properties based on, arising from, or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under this Plan have been made or are not yet due. Notwithstanding anything in this paragraph or the preceding paragraph, all rights of setoff or recoupment by contract, equity, common law, or statute that exist and that may be asserted by GNMA or by any of the parties defendant (the **"Parties Defendant"**) in adversary proceeding numbers 3:10-ap-00096 and 3:10-ap-00100 in these bankruptcy cases are unaffected by this Confirmation Order, which shall not be construed to enhance, curtail, limit, or prejudice such rights or any defenses thereto, including any defenses based on section 553, and, on the Effective Date, the automatic stay shall terminate as to any setoff otherwise stayed thereby. This provision with respect to GNMA and the Parties Defendant is not to be construed as an admission by the Plan Proponents of the existence of any right of setoff or recoupment or as an admission by GNMA or the Parties Defendant of the existence of any defense thereto, including any defense under section 553. Rather this provision is meant to exempt

GNMA and the Parties Defendant from any injunction or stay imposed by virtue of the Confirmation Order on their exercise of their rights of setoff and recoupment.

57.    **EXCULPATION AND RELEASE.**  On and after the Effective Date, except as otherwise specifically provided in the Plan, the Debtors and their Estates exculpate, release, and discharge the Chapter 11 Protected Parties from any Claim, obligation, Cause of Action or liability, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law or equity, which is based in whole or in part on any act, omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Chapter 11 Cases, except those resulting from such Person's gross negligence or willful misconduct, as adjudicated by a Final Order, and including, but not limited to, the acts or omissions more fully described in Article 10.A. Furthermore, as provided in Article 10.B, except as specifically provided for in the Plan, as of the Effective Date the Chapter 11 Protected Parties shall be exculpated and released from all Chapter 11 Released Claims by each other, by any Holder of a Claim or Interest, by any party in interest, and by their respective agents, employees, successors, and assigns.  Without limiting the generality of the foregoing, each Chapter 11 Protected Party shall be entitled to and granted the protections and benefits of section 1125(e).

58.    **INJUNCTION (REMIC TRUSTS).**  As provided in Article 10.E, when the REMIC Settlement Agreement becomes effective, all Plan Releasing Parties will be permanently enjoined from taking any of the following actions against any REMIC Trust

Released Party or any property of a REMIC Trust Released Party on account of any Debtor Released REMIC Claims: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind with respect to any Debtor Released REMIC Claim; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order with respect to any Debtor Released REMIC Claim; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien with respect to any Debtor Released REMIC Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against any obligation due a REMIC Trust Released Party with respect to any Debtor Released REMIC Claim; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the REMIC Settlement Agreement. However, the above is not intended to release, nor shall it have the effect of releasing, Wells Fargo, the REMIC Trustees, or any REMIC Insurer from the performance of its obligations in accordance with the REMIC Settlement Agreement.

Also, as provided in Article 10.F, when the REMIC Settlement Agreement becomes effective, all REMIC Releasing Certificateholders will be permanently enjoined from taking any of the following actions against any REMIC Certificateholder Releasee or any property of a REMIC Certificateholder Releasee on account of or with respect to any REMIC Claims released hereunder: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or

means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien; (iv) asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against any obligation due a REMIC Certificateholder Releasee; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the REMIC Settlement Agreement.

As provided in Article 10.G, when the REMIC Settlement Agreement becomes effective, all REMIC Trust Releasing Parties will be permanently enjoined from taking any of the following actions against any Plan Proponent Released Party or any property of a Plan Proponent Released Party on account of such REMIC Trust Released Claims: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind with respect to any REMIC Trust Released Claim; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order with respect to any Debtor Released REMIC Claim; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien with respect to any REMIC Trust Released Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against any obligation due a Plan Proponent Released Party with respect to any REMIC Trust Released Claim; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the REMIC Settlement Agreement. However, the above is not intended to release, nor shall it have the effect of releasing, the Debtor or the

Creditors' Committee from the performance of their obligations pursuant to, or in accordance with, the REMIC Settlement Agreement. Also, the above is not intended to, nor shall it have the effect of releasing, the REMIC Initial Purchaser, the REMIC Depositor, or any of their respective past or present parent entities, subsidiaries, affiliates, agent, underwriters, directors, officers, employees, professionals and the predecessors, successors and assigns of any of them and any other Person that might be liable through any of the foregoing, whether directly or derivatively (the "**REMIC Transfer Parties**"), from any Claims that the REMIC Trust Releasing Parties or any of them have or may have or claim to have, now or in the future, in their individual or representative capacities or as assignee or subrogee, against the REMIC Transferor Parties either in law or equity, pursuant to contract, whether arising under and in connection with the REMIC Pooling Agreement, the REMIC Servicing Agreement or otherwise.

59.    **INJUNCTION (BAYVIEW).**  As provided in Article 10.I, when the Bayview Settlement Agreement becomes effective, all Plan Proponent Releasing Parties (Bayview) will be permanently enjoined from taking any of the following actions against any Bayview Trust Released Party or any property of a Bayview Trust Released Party on account of any Plan Proponent Released Claims (Bayview): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind with respect to any Plan Proponent Released Claim (Bayview); (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order with respect to any Plan Proponent Released Claim (Bayview); (iii) creating, perfecting, or otherwise enforcing in any

manner, directly or indirectly, any Lien with respect to any Plan Proponent Released Claim (Bayview); (iv) asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against any obligation due a Bayview Trust Released Party with respect to any Plan Proponent Released Claim (Bayview); and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Bayview Settlement Agreement. However, the above is not intended to release, nor shall it have the effect of releasing, any Bayview Trust Party from (i) the performance of its obligations in accordance with the Bayview Settlement Agreement and (ii) any obligations with respect to, or which otherwise arise out of or relate to, the Bayview B Certificates from and after the Bayview Effective Date.

As provided in Article 10.J, when the Bayview Settlement Agreement becomes effective, all Bayview Releasing Certificateholders will be permanently enjoined from taking any of the following actions against any Bayview Certificateholder Releasee or any property of a Bayview Certificateholder Releasee on account of or with respect to any such Bayview Claims released hereunder: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien; (iv) asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against any obligation due a Bayview Certificateholder Releasee; and (v)

commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Bayview Settlement Agreement.

As provided in Article 10.K, when the Bayview Settlement Agreement becomes effective, all Bayview Trust Releasing Parties will be permanently enjoined from taking any of the following actions against any Plan Proponent Released Party (Bayview) or any property of a Plan Proponent Released Party (Bayview) on account of such Bayview Trust Released Claims: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind with respect to any Bayview Trust Released Claim; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order with respect to any Bayview Trust Released Claim; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien with respect to any Bayview Trust Released Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against any obligation due a Plan Proponent Released Party (Bayview) with respect to any Bayview Trust Released Claim; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Bayview Settlement Agreement. However, (i) the above is not intended to release, nor shall it have the effect of releasing, the Debtor or the Creditors' Committee from the performance of their obligations pursuant to, or in accordance with, the Bayview Settlement Agreement, and (ii) with respect to the Claims represented by the Bayview Proofs of Claim assigned to TBW Class 9 pursuant to the Bayview Settlement Agreement and as set forth in

Article 6.E.6.(c)(v), the release set forth in Article 10.K shall become effective immediately after such assignment is made to TBW Class 9.

60. **UNITED STATES SECURITIES AND EXCHANGE COMMISSION.** Notwithstanding any provision herein to the contrary, no provision of the Plan or this Confirmation Order shall (i) discharge or release the Debtor or any other Person from any right, claim, causes of action, or power or interest held or assertable by the United States Securities and Exchange Commission or (ii) enjoin, impair, or delay the United States Securities and Exchange Commission from commencing or continuing any Claims, causes or action, proceedings, or investigations against the Debtor or any other Person in any non-bankruptcy forum.

61. **NO EFFECT ON OBJECTIONS TO FEE APPLICATIONS.** Except as provided in Article 3.A.(3).(b) of the Plan, nothing contained in the Plan shall affect the rights of parties in interest to object to Fee Applications or limit the power of the Bankruptcy Court to issue orders with respect to Fee Applications.

62. **CORPORATE ACTION.** On the Effective Date, (i) the matters under the Plan involving or requiring corporate action of the Debtors or their subsidiaries, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to the Plan, shall be deemed to have been authorized by this Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries, and (ii) the officers

and directors of the Debtors shall immediately cease to serve and the Plan Trustee shall be deemed the sole director and officer of each of the Debtors for all purposes, without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries.

63.    **DISSOLUTION OF DEBTORS.**  On and after the Effective Date, the Plan Trustee shall be authorized, in his sole and absolute discretion, to take all actions reasonably necessary to dissolve the Debtors and their subsidiaries under applicable laws, including the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or Filing any necessary paperwork or documentation.  The Plan Trustee shall have no liability for using his discretion to dissolve or not dissolve any of the Debtors or their subsidiaries.  Whether or not dissolved, the Debtors shall have no authorization to implement the provisions of this Plan from and after the Effective Date except as specifically provided otherwise in the Plan.

64.    **DISSOLUTION OF OFFICIAL COMMITTEES.**  On the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective Orders

entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms.

65.    **FORMATION OF PLAN TRUST.** The Plan Trust shall be formed on or prior to the Effective Date. The Holders of Claims shall be the sole beneficiaries of the Plan Trust. The Plan Trust shall hold legal title to, or beneficial ownership of, the Plan Trust Assets. The Plan Trust shall be established for the primary purpose of liquidating and distributing the Plan Trust Assets.

66.    **APPROVAL OF PLAN TRUST AGREEMENT.** The form of Plan Trust Agreement as attached to the Plan Supplement is hereby approved. In the event a provision of this Confirmation Order conflicts with a provision of the Plan Trust Agreement, the provision of this Confirmation Order shall control.

67.    **VESTING OF ASSETS IN THE PLAN TRUST.** Except as otherwise provided by Article 6.F.1 of the Plan or by amendment to the Plan pursuant to Article 13.D thereof, on the Effective Date, all Assets of the Estates shall vest in, and constitute Plan Trust Assets, and each Debtor shall be deemed for all purposes to have transferred legal and beneficial title of all Assets of its Estate to the Plan Trust for the benefit of the Holders of Claims against its Estate, provided, however, that (i) with respect to any Retained Assets legal title shall remain in the applicable Debtor and beneficial title shall transfer to the Plan Trust, but further provided that the Debtor shall have the option, on or after the Effective Date, of transferring legal and beneficial title to any Assets or Retained Assets to the Plan Trust or to any Plan Trust Entity, and (ii) the Debtor's legal and

beneficial ownership of its membership interests in Ocala Funding shall remain in the Debtor. The Plan Trust shall have no liability with respect to Retained Assets or any Assets transferred by a Debtor to any Plan Trust Entity.

68.    **APPOINTMENT OF PLAN TRUSTEE.**  Neil Luria is hereby appointed Plan Trustee. He shall commence serving as the Plan Trustee on the Effective Date.

69.    **ACTIONS AGAINST THE PLAN TRUSTEE.**  Without a Final Order of this Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced in any forum other than the Court against the Plan Trustee in his official capacity, with respect to his status, duties, powers, acts, or omissions as Plan Trustee.

70.    **BOND.**  The Plan Trustee may obtain a bond acceptable to the Plan Trustee.

71.    **RESPONSIBILITIES OF PLAN TRUSTEE.**  The Plan Trustee shall be vested with the rights, powers and benefits set forth in the Plan Trust Agreement. The Plan Trust shall consult with the Plan Advisory Committee generally and shall obtain the consent or approval of the Plan Advisory Committee in connection with all Material Decisions (as such term is defined in the Plan Trust Agreement).

72.    **LIQUIDATION OF PLAN TRUST ASSETS.**  The Plan Trustee, in his reasonable business judgment and in an expeditious but orderly manner, shall liquidate and convert to Cash the Plan Trust Assets, make timely distributions and not unduly prolong the duration of the Plan Trust. The liquidation of the Plan Trust Assets may be

accomplished either in whole or in combination, by the prosecution, settlement, or sale of Plan Trust Assets, including Causes of Action, or any other means permitted by law. The Plan Trustee shall distribute the proceeds of liquidation of the Plan Trust Assets between the Estates in accordance with the Plan.

73.   **TERMINATION OF PLAN TRUST.**  The Plan Trust shall terminate after the Distribution of all Plan Trust Assets and the full performance of all other duties and functions of the Plan Trustee set forth in the Plan and in the Plan Trust Agreement. The Plan Trust shall terminate no later than the fifth anniversary of the Effective Date; provided, however, that, within a period of six months prior to such termination date or any extended termination date, the Bankruptcy Court, upon motion by the Plan Trustee or other party in interest, may extend the term of the Plan Trust for a finite period if it is necessary to the liquidating purpose thereof.

74.   **APPOINTMENT OF PLAN ADVISORY COMMITTEE.**  On the Effective Date, American Express Company, ICBA Mortgage Corporation, and Lender Processing Services, Inc., shall be deemed appointed as members of the Plan Advisory Committee and shall act through their designees.

75.   **RIGHTS AND DUTIES OF THE PLAN ADVISORY COMMITTEE.** The fiduciary duties that applied to the Creditors' Committee prior to the Effective Date, as limited by the exculpations, indemnifications, releases and other protections provided in the Plan, the Plan Trust Agreement and this Confirmation Order, shall apply to the Plan Advisory Committee. The Plan Advisory Committee shall oversee the actions of the

Plan Trustee in accordance with the terms of the Plan Trust Agreement, as set forth more particularly in Article 6.H.3.

76.    **TERMINATION OF PLAN ADVISORY COMMITTEE.** The duties, rights and powers of the Plan Advisory Committee shall terminate upon the termination of the Plan Trust.

77.    **LIABILITY, INDEMNIFICATION OF PLAN TRUSTEE AND PLAN ADVISORY COMMITTEE.** Neither the Plan Trustee, nor any member of the Plan Advisory Committee, nor their respective employees, professionals, agents, representatives or designees, including any Plan Trust Administrator, nor any director, officer or manager of TBW or any of its subsidiaries who held such position on or after the Effective Date (referred to as the Plan Trust Exculpated Parties) shall be liable for any Claims, causes of action, liabilities, obligations, losses, damages, costs and expenses (including attorneys' fees and expenses), and other assertions of liability (referred to as the Plan Trust Released Claims), arising out of the discharge of the powers and duties conferred upon the Plan Trustee or the Plan Advisory Committee by the Plan Trust Agreement, the Plan or any Order, or requested to be performed by the Plan Trustee or any member of the Plan Advisory Committee, other than for Plan Trust Released Claims determined by a Final Order to have arisen or resulted solely from such Plan Trust Exculpated Party's gross negligence or willful misconduct. Any action taken or omitted to be taken with the approval of the Court or the Plan Advisory Committee will conclusively be deemed not to constitute negligence or willful misconduct. No Holder of

a Claim or other Person will have or be permitted to pursue any Claim or Cause of Action against any Plan Trust Exculpated Party for making or approving, or not making or approving, payments or Distributions in accordance with the Plan or for implementing the provisions of the Plan. To the fullest extent permitted by applicable law, the Plan Trust shall indemnify, defend, and hold harmless each Plan Trust Exculpated Party from and against any and all Plan Trust Released Claims arising out of or resulting from such Plan Trust Exculpated Party's acts or omissions, or the consequences of such acts or omissions, with respect to the implementation or administration of the Plan Trust or the Plan or the discharge of its duties thereunder or under the Plan Trust Agreement; provided, however, that no such indemnification will be made to such Plan Trust Exculpated Party for Plan Trust Released Claims determined by a Final Order to have arisen or resulted solely from such Plan Trust Exculpated Party's gross negligence or willful misconduct. All fees, costs and expenses, including without limitation attorneys' fees and expert witness fees, incurred by a Plan Trust Exculpated Party in defending a civil or criminal action, suit or proceeding shall be paid by the Plan Trust in advance of the final disposition of such action, suit or proceeding.

78.   **PRESERVATION OF ALL CAUSES OF ACTION.** Except as otherwise provided in the Plan, this Confirmation Order, or expressly in any contract, instrument, release or agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Trust shall be vested with and may exclusively enforce, prosecute, settle, compromise, withdraw, or abandon any Causes of Action that the Debtors, the Estates, the Creditors' Committee or the Plan Trust

may have against any Person.  The Plan Trustee may pursue such retained claims or Causes of Action in accordance with the best interests of the Plan Trust and its beneficiaries.   The definitions and descriptions of the Causes of Action, including Avoidance Actions, contained in the Disclosure Statement, the Plan and the Definitions Annex to the Plan were adequate to preserve such Causes of Action.  All Causes of Action as defined in the Plan's Definitions Annex and as described in the Disclosure Statement, are reserved to the Estates and are assigned by them to the Plan Trust to be administered by the Plan Trustee in conjunction with the Plan Advisory Committee as provided for in the Plan.  Except as expressly set forth herein, this Confirmation Order shall not be a bar, nor have any adverse effect due to issues of standing, res judicata or otherwise, to the Plan Trustee's pursuit of the Causes of Action, whether the defendant was or was not a creditor of the Estates or received notice of the pendency of these Cases. Local Rule 3020-1 shall not apply to limit the time within which adversary proceedings, contested matters, and objections to claims may be filed.

79.    **CANCELLATION OF NOTES AND INTERESTS.**   As of the Effective Date, all notes and securities evidencing Claims or Interests and the rights thereunder of the Holders thereof shall, with respect to the Debtors, the Estates and the Plan Trust, be deemed canceled, null and void and of no further force and effect, and the Holders thereof shall have no rights against the Debtors, the Estates or the Plan Trust, except the right to receive the Distributions provided for in this Plan.  From and after the Effective Date, the Plan Trust shall be deemed the sole capital stockholder, shareholder, or managing member, as applicable, of each of the Debtors and shall be invested with all

the rights and powers exercisable by a sole capital stockholder, shareholder, or managing member, as applicable, under the respective Debtor's corporate governance documents and applicable law.

80.    **RESERVATION OF RIGHTS TO OBJECT TO CLAIMS.**  Unless a Claim or Interest is expressly described as an Allowed Claim or Allowed Interest pursuant to or under the Plan, or otherwise becomes an Allowed Claim or Allowed Interest prior to the Effective Date, upon the Effective Date, the Plan Trustee shall be deemed to have reserved the rights of the Debtors, the Estates, and the Creditors' Committee to object to any and all Claims or Interests and motions or requests for payment.  This reservation includes, without limitation, any and all rights, interests and objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, Subordinated Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.  The Plan Proponents' failure to object to any Claim or Interest in the Chapter 11 Cases shall be without prejudice to the Plan Trustee's rights to contest or otherwise defend against such Claim or Interest in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of such Claim or Interest.

81.    **OBJECTIONS TO CLAIMS.**  Prior to the Effective Date, the Plan Proponents shall be responsible for pursuing any objection to the allowance of any Claim or Interest.  From and after the Effective Date, the Plan Trustee shall retain responsibility

for administering, disputing, objecting to, compromising, or otherwise resolving Claims and Interests and making Distributions, if any, with respect to all Claims and Interests (including those Claims or Interests that are subject to objection by the Debtors as of the Effective Date), subject to any approvals of the Plan Advisory Committee that may be required. Unless otherwise provided in the Plan or by Order of the Bankruptcy Court, any objections to Claims or Interests by the Plan Trustee shall be filed and served on or before the later of (i) one year after the Effective Date, or (ii) two years after the Petition Date, provided that the Plan Trustee may request (and the Bankruptcy Court may grant) extensions of such deadline, or of any Bankruptcy Court approved extensions thereof, by filing a motion with the Bankruptcy Court without any requirement to provide notice to any party, based upon a reasonable exercise of the Plan Trustee's business judgment, and which order granting the motion shall be entered without a hearing. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

82.  **NO WAIVER TO OBJECT TO CLAIMS.**  The failure of the Plan Proponents or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtors' or the Plan Trust's right to object to or examine such Claim, in whole or in part.

83.  **REJECTION OF UNASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**  On the Effective Date, except for any executory contract or unexpired lease (i) that was previously assumed or rejected by an Order of the

Bankruptcy Court or otherwise pursuant to section 365 or (ii) that is subject to a pending motion to assume or reject before the Bankruptcy Court, each executory contract or unexpired lease entered into by any of the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date. By this Confirmation Order, the Court approves such rejection pursuant to sections 365 and 1123 as of the Confirmation Date.

84.    **REJECTION OF EMPLOYEE BENEFIT PLANS.**  Without limiting the generality of the preceding paragraph or Article 9.A, and for the avoidance of doubt, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their employees, retirees and non-employee directors and the employees and retirees of their subsidiaries, including all savings plans, retirement plans, pension plans, ESOP plans, healthcare plans, disability plans, severance benefit plans, incentive plans, life and accidental death and dismemberment insurance plans, shall be deemed and treated as Executory Contracts that are rejected by the Debtors pursuant to the Plan and section 365 as of the Effective Date.

85.    **REJECTION DAMAGES BAR DATE.**  Except to the extent that another Bar Date applies pursuant to an order of the Court, any Proofs of Claim with respect to a Claim arising from the rejection of Executory Contracts under the Plan (including Claims under section 365(d)(3)) must be Filed by (i) regular mail to BMC Group, Inc., Attn: Taylor Bean & Whitaker Mortgage Corp. Claims Processing, P.O. Box

3020, Chanhassen MN 55317-3020 or (ii) by hand, courier, or overnight delivery to BMC

Group, Inc., Attn: Taylor Bean & Whitaker Mortgage Corp., Claims Processing, 18750

Lake Drive East, Chanhassen, MN 55317, within 30 days after the Effective Date, or

such Claim shall not be entitled to a Distribution and shall not be enforceable against the

Debtors' Estates, the Plan Trust, the Plan Trustee, their successors, their assigns, or their

Assets. Any Allowed Claim arising from the rejection of an Executory Contract shall be

treated as a Claim in TBW Class 8, HAM Class 3, or REO Class 3 (General Unsecured

Claims), as applicable. Nothing in the Plan or this Confirmation Order extends or

modifies any previously applicable Bar Date.

   86.    **INSURANCE POLICIES.** To the extent that any or all of the insurance

policies set forth in the Plan Supplement (the "**Designated Insurance Policies**") are

considered to be Executory Contracts, then notwithstanding anything contained in the

Plan or this Confirmation Order to the contrary, the Plan shall constitute a motion to

assume the Designated Insurance Policies in connection with the Plan and to assign them

to the Plan Trust. Subject to the occurrence of the Effective Date, the entry of this

Confirmation Order shall constitute a finding that each such assumption is in the best

interests of the Debtors, the Estates, and all parties in interest in the Chapter 11 Cases and

approval of such assumption and assignment pursuant to section 365(a). Unless

otherwise determined by the Court pursuant to a Final Order or agreed to by the parties

thereto prior to the Effective Date, no payments are required to cure any defaults of the

Debtors existing as of the Confirmation Date with respect to each Designated Insurance

Policy. To the extent that the Bankruptcy Court determines otherwise with respect to any

Designated Insurance Policy, the Debtors reserve the right to seek rejection of such insurance policy or other available relief. The Plan shall not affect contracts that have been assumed and assigned by Order of the Court prior to the Confirmation Date. For the avoidance of doubt, all rights under any Designated Insurance Policy that is not considered to be an Executory Contract, and all rights under any other insurance policies under which the Debtors may be beneficiaries, (including the rights to make, amend, prosecute, and benefit from claims) shall be preserved and shall vest in the Plan Trust pursuant to Article 8.F.1 and section 1123(a)(5)(B).

87.    **GENERAL AUTHORITY.** The Debtors, if on or prior to the Effective Date, and the Plan Trust, if after the Effective Date, shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in the Plan.

88.    **EXEMPTION FROM TAXATION.** Pursuant to section 1146(a), the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under the Plan, including sales occurring on or after the date hereof, shall be entitled to the tax treatment provided by section 1146(a) and each recording or other agent of any governmental office shall record any such documents of issuance, transfer, or exchange without any further direction or order from the Court. Without limiting the generality of the forgoing, pursuant to section 1146(a), (i) all transfers of Assets or Retained Assets from the Debtors to the Plan Trust or Plan Trust Entity and thereafter to purchasers from the Plan Trust or Plan Trust Entity and (ii) all transfers of Retained

Assets to purchasers thereof shall be deemed transfers pursuant to the Plan, and shall not be taxed under any law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded is, pursuant to this Confirmation Order and the Plan, ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

89.    **HEADINGS NOT CONTROLLING.**    The headings contained within this Confirmation Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Confirmation Order.

90.    **NON-SEVERABILITY.**    Except as specifically provided herein, the terms of the Plan constitute interrelated compromises and are not severable, and no provision of those Articles may be stricken, altered, or invalidated, except by amendment of the Plan by the Plan Proponents.

91.    **REFERENCES TO PLAN PROVISIONS.**    Failure specifically to include or reference particular sections or provisions of the Plan or any related agreement in this Confirmation Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Court that the Plan be confirmed and such provisions and related agreements be approved in their entirety.

92.    **SUBSTANTIAL CONSUMMATION.**  The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, will be deemed to occur on the Effective Date.  Further, the provisions of Rule 62 of the Federal Rules of Civil Procedure as applicable pursuant to Bankruptcy Rule 7062, and Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order and the Debtors are authorized, but not directed, to consummate the Plan immediately upon entry of this Confirmation Order.

93.    **BAR DATE FOR ADMINISTRATIVE EXPENSE CLAIMS (EXCLUDING PROFESSIONAL CLAIMS).**  Except for Professional Claims, which are addressed below, requests for payment of Administrative Claims must be Filed and served on counsel for the Debtors or the Plan Trustee (as applicable) no later than (a) 30 days after a notice of the Effective Date is Filed with the Bankruptcy Court and served, or (b) such later date, if any, as the Bankruptcy Court shall order upon application made prior to the end of such 30 day period (referred to as the Administrative Expense Claim Bar Date).  Holders of Administrative Claims (including, without limitation, the Holders of any Claims, for federal, state or local taxes, but excluding Professional Claims) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtors, the Plan Trust or any of their Property.  Notwithstanding the foregoing, any Bar Dates established during the course of these Chapter 11 Cases shall remain in full force and effect.  The FDIC, as Receiver for Colonial Bank, shall not be required to file an Administrative Expense Claim for its Substantial Contribution Claim. All objections to allowance of Administrative Claims (excluding Professional Claims)

must be Filed by any parties in interest no later than 90 days (referred to as the Administrative Claim Objection Deadline) after the Administrative Claim Bar Date. The Administrative Claim Objection Deadline may be initially extended for an additional 90 days at the sole discretion of the Plan Trustee upon the Filing of a notice of the extended Administrative Claim Objection Deadline with the Bankruptcy Court. Thereafter, the Administrative Claim Objection Deadline may be further extended by an Order of the Bankruptcy Court, which Order may be granted without notice to any Creditors. If no objection to the applicable Administrative Claim is Filed on or before the Administrative Claim Objection Deadline, as may be extended, such Administrative Claim will be deemed Allowed, subject to the Bankruptcy Court's discretion to extent such bar date retroactively.

94.    **BAR DATE FOR PROFESSIONAL CLAIMS.** All Professionals, other Persons requesting compensation or reimbursement of expenses pursuant to any of sections 327, 328, 330, 331, 503(b) and 1103, and certain creditors who engaged in conduct, through their counsel, that maximized recovery on Claims in their Class(es) (each, a **"Fee Claimant"**), seeking payment for services rendered on or before the Confirmation Date (including any compensation requested by any Professional or Person other than the FDIC for making a substantial contribution in the Chapter 11 Cases) shall File and serve on counsel for the Debtors or the Plan Trustee (as applicable) an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Confirmation Date, no later than (a) 60 days after a notice of the Effective Date is filed with the Bankruptcy Court and served, or (b) such later date as

the Bankruptcy Court shall order upon application made prior to the end of such 60- day period (referred to as the Professional Claims Bar Date). Notwithstanding the foregoing, the FDIC shall not be required to file an application to obtain approval of the Bankruptcy Court for the FDIC Substantial Contribution Claim or payment of such Claim on the Effective Date of the Plan. Fee Claimants shall receive reimbursement of their reasonable fees and expenses. Resolution of the requests for reimbursement of fees and expenses of the Fee Claimants in this manner is in the best interests of the Estates. Objections to Professional Claims or Claims of other Persons, including Fee Claimants, for compensation or reimbursement of expenses must be Filed and served on counsel for the Debtors or the Plan Trustee (as applicable), and the Professionals or other Persons to whose application the objections are addressed on or before (a) 25 days after the Professional Claims Bar Date or (b) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of such 25-day period or (ii) as agreed between the Debtors or the Plan Trustee, as applicable, and the affected Professional or other Person. Any professional fees incurred by the Debtors, Fee Claimants or the Creditors' Committee subsequent to the Confirmation Date may be paid by the Debtors or the Plan Trust without application to or Order of the Bankruptcy Court. The costs of the Plan Trust, including without limitation, the fees and expenses of the Plan Trustee and any Professionals retained by the Plan Trustee or Fee Claimants, shall be borne entirely by the Plan Trust.

95.    **RETENTION OF JURISDICTION**.    This Court hereby retains jurisdiction of these Chapter 11 Cases (a) pursuant to and for purposes of sections 105,

1123 and 1142 of the Bankruptcy Code, and (b) as set forth in Article 13 of the Plan, which is incorporated herein by reference as if set forth *in extenso*.

**DATED** this 21 day of July 2011 in Jacksonville, Florida.

_____
JERRY A. FUNK
United States Bankruptcy Judge